Robert Corn-Revere (admitted *pro hac vice*)
**DAVIS WRIGHT TREMAINE LLP**
1919 Pennsylvania Avenue, NW, Suite 800
Washington, D.C.  20006
Telephone:  202-973-4200
Facsimile:  202-973-4499
Email: bobcornrevere@dwt.com

James C. Grant (admitted *pro hac vice*)
**DAVIS WRIGHT TREMAINE LLP**
950 Fifth Avenue, Suite 3300
Seattle, WA  98104
Telephone:   206-622-3150
Facsimile:    206-757-7700
Email: jamesgrant@dwt.com

*Attorneys for James Larkin and Michael Lacey*

Additional Counsel listed following caption

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>Plaintiff,<br><br>v.<br><br>$1,546,076.35 IN BANK FUNDS SEIZED FROM REPUBLIC BANK OF ARIZONA ACCOUNT '1889, *ET AL.*,<br><br>Defendants. | No. 2:18- CV-8420 RGK (PJWx)<br><br>**[CORRECTED] MOTION TO DISMISS CONSOLIDATED MASTER VERIFIED COMPLAINT FOR FORFEITURE**<br><br>Hearing Information<br>Date: March 9, 2020<br>Time: 9:00 a.m.<br>Place:   Courtroom 850<br>           255 E. Temple Street, 7th Fl.<br>           Los Angeles, CA 90012 |

Thomas H. Bienert, Jr., (CA State Bar No. 135311)
Whitney Z. Bernstein, (CA State Bar No. 304917)
**BIENERT KATZMAN PC**
903 Calle Amanacer, Suite 350
San Clemente, CA  92673
Telephone:   949-369-3700
Facsimile:     949-369-3701
Email: tbienert@bienertkatzman.com
          wbernstein@bienertkatzman.com
*Attorneys for James Larkin*

Gary S. Lincenberg (CA State Bar No. 123058)
Ariel A. Neuman (CA State Bar. No. 241594)
Gopi K. Panchapakesan (CA State Bar No. 279586)
**BIRD, MARELLA, BOXER, WOLPERT, NESSIM,
DROOKS, LINCENBERG & RHOW, P.C.**
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile: (310) 201-2110
Email: glincenberg@birdmarella.com
          aneuman@birdmarella.com
          gpanchapakesan@birdmarella.com
*Attorneys for John Brunst, Mary Ann Brunst,
and The Brunst Family Trust*

Paul J. Cambria, Jr. (CA State Bar No. 177957)
**LIPSITZ GREEN SCIME CAMBRIA LLP**
42 Delaware Avenue, Suite #120 Buffalo, NY 14202
Telephone: (716) 849-1333
Facsimile: (716) 855-1580
Email: pcambria@lglaw.com
*Attorneys for Michael Lacey*

John K. Rubiner (CA State Bar No. 155208)
**BARTON, KLUGMAN & OETTING LLP**
350 South Grand Avenue, Suite 220
Los Angeles, CA 90071-3454
Telephone (213) 621-4000
Facsimile (213) 625-1832
Email: jrubiner@bkolaw.com

NOTICE OF MOTION TO DISMISS CONSOLIDATED MASTER VERIFIED COMPLAINT

Bruce Feder (AZ State Bar No. 004832)
**FEDER LAW OFFICE, P.A.**
2930 E. Camelback Road, Suite 160
Phoenix, AZ 85016
Telephone: (602) 257-0135
Facsimile: (602) 954-8737
Email: bf@federlawpa.com
*Attorneys for Scott Spear*

David W. Wiechert, SBN 94607
**WIECHERT, MUNK & GOLDSTEIN, PC**
27136 Paseo Espada, Suite B1123
San Juan Capistrano, CA 92675
Tel: (949) 361-2822
Email: dwiechert@aol.com

Daniel J. Quigley (admitted *pro hac vice*)
**DANIEL J. QUIGLEY, PLC**
5425 E. Broadway Blvd., Suite 352
Tucson, Arizona 85711
Tel: (520) 867-4450
Email: quigley@djqplc.com
*Attorneys for Attorneys for Medalist
Holdings, Inc., Leeward Holdings, LLC,
Camarillo Holdings, LLC, Vermillion
Holdings, LLC, Cereus Properties, LLC,
and Shearwater Investments, LLC*

**TO THE COURT AND ALL PARTIES ENTITLED TO NOTICE:**

**PLEASE TAKE NOTICE** that on March 9, 2020, at 9:00 a.m., or as soon as counsel may be heard, claimants Michael Lacey, James Larkin, John Brunst, Scott Spear, Mary Ann Brunst, Medalist Holdings, Inc., Leeward Holdings, LLC, Camarillo Holdings, LLC, Vermillion Holdings, LLC, Cereus Properties, LLC, Shearwater Investments, LLC, and The Brunst Family Trust (collectively, "Claimants") will bring on for hearing the following Motion to Dismiss Consolidated Master Verified Complaint for Forfeiture ("Complaint") under Rule 12(b)(6) of the Federal Rules of Civil Procedure ("F.R.C.P.") and Rule G(8)(b)(i) of the Supplemental Rules for Admiralty or Maritime Claims and Forfeiture Actions ("Supp. R."), on grounds that the

Complaint fails to state a claim on which relief can be granted and fails to state sufficiently detailed facts to support a reasonable belief the government can prevail, due to the preclusive effect of Section 230 of the Communications Decency Act ("CDA"), 47 U.S.C. § 230 ("Section 230").

Section 230(c)(1) establishes that "[n]o provider … of an interactive computer service shall be treated as the publisher … of any information provided by another [] content provider" and bars civil suits such as this forfeiture action. Section 230 precludes this action because the entirety of the government's civil Complaint for Forfeiture rests on allegations that, as the alleged former owners and/or operators of Backpage.com, Claimants as online publishers are responsible for the content of classified ads that were posted to the website by third parties, even if the publisher was responsible for neither the content of the ads nor any third-party conduct. There are hundreds of cases, including cases involving Backpage and virtually identical allegations, making clear Section 230 is an absolute bar to the government's claims here.

This Motion is based upon this Notice, the attached Memorandum of Points and Authorities, and the Complaint's allegations.*

DATED: February 5, 2020     Robert Corn-Revere
                            James C. Grant
                            DAVIS WRIGHT TREMAINE LLP
                            By: /s/Robert Corn-Revere
                                Robert Corn-Revere
                                Attorneys for James Larkin
                                and Michael Lacey

DATED: February 5, 2020     Thomas H. Bienert, Jr.
                            Whitney Z. Bernstein
                            BIENERT KATZMAN, PLC
                            By: /s/ Thomas H. Bienert, Jr.
                                Thomas H. Bienert, Jr.
                                Attorneys for James Larkin

_____

*   Undersigned counsel contacted counsel for the Plaintiff, Assistant United States Attorney John Kucera, who indicated that the government opposes this motion.

NOTICE OF MOTION TO DISMISS CONSOLIDATED MASTER VERIFIED COMPLAINT

DATED: February 5, 2020          Gary S. Lincenberg
                                 Ariel A. Neuman
                                 Gopi K. Panchapakesan
                                 BIRD, MARELLA, BOXER, WOLPERT,
                                 NESSIM, DROOKS, LINCENBERG &
                                 RHOW, P.C.
                                 By: /s/ Ariel A. Neuman
                                        Ariel A. Neuman
                                        Attorneys for John Brunst, Mary Ann
                                        Brunst, and The Brunst Family Trust

DATED: February 5, 2020          Paul J. Cambria, Jr.
                                 LIPSITZ GREEN SCIME CAMBRIA LLP
                                 By: /s/ Paul J. Cambria, Jr.
                                        Paul J. Cambria, Jr.
                                        Attorneys for Michael Lacey

DATED: February 5, 2020          John K. Rubiner
                                 BARTON, KLUGMAN & OETTING LLP
                                 By: /s/ John K. Rubiner
                                        John K. Rubiner
                                        Attorneys for Scott Spear

DATED: February 5, 2020          Daniel J. Quigley
                                 DANIEL J. QUIGLEY, PLC
                                 By: /s/ Daniel J. Quigley
                                        Daniel J. Quigley
                                        Attorneys for Medalist Holdings, Inc.,
                                        Leeward Holdings, LLC, Camarillo
                                        Holdings, LLC, Vermillion Holdings,
                                        LLC, Cereus Properties, LLC, and
                                        Shearwater Investments, LLC

DATED: February 5, 2020          David W. Wiechert
                                 WIECHERT, MUNK & GOLDSTEIN, PC
                                 By: /s/ David W. Weichert
                                        David W. Weichert
                                        Attorneys for Medalist Holdings, Inc.,
                                        Leeward Holdings, LLC, Camarillo
                                        Holdings, LLC, Vermillion Holdings,
                                        LLC, Cereus Properties, LLC, and
                                        Shearwater Investments, LLC

NOTICE OF MOTION TO DISMISS CONSOLIDATED MASTER VERIFIED COMPLAINT

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................ii

I.     BACKGROUND ....................................................................................2

II.    ARGUMENT .........................................................................................5

    A.    The Criteria for Section 230 Immunity Are Met. .......................7

    B.    Section 230 Bars the Forfeiture Claims Because the Complaint Does Not Allege Ads on Backpage.com Were Created By Anyone Other Than the Third-Parties Who Posted Them. ...................12

    C.    The Government Cannot Evade Section 230 By Claiming a Website "Facilitated" Illegal Conduct. .......................................16

    D.    Parallel Criminal Proceedings are Irrelevant. ...........................18

    E.    Predicate Money Laundering Claims Do Not Save the Complaint. ..................................................................................19

TABLE OF AUTHORITIES

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Almeida v. Amazon.com, Inc.*,
　456 F.3d 1316 (11th Cir. 2006) ................................................................................. 6

*Ashcroft v. Iqbal*,
　556 U.S. 662 (2009) ................................................................................. 5

*Backpage.com LLC v. McKenna*,
　881 F. Supp. 2d 1262 (W.D. Wash. 2012) ................................................. 4, 8

*Backpage.com, LLC v. Cooper*,
　939 F. Supp. 2d 805 (M.D. Tenn. 2013) .................................................. 3, 4, 8

*Backpage.com, LLC v. Dart*,
　807 F.3d 229 (7th Cir. 2015) ................................................................. 4, 20

*Backpage.com, LLC v. Hoffman*,
　2013 WL 4502097 (D.N.J. Aug. 20, 2013) ................................................ 8

*Batzel v. Smith*,
　333 F.3d 1018 (9th Cir. 2003) ............................................................ 6, 8, 14

*Beckman v. Match.com*,
　2013 WL 2355512 (D. Nev. May 29, 2013), *aff'd in part, rev'd in part on
　other grounds*, 668 F. App'x 759 (9th Cir. 2016) ....................................... 12

*Bell Atlantic Corp. v. Twombly*,
　550 U.S. 544 (2007) ................................................................................. 5

*Ben Ezra, Weinstein, & Co. v. America Online Inc.*,
　206 F.3d 980 (10th Cir. 2000) ............................................................... 6, 14

*Blumenthal v. Drudge*,
　992 F. Supp. 44 (D.D.C. 1998) ................................................................ 13

*California v. Ferrer*,
　2016 WL 7237305 (Cal. Super. Ct. Sac. Cty. Dec. 9, 2016) ................... *passim*

*California v. Ferrer*,
    No. 16FE024013, slip op. (Cal. Super. Ct. Sac. Cty. Aug. 23, 2017)................*passim*

*Carafano v. Metrosplash.com*,
    339 F.3d 1119 (9th Cir. 2003) ........................................................ 8, 11, 12, 13

*Cohen v. Facebook, Inc.*,
    252 F. Supp. 3d 140 (E.D.N.Y. 2017)..................................................... 1

*Daniel v. Armslist, LLC*,
    926 N.W.2d 710 (Wis. 2019), *cert. denied*, 2019 WL 6257416 (2019)................*passim*

*Dart v. Craigslist*,
    665 F. Supp. 2d 961 (N.D. Ill. 2009) ................................................... 7, 18, 20

*Doe II v. MySpace Inc.*,
    175 Cal. App. 4th 561 (2009) ............................................................ 11

*Doe v. Bates*,
    2006 WL 3813758 (E.D. Tex. Dec. 27, 2016)......................................*passim*

*Doe v. MySpace, Inc.*,
    528 F.3d 413 (5th Cir. 2008) ........................................................... 11, 12, 16

*Dyroff v. Ultimate Software Grp., Inc.*,
    934 F.3d 1093 (9th Cir. 2019) .......................................................... 1, 7, 8, 15

*Eclectic Props. East, LLC v. Marcus & Millichap Co.*,
    751 F.3d 990 (9th Cir. 2014) ...........................................................5, 20

*Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*,
    521 F.3d 1157 (9th Cir. 2008) (*en banc*)........................................... 6, 7, 14, 16

*Federal Agency of News LLC v. Facebook*,
    2020 WL 137154 (N.D. Cal. Jan. 13, 2020)........................................*passim*

*Fields v. Twitter, Inc.*,
    217 F. Supp. 3d 1116 (N.D. Cal. 2016), *aff'd on other grounds*,
    881 F.3d 739 (9th Cir. 2018) ........................................................... 18

*Force v. Facebook, Inc.*,
    934 F.3d 53 (2d Cir. 2019) ..............................................................*passim*

TABLE OF AUTHORITIES

*Free Kick Master LLC v. Apple Inc.*,
    140 F. Supp. 3d 975 (N.D. Cal. 2015) ............................................................. 7, 12, 14

*FTC v. Accusearch Inc.*,
    570 F.3d 1187 (10th Cir. 2009) ......................................................................... 12

*GoDaddy.com, LLC v. Toups*,
    429 S.W.3d 752 (Tex. App. 2015) ...................................................................15, 18

*Goddard v. Google, Inc.*,
    2008 WL 5245490 (N.D. Cal. Dec. 17, 2008) ................................................ 17, 18, 19

*Goddard v. Google, Inc.*,
    640 F. Supp. 2d 1193 (N.D. Cal. 2009) ............................................................ 16

*Gonzalez v. Google*,
    335 F. Supp. 3d 1156 (N.D. Cal. 2018) ............................................................ 18

*Gonzalez v. Google, Inc.*,
    282 F. Supp. 3d 1150 (N.D. Cal. 2017) ............................................................ 1

*Green v. AOL*,
    318 F.3d 465 (3d Cir. 2003) .............................................................................. 11

*Herrick v. Grindr, LLC*,
    306 F. Supp. 3d 579 (S.D.N.Y. 2018), *aff'd*, 765 F. App'x 586
    (2d Cir. 2019) ..............................................................................................10, 11, 13, 15

*Hill v. StubHub, Inc.*,
    727 S.E.2d 550 (N.C. App. 2012) ................................................................. 2, 12, 17

*Hinton v. Amazon.com.dedc, LLC*,
    72 F. Supp. 3d 685 (S.D. Miss. 2014) ............................................................... 18

*Jane Doe No. 1 v. Backpage.com, LLC*,
    817 F.3d 12 (1st Cir. 2016), *aff'g*, 104 F. Supp. 3d 149
    (D. Mass. 2015) ............................................................................................*passim*

*Jones v. Dirty World Entm't Recordings LLC*,
    755 F.3d 398 (6th Cir. 2014) ........................................................................*passim*

iv

TABLE OF AUTHORITIES

*Kimzey v. Yelp! Inc.*,
   836 F.3d 1263 (9th Cir. 2016) .................................................................18

*Klayman v. Zuckerberg*,
   753 F.3d 1354 (D.C. Cir. 2014) ................................................................8

*La'Tiejira v. Facebook, Inc.*,
   272 F. Supp. 3d 981 (S.D. Tex. 2017) ..........................................8, 15, 17

*Lee v. OfferUp, Inc.*,
   2018 WL 4283371 (E.D. La. Sept. 7, 2018) ...........................................12

*M.A. ex rel. P.K. v. Village Voice Media Holdings, LLC*,
   809 F. Supp. 2d 1041 (E.D. Mo. 2011) ...........................................*passim*

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*,
   591 F.3d 250 (4th Cir. 2009) ...............................................................7, 20

*S.C. v. Dirty World, LLC*,
   2012 WL 3335284 (W.D. Mo. Mar. 12, 2012) .......................................17

*Sekiya v. Zuckerberg*,
   2017 WL 3405627 (D.N.M. Mar. 10, 2017) ..............................................8

*Silver v. Quora, Inc.*,
   2016 WL 9777159 (D.N.M. June 13, 2016) ............................................15

*U.S. v. Lacey*,
   No. 18-CR-00422-PHX-SPL (D. Ariz.) .....................................................2

*U.S. v. One White Crystal Covered Bad Tour Glove*,
   2012 WL 8467453 (C.D. Cal. Sept. 6, 2012) .........................................5, 6

*U.S. v. Ursery*,
   518 U.S. 267 (1996) ...................................................................................2

*U.S. v. Various Coins*,
   2013 WL 1183312 (D. Ore. Mar. 21, 2013) ..............................................5

*Universal Comm'n Sys., Inc. v. Lycos, Inc.*,
   478 F.3d 413 (1st Cir. 2007) ...............................................6, 7, 11, 17

v

*Warren v. Fox Family Worldwide, Inc.*,
    328 F.3d 1136 (9th Cir. 2003) ............................................................ 5

*Zeran v. Am. Online, Inc.*,
    129 F.3d 327 (4th Cir. 1997) ............................................... 6, 16, 17

**Statutes**

18 U.S.C.
    § 981(a)(1)(A).................................................................................. 2
    § 981(a)(1)(C).................................................................................. 2
    § 1591 ................................................................................... *passim*
    § 1595 ............................................................................................ 18
    § 1952 .................................................................. 2, 18, 19, 20
    § 1956(a)(1)(B)(i) ........................................................................... 3
    § 1956(a)(2)(B) .............................................................................. 20
    § 1956(h) ........................................................................................ 3
    § 1957 ..................................................................................... 3, 18
    § 1962 ............................................................................................ 20
    § 2252A ......................................................................................... 18
    § 2255 ............................................................................................ 18
    § 2331 *et seq.* ............................................................................... 18
    § 2333 ............................................................................................ 18

47 U.S.C.
    § 230 ..................................................................................... *passim*
    § 230(a)(3) ....................................................................................... 6
    § 230(b)(2) ....................................................................................... 6
    § 230(c)(1) ............................................................................. *passim*
    § 230(e)(1) ..................................................................................... 18
    § 230(e)(5)(A) ............................................................................... 18
    § 230(e)(5)(B) ............................................................................... 18
    § 230(e)(5)(C) ............................................................................... 18

**Rules**

F.R.C.P. 12(b).......................................................................................... 5
F.R.C.P. 12(b)(6)..................................................................................... 1
Supp. R. G(2)(f) ............................................................................ 6, 13, 20
Supp. R. G(8)(b)(i) ................................................................................ 5

TABLE OF AUTHORITIES

**Other Authorities**

Center for Democracy & Technology, January 10, 2017,
   https://cdt.org/press/backpage-com-succumbing-to-government-
   is-blow-to-free-speech-online/ ....................................................................................3

TABLE OF AUTHORITIES

## MEMORANDUM OF POINTS AND AUTHORITIES

The Complaint must be dismissed under F.R.C.P. 12(b)(6) and Supplemental Rule G(8)(b)(i) for failure to state a claim upon which relief can be granted and failure to state sufficiently detailed facts to support a reasonable belief the government can prevail, given the preclusive effect of Section 230 of the CDA. Section 230(c)(1) establishes that "[n]o provider … of an interactive computer service shall be treated as the publisher … of any information provided by another [] content provider." *Id.* Subject to limited exceptions not relevant here, the CDA bars virtually all civil claims against online publishers based on third-party content,[1] including these civil forfeiture claims.

The only allegations supporting forfeiture rest on Claimants' alleged former roles in owning or operating the Backpage.com classified advertising website, which the Complaint makes clear was an interactive computer service, that hosted ads posted by third parties, some of which the government alleges promoted prostitution and sex trafficking. *See, e.g., Dyroff v. Ultimate Software Grp., Inc.*, 934 F.3d 1093, 1097 (9th Cir. 2019) (listing criteria for § 230 immunity). The Complaint does not anywhere allege Backpage.com or Claimants created any ads, or that they added anything to ads. At most, it alleges the content of some ads on the website suggested they related to illegal activities and Backpage.com (not Claimants) *deleted* from some of them language or images *indicative* of illegality, using moderation processes the website generally applied. But the Complaint does not allege these processes were applied to any particular ad, and has no allegations about the editing of any specific ads (even deletions).

However, under Section 230 and the vast body of uniform case law interpreting it, any allegations must focus on *specific content*, not general website operations, and must identify how the interactive computer service is responsible for what allegedly made

---

[1]   *E.g., Gonzalez v. Google, Inc.*, 282 F. Supp. 3d 1150, 1163 n.5 (N.D. Cal. 2017) (citing *Cohen v. Facebook, Inc.*, 252 F. Supp. 3d 140, 157 n.11 (E.D.N.Y. 2017)), *aff'd*, 934 F.3d 53 (2d Cir. 2019)).

the content unlawful or actionable.  Neither "whole website" theories, generic claims about moderation practices and operation, nor allegations of knowledge or intent can avoid Section 230.  General claims that the very nature of Backpage.com facilitated, encouraged, or "promoted" illegality are precisely the kind Section 230 bars.

The government here seeks civil forfeitures based on the content of classified ads third parties posted to Backpage.com, and the conduct of those third parties, despite *hundreds* of cases nationwide—including several involving Backpage.com—holding Section 230 precludes such liability.  *See Hill v. StubHub, Inc.*, 727 S.E.2d 550, 562 (N.C. App. 2012) (reporting (in 2012) approximately 300 reported decisions, with all but a handful finding sites immune under § 230).  As this Court recently recognized, these related forfeiture actions represent "a separate civil proceeding" from any pro-secution in which individual Claimants are named.[2]  Accordingly, because Section 230 immunity is not lost on *any* basis found in the Complaint, and the money-laundering claims also depend on content posted by users of the website and their alleged unlawful activity, the Complaint must be dismissed, and Claimants' assets must be returned.

## I.    BACKGROUND

The Complaint alleges nearly 100 Defendant Accounts (holding tens of millions of dollars the government has already seized), numerous parcels of real property, and other assets seized from or surrendered by Backpage.com are forfeitable under 18 U.S.C. §§ 981(a)(1)(A) & (C).  The asserted grounds for forfeiture are that the assets allegedly "represent property derived from or traceable to proceeds of" violations of "federal laws constituting ['specified unlawful activity' ('SUA')] … including 18 U.S.C. §§ 1591 [and] 1952," and conspiracy to commit same, involving, respectively, sex trafficking and prostitution-based Travel Act violations. Compl. ¶ 101, 145.  *See also id.*

---

[2]   *Any and all funds held in Republic Bank of Arizona Accounts*, No. 2:18-cv-06742-RGK-PJW, Dkt. 130, Dec. 20, 2019, at 6-7 (citing *U.S. v. Lacey*, No. 18-CR-00422-PHX-SPL (D. Ariz.); *Jane Doe No. 1 v. Backpage.com, LLC*, 817 F.3d 12, 23 (1st Cir. 2016); *Force v. Facebook, Inc.*, 934 F.3d 53, 72 (2d Cir. 2019); *U.S. v. Ursery*, 518 U.S. 267, 292 (1996)).

MOTION TO DISMISS CONSOLIDATED MASTER VERIFIED COMPLAINT FOR FORFEITURE

¶ 239 (First Claim for Relief).  The Complaint also alleges the assets were involved in money laundering under 18 U.S.C. §§ 1956(a)(1)(B)(i), (a)(2) & h, and § 1957, as proceeds of § 1591 or § 1952 SUA.  *Id.* ¶¶ 102, 145-47.[3]  All alleged "evidence supporting forfeiture" arises from operations of Backpage.com, *id.* ¶¶ 118-30; *see also id.* ¶¶ 106-17, with all "criminal proceeds" alleged to derive therefrom, *id.* ¶¶ 131-42; everything seized allegedly comprises "assets representing, traceable to, and involved with" specified SUA premised on the content of ads posted by third parties on the website.[4]

The Complaint alleges individual Claimants were originators, directors, policy-makers or strategists, or officers of entities that operated Backpage.com.  *Id.* ¶¶ 108-12, 121-22.[5]  It describes Backpage.com, LLC as an Internet-based company formed to counter online competition to the classified ad business of weekly newspapers some of the Claimants operated, *id.* ¶ 121, by allowing consumers to post classifieds at Backpage.com.  *Id.* ¶ 106.  *See also id.* ¶¶ 153.d & 201.b (citing Backpage.com's "internet presence" and services).  Ads could post in categories such as automotive, dating, jobs, rentals and services, *id.* ¶ 106, and "adult," which the Complaint alleges comprised less than 10% of ads on the website. *Id.* ¶ 107.[6]  Backpage.com did not dictate or require inclusion of any content in ads.  *Backpage.com, LLC v. Cooper*, 939 F. Supp. 2d 805, 813 (M.D. Tenn. 2013).  Ads were posted solely by third-party users, *id.*, as the Complaint

---

[3]  *See also* Compl. ¶¶ 240-41 (claims for relief alleging "Defendant Assets were involved in and are traceable to … one or more financial transactions, attempted transactions, and a conspiracy to conduct or attempt to conduct such transactions [in connection with the SUA of] violations of … Sections 1591 … and 1952").

[4]  *Id.* § IV. *Cf. id.* ¶ 123 ("most of Backpage's earnings represented the proceeds of illegal activity, specifically prostitution and sex trafficking," used to pay for ads).

[5]  As the Complaint recites, Claimants sold their interests in the companies that operated the website in 2015.  Compl. ¶ 122.

[6]  The adult section was shuttered in early 2017 after years of pressure by government actors.  *See id.* ¶ 126.c.; *see also* https://cdt.org/press/backpage-com-succumbing-to-government-is-blow-to-free-speech-online.  The rest of the website ceased operating in 2018 when the government seized Backpage.com itself.  *See* Compl. ¶¶ 126.c, 224.

MOTION TO DISMISS CONSOLIDATED MASTER VERIFIED COMPLAINT FOR FORFEITURE

makes clear.  *See, e.g.*, Compl. ¶ 107 ("Backpage advertisers posted … ads").[7]  *Accord Backpage.com, LLC v. Dart*, 807 F.3d 229, 230 (7th Cir. 2015).

The Complaint does not allege Backpage.com (or Claimants) created content at the website.  Or that they added anything to content others posted.  Nor does it allege they imported any content from other websites, or invited or enlisted third parties to do so (or to post ads).  The only allegations of Backpage.com's involvement with any ads, beyond hosting what users posted, are claims its moderation practices "'sanitized' some ads … customers posted," *id.* ¶ 127, by "deleting words, phrases, and images." *Id.* ¶ 126.c.  *Cf. id.* ¶ 127.a ("Ferrer instructed Backpage's technical staff to edit … ads by removing particular terms").  It is alleged this involved identifying "terms … that should be 'stripped' from ads," *id.* ¶ 127.c, under rules that "prohibited use of certain terms." *Id.* ¶ 127.h; *see also id.* ¶ 127.i (alleging the "list of prohibited terms … evolved … to adjust to Backpage advertisers' use of new code words").[8]  But, as the Complaint stresses, these changes did not affect what the posters of the ads intended to convey. *See, e.g., id.* ¶¶ 125, 126.a, 126.d, 128.  The Complaint faults this "policy of moderation" as "allowing otherwise neutral or innocuous terms" constituting "coded language for sex trafficking and prostitution," *id.* ¶ 128.c, to "avoid deleting ads when possible" when "editing should be sufficient." *Id.* ¶ 127.d-e (internal quotation marks omitted).[9]

---

[7]  *See also, e.g.*, Compl. ¶ 125 (alleging some posters were "pimps and sex traffickers who used Backpage to advertise"); *id.* ¶ 125.a (discussing a "pimp who placed [a given] ad"); *id.* ¶ 125.b (alleging "same pimp" placed a "Backpage ad"); *id.* ¶ 125.c (discussing a pimp who "told [] girls to post ads on Backpage.com" and "ads the girls posted"); *id.* ¶ 125.d (alleging a "pimp drafted [] ads"); *id.* ¶ 125.e (citing "D.O's Backpage ads"). *See id.* ¶ 130 (citing "ads posted by pimps or prostitution agencies"). *Cf.* ¶¶ 135.a, 135.b, 137.d, 137.i.b (referencing payment by users to post ads).

[8]  These allegations accompany similar claims about disapproval (*i.e.*, deletion) of images in ads that Backpage.com determined should not appear on the site. *Id.* ¶ 127.c.

[9]  However, Backpage.com's "automated and manual reviews" also blocked and removed posts. *Cooper*, 939 F. Supp. 2d at 813-14; *Backpage.com LLC v. McKenna*, 881 F. Supp. 2d 1262, 1266-67 (W.D. Wash. 2012) (automated filters screened 26,000 terms,

The Complaint does not allege Backpage.com (or Claimants) ever edited any particular ad.  In fact, its 90 pages hardly mention specific ads at all, citing just a few specific posts.  *See id.* ¶¶ 125.a-e, 128.b, 129.c.  Even for this handful of ads, there are no allegations they were edited from how they originally posted—that is, *none* are alleged to have been "moderated."  The Complaint does not contain a single allegation that Backpage created, added to, or changed the meaning of *any* ads the website hosted.

## II.   ARGUMENT

Claimants with standing to contest forfeiture may seek dismissal under F.R.C.P. 12(b).  Supp. R. G(8)(b)(i).[10]  To avoid dismissal, the rules require that complaints "contain sufficient factual matter, accepted as true, to state a claim … that is plausible on its face," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cite and internal quotation marks omitted), though the Court does not accept as true legal conclusions merely cast as factual allegations.  *U.S. v. One White Crystal Covered Bad Tour Glove*, 2012 WL 8467453, at *1 (C.D. Cal. Sept. 6, 2012) (quoting *Warren v. Fox Family Worldwide, Inc.,* 328 F.3d 1136, 1139 (9th Cir. 2003)).  Under the "plausibility standard" of *Bell Atlantic Corp. v. Twombly*, alleged facts "must be enough to raise a right to relief above the speculative level," an "obligation [that] requires more than labels and conclusions."  550 U.S. 544, 555 (2007).[11]  And forfeiture complaints must satisfy not only *Iqbal/Twombly* standards, but also heightened pleading obligations to "state sufficiently detailed facts to support

---

phrases, and online identifiers, and 100 personnel reviewed and blocked ads).

[10]   Between claimants' claims on the Defendant Assets and the descriptions of them, *see* Compl. ¶¶ 3-74, 86-89, 94-99, there should be no dispute as to standing.  *See, e.g.,* *U.S. v. Various Coins*, 2013 WL 1183312, at *2-3 (D. Ore. Mar. 21, 2013).

[11]   When facts pled are subject to "two possible explanations, only one of which can be true and only one of which results in liability, plaintiffs cannot offer allegations that are merely consistent with their favored explanation but are also consistent with the alternative explanation.  Something more is needed, such as facts tending to exclude the possibility that the alternative explanation is true …."  *Eclectic Props. East, LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996-97 (9th Cir. 2014).

MOTION TO DISMISS CONSOLIDATED MASTER VERIFIED COMPLAINT FOR FORFEITURE

a reasonable belief that the government will be able to meet its burden of proof at trial." *One White Crystal Glove*, at *2 (quoting Supp. R. G(2)(f)). In ruling on dismissal, the Court must consider only the allegations on the face of the complaint.[12]

Dismissal lies here as Section 230 immunity seeks to "encourage [] unfettered and unregulated development of free speech on the Internet," to "promote the development of e-commerce," and completely bars the instant Complaint.[13] Section 230(c)(1) mandates that "[n]o provider … of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1).[14] Consensus holds that Section 230 applies expansively, "establish[ing] broad 'federal immunity to any cause of action that would make service providers liable for information originating with a third-party,'" *Almeida v. Amazon.com, Inc.*, 456 F.3d 1316, 1321 (11th Cir. 2006); *see also Lycos*, 478 F.3d at 419, with the Ninth Circuit emphasizing that "close cases … must be resolved in favor of

---

[12]  Documents attached to the complaint, matters properly judicially noticeable, and documents whose contents are alleged may be considered, *One White Crystal Glove*, at *1—but the Complaint here neither attaches nor incorporates any documents.

[13]  *Batzel v. Smith*, 333 F.3d 1018, 1027-28 (9th Cir. 2003); *see also Ben Ezra, Weinstein, & Co., Inc. v. America Online Inc.*, 206 F.3d 980, at 985 n.3 (10th Cir. 2000) (quoting 47 U.S.C. §§ 230(a)(3), (b)(2)). Congress sought to eliminate liability for online services "given the volume of material communicated" through them and "the difficulty of separating lawful from unlawful speech." *Universal Comm'n Sys., Inc. v. Lycos, Inc.*, 478 F.3d 413, 418-19 (1st Cir. 2007) (citation omitted). *Accord Daniel v. Armslist, LLC*, 926 N.W.2d 710, 717 ¶ 14 (Wis. 2019), *cert. denied*, 2019 WL 6257416 (2019); *Force*, 934 F.3d at 63, 71.

[14]  The "plain language" of Section 230 thus "creates a federal immunity to any cause of action that would make service providers liable for information originating with a third-party user." *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997). "Put another way, Section 230 'immunizes providers of interactive computer services against liability arising from content created by third parties.'" *Federal Agency of News LLC v. Facebook*, 2020 WL 137154, at *5 (N.D. Cal. Jan. 13, 2020) ("*FAN*") (quoting *Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC,* 521 F.3d 1157, 1162 (9th Cir. 2008) (*en banc*)) (internal quotation marks omitted).

immunity." *Roommates.com,* 521 F.3d at 1174.[15]  Many courts have granted or affirmed dismissal in cases that, like this, assert claims based on online content third parties created.  *E.g., Dyroff,* 934 F.3d 1093, *Craigslist,* 665 F. Supp. 2d 961; *Doe No. 1*, 817 F.3d 12; *Lycos,* 478 F.3d 413.[16]  The same applies here.

### A.      The Criteria for Section 230 Immunity Are Met.

A party is entitled to Section 230 immunity "as long as (1) it is a provider or user of an interactive computer service, (2) the ... claims treat [it] as a publisher or speaker of [injurious] information, and (3) the ... information [was] provided by

---

[15]  Section 230 cases are governed by several basic principles:

> ***First***, immunity turns on who created and developed the ***specific content that allegedly caused Plaintiff's harm***, and cannot be avoided through aspersions about the general construct or operation of a website.

> ***Second***, courts uniformly reject claims based on allegations that a website "facilitated" or "promoted" illegality in some way.

> ***Third***, Section 230 immunity cannot be avoided by claiming a website knew or should have known of illegal material posted by third parties; such knowledge does not make publishers liable for speech of others.

> ***Fourth***, a website loses immunity only if it ***requires*** unlawful content or generates it itself, either directly or by hiring others to do so.

> ***Fifth***, accusations about website efforts to review, screen, block, or edit third party posts are ***perforce*** immune under Section 230.  Scores of cases recognize that these publisher functions—deciding what to allow and what to disallow—are expressly protected by Section 230(c)(1).

[16]  Where Section 230 applies, dismissal at the earliest possible phase of a case is vital, as its immunity "is effectively lost if a case is erroneously permitted" to proceed.  *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.,* 591 F.3d 250, 254 (4th Cir. 2009) (citation omitted); *accord Jones v. Dirty World Entm't Recordings LLC*, 755 F.3d 398, 417 (6th Cir. 2014).  Invocation of Section 230 must be resolved promptly as it "forecloses liability" if an online publisher "is not the author of the ads and [can]not be treated as the 'speaker' of the posters' words."  *Dart v. Craigslist*, 665 F. Supp. 2d 961, 966 (N.D. Ill. 2009).  This is necessary because "Section 230 protects ... not merely from ultimate liability, but also ... costly and protected legal battles."  *FAN*, 2020 WL 137154, at *5 (quoting *Roommates.com,* 521 F.3d at 1174) (internal quotation marks, editing omitted).

---

7

another content provider.'" *Free Kick Master LLC v. Apple Inc.*, 140 F. Supp. 3d 975, 980 (N.D. Cal. 2015) (quoting *Batzel*, 333 F.3d at 1037 (9th Cir. 2003)) (internal quotation marks omitted; editing supplied); *see also Dyroff*, 934 F.3d at 1097; *Doe No. 1*, 817 F.3d at 19.  This "turns on who was responsible for the specific harmful material at issue, not on whether the service provider was responsible for the general features and mechanisms of the service or other content" that also appeared.  *Doe v. Bates*, 2006 WL 3813758, at *17 (E.D. Tex. Dec. 27, 2016) (citing *Carafano v. Metrosplash.com*, 339 F.3d 1119 (9th Cir. 2003)).  Under settled law, a website is not liable for "consequences of [] ads posted" by users unless it developed "the specific content" at issue.  *M.A. ex rel. P.K. v. Village Voice Media Holdings, LLC*, 809 F. Supp. 2d 1041, 1051 (E.D. Mo. 2011).  *See also Armslist*, 926 N.W.2d at 719 ¶ 24; *Carafano*, 339 F.3d at 1125.[17]  The same follows here, as Claimants "fulfill[] all three prerequisites … to claim Section 230 immunity."  *FAN*, 2020 WL 137154 at *3.

First, Backpage was a "quintessential publisher contemplated by the CDA."  *Cooper*, 939 F. Supp. 2d at 823; *see also Ferrer I*, 2016 WL 7237305, at *6, which the Complaint reaffirms, alleging Backpage.com was an online service that allowed third-parties to post on-line classifieds.  *See supra* 3 (citing and quoting Compl. ¶¶ 106, 121, 153.d, 201.b).[18]  Second, the grounds asserted for forfeiture all involve operation of

---

[17]    Under this test, seven courts have held Backpage.com and/or its principals to be immunized by Section 230.  *Doe v. Backpage.com, LLC*, 104 F. Supp. 3d 149, 157-58 (D. Mass. 2015), *aff'd*, 817 F.3d at 20-22; *Backpage.com, LLC v. Hoffman*, 2013 WL 4502097, at *8 (D.N.J. Aug. 20, 2013); *Cooper*, 939 F. Supp. 2d at 823-25; *McKenna*, 881 F. Supp. 2d at 1271-75; *M.A.*, 809 F. Supp. 2d at 1050-54; *California v. Ferrer*, 2016 WL 7237305 (Cal. Super. Ct. Sac. Cty. Dec. 9, 2016) ("*Ferrer I*"); *California v. Ferrer*, No. 16FE024013, slip op. (Cal. Super. Ct. Sac. Cty. Aug. 23, 2017) ("*Ferrer II*").

[18]    This tracks the "[m]any cases [that] have held [Backpage.com] satisfies the definition for 'interactive computer service'" under Section 230.  *La'Tiejira v. Facebook, Inc.*, 272 F. Supp. 3d 981, 993 (S.D. Tex. 2017).  *See supra* n.17.  To the extent that the forfeitures rest on Claimants' former roles as alleged Backpage.com operators, they "too, qualif[y] for protection" as the alleged "'provider' of [the] interactive computer service."  *Sekiya v. Zuckerberg*, 2017 WL 3405627, at *2 (D.N.M. Mar. 10, 2017) (citation

Backpage.com and, in particular, ads third parties posted.[19] Ads on Backpage.com are the essence of "information provided by another content provider" under Section 230.[20] The Complaint does not allege Backpage.com (or Claimants) created content at the website. Or that they added anything to ads users posted, imported content from other sites, or invited or enlisted others to do so. Or even that any ad specifically identified in the Complaint was *in any way* modified. And, as explained *infra* at § III.B, nothing in any alleged deletion of ad content makes Backpage.com or Claimants responsible for any ads that may have related to or involved illegal conduct.

Finally, the claims here treat Backpage.com (and by extension Claimants as its alleged former owners and/or operators) as "the publisher or speaker" of content the government claims is unlawful. The Complaint alleges "the Defendant Assets consti-tute, and are derived from, proceeds traceable to one or more violations of … Sections 1591 … and 1952." Compl. ¶ 239. The alleged factual basis for this claim is Back-page.com's hosting of third-party ads implicating prostitution and/or trafficking, and any moderation that occurred. *See id.* ¶¶ 106-07 & "Evidence Supporting Forfeiture," ¶¶ 121-30. All claims regarding the "proceeds" are predicated on there being "Pay-ments for Advertising on Backpage," *id.* ¶¶ 131-37, and "Proceeds Traceable to" SUA of hosting and moderating alleged unlawful ads, which became "Involved in Money Laundering." *Id.* ¶¶ 138-44. The Complaint characterizes these allegations as its "Bases for Forfeiture," all of which rely on the same alleged violations of Sections 1591 and/or 1952, based on ad content. *See supra* 3 (citing, *inter alia*, Compl. ¶¶ 145-47).

---

omitted). *Accord Klayman v. Zuckerberg*, 753 F.3d 1354, 1357-58 (D.C. Cir. 2014).

[19] *See, e.g.*, Compl. ¶ 107 ("Backpage advertisers posted … ads"); *id.* ¶ 130 (citing "ads posted by pimps or prostitution agencies"); *see also supra* n.7 (quoting Complaint's averments of third-party posting and payments); *cf. supra* 2-3 & n.4 & *infra* § III.E (dependency of trafficking claims on allegations of unlawful third-party postings).

[20] *E.g.*, *Doe No. 1*, 817 F.3d at 17-21; *M.A.*, 809 F. Supp. 2d at 1050-53; *see also, e.g.*, *Bates*, 2006 WL 3813758, at *15; *Armslist*, 926 N.W.2d at 724 ¶ 45.

MOTION TO DISMISS CONSOLIDATED MASTER VERIFIED COMPLAINT FOR FORFEITURE

Prior cases involving Backpage.com illustrate how Section 230 immunity applies here. In *Doe No. 1*, all theories of liability alleged third-party traffickers posted ads relating to plaintiffs, and that Backpage.com "deliberate[ly] structur[ed] … its website to facilitate sex trafficking" and used moderation processes that removed material from ads. 817 F.3d at 16-17 & n.2.[21] The court dismissed, finding these general features "amount to neither affirmative participation in an illegal venture nor active … content creation." *Doe No. 1*, 104 F. Supp. 3d at 157, 162. The First Circuit affirmed, holding the claims uniformly "address[ed] the structure and operation of the Backpage website" and "decisions about how to treat [third-party] postings." *Doe No. 1*, 817 F.3d at 21 ("Features [that are part and parcel of the website's design and operation] reflect choices about what content can appear … and in what form" and are "within the purview of traditional publisher functions.") (cited with approval in *Force*, 934 F.3d at 64, 71; *Armslist*, 926 N.W.2d at 724 ¶¶ 45-46; and *Herrick v. Grindr, LLC*, 306 F. Supp. 3d 579, 588 (S.D.N.Y. 2018), *aff'd*, 765 F. App'x 586, 590 (2d Cir. 2019)).[22]

Under the same settled principles, a California state court dismissed under Section 230 an indictment based on allegations similar to those here against some of

---

[21] *Compare*, *e.g.*, Compl. ¶ 127 (alleging "Backpage instituted and maintained policies … designed to cultivate and sustain its promotion of sex trafficking and prostitution"); *id.* ¶ 126 (alleging "all levels of Backpage management, including the Backpage Operators, were aware of Backpage's role in promoting criminal activity"); *id.* ¶ 127.e (citing "email … acknowledging that … illegal content removed through Backpage's moderation … was usually money for sex act") (internal quotation marks omitted); *id.* ¶ 126.c (alleging "a practice of altering ads before publication by deleting words, phrases and images" that "served to sanitize the content of innumerable ad[s]").

[22] In *M.A.* before that, a plaintiff alleging she was trafficked by a third party who posted ads on Backpage.com attacked the site's features as "a highly tuned marketing site" with a "veil of legality" that "knew" posts "were ad[s] for prostitution" and "sexual contact with minors." 809 F. Supp. 2d at 1043-44. The court rejected these claims challenging the site's "construct and operation," *id.* at 1050, observing that a site is "immune under § 230 unless it created the offending ads," and "however horrific the consequences … the ads were created by [the pimp]." *Id.* at 1051.

the same Claimants. *Ferrer I*, 2016 WL 7237305, at *1-5.  Prosecutors alleged pimping based on defendants operating Backpage.com to "profit from … ad placement" by third parties, but as "the substance of [all] ads came from the original" as posted, the court held "[t]his is not prohibited activity" but rather "falls within … protected editorial functions." *Id.* at *5 (citing, *inter alia*, *Doe No. 1*, 817 F.3d at 20-21).  A second California court concurred, again granting a demurrer after the State, rather than appealing , filed new charges that defendants "conspired to create and organize a website that facilitates sex trafficking." *Ferrer II*, slip op. 1.  It rejected charges based on Backpage.com's "system where terms would be deleted or blocked … but the user would still be allowed to post," holding "such actions generally fall within the scope of protected" Section 230 activity.  *Id.* 13-14.  It held that deleting "code for underage girls," allegedly in order to "sanitize" ads, is not "material contribution to the offensive content" that defeats Section 230 immunity.[23]

Many cases involving other online services are to the same effect.[24]

---

[23] *Ferrer II*, slip op. 14.  The court further held immunity is not lost based on "overall course of conduct," especially where Backpage.com did nothing to "require" offensive content, nor based on claims the site "'manipulated' ad[s] to evade law enforcement." *Id.* 16-17.  Notably, the court also dismissed money-laundering charges that were dependent on the pimping allegations, holding that, as defendants were immune for operating an online forum for third-party speech, the decision to charge for ads also constituted activity protected by the CDA.  *Id.* 18; *see also infra* § III.E.

[24] *See, e.g.*, *Carafano*, 339 F.3d at 1124-25 (§ 230 barred claims involving identity thief's creation of dating profile for actress who then received sexually explicit and threatening messages); *Doe II v. MySpace Inc.*, 175 Cal. App. 4th 561, 573 (2009) (plaintiffs "want MySpace to ensure that sexual predators do not gain access to (*i.e.*, communicate with) minors on its Web site," yet "activity … to restrict or make available certain material … is expressly covered by section 230"); *Doe v. MySpace, Inc.*, 528 F.3d 413 419-20 (5th Cir. 2008) (§ 230 barred claims seeking to hold MySpace liable for sexual assault of 14-year-old victim by a man who met her on the site); *Green v. AOL*, 318 F.3d 465, 471 (3d Cir. 2003) (plaintiff sought "to hold AOL liable for decisions relating to the monitoring, screening, and deletion of content from its network—actions quintessentially related to a publisher's role"); *Herrick*, 306 F. Supp. 3d at 588 ("To the extent Herrick has identified a defect in Grindr's design … it is inextricably related to Grindr's role in

**B.    Section 230 Bars the Forfeiture Claims Because the Complaint Does Not Allege Ads on Backpage.com Were Created By Anyone Other Than the Third-Parties Who Posted Them.**

The common thread in the cases above is that website operators cannot be held liable for curating and/or editing content that third parties post.  Section 230 immunity is not avoided by attacking a website's basic design and configuration.  Where "third-party content … appears as an essential component" of all claims, *Doe No. 1*, 817 F.3d at 22—as it does here—the government seeks what Section 230 prohibits:  liability for Claimants as "publisher or speaker" of ads third parties created.  47 U.S.C. § 230(c)(1).  *See also, e.g.*, *MySpace*, 528 F.3d at 419-20 (§ 230 barred holding site liable for sex assault of 14-year-old by man she met on site) (cited in *Lee v. OfferUp, Inc.*, 2018 WL 4283371, at *4 (E.D. La. Sept. 7, 2018)).  The Complaint leaves no question all "Bases for Forfeiture" arise entirely from third-party content. *Supra* 2-3, 9.  "So long as a third party willingly provides the essential [] content," the service provider "receives full immunity, regardless of the editing or selection process."  *Free Kick Master*, 140 F. Supp. 3d at 981 (quoting *Carafano*, 339 F.3d at 1124).

This underscores another fundamental problem, which is that Section 230 analyses must focus on who authored, created, and posted the specific allegedly actionable content.[25]  The "case law confirms that the immunity analysis turns on who was responsible for *the specific harmful material at issue*, not on whether the service provider was responsible for the general features and mechanisms of the service or other content … that might have also appeared on the service."  *Bates*, 2006 WL 3813758, at

---

editing or removing [] content—precisely the role for which Section 230 provides immunity.");  *Lycos*, 478 F.3d at 422 (rejecting "construct and operation" theory); *StubHub*, 727 S.E.2d 561-62 (rejecting "entire website" theory).

[25]   *See FTC v. Accusearch Inc.*, 570 F.3d 1187, 1198-99 (10th Cir. 2009) (online service can be liable *only* to the extent it created or developed "*specific content* that was the *source* of the alleged liability") (emphases added); *Beckman v. Match.com*, 2013 WL 2355512, at *4 (D. Nev. May 29, 2013) (same), *aff'd in part, rev'd in part on other grounds*, 668 F. App'x 759 (9th Cir. 2016).  *See also, e.g.*, *Doe No. 1*, 817 F.3d at 20-21; *Jones*, 755 F.3d at 410.

*17 (citing *Carafano*, 339 F.3d 1119); *see also id.* at *16.[26] "The critical issue is whether [the website] acted as an information content provider with respect to the information that [is] claim[ed to be unlawful]," and Section 230 "bar[s] claims unless [the website] created or developed the particular information at issue." *Carafano*, 339 F.3d at 1125 (internal quotation marks and citation omitted).

The Complaint here alleges next to no facts about "particular information at issue," and what little it alleges only reinforces that Section 230 applies. As noted, it discusses specific content of only a handful of ads, *see* Compl. ¶ 125, and for each of those described in any detail, it makes clear they were posted by third parties. *See supra* 4 & n.7. The government dwells on Backpage.com's moderation practices, *e.g.*, Compl. ¶¶ 126-28, but there is no allegation they were ever applied to these five ads—or that Backpage.com did *anything* to alter them. *See id.* ¶ 125.a-e.[27] The government nowhere alleges Backpage.com "provided, created, or developed any portion or content of" any of the ads identified in the Complaint. *FAN*, 2020 WL 137154, at *7. Its allegations thus hardly constitute "sufficiently detailed facts to support a reasonable belief the government" can overcome the CDA's protections. Supp. R. G(2)(f).

If anything, the allegations *undercut* any claim that Section 230 can be avoided,

---

[26] *See also Blumenthal v. Drudge*, 992 F. Supp. 44, 51-52 (D.D.C. 1998); *Force*, 934 F.3d at 68-70; *Herrick*, 306 F. Supp. 3d at 589 ("An ICS is not the creator of offensive content unless it contributes to … what makes the content unlawful.") (citation and internal quotation marks omitted). In *M.A.*, the court held the relevant issue was whether Backpage.com was "responsible for the development of the specific content that was the source of the alleged liability." 809 F. Supp. 2d at 1051 (citation omitted).

[27] Elsewhere, the Complaint offers minimal details for ads "mostly free of coded language, but [that] included sexually provocative images" that it describes generally. Compl. ¶ 128.b. Here, too, it is clear (a) third-party posters were responsible for the content, and (b) there is no allegation the ads were altered by the website. *See also id.* ¶ 129.c (same). The only other examples of "specific" content are ads from which the Complaint quotes phrases, but only to match them to payments, *id.* ¶ 129.a-b; *cf. id.* ¶ 135.a, d; there are also no claims Backpage created or edited these ads, either.

13

as the government attacks only the moderation process generally.[28]  It cites a Senate subcommittee report's claims that this constituted "a practice of altering ads before publication by deleting words, phrases, and images indicative of criminality" that "served to sanitize the content of innumerable ad[s]." Compl. ¶ 126.c.[29]  According to the Complaint, this "had the effect of allowing otherwise neutral or innocuous terms … as coded language for sex trafficking and prostitution." *Id.* ¶ 128.c. The "gravamen of the complaint" is thus that Claimants were "directly involved in [] alleged [violations] because [Backpage.com had] content guidelines and rules" or removed some content "for violations of those rules," which is "insufficient to avoid § 230." *Free Kick Master*, 140 F. Supp. 3d at 983.  Such filtering cannot undermine Section 230 immunity, s*ee Roommates.com*, 521 F.3d at 1174 n.36, especially here, where based on the government's own descriptions, these practices, at most, *deleted* or *removed* content from ads. *See supra* 4 (citing Compl. ¶¶ 126.c, 127.a, 127.c, 127.h, 127.i).

This is fatal to the Complaint's claims for forfeiture, as Section 230's broad immunity does not permit claims based on a website's deletion of content—which is not "displayed content." *Jones*, *supra* n.25.[30]  "[R]emoving content is something publishers do, and to impose liability on the basis of such conduct *necessarily involves treating*

---

[28]  *Cf. Batzel*, 333 F.3d at 1031 ("The 'development of information' [] means [] more [] than merely editing portions of [a post] and selecting material for publication.")

[29]  This included, it is alleged, efforts "to edit the wording of such ads by removing particular terms … indicative of prostitution," *id.* ¶ 127.a, using a "list [that] prohibited use of certain terms" to "'be stripped' from ads before publication," *id.* ¶¶ 127.c, h, which "changed and evolved over time." *Id.* ¶ 127.i ("Backpage's 'moderation' policy would be adapted by adding … to the 'blocked' list.").

[30]  The Tenth Circuit decision in *Ben Ezra* exemplifies this, where it rejected plaintiff's argument that because the "Defendant deleted some stock symbols or other information," "such alteration … constitutes 'creation or development' of information and transforms Defendant into an 'information content provider.'" Instead, the court held, "deleting [] allegedly inaccurate stock quotation information … was simply engaging in the editorial functions Congress sought to protect." 206 F.3d at 985-86.

*the liable party as a publisher*" under Section 230.  *FAN*, 2020 WL 137154, at *8.  Such deletion of content cannot be a basis for liability because any harm comes from the substance of ads third parties post.[31]  That is particularly true for the kinds of automatic stripping of terms this Complaint alleges, as "algorithmic filtering … and display functions" are "features [] available equally to all users" within Section 230 immunity. *Herrick*, 306 F. Supp. 3d at 589.  Section 230 "plainly allow[s ] algorithms to … block content [] deemed objectionable," *Force*, 934 F.3d at 70 n.24,[32] as the Ninth Circuit recently agreed.  *See FAN*, 2020 WL 137154, at *7 (discussing *Dyroff*, 934 F.3d at 1098).

For all the government's claims about "stripping" and deletions of language from ads, there is no allegation those practices changed the meaning of what Backpage.com's third-party users originally posted.  The government maintains the SUA was apparent from the ads as posted, and nothing in the website's alleged moderation practices contributed to what allegedly made ads unlawful.[33]  Per the Complaint, this "'moderation' only caused ads explicitly promoting sex trafficking to become more coded and implicit," Compl. ¶ 128, leaving "otherwise neutral or innocuous terms to

---

[31]   *See supra* 8-10; *Doe No. 1*, 817 F.3d at 20 ("cho[osing] what words or phrases can be displayed" are "publisher functions under any coherent definition," and § 230 bars liability based on "posting standards," including "which terms are permitted").  *Accord Silver v. Quora, Inc.*, 2016 WL 9777159, at *3 (D.N.M. June 13, 2016) ("Silver does not [] contend [] Quora provided, created, or developed … content, aside from possibly 'editing'" it).  *See La'Tiejira*, 272 F. Supp. 3d at 993-94 ("monitoring, screening, and deletion of user-generated content are actions quintessentially related to a publisher[]") (citation, internal quotation marks, editing omitted); *GoDaddy.com, LLC v. Toups*, 429 S.W.3d 752, 758  (Tex. App. 2015) ("removing content is something publishers do").

[32]   The Second Circuit specifically rejected any notion that "Congress implicitly intended to restrain the automation of interactive computer services' publishing activities in order for them to retain immunity."  *Force*, 934 F.3d at 67.  As the court noted, it would "turn Section 230(c)(1) upside down to hold that Congress intended that when publishers of third-party content become especially adept at performing the functions of publishers, they are no longer immunized."  *Id.*

[33]   *See, e.g.*, Compl. ¶¶ 145, 239-41; *see also, e.g.*, *id.* ¶ 107 ("Backpage advertisers posted sex trafficking ads"), *id.* ¶ 125.a-e (describing ads); *id.* ¶¶ 128.a-b, 129.b-c (same).

---

MOTION TO DISMISS CONSOLIDATED MASTER VERIFIED COMPLAINT FOR FORFEITURE

be understood." *Id.* ¶ 128.c.  This is "insufficient to render the website [] a content provider," as it is "the third-party who is responsible for the illegal content of the ad." *Ferrer II*, slip op. 14 (citing *Jones*, 755 F.3d at 414).  The Complaint's allegations based on moderation thus seek liability not for anything Backpage.com or Claimants created or posted, but for content allegedly *rejected* from the site.  Section 230 "forbids … liability [for] a service provider for … editorial and self-regulatory functions." *Zeran*, 129 F.3d at 331. As the Ninth Circuit held, "any activity that can be boiled down to deciding whether to exclude material that third parties seek to post online is **perforce immune** under section 230." *Roommates*, 521 F.3d at 1170-71 (emphasis added).

### C.   The Government Cannot Evade Section 230 By Claiming a Website "Facilitated" Illegal Conduct.

The government cannot avoid Section 230 on theories that Backpage.com's practices "facilitated" traffickers, or "encouraged" or "promoted" illicit conduct. Compl. § III.A (header); *id.* ¶¶ 126, 126.c, 127, 127.h-i, 131. Such allegations "*necessarily* treat the website as a publisher or speaker of content provided by third parties and, thus, are precluded by section 230(c)(1)." *Doe No. 1*, 817 F.3d at 22 (emphasis added).[34] As the Ninth Circuit recognized, "a clever lawyer [can] argue that *something* the website operator did encouraged the illegality," but such cases "must be resolved in favor of immunity, lest we cut the heart out of section 230 by forcing websites to … fight[] off claims that they promoted or encouraged—or at least tacitly assented to—the illegality of third parties." *Roommates*, 521 F.3d at 1174.  *See also Goddard v. Google, Inc.*, 640 F. Supp. 2d 1193, 1196 (N.D. Cal. 2009) (immunity despite claims ad program "encourages[,] collaborates in the development of [and] effectively, requires" illegal content).

Nor is a provider's knowledge that its service may be used for unlawful activity grounds for denying immunity.  "It is … well established that notice of the unlawful

---

[34]  *See also, e.g.*, *MySpace*, 528 F.3d at 421-22.  In *Ferrer I*, the court dismissed pimping charges against certain Claimants here, rejecting the same encouragement theory.  2016 WL 7237305, at *7 (citing Ninth Circuit, California, and other authority).

nature of the information provided is not enough to make it the service provider's own speech." *Lycos*, 478 F.3d at 420.[35]   Under Section 230, even if an online provider has *actual* knowledge of specific illegal content posted on its site, failure to delete does not make it liable (and the Complaint makes no allegation Claimants had actual knowledge of specific illegal content posted to Backpage).  *E.g.*, *Zeran*, 129 F.3d at 331-33.[36]   The same applies to allegations about a site's intentions, such as claims that Backpage.com's "policies and procedures [were] designed to cultivate and sustain [] promotion of sex trafficking and prostitution," Compl. ¶ 127, as there is no Section 230 "exception" for allegations of "intentional violation of criminal law." *Barnes*, 2006 WL 3813758, at *4.[37]

---

[35]   *See also La'Tiejira*, 272 F. Supp. 3d at 994 ("CDA immunity 'applies even after notice of the potentially unlawful nature of the third-party content'") (quoting *Lycos*, 479 F.3d at 420); *accord Armslist*, 926 N.W.2d at 721 ¶ 33, *id.* at 726 ¶ 52.  *Compare, e.g.*, Compl. ¶ 126 (alleging "management … were aware of Backpage's role in promoting criminal activity"); *id.* ¶ 126.c (citing Backpage.com's alleged "Knowing Facilitation of Online Sex Trafficking"); *id.* ¶ 127.e & i (alleged "acknowledg[ment]" of "illegal content" and "sex trafficking").

[36]   Thus, the *M.A.* court rejected claims that immunity should be denied because Backpage.com allegedly knew or should have known "minors [were] sexually trafficked on its website."  809 F. Supp. 2d at 1050-51.  *See also Ferrer I*, 2016 WL 7237305, at *7 ("[O]nline publishers are not subject to notice liability.").

[37]   *See also, e.g., Ferrer II*, slip. op. 15; *S.C. v. Dirty World, LLC*, 2012 WL 3335284, at *4 (W.D. Mo. Mar. 12, 2012) (rejecting claims that site intended to elicit defamatory content); *StubHub*, 727 S.E.2d at 562 (disregarding allegations that StubHub's purpose was to violate anti-scalping laws).  Thus, allegations of profit motive do not affect Section 230 immunity.  *See, e.g.*, Compl. ¶ 107 (alleging "Backpage realized annual profits of tens of millions of dollars from adult ad[s]" including where "advertisers posted sex trafficking ads"); *see also id.* ¶¶ 108-09.  Claims that Backpage.com "elicit[ed] online content for profit," or sought to profit from posters' "illegal prostitution activities" are simply irrelevant.  *M.A.*, 809 F. Supp. 2d at 1045, 1050, 1053.  There is "no 'for-profit exception to § 230's broad … immunity,'" and the "fact that a website elicits online content for profit *is immaterial*; the only relevant inquiry is whether the interactive service provider creates or develops that content."  *FAN*, 2020 WL 137154, at *7 (quoting *M.A.*, 809 F. Supp. 2d at 1050) (quoting *Goddard*, 2008 WL 5245490, at *3) (emphasis added; internal quotation marks omitted).

17

**D.      Parallel Criminal Proceedings are Irrelevant.**

This civil forfeiture action is barred by Section 230 notwithstanding that the government seeks to justify it based on alleged criminal violations.  While an exception exists for federal prosecutions, 47 U.S.C. § 230(e)(1), this is a *civil* action (as this Court has noted), and courts uniformly hold civil cases under federal criminal laws are not "enforcement" under Section 230(e)(1).[38]  In *Doe No. 1*, plaintiffs claimed Section 230(e)(1) allowed their claims because civil suits "enforce" Sections 1591 and 1595, but the court held that argument, "though creative, does not withstand scrutiny."  817 F.3d at 23.  The *Craigslist* court held the same as to Sheriff Dart's effort to avoid Section 230 under the Travel Act, 665 F. Supp. 2d at 965 n.6 (discussing 18 U.S.C. § 1952), and a California federal court rejected a similar attempt to avoid Section 230 for money laundering by invoking 18 U.S.C. § 1957.  *See Goddard v. Google, Inc.*, 2008 WL 5245490, at *5 n.5 (N.D. Cal. Dec. 17, 2008).[39]  Any such argument here is a non-starter.

---

[38]  Other exceptions are equally inapplicable.  Section 230(e)(5)(A) was added to allow civil actions under federal trafficking law, but only by "victim[s] of violations" and state attorneys general, neither of whom are plaintiffs here, and claims must be brought under 18 U.S.C. § 1595, which is not invoked here.  The same is true of Sections 230(e)(5)(B) & (C), which allow certain state trafficking and prostitution prosecutions, but this is not a state prosecution, and the criminal laws invoked are federal.  (Note also that individual Claimants here who are defendants in the Arizona criminal case challenge that prosecution, even under the federal Travel Act, as being precluded by the CDA 230, as it depends on state criminal offenses that Section 230 immunizes.)

[39]  This outcome holds not only for the bases of civil liability asserted here, but for all federal criminal statutes that allow civil actions.  The Second Circuit held as much in *Force* under the Anti-Terrorism Act.  934 F.3d at 71-72 (reviewing 18 U.S.C. § 2333); *accord Gonzalez v. Google*, 335 F. Supp. 3d 1156, 1169 (N.D. Cal. 2018); *see also Fields v. Twitter, Inc.*, 217 F. Supp. 3d 1116, 1123-28 (N.D. Cal. 2016), *aff'd on other grounds*, 881 F.3d 739 (9th Cir. 2018).  The same applied to civil claims under federal child pornography law in *Bates*, 2006 WL 3813758, at *5, *22 (considering 18 U.S.C. §§ 2252A & 2255); *see also GoDaddy*, 429 S.W.3d at 760 ("plain language of [§ 230] contemplates … immunity from civil suit … even when the posted content" could be prosecuted, such as for child pornography or obscenity), and to the Consumer Protection Act in *Hinton v. Amazon.com.dedc, LLC*, 72 F. Supp. 3d 685, 690-91 (S.D. Miss. 2014); *see also Kimzey v. Yelp! Inc.*, 836 F.3d 1263 (9th Cir. 2016) (Ninth Circuit application of § 230 where

### E.   Predicate Money Laundering Claims Do Not Save the Complaint.

The civil forfeiture claims based on money laundering must be dismissed under Section 230. As *Ferrer I* held, "online publishing … is generally provided immunity under the CDA" and that "extend[s] … to functions [] associated with publishing … such as accepting payment." 2016 WL 7237305, at *10. *See also Doe No. 1*, 817 F.3d at 20-22 (§ 230 immunized decision to charge money to allow third-party content). Permitting claims like money laundering to proceed based on receiving proceeds from third-party content would "impermissibl[y] recharacteriz[e] allegations that ultimately turn on [] hosting" immunized by Section 230. *Goddard*, 2008 WL 5245490, at *5 n.5.

*Ferrer II* also dismissed "money laundering charges based on prostitution." Slip. op 11. The court rejected charges that "Defendants acquired income from prostitution … ad[s on] Backpage.com," *id*. 12, that involved allegedly "knowing [funds] represented the proceeds of the prostitution," *id*. 17, because "the CDA's immunity" must "inform[] the [] analysis." *Id*. 18. Here, the government likewise seeks forfeitures as if Backpage.com was "the speaker of the offensive content leading to prostitution, which is prohibited under the immunity provision of the CDA." *Id*. The "purported use of [the] proceeds … cannot [] serve as the basis for money laundering charges," because "charg[ing] money for [] postings constitutes activity protected under the CDA." *Id*.

In the Complaint, virtually all the Defendant Assets "are alleged to [be] traceable to SUA, involved in money laundering, or both."[40] The "SUA" is defined as alleged

---

civil RICO was alleged).

[40]   Compl. ¶¶ 152-53, 155, 157-58, 160, 164, 166, 171, 173, 175, 177, 180-81, 185, 187, 189, 191, 195-97, 199-200, 202, 204, 206, 208, 210, 212, 214, 216, 218, 232.  In some cases the Complaint is clearer that funds allegedly "involved in money laundering" are only those "traceable to SUA" comprising alleged CDA-immunized Section 1591 and 1952 violations. *E.g.*, *id*. ¶¶ 203, 205, 207, 209, 211, 213, 215, 217, 219.  Elsewhere, the tie to Section 230-immunized activity is more explicit. *E.g.*, *id*. ¶ 151 (funds alleged as "payments for the operation of Backpage.com"); ¶¶ 203, 205 (discussing funds as "payments for [] ads"), ¶ 201.b (funds as "payment for Backpage[.com] services … to promote [] trafficking and [] prostitution"); ¶ 153 (funds "used to promote and

Section 1591 and Section 1952 violations allegedly connected to Backpage.com, *see* Compl. ¶ 100, the attempt to impose civil liability for which falls under Section 230 immunity as explained above. *See supra* §§ III.A-C. These alleged violations also form a basis for the money laundering claims. *See, e.g.*, Compl. ¶ 102.c; *id.* ¶ 124. The money laundering claims are therefore precluded by Section 230, for the same reasons they were in, *e.g.*, *Ferrer II*. Moreover, the mass of Defendant Assets embraced by the Complaint derive not only from the five ads described in detail therein, or the handful of others whose contents are cited, *see supra* 13, but from the multitude of ads Backpage.com hosted. The money laundering claims thus depend on presuming all ads at the site for which funds were received were for trafficking and illegal prostitution, a premise that has been soundly and repeatedly rejected.[41] Ultimately, as Section 230 provides "*an immunity from suit* rather than a mere defense to liability," *Nemet Chevrolet*, 591 F.3d at 254, it requires dismissal of the complaint for civil forfeiture here, including its claims based on money laundering.[42]

---

facilitate prostitution"); ¶ 193 (alleging funds were "proceeds of SUA").

[41]   *E.g.*, *Ferrer I*, 2016 WL 7237305, at*9; *Backpage.com v. Dart*, 807 F.3d at 234 ("not all ad[s] for sex are ads[]for illegal sex" and "[t]here is no estimate of how many [Backpage] ads … promote illegal activity"); *Craigslist*, 665 F. Supp. 2d at 968. *Compare* Compl. ¶ 123 ("most of Backpage's earnings [were] proceeds of illegal activity, specifically prostitution and sex trafficking" through ads users posted). This also begs the question how Claimants (or the government) could know all funds were proceeds of criminal activity, *see, e.g.*, 18 U.S.C. §§ 1956(a)(1)(B)(i), (a)(2)(B); 1957(a), when the allegation is simply (and impermissibly) that "all" adult ads at Backpage were unlawful.

[42]   Insofar as any claims in the Complaint mean to allege money laundering violations *not* connected to Section 1591 and/or Section 1952 SUA, those allegations fall far short under Supp. R. G(2)(f) of being "sufficiently detailed … to support a reasonable belief" the government "will be able to meet its burden" of proving Section 230 does not apply. *See supra* 6. In this connection, to the extent each allegation involves funds "traceable to SUA, involved in money laundering, or both," *see supra* n.40, this does no more than allege two competing alternatives—liability for SUA immunized by Section 230, or for money laundering that is (in some unspecified way) unrelated to that SUA—which constitutes insufficient pleading under, *e.g.*, *Eclectic Properties*, *supra* n.11.

Respectfully submitted,


DATED: February 5, 2020        Robert Corn-Revere
                               James C. Grant
                               DAVIS WRIGHT TREMAINE LLP
                               By: /s/Robert Corn-Revere_____
                                    Robert Corn-Revere
                                    Attorneys for James Larkin
                                    and Michael Lacey


DATED: February 5, 2020        Thomas H. Bienert, Jr.
                               Whitney Z. Bernstein
                               BIENERT KATZMAN, PLC
                               By: /s/ Thomas H. Bienert, Jr._____
                                    Thomas H. Bienert, Jr.
                                    Attorneys for James Larkin


DATED: February 5, 2020        Gary S. Lincenberg
                               Ariel A. Neuman
                               Gopi K. Panchapakesan
                               BIRD, MARELLA, BOXER, WOLPERT,
                               NESSIM, DROOKS, LINCENBERG &
                               RHOW, P.C.
                               By: /s/ Ariel A. Neuman_____
                                    Ariel A. Neuman
                                    Attorneys for John Brunst, Mary Ann
                                    Brunst, and The Brunst Family Trust


DATED: February 5, 2020        Paul J. Cambria, Jr.
                               LIPSITZ GREEN SCIME CAMBRIA LLP
                               By: /s/ Paul J. Cambria, Jr._____
                                    Paul J. Cambria, Jr.
                                    Attorneys for Michael Lacey


DATED: February 5, 2020        John K. Rubiner
                               BARTON, KLUGMAN & OETTING LLP
                               By: /s/ John K. Rubiner_____
                                    John K. Rubiner
                                    Attorneys for Scott Spear

MOTION TO DISMISS CONSOLIDATED MASTER VERIFIED COMPLAINT FOR FORFEITURE

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DATED: February 5, 2020    Daniel J. Quigley
               DANIEL J. QUIGLEY, PLC
               By: /s/ Daniel J. Quigley
                  Daniel J. Quigley
                  Attorneys for Medalist Holdings, Inc.,
                  Leeward Holdings, LLC, Camarillo
                  Holdings, LLC, Vermillion Holdings,
                  LLC, Cereus Properties, LLC, and
                  Shearwater Investments, LLC

DATED: February 5, 2020    David W. Wiechert
               WIECHERT, MUNK & GOLDSTEIN, PC
               By: /s/ David W. Weichert
                  David W. Weichert
                  Attorneys for Medalist Holdings, Inc.,
                  Leeward Holdings, LLC, Camarillo
                  Holdings, LLC, Vermillion Holdings,
                  LLC, Cereus Properties, LLC, and
                  Shearwater Investments, LLC

MOTION TO DISMISS CONSOLIDATED MASTER VERIFIED COMPLAINT FOR FORFEITURE

# CERTIFICATE OF SERVICE

CERTIFICATE OF SERVICE I certify that on this 5th day of February, 2020, I electronically transmitted a PDF version of this document to the Clerk of Court, using the CM/ECF System, for filing and for transmittal of a Notice of Electronic Filing to the following CM/ECF registrants listed below.

 /s/ Robert Corn-Revere
Robert Corn-Revere

**CM/ECF Registrants:**

John J. Kucera, john.kucera@usdoj.gov
Daniel G. Boyle, daniel.boyle2@usdoj.gov
David W. Wiechert, dwiechert@aol.com
Gary S. Lincenberg, glincenberg@birdmarella.com
Ariel Neuman, aneuman@birdmarella.com
Gopi K. Panchapakesan, gpanchapakesan@birdmarella.com
John K. Rubiner, jrubiner@bkolaw.com
Paul J. Cambria, Jr., pcambria@lglaw.com
Erin E. McCampbell, emccampbell@lglaw.com
Bruce Feder, bf@federlawpa.com
Whitney Z. Bernstein, wbernstein@bienertkatzman.com
Daniel J. Quigley, quigley@djqplc.com
Janey Henze Cook, janey@henzecookmurphy.com