NICOLA T HANNA
United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division
STEVEN R. WELK
Assistant United States Attorney
Chief, Asset Forfeiture Section
JOHN J. KUCERA (Cal. Bar No. 274184)
DAN G. BOYLE (Cal. Bar No. Pending)
Assistant United States Attorneys
Asset Forfeiture Section
    Federal Courthouse, 14th Floor
    312 North Spring Street
    Los Angeles, California 90012
    Telephone:  (213) 894-2426
    Facsimile:  (213) 894-7177
    E-mail: Daniel.Boyle2@usdoj.gov
            John.Kucera@usdoj.gov


Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CV No. 18-08420-RGK(PJWx) |
| PLAINTIFF, | REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR LEAVE TO FILE A FIRST AMENDED CONSOLIDATED MASTER COMPLAINT FOR FORFEITURE; MEMORANDUM OF POINTS AND AUTHORITIES |
| V. | |
| $1,546,076.35 IN BANK FUNDS SEIZED FROM REPUBLIC BANK OF ARIZONA ACCOUNT '1889, ET AL., | |
| DEFENDANTS. | |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Dan G. Boyle and John J. Kucera, hereby files this Reply in support of its Motion for Leave to File a First Amended Consolidated Master Complaint for Forfeiture. (ECF No. 98).

1    This Reply is based upon the attached Reply Memorandum of Points

2 and Authorities.

3  Dated: April 20, 2020                Respectfully submitted,

4                                       NICOLA T. HANNA
                                        United States Attorney
5                                       BRANDON D. FOX
                                        Assistant United States Attorney
6                                       Chief, Criminal Division
                                        STEVEN R. WELK
7                                       Assistant United States Attorney
                                        Chief, Asset Forfeiture Section
8
                                        _____/s/ Dan G. Boyle_____
9                                       DAN G. BOYLE
                                        JOHN J. KUCERA
10                                      Assistant United States Attorneys

11                                      Attorneys for Plaintiff
                                        UNITED STATES OF AMERICA
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES**

**PRELIMINARY STATEMENT**

On March 18, 2020, the government applied to this Court for leave to file a First Amended Consolidated Master Complaint (the "Motion" or "Mot."), seeking leave to amend the current Consolidated Master Complaint in this action (the "CMC") by no later than May 15, 2020. As described in the Motion, the government sought leave to amend for two principle reasons: First, to correct certain asset descriptions to match the relevant government databases; and second, as part of a stipulated resolution of claimant Michael Lacey's motion for the return of allegedly-untainted funds (ECF No. 105, 2:18-cv-06742-RGK-PJW) and the Court's related Order to conduct discovery (ECF No. 131, 2:18-cv-06742-RGK-PJW).[1]

While some Claimants either consented or took no position on the Motion (see Mot. at ¶ 6-9), certain Claimants (hereinafter "Opposing-Claimants") filed a Response to the Motion on April 13, 2020 (ECF No. 101). In their Response, Opposing-Claimants concede that the government should be granted leave to amend, but make the extraordinary request that the Court condition leave to amend on a functionally-indefinite continuance of the related criminal trial currently scheduled for August 17, 2020, before the Honorable Susan M. Brnovich, District Court Judge for the District of Arizona. (See Response, at 8 ("Claimants therefore request that the Court condition approval of the government's requested amendment on its stipulation

---

[1] The Court signed the stipulated consent judgment offered jointly by the government and claimants Lacey and Jill Anderson on March 20, 2020 (ECF No. 99), and the government is in the process of returning approximately $450,376.48 in accordance with that consent judgment.

to postpone the parallel criminal proceedings to allow time for

Claimants' forfeiture challenges to be heard and decided.")).

Opposing-Claimants' requested continuance is unnecessary, logistically-unworkable, contrary to circuit precedent, and an unwarranted intrusion on the prerogative of another court to control its own docket.  If Opposing-Claimants take issue with Judge Brnovich's recent orders setting the date of their criminal trial, those concerns should be raised before that Court in the ordinary process.  While Opposing-Claimants now argue that a continuance is required because they need access to seized funds to prepare for that criminal trial, for more than a year the government has repeatedly invited Claimants to make a showing under United States v. Monsanto, 491 U.S. 600 (1989) on this very issue.  To date, no Claimant has been willing to undertake such a showing, and Claimants should not be permitted to leverage the simple filing of an amended civil forfeiture complaint in order to indefinitely continue a criminal trial in another district because they cannot or will not do so.

**ARGUMENT**

**I.   The Motion for Leave to Amend Should be Granted**

Opposing-Claimants have raised no substantive reason the Motion should not be granted (although their proposed condition is addressed below).[2] As discussed in the Motion, the primary substantive change

---

[2] Opposing-Claimants' citations to L.R. 7-3 lack merit.  The government's response to Opposing-Claimants' list of demands made clear that their proposed conditions on amendment – including indefinitely continuing a recently scheduled multi-defendant criminal trial in another judicial district – were simply unacceptable and frankly unserious, leaving the parties plainly "unable to reach a resolution which eliminates the necessity for a hearing." C.D.Cal. L.R. 7-3.  Notwithstanding this disagreement, the government's Motion

contemplated by the government would be to add certain additional asset-tracing as part of the stipulated resolution of Claimant Lacey's prior motion for the return of allegedly-untainted funds. (<u>See</u> ECF No. 99).[3]  Other amendments contemplated by the government would consist of aligning assets and descriptions in the CMC with those in the appropriate agency and United States Marshal's Service databases in order to facilitate disposition of assets at any partial or complete disposition of this action. (<u>See</u> Mot. at ¶ 2-3).[4]

## II.   Opposing-Claimants' Request for an Indefinite Continuance of the Parallel Criminal Trial Should Be Denied

Other than noting a court's inherent authority, Opposing-Claimants have offered no authority supporting their request to condition any amendment on an effectively-indefinite continuance of the criminal trial. (<u>See</u> Response, at 7).  This lack of authority is unsurprising, as Opposing-Claimants' request would turn statutory forfeiture law on its head by functionally mandating that a civil forfeiture proceeding – including full civil discovery – advance ahead of a parallel criminal action, regardless of the consequences.

---

plainly noted when and how the government had attempted to confer, and included the positions of all Claimants.  <u>See</u> Mot., at ¶ 6-9.

[3] As reflected in that stipulation, the government has agreed to return some, but not all, of the funds from one of the seized accounts (<u>see</u> ECE No. 97, at ¶ 7 (agreeing to return $375,188.24 of $515,899.85 seized from Republic Bank of Arizona Account '2485)), and intends to amend the CMC to properly reflect the relevant tracing for the remaining funds after this partial return.  As case in point, the return of these particular funds was complicated and delayed as a result of the incommensurate descriptions in the CMC and the various agencies' databases.

[4] Since the filing of the Motion, the government's records examiners reviewing previously-mentioned asset databases (<u>see</u> Mot. at ¶ 2-3) have also identified three additional assets surrendered by cooperating witness Carl Ferrer, all of which are in the name another cooperating witness, Daniel Hyer, which the government intends to add to any amended CMC.

Such a result is at odds with the text of 18 U.S.C. § 981(g), which provides a statutory process for staying civil actions until the close of a parallel criminal case upon the motion of either the government or the criminal defendant, including to protect the defendant's own rights against self-incrimination. See 18 U.S.C. § 981(g)(1-2).  As the Ninth Circuit explained in United States v. Liquidators of European Fed. Credit Bank, it is by statutory design that criminal proceedings generally advance ahead of a parallel civil forfeiture action:

> The forfeiture statutes generally allow the government to pursue both civil forfeiture and criminal forfeiture at the same time.  Importantly, those statutes permit the government to seek a stay of the civil forfeiture proceedings while the government conducts a criminal prosecution or investigation.  As discussed above, if the government's criminal forfeiture action fails, it may then pursue civil forfeiture.  But, as here, once the government has sought—but failed—to achieve civil forfeiture, res judicata prohibits criminal forfeiture of the same property.  This system provides the maximum benefit to the government: a civil forfeiture action permits the government to seize the property in question while it pursues a criminal investigation and possible prosecution and, even if the criminal prosecution fails (or is not begun), the government still may pursue civil forfeiture (by asking the court to dissolve the stay in the civil action). This system also promotes the goals of res judicata: fairness, finality, and avoidance of duplicate judicial proceedings.

630 F.3d 1139, 1152 (9th Cir. 2011) (internal citation omitted). Here, Opposing-Claimants are seeking to use a motion to amend as an end-run around the statutory scheme described in Liquidators, forcing this Court to make rulings that might have res judicata effects in the criminal proceedings.

Even if Opposing-Claimants' condition could be squared with longstanding policy and precedent, it would be procedurally

4

1  unworkable.  Indeed, the vague nature of Opposing-Claimants'

2  requested condition – to continue the criminal action in the District

3  of Arizona until "Claimants' forfeiture challenges [are] heard and

4  decided" (Response, at 8) – is further proof of the unserious nature

5  of this demand.  Opposing-Claimants fail to specify what developments

6  might meet this condition:  Denial of a motion to dismiss?  Denial of

7  summary judgment in their favor?  A jury verdict? A final appeal?

8  What is clear is that Opposing-Claimants' requested continuance would

9  lead to complicated discovery in this consolidated action, at the

10 very least including the government's special interrogatories.[5]

11 **III.  The Opposing-Claimants Have Never Attempted to Make the Required**
       **Showing under United States v. Monsanto**

12

13     The sole justification Opposing-Claimants offer for the

14

_____

15     [5] While Opposing-Claimants now assert that the government's
   special interrogatories are erroneous or improper, any such dispute
16 is immaterial to the present Motion.  Notably, after the government
   served the special interrogatories, no claimant asserted that the
17 interrogatories were improper or request that the interrogatories be
   withdrawn. Instead, Claimants asked the government for an additional
18 month of time to respond to the interrogatories, to which the
   government agreed. It was only after the government indicated its
19 intent to amend the CMC that Opposing-Claimants raised their newfound
   concerns with the special interrogatories and conditioned their
20 consent on the government's withdrawal of the special
   interrogatories.
21
       To be clear, Opposing-Claimants' cited case law on this issue is
22 inapposite and incomplete, and the government will respond in full
   should any Claimant actually initiate a good faith meet-and-confer or
23 bring a motion on this subject.  As the Ninth Circuit has
   unambiguously recognized, special interrogatories go beyond mere
24 assertions of ownership, and address any matter necessary to "test
   the veracity of [the claimant's] claim of ownership," including the
25 nature of claimant's interest in the property, the circumstances of
   claimant's acquiring any such interest, including the time, place,
26 manner and reason for acquiring the property and the identity of the
   person from whom the claimant acquired it. See United States v.
27 $133,420.00 in U.S. Currency, 672 F.3d 629, 635 (9th Cir. 2012).
28

5

1   extraordinary relief they request is a claim that they require assets

2   seized in this action to fund their defense in their upcoming

3   criminal trial.  (See Response, at 8 ("By stalling the case long

4   enough, the government can foreclose Claimants' rights to access

5   their funds to adequately defend the criminal case.")).  Claimants'

6   conduct throughout these proceedings betrays this claim as meritless.

7       In United States v. Monsanto, 491 U.S. 600, 615-16 (1989) and

8   Caplin & Drysdale, Chartered v. United States, 491 U.S. 617 (1989)

9   the Supreme Court held that a criminal defendant may not use

10  forfeitable assets to pay for counsel in their criminal case.  A

11  defendant may seek a probable cause hearing under Monsanto, but may

12  not relitigate the grand jury's probable cause finding underlying an

13  indictment; he may only litigate the nexus between the seized funds

14  and the charged crimes.  See Kaley v. United States, 571 U.S. 320,

15  324, 341 (2014).  To obtain such a hearing, the defendant must

16  demonstrate that he lacks other funds to pay for counsel for his

17  criminal defense.  United States v. Farmer, 274 F.3d 800, 804-05 (4th

18  Cir. 2001); United States v. Jones, 160 F.3d 641, 647-48 (10th Cir.

19  1998).  While Opposing-Claimants dispute the standard of showing

20  required under Monsanto (see Response, at 7, n.9), they acknowledge

21  that they must present a "substantial claim," which the Ninth Circuit

22  has defined to include affidavits that are "sufficiently definite,

23  specific, detailed, and nonconjectural," and "[i]f the allegations

24  are sufficient, and factual issues are raised, a hearing is

25  required."  United States v. Unimex, Inc., 991 F.2d 546, 551 (9th

26  Cir. 1993).[6]

27       [6] Opposing-Claimants' citations to Luis v. United States, 136 S.

28  Ct. 1083 (2016) are misplaced.  Luis explicitly addressed "innocent"

6

While the Opposing-Claimants spend the bulk of their Response accusing the government of engineering all manner of delay (often inaccurately[7]) (see Response, at 1-6), they fail to acknowledge that that despite more than eighteen months of litigating these consolidated actions, they have yet to take a single affirmative step under Monsanto or Unimex to obtain a hearing on the very issue they claim to be critical here:  Whether any of Claimants actually need seized funds to fund the criminal defense.  At no point has any Claimant, including any of Opposing-Claimants, attempted to bring any form of application on such a basis, even though Monsanto has been at issue for more than 18 months in these consolidated actions. (See, e.g., ECF No. 63, 2:18-cv-06742-RGK-PJW, at 5-6).  Neither has any Claimant even requested a meet-and-confer with the government to discuss such an application, despite multiple invitations by government counsel.

Opposing-Claimants' professed need to use seized funds to pay their defense counsel (and their request for an indefinite continuance of their criminal trial for that reason) is impossible to

---

substitute assets that the government was not seeking to forfeit, but rather, had restrained for the purpose of satisfying a potential money judgment. 136 S. Ct. at 1094.  Here, all assets at issue are alleged to be tainted and subject to forfeiture.

[7] While the government need not respond to all of Opposing-Claimants' dubious recitation of the history of this action, there are concerning errors in their version of events.  As just one example, they assert that the government has engineered delay by moving to dismiss Claimants' second interlocutory appeal "on grounds the Ninth Circuit already rejected in the first appeal." (Response, at 3).  This is simply wrong.  In reality, the government moved to dismiss Claimants' premature interlocutory appeal pursuant to Supreme Court precedent holding that Rule 41 motions are not subject to interlocutory appeal where tied to a criminal action.  See DiBella v. United States, 369 U.S. 121, 131-32 (1962).

square with their unwillingness to take any affirmative steps under Monsanto.[8]  Instead, Claimants have brought repeated motions and serial appeals on some of the very same legal grounds at issue in their criminal trial, suggesting that Claimants' efforts to use this Court to stay their criminal trial is a tactical choice.  The Court should reject this gamesmanship.

## CONCLUSION

For the above reasons, the government respectfully requests that the Motion for Leave to File a First Amended Consolidated Master Complaint be granted, and Opposing-Claimants' proposed conditions on that Motion be denied.

---

[8] Where Claimants have actually raised concerns regarding specific seized assets, the government has repeatedly worked with Claimants in good faith to resolve such specific disputes.  As noted above and in the government's Motion, part of the reason the government seeks leave to amend is because the government and certain Claimants were able to reach a stipulated resolution of claimant Lacey's prior motion for the return of certain seized funds.  See ECF No. 99; see also ECF No. 49 (stipulated consent judgment between government and claimant Larkin for return of $206,156.00 in seized bank funds).