Thomas H. Bienert, Jr., (CA State Bar No. 135311)
Whitney Z. Bernstein, (CA State Bar No. 304917)
**BIENERT KATZMAN PC**
903 Calle Amanacer, Suite 350
San Clemente, CA  92673
Telephone: (949) 369-3700
Facsimile: (949) 369-3701
Email: tbienert@bienertkatzman.com
        wbernstein@bienertkatzman.com
*Attorneys for James Larkin*

Additional counsel on following page

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>Plaintiff,<br><br>v.<br><br>$1,546,076.35 IN BANK FUNDS SEIZED FROM REPUBLIC BANK OF ARIZONA ACCOUNT '1889, et al.,<br><br>Defendants. | No. 2:18- CV-8420 RGK (PJWx)<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED CONSOLIDATED MASTER VERIFIED COMPLAINT FOR FORFEITURE FOR FAILINGTO STATE SUFFICIENTLY DETAILED FACTS**<br><br><u>Hearing Information</u><br>Date: August 17, 2020<br>Time: 9:00 a.m.<br>Place:   Courtroom 850<br>           255 E. Temple Street, 7th Fl.<br>           Los Angeles, CA 90012 |

Gary S. Lincenberg (CA State Bar No. 123058)
Ariel A. Neuman (CA State Bar. No. 241594)
Gopi K. Panchapakesan (CA State Bar No. 279586)
**BIRD, MARELLA, BOXER, WOLPERT, NESSIM,**
**DROOKS, LINCENBERG & RHOW, P.C.**
1875 Century Park East, 23rd Floor
Los Angeles, CA 90067
Telephone: (310) 201-2100
Facsimile: (310) 201-2110
Email: glincenberg@birdmarella.com
aneuman@birdmarella.com
gpanchapakesan@birdmarella.com
*Attorneys for John Brunst, Mary Ann Brunst,*
*and The Brunst Family Trust*

Paul J. Cambria, Jr. (CA State Bar No. 177957)
**LIPSITZ GREEN SCIME CAMBRIA LLP**
42 Delaware Avenue, Suite 120
Buffalo, NY 14202
Telephone: (716) 849-1333
Facsimile: (716) 855-1580
Email: pcambria@lglaw.com
*Attorneys for Michael Lacey*

John K. Rubiner (CA State Bar No. 155208)
**FREEMAN, MATHIS & GARY LLP**
550 S. Hope Street, Suite 2200
Los Angeles, CA 90071
Telephone: (213) 615-7000
Email: jrubiner@fmglaw.com

Bruce Feder (*admitted pro hac vice*)
**FEDER LAW OFFICE, P.A.**
2930 E. Camelback Road, Suite 160
Phoenix, AZ 85016
Telephone: (602) 257-0135
Facsimile: (602) 954-8737
Email: bf@federlawpa.com

*Attorneys for Scott Spear*

NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED
CONSOLIDATED MASTER VERIFIED COMPLAINT FOR FAILING TO
STATE SUFFICIENTLY DETAILED FACTS

1

2  David W. Wiechert, SBN 94607
   **WIECHERT, MUNK & GOLDSTIEN, PC**
3  27136 Paseo Espada, Suite B1123
4  San Juan Capistrano, CA 92675
   Tel: (949) 361-2822
5  Email: dwiechert@aol.com

6  Daniel J. Quigley (*admitted pro hac vice*)
7  **DANIEL J. QUIGLEY, PLC**
   5425 E. Broadway Blvd., Suite 352
8  Tucson, Arizona 85711
   Tel: (520) 867-4450
9  Email: quigley@djqplc.com

10 *Attorneys for Medalist Holdings,*
11 *Inc., Leeward Holdings, LLC,*
   *Camarillo Holdings, LLC, Vermillion*
12 *Holdings, LLC, Cereus Properties, LLC,*
13 *Shearwater Investments, LLC, and Broadway*
   *Capital Corp., LLC*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED
CONSOLIDATED MASTER VERIFIED COMPLAINT FOR FAILING TO
STATE SUFFICIENTLY DETAILED FACTS

**TO THE COURT AND ALL PARTIES ENTITLED TO NOTICE:**

**PLEASE TAKE NOTICE** that on August 17, 2020, at 9:00 a.m., or as soon as counsel may be heard, claimants James Larkin, Michael Lacey, Scott Spear, John Brunst, Mary Ann Brunst, The Brunst Family Trust, Medalist Holdings, Inc., Leeward Holdings, LLC, Camarillo Holdings, LLC, Vermillion Holdings, LLC, Cereus Properties, LLC, Shearwater Investments, LLC, and Broadway Capital Corp., LLC (collectively, "Claimants")[*] will bring on for hearing the following Motion to Dismiss First Amended Consolidated Master Verified Complaint for Forfeiture ("Complaint") under Rule 12(b)(6) of the Federal Rules of Civil Procedure and Rule G(8)(b)(i) of the Supplemental Rules for Admiralty or Maritime Claims and Forfeiture Actions, on grounds that the Complaint fails to state sufficiently detailed facts to support a reasonable belief the government can meet its burden of proof at trial.

This Motion is based upon this Notice, the attached Memorandum of Points and Authorities, and the Complaint's allegations.[†]

---

[*] Claimants John Brunst, Mary Ann Brunst, and The Brunst Family Trust will be referred to collectively as "Brunst." Medalist Holdings, Inc., Leeward Holdings, LLC, Camarillo Holdings, LLC, Vermillion Holdings, LLC, Cereus Properties, LLC, Shearwater Investments, LLC, and Broadway Capital Corp., LLC will be referred to collectively as the "Claimant Entities."

[†] Undersigned counsel contacted counsel for the Plaintiff, Assistant United States Attorney John Kucera, who indicated that the government opposes this motion.

1

NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED
CONSOLIDATED MASTER VERIFIED COMPLAINT FOR FAILING TO
STATE SUFFICIENTLY DETAILED FACTS

DATED:  July 1, 2020                   Respectfully submitted,

                                       Thomas H. Bienert, Jr.
                                       Whitney Z. Bernstein
                                       BIENERT | KATZMAN PC

                                       By:  */s/ Thomas H. Bienert, Jr.*
                                             Thomas H. Bienert, Jr.
                                             Attorneys for James Larkin

*Local Rule 5-4.3.4(a)(2)(i) Compliance:  Filer attests that all other signatories listed concur in the filing's content and have authorized this filing.*


DATED:  July 1, 2020                   Gary S. Lincenberg
                                       Ariel A. Neuman
                                       Gopi K. Panchapakesan
                                       BIRD, MARELLA, BOXER, WOLPERT,
                                       NESSIM, DROOKS, LINCENBERG &
                                       RHOW, P.C.

                                       By:  */s/ Gary S. Lincenberg*
                                             Gary S. Lincenberg
                                             Attorneys for John Brunst, Mary Ann
                                             Brunst, and The Brunst Family Trust


DATED:  July 1, 2020                   LIPSITZ GREEN SCIME CAMBRIA LLP

                                       By:  */s/ Paul J. Cambria, Jr.*
                                             Paul J. Cambria, Jr.
                                             Attorneys for Michael Lacey

NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED
CONSOLIDATED MASTER VERIFIED COMPLAINT FOR FAILING TO
STATE SUFFICIENTLY DETAILED FACTS

DATED:  July 1, 2020

FREEMAN, MATHIS & GARY LLP

By: _____*/s/ John K. Rubiner*_____
　　　　　　John K. Rubiner

FEDER LAW OFFICE, PA

By: _____*/s/ Bruce Feder*_____
　　　　　　Bruce Feder

Attorneys for Scott Spear

DATED:  July 1, 2020

DANIEL J. QUIGLEY, PLC

By: _____*/s/ Daniel J. Quigley*_____
　　　　　　Daniel J. Quigley

WIECHERT, MUNK & GOLDSTEIN, PC

By: _____*/s/ David W. Wiechert*_____
　　　　　　David W. Wiechert

Attorneys for Medalist Holdings, Inc.,
Leeward Holdings, LLC, Camarillo
Holdings, LLC, Vermillion Holdings, LLC,
Cereus Properties, LLC, Shearwater
Investments, LLC, and Broadway Capital
Corp., LLC

3

NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED
CONSOLIDATED MASTER VERIFIED COMPLAINT FOR FAILING TO
STATE SUFFICIENTLY DETAILED FACTS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................... i

BACKGROUND ................................................................................ 1

ARGUMENT ................................................................................... 2

    I.    The Legal Standard ................................................................ 2

    II.   The Complaint Is Deficient Because of the Lack of Specific Factual Allegations About Claimants and Claimants Asset ...................... 4

    III.  The Government's Allegations Relating to Sex Trafficking ................... 9

    IV.  The Government's Allegations Relating to the Travel Act Are Deficient ...................................................................... 11

    V.   The Government's Allegations Relating to Money Laundering Are Deficient ...................................................................... 12

        A.   Allegations Relating to 18 U.S.C. § 1957 ..................................... 12

        B.   Allegations Relating to 18 U.S.C. § 1956(a)(1)(B)(i) ..................... 13

        C.   Allegations Relating to 18 U.S.C. § 1956(a)(2) ............................. 15

    VI.  The Government's Allegations Related to Conspiracy are Deficient ..................................................................... 16

    VII.  The Complaint Fails to Establish a Substantial Connection Between the Defendant Assets and the Purported Offenses .............................. 16

CONCLUSION ................................................................................ 16

i

# TABLE OF AUTHORITIES

<u>Cases</u>                                                                                                      <u>Page(s)</u>

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ....................................................................................2

*Backpage.com, LLC v. Lynch*,
   216 F. Supp. 3d 96 (D.D.C. 2016)........................................................10

*Bell Atlantic Corp. v. Twombly*
   550 U.S. 5445 (2007) ................................................................................3

*Destfino v. Reiswig*,
   630 F.3d 952 (9th Cir. 2011) ...................................................................9

*Eclectic Props. East, LLC v. Marcus & Millichap Co.*,
   751 F.3d 9907 (9th Cir. 2014) .................................................................3

*People v. Ferrer*,
   2016 WL 7237305 (Cal. Super. Ct. Dec. 9, 2016)................................13

*People v. Ferrer*,
   No. 16FE024013 (Cal. Super. Ct. Aug. 23, 2017) ...............................13

*Shin v. Time Squared Global, LLC*,
   No. SACV-15-00943, 2015 WL 13284952 (C.D. Cal. Aug. 26, 2015)........................8

*United States. v. 5012 North 6th Street, Blytheville, Ark.*,
   No. 4:13CV00498JLH, 2014 WL 5590555 ( E.D. Ark. Nov. 3, 2014)..................3, 8

*United States v. Gallo*,
   782 F.2d 1191 (4th Cir. 1986) ...............................................................11

*United States v. Gurolla*,
   333 F.3d 944 (9th Cir. 2003) ........................................................... 14, 16

*United States v. James*,
   210 F.3d 1342 (11th Cir. 2000) .............................................................11

*United States v. Rogers*,
   321 F.3d 1226 (9th Cir. 2003) ...............................................................13

TABLE OF AUTHORITIES

*United States. v. One Gulfstream G-V Jet Aircraft,*

   941 F. Supp. 2d 1 (D.D.C. 2013) ...................................................................4, 7

*United States v. One White Crystal Covered Bad Tour Glove,*

   2012 WL 8467453 (C.D. Cal. Sept. 6, 2012) .................................................3, 4

*Warren v. Fox Family Worldwide, Inc.,*

   328 F.3d 1136 (9th Cir. 2003) ...........................................................................3

*Weiland v. Palm Beach Cty. Sheriff's Office,*

   792 F.3d 1313 (11th Cir. 2015) .......................................................................15

<u>Statutes</u>

18 U.S.C. §§ 981(a)(1)(A) & (C) .............................................................................2

18 U.S.C. § 983(c)(3) .......................................................................................... 4, 16

18 U.S.C. § 1591 .....................................................................................................2

18 U.S.C. § 1591(a) .................................................................................................9

18 U.S.C. § 1592 ...................................................................................................12

18 U.S.C. § 1956(a)(1)(B)(i) ................................................................................. 13

18 U.S.C. § 1956(a)(1)(B)(i)(a)(2) ........................................................................ 2

18 U.S.C. § 1956(a)(2) .......................................................................................... 15

18 U.S.C. § 1957 .......................................................................................... 2, 12, 13

<u>Rules</u>

Fed. R. Civ. P. 9(b) ..................................................................................................9

Fed R. Civ. P. 12(b) .................................................................................................2

Fed. R. Civ. P 12(b)(6) ............................................................................................1

<u>Other Authorities</u>

161 Cong. Rec. H596, H598-H600 (daily ed. Jan. 27, 2015)...........................10

TABLE OF AUTHORITIES

## MEMORANDUM OF POINTS AND AUTHORITIES

The government's First Amended Consolidated Master Verified Complaint for Forfeiture (the "Complaint") must be dismissed under Fed R. Civ. P. 12(b)(6) and Rule G(8)(b)(i) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions for failing to state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial.

## BACKGROUND

The Complaint identifies as defendant assets scores of bank accounts, investment accounts, and parcels of real property as to which Claimants have asserted claims.[3]  The Complaint makes allegations identifying Claimants, the defendant assets seized from them, and various transfers of funds to or from Claimants or their accounts, but the Complaint is virtually devoid of any other allegations about Claimants or Claimants' Assets.  The Complaint does not contain factual allegations

---

[3]   Larkin has submitted claims to the more than forty-eight million dollars the government alleges it seized from the bank or investment accounts identified in the Complaint as Accounts 13, 14, 16, 17, 18, 19, 20, 21, 22, and 23, as well as to the real property identified in the Complaint as the Saint Helena Property, the Chicago Property, and Paradise Valley Property 1 ("Larkin's Assets").  Lacey has submitted claims to the more than twenty-two million dollars the government alleges it seized from the bank or investment accounts identified in the Complaint as Accounts 4, 5, 7, 8, 9, 10, 11, 12, 37, as well as to the real property identified in the Complaint as the Sebastopol Property, San Francisco Property 1, San Francisco Property 2, San Francisco Property 3, the Sedona Property, and Paradise Valley Property 2 ("Lacey's Assets").  Spear has submitted claims to the more than one million four hundred thousand dollars the government alleges it seized from the bank or investment accounts identified in the Complaint as Accounts 31, 32, 33, 34, 35, and 36 ("Spear's Assets").  Brunst has submitted claims to the more than eight million dollars the government alleges it seized from the bank or investment accounts identified in the Complaint as Accounts 24 - 30 ("Brunst's Assets").  The entity Claimants have submitted claims to the nearly six million dollars the government alleges it seized from the bank accounts identified in the Complaint as Accounts 2 and 3 ("Cereus' Assets").  Larkin's Assets, Lacey's Assets, Spear's Assets, Brunst's Assets, and Cereus' Assets are referred to collectively as "Claimants' Assets."

NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED CONSOLIDATED MASTER VERIFIED COMPLAINT FOR FORFEITURE FOR FAILING TO STATE SUFFICIENTLY DETAILED FACTS

that would support a belief that the government can meet its burden of proof at trial with respect to Claimants' Assets, both due to the near complete lack of any allegations about Claimants and Claimants' Assets, but also because the Complaint does not include factual allegations sufficient to allege violations of the crimes purportedly justifying forfeiture.

The government asserts Claimants' Assets are forfeitable under 18 U.S.C. §§ 981(a)(1)(A) & (C). The asserted grounds for forfeiture are that the assets allegedly "represent property derived from or traceable to proceeds of" violations of "federal laws constituting ['specified unlawful activity' ('SUA')] … including 18 U.S.C. §§ 1591 [and] 1952," and conspiracy to commit same, involving, respectively, sex trafficking and prostitution-based Travel Act violations. Compl. ¶¶ 101, 145. The Complaint also alleges the assets were involved in money laundering under 18 U.S.C. §§ 1956(a)(1)(B)(i), (a)(2) & h, and § 1957, as proceeds of § 1591 or § 1952 SUA. *Id.* ¶¶ 102, 145-47.[4] All alleged "evidence supporting forfeiture" arises from operations of Backpage.com, *id.* ¶¶ 118-30; *see also id.* ¶¶ 106-17, with all "criminal proceeds" alleged to derive therefrom, *id.* ¶¶ 131-42.[5]

## ARGUMENT

## I.   The Legal Standard

Claimants with standing to contest forfeiture may seek dismissal under Fed R. Civ. P. 12(b). Supp. R. G(8)(b)(i). To avoid dismissal, the civil rules require that complaints "contain sufficient factual matter, accepted as true, to state a claim … that is plausible on its face," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cite and internal

---

[4] *See also* Compl. ¶¶ 240-41 (claims for relief alleging "Defendant Assets were involved in and are traceable to … one or more financial transactions, attempted transactions, and a conspiracy to conduct or attempt to conduct such transactions [in connection with the SUA of] violations of … Sections 1591 … and 1952").

[5] *Id.* § IV. *Cf. id.* ¶ 123 ("most of Backpage's earnings represented the proceeds of illegal activity, specifically prostitution and sex trafficking," used to pay for ads).

NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED
CONSOLIDATED MASTER VERIFIED COMPLAINT FOR FORFEITURE FOR
FAILING TO STATE SUFFICIENTLY DETAILED FACTS

quotation marks omitted), though the Court does not accept as true legal conclusions merely cast as factual allegations. *United States v. One White Crystal Covered Bad Tour Glove*, 2012 WL 8467453, at *1 (C.D. Cal. Sept. 6, 2012) (quoting *Warren v. Fox Family Worldwide, Inc.,* 328 F.3d 1136, 1139 (9th Cir. 2003)). Under the "plausibility standard" of *Bell Atlantic Corp. v. Twombly*, alleged facts "must be enough to raise a right to relief above the speculative level," an "obligation [that] requires more than labels and conclusions." 550 U.S. 544, 555 (2007).[6]

Forfeiture complaints must satisfy not only *Iqbal*/*Twombly* standards, but also heightened pleading obligations to "state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial." *One White Crystal Glove*, 2012 WL 8467453, at *2 (quoting Supp. R. G(2)(f)). Supplemental Rule G(2)(f)

> "imposes a heightened pleading for complaints in civil forfeiture actions. The additional burden of pleading requiring 'added specifics is thought appropriate because of the drastic nature of [civil forfeiture] remedies.'" This heightened pleading requirement "is not merely a procedural technicality, but a way of ensuring that the government does not seize and hold, for a substantial period of time, property to which, in reality, it has no legitimate claim.'"

*United States v. 5012 North 6th Street, Blytheville, Ark.*, No. 4:13CV00498, 2014 WL 5590555 *7 (E.D. Ark. Nov. 3, 2014) (internal citations omitted). "The heightened particularity requirement is designed to guard against the improper use of seizure proceedings and to protect property owners against the threat of seizure upon

---

[6] When facts pled are subject to "two possible explanations, only one of which can be true and only one of which results in liability, plaintiffs cannot offer allegations that are merely consistent with their favored explanation but are also consistent with the alternative explanation. Something more is needed, such as facts tending to exclude the possibility that the alternative explanation is true ...." *Eclectic Props. East, LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996-97 (9th Cir. 2014).

NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED
CONSOLIDATED MASTER VERIFIED COMPLAINT FOR FORFEITURE FOR
FAILING TO STATE SUFFICIENTLY DETAILED FACTS

conclusory allegations." *United States v. One Gulfstream G-V Jet Aircraft*, 941 F. Supp. 2d 1, 13 (D.D.C. 2013).

When assessing the sufficiency of the Complaint, the Court must assess whether the Complaint sufficiently alleges the commission of the underlying criminal acts or money laundering by Claimants. *One White Crystal Glove*, 2012 WL 8467453, at *3 (court dismissed first amended complaint because government did not "allege specific details of particular instances of crimes being committed by [claimant]," as opposed to generalized allegations regarding a group of which he was alleged to be a member). Moreover, where, as here, "the Government's theory of forfeiture is that the property was used to commit or facilitate the commission of a criminal offense, or was involved in the commission of a criminal offense," the Government also must "establish that there was a substantial connection between the property and the offense." 18 U.S.C. § 983(c)(3). Thus, the government's complaint also must allege sufficiently detailed facts to support a reasonable belief that the government can show a substantial connection between the defendant assets and the purported offenses.

## II. The Complaint Is Deficient Because of the Lack of Specific Factual Allegations About Claimants and Claimants' Assets

While lengthy, the Complaint says little about Claimants or Claimants' Assets.

**Larkin**: Excluding allegations that merely identify Larkin's Assets (Compl. ¶¶ 17-29), allegations about the transfer of funds into or out of Larkin's accounts (Compl. ¶¶ 177-192), and allegations about the verified claims Larkin filed in this action, the only allegations in the Complaint specific to Larkin or Larkin's Assets are:

"109. Larkin was a co-creator of Backpage.com. Larkin was responsible for the website's policies and strategic direction, and he maintained significant control over the website during the relevant period described in this complaint. Even after purportedly selling his interest in Backpage in 2015,

NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED CONSOLIDATED MASTER VERIFIED COMPLAINT FOR FORFEITURE FOR FAILING TO STATE SUFFICIENTLY DETAILED FACTS

Larkin continued to receive tens of millions of dollars in Backpage-related distributions."

"118.  Lacey and Larkin were the founders of the Phoenix New Times, an alternative newspaper based in Arizona. Lacey and Larkin subsequently acquired several other alternative newspapers that they operated through an entity called Village Voice Media Holdings ("VVMH")."

"121.  Lacey and Larkin, assisted by Ferrer, sought to address this disruption by creating Backpage, which would compete directly with Craigslist."

"122.  From 2004 until 2015, Lacey and Larkin bore primary responsibility for Backpage's policies and strategic direction.  In 2015, Lacey and Larkin purported to sell to Ferrer all or substantially all of their respective interests in Backpage.  In fact, Lacey and Larkin retained significant control over Backpage, and both continued to receive millions of dollars of annual distributions of Backpage revenue after the purported sale."[7]

**Lacey**:  Excluding allegations that merely identify Lacey's Assets (Compl. ¶¶ 3-16), allegations about the transfer of funds into or out of Lacey's accounts (Compl. ¶¶ 155-176), and allegations about the verified claims Lacey filed in this action, the only allegations in the Complaint specific to Lacey or Lacey's Assets are Paragraphs 118, 121, and 122 (set out above) and:

"108. Lacey was a co-creator of Backpage.com. Lacey was responsible for the website's policies and strategic direction, and he maintained significant control over the website during the relevant period described in this complaint. Even after purportedly selling his interest in Backpage in 2015, Lacey continued to receive tens of millions of dollars in Backpage-related distributions."

---

[7]  The Complaint contains *no* non-conclusory allegations specific to Margaret Larkin, Troy Larkin, Ramon Larkin, or Anne Hawkins.

NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED
CONSOLIDATED MASTER VERIFIED COMPLAINT FOR FORFEITURE FOR
FAILING TO STATE SUFFICIENTLY DETAILED FACTS

**Spear**: Excluding allegations that merely identify Spear's Assets (Compl. ¶¶ 37-42), allegations about the transfer of funds into or out of Spear's accounts (Compl. ¶¶ 169-199), and allegations about the verified claims Spear filed in this action, the only allegations in the Complaint specific to Spear or Spear's Assets are:

"112. Spear was a minority owner of Backpage who owned 4.09 percent of the company at the time of its inception. Spear served as Executive Vice President of one of Backpage's parent companies."

"118. . . . Spear served as VVMH's Executive Vice President and Brunst served as VVMH's Chief Financial Officer."

"137(d).  Between January 21 and August 31, 2016, Website Tech Account '2008 sent approximately 27 wire transfers totaling approximately $48,000,000 to Arizona Bank & Trust account number '6211, belonging to Cereus Properties LLC, which is owned or controlled by Spear, Backpage, and/or other Backpage Operators."

"152. Account 2 was held in the name of Cereus Properties LLC., and Spear was the sole signatory."

**Brunst**:  Excluding allegations that merely identify Brunst's Assets (Compl. ¶¶ 30-36), allegations about the transfer of funds into or out of Brunst's accounts (Compl. ¶¶ 193-195), and allegations about the verified claims Brunst filed in this action, the only allegations in the Complaint specific to Brunst or Brunst's Assets are:

"111. Brunst was a minority owner of Backpage who owned 5.67 percent of the company at the time of its inception. Brunst served as the Chief Financial Officer of Backpage and several of Backpage's parent companies."

"118. . . . Spear served as VVMH's Executive Vice President and Brunst served as VVMH's Chief Financial Officer."

**Cereus**:  Excluding allegations that merely identify Cereus' Assets (Compl. ¶¶ 98-99), allegations about the transfer of funds into or out of the accounts of Cereus

NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED
CONSOLIDATED MASTER VERIFIED COMPLAINT FOR FORFEITURE FOR
FAILING TO STATE SUFFICIENTLY DETAILED FACTS

and its affiliates (Compl. ¶¶ 137(g) & (i)(d), 140, 152-154, 165, 181(a), 186, 234)), and allegations about the claims Cereus and its affiliates filed in this action, the only allegations in the Complaint specific to Cereus, its affiliates, or Cereus' Assets are:

"152.  Account 2 was held in the name of Cereus Properties LLC., and Spear was the sole signatory.  This account was funded in part with transfers from Account 1, which funds are alleged to have been traceable to SUA, involved in money laundering, or both, and was used as a funnel account to pay Backpage Operators."

"154.  Account 3, held in the name of Cereus Properties, was funded with transfers from foreign and domestic banks, which funds were traceable to SUA, involved in money laundering, or both, including funds transferred from the Netherlands Account through one of the Backpage Operators' go-between accounts  (Wells Fargo Bank account '9863 ("Account '9863")), and eventually funneled into Account 3."

"186. Between February 4 and June 6, 2013, approximately $41,500,000 in illicit funds were transferred to Camarillo Holdings LLC, BMO Harris Bank account '7172.  On October 2, 2013, BMO Harris Bank account '7172 wired $26,130.64 to Larkin's BMO Harris Bank account '3110.  Thereafter, on November 3, 2016, over $10,000 of funds from BMO Harris Bank account '7172 were used to purchase or maintain the Saint Helena Property."

The factual allegations specific to Claimants and Claimants' Assets "do not even give rise to an inference of illegality," *One Gulfstream G-V Jet Aircraft*, 941 F. Supp. 2d at 15, as the Court must ignore the government's conclusory allegations about "illicit funds," funds "traceable to SUA" or "involved in money laundering," and the like.

In *One Gulfstream G-V Jet Aircraft*, the government alleged that the jet at issue was subject to forfeiture because it was purchased with funds that could be traced to or derived from illegal activity.  *Id.*  The government alleged that the claimant (the son

7

of Equatorial Guinea's president) amassed immense wealth that was inconsistent with his salary as a government minister. The government alleged that the claimant was a member of the so-called "Inner Circle" in Equatorial Guinea, that members of the Inner Circle engaged in "extortion and misappropriation, theft, and embezzlement of public funds," and that the claimant "purchased the jet with funds derived from extortion, misappropriation, theft, and embezzlement." *Id.* The Court dismissed the complaint, noting that the complaint described "a disconcerting pattern of corruption in Equatorial Guinea," but did "not link the jet to any specific illicit acts" and "careful scrutiny of the complaint reveal[ed] that [the claimant was] often implicated by association only." *Id.* at 1 and 15. The Court held that the government's complaint painted "with brushstrokes that are much too broad." *Id.* at 16.[8]

The same is true here. The specific allegations about Claimants and Claimants' Assets cannot support a reasonable belief that the government will be able to meet its burden of proof at trial. The non-conclusory allegations about them do not even give rise to an inference of illegality. Rather the government seeks to implicate them through their association with other parties (and, as discussed further below, the government's allegations are deficient even as to those parties).

The government also seeks to implicate Claimants by using improper "shotgun" pleading—making numerous allegations about the "Backpage Operators," a term that the government defines to mean nine unrelated individuals, including at least two of the government's cooperators (Hyer and Ferrer). *Shin v. Time Squared Global, LLC*, No.

---

[8] *See also 5012 North 6th Street*, 2014 WL 5590555, at *8 (dismissing forfeiture complaint that (i) alleged, in conclusory terms, that parties were "involved in the distribution of controlled substances" and "drug trafficking," had "launder[ed]" money, and had tried to "conceal" certain payments and "provide an air of legitimacy" to certain payments, (ii) alleged the assets sought to be forfeited represented "proceeds of drug trafficking," and (iii) failed to allege facts demonstrating a nexus between the alleged drug trafficking and money laundering and the assets sought to be forfeited).

NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED
CONSOLIDATED MASTER VERIFIED COMPLAINT FOR FORFEITURE FOR
FAILING TO STATE SUFFICIENTLY DETAILED FACTS

SACV-15-00943, 2015 WL 13284952, at *3 (C.D. Cal. Aug. 26, 2015) (dismissing complaint and holding "[s]hotgun pleadings . . . are unacceptable. . . . One common type of shotgun pleading comes in cases with multiple defendants where the plaintiff uses the omnibus term "Defendants" throughout a complaint by grouping defendants together without identifying what the particular defendants specifically did wrong. . . . This shotgun pleading style deprives Defendants of knowing exactly what they are accused of doing wrong."); *see also Destfino v. Reiswig*, 630 F.3d 952, 958 (9th Cir. 2011) (affirming dismissal of complaint for failure to plead fraud with particularity under Fed. R. Civ. P. 9(b) because complaint improperly "grouped multiple defendants together and failed to 'set out which of the defendants made which of the fraudulent statements/conduct.'").   The Court should disregard all the government's shotgun pleading allegations.   The government cannot avoid its burden to plead sufficiently detailed facts to show the forfeitability of the defendant assets the government seized from Claimants through improper shotgun pleading that deprives the Court and Claimants of the ability to assess the allegations made against Claimants' assets.

## III.   The Government's Allegations Relating to Sex Trafficking Are Deficient

The Complaint does not allege that Claimants engaged in sex trafficking, nor that Backpage engaged in sex trafficking.   Rather, the Complaint alleges that persons who posted advertisements on Backpage engaged in sex trafficking and that Backpage's moderation practices assisted them.

Not only does the Complaint not allege that Backpage engaged in sex trafficking, the government could not make such an allegation given the *mens rea* requirements to charge a publisher with sex trafficking under 18 U.S.C. § 1591. Congress amended 18 U.S.C. § 1591 in 2016 (in what was called the "SAVE Act") to add "advertising" as a predicate act for a charge of sex trafficking.[9]   When Backpage

---

[9] 18 U.S.C. § 1591(a) provides:  "Whoever knowingly—(1) in or affecting interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the

brought a constitutional challenge to the SAVE Act, the government insisted that a website publisher could not be liable for sex trafficking *absent specific knowledge of and participation in a particular incident of sex trafficking*:

> "Even if an advertisement for illegal sex trafficking appeared on [its] website, [Backpage] could not be convicted under [the law] without proving that [it] knew that the advertisement at issue related to illegal sex trafficking of a minor or of a victim of force, fraud, or coercion."

DOJ Reply in Support of Motion to Dismiss, at 7-8, *Backpage.com, LLC v. Lynch*, No. 1:15-2155-RBW (D.D.C. Apr. 15, 2016) (ECF No. 13). The district court agreed with the government's interpretation and dismissed Backpage's constitutional challenge, concluding that the website faced no credible threat of prosecution given its practices and that the statutory amendments increased the *mens rea* requirement for liability so as to protect websites. *Backpage.com, LLC v. Lynch*, 216 F. Supp. 3d 96, 108-09 (D.D.C. 2016); *see also* 161 Cong. Rec. H596, H598-H600 (daily ed. Jan. 27, 2015) (intent of amendments was to "raise the bar" by requiring proof that websites had knowledge that given ads were unlawful, so as to avoid constitutional problems).

In its Complaint, the government tries to skirt this *mens rea* problem as to Backpage by claiming that ads the website's users submitted were "indicative of sex trafficking" (Compl. ¶ 127(i)) or had terms that were "consistent with sex trafficking"

---

United States, recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person; or (2) benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1), knowing, or, except where the act constituting the violation of paragraph (1) is advertising, in reckless disregard of the fact, that means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b).

10

(Compl. ¶ 128(a)) or that Backpage prohibited certain terms that it "identified with . . . sex trafficking" (Compl. ¶ 127(h)), but the Complaint does *not* allege that Backpage ever published an adult advertisement *knowing* that the ad related to illegal sex trafficking of a minor or of a victim of force, fraud, or coercion (let alone that Claimants did so). The government alleges that "among the pimps and sex traffickers who used Backpage to advertise their victims were many who were later convicted of sex trafficking offenses" (Compl. ¶ 125), but criminal conduct by users of the website does not mean (as the Complaint wrongly suggests) that Backpage engaged in criminal conduct by publishing those users' ads.

Moreover, regardless of what the Complaint tries to suggest about what *Backpage* "should have known" about certain ads that third parties posted to the website, the Complaint has *no* factual allegations suggesting that *Claimants* had any such knowledge. Of course, even if the government had tried to claim its Complaint is predicated on the sex trafficking by "pimps and sex traffickers who used Backpage to advertise their victims," and not by Backpage, any money laundering charges premised on their unlawful conduct would require knowledge and specific intent by both Backpage and Claimants—neither of which the Complaint alleges.

## IV. The Government's Allegations Relating to the Travel Act Are Deficient

The Travel Act is a specific intent crime. One of its elements is "that the accused formed a specific intent to promote, manage, establish, carry on or facilitate" unlawful activity. *United States v. Gibson Specialty Co.*, 507 F.2d 446, 449 (9th Cir. 1974). The Ninth Circuit is not alone in so holding. As the Fourth Circuit explained, "[o]ne element of a Travel Act violation is proof of specific intent to promote 'unlawful activity,' defined for relevant purposes, as any illegal business enterprise involving [prostitution offenses]." *United States* v. *Gallo*, 782 F.2d 1191, 1194 (4th Cir. 1986) *accord United States v. James*, 210 F.3d 1342, 1345 (11th Cir. 2000) (listing "the elements of a Travel Act charge" to include both "the specific intent to promote, manage, establish

NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED
CONSOLIDATED MASTER VERIFIED COMPLAINT FOR FORFEITURE FOR
FAILING TO STATE SUFFICIENTLY DETAILED FACTS

or carry on an unlawful activity, as defined," and "that the defendant [] *knowingly and willfully* committed an act to promote, manage, establish or carry on such unlawful activity." (emphasis added.). Indeed, in defining a violation of the Travel Act, "Congress 'required that there be intent to facilitate the carrying on of (some) business enterprise involving [prostitution] in violation of state laws.'" *Gibson Specialty Co.*, 507 F.2d at 449.

The Ninth Circuit, affirming the dismissal of a deficient indictment under the Travel Act, held that knowledge of and intent to facilitate a specific unlawful business enterprise is required: "[T]he prosecutor must show that the [defendant] in some significant manner associated himself with the purchaser's criminal venture for the purpose of its advancement." *Gibson Specialty Co.*, 507 F.2d at 449.  Indeed, the law could not be otherwise, for how could one specifically intend to promote or facilitate a business enterprise one does not know to exist?

The allegations in the Complaint relating to the Travel Act, 18 U.S.C. § 1592, all are, at best, inactionable legal conclusions cast as factual allegations or conclusory allegations, either of which must be disregarded for purposes of this motion.  *See* Compl. ¶¶ 101, 145-147, 23-241.  The Complaint alleges no facts to support a claim that Claimants violated the Travel Act.  Indeed, the Complaint alleges no facts to support that anyone violated the Travel Act, nor does it say whom the government alleges did so.  The Complaint plainly does not allege facts to show that Claimants knew of and intended to facilitate any specific unlawful business enterprise—much less that they knew of or intended to facilitate any criminal enterprise related to any specific ads identified in the Complaint.

## V.   The Government's Allegations Relating to Money Laundering Are Deficient
### A.   Allegations Relating to 18 U.S.C. § 1957

"A conviction for money laundering under 18 U.S.C. § 1957 requires the government to show: (1) the defendant knowingly engaged in a monetary transaction;

(2) he knew the transaction involved criminal property; (3) the property's value exceeded $10,000; and (4) the property was derived from a specified unlawful activity." *United States v. Rogers*, 321 F.3d 1226, 1229 (9th Cir. 2003). The Complaint is woefully deficient in with respect to its claims under 18 U.S.C. § 1957.

The Complaint identifies numerous monetary transactions in excess of $10,000, but it does not allege that Claimants (or Backpage) knowingly engaged in any transactions they knew to involve criminal property. Moreover, as the government knows, the California Attorney General's Office–which has been working in concert with the government for many years to pursue Backpage.com–twice brought criminal charges against Larkin and Lacey, making allegations similar to those in the Complaint, with the charges premised on the claim that Backpage's receipt of payment for classified adult ads was the receipt of criminal property (proceeds from prostitution), but two different state judges dismissed the charges on demurrer. *People v. Ferrer*, 2016 WL 7237305 (Cal. Super. Ct. Dec. 9, 2016); *People v. Ferrer*, No. 16FE024013 (Cal. Super. Ct. Aug. 23, 2017). In dismissing the charges, the court in the earlier case held that "[p]roviding a forum for online publishing is a recognized legal purpose" and "charg[ing] money for the placement of advertisements … qualif[ies] as services rendered for legal purposes." *Ferrer*, 2016 WL 7237305, at *10.

Moreover, as discussed above, the Complaint also fails to plausibly allege that any transactions involving Claimants or Claimants' Assets involved property derived from a specified unlawful activity.

**B.    Allegations Relating to 18 U.S.C. § 1956(a)(1)(B)(i)**

The government's allegations in the Complaint relating to 18 U.S.C. § 1956(a)(1)(B)(i) also are woefully deficient. That statute provides:

"Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the

13

NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED
CONSOLIDATED MASTER VERIFIED COMPLAINT FOR FORFEITURE FOR
FAILING TO STATE SUFFICIENTLY DETAILED FACTS

proceeds of specified unlawful activity . . . (B) knowing that the transaction is designed in whole or in part (i) to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity . . .”

The government's allegations in the complaint about "concealment" largely are conclusory. *See* Compl. ¶¶ 146, 182, 193, 196.

The Complaint makes no allegations about concealment directed at the Claimant Entities or Lacey. The Complaint does make an allegation about concealment directed at Larkin, but a) the allegation is conclusory and b) the allegation pertains to an account that contained *just $278.73* (Account 22). *See* Compl. ¶ 182. The Complaint also makes allegations about concealment directed at Brunst and Spear, but those allegations too are conclusory. Compl. ¶¶ 193, 196.

The only non-conclusory allegation relating to concealment in the Complaint (¶ 124) plainly relates to transactions involving Backpage, not transactions involving Claimants. Moreover, Paragraph 124 involves improper shotgun pleading that the Court should disregard.

The statute also applies only to persons conducting financial transactions, involving proceeds of unlawful activity, knowing the transaction was designed to conceal the proceeds of unlawful activity. The complaint does not allege that Claimants conducted any financial transactions described in Paragraph 124, does not allege that any financial transactions described in Paragraph 124 involved the proceeds of unlawful activity, and does not allege that Claimants knew that the financial transactions described in Paragraph 124 involved the proceeds of unlawful activity or that the transactions were designed to conceal. Money laundering is a specific intent crime, it requires knowledge on the part of the defendant, and the Complaint does not allege facts to support a belief that the government can show specific intent on behalf of Claimants. *United States v. Gurolla*, 333 F.3d 944, 957 (9th Cir. 2003).

14

In any event, the Complaint does not allege that the proceeds of any financial transactions described in Paragraph 124 can be traced to Claimants' Assets.

### C.   Allegations Relating to 18 U.S.C. § 1956(a)(2)

The Complaint references international promotional money laundering or 18 US.C. § 1956(a)(2) in just three paragraphs.[10]  Compl. ¶¶ 100, 102(b), and 241.  The Complaint fails to identify any other allegations in the Complaint that tie to that claim for relief (another form of improper shotgun pleading).  *See Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1321 (11th Cir. 2015) ("The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests.").

Despite the government's improper pleading, the Complaint plainly does not contain sufficient factual allegations to support its international promotional money laundering claims with respect to Claimants or Claimants' Assets.  There are no allegations that *Claimants* transferred funds internationally, or that they did so a) to promote the carrying on of specified unlawful activity or b) knowing that the funds were proceeds of some form of unlawful activity and knowing that the transfer was designed to conceal.  Money laundering is a specific intent crime and the Complaint

---

[10]  18 U.S.C.A. § 1956(a)(2) provides:  "Whoever transports, transmits, or transfers, or attempts to transport, transmit, or transfer a monetary instrument or funds from a place in the United States to or through a place outside the United States or to a place in the United States from or through a place outside the United States--(A) with the intent to promote the carrying on of specified unlawful activity; or (B) knowing that the monetary instrument or funds involved in the transportation, transmission, or transfer represent the proceeds of some form of unlawful activity and knowing that such transportation, transmission, or transfer is designed in whole or in part-- (i) to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity; or (ii) to avoid a transaction reporting requirement under State or Federal law . . ."

NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED
CONSOLIDATED MASTER VERIFIED COMPLAINT FOR FORFEITURE FOR
FAILING TO STATE SUFFICIENTLY DETAILED FACTS

does not allege facts to support a belief that the government can show specific intent on behalf of Claimants. *Gurolla*, 333 F.3d at 957.

## VI.   The Government's Allegations Related to Conspiracy are Deficient

The government alleges a conspiracy (or conspiracies) in several places in the Complaint. Compl. ¶¶ 102(a), (b), & (c); 145-147; 239-241. The government's allegations are really legal conclusions cast as factual allegations or conclusory allegations, both of which must be disregarded for purposes of this motion. The Complaint does not state sufficiently detailed facts to support a reasonable belief that the government will be able to prove at trial that Claimants were members of or participated in a conspiracy.

## VII.   The Complaint Fails to Establish a Substantial Connection Between the Defendant Assets and the Purported Offenses

"[T]he [g]overnment's theory of forfeiture is that the property was used to commit or facilitate the commission of a criminal offense, or was involved in the commission of a criminal offense," so the government must "establish that there was a substantial connection between the property [sought to be forfeited] and the offense." 18 U.S.C. § 983(c)(3). Thus, the government's complaint also must allege sufficiently detailed facts to support a reasonable belief that the government can show a substantial connection between the defendant assets and the purported offenses. The government has failed to allege specific facts to suggest that it can meet its burden at trial.

## CONCLUSION

For the reasons above, the Court should dismiss the First Amended Consolidated Master Verified Complaint for Forfeiture. Alternatively, the Court should dismiss the Complaint as to Claimants' Assets.

1    DATED:  July 1, 2020                    Respectfully submitted,

2
                                             Thomas H. Bienert, Jr.
3                                            Whitney Z. Bernstein
                                             BIENERT | KATZMAN PC
4                                            By:    _/s/ Thomas H. Bienert, Jr._
5                                                      Thomas H. Bienert, Jr.
                                             Attorneys for James Larkin
6

7
     *Local Rule 5-4.3.4(a)(2)(i) Compliance:  Filer attests that all other signatories listed concur in the*
8
     *filing's content and have authorized this filing.*
9

10
     DATED:  July 1, 2020                    Gary S. Lincenberg
11                                           Ariel A. Neuman
                                             Gopi K. Panchapakesan
12                                           BIRD, MARELLA, BOXER, WOLPERT,
                                             NESSIM, DROOKS, LINCENBERG &
13                                           RHOW, P.C.
14
                                             By:    _/s/ Gary S. Lincenberg_
15                                                      Gary S. Lincenberg
16                                           Attorneys for John Brunst, Mary Ann
                                             Brunst, and The Brunst Family Trust
17

18
     DATED:  July 1, 2020                    LIPSITZ GREEN SCIME CAMBRIA LLP
19
20                                           By:    _/s/ Paul J. Cambria, Jr._
                                                       Paul J. Cambria, Jr.
21                                           Attorneys for Michael Lacey
22

23

24

25

26

27

28
                                             17
     ─────────────────────────────────────────────────────────
     NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED
     CONSOLIDATED MASTER VERIFIED COMPLAINT FOR FORFEITURE FOR
     FAILING TO STATE SUFFICIENTLY DETAILED FACTS

DATED:  July 1, 2020                FREEMAN, MATHIS & GARY LLP

                                    By:     /s/ John K. Rubiner
                                    _____
                                                John K. Rubiner

                                    FEDER LAW OFFICE, PA

                                    By:     /s/ Bruce Feder
                                    _____
                                                Bruce Feder

                                    Attorneys for Scott Spear


DATED:  July 1, 2020                DANIEL J. QUIGLEY, PLC

                                    By:     /s/ Daniel J. Quigley
                                    _____
                                                Daniel J. Quigley

                                    WIECHERT, MUNK & GOLDSTEIN, PC

                                    By:     /s/ David W. Wiechert
                                    _____
                                                David W. Wiechert

                                    Attorneys for Medalist Holdings, Inc.,
                                    Leeward Holdings, LLC, Camarillo
                                    Holdings, LLC, Vermillion Holdings, LLC,
                                    Cereus Properties, LLC, Shearwater
                                    Investments, LLC, and Broadway Capital
                                    Corp., LLC

NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED
CONSOLIDATED MASTER VERIFIED COMPLAINT FOR FORFEITURE FOR
FAILING TO STATE SUFFICIENTLY DETAILED FACTS

# CERTIFICATE OF SERVICE

I certify that on this 1st day of July, 2020, I electronically transmitted a PDF version of this document to the Clerk of Court, using the CM/ECF System, for filing and for transmittal of a Notice of Electronic Filing to the following CM/ECF registrants listed below.

*/s/ Toni Thomas*
Toni Thomas

**CM/ECF Registrants:**

John J. Kucera, john.kucera@usdoj.gov
Daniel G. Boyle, daniel.boyle2@usdoj.gov
David W. Wiechert, dwiechert@aol.com
Gary S. Lincenberg, glincenberg@birdmarella.com
Ariel Neuman, aneuman@birdmarella.com
Gopi K. Panchapakesan, gpanchapakesan@birdmarella.com
John K. Rubiner, jrubiner@bkolaw.com
Paul J. Cambria, Jr., pcambria@lglaw.com
Erin E. McCampbell, emccampbell@lglaw.com
Bruce Feder, bf@federlawpa.com
Whitney Z. Bernstein, wbernstein@bienertkatzman.com
Daniel J. Quigley, quigley@djqplc.com
Janey Henze Cook, janey@henzecookmurphy.com