1

2

**DECLARATION OF DAN G. BOYLE**

3

I, Dan G. Boyle, declare as follows:

4

1.   I am an Assistant United States Attorney in the United

5

States Attorney's Office for the Central District of California. I am

6

an attorney representing the government in this case.

7

2.   On February 5, 2020 Claimants filed a corrected motion to

8

dismiss pursuant to Fed. R. Civ. P. 12(b)(6). <u>See</u> ECF No. 82.

9

3.   On or about on February 12, 2020, the government served by

10

mail Special Interrogatories on all claimants pursuant to Rule G the

11

Supplemental Rules. <u>See generally</u> ECF No. 93.

12

4.   On July 15, 2020, the Court set a briefing schedule on

13

claimants' motion to dismiss, premised on the claimants serving their

14

responses to the government's special interrogatories on or before

15

July 31, 2020 (the "SI Responses"), ordering the government to oppose

16

the motion to dismiss on or before August 21, 2020, claimants to

17

reply on or before September 4, 2020, and resetting a hearing on the

18

motion for September 21, 2020. <u>See</u> ECF Nos. 118, 119.

19

5.   On or about July 31, 2020, the government received SI

20

Responses from claimants J. Larkin, T. Larkin, R. Larkin, K. Larkin,

21

Q. Larkin, M. Larkin, M.A. Brunst, M. Lacey, J. Brunst, Becker,

22

Spear, Talley, Hawkins, Brunst Family Trust, Casa Bahia for San

23

Francisco, LLC, Camarillo Holdings, LLC, Cereus Properties, LLC,

24

Leeward Holdings, LLC, Medalist Holdings, Inc., Shearwater

25

Investments, LLC, and Vermillion Holdings, LLC.,

26

6.   As of this filing, government counsel has not received

27

responses to its rule G interrogatories directed to claimants Ellona

28

Spear, Natasha Spear, or Jill Anderson. Government counsel has

12

1   requested confirmation from these claimants as to the status of their

2   responses. As of this filing, government counsel has received no

3   response from claimants Ellona Spear or Natasha Spear, while claimant

4   Anderson has confirmed that her responses are forthcoming.

5       7.   On August 14, 2020, government counsel contacted counsel

6   for claimant James Larkin, requesting claimants' position on the

7   contemplated motion to strike, with the understanding that counsel

8   would relay this positon to all other claimants, as has been practice

9   on other scheduling matters in this consolidated action.

10      8.   On August 15, 2020, the government provided further

11  information to claimants' counsel on which sets of claims the

12  government contemplated moving to strike.

13      9.   On August 17, 2020, counsel for claimants responded,

14  opposing the government's request to suspend the dismissal briefing

15  schedule, and requesting further information on the contemplated

16  motion to strike. Government counsel responded on August 18, 2020,

17  confirming claimants' opposition, and stating that the government

18  would not be able to provide a complete appendix of claims to be

19  struck prior to the filing of the instant application, for the

20  reasons stated below (see ¶ 11-12, infra).

21      10.  On August 18, 2020, government counsel also contacted pro

22  se claimant Jill Anderson by e-mail for her position on the instant

23  application, who takes no position. Government counsel also attempted

24  to contact counsel for claimants Becker, Talley, and M. Larkin, and

25  obtain their position.

26      11.  The government is presently compiling an appendix of all

27  claims which would be implicated by the contemplated motion to strike

28  through a review of claimants' SI Responses and recently-filed

claims. See generally ECF Nos. 126-131. While this process is ongoing, the government presently expects this appendix will address more than two hundred claims to financial and/or physical defendant assets, and more than one thousand claims to domain name assets.

12.   Assembling this appendix is a time-intensive process which requires the assistance of staff and record examiners who have been affected by the Coronavirus public health emergency. These staff members have limited or reduced access to relevant asset databases while working remotely or teleworking and have limited access to physical files and records as part of the current tele-work orders during the Coronavirus public health emergency.

13.   As one example of the type and volume of claims detailed by claimants in the SI Responses, which the government contemplates moving to strike, attached as Exhibit A is a true and correct copy of claimant Ramon Larkin's SI Responses.

14.   Consistent with General Orders 20-03 and 20-09, relating to the Coronavirus public health emergency, the government requests that the Court set the following briefing schedule:

a.   The government shall file its motion to strike no later than September 28, 2020;

b.   Claimants shall file any opposition to the motion to strike no later than October 26, 2020;

c.   The government shall file any reply no later than November 9, 2020;

d.   Any hearing on the motion shall be set for December 7, at 9:00 a.m.

//

//

14

1     I declare under penalty of perjury under the laws of the United

2  States of America that the foregoing is true and correct and that

3  this declaration is executed at Los Angeles, California, on August

4  18, 2020.

5                                        /s/ *Dan G. Boyle*
                                         DAN G. BOYLE
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

RAMON LARKIN

Claimant in Pro Per

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| UNITED STATES OF AMERICA, | CASE NO. 2:18-cv-8420-RGK-PJWx |
|---|---|
| Plaintiff, | **CLAIMANT RAMON LARKIN'S OBJECTIONS AND RESPONSES TO PLAINTIFF'S FIRST SET OF RULE G SPECIAL INTERROGATORIES** |
| vs. | |
| $1,546,076.35 IN BANK FUNDS SEIZED FROM REPUBLIC BANK OF ARIZONA ACCOUNT '1889, et al., | Assigned to Hon. R. Gary Klausner |
| Defendants. | |

PROPOUNDING PARTY:     PLAINTIFF UNITED STATES OF AMERICA

RESPONDING PARTY:     CLAIMANT RAMON LARKIN

SET NUMBER:     ONE

Pursuant to Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions (the "Supplemental Rules"), and Federal Rules of Civil Procedure 26 and 33, Claimant Ramon Larkin ("Claimant") hereby responds to the Plaintiff United States of America's special interrogatories.

## PRELIMINARY STATEMENT

The government is entitled to serve special interrogatories under Supplemental Rule G(6)(a), but its special interrogatories must be "limited to the claimant's identity and relationship to the defendant property." Supp. R. G(6)(a). The purpose of special interrogatories is narrow: to allow the government to investigate a claimant's standing to pursue his or her claim(s) and to weed out fraudulent claims from persons who have no colorable interest in the defendant assets. *See United States v. Funds in the Amount of $574,840*, 719 F.3d 648, 650 (7th Cir. 2013) ("Rule G(6)(a) authorizes the government to issue 'special interrogatories limited to the claimant's identity and relationship to the defendant property.' The purpose of such interrogatories is to smoke out fraudulent claims—claims by persons who have no colorable claims.") If a claimant's standing is not reasonably in dispute, the use of special interrogatories is inappropriate, as they are not needed to determine standing. *Cf. United States v. Real Property Located at 17 Coon Creek Road*, 787 F.3d 968, 977 (9th 2015) (claimant's failure to respond to the government's special interrogatories did not warrant striking claim since his standing was not reasonably in dispute because, *inter alia*, the government's complaint alleged the property at issue was titled in his name and he resided on it); *United States v. $154,853.00 in U.S. Currency*, 744 F.3d 559, 564 (8th Cir. 2014) (similar). Likewise, special interrogatories that ask a claimant, for example, to provide information about defenses to the government's claims, to conduct a tracing analysis, or to identify all criminal or civil litigation to which he or she has been a party plainly are outside the scope of the Supplemental Rule.

Here, Claimant's standing is not reasonably in dispute. This is not a case in which the government lacks information about Claimant or his interests in the Defendant Assets to which he has asserted claims. In connection with a related criminal case, *United*

2

*States v. Lacey, et al.*, Case No. 2:18-cr-00422-SMB (D. Ariz.), the government seized millions of pages of records. Those records include extensive information both about the Defendant Assets owned by Claimant as to which he has asserted claims (the "Owned Assets")[1] (including bank and investment account statements, cancelled checks, credit card statements, account records such as signature cards, real estate records, federal income tax returns, etc.) and about the Defendant Assets as to which Claimant has asserted an interest secured by a perfected security interest in Defendant Assets owned by others (the "Liened Assets")[2] (including the contracts pertaining to the sales and loan transactions creating the liens on those Defendant Assets securing indemnity and other obligations to Claimant). Indeed, the government's sworn allegations in its First Amended Consolidated Master Verified Complaint ("Complaint"), by themselves, establish Claimant's standing to pursue his claims to the Owned Assets. Dkt. 108. For example, the government admits in the Complaint that bank or investment accounts are "held in the name of Ramon Larkin." Complaint, ¶¶ 26, 184. The government's boilerplate special interrogatories are, therefore, entirely inappropriate here.

## GENERAL AND CONTINUING OBJECTIONS

Claimant generally objects to the Rule G special interrogatories, along with the definitions and instructions (the "Interrogatories"), as follows:

1.   Claimant objects to the "Instructions" and "Preamble" to the extent they purport to impose obligations beyond those required by the Federal Rules of Civil Procedure, including the Supplemental Rules, or the Local Rules of the United States District Court for the Central District of California.

2.   Claimants object to the Interrogatories because the number of interrogatories,

---

[1]  The Defendant Assets identified as the "Owned Assets" are itemized in Claimant's response to special interrogatory 5.1.

[2]  The Defendant Assets identified as the "Liened Assets" also are itemized in Claimant's response to special interrogatory 5.1.

including all discrete subparts, vastly exceed the number permitted under Federal Rule of Civil Procedure 33(a)(1), particularly given the "Instructions" and "Preamble."

3.     Claimant objects to the "Instructions" and "Preamble" to the extent they cause the Interrogatories to serve as requests for the production of documents, as requests for the production of documents are outside the scope of Rule G(6)(a).

Claimant's objections and responses are based upon information presently known and available to him. Claimant has not completed his investigation of the facts, his discovery, or his preparation for trial. Claimant therefore reserves the right to assert additional objections or serve supplemental responses should he determine additional grounds for objection or discover additional pertinent information.

## RESPONSES TO RULE G INTERROGATORIES

### INTERROGATORY NO. 1:

State your full name, date of birth, social security number, and driver's license number, including the state of issuance. If you have ever been known by any other name, state all such names and the periods of time during which they were used.

### RESPONSE TO INTERROGATORY NO. 1:

Claimant will provide complete information to the government upon entry of an appropriate protective order. Subject to the foregoing objections, Claimant responds as follows:

Ramon Patrick Larkin

Date of Birth: XX/XX/XXX

Social Security Number: XXX-XX-XXX9

Driver's License Number: XXXXXXXXX7 (Missouri)

### INTERROGATORY NO. 2:

State your present residence address and telephone number, together with all residence addresses and telephone numbers you have had during the time period between January 1, 2016, and April 27, 2018.

**RESPONSE TO INTERROGATORY NO. 2:**

Claimant objects to the special interrogatory because the phrase "residence address and telephone number," as it is used in the special interrogatory, is ambiguous. For purposes of his response, Claimant interprets the phrase to mean his principal place of residence and the telephone number for that residence, during the specified time period.

Claimant will provide complete information to the government upon entry of an appropriate protective order.

**INTERROGATORY NO. 3:**

Identify any and all present or former spouses or domestic partners and any and all dependents, during the time period between January 1, 2016, and April 27, 2018, providing their names, dates of birth, residence addresses and telephone numbers.

**RESPONSE TO INTERROGATORY NO. 3:**

Claimant objects to this special interrogatory because his standing is not reasonably in dispute. The government has obtained extensive discovery in related criminal proceedings (many millions of pages of documents), including massive quantities of banking, investment, business, real estate, and personal records that evidence both (a) the source of the Defendant Assets as to which Claimant has asserted claims and (b) Claimant's interests in those assets. Further, the allegations in the government's sworn Complaint about the Owned Assets also are sufficient by themselves to establish Claimant's standing as to those assets. Claimant's Verified Claims and Statements of Interest filed in this action (or in an action consolidated with it) also are sufficient to establish Claimant's standing.

Supplemental Rule G(6)(a) allows the government to conduct narrow discovery aimed at weeding out fraudulent claims from persons who have no colorable interest in the defendant assets. *United States v. Funds in the Amount of $574,840*, 719 F.3d 648, 650 (7th Cir. 2013) ("Rule G(6)(a) authorizes the government to issue 'special interrogatories limited to the claimant's identity and relationship to the defendant property.' The

purpose of such interrogatories is to smoke out fraudulent claims—claims by persons who have no colorable claims."). The government already possesses sufficient information to know that Claimant has standing to pursue his claims, so this special interrogatory is not necessary for the government to assess Claimant's standing and, therefore, is improper. *Cf. United States v. Real Property Located at 17 Coon Creek Road*, 787 F.3d 968, 977 (9th 2015) (claimant's failure to respond to the government's special interrogatories did not warrant striking claim since his standing was not reasonably in dispute because, *inter alia*, the government's complaint alleged the property at issue was titled in his name and he resided on it); *United States v. $154,853.00 in U.S. Currency*, 744 F.3d 559, 564 (8th Cir. 2014) (holding the same).

Given the sworn allegations in the government's Complaint and the information in the government's possession from its extensive discovery in related criminal proceedings, the government cannot fairly contend it needs the information sought in this special interrogatory to assess his standing to pursue his claims.

Claimant also objects to this special interrogatory on the grounds that it seeks information that is not relevant to whether Claimant has standing to pursue his claims and is outside of the scope of Supplemental Rule G(6)(a), which only authorizes "special interrogatories limited to the claimant's identity and relationship to the defendant property." This special interrogatory does not seek information about Claimant's identity and or his relationship to the defendant property and, therefore, is outside of the scope of Supplemental Rule G(6)(a).

Claimant also objects to this special interrogatory because it violates, and unduly burdens, the rights of privacy of Claimant and third parties.

**INTERROGATORY NO. 4:**

Identify any and all individuals who have resided with you during the time period between January 1, 2016, and April 27, 2018, include their names, relationships, current addresses and telephone numbers.

**RESPONSE TO INTERROGATORY NO. 4:**

Claimant objects to this special interrogatory because his standing is not reasonably in dispute.  The government has obtained extensive discovery in related criminal proceedings (many millions of pages of documents), including massive quantities of banking, investment, business, real estate, and personal records that evidence both (a) the source of the Defendant Assets as to which Claimant has asserted claims and (b) Claimant's interests in those assets.  Further, the allegations in the government's sworn Complaint about the Owned Assets also are sufficient by themselves to establish Claimant's standing as to those assets.  Claimant's Verified Claims and Statements of Interest filed in this action (or in an action consolidated with it) also are sufficient to establish Claimant's standing.

Supplemental Rule G(6)(a) allows the government to conduct narrow discovery aimed at weeding out fraudulent claims from persons who have no colorable interest in the defendant assets.  *United States v. Funds in the Amount of $574,840*, 719 F.3d 648, 650 (7th Cir. 2013) ("Rule G(6)(a) authorizes the government to issue 'special interrogatories limited to the claimant's identity and relationship to the defendant property.'  The purpose of such interrogatories is to smoke out fraudulent claims—claims by persons who have no colorable claims.").  The government already possesses sufficient information to know that Claimant has standing to pursue his claims, so this special interrogatory is not necessary for the government to assess Claimant's standing and, therefore, is improper.  *Cf. United States v. Real Property Located at 17 Coon Creek Road*, 787 F.3d 968, 977 (9th 2015) (claimant's failure to respond to the government's special interrogatories did not warrant striking claim since his standing was not reasonably in dispute because, *inter alia*, the government's complaint alleged the property at issue was titled in his name and he resided on it); *United States v. $154,853.00 in U.S. Currency*, 744 F.3d 559, 564 (8th Cir. 2014) (holding the same).

Given the sworn allegations in the government's Complaint and the information in the government's possession from its extensive discovery in related criminal

1  proceedings, the government cannot fairly contend it needs the information sought in

2  this special interrogatory to assess his standing to pursue his claims.

3       Claimant also objects to this special interrogatory on the grounds that it seeks

4  information that is not relevant to whether Claimant has standing to pursue his claims

5  and is outside of the scope of Supplemental Rule G(6)(a), which only authorizes "special

6  interrogatories limited to the claimant's identity and relationship to the defendant

7  property." This special interrogatory does not seek information about Claimant's identity

8  and or his relationship to the defendant property and, therefore, is outside of the scope

9  of Supplemental Rule G(6)(a).

10       Claimant also objects to this special interrogatory because it violates, and unduly

11  burdens, the rights of privacy of Claimant and third parties.

12  **INTERROGATORY NO. 5:**

13       Identify any person or entity (according to the instructions) from whom you

14  received any income, whether earned or unearned, during the time period between

15  January 1, 2016, and April 27, 2018, including any employment earnings, gifts, bequests,

16  gambling winnings, judgments, settlements, monies held in trust, interest income,

17  proceeds from sales, loans, lines of credit, or rents, specifying for each such source, the

18  name and address of the person or entity from which the income was received, the date(s)

19  and amount(s) received, and the reason for its payment.

20  **RESPONSE TO INTERROGATORY NO. 5:**

21       Claimant objects to this special interrogatory because his standing is not

22  reasonably in dispute. The government has obtained extensive discovery in related

23  criminal proceedings (many millions of pages of documents), including massive

24  quantities of banking, investment, business, real estate, and personal records that

25  evidence both (a) the source of the Defendant Assets as to which Claimant has asserted

26  claims and (b) Claimant's interests in those assets. Further, the allegations in the

27  government's sworn Complaint about the Owned Assets also are sufficient by

28  themselves to establish Claimant's standing as to those assets. Claimant's Verified Claims

1  and Statements of Interest filed in this action (or in an action consolidated with it) also

2  are sufficient to establish Claimant's standing.

3       Supplemental Rule G(6)(a) allows the government to conduct narrow discovery

4  aimed at weeding out fraudulent claims from persons who have no colorable interest in

5  the defendant assets.  *United States v. Funds in the Amount of $574,840*, 719 F.3d 648, 650

6  (7th Cir. 2013) ("Rule G(6)(a) authorizes the government to issue 'special interrogatories

7  limited to the claimant's identity and relationship to the defendant property.'  The

8  purpose of such interrogatories is to smoke out fraudulent claims—claims by persons

9  who have no colorable claims.").   The government already possesses sufficient

10  information to know that Claimant has standing to pursue his claims, so this special

11  interrogatory is not necessary for the government to assess Claimant's standing and,

12  therefore, is improper.  *Cf. United States v. Real Property Located at 17 Coon Creek Road*, 787

13  F.3d 968, 977 (9th 2015) (claimant's failure to respond to the government's special

14  interrogatories did not warrant striking claim since his standing was not reasonably in

15  dispute because, *inter alia*, the government's complaint alleged the property at issue was

16  titled in his name and he resided on it); *United States v. $154,853.00 in U.S. Currency*, 744

17  F.3d 559, 564 (8th Cir. 2014) (holding the same).

18       Given the sworn allegations in the government's Complaint and the information

19  in the government's possession from its extensive discovery in related criminal

20  proceedings, the government cannot fairly contend it needs the information sought in

21  this special interrogatory to assess his standing to pursue his claims.

22       Claimant also objects to this special interrogatory on the grounds that it seeks

23  information that is not relevant to whether Claimant has standing to pursue his claims

24  and is outside of the scope of Supplemental Rule G(6)(a), which only authorizes "special

25  interrogatories limited to the claimant's identity and relationship to the defendant

26  property."  *See United States v. $133,420.00 in U.S. Currency*, 672 F.3d 629, 643 n.5 (9th Cir.

27  2012) (finding the government's Rule G(6)(a) special interrogatory to "list the sources of

28  all other income that [he] received, whether earned or unearned, from any source(s) for

9

the last five years" exceeded the permissible scope of Supp. R. G(6)(a), which only allows information as to a claimant's "identity and relationship to the defendant property"). This is not a case where there is some question about whether Claimant has had sufficient income to acquire the Defendants Assets as to which he has asserted claims.  As such, any income that Claimant may have received from other sources has no bearing on his standing with respect to the Defendant Assets as to which he has asserted claims. Moreover, to the extent that Claimant's income has any relevance, Claimant is informed and believes that the government already has obtained this information in connection with its criminal case and investigation.

Claimant further objects to this interrogatory because the burden it would impose on Claimant is not proportionate to the needs of the case at this stage (*i.e.* to enable the government to assess Claimant's standing before being required to respond to the pending motions to dismiss) or to any benefit the government may receive from the discovery, given that (a) Claimant's standing is not reasonably in dispute and (b) the special interrogatory seeks information that is unreasonably cumulative and duplicative of the extensive discovery the government already obtained in related criminal proceedings, including Claimant's and massive quantities of banking, investment, business, real estate, and personal records that evidence both the source of the Defendant Assets as to which Claimant has asserted claims and Claimant's interests in those assets. The government can obtain any information it needs from that discovery, without imposing significant expenses and burdens on Claimant, and, to the extent the government has not already reviewed that discovery and obtained the information sought in this special interrogatory, the burden and cost of extracting the information from the existing discovery would be substantially the same for the government or Claimant. Moreover, this special interrogatory, which seeks the date and amount of *all* of Claimant's income over a two-year time period, improperly seeks to shift the burden of conducting a tracing analysis to Claimant.

Additionally, although this "boilerplate" special interrogatory (or portions of it)

10

might be appropriate in a case involving ambiguous claims to a large amount of unexplained currency, it is not appropriate here, given the allegations in the government's Complaint and given the nature of the Defendant Assets as to which Claimant has asserted claims (bank and investment accounts held in the name of Claimant and assets owned by others that are collateral for contractual obligations, with the liens securing those obligations perfected by financing statements of record in the offices of the Delaware Secretary of State, the Texas Secretary of State, and the D.C. Recorder of Deeds).

Subject to his objections, Claimant responds as follows:

On information and belief, Claimant received Subchapter S distributions from Medalist Holdings, Inc. and its subsidiaries.  On information and belief, the Subchapter S distributions largely derived from payments collected on promissory notes related to the sale of a publishing business to Voice Media Group, Inc., payments collected on promissory notes related to the sale of the Backpage.com website to Atlantische Bedrijven C.V. ("ABC") and UGC Tech Group C.V. ("UGC"), and rent and related payments from subtenants of the property located at 1201 E. Jefferson, Phoenix, AZ 85034.  Claimant also received interest income, dividends, or other investment income from his bank accounts and investment accounts.  Claimant also had other sources of income that were not material in relation to the foregoing.

**INTERROGATORY NO. 5.1:**

Identify with particularity each Defendant Asset in which you claim an interest.

**RESPONSE TO INTERROGATORY NO. 5.1:**

On information and belief, Claimant responds as follows:

*The "Owned Assets"*

- $1,038.42 in Bank Funds Seized from Bank of America Account '7054 ("BoA '7054 Funds")

*The "Liened Assets"*

- Approximately 1,680,028.85 EUR in bank funds seized from FIO Banka (Czech Republic) Account No. '2226 held in the name of Gold Leaf SRO

11

- Approximately 60.98 GDP in bank funds seized from FIO Banka (Czech Republic) Account No. '2231 held in the name of Gold Leaf SRO

- Approximately $72.87 in bank funds seized from FIO Banka (Czech Republic) Account No. '2230 held in the name of Gold Leaf SRO

- Approximately 3,213,937.82 EUR in bank funds seized from FIO Banka (Czech Republic) Account No. '4194 held in the name of Protecctio SRO

- Approximately $52.90 in bank funds seized from FIO Banka (Czech Republic) Account No. '4196 held in the name of Protecctio SRO

- Approximately 52.65 GDP in bank funds seized from FIO Banka Account No. '4198 held in the name of Protecctio SRO

- Approximately 605,976.95 EUR in bank funds seized from FIO Banka (Czech Republic) Account No. '8083 held in the name of Varicok Company SRO

- Approximately 458.99 GDP in bank funds seized from FIO Banka (Czech Republic) Account No. '8086 held in the name of the Varicok Company SRO

- Approximately $48.10 in bank funds seized from FIO Banka (Czech Republic) Account No. '8080 held in the name of the Varicok Company SRO

- An unknown amount of bank funds on deposit in Bank Frick (Liechtenstein) Account No. '000K held in the name of Ad Tech BV

- An unknown amount of bank funds on deposit in Bank Frick (Liechtenstein) Account No. '000U held in the name of Ad Tech BV

- An unknown amount of bank funds on deposit in Bank Frick (Liechtenstein) Account No. '000E held in the name of Ad Tech BV

- An unknown amount of bank funds on deposit in Bank Frick (Liechtenstein) Account No. '001K held in the name of Ad Tech BV

- An unknown amount of bank funds on deposit in Knab Bank (Netherlands) Account No. '7664 held in the name of Procop Services BV

- An unknown amount of bank funds on deposit in Rabo Bank (Netherlands) Account No. '2452 held in the name of the Gulietta Group BV

- An unknown amount of bank funds on deposit in Rabo Bank (Netherlands) Account No. '4721 held in the name of the UniversAds BV

- An unknown amount of bank funds on deposit in LHV Pank (Estonia) Account No. '4431 held in the name of Olist OU

- Approximately 747,664.15 GBP seized from SAXO Payments (United

12

Kingdom) Account No. '1262 held in the name of the Cashflows Europe Limited

- Domain names, and all rights and privileges associated therewith, including, but not limited to:

  - atlantabackpage.com
  - backpage.be
  - backpage.com
  - backpage.com.br
  - backpage.cz
  - backpage.dk
  - backpage.ee
  - backpage.es
  - backpage.fi
  - backpage.fr
  - backpage.gr
  - backpage.hu
  - backpage.ie
  - backpage.it
  - backpage.lt
  - backpage.mx
  - backpage.net
  - backpage.no
  - backpage.pl
  - backpage.pt
  - backpage.ro
  - backpage.si
  - backpage.sk
  - backpage.us
  - backpage-insider.com

13

| | |
|---|---|
| 1 | • bestofbackpage.com |
| 2 | • bestofbigcity.com |
| 3 | • bigcity.com |
| 4 | • chicagobackpage.com |
| 5 | • denverbackpage.com |
| 6 | • newyorkbackpage.com |
| 7 | • phoenixbackpage.com |
| 8 | • sandiegobackpage.com |
| 9 | • seattlebackpage.com |
| 10 | • tampabackpage.com |
| 11 | • admoderation.com (Versio) |
| 12 | • admoderators.com (Versio) |
| 13 | • backpage.be (NetNames) |
| 14 | • backpage.bg (European domains) |
| 15 | • backpage.bg (NetNames) |
| 16 | • backpage.ca (NetNames) |
| 17 | • backpage.cl (NetNames) |
| 18 | • backpage.cn (European domains) |
| 19 | • backpage.cn (NetNames) |
| 20 | • backpage.co.id (NetNames) |
| 21 | • backpage.co.nl (European domains) |
| 22 | • ll. backpage.co.nl (NetNames) |
| 23 | • backpage.co.nz (NetNames) |
| 24 | • backpage.co.uk (NetNames) |
| 25 | • backpage.co.ve (NetNames) |
| 26 | • backpage.co.za (NetNames) |
| 27 | • backpage.com (NetNames) |
| 28 | • backpage.com.ar (NetNames) |

1  • backpage.com.au (NetNames)

2  • backpage.com.ph (NetNames)

3  • backpage.cz (NetNames)

4  • backpage.dk (NetNames)

5  • backpage.ec (NetNames)

6  • backpage.ee (European domains)

7  • backpage.ee (NetNames)

8  • backpage.es (NetNames)

9  • backpage.fi (European domains)

10 • backpage.fi (NetNames)

11 • backpage.fr (European domains)

12 • backpage.fr (NetNames)

13 • backpage.gr (European domains)

14 • backpage.gr (NetNames)

15 • backpage.hk (European domains)

16 • backpage.hk (NetNames)

17 • backpage.hu (European domains)

18 • backpage.hu (NetNames)

19 • backpage.ie (NetNames)

20 • backpage.in (NetNames)

21 • backpage.it (NetNames)

22 • backpage.jp (NetNames)

23 • backpage.kr (NetNames)

24 • backpage.lt (NetNames)

25 • backpage.lv (European domains)

26 • backpage.lv (NetNames)

27 • backpage.me (NetNames)

28 • backpage.mx (NetNames)

1     •   backpage.my (NetNames)

2     •   backpage.net (NetNames)

3     •   backpage.nl (NetNames)

4     •   backpage.no (European domains)

5     •   backpage.no (NetNames)

6     •   backpage.nz (NetNames)

7     •   backpage.pe (NetNames)

8     •   backpage.ph (NetNames)

9     •   backpage.pk (NetNames)

10    •   backpage.pl (NetNames)

11    •   backpage.porn (NetNames)

12    •   backpage.pt (NetNames)

13    •   backpage.ro (European domains)

14    •   backpage.ro (NetNames)

15    •   backpage.se (NetNames)

16    •   backpage.sex (NetNames)

17    •   backpage.sg (NetNames)

18    •   backpage.si (European domains)

19    •   backpage.si (NetNames)

20    •   backpage.sk (European domains)

21    •   backpage.sk (NetNames)

22    •   backpage.sucks (NetNames)

23    •   backpage.tw (NetNames)

24    •   backpage.uk (NetNames)

25    •   backpage.uk.com (NetNames)

26    •   backpage.us (NetNames)

27    •   backpage.vn (NetNames)

28    •   backpage.xxx (NetNames)

CLAIMANT RAMON LARKIN'S RESPONSES TO PLAINTIFF'S FIRST SET OF
RULE G SPECIAL INTERROGATORIES

1      • backpage.xyz (NetNames)

2      • backpagecompimp.com (NetNames)

3      • backpagecompimps.com (NetNames)

4      • backpagepimp.com (NetNames)

5      • backpagepimps.com (NetNames)

6      • backpagg.com (NetNames)

7      • backpagm.com (NetNames)

8      • backpagu.com (NetNames)

9      • backpaoe.com (NetNames)

10      • backpawe.com (NetNames)

11      • backqage.com (NetNames)

12      • backrage.com (NetNames)

13      • backxage.com (NetNames)

14      • bakkpage.com (NetNames)

15      • bcklistings.com (NetNames)

16      • bestofbackpage.com (NetNames)

17      • bestofbigcity.com (NetNames)

18      • bickpage.com (NetNames)

19      • bigcity.com (NetNames)

20      • bpclassified.com (NetNames)

21      • bpclassifieds.com (NetNames)

22      • carlferrer.com (NetNames)

23      • clasificadosymas.com (NetNames)

24      • clasificadosymas.net (NetNames)

25      • clasificadosymas.org (NetNames)

26      • classifiedsolutions.co.uk (NetNames)

27      • classifiedsolutions.net (NetNames)

28      • classyadultads.com (Versio)

1   • columbusbackpage.com (NetNames)

2   • connecticutbackpage.com (NetNames)

3   • cracker.co.id (NetNames)

4   • cracker.com (NetNames)

5   • cracker.com.au (NetNames)

6   • cracker.id (NetNames)

7   • cracker.net.au (NetNames)

8   • crackers.com.au (NetNames)

9   • crackers.net.au (NetNames)

10  • ctbackpage.com (NetNames)

11  • dallasbackpage.com (NetNames)

12  • denverbackpage.com (NetNames)

13  • easypost123.com (Versio)

14  • easyposts123.com (Versio)

15  • emais.com.pt (NetNames)

16  • evilempire.com (NetNames)

17  • ezpost123.com (Versio)

18  • fackpage.com (NetNames)

19  • fastadboard.com (Versio)

20  • guliettagroup.nl (Versio)

21  • htpp.org (NetNames)

22  • ichold.com (NetNames)

23  • internetspeechfoundation.com (nameisp)

24  • internetspeechfoundation.org (nameisp)

25  • loads2drive.com (NetNames)

26  • loadstodrive.com (NetNames)

27  • loadtodrive.com (NetNames)

28  • losangelesbackpage.com (NetNames)

18

1.  - mediafilecloud.com (NetNames)
2.  - miamibackpage.com (NetNames)
3.  - minneapolisbackpage.com (NetNames)
4.  - mobileposting.com (Versio)
5.  - mobilepostings.com (Versio)
6.  - mobilepostlist.com (Versio)
7.  - mobilposting.com (Versio)
8.  - naked.city (NetNames)
9.  - nakedcity.com (NetNames)
10. - newyorkbackpage.com (NetNames)
11. - paidbyhour.com (NetNames)
12. - petseekr.com (NetNames)
13. - petsfindr.com (NetNames)
14. - phoenixbackpage.com (NetNames)
15. - posteasy123.com (Versio)
16. - postfaster.com (NetNames)
17. - postfastly.com (NetNames)
18. - postfastr.com (NetNames)
19. - postonlinewith.com (Versio)
20. - postonlinewith.me (Versio)
21. - postseasy123.com (Versio)
22. - postsol.com (GoDaddy)
23. - postszone24.com (Versio)
24. - postzone24.com (Versio)
25. - postzones24.com (Versio)
26. - rentseekr.com (NetNames)
27. - results911.com (NetNames)
28. - sandiegobackpage.com (NetNames)

| | |
|---|---|
| 1 | • sanfranciscobackpage.com (NetNames) |
| 2 | • seattlebackpage.com (NetNames) |
| 3 | • sellyostuffonline.com (Versio) |
| 4 | • sfbackpage.com (NetNames) |
| 5 | • simplepost24.com (Versio) |
| 6 | • simpleposts24.com (Versio) |
| 7 | • svc.ws (NetNames) |
| 8 | • truckrjobs.com (NetNames) |
| 9 | • ugctechgroup.com (NetNames) |
| 10 | • universads.nl (Versio) |
| 11 | • villagevoicepimps.com (GoDaddy) |
| 12 | • websitetechnologies.co.uk (NetNames) |
| 13 | • websitetechnologies.com (NetNames) |
| 14 | • websitetechnologies.net (NetNames) |
| 15 | • websitetechnologies.nl (NetNames) |
| 16 | • websitetechnologies.org (NetNames) |
| 17 | • weprocessmoney.com (GoDaddy) |
| 18 | • wst.ws (NetNames) |
| 19 | • xn--yms-fla.com (NetNames) |
| 20 | • ymas.ar.com (European domains) |
| 21 | • ymas.br.com (European domains) |
| 22 | • ymas.br.com (NetNames) |
| 23 | • ymas.bz (European domains |
| 24 | • ymas.bz (NetNames) |
| 25 | • ymas.cl (European domains) |
| 26 | • ymas.cl (NetNames) |
| 27 | • ymas.co.bz (European domains) |
| 28 | • ymas.co.bz (NetNames) |

20

1    •   ymas.co.cr (European domains)

2    •   ymas.co.cr (NetNames)

3    •   ymas.co.ni (European domains)

4    •   ymas.co.ni (NetNames)

5    •   ymas.co.ve (European domains)

6    •   ymas.co.ve (NetNames)

7    •   ymas.com (NetNames)

8    •   ymas.com.br (European domains)

9    •   ymas.com.br (NetNames)

10    •   ymas.com.bz (European domains)

11    •   ymas.com.bz (NetNames)

12    •   ymas.com.co (European domains)

13    •   ymas.com.co (NetNames)

14    •   ymas.com.do (European domains)

15    •   ymas.com.do (NetNames)

16    •   ymas.com.ec (European domains)

17    •   ymas.com.ec (NetNames)

18    •   ymas.com.es (European domains)

19    •   ymas.com.es (NetNames)

20    •   ymas.com.gt (European domains)

21    •   ymas.com.gt (NetNames)

22    •   ymas.com.hn (European domains

23    •   ymas.com.hn (NetNames)

24    •   ymas.com.mx (NetNames)

25    •   ymas.com.ni (European domains)

26    •   ymas.com.ni (NetNames)

27    •   ymas.com.pe (European domains)

28    •   ymas.com.pe (NetNames)

CLAIMANT RAMON LARKIN'S RESPONSES TO PLAINTIFF'S FIRST SET OF
RULE G SPECIAL INTERROGATORIES

1  • ymas.com.pr (European domains)

2  • ymas.com.pr (NetNames)

3  • ymas.com.pt (NetNames)

4  • ymas.com.uy (European domains)

5  • ymas.com.uy (NetNames)

6  • ymas.com.ve (European domains)

7  • ymas.com.ve (NetNames)

8  • ymas.cr (European domains)

9  • ymas.cr (NetNames)

10  • ymas.do (European domains)

11  • ymas.do (NetNames)

12  • ymas.ec (European domains)

13  • ymas.ec (NetNames)

14  • ymas.es (European domains)

15  • ymas.es (NetNames)

16  • ymas.org (NetNames)

17  • ymas.pe (European domains)

18  • ymas.pe (NetNames)

19  • ymas.pt (NetNames)

20  • ymas.us (European domains)

21  • ymas.us (NetNames)

22  • ymas.uy (European domains)

23  • ymas.uy (NetNames)

24  • ymas.uy.com (European domains)

25  • $699,940.00 in bank funds seized from ING Bank (Netherlands) Account No. '7684 held in the name of Payment Solutions BV

26

27  • $106,988.41 in bank funds seized from ING Bank (Netherlands) Account No. '2071 held in the name of Payment Solutions BV

28  • $499,910.01 in bank funds seized from US Bank Account No. '0239 held in

22

the name of Affordable Bail Bonds, LLC

- $50,000.00 in bank funds seized from Enterprise Bank and Trust Account No. '7177 held in the name of Global Trading Solutions, LLC

- $1,876.36 in bank funds seized from ING Bank (Netherlands) Account No. '2071 held in the name of Payment Solutions BV

- $50,357.35 in bank funds seized from ING Bank (Netherlands) Account No. '7684 held in the name of Payment Solutions BV

- $248,970.00 in bank funds seized from Citibank NA Account No. '0457 held in the name of Paul Hastings, LLP

- $52,500.00 in bank funds seized from Enterprise Bank and Trust Account No. '7177 held in the name of Global Trading Solutions, LLC

- $65,000.00 in bank funds seized from Enterprise Bank and Trust Account No. '7177 held in the name of Global Trading Solutions, LLC

- $5,534.54 in bank funds seized from Enterprise Bank and Trust Account '7177 held in the name of Global Trading Solutions, LLC

- $40,000.00 in bank funds seized from Enterprise Bank and Trust Account No. '7177 held in the name of Global Trading Solutions, LLC

- Approximately 6 Bitcoins surrendered on or about April 6, 2018, from a Backpage controlled wallet

- Approximately 404.99984122 Bitcoins surrendered on or about April 6, 2018, from a Backpage controlled wallet

- Approximately 199.99995716 Bitcoins surrendered on or about April 6, 2018, from a Backpage controlled wallet

- Approximately 173.97319 Bitcoins surrendered on or about April 26, 2018, from a Backpage controlled wallet

- Approximately 411.00019 Bitcoins seized on or about April 13, 2018, from a Backpage controlled wallet

- Approximately 2.00069333 Bitcoins surrendered on or about May 7, 2018, from a Backpage controlled wallet

- Approximately 136.6544695 Bitcoins surrendered on or about June 15, 2018, from a Backpage controlled wallet

- Approximately 2,673.59306905 Bitcoin Cash surrendered on or about April 26, 2018, from a Backpage controlled wallet

- Approximately 55.50826185 Bitcoin Cash surrendered on or about May 3, 2018, from a Backpage controlled wallet

- Approximately 73.62522241 Bitcoin Cash surrendered on or about June 15, 2018, from a Backpage controlled wallet

- Approximately 16,310.79413202 Litecoins surrendered on or about April 26, 2018, from a Backpage controlled wallet

- Approximately 783.9735116 Litecoins surrendered on or about June 15, 2018, from a Backpage controlled wallet

- Approximately 509.81904619 Bitcoin Gold surrendered on or about June 21, 2018, from a Backpage controlled wallet

- Approximately 2.70447488 Bitcoins seized from Bitstamp Account No. '0831

- Approximately 3.54986077 Bitcoin Cash seized from Bitstamp Account No. '0831

- $518,172.92 in bank funds seized from Wells Fargo Bank Account No. '4455 held in the name of Cardquiry, Inc.

- $182,182.50 in bank funds seized from Amro Bank N.V. (Netherlands) Account No. '6352 held in the name of Ad Tech BV with Stichting Zencotrust

- $23,175.00 in bank funds seized from Plains Capital Bank Account No. '3939 held in the name of Scheef & Stone, LLP

- $11,802.76 in bank funds seized from Citibank Account No. '6973 held in the name of Schiff Hardin LLP

- $3,374,918.61 in bank funds seized from Prosperity Bank Account No. '7188 held in the name of Posting Solutions, LLC

- $3,713,121.03 seized from Bank of America Account No. '3414 held in the name of Davis Wright Tremaine, LLP

**Other Assets**

- $5,462,027.17 in bank funds seized from BBVA Compass Bank Account No. '3873 held in the name of Cereus Properties, LLC

- $407,686.14 in bank funds seized from BBVA Compass Bank Account No. '4862 held in the name of Cereus Properties, LLC

Claimant also incorporates by reference the Verified Claims and Statements of Interest he filed in this action (or in an action consolidated with it) (*see* Dkt. 116).

**INTERROGATORY NO. 6:**

For each Defendant Asset identified in your response to Interrogatory No. 5.1, identify and describe with particularity the source of each such Defendant Asset. Specifically, explain the source(s) or origin(s) of each such Defendant Asset and identify (according to the instructions) all documents that relate to how you acquired such Defendant Asset.

**RESPONSE TO INTERROGATORY NO. 6:**

Claimant objects to this special interrogatory because his standing is not reasonably in dispute. The government has obtained extensive discovery in related criminal proceedings (many millions of pages of documents), including massive quantities of banking, investment, business, real estate, and personal records that evidence both (a) the source of the Defendant Assets as to which Claimant has asserted claims and (b) Claimant's interests in those assets. Further, the allegations in the government's sworn Complaint about the Owned Assets also are sufficient by themselves to establish Claimant's standing as to those assets. Claimant's Verified Claims and Statements of Interest filed in this action (or in an action consolidated with it) also are sufficient to establish Claimant's standing.

Supplemental Rule G(6)(a) allows the government to conduct narrow discovery aimed at weeding out fraudulent claims from persons who have no colorable interest in the defendant assets. *United States v. Funds in the Amount of $574,840*, 719 F.3d 648, 650 (7th Cir. 2013) ("Rule G(6)(a) authorizes the government to issue 'special interrogatories limited to the claimant's identity and relationship to the defendant property.' The purpose of such interrogatories is to smoke out fraudulent claims—claims by persons who have no colorable claims."). The government already possesses sufficient information to know that Claimant has standing to pursue his claims, so this special interrogatory is not necessary for the government to assess Claimant's standing and, therefore, is improper. *Cf. United States v. Real Property Located at 17 Coon Creek Road*, 787 F.3d 968, 977 (9th 2015) (claimant's failure to respond to the government's special

interrogatories did not warrant striking claim since his standing was not reasonably in dispute because, *inter alia*, the government's complaint alleged the property at issue was titled in his name and he resided on it); *United States v. $154,853.00 in U.S. Currency*, 744 F.3d 559, 564 (8th Cir. 2014) (holding the same).

Given the sworn allegations in the government's Complaint and the information in the government's possession from its extensive discovery in related criminal proceedings, the government cannot fairly contend it needs the information sought in this special interrogatory to assess his standing to pursue his claims.

Claimant further objects to this interrogatory because the burden it would impose on Claimant is not proportionate to the needs of the case at this stage (*i.e.* to enable the government to assess Claimant's standing before being required to respond to the pending motions to dismiss) or to any benefit the government may receive from the discovery, given that (a) Claimant's standing is not reasonably in dispute and (b) the special interrogatory seeks information that is unreasonably cumulative and duplicative of the extensive discovery the government already obtained in related criminal proceedings, including and massive quantities of banking, investment, business, real estate, and personal records that evidence both the source of the Defendant Assets as to which Claimant has asserted claims and Claimant's interests in those assets.   The government can obtain any information it needs from that discovery, without imposing significant expenses and burdens on Claimant, and, to the extent the government has not already reviewed that discovery and obtained the information sought in this special interrogatory, the burden and cost of extracting the information from the existing discovery would be substantially the same for the government or Claimant.

Additionally, although this "boilerplate" special interrogatory (or portions of it) might be appropriate in a case involving ambiguous claims to a large amount of unexplained currency, it is not appropriate here, given the allegations in the government's Complaint and given the nature of the Defendant Assets as to which Claimant has asserted claims (bank and investment accounts held in the name of Claimant or entities

26

he controls and assets owned by others that are collateral for contractual obligations, with the liens securing those obligations perfected by financing statements of record in the offices of the Delaware Secretary of State, the Texas Secretary of State, and the D.C. Recorder of Deeds).

Subject to his objections, on information and belief, Claimant responds as follows:

With respect to the Owned Assets, the funds contained in these accounts were accumulated by Claimant over at least a year, including through the following sources: (1) Subchapter S distributions (including from Medalist Holdings, Inc. and its subsidiaries and from prior employment) and (2) salary, interest income, dividends, and other investment income. The documents related to the acquisition of these assets include account statements, title documents, signature cards, and other account-related documents.

With respect to the Liened Assets, on information and belief, Claimant is a third-party beneficiary of a series of contracts entered into in April 2015 among subsidiaries of Medalist Holdings, Inc. and: ABC and UGC (collectively, "Borrowers"); numerous affiliates of Borrowers, including Backpage.com, LLC (collectively, "Pledgors"); and Carl A. Ferrer and other affiliates of Borrowers (collectively, "Guarantors"). On information and belief, Claimant has the right to advancement and indemnification from ABC and UGC under those agreements, which advancement and indemnification obligations are guaranteed by Pledgors and Guarantors. Those obligations are secured by perfected security interests in the assets of Pledgors (the "Collateral"). On information and belief, the Liened Assets all are part of the Collateral. On information and belief, the sums owed for advancement and indemnification exceed the value of the Collateral (including the Liened Assets). To Claimant's knowledge, the Collateral securing the obligations of ABC, UGC, and their affiliates (including the Liened Assets) either is revenue related to the operation of Backpage.com and related websites or was derived from such revenues. The documents related to Claimant's interest in these accounts include the April 2015 agreements referenced above and the financing statements perfecting the liens arising

27

under those documents.

With respect to the $5,462,027.17 in bank funds seized from BBVA Compass Bank Account No. '3873, held in the name of Cereus Properties, LLC, on information and belief, the funds contained in that account were accumulated by Cereus Properties, LLC primarily in the following ways: (1) Cereus Properties, LLC received payments, made by or on behalf of ABC, on a promissory note originally payable to Vermillion Holdings, LLC, and later assigned to Shearwater Investments, LLC, in connection with the sale of the Backpage.com website business by Vermillion Holdings, LLC to ABC; (2) Cereus Properties, LLC received payments, made by or on behalf of UGC, on a promissory note originally payable to Vermillion Holdings, LLC, and later assigned to Shearwater Investments, LLC, in connection with the sale of the Backpage.com website business by Vermillion Holdings, LLC to UGC; and (3) Cereus Properties, LLC received other payments, made by or on behalf of ABC and UGC, under the terms of the sales or loan agreements related to the sales described above.  Cereus Properties, LLC is ultimately owned by Medalist Holdings, Inc.  Claimant is a minority stockholder of Medalist Holdings, Inc.  The documents related to the acquisition of these accounts include:  (1) account statements, title documents, signature cards, and other account-related documents, (2) corporate formation documents for Medalist Holdings, Inc. and its subsidiaries, and (3) the sales and loan documents and promissory notes referenced above and the financing statements perfecting the liens arising under those documents.

With respect to the $407,686.14 in bank funds seized from BBVA Compass Bank Account No. '4862 held in the name of Cereus Properties, LLC, on information and belief, the funds contained in that account were accumulated by Cereus Properties, LLC primarily in the following ways:  (1) Cereus Properties, LLC received payments, made by or on behalf of Voice Media Group, Inc., on a promissory note payable to Broadway Capital Corp., LLC in connection with the sale of a publishing business by Camarillo Holdings, LLC to Voice Media Group, Inc. and (2) Cereus Properties, LLC received payments from subtenants of the property located at 1201 E. Jefferson, Phoenix, AZ

28

85034, related to their subtenancies.  Cereus Properties, LLC is ultimately owned by Medalist Holdings, Inc.  Claimant is a minority stockholder of Medalist Holdings, Inc.  The documents related to the acquisition of these accounts include (1) account statements, title documents, signature cards, and other account-related documents, (2) corporate formation documents for Medalist Holdings, Inc. and its subsidiaries, (3) the sales and loan documents and promissory notes related to the sale of the publishing business to Voice Media Group, Inc. and the financing statements perfecting the liens arising under those documents, and (4) documents, including sublease agreements, related to the rental of property located at 1201 E. Jefferson, Phoenix, AZ 85034.

**INTERROGATORY NO. 7:**

For each Defendant Asset identified in your response to Interrogatory No. 5.1, identify and describe with particularity the intended use(s) of each Defendant Asset and identify (according to the instructions) all documents that relate to the intended use(s) of each Defendant Asset.

**RESPONSE TO INTERROGATORY NO. 7:**

Claimant objects to this special interrogatory because his standing is not reasonably in dispute.  The government has obtained extensive discovery in related criminal proceedings (many millions of pages of documents), including massive quantities of banking, investment, business, real estate, and personal records that evidence both (a) the source of the Defendant Assets as to which Claimant has asserted claims and (b) Claimant's interests in those assets.  Further, the allegations in the government's sworn Complaint about the Owned Assets also are sufficient by themselves to establish Claimant's standing as to those assets.  Claimant's Verified Claims and Statements of Interest filed in this action (or in an action consolidated with it) also are sufficient to establish Claimant's standing.

Supplemental Rule G(6)(a) allows the government to conduct narrow discovery aimed at weeding out fraudulent claims from persons who have no colorable interest in the defendant assets. *United States v. Funds in the Amount of $574,840*, 719 F.3d 648, 650

29

(7th Cir. 2013) ("Rule G(6)(a) authorizes the government to issue 'special interrogatories limited to the claimant's identity and relationship to the defendant property.' The purpose of such interrogatories is to smoke out fraudulent claims—claims by persons who have no colorable claims."). The government already possesses sufficient information to know that Claimant has standing to pursue his claims, so this special interrogatory is not necessary for the government to assess Claimant's standing and, therefore, is improper. *Cf. United States v. Real Property Located at 17 Coon Creek Road*, 787 F.3d 968, 977 (9th 2015) (claimant's failure to respond to the government's special interrogatories did not warrant striking claim since his standing was not reasonably in dispute because, *inter alia*, the government's complaint alleged the property at issue was titled in his name and he resided on it); *United States v. $154,853.00 in U.S. Currency*, 744 F.3d 559, 564 (8th Cir. 2014) (holding the same).

Given the sworn allegations in the government's Complaint and the information in the government's possession from its extensive discovery in related criminal proceedings, the government cannot fairly contend it needs the information sought in this special interrogatory to assess his standing to pursue his claims.

Claimant also objects to this special interrogatory on the grounds that it seeks information that is not relevant to whether Claimant has standing to pursue his claims and is outside of the scope of Supplemental Rule G(6)(a), which only authorizes "special interrogatories limited to the claimant's identity and relationship to the defendant property." Claimant's "intended use(s)" of the Defendant Assets at issue are not relevant to whether he has standing to assert his claims against those assets. *See United States v. $133,420.00 in U.S. Currency*, 672 F.3d 629, 643 n.5 (9th Cir. 2012) (rejecting special interrogatory asking claimant to "list the sources of all other income that [he] received, whether earned or unearned, from any source(s) for the last five years" and to "[e]xplain why anyone would travel anywhere with more than $133,420 in U.S. currency in a rented vehicle"). Moreover, this is not a case where there is some question about how Claimant acquired these assets. Claimant's intended use of the assets, therefore, has no bearing on

his standing with respect to the Defendant Assets as to which he has asserted claims. And, given the sworn allegations in its Complaint and the discovery in the government's possession, the government cannot fairly contend the information sought in this special interrogatory is relevant to Claimant's standing as to those assets.

Claimant further objects to this interrogatory because the burden it would impose on Claimant is not proportionate to the needs of the case at this stage (*i.e.* to enable the government to assess Claimant's standing before being required to respond to the pending motions to dismiss) or to any benefit the government may receive from the discovery, given that (a) Claimant's standing is not reasonably in dispute and (b) the special interrogatory seeks information that is unreasonably cumulative and duplicative of the extensive discovery the government already obtained in related criminal proceedings, including massive quantities of banking, investment, business, real estate, and personal records that evidence both the source of the Defendant Assets as to which Claimant has asserted claims and Claimant's interests in those assets.  The government can obtain any information it needs from that discovery, without imposing significant expenses and burdens on Claimant, and, to the extent the government has not already reviewed that discovery and obtained the information sought in this special interrogatory, the burden and cost of extracting the information from the existing discovery would be substantially the same for the government or Claimant.

Additionally, although this "boilerplate" special interrogatory (or portions of it) might be appropriate in a case involving ambiguous claims to a large amount of unexplained currency, it is not appropriate here, given the allegations in the government's Complaint and given the nature of the Defendant Assets as to which Claimant has asserted claims (bank and investment accounts held in the name of Claimant or entities he controls and assets owned by others that are collateral for contractual obligations, with the liens securing those obligations perfected by financing statements of record in the offices of the Delaware Secretary of State, the Texas Secretary of State, and the D.C. Recorder of Deeds).

CLAIMANT RAMON LARKIN'S RESPONSES TO PLAINTIFF'S FIRST SET OF
RULE G SPECIAL INTERROGATORIES

Subject to his objections, Claimant responds as follows:

At the time of the seizures and continuing to this day, Claimant intended to use the Owned Assets to, among other things, pay for his and his family's living and personal expenses. At the time of the seizures and continuing to this day, on information and belief, Claimant understood that the Liened Assets were to secure the obligations of ABC, UGC, and their affiliates to meet their contractual obligations to him and that the Other Assets[3] were to pay the expenses of defending litigation related to Backpage.com.

**INTERROGATORY NO. 8:**

For each Defendant Asset identified in your response to Interrogatory No. 5.1, state and describe with particularity the facts upon which you base your claim to each Defendant Asset and your denials of the allegations set forth in the Consolidated Complaint.

**RESPONSE TO INTERROGATORY NO. 8:**

Claimant objects to this special interrogatory because his standing is not reasonably in dispute. The government has obtained extensive discovery in related criminal proceedings (many millions of pages of documents), including massive quantities of banking, investment, business, real estate, and personal records that evidence both (a) the source of the Defendant Assets as to which Claimant has asserted claims and (b) Claimant's interests in those assets. Further, the allegations in the government's sworn Complaint about the Owned Assets also are sufficient by themselves to establish Claimant's standing as to those assets. Claimant's Verified Claims and Statements of Interest filed in this action (or in an action consolidated with it) also are sufficient to establish Claimant's standing.

Supplemental Rule G(6)(a) allows the government to conduct narrow discovery aimed at weeding out fraudulent claims from persons who have no colorable interest in

---

[3] The Defendant Assets identified as the "Other Assets" are itemized in Claimant's response to special interrogatory 5.1.

the defendant assets. *United States v. Funds in the Amount of $574,840*, 719 F.3d 648, 650 (7th Cir. 2013) ("Rule G(6)(a) authorizes the government to issue 'special interrogatories limited to the claimant's identity and relationship to the defendant property.' The purpose of such interrogatories is to smoke out fraudulent claims—claims by persons who have no colorable claims."). The government already possesses sufficient information to know that Claimant has standing to pursue his claims, so this special interrogatory is not necessary for the government to assess Claimant's standing and, therefore, is improper. *Cf. United States v. Real Property Located at 17 Coon Creek Road*, 787 F.3d 968, 977 (9th 2015) (claimant's failure to respond to the government's special interrogatories did not warrant striking claim since his standing was not reasonably in dispute because, *inter alia*, the government's complaint alleged the property at issue was titled in his name and he resided on it); *United States v. $154,853.00 in U.S. Currency*, 744 F.3d 559, 564 (8th Cir. 2014) (holding the same).

Given the sworn allegations in the government's Complaint and the information in the government's possession from its extensive discovery in related criminal proceedings, the government cannot fairly contend it needs the information sought in this special interrogatory to assess his standing to pursue his claims.

Claimant also objects to this special interrogatory on the grounds that it seeks information that is not relevant to whether Claimant has standing to pursue his claims and is outside of the scope of Supplemental Rule G(6)(a), which only authorizes "special interrogatories limited to the claimant's identity and relationship to the defendant property." The portion of this special interrogatory that inquires about Claimant's as of yet unfiled answer to the Complaint, including which allegations in the Complaint he expects to deny in his answer and why, plainly is outside of the scope of Supplemental Rule G(6)(a).

Claimant further objects to this interrogatory because the burden it would impose on Claimant is not proportionate to the needs of the case at this stage (*i.e.* to enable the government to assess Claimant's standing before being required to respond to the

1  pending motions to dismiss) or to any benefit the government may receive from the

2  discovery, given that (a) Claimant's standing is not reasonably in dispute and (b) the

3  special interrogatory seeks information that is unreasonably cumulative and duplicative

4  of the extensive discovery the government already obtained in related criminal

5  proceedings, including massive quantities of banking, investment, business, real estate,

6  and personal records that evidence both the source of the Defendant Assets as to which

7  Claimant has asserted claims and Claimant's interests in those assets.  The government

8  can obtain any information it needs from that discovery, without imposing significant

9  expenses and burdens on Claimant, and, to the extent the government has not already

10 reviewed that discovery and obtained the information sought in this special interrogatory,

11 the burden and cost of extracting the information from the existing discovery would be

12 substantially the same for the government or Claimant.

13      Additionally, although this "boilerplate" special interrogatory (or portions of it)

14 might be appropriate in a case involving ambiguous claims to a large amount of

15 unexplained currency, it is not appropriate here, given the allegations in the government's

16 Complaint and given the nature of the Defendant Assets as to which Claimant has

17 asserted claims (bank and investment accounts held in the name of Claimant or entities

18 he controls and assets owned by others that are collateral for contractual obligations,

19 with the liens securing those obligations perfected by financing statements of record in

20 the offices of the Delaware Secretary of State, the Texas Secretary of State, and the D.C.

21 Recorder of Deeds).

22      Subject to his objections, Claimant responds as follows:

23      With respect to the Owned Assets, Claimant is the sole owner of the account

24 holding the funds and therefore has a legally recognizable interest in the assets.

25      With respect to the $5,462,027.17 in bank funds seized from BBVA Compass

26 Bank Account No. '3873 held in the name of Cereus Properties, LLC and the

27 $407,686.14 in bank funds seized from BBVA Compass Bank Account No. '4862 held

28 in the name of Cereus Properties, LLC, on information and belief, Cereus Properties,

34

LLC is ultimately owned by Medalist Holdings, Inc.  Claimant is a minority stockholder of Medalist Holdings, Inc. and, as a result, has a legally recognizable interest in the funds.

With respect to the $3,713,121.03 seized from Bank of America Account No. '3414 held in the name of Davis Wright Tremaine, LLP, those funds were deposited for the benefit of, and to pay the legal fees and costs of, others who were jointly represented by Davis Wright Tremaine, LLP.  On information and belief, the funds were deposited by or on behalf of ABC and UGC, under the terms of the sales or loan agreements related to the sale of Backpage.com.  Claimant's interest in those funds is premised, in part, on the possession of those funds by its counsel.  Those funds also are part of the Collateral.

With respect to the Liened Assets, Claimant is a third-party beneficiary of a series of contracts entered into in April 2015 among subsidiaries of Medalist Holdings, Inc. and: Borrowers; Pledgors; and Guarantors.  On information and belief, Claimant has the right to advancement and indemnification from ABC and UGC under those agreements, which advancement and indemnification obligations are guaranteed by Pledgors and Guarantors. On information and belief, those obligations are secured by perfected security interests in the Collateral.  On information and belief, the sums owed for advancement and indemnification exceed the value of the Collateral (including the remaining Defendant Assets).  On information and belief, the perfected security interests in the Collateral securing the obligations to Claimant are legally recognizable interests in the Liened Assets.

Claimant also incorporates by reference the Verified Claims and Statements of Interest he filed in this action (or in an action consolidated with it) (*see* Dkt. 116).

**INTERROGATORY NO. 9:**

For each Defendant Asset identified in your response to Interrogatory No. 5.1, identify and describe with particularity (according to the instructions) all documents that support, refute, or relate to your claim to each Defendant Asset and your denials of the allegations set forth in the Consolidated Complaint.

**RESPONSE TO INTERROGATORY NO. 9:**

Claimant objects to this special interrogatory because his standing is not reasonably in dispute.  The government has obtained extensive discovery in related criminal proceedings (many millions of pages of documents), including massive quantities of banking, investment, business, real estate, and personal records that evidence both (a) the source of the Defendant Assets as to which Claimant has asserted claims and (b) Claimant's interests in those assets.  Further, the allegations in the government's sworn Complaint about the Owned Assets also are sufficient by themselves to establish Claimant's standing as to those assets.  Claimant's Verified Claims and Statements of Interest filed in this action (or in an action consolidated with it) also are sufficient to establish Claimant's standing.

Supplemental Rule G(6)(a) allows the government to conduct narrow discovery aimed at weeding out fraudulent claims from persons who have no colorable interest in the defendant assets.  *United States v. Funds in the Amount of $574,840*, 719 F.3d 648, 650 (7th Cir. 2013) ("Rule G(6)(a) authorizes the government to issue 'special interrogatories limited to the claimant's identity and relationship to the defendant property.'  The purpose of such interrogatories is to smoke out fraudulent claims—claims by persons who have no colorable claims.").  The government already possesses sufficient information to know that Claimant has standing to pursue his claims, so this special interrogatory is not necessary for the government to assess Claimant's standing and, therefore, is improper.  *Cf. United States v. Real Property Located at 17 Coon Creek Road*, 787 F.3d 968, 977 (9th 2015) (claimant's failure to respond to the government's special interrogatories did not warrant striking claim since his standing was not reasonably in dispute because, *inter alia*, the government's complaint alleged the property at issue was titled in his name and he resided on it); *United States v. $154,853.00 in U.S. Currency*, 744 F.3d 559, 564 (8th Cir. 2014) (holding the same).

Given the sworn allegations in the government's Complaint and the information in the government's possession from its extensive discovery in related criminal

36

proceedings, the government cannot fairly contend it needs the information sought in this special interrogatory to assess his standing to pursue his claims.

Claimant also objects to this special interrogatory on the grounds that it seeks information that is not relevant to whether Claimant has standing to pursue his claims and is outside of the scope of Supplemental Rule G(6)(a), which only authorizes "special interrogatories limited to the claimant's identity and relationship to the defendant property." The portion of this special interrogatory that inquires about Claimant's as of yet unfiled answer to the Complaint, including which allegations in the Complaint he expects to deny in his answer and why, plainly is outside of the scope of Supplemental Rule G(6)(a).

Claimant further objects to this interrogatory because the burden it would impose on Claimant is not proportionate to the needs of the case at this stage (*i.e.* to enable the government to assess Claimant's standing before being required to respond to the pending motions to dismiss) or to any benefit the government may receive from the discovery, given that (a) Claimant's standing is not reasonably in dispute and (b) the special interrogatory seeks information that is unreasonably cumulative and duplicative of the extensive discovery the government already obtained in related criminal proceedings, including massive quantities of banking, investment, business, real estate, and personal records that evidence both the source of the Defendant Assets as to which Claimant has asserted claims and Claimant's interests in those assets. The government can obtain any information it needs from that discovery, without imposing significant expenses and burdens on Claimant, and, to the extent the government has not already reviewed that discovery and obtained the information sought in this special interrogatory, the burden and cost of extracting the information from the existing discovery would be substantially the same for the government or Claimant.

Additionally, although this "boilerplate" special interrogatory (or portions of it) might be appropriate in a case involving ambiguous claims to a large amount of unexplained currency, it is not appropriate here, given the allegations in the government's

Complaint and given the nature of the Defendant Assets as to which Claimant has asserted claims (bank and investment accounts held in the name of Claimant or entities he controls and assets owned by others that are collateral for contractual obligations, with the liens securing those obligations perfected by financing statements of record in the offices of the Delaware Secretary of State, the Texas Secretary of State, and the D.C. Recorder of Deeds).

Claimant objects to this special interrogatory because it is duplicative of special interrogatories No. 6 and No. 8.

Subject to his objections, Claimant incorporates by reference his responses to special interrogatories No. 6 and No. 8.  Claimant also incorporates by reference the Verified Claims and Statements of Interest he filed in this action (or in an action consolidated with it) (*see* Dkt. 116).

**INTERROGATORY NO. 10:**

State the names, current residential addresses and telephone numbers of all persons known or believed by you to have knowledge of or information pertaining to any ownership interest that you claim in each Defendant Asset identified in your response to Interrogatory No. 5.1, and summarize what information you believe they have pertaining to any ownership interest you claim in such Defendant Asset.

**RESPONSE TO INTERROGATORY NO. 10:**

Claimant objects to this special interrogatory because his standing is not reasonably in dispute.  The government has obtained extensive discovery in related criminal proceedings (many millions of pages of documents), including massive quantities of banking, investment, business, real estate, and personal records that evidence both (a) the source of the Defendant Assets as to which Claimant has asserted claims and (b) Claimant's interests in those assets.  Further, the allegations in the government's sworn Complaint about the Owned Assets also are sufficient by themselves to establish Claimant's standing as to those assets.  Claimant's Verified Claims and Statements of Interest filed in this action (or in an action consolidated with it) also

38

1 are sufficient to establish Claimant's standing.

2      Supplemental Rule G(6)(a) allows the government to conduct narrow discovery
3 aimed at weeding out fraudulent claims from persons who have no colorable interest in
4 the defendant assets. *United States v. Funds in the Amount of $574,840*, 719 F.3d 648, 650
5 (7th Cir. 2013) ("Rule G(6)(a) authorizes the government to issue 'special interrogatories
6 limited to the claimant's identity and relationship to the defendant property.' The
7 purpose of such interrogatories is to smoke out fraudulent claims—claims by persons
8 who have no colorable claims."). The government already possesses sufficient
9 information to know that Claimant has standing to pursue his claims, so this special
10 interrogatory is not necessary for the government to assess Claimant's standing and,
11 therefore, is improper. *Cf. United States v. Real Property Located at 17 Coon Creek Road*, 787
12 F.3d 968, 977 (9th 2015) (claimant's failure to respond to the government's special
13 interrogatories did not warrant striking claim since his standing was not reasonably in
14 dispute because, *inter alia*, the government's complaint alleged the property at issue was
15 titled in his name and he resided on it); *United States v. $154,853.00 in U.S. Currency*, 744
16 F.3d 559, 564 (8th Cir. 2014) (holding the same).

17      Given the sworn allegations in the government's Complaint and the information
18 in the government's possession from its extensive discovery in related criminal
19 proceedings, the government cannot fairly contend it needs the information sought in
20 this special interrogatory to assess his standing to pursue his claims.

21      Claimant further objects to this interrogatory because the burden it would impose
22 on Claimant is not proportionate to the needs of the case at this stage (*i.e.* to enable the
23 government to assess Claimant's standing before being required to respond to the
24 pending motions to dismiss) or to any benefit the government may receive from the
25 discovery, given that (a) Claimant's standing is not reasonably in dispute and (b) the
26 special interrogatory seeks information that is unreasonably cumulative and duplicative
27 of the extensive discovery the government already obtained in related criminal
28 proceedings, including massive quantities of banking, investment, business, real estate,

CLAIMANT RAMON LARKIN'S RESPONSES TO PLAINTIFF'S FIRST SET OF
RULE G SPECIAL INTERROGATORIES

and personal records that evidence both the source of the Defendant Assets as to which Claimant has asserted claims and Claimant's interests in those assets. The government can obtain any information it needs from that discovery, without imposing significant expenses and burdens on Claimant, and, to the extent the government has not already reviewed that discovery and obtained the information sought in this special interrogatory, the burden and cost of extracting the information from the existing discovery would be substantially the same for the government or Claimant.

Additionally, although this "boilerplate" special interrogatory (or portions of it) might be appropriate in a case involving ambiguous claims to a large amount of unexplained currency, it is not appropriate here, given the allegations in the government's Complaint and given the nature of the Defendant Assets as to which Claimant has asserted claims (bank and investment accounts held in the name of Claimant or entities he controls and assets owned by others that are collateral for contractual obligations, with the liens securing those obligations perfected by financing statements of record in the offices of the Delaware Secretary of State, the Texas Secretary of State, and the D.C. Recorder of Deeds).

Subject to his objections, on information and belief, Claimant responds as follows:

Representatives of Bank of America
100 North Tyron St.
Charlotte, North Carolina 28202
(980) 335-3561

Representatives of Arizona Bank & Trust
7555 E. Redfield Road
Scottsdale, Arizona 85260
(480) 644-8500

Representatives of BBVA Compass
5285 E. Williams Circle, Suite 3500
Tucson, Arizona 85711
(520) 514-4026

Cereus Properties, LLC

40

c/o Daniel Quigley
5424 E. Broadway, Suite 352
Tucson, Arizona 85711
(520) 867-4450

Representatives of Voice Media Group, Inc.
969 Broadway
Denver, Colorado 80203
(888) 441-0784

Carl Allen Ferrer
c/o Clarence Dyer & Cohen
899 Ellis St.
San Francisco, California 94109
(415) 749-1800

James Larkin
c/o Whitney Z. Bernstein
Bienert | Katzman PC
903 Calle Amanecer
Suite 350
San Clemente, California 92673
(949) 369-3700

**INTERROGATORY NO. 11:**

If you have ever been arrested or convicted of any crime in any country, for each arrest or conviction, please state the city, state, and country where you were arrested or convicted, the date of the arrest or conviction, the offense, the court and case number, the sentence received, and the sentence served, and identify all documents which relate to such arrest or conviction.

**RESPONSE TO INTERROGATORY NO. 11:**

Claimant objects to this special interrogatory because his standing is not reasonably in dispute.  The government has obtained extensive discovery in related criminal proceedings (many millions of pages of documents), including massive quantities of banking, investment, business, real estate, and personal records that evidence both (a) the source of the Defendant Assets as to which Claimant has asserted

41

claims and (b) Claimant's interests in those assets.  Further, the allegations in the government's sworn Complaint about the Owned Assets also are sufficient by themselves to establish Claimant's standing as to those assets.  Claimant's Verified Claims and Statements of Interest filed in this action (or in an action consolidated with it) also are sufficient to establish Claimant's standing.

Supplemental Rule G(6)(a) allows the government to conduct narrow discovery aimed at weeding out fraudulent claims from persons who have no colorable interest in the defendant assets.  *United States v. Funds in the Amount of $574,840*, 719 F.3d 648, 650 (7th Cir. 2013) ("Rule G(6)(a) authorizes the government to issue 'special interrogatories limited to the claimant's identity and relationship to the defendant property.'  The purpose of such interrogatories is to smoke out fraudulent claims—claims by persons who have no colorable claims.").  The government already possesses sufficient information to know that Claimant has standing to pursue his claims, so this special interrogatory is not necessary for the government to assess Claimant's standing and, therefore, is improper.  *Cf. United States v. Real Property Located at 17 Coon Creek Road*, 787 F.3d 968, 977 (9th 2015) (claimant's failure to respond to the government's special interrogatories did not warrant striking claim since his standing was not reasonably in dispute because, *inter alia*, the government's complaint alleged the property at issue was titled in his name and he resided on it); *United States v. $154,853.00 in U.S. Currency*, 744 F.3d 559, 564 (8th Cir. 2014) (holding the same).

Given the sworn allegations in the government's Complaint and the information in the government's possession from its extensive discovery in related criminal proceedings, the government cannot fairly contend it needs the information sought in this special interrogatory to assess his standing to pursue his claims.

Claimant also objects to this special interrogatory on the grounds that it seeks information that is not relevant to whether Claimant has standing to pursue his claims and is outside of the scope of Supplemental Rule G(6)(a), which only authorizes "special interrogatories limited to the claimant's identity and relationship to the defendant

CLAIMANT RAMON LARKIN'S RESPONSES TO PLAINTIFF'S FIRST SET OF
RULE G SPECIAL INTERROGATORIES

1  property."

2        Additionally, although this "boilerplate" special interrogatory (or portions of it)

3  might be appropriate in a case involving ambiguous claims to a large amount of

4  unexplained currency, it is not appropriate here, given the allegations in the government's

5  Complaint and given the nature of the Defendant Assets as to which Claimant has

6  asserted claims (bank and investment accounts held in the name of Claimant or entities

7  he controls and assets owned by others that are collateral for contractual obligations,

8  with the liens securing those obligations perfected by financing statements of record in

9  the offices of the Delaware Secretary of State, the Texas Secretary of State, and the D.C.

10  Recorder of Deeds).

11  **INTERROGATORY NO. 12:**

12        If you have ever been a party in any civil, administrative or criminal proceeding,

13  lawsuit and/or action (collectively referred to as "action"), for each action, please state

14  the city, state, and country where the action was filed, the date of the initial filing of the

15  action, the nature of the action, the court and case number, whether you were a plaintiff

16  or defendant, and the outcome of the action, and identify all documents which relate to

17  each such action(s).

18  **RESPONSE TO INTERROGATORY NO. 12:**

19        Claimant objects to this special interrogatory because his standing is not

20  reasonably in dispute.  The government has obtained extensive discovery in related

21  criminal proceedings (many millions of pages of documents), including massive

22  quantities of banking, investment, business, real estate, and personal records that

23  evidence both (a) the source of the Defendant Assets as to which Claimant has asserted

24  claims and (b) Claimant's interests in those assets.  Further, the allegations in the

25  government's sworn Complaint about the Owned Assets also are sufficient by

26  themselves to establish Claimant's standing as to those assets.  Claimant's Verified Claims

27  and Statements of Interest filed in this action (or in an action consolidated with it) also

28  are sufficient to establish Claimant's standing.

Supplemental Rule G(6)(a) allows the government to conduct narrow discovery aimed at weeding out fraudulent claims from persons who have no colorable interest in the defendant assets. *United States v. Funds in the Amount of $574,840*, 719 F.3d 648, 650 (7th Cir. 2013) ("Rule G(6)(a) authorizes the government to issue 'special interrogatories limited to the claimant's identity and relationship to the defendant property.' The purpose of such interrogatories is to smoke out fraudulent claims—claims by persons who have no colorable claims."). The government already possesses sufficient information to know that Claimant has standing to pursue his claims, so this special interrogatory is not necessary for the government to assess Claimant's standing and, therefore, is improper. *Cf. United States v. Real Property Located at 17 Coon Creek Road*, 787 F.3d 968, 977 (9th 2015) (claimant's failure to respond to the government's special interrogatories did not warrant striking claim since his standing was not reasonably in dispute because, *inter alia*, the government's complaint alleged the property at issue was titled in his name and he resided on it); *United States v. $154,853.00 in U.S. Currency*, 744 F.3d 559, 564 (8th Cir. 2014) (holding the same).

Given the sworn allegations in the government's Complaint and the information in the government's possession from its extensive discovery in related criminal proceedings, the government cannot fairly contend it needs the information sought in this special interrogatory to assess his standing to pursue his claims.

Claimant also objects to this special interrogatory on the grounds that it seeks information that is not relevant to whether Claimant has standing to pursue his claims and is outside of the scope of Supplemental Rule G(6)(a), which only authorizes "special interrogatories limited to the claimant's identity and relationship to the defendant property." This special interrogatory does not seek information about Claimant's identity and or his relationship to the defendant property and, therefore, is outside of the scope of Supplemental Rule G(6)(a).

Claimant further objects to this interrogatory because the burden it would impose on Claimant is not proportionate to the needs of the case at this stage (*i.e.* to enable the

44

government to assess Claimant's standing before being required to respond to the pending motions to dismiss) or to any benefit the government may receive from the discovery, given that (a) Claimant's standing is not reasonably in dispute and (b) the special interrogatory seeks information that is unreasonably cumulative and duplicative of the extensive discovery the government already obtained in related criminal proceedings, including massive quantities of banking, investment, business, real estate, and personal records that evidence both the source of the Defendant Assets as to which Claimant has asserted claims and Claimant's interests in those assets.  The government can obtain any information it needs from that discovery, without imposing significant expenses and burdens on Claimant, and, to the extent the government has not already reviewed that discovery and obtained the information sought in this special interrogatory, the burden and cost of extracting the information from the existing discovery would be substantially the same for the government or Claimant.  Moreover, the government is aware of many, if not all, of the proceedings about which it inquires and the court filings related to those proceedings are public records, readily available to the government.

**INTERROGATORY NO. 13:**

For each Defendant Asset identified in your response to Interrogatory No. 5.1, identify and describe with particularity the manner in which you acquired any asserted "interest" in each such Defendant Asset, including but not limited to the date(s) on which you acquired an "interest," the person(s) involved in conveying that "interest" or settling that "interest" in your favor, and the source(s) or origin(s) of the funds used to acquire your purported "interest."

**RESPONSE TO INTERROGATORY NO. 13:**

Claimant objects to this special interrogatory because his standing is not reasonably in dispute.  The government has obtained extensive discovery in related criminal proceedings (many millions of pages of documents), including massive quantities of banking, investment, business, real estate, and personal records that evidence both (a) the source of the Defendant Assets as to which Claimant has asserted

45

claims and (b) Claimant's interests in those assets.  Further, the allegations in the government's sworn Complaint about the Owned Assets also are sufficient by themselves to establish Claimant's standing as to those assets.  Claimant's Verified Claims and Statements of Interest filed in this action (or in an action consolidated with it) also are sufficient to establish Claimant's standing.

Supplemental Rule G(6)(a) allows the government to conduct narrow discovery aimed at weeding out fraudulent claims from persons who have no colorable interest in the defendant assets.  *United States v. Funds in the Amount of $574,840*, 719 F.3d 648, 650 (7th Cir. 2013) ("Rule G(6)(a) authorizes the government to issue 'special interrogatories limited to the claimant's identity and relationship to the defendant property.'  The purpose of such interrogatories is to smoke out fraudulent claims—claims by persons who have no colorable claims.").  The government already possesses sufficient information to know that Claimant has standing to pursue his claims, so this special interrogatory is not necessary for the government to assess Claimant's standing and, therefore, is improper.  *Cf. United States v. Real Property Located at 17 Coon Creek Road*, 787 F.3d 968, 977 (9th 2015) (claimant's failure to respond to the government's special interrogatories did not warrant striking claim since his standing was not reasonably in dispute because, *inter alia*, the government's complaint alleged the property at issue was titled in his name and he resided on it); *United States v. $154,853.00 in U.S. Currency*, 744 F.3d 559, 564 (8th Cir. 2014) (holding the same).

Given the sworn allegations in the government's Complaint and the information in the government's possession from its extensive discovery in related criminal proceedings, the government cannot fairly contend it needs the information sought in this special interrogatory to assess his standing to pursue his claims.

Claimant further objects to this interrogatory because the burden it would impose on Claimant is not proportionate to the needs of the case at this stage (*i.e.* to enable the government to assess Claimant's standing before being required to respond to the pending motions to dismiss) or to any benefit the government may receive from the

discovery, given that (a) Claimant's standing is not reasonably in dispute and (b) the special interrogatory seeks information that is unreasonably cumulative and duplicative of the extensive discovery the government already obtained in related criminal proceedings, including massive quantities of banking, investment, business, real estate, and personal records that evidence both the source of the Defendant Assets as to which Claimant has asserted claims and Claimant's interests in those assets. The government can obtain any information it needs from that discovery, without imposing significant expenses and burdens on Claimant, and, to the extent the government has not already reviewed that discovery and obtained the information sought in this special interrogatory, the burden and cost of extracting the information from the existing discovery would be substantially the same for the government or Claimant.

Additionally, although this "boilerplate" special interrogatory (or portions of it) might be appropriate in a case involving ambiguous claims to a large amount of unexplained currency, it is not appropriate here, given the allegations in the government's Complaint and given the nature of the Defendant Assets as to which Claimant has asserted claims (bank and investment accounts held in the name of Claimant or entities he controls and assets owned by others that are collateral for contractual obligations, with the liens securing those obligations perfected by financing statements of record in the offices of the Delaware Secretary of State, the Texas Secretary of State, and the D.C. Recorder of Deeds).

Subject to his objections, Claimant incorporates by reference his responses to special interrogatories No. 6, No. 8 and No. 9. Claimant also incorporates by reference the Verified Claims and Statements of Interest he filed in this action (or in an action consolidated with it) (*see* Dkt. 116).

**INTERROGATORY NO. 14:**

For each Defendant Asset identified in your response to Interrogatory No. 5.1, identify and describe with particularity (according to the instructions) all documents which support, refute, or relate to your contention that you have an "interest" in such

47

1  Defendant Asset.

2  **RESPONSE TO INTERROGATORY NO. 14:**

3      Claimant objects to this special interrogatory because his standing is not
4  reasonably in dispute.  The government has obtained extensive discovery in related
5  criminal proceedings (many millions of pages of documents), including massive
6  quantities of banking, investment, business, real estate, and personal records that
7  evidence both (a) the source of the Defendant Assets as to which Claimant has asserted
8  claims and (b) Claimant's interests in those assets.  Further, the allegations in the
9  government's sworn Complaint about the Owned Assets also are sufficient by
10  themselves to establish Claimant's standing as to those assets.  Claimant's Verified Claims
11  and Statements of Interest filed in this action (or in an action consolidated with it) also
12  are sufficient to establish Claimant's standing.

13      Supplemental Rule G(6)(a) allows the government to conduct narrow discovery
14  aimed at weeding out fraudulent claims from persons who have no colorable interest in
15  the defendant assets.  *United States v. Funds in the Amount of $574,840*, 719 F.3d 648, 650
16  (7th Cir. 2013) ("Rule G(6)(a) authorizes the government to issue 'special interrogatories
17  limited to the claimant's identity and relationship to the defendant property.'  The
18  purpose of such interrogatories is to smoke out fraudulent claims—claims by persons
19  who have no colorable claims.").  The government already possesses sufficient
20  information to know that Claimant has standing to pursue his claims, so this special
21  interrogatory is not necessary for the government to assess Claimant's standing and,
22  therefore, is improper.  *Cf. United States v. Real Property Located at 17 Coon Creek Road*, 787
23  F.3d 968, 977 (9th 2015) (claimant's failure to respond to the government's special
24  interrogatories did not warrant striking claim since his standing was not reasonably in
25  dispute because, *inter alia*, the government's complaint alleged the property at issue was
26  titled in his name and he resided on it); *United States v. $154,853.00 in U.S. Currency*, 744
27  F.3d 559, 564 (8th Cir. 2014) (holding the same).

28      Given the sworn allegations in the government's Complaint and the information

in the government's possession from its extensive discovery in related criminal proceedings, the government cannot fairly contend it needs the information sought in this special interrogatory to assess his standing to pursue his claims.

Claimant further objects to this interrogatory because the burden it would impose on Claimant is not proportionate to the needs of the case at this stage (*i.e.* to enable the government to assess Claimant's standing before being required to respond to the pending motions to dismiss) or to any benefit the government may receive from the discovery, given that (a) Claimant's standing is not reasonably in dispute and (b) the special interrogatory seeks information that is unreasonably cumulative and duplicative of the extensive discovery the government already obtained in related criminal proceedings, including massive quantities of banking, investment, business, real estate, and personal records that evidence both the source of the Defendant Assets as to which Claimant has asserted claims and Claimant's interests in those assets. The government can obtain any information it needs from that discovery, without imposing significant expenses and burdens on Claimant, and, to the extent the government has not already reviewed that discovery and obtained the information sought in this special interrogatory, the burden and cost of extracting the information from the existing discovery would be substantially the same for the government or Claimant.

Additionally, although this "boilerplate" special interrogatory (or portions of it) might be appropriate in a case involving ambiguous claims to a large amount of unexplained currency, it is not appropriate here, given the allegations in the government's Complaint and given the nature of the Defendant Assets as to which Claimant has asserted claims (bank and investment accounts held in the name of Claimant or entities he controls and assets owned by others that are collateral for contractual obligations, with the liens securing those obligations perfected by financing statements of record in the offices of the Delaware Secretary of State, the Texas Secretary of State, and the D.C. Recorder of Deeds).

Claimant objects to this special interrogatory because it is duplicative of special

49

interrogatories No. 6, No. 8, No. 9, and No. 13.

Subject to his objections, Claimant incorporates by reference his responses to special interrogatories No. 6, No. 8, No. 9, and No. 13.  Claimant also incorporates by reference the Verified Claims and Statements of Interest he filed in this action (or in an action consolidated with it) (*see* Dkt. 116).

**INTERROGATORY NO. 15:**

For each Defendant Asset identified in your response to Interrogatory No. 5.1, identify and describe with particularity any and all interests, legal or equitable, that persons or entities other than you hold in such Defendant Asset.

**RESPONSE TO INTERROGATORY NO. 15:**

Claimant objects to this special interrogatory because his standing is not reasonably in dispute.  The government has obtained extensive discovery in related criminal proceedings (many millions of pages of documents), including massive quantities of banking, investment, business, real estate, and personal records that evidence both (a) the source of the Defendant Assets as to which Claimant has asserted claims and (b) Claimant's interests in those assets.  Further, the allegations in the government's sworn Complaint about the Owned Assets also are sufficient by themselves to establish Claimant's standing as to those assets.  Claimant's Verified Claims and Statements of Interest filed in this action (or in an action consolidated with it) also are sufficient to establish Claimant's standing.

Supplemental Rule G(6)(a) allows the government to conduct narrow discovery aimed at weeding out fraudulent claims from persons who have no colorable interest in the defendant assets.  *United States v. Funds in the Amount of $574,840*, 719 F.3d 648, 650 (7th Cir. 2013) ("Rule G(6)(a) authorizes the government to issue 'special interrogatories limited to the claimant's identity and relationship to the defendant property.'  The purpose of such interrogatories is to smoke out fraudulent claims—claims by persons who have no colorable claims.").  The government already possesses sufficient information to know that Claimant has standing to pursue his claims, so this special

interrogatory is not necessary for the government to assess Claimant's standing and, therefore, is improper. *Cf. United States v. Real Property Located at 17 Coon Creek Road*, 787 F.3d 968, 977 (9th 2015) (claimant's failure to respond to the government's special interrogatories did not warrant striking claim since his standing was not reasonably in dispute because, *inter alia*, the government's complaint alleged the property at issue was titled in his name and he resided on it); *United States v. $154,853.00 in U.S. Currency*, 744 F.3d 559, 564 (8th Cir. 2014) (holding the same).

Given the sworn allegations in the government's Complaint and the information in the government's possession from its extensive discovery in related criminal proceedings, the government cannot fairly contend it needs the information sought in this special interrogatory to assess his standing to pursue his claims.

Claimant further objects to this interrogatory because the burden it would impose on Claimant is not proportionate to the needs of the case at this stage (*i.e.* to enable the government to assess Claimant's standing before being required to respond to the pending motions to dismiss) or to any benefit the government may receive from the discovery, given that (a) Claimant's standing is not reasonably in dispute and (b) the special interrogatory seeks information that is unreasonably cumulative and duplicative of the extensive discovery the government already obtained in related criminal proceedings, including massive quantities of banking, investment, business, real estate, and personal records that evidence both the source of the Defendant Assets as to which Claimant has asserted claims and Claimant's interests in those assets. The government can obtain any information it needs from that discovery, without imposing significant expenses and burdens on Claimant, and, to the extent the government has not already reviewed that discovery and obtained the information sought in this special interrogatory, the burden and cost of extracting the information from the existing discovery would be substantially the same for the government or Claimant.

Claimant also objects to this special interrogatory on the grounds that it seeks information that is not relevant to whether Claimant has standing to pursue his claims

51

and is outside of the scope of Supplemental Rule G(6)(a), which only authorizes "special interrogatories limited to the claimant's identity and relationship to the defendant property." This special interrogatory does not seek information about Claimant's identity or his relationship to the defendant property.

Additionally, although this "boilerplate" special interrogatory (or portions of it) might be appropriate in a case involving ambiguous claims to a large amount of unexplained currency, it is not appropriate here, given the allegations in the government's Complaint and given the nature of the Defendant Assets as to which Claimant has asserted claims (bank and investment accounts held in the name of Claimant or entities he controls and assets owned by others that are collateral for contractual obligations, with the liens securing those obligations perfected by financing statements of record in the offices of the Delaware Secretary of State, the Texas Secretary of State, and the D.C. Recorder of Deeds).

Subject to his objections, Claimant incorporates by reference his responses to special interrogatories No. 6 and No. 8. Claimant further responds as follows: Claimant is aware that other individuals and entities have asserted claims as to the Liened Assets and Other Assets, and understands that the bases for those claims are similar to the bases asserted by Claimant herein.

## INTERROGATORY NO. 16:

For each Defendant Asset identified in your response to Interrogatory No. 5.1, identify and describe with particularity the intended use(s) of such Defendant Asset at the time you acquired an "interest" in it, including whether and how you intended to use the Defendant Asset, and explain any uses you actually made of each such Defendant Asset since allegedly acquiring that "interest."

## RESPONSE TO INTERROGATORY NO. 16:

Claimant objects to this special interrogatory because his standing is not reasonably in dispute. The government has obtained extensive discovery in related

criminal proceedings (many millions of pages of documents), including massive quantities of banking, investment, business, real estate, and personal records that evidence both (a) the source of the Defendant Assets as to which Claimant has asserted claims and (b) Claimant's interests in those assets.  Further, the allegations in the government's sworn Complaint about the Owned Assets also are sufficient by themselves to establish Claimant's standing as to those assets.  Claimant's Verified Claims and Statements of Interest filed in this action (or in an action consolidated with it) also are sufficient to establish Claimant's standing.

Supplemental Rule G(6)(a) allows the government to conduct narrow discovery aimed at weeding out fraudulent claims from persons who have no colorable interest in the defendant assets.  *United States v. Funds in the Amount of $574,840*, 719 F.3d 648, 650 (7th Cir. 2013) ("Rule G(6)(a) authorizes the government to issue 'special interrogatories limited to the claimant's identity and relationship to the defendant property.'  The purpose of such interrogatories is to smoke out fraudulent claims—claims by persons who have no colorable claims.").  The government already possesses sufficient information to know that Claimant has standing to pursue his claims, so this special interrogatory is not necessary for the government to assess Claimant's standing and, therefore, is improper.  *Cf. United States v. Real Property Located at 17 Coon Creek Road*, 787 F.3d 968, 977 (9th 2015) (claimant's failure to respond to the government's special interrogatories did not warrant striking claim since his standing was not reasonably in dispute because, *inter alia*, the government's complaint alleged the property at issue was titled in his name and he resided on it); *United States v. $154,853.00 in U.S. Currency*, 744 F.3d 559, 564 (8th Cir. 2014) (holding the same).

Given the sworn allegations in the government's Complaint and the information in the government's possession from its extensive discovery in related criminal proceedings, the government cannot fairly contend it needs the information sought in this special interrogatory to assess his standing to pursue his claims.

Claimant also objects to this special interrogatory on the grounds that it seeks

CLAIMANT RAMON LARKIN'S RESPONSES TO PLAINTIFF'S FIRST SET OF
RULE G SPECIAL INTERROGATORIES

1    information that is not relevant to whether Claimant has standing to pursue his claims

2    and is outside of the scope of Supplemental Rule G(6)(a), which only authorizes "special

3    interrogatories limited to the claimant's identity and relationship to the defendant

4    property." Claimant's "intended use(s)" of the Defendant Assets at issue are not relevant

5    to whether he has standing to assert his claims against those assets. *See United States v.*

6    *$133,420.00 in U.S. Currency*, 672 F.3d 629, 643 n.5 (9th Cir. 2012) (rejecting special

7    interrogatory asking claimant to "list the sources of all other income that [he] received,

8    whether earned or unearned, from any source(s) for the last five years" and to "[e]xplain

9    why anyone would travel anywhere with more than $133,420 in U.S. currency in a rented

10   vehicle"). Moreover, this is not a case where there is some question about how Claimant

11   acquired these assets. Claimant's intended use of the assets, therefore, has no bearing on

12   his standing with respect to the Defendant Assets as to which he has asserted claims.

13   And, given the sworn allegations in its Complaint and the discovery in the government's

14   possession, the government cannot fairly contend the information sought in this special

15   interrogatory is relevant to Claimant's standing as to those assets.

16          Claimant further objects to this interrogatory because the burden it would impose

17   on Claimant is not proportionate to the needs of the case at this stage (*i.e.* to enable the

18   government to assess Claimant's standing before being required to respond to the

19   pending motions to dismiss) or to any benefit the government may receive from the

20   discovery, given that (a) Claimant's standing is not reasonably in dispute and (b) the

21   special interrogatory seeks information that is unreasonably cumulative and duplicative

22   of the extensive discovery the government already obtained in related criminal

23   proceedings, including massive quantities of banking, investment, business, real estate,

24   and personal records that evidence both the source of the Defendant Assets as to which

25   Claimant has asserted claims and Claimant's interests in those assets. The government

26   can obtain any information it needs from that discovery, without imposing significant

27   expenses and burdens on Claimant, and, to the extent the government has not already

28   reviewed that discovery and obtained the information sought in this special interrogatory,

the burden and cost of extracting the information from the existing discovery would be substantially the same for the government or Claimant.

Moreover, this special interrogatory is unduly burdensome in that it asks Claimant to account for every single use scores of assets and millions of dollars over an extended period of time.

Additionally, although this "boilerplate" special interrogatory (or portions of it) might be appropriate in a case involving ambiguous claims to a large amount of unexplained currency, it is not appropriate here, given the allegations in the government's Complaint and given the nature of the Defendant Assets as to which Claimant has asserted claims (bank and investment accounts held in the name of Claimant or entities he controls and assets owned by others that are collateral for contractual obligations, with the liens securing those obligations perfected by financing statements of record in the offices of the Delaware Secretary of State, the Texas Secretary of State, and the D.C. Recorder of Deeds).

Claimant objects to this special interrogatory because it is duplicative of special interrogatory No. 7.

Subject to his objections, Claimant responds as follows:

At the time of the seizures and continuing to this day, Claimant intended to use the Owned Assets to, among other things, pay for his and his family's living and personal expenses. At the time of the seizures and continuing to this day, on information and belief, Claimant understood that the Liened Assets were to secure the obligations of ABC, UGC, and their affiliates to meet their contractual obligations to him and that the Other Assets were to pay the expenses of defending litigation related to Backpage.com.

**INTERROGATORY NO. 17:**

For the period between January 1, 2016, and April 27, 2018, describe with particularity your relationship with each and every entity and person listed below (excluding you):

    1.    Anderson, Jill

CLAIMANT RAMON LARKIN'S RESPONSES TO PLAINTIFF'S FIRST SET OF
RULE G SPECIAL INTERROGATORIES

2. Becker, John

3. Brunst Family Trust

4. Brunst, John

5. Brunst, Mary Ann

6. Casa Bahia for San Francisco, LLC.

7. Hawkins, Anne

8. Lacey, Michael

9. Larkin, James

10. Larkin, John

11. Larkin, Kathleen

12. Larkin, Margaret

13. Larkin, Quinn

14. Larkin, Rose

15. Larkin, Ramon

16. Larkin, Troy

17. Spear, Ellon

18. Spear, Natasha

19. Spear, Scott

20. Talley, Alyson

21. Medalist Holdings, LLC.

22. Leeward Holdings, LLC.

23. Camarillo Holdings, LLC.

24. Vermillion Holdings, LLC.

25. Cereus Properties, LLC.

26. Shearwater Investments, LLC.

27. Broadway Capital, LLC.

**RESPONSE TO INTERROGATORY NO. 17:**

Claimant objects to this special interrogatory because his standing is not

56

reasonably in dispute.  The government has obtained extensive discovery in related criminal proceedings (many millions of pages of documents), including massive quantities of banking, investment, business, real estate, and personal records that evidence both (a) the source of the Defendant Assets as to which Claimant has asserted claims and (b) Claimant's interests in those assets.  Further, the allegations in the government's sworn Complaint about the Owned Assets also are sufficient by themselves to establish Claimant's standing as to those assets.  Claimant's Verified Claims and Statements of Interest filed in this action (or in an action consolidated with it) also are sufficient to establish Claimant's standing.

Supplemental Rule G(6)(a) allows the government to conduct narrow discovery aimed at weeding out fraudulent claims from persons who have no colorable interest in the defendant assets.  *United States v. Funds in the Amount of $574,840*, 719 F.3d 648, 650 (7th Cir. 2013) ("Rule G(6)(a) authorizes the government to issue 'special interrogatories limited to the claimant's identity and relationship to the defendant property.'  The purpose of such interrogatories is to smoke out fraudulent claims—claims by persons who have no colorable claims.").  The government already possesses sufficient information to know that Claimant has standing to pursue his claims, so this special interrogatory is not necessary for the government to assess Claimant's standing and, therefore, is improper.  *Cf. United States v. Real Property Located at 17 Coon Creek Road*, 787 F.3d 968, 977 (9th 2015) (claimant's failure to respond to the government's special interrogatories did not warrant striking claim since his standing was not reasonably in dispute because, *inter alia*, the government's complaint alleged the property at issue was titled in his name and he resided on it); *United States v. $154,853.00 in U.S. Currency*, 744 F.3d 559, 564 (8th Cir. 2014) (holding the same).

Given the sworn allegations in the government's Complaint and the information in the government's possession from its extensive discovery in related criminal proceedings, the government cannot fairly contend it needs the information sought in this special interrogatory to assess his standing to pursue his claims.

Claimant also objects to this special interrogatory on the grounds that it seeks information that is not relevant to whether Claimant has standing to pursue his claims and is outside of the scope of Supplemental Rule G(6)(a), which only authorizes "special interrogatories limited to the claimant's identity and relationship to the defendant property." This special interrogatory seeks information not about Claimant's relationship to the Defendant Assets as to which he has asserted claims, but to more than two dozen individuals and entities, and plainly is outside of the scope of Supplemental Rule G(6)(a).

Claimant further objects to this interrogatory because the burden it would impose on Claimant is not proportionate to the needs of the case at this stage (*i.e.* to enable the government to assess Claimant's standing before being required to respond to the pending motions to dismiss) or to any benefit the government may receive from the discovery, given that (a) Claimant's standing is not reasonably in dispute and (b) the special interrogatory seeks information that is unreasonably cumulative and duplicative of the extensive discovery the government already obtained in related criminal proceedings, including massive quantities of banking, investment, business, real estate, and personal records that evidence both the source of the Defendant Assets as to which Claimant has asserted claims and Claimant's interests in those assets. The government can obtain any information it needs from that discovery, without imposing significant expenses and burdens on Claimant, and, to the extent the government has not already reviewed that discovery and obtained the information sought in this special interrogatory, the burden and cost of extracting the information from the existing discovery would be substantially the same for the government or Claimant.

Additionally, although this "boilerplate" special interrogatory (or portions of it) might be appropriate in a case involving ambiguous claims to a large amount of unexplained currency, it is not appropriate here, given the allegations in the government's Complaint and given the nature of the Defendant Assets as to which Claimant has asserted claims (bank and investment accounts held in the name of Claimant or entities

he controls and assets owned by others that are collateral for contractual obligations, with the liens securing those obligations perfected by financing statements of record in the offices of the Delaware Secretary of State, the Texas Secretary of State, and the D.C. Recorder of Deeds).

Claimant further objects to the term "relationship" as overbroad, vague, and ambiguous in that it could be interpreted to include acquaintances or mere knowledge of an individual or entity.

Subject to his objections, Claimant responds as follows:

| Name of Person / Entity | Claimant's Relationship |
|---|---|
| Brunst, John | Claimant and Brunst are both stockholders of Medalist Holdings, Inc. |
| Lacey, Michael | Claimant and Lacey are both stockholders of Medalist Holdings, Inc. |
| Larkin, John | Half-sibling of Claimant |
| Larkin, Kathleen | Half-sibling of Claimant |
| Larkin, Margaret | Stepmother of Claimant |
| Larkin, Quinn | Half-sibling of Claimant |
| Larkin, Rose | Half-sibling of Claimant |
| Larkin, Troy | Sibling of Claimant; Claimant and Larkin are both stockholders of Medalist Holdings, Inc. |
| Spear, Scott | Claimant and Spear are both stockholders of Medalist Holdings, Inc. |
| Medalist Holdings, LLC. | Claimant is a minority stockholder of Medalist Holdings, Inc. |
| Leeward Holdings, LLC. | Leeward Holdings, LLC is a subsidiary of Medalist Holdings, Inc. (of which |

CLAIMANT RAMON LARKIN'S RESPONSES TO PLAINTIFF'S FIRST SET OF
RULE G SPECIAL INTERROGATORIES

| | |
|---|---|
| | Claimant is a stockholder) |
| Camarillo Holdings, LLC. | Camarillo Holdings, LLC is a subsidiary of Medalist Holdings, Inc. (of which Claimant is a stockholder) |
| Vermillion Holdings, LLC. | Vermillion Holdings, LLC is a subsidiary of Medalist Holdings, Inc. (of which Claimant is a stockholder) |
| Cereus Properties, LLC. | Cereus Properties, LLC is a subsidiary of Medalist Holdings, Inc. (of which Claimant is a stockholder) |
| Shearwater Investments, LLC. | Shearwater Investments, LLC is a subsidiary of Medalist Holdings, Inc. (of which Claimant is a stockholder) |
| Broadway Capital, LLC. | Broadway Capital Corp., LLC is a subsidiary of Medalist Holdings, Inc. (of which Claimant is a stockholder) |

Claimant also incorporates by reference the Verified Claims and Statements of Interest he filed in this action (or in an action consolidated with it) (*see* Dkt. 116).

**INTERROGATORY NO. 18:**

For the period between January 1, 2016, and April 27, 2018, and for each Defendant Asset identified in your response to Interrogatory No. 5.1, identify and describe with particularity what interest each and every entity and person listed in your response to Interrogatory No. 17 has or had in each Defendant Asset which you claim an interest.

**RESPONSE TO INTERROGATORY NO. 18:**

Claimant objects to this special interrogatory because his standing is not reasonably in dispute. The government has obtained extensive discovery in related

60

criminal proceedings (many millions of pages of documents), including massive quantities of banking, investment, business, real estate, and personal records that evidence both (a) the source of the Defendant Assets as to which Claimant has asserted claims and (b) Claimant's interests in those assets. Further, the allegations in the government's sworn Complaint about the Owned Assets also are sufficient by themselves to establish Claimant's standing as to those assets. Claimant's Verified Claims and Statements of Interest filed in this action (or in an action consolidated with it) also are sufficient to establish Claimant's standing.

Supplemental Rule G(6)(a) allows the government to conduct narrow discovery aimed at weeding out fraudulent claims from persons who have no colorable interest in the defendant assets. *United States v. Funds in the Amount of $574,840*, 719 F.3d 648, 650 (7th Cir. 2013) ("Rule G(6)(a) authorizes the government to issue 'special interrogatories limited to the claimant's identity and relationship to the defendant property.' The purpose of such interrogatories is to smoke out fraudulent claims—claims by persons who have no colorable claims."). The government already possesses sufficient information to know that Claimant has standing to pursue his claims, so this special interrogatory is not necessary for the government to assess Claimant's standing and, therefore, is improper. *Cf. United States v. Real Property Located at 17 Coon Creek Road*, 787 F.3d 968, 977 (9th 2015) (claimant's failure to respond to the government's special interrogatories did not warrant striking claim since his standing was not reasonably in dispute because, *inter alia*, the government's complaint alleged the property at issue was titled in his name and he resided on it); *United States v. $154,853.00 in U.S. Currency*, 744 F.3d 559, 564 (8th Cir. 2014) (holding the same).

Given the sworn allegations in the government's Complaint and the information in the government's possession from its extensive discovery in related criminal proceedings, the government cannot fairly contend it needs the information sought in this special interrogatory to assess his standing to pursue his claims.

Claimant also objects to this special interrogatory on the grounds that it seeks

information that is not relevant to whether Claimant has standing to pursue his claims and is outside of the scope of Supplemental Rule G(6)(a), which only authorizes "special interrogatories limited to the claimant's identity and relationship to the defendant property." This special interrogatory seeks information not about Claimant's identity or his relationship to the Defendant Assets as to which he has asserted claims, but instead inquires whether more than two dozen other individuals and entities may have any interest in those assets. This special interrogatory is outside the scope of Rule G(6)(a).

Claimant further objects to this interrogatory because the burden it would impose on Claimant is not proportionate to the needs of the case at this stage (*i.e.* to enable the government to assess Claimant's standing before being required to respond to the pending motions to dismiss) or to any benefit the government may receive from the discovery, given that (a) Claimant's standing is not reasonably in dispute and (b) the special interrogatory seeks information that is unreasonably cumulative and duplicative of the extensive discovery the government already obtained in related criminal proceedings, including massive quantities of banking, investment, business, real estate, and personal records that evidence both the source of the Defendant Assets as to which Claimant has asserted claims and Claimant's interests in those assets. The government can obtain any information it needs from that discovery, without imposing significant expenses and burdens on Claimant, and, to the extent the government has not already reviewed that discovery and obtained the information sought in this special interrogatory, the burden and cost of extracting the information from the existing discovery would be substantially the same for the government or Claimant.

Additionally, although this "boilerplate" special interrogatory (or portions of it) might be appropriate in a case involving ambiguous claims to a large amount of unexplained currency, it is not appropriate here, given the allegations in the government's Complaint and given the nature of the Defendant Assets as to which Claimant has asserted claims (bank and investment accounts held in the name of Claimant or entities he controls and assets owned by others that are collateral for contractual obligations,

with the liens securing those obligations perfected by financing statements of record in the offices of the Delaware Secretary of State, the Texas Secretary of State, and the D.C. Recorder of Deeds).

Claimant objects to this special interrogatory because it is duplicative of Interrogatory No. 15.

Subject to his objections, Claimant incorporates by reference his response to special interrogatories No. 15 and No. 17.

**INTERROGATORY NO. 19:**

For the period between January 1, 2016, and April 27, 2018, identify and describe with particularity all facts related to your dominion and/or control over each Defendant Asset identified in your response to Interrogatory No. 5.1 and describe any and all instances in which you exercised any such control.

**RESPONSE TO INTERROGATORY NO. 19:**

Claimant objects to this special interrogatory because his standing is not reasonably in dispute. The government has obtained extensive discovery in related criminal proceedings (many millions of pages of documents), including massive quantities of banking, investment, business, real estate, and personal records that evidence both (a) the source of the Defendant Assets as to which Claimant has asserted claims and (b) Claimant's interests in those assets. Further, the allegations in the government's sworn Complaint about the Owned Assets also are sufficient by themselves to establish Claimant's standing as to those assets. Claimant's Verified Claims and Statements of Interest filed in this action (or in an action consolidated with it) also are sufficient to establish Claimant's standing.

Supplemental Rule G(6)(a) allows the government to conduct narrow discovery aimed at weeding out fraudulent claims from persons who have no colorable interest in the defendant assets. *United States v. Funds in the Amount of $574,840*, 719 F.3d 648, 650 (7th Cir. 2013) ("Rule G(6)(a) authorizes the government to issue 'special interrogatories limited to the claimant's identity and relationship to the defendant property.' The

63

purpose of such interrogatories is to smoke out fraudulent claims—claims by persons who have no colorable claims."). The government already possesses sufficient information to know that Claimant has standing to pursue his claims, so this special interrogatory is not necessary for the government to assess Claimant's standing and, therefore, is improper. *Cf. United States v. Real Property Located at 17 Coon Creek Road*, 787 F.3d 968, 977 (9th 2015) (claimant's failure to respond to the government's special interrogatories did not warrant striking claim since his standing was not reasonably in dispute because, *inter alia*, the government's complaint alleged the property at issue was titled in his name and he resided on it); *United States v. $154,853.00 in U.S. Currency*, 744 F.3d 559, 564 (8th Cir. 2014) (holding the same).

Given the sworn allegations in the government's Complaint and the information in the government's possession from its extensive discovery in related criminal proceedings, the government cannot fairly contend it needs the information sought in this special interrogatory to assess his standing to pursue his claims.

Claimant further objects to this interrogatory because the burden it would impose on Claimant is not proportionate to the needs of the case at this stage (*i.e.* to enable the government to assess Claimant's standing before being required to respond to the pending motions to dismiss) or to any benefit the government may receive from the discovery, given that (a) Claimant's standing is not reasonably in dispute and (b) the special interrogatory seeks information that is unreasonably cumulative and duplicative of the extensive discovery the government already obtained in related criminal proceedings, including massive quantities of banking, investment, business, real estate, and personal records that evidence both the source of the Defendant Assets as to which Claimant has asserted claims and Claimant's interests in those assets. The government can obtain any information it needs from that discovery, without imposing significant expenses and burdens on Claimant, and, to the extent the government has not already reviewed that discovery and obtained the information sought in this special interrogatory, the burden and cost of extracting the information from the existing discovery would be

64

substantially the same for the government or Claimant.

Additionally, although this "boilerplate" special interrogatory (or portions of it) might be appropriate in a case involving ambiguous claims to a large amount of unexplained currency, it is not appropriate here, given the allegations in the government's Complaint and given the nature of the Defendant Assets as to which Claimant has asserted claims (bank and investment accounts held in the name of Claimant or entities he controls and assets owned by others that are collateral for contractual obligations, with the liens securing those obligations perfected by financing statements of record in the offices of the Delaware Secretary of State, the Texas Secretary of State, and the D.C. Recorder of Deeds).

Claimant objects to this special interrogatory because it is duplicative of special interrogatories No. 6 and No. 8.

Subject to his objections, Claimant incorporates by reference his responses to special interrogatories No. 6 and No. 8.  Claimant also incorporates by reference the Verified Claims and Statements of Interest he filed in this action (or in an action consolidated with it) (*see* Dkt. 116).

**INTERROGATORY NO. 20:**

For each Defendant Asset identified in your response to Interrogatory No. 5.1, state and describe with particularity any and all facts and legal bases supporting your contention that you have "standing to contest" the forfeiture of such Defendant Asset.

**RESPONSE TO INTERROGATORY NO. 20:**

Claimant objects to this special interrogatory because his standing is not reasonably in dispute.  The government has obtained extensive discovery in related criminal proceedings (many millions of pages of documents), including massive quantities of banking, investment, business, real estate, and personal records that evidence both (a) the source of the Defendant Assets as to which Claimant has asserted claims and (b) Claimant's interests in those assets.  Further, the allegations in the government's sworn Complaint about the Owned Assets also are sufficient by

themselves to establish Claimant's standing as to those assets.  Claimant's Verified Claims and Statements of Interest filed in this action (or in an action consolidated with it) also are sufficient to establish Claimant's standing.

Supplemental Rule G(6)(a) allows the government to conduct narrow discovery aimed at weeding out fraudulent claims from persons who have no colorable interest in the defendant assets.  *United States v. Funds in the Amount of $574,840*, 719 F.3d 648, 650 (7th Cir. 2013) ("Rule G(6)(a) authorizes the government to issue 'special interrogatories limited to the claimant's identity and relationship to the defendant property.'  The purpose of such interrogatories is to smoke out fraudulent claims—claims by persons who have no colorable claims.").  The government already possesses sufficient information to know that Claimant has standing to pursue his claims, so this special interrogatory is not necessary for the government to assess Claimant's standing and, therefore, is improper.  *Cf. United States v. Real Property Located at 17 Coon Creek Road*, 787 F.3d 968, 977 (9th 2015) (claimant's failure to respond to the government's special interrogatories did not warrant striking claim since his standing was not reasonably in dispute because, *inter alia*, the government's complaint alleged the property at issue was titled in his name and he resided on it); *United States v. $154,853.00 in U.S. Currency*, 744 F.3d 559, 564 (8th Cir. 2014) (holding the same).

Given the sworn allegations in the government's Complaint and the information in the government's possession from its extensive discovery in related criminal proceedings, the government cannot fairly contend it needs the information sought in this special interrogatory to assess his standing to pursue his claims.

Claimant further objects to this interrogatory because the burden it would impose on Claimant is not proportionate to the needs of the case at this stage (*i.e.* to enable the government to assess Claimant's standing before being required to respond to the pending motions to dismiss) or to any benefit the government may receive from the discovery, given that (a) Claimant's standing is not reasonably in dispute and (b) the special interrogatory seeks information that is unreasonably cumulative and duplicative

of the extensive discovery the government already obtained in related criminal proceedings, including massive quantities of banking, investment, business, real estate, and personal records that evidence both the source of the Defendant Assets as to which Claimant has asserted claims and Claimant's interests in those assets.  The government can obtain any information it needs from that discovery, without imposing significant expenses and burdens on Claimant, and, to the extent the government has not already reviewed that discovery and obtained the information sought in this special interrogatory, the burden and cost of extracting the information from the existing discovery would be substantially the same for the government or Claimant.

Additionally, although this "boilerplate" special interrogatory (or portions of it) might be appropriate in a case involving ambiguous claims to a large amount of unexplained currency, it is not appropriate here, given the allegations in the government's Complaint and given the nature of the Defendant Assets as to which Claimant has asserted claims (bank and investment accounts held in the name of Claimant or entities he controls and assets owned by others that are collateral for contractual obligations, with the liens securing those obligations perfected by financing statements of record in the offices of the Delaware Secretary of State, the Texas Secretary of State, and the D.C. Recorder of Deeds).

Claimant objects to this special interrogatory because it is duplicative of special interrogatories No. 6, No. 8, No. 13, and No. 19.

Subject to his objections, Claimant incorporates by reference his responses to special interrogatories No. 6, No. 8, No. 13, and No. 19.  Claimant also incorporates by reference the Verified Claims and Statements of Interest he filed in this action (or in an action consolidated with it) (*see* Dkt. 116).

**INTERROGATORY NO. 21:**

Identify all documents utilized and relied upon to respond to Special Interrogatories 1 through 20.  For each such document, identify the person with custody of those documents, including their name, address and telephone number.

**RESPONSE TO INTERROGATORY NO. 21:**

Claimant objects to this special interrogatory because his standing is not reasonably in dispute.  The government has obtained extensive discovery in related criminal proceedings (many millions of pages of documents), including massive quantities of banking, investment, business, real estate, and personal records that evidence both (a) the source of the Defendant Assets as to which Claimant has asserted claims and (b) Claimant's interests in those assets.  Further, the allegations in the government's sworn Complaint about the Owned Assets also are sufficient by themselves to establish Claimant's standing as to those assets.  Claimant's Verified Claims and Statements of Interest filed in this action (or in an action consolidated with it) also are sufficient to establish Claimant's standing.

Supplemental Rule G(6)(a) allows the government to conduct narrow discovery aimed at weeding out fraudulent claims from persons who have no colorable interest in the defendant assets.  *United States v. Funds in the Amount of $574,840*, 719 F.3d 648, 650 (7th Cir. 2013) ("Rule G(6)(a) authorizes the government to issue 'special interrogatories limited to the claimant's identity and relationship to the defendant property.'  The purpose of such interrogatories is to smoke out fraudulent claims—claims by persons who have no colorable claims.").  The government already possesses sufficient information to know that Claimant has standing to pursue his claims, so this special interrogatory is not necessary for the government to assess Claimant's standing and, therefore, is improper.  *Cf. United States v. Real Property Located at 17 Coon Creek Road*, 787 F.3d 968, 977 (9th 2015) (claimant's failure to respond to the government's special interrogatories did not warrant striking claim since his standing was not reasonably in dispute because, *inter alia*, the government's complaint alleged the property at issue was titled in his name and he resided on it); *United States v. $154,853.00 in U.S. Currency*, 744 F.3d 559, 564 (8th Cir. 2014) (holding the same).

Given the sworn allegations in the government's Complaint and the information in the government's possession from its extensive discovery in related criminal

1 | proceedings, the government cannot fairly contend it needs the information sought in
2 | this special interrogatory to assess his standing to pursue his claims.

3 |      Subject to his objections, Claimant responds as follows:

4 |      Claimant did not utilize or rely upon any documents to respond to these special
5 | interrogatories.

6 | DATED:  July _31_, 2020

RAMON LARKIN
Pro Per

By: _Ra_____

Ramon Larkin

**<u>VERIFICATION</u>**

I, Ramon Larkin, am a claimant in this action and am authorized to make this Verification.   I have read the foregoing answers to Plaintiff's First Set of Rule G Interrogatories to Claimant Ramon Larkin and know the contents thereof.   Upon information and belief, I am informed and believe that those answers are true and correct. I reserve the right to make changes or additions, if it appears at any time that errors or omissions have been made, or if more accurate or complete information becomes available.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on July __31__, 2020, at ___Kansas City___, ___Missouri___.


_____
Ramon Larkin

CLAIMANT RAMON LARKIN'S RESPONSES TO PLAINTIFF'S FIRST SET OF
RULE G SPECIAL INTERROGATORIES

## **PROOF OF SERVICE**

I declare that I am a citizen of the United States and I am over the age of 18.

I am a pro se claimant. On July 31, 2020 I served **Claimant Ramon Larkin's Objections and Responses to Plaintiff's First Set of Rule G Special Interrogatories** on the following parties:

JOHN KUCERA
john.kucera@usdoj.gov
DANIEL G. BOYLE
daniel.boyle2@usdoj.gov
AUSA - Office of US Attorney
Asset Forfeiture Section
312 North Spring Street 14th Floor
Los Angeles, CA 90012
Tel.: 213-894-3391
Fax: 213-894-0142

**[X] BY ELECTRONIC MAIL:** I emailed a Portable Document Version (PDF) of the document named above to john.kucera@usdoj.gov and daniel.boyle2@usdoj.gov

**[X] BY OVERNIGHT MAIL:** I caused a printed copy of the document named above to be delivered via overnight mail to the United States Attorney's Office to the attention of John Kucera and Daniel G. Boyle at the address listed above

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on July 31, 2020 at Kansas City, Missouri.

_____
Ramon Larkin