Gary S. Lincenberg – State Bar No. 123058
  glincenberg@birdmarella.com
Ariel A. Neuman – State Bar No. 241594
  aneuman@birdmarella.com
Gopi K. Panchapakesan – State Bar No. 279586
  gpanchapakesan@birdmarella.com
BIRD, MARELLA, BOXER, WOLPERT, NESSIM,
DROOKS, LINCENBERG & RHOW, P.C.
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile: (310) 201-2110

Attorneys for John Brunst, Mary Ann
Brunst, and The Brunst Family Trust

*[Additional counsel listed on next page]*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>               Plaintiff,<br><br>       vs.<br><br>$1,546,076.35 IN BANK FUNDS SEIZED FROM REPUBLIC BANK OF ARIZONA ACCOUNT '1889, et al.,<br><br>               Defendants. | CASE NO. 2:18-cv-8420-RGK-PJWx<br><br>**CLAIMANTS' OPPOSITION TO GOVERNMENT'S *EX PARTE* APPLICATION (DKT. 136)**<br><br>*Filed concurrently with Declaration of Whitney Bernstein]*<br><br>Assigned to Hon. R. Gary Klausner Courtroom 850 |

3666361.2

1   Thomas H. Bienert, Jr., – State Bar No. 135311
2        tbienert@bienertkatzman.com
    Whitney Z. Bernstein, – State Bar No. 304917
3        wbernstein@bienertkatzman.com
4   BIENERT KATZMAN PC
    903 Calle Amanacer, Suite 350
5   San Clemente, CA  92673
    Telephone: (949) 369-3700
6   Facsimile: (949) 369-3701
7
8   Attorneys for James Larkin

9   Paul J. Cambria, Jr. – State Bar No. 177957
         pcambria@lglaw.com
10  LIPSITZ GREEN SCIME CAMBRIA LLP
11  42 Delaware Avenue, Suite #120
    Buffalo, NY 14202
12  Telephone: (716) 849-1333
    Facsimile: (716) 855-1580
13
14  Attorneys for Michael Lacey
15
16  John K. Rubiner – State Bar No. 155208
         jrubiner@fmglaw.com
17  FREEMAN, MATHIS & GARY LLP
18  550 S. Hope Street, Suite 2200
    Los Angeles, CA 90071
19  Telephone: (213) 615-7000
20
    Bruce Feder *(admitted pro hac vice)*
21       bf@federlawpa.com
22  FEDER LAW OFFICE, P.A.
    2930 E. Camelback Road, Suite 160
23  Phoenix, AZ 85016
    Telephone: (602) 257-0135
24  Facsimile: (602) 954-8737
25
26  Attorneys for Scott Spear
27
28

David W. Wiechert – State Bar No. 94607
    dwiechert@aol.com
WIECHERT, MUNK & GOLDSTEIN, PC
27136 Paseo Espada, Suite B1123
San Juan Capistrano, CA 92675
Telephone: (949) 361-2822

Daniel J. Quigley *(admitted pro hac vice)*
    quigley@djqplc.com
DANIEL J. QUIGLEY, PLC
5425 E. Broadway Blvd., Suite 352
Tucson, Arizona 85711
Telephone: (520) 867-4450

Attorneys for Medalist Holdings, Inc.,
Leeward Holdings, LLC, Camarillo
Holdings, LLC, Vermillion Holdings,
LLC, Cereus Properties, LLC,
Shearwater Investments, LLC, and
Broadway Capital Corp., LLC

# **TABLE OF CONTENTS**

Page

I.    RELEVANT BACKGROUND.........................................................................2

II.   ARGUMENT ..............................................................................................3

    A.    The Government's *Ex Parte* Application Is Procedurally
        Improper. ..............................................................................................3

        1.   Legal Standard ..............................................................................3

        2.   The Government Failed to Comply with This District's
            and This Court's *Ex Parte* Notice Requirements. ........................4

        3.   The Government Has Not Demonstrated That Emergency
            Relief Is Warranted Here. .............................................................5

            a.   The Government Has Not Established Irreparable
                Prejudice. ...........................................................................5

            b.   The Application Seeks to Remedy a Problem of the
                Government's Own Making. ...............................................5

    B.    The Government's Application Also Fails on the Merits.......................7

III.  CONCLUSION ........................................................................................10

i

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Enterprise Bank v. Saettelle*
    21 F.3d 233 (9th Cir. 1994) ......................................................... 8

*Johnson v. Manhattan Ry.*
    289 U.S. 479 (1933) ..................................................................... 8

*Mission Power Eng'g Co. v. Cont'l Cas. Co.*
    883 F. Supp. 488 (C.D. Cal. 1995) .......................................... 4, 5, 7

*Thomas v. Thomas Wylde, LLC*
    No. LACV1704158JAKPJWX, 2017 WL 8236279 (C.D. Cal. June
    7, 2017) ......................................................................................... 4

*Toyo Tire & Rubber Co., Ltd v. Wheel Grp. Holdings, LLC*
    2016 WL 11525318 (C.D. Cal. Oct. 26, 2016) ............................ 8

*United States v. All Assets Held in Account No. XXXXXXXX*
    No. CV 13-1832 (JDB), 2020 WL 3869733 (D.D.C. July 9, 2020) ................... 5

**Other Authorities**

Fed. R. Civ. P.
    12(b)(6) ..................................................................................... 8, 9
    42(a) ............................................................................................. 8

Local Rule 7-19.1 ................................................................................ 3

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

Without proper notice as required by this District's Local Rules and the Court's Standing Order, and with no explanation of why *ex parte* relief might be justified here, the government impermissibly seeks an *ex parte* ruling to avoid its obligation to comply with a Court-ordered briefing schedule.  The government apparently is unaware of the basic procedural requirements that this District and this Court impose on litigants seeking *ex parte* relief.  On July 10, 2020, the government stipulated (Dkt. 118) with Claimants to a briefing schedule in connection with Claimants' pending motions to dismiss (Dkts. 111 and 112).  This Court adopted the stipulation (Dkt. 119), thereby requiring the government to respond to Claimants' motions by August 21, 2020.  The Court should reject the Application without reaching the underlying merits and require the government to comply with this Court's prior Order.

In any event, the government's Application lacks merit.  The purported basis for the Application—that the government "intends" to file a motion to strike certain claims and that it "will take some time" to figure out which assets and claims will be the subject of its motion—is a non-starter.  App. at 3, 7.  The government essentially seeks to avoid responding to pending, dispositive motions because it claims it plans to file a separate motion over one month from now.  That request defies common sense.  There also is no mechanism under Supplemental Rule G or the ordinary rules of civil procedure that allows for such a result.

Importantly, Supplemental Rule G only requires this Court to "decide" a motion to strike before ruling on a motion to dismiss—not to stay briefing on the motion to dismiss.  Further, the government's anticipated motion would only apply to some small set of claims, but numerous Claimants and their claims to more than $100 million in assets would not be affected.  The mere fact that the government has consolidated so many forfeiture cases in order to "streamline" these proceedings does not allow it to delay resolution of Claimants' motions to dismiss as to claims

1   that are unaffected by its anticipated motion to strike.

2        The government's application is yet another attempt on its part to delay these

3   proceedings.  This Court should reject the government's application and hold the

4   government to this Court's Order (Dkt. 119), to which the government stipulated.

5   **I.**       **RELEVANT BACKGROUND**

6        Acting on the theory that all assets and funds of the Claimants, derived from

7   any source at any time, are subject to forfeiture, the government seized a large

8   number of assets personally owned by Claimants throughout 2018 (the "Owned

9   Assets").  The government also seized a large number of assets from Backpage.com

10   LLC and its affiliates—assets that secured certain obligations owed to Claimants

11   (the "Liened Assets").  Claimants filed verified claims to the Owned Assets and the

12   Liened Assets beginning in May 2019.  This Court has recognized the validity of

13   those previously-filed verified claims in this consolidated action.  Dkt. 116.  The

14   verified claims asserted the bases for Claimants' standing, in detail.  Nonetheless,

15   the government served identical, overbroad interrogatories on all Claimants under

16   Supplemental Rule G, purportedly to assess Claimants' standing.  Declaration of

17   Whitney Bernstein ("Bernstein Decl."), Exh. A (an example of one such set of

18   interrogatories).

19        Claimants filed motions to dismiss on July 1, 2020.  Dkts. 111, 112.  The

20   government did not initially respond to the motions because it had not yet received

21   interrogatory responses from Claimants.  Pursuant to the parties' stipulation

22   (Dkt. 118), Claimants responded to the government's interrogatories by July 31,

23   2020.  The Court's corresponding Order required the government to respond to

24   Claimants' motions to dismiss by August 21, 2020.

25        More than two weeks after receiving the interrogatory responses and just days

26   before its responses to the motions to dismiss were due, the government contacted

27   counsel for Claimant James Larkin and indicated that it intended to contest only

28   certain Claimants' standing as to certain of the defendant assets (namely, some yet-

to-be-identified Liened Assets, *i.e.*, assets collateralizing certain obligations owed to Claimants, including advancement and indemnification).  Bernstein Decl., Exh. B. The government indicated that its challenge would be limited to only certain of the Claimants and a subset of the defendant assets.  *Id*.  Counsel for Claimant James Larkin, on behalf of Claimants James Larkin, Michael Lacey, Scott Spear, John Brunst, and the entities in which they hold ownership interests, repeatedly requested that the government advise them regarding (a) the defendant asset(s) as to which it disputes standing, (b) the claimant(s) as to which it plans to assert such a challenge, and (c) the purported basis for each challenge.  *Id*.  The government never provided this information and never advised Claimants that it planned to file an *ex parte* application before attempting to, once again, stall this litigation and avoid a substantive response to Claimants' motions to dismiss.  *Id*.

## II.   **ARGUMENT**

### A.   The Government's *Ex Parte* Application Is Procedurally Improper.

The government made no effort to comply with the *ex parte* notice requirements imposed by this District's Local Rules and this Court's Standing Order.  Nor does its Application even attempt to address why *ex parte* relief is justified here.  The Application should be rejected on these bases alone, without reaching the underlying merits.

#### 1.   Legal Standard

Local Rule 7-19.1 provides that "[i]t shall be the duty of the attorney so applying [for *ex parte* relief] . . . to make reasonable, good faith efforts orally to advise counsel for all other parties, if known, of the date and substance of the proposed ex parte application."  This Court's Standing Order provides that "[t]he moving party shall serve the opposing party and shall notify the opposition that opposing papers must be filed not later than 3:00 p.m. on the first business day following service."

Further, "[e]x parte applications are permitted solely for extraordinary relief."

*Thomas v. Thomas Wylde, LLC*, No. LACV1704158JAKPJWX, 2017 WL 8236279, at \*1 (C.D. Cal. June 7, 2017).  Emergency relief is warranted only where the moving party presents evidence that its "cause will be irreparably prejudiced if the underlying motion is heard according to regular noticed motion procedures" and that it "is without fault in creating the crisis that requires ex parte relief, or that the crisis occurred as a result of excusable neglect." *Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488, 492 (C.D. Cal. 1995).  "Properly designed ex parte motion papers thus contain two distinct motions or parts. ***The first part should address only why the regular noticed motion procedures must be bypassed***.  The second part consists of papers identical to those that would be filed to initiate a regular noticed motion." *Id.* (emphasis added).  Further, as this Court's Standing Order notes, "sanctions may be imposed for misuse of ex parte applications."

## 2.   The Government Failed to Comply with This District's and This Court's *Ex Parte* Notice Requirements.

The government utterly failed to comply with the basic *ex parte* notice requirements imposed by this District and this Court.  AUSA Daniel Boyle merely noted in an email at 11:07 A.M. on August 18, 2020, that, "[i]n light of the current briefing schedule deadlines, however, I will need to file an application to suspend the MTD briefing by later today to give you time to respond and the Court time to consider the application."  Bernstein Decl., Exh. B.  He never indicated that the government intended to file an *ex parte* application.  Moreover, the government failed to notify Claimants' counsel regarding their deadline to respond to the Application, as is required under this Court's Standing Order.[1]

---

[1]   Further, while the government's application gave the impression that the government conferred with "claimants' counsel" (Dkt. 136 at 2), to the undersigned counsel's knowledge, the government communicated only with Claimant James Larkin's counsel, who expressly informed AUSA Boyle that she was communicating "only on behalf of Claimants James Larkin, Michael Lacey, Scott Spear, John Brunst, and their entities after having conferred with their respective

**3.     The Government Has Not Demonstrated That Emergency Relief Is Warranted Here.**

The government does not separately address "why the regular noticed motion procedures must be bypassed" here, *i.e.*, the necessary "first part" of any *ex parte* application.  *Mission Power*, 883 F. Supp. at 492.  Specifically, the government fails to address (1) why it would suffer irreparable prejudice if emergency relief is not granted and (2) whether it is without fault here.

**a.     The Government Has Not Established Irreparable Prejudice.**

Devoid from the Application is an explanation as to how the government could possibly suffer irreparable prejudice if it is required to comply with a briefing schedule *to which it stipulated*.  Complying with a Court Order plainly does not constitute irreparable prejudice, particularly where, as the government admits, Supplemental Rule G "does not mandate a stay of briefing on any dispositive motion pending a motion to strike."  App. at 9.  Importantly, Supplemental Rule G only requires this Court to "decide" a motion to strike before ruling on a motion to dismiss—not to stay briefing on the motion to dismiss.  Indeed, courts regularly have parties brief motions to strike and motions to dismiss at the same time, and then rule on the motion to strike first (often in the same decision).  *See, e.g.*, *United States v. All Assets Held in Account No. XXXXXXXX*, No. CV 13-1832 (JDB), 2020 WL 3869733, at *3 (D.D.C. July 9, 2020) (internal citations omitted).

**b.     The Application Seeks to Remedy a Problem of the Government's Own Making.**

The government contends that Claimants lack standing to assert claims as to the Liened Assets, but Claimants informed the government of the precise basis for

_____

counsel" and specifically advised the government that it would need to initiate contact with "everyone who is a party to the attached stipulation and promise regarding the motion to dismiss briefing."  *See* Bernstein Decl., Exh. B.

their claims as to those assets in their administrative claims filed beginning in *July 2018* and in their verified claims in these now consolidated cases beginning in *May 2019*. *See, e.g.*, Bernstein Decl., Exh. C.[2]  As such, the government has had several *years* to assess the bases for Claimants' claims as to the Liened Assets—not two weeks, as it wrongly contends in its Application.

Moreover, through discovery in the related criminal case pending in the District of Arizona, the government seized copies of all the contracts and related documents underlying Claimants' claims as to the Liened Assets more than two years ago.  The government produced copies of those documents as discovery in its criminal case in May 2018, and also included those documents on its May 29, 2019, preliminary exhibit list for the criminal case; therefore, the government also had *several years* to examine all the documents underlying Claimants' claims as to the Liened Assets.  Bernstein Decl., Exh. D (excerpts from government's exhibit list).

At best, the government simply did not review Claimants' claims as to the Liened Assets when they were filed nor the documents in its possession underlying those claims.  At worst, the government knew it intended to bring a motion to strike those claims, yet stipulated to a briefing schedule as to Claimants' motions to dismiss, only to move the Court for *ex parte* relief from that Court-ordered schedule,

---

[2]   The relevant claims of the individual claimants as to the "Liened Assets" state: "Claimants are third-party beneficiaries of a series of contracts entered into in April 2015 among the Medalist subsidiaries and: Atlantische Bedrijven C.V. ("ABC") and UGC Tech Group C.V. ("UGC") (collectively, "Borrowers"); numerous affiliates of Borrowers, including Backpage.com, LLC (collectively, "Pledgors"); and Carl A. Ferrer and other affiliates of Borrowers (collectively, "Guarantors").  Claimants have the right to advancement and indemnification from ABC and UGC under those agreements, which advancement and indemnification obligations are guaranteed by Pledgors and Guarantors.  Those obligations are secured by security interests in the assets of Pledgors (the "Collateral").  On information and belief, the Subject Funds are a part of the Collateral.  On information and belief, the sums owed for advancement and indemnification exceed the value of the Collateral."  Bernstein Decl., Exh. C.

just days before its response to the motions are due.  Either way, the government has not come close to showing that it is without fault here.  *See Mission Power*, 883 F. Supp. at 492.  Far from it, the purported "crisis" the government complains about is one that is entirely of its own making.

**B.**     **The Government's Application Also Fails on the Merits.**

There is simply no basis for the government to seek to delay responding to Claimants' pending motions to dismiss until its yet-to-be-filed motion for partial summary judgment purportedly on standing grounds is filed, briefed, and decided. The government admits as much in its Application.  *See* App. at 9 (noting that Supplemental Rule G "does not mandate a stay of briefing on any dispositive motion pending a motion to strike.").  Indeed, there is not even a "pending" motion to strike here.  The government should not be permitted to avoid responding to duly-noticed motions to dismiss just by claiming it intends to file a motion to strike over a month from now.  As this Court notes in its Standing Order, it "has a strong interest in keeping scheduled dates certain," and last minute, avoidable continuances "[w]ithout . . . compelling factual support," such as the one proposed by the government here, "are disfavored."  Further, the Standing Order notes that the failure to comply with the Local Rules "will result in rejection of the request without further notice to the parties."

The government also is wrong to assert that Claimants' motions to dismiss "cannot be resolved prior to the determination of the government's motion to strike."  App. at 9.  The government filed numerous forfeiture proceedings against the personal assets of the Claimants (the Owned Assets), *i.e.*, bank and brokerage accounts and real property owned by them personally or by their trusts, as to which their standing to assert claims is not reasonably in dispute.[3]  By the government's

---

[3]     For example, the government admits in the Complaint that the "John Brunst Assets" are bank or investment accounts "held in the name of Brunst" (or "held in the name of the 'Brunst Family Trust'" with "Brunst and his wife [as] the sole

own allegations, the value of those bank and brokerage accounts exceeds $90 million and, with the real estate, the Owned Assets likely exceed $100 million.  The government admits that it "***does not intend to seek to strike claims*** to purportedly 'owned assets' at this time."  App. at 5 n.2 (emphasis added).  What possible basis then could the government have to delay responding to the motions to dismiss the civil forfeiture complaints relating to the Owned Assets?  The government provides no basis in its Application and there is none.

Importantly, each of the Claimants has rights to seek dismissal of the government's respective cases as to given assets.  The Court has consolidated the cases for pretrial purposes under Rule 42(a), but that is a "matter of convenience and economy in administration, [and] does not merge the suits into a single cause, or change the rights of the parties, or make those who are parties in one suit parties in another."  *Enterprise Bank v. Saettelle*, 21 F.3d 233, 235 (9th Cir. 1994) (quoting *Johnson v. Manhattan Ry.*, 289 U.S. 479, 496–97 (1933)); *accord Toyo Tire & Rubber Co., Ltd v. Wheel Grp. Holdings, LLC*, 2016 WL 11525318, at *1 (C.D. Cal. Oct. 26, 2016).  The government's tactic here is to deny Claimants who admittedly have standing to contest the seizures of given assets their day in court, based on the government's statement that it wants to challenge the standing of other claimants relating to other assets.  The government cannot use the complexity it has created by its blanket "all assets" forfeiture proceedings to deny individual Claimant's rights to obtain Rule 12(b)(6) dismissal of improper seizures.

With respect to the Liened Assets, the government casts aspersions at the lien claims asserted by Claimants, characterizing them as "boilerplate information-and-belief assertions of nebulous security interests that fail to satisfy the requirements for standing under the law of this Circuit" (App. at 3), but cherry-picks a few sentences from the interrogatory responses of a small claimant on the periphery of

_____

trustees for these accounts").  Dkt. 108 at ¶¶ 193, 195.

the proceedings, omitting both the broader context provided by the balance of that claimant's interrogatory responses and, more importantly, the more fulsome description for the basis of the liens in the interrogatory responses of the entities that are parties to the contracts creating the liens.  (The individual claimants are intended third-party beneficiaries of those contracts, rather than parties to them.)  The interrogatory responses of the entities – parties to the contracts creating the liens – easily meet the requirements under Ninth Circuit law for stating the bases for their lien claims.  *See* Bernstein Decl., Exh. E (excerpts from the entities' interrogatory responses).

Moreover, the individuals' claims as to the Liened Assets and a portion of the entities' claims as to the Liened Assets claims are premised, in part, on their contractual right to the advancement of legal defense costs—and the government previously ***stipulated*** to their entitlement to advancement in litigation in the Delaware Court of Chancery.  In 2018, Claimants commenced an action in the Court of Chancery seeking to enforce their rights to advancement.  Claimants' 83-page amended complaint in that Court set out in great detail the bases for their right to advancement, identifying the specific provisions entitling them to advancement and quoting the pertinent language.  Bernstein Decl., Exh. F.  The Chancery Court permitted the government to intervene in that litigation as a defendant.  Bernstein Decl., Exh. G.  The government ultimately stipulated to a judgment, entered one year ago, establishing Claimants' right to advancement on numerous grounds, *including under the exact same contracts at issue here*.  *Id.*  The government's stipulation to a final judgment establishing Claimants' rights to advancement belies its contention here that Claimants' claims, premised in part on those same advancement rights, might be fairly questioned, much less be "false or frivolous." App. at 8.[4]

---

[4]  The government's stated basis for its anticipated motion for partial summary

1    For all of the government's purported concerns about streamlining this case, it

2 is certainly not "a poor use of the Court's time and resources" (App. at 9) to resolve

3 motions to dismiss as to more than $100 million in "Owned Assets" that were seized

4 over two years ago and as to which the government has raised no questions about

5 Claimants' standing.  There is no basis to forestall resolution of motions to dismiss

6 as to assets with respect to which the government does not dispute Claimants'

7 standing.  And even if the government ultimately files a motion to strike certain

8 other claims, the Court should not now allow the government to evade responding to

9 Claimants' motions to dismiss simply because the government says it intends move

10 to strike only a subset of claims over a month from now.

11 **III.   <u>CONCLUSION</u>**

12    For the foregoing reasons, the Court should deny the government's *ex parte*

13 application and require it to comply with this Court's prior order (Dkt. 119).

14 DATED:  August 19, 2020        Respectfully submitted,

15                                              Gary S. Lincenberg

16                                              Ariel A. Neuman
                                                    Gopi K. Panchapakesan
17                                              BIRD, MARELLA, BOXER, WOLPERT, NESSIM,

18                                              DROOKS, LINCENBERG & RHOW, P.C.

19                                              By:  _____/s/ Gary S. Lincenberg_____

20                                                        Gary S. Lincenberg
                                                    Attorneys for John Brunst, Mary Ann Brunst,
21                                                    and The Brunst Family Trust

22

23 _____

24 judgment is dubious.  It does not contend that Claimants' interrogatory responses
   are incomplete, nor has it sought to meet and confer regarding those responses.
25 Instead, it appears that the government contends that there are no set of facts under
26 which Claimants have standing to assert claims as to the Liened Assets.  If that is
   the case, then it begs the question of why the government waited until four days
27 before its responses to Claimants' motions to dismiss are due to raise this purported
28 issue with the Court.

1

*Local Rule 5-4.3.4(a)(2)(i) Compliance:  Filer attests that all other*

2

*signatories listed concur in the filing's content and have authorized this filing.*

3

DATED:  August 19, 2020

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Thomas H. Bienert, Jr.
Whitney Z. Bernstein
BIENERT | KATZMAN PC

By: _____*/s/ Whitney Z. Bernstein*_____
            Whitney Z. Bernstein
Attorneys for James Larkin


DATED:  August 19, 2020                LIPSITZ GREEN SCIME CAMBRIA LLP

By: _____*/s/ Paul J. Cambria, Jr.*_____
            Paul J. Cambria, Jr.
Attorneys for Michael Lacey


DATED:  August 19, 2020                FREEMAN, MATHIS & GARY LLP

By: _____*/s/ John K. Rubiner*_____
            John K. Rubiner

FEDER LAW OFFICE, PA

By: _____*/s/ Bruce Feder*_____
            Bruce Feder

Attorneys for Scott Spear

1   DATED:  August 19, 2020

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

WIECHERT, MUNK & GOLDSTEIN, PC

By:     _/s/ David W. Wiechert_____
              David W. Wiechert

DANIEL J. QUIGLEY, PLC

By:     _/s/ Daniel J. Quigley_____
              Daniel J. Quigley

Attorneys for Medalist Holdings, Inc., Leeward
Holdings, LLC, Camarillo Holdings, LLC,
Vermillion Holdings, LLC, Cereus Properties,
LLC, Shearwater Investments, LLC, and
Broadway Capital Corp., LLC