1   Gary S. Lincenberg – State Bar No. 123058
        glincenberg@birdmarella.com
2   Ariel A. Neuman – State Bar No. 241594
        aneuman@birdmarella.com
3   Gopi K. Panchapakesan – State Bar No. 279586
        gpanchapakesan@birdmarella.com
4   BIRD, MARELLA, BOXER, WOLPERT, NESSIM,
    DROOKS, LINCENBERG & RHOW, P.C.
5   1875 Century Park East, 23rd Floor
    Los Angeles, California 90067-2561
6   Telephone: (310) 201-2100
    Facsimile: (310) 201-2110
7
    Attorneys for John Brunst, Mary Ann
8   Brunst, and The Brunst Family Trust
9   *[Additional counsel listed on next page]*
10
11              **UNITED STATES DISTRICT COURT**
12      **CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**
13

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 2:18-cv-8420-RGK-PJWx |
| Plaintiff, | **DECLARATION OF WHITNEY Z. BERNSTEIN** |
| vs. | *[Filed concurrently with Claimants' Opposition to Government's Ex Parte Application (Dkt. 136)]* |
| $1,546,076.35 IN BANK FUNDS SEIZED FROM REPUBLIC BANK OF ARIZONA ACCOUNT '1889, et al., | Assigned to Hon. R. Gary Klausner Courtroom 850 |
| Defendants. | |

1  Thomas H. Bienert, Jr., – State Bar No. 135311
       tbienert@bienertkatzman.com
2  Whitney Z. Bernstein, – State Bar No. 304917
       wbernstein@bienertkatzman.com
3  BIENERT KATZMAN PC
4  903 Calle Amanacer, Suite 350
   San Clemente, CA  92673
5  Telephone: (949) 369-3700
6  Facsimile: (949) 369-3701

7
8  Attorneys for James Larkin

9
10 Paul J. Cambria, Jr. – State Bar No. 177957
       pcambria@lglaw.com
11 LIPSITZ GREEN SCIME CAMBRIA LLP
12 42 Delaware Avenue, Suite #120
   Buffalo, NY 14202
13 Telephone: (716) 849-1333
14 Facsimile: (716) 855-1580

15 Attorneys for Michael Lacey

16
17 John K. Rubiner – State Bar No. 155208
       jrubiner@fmglaw.com
18 FREEMAN, MATHIS & GARY LLP
19 550 S. Hope Street, Suite 2200
   Los Angeles, CA 90071
20 Telephone: (213) 615-7000
21
22 Bruce Feder (admitted pro hac vice)
       bf@federlawpa.com
23 FEDER LAW OFFICE, P.A.
24 2930 E. Camelback Road, Suite 160
   Phoenix, AZ 85016
25 Telephone: (602) 257-0135
26 Facsimile: (602) 954-8737

27 Attorneys for Scott Spear

28

3666432.1

1  David W. Wiechert – State Bar No. 94607
        dwiechert@aol.com
2  WIECHERT, MUNK & GOLDSTEIN, PC
3  27136 Paseo Espada, Suite B1123
   San Juan Capistrano, CA 92675
4  Telephone: (949) 361-2822

5
6  Daniel J. Quigley *(admitted pro hac vice)*
        quigley@djqplc.com
7  DANIEL J. QUIGLEY, PLC
8  5425 E. Broadway Blvd., Suite 352
   Tucson, Arizona 85711
9  Telephone: (520) 867-4450

10
   Attorneys for Medalist Holdings, Inc.,
11 Leeward Holdings, LLC, Camarillo
   Holdings, LLC, Vermillion Holdings,
12 LLC, Cereus Properties, LLC,
13 Shearwater Investments, LLC, and
   Broadway Capital Corp., LLC

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>DECLARATION OF WHITNEY Z. BERNSTEIN</u>

I, Whitney Z. Bernstein, declare as follows:

1.      I am an active member of the Bar of the State of California and an attorney with the firm of Bienert Katzman PC, counsel for Claimant James Larkin in this action.  I make this declaration in support of Claimants' Opposition to Government's *Ex Parte* Application (Dkt. 136).  Except for those matters stated on information and belief, I make this declaration based upon personal knowledge and, if called upon to do so, I could and would so testify.  This declaration is made for a limited purpose, and does not purport to set forth all information I have about this matter.

2.      Attached as **Exhibit A** is a true and correct copy of the Rule G Special Interrogatories that I understand were served on counsel for an entity in which Claimant James Larkin has an ownership interest.

3.      In an exchange of emails from August 14-17, 2020, the government's counsel (AUSA Dan Boyle) requested Claimants' views about the government's future intent to file a motion to strike and motion for partial summary judgment, and I responded on behalf of Claimants James Larkin, Michael Lacey, Scott Spear, John Brunst, and their entities after conferring with respective counsel.  Attached as **Exhibit B** is a true and correct copy of this email exchange.

4.      Attached as **Exhibit C** are true and correct copies of an October 2, 2018 administrative claim and a May 23, 2019 Verified Claim and Statement of Interest (*see* 18-cv-08749-RGK-PJW at Dkt. 37) filed by Claimant James Larkin. The Verified Claim and Statement of Interest before this Court applies to the current consolidated action (*see* Dkt. 116).

5.      Attached as **Exhibit D** is a true and correct copy of the applicable portions of the government's preliminary exhibit list for the criminal case *United States v. Michael Lacey, et al.*, 18-CR-00422-PHX-SMB (D. Ariz.).

6.      Attached as **Exhibit E** is a true and correct copy of relevant excerpts of

the response to the government's Rule G Special Interrogatories on behalf of an entity in which Claimant James Larkin has an ownership interest that I understand was served on the government on July 31, 2020, in accordance with the Court's order at Dkt. 119.

7.     On information and belief, Claimants commenced an action in the Court of Chancery of the State of Delaware in 2018 seeking to enforce their rights to advancement in *Camarillo Holdings, LLC, et. al. v. Amstel River Holdings, LLC, et al.*, C.A. No. 2018-0606-SG.  Attached as **Exhibit F** is a true and correct copy of the amended complaint in that action.  Attached as **Exhibit G** is a true and correct copy of the stipulated judgment entered in that action.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that I executed this Declaration on August 19, 2020, at Carlsbad, California.

*/s/ Whitney Z. Bernstein*
Whitney Z. Bernstein

# EXHIBIT A

NICOLA T. HANNA
United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division
STEVEN R. WELK
Assistant United States Attorney
Chief, Asset Forfeiture Section
JOHN J. KUCERA (California Bar No. 274184)
DAN G. BOYLE (California Bar No. Pending)
Assistant United States Attorney
Asset Forfeiture Section
    Federal Courthouse, 14th Floor
    312 North Spring Street
    Los Angeles, California 90012
    Telephone:  (213) 894-3391/2426
    Facsimile:  (213) 894-0142
    E-mail: John.Kucera@usdoj.gov
            Daniel.Boyle2@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. CV 18-08420-RGK (PJWx) |
| Plaintiff, | PLAINTIFF'S FIRST SET OF RULE G INTERROGATORIES TO CLAIMANT MEDALIST HOLDINGS, LLC. |
| v. | |
| $1,546,076.35 IN BANK FUNDS SEIZED FROM REPUBLIC BANK OF ARIZONA ACCOUNT '1889, ET AL., | No hearing requested |
| Defendants. | |
| MEDALIST HOLDINGS, LLC., | |
| Claimant. | |

///

**PROPOUNDING PARTY: PLAINTIFF UNITED STATES OF AMERICA**

**RESPONDING PARTY:  MEDALIST HOLDINGS, LLC.**

**SET NUMBER:  ONE**

The Plaintiff, United States of America (the "government"), pursuant to Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions (the "Supplemental Rules"), and Federal Rules of Civil Procedure 33, hereby propounds the following special interrogatories, and request that claimant MEDALIST HOLDINGS, LLC. respond in writing and under oath within twenty one (21) days after they are served.  Answers and Objections to these interrogatories must comply with Civ. R. 33(b) and LR 33.01(a).

These Special Interrogatories are addressed to you as a putative claimant in this forfeiture proceeding and your answers must be based upon all of the knowledge of the claimant as is within your possession, custody or control, including but not limited to knowledge and documents in the possession, custody or control of your investigators, employees, accountants, consultants, attorneys or other agents.  Where facts set forth in answers or portions thereof are supplied upon information and belief, rather than upon actual knowledge, the answer should so state, and specifically describe or identify the source or sources of such information and belief.  If you cannot answer in full, after exercising due diligence to secure the information requested, so state and answer to the fullest extent possible, specifying your inability to answer the remainder and stating whatever information or knowledge you have concerning the unanswered portion.

The person signing these interrogatories shall sign under oath, attesting to the fact that he/she: (1) has read the interrogatories

and the answers; (2) has read the contents thereof; and (3) believes the answers to be true and correct to the best of his/her knowledge.

**INSTRUCTIONS**

Responses are to be completed to the best of Claimant's knowledge and/or the knowledge of Claimant's attorney(s), investigator(s), agent(s), employee(s) or other representative(s). With respect to each special interrogatory, you are requested to do the following:

1.   Divulge all information which you, your attorneys, investigators, agents, employees, or other representatives may have available.

2.   With respect to your answers and objections, identify and quote each special interrogatory in full immediately preceding the statement of any answer or objection, pursuant to Local Rule 33-2.

3.   The person signing your responses to these special interrogatories shall sign under oath, attesting to the fact that he/she: (1) has read the special interrogatories and the answers; (2) has read the contents thereof; and (3) believes the answers to be true and correct to the best of his/her knowledge.

4.   Responses to these special interrogatories are subject to Rule G and Rule 26(e) of the Federal Rules of Civil Procedure and you are under a duty to reasonably amend and/or supplement responses. These Special Interrogatories are continuing in nature, meaning that if, at any time after submitting your initial written responses and producing responsive documents, you obtain information, knowledge, or documents causing you to believe that the response to any Special Interrogatory was not true, correct, or complete when given, you are required to provide, by way of supplementary responses and productions, the true, correct, and complete answers to the Special

Interrogatory, in writing under oath, or any other documents responsive to the Interrogatory.  Should such additional information not be furnished, the Government may move to strike or preclude such information at time of trial.

5.   In each of your answers to these special interrogatories, you are requested to provide not only such information that is in your possession and control, but also all information that is reasonably available.  In the event that you are able to provide only part of the information required by any particular special interrogatory, please provide as much information as you are able to provide and state the reason for your inability to provide the remainder, as well as the effort expended to obtain the requested information.  Information in the possession and control of claimant's businesses, associated organizations, related organizations, organizations under common control, predecessors in interest, spouses, relatives, friends, associates, employers, consultants, accountants, attorneys, investigators, agents, employees, or other representatives, whether past or present, shall also be provided.

6.   The singular form of a noun or pronoun shall be considered to include within its meaning the plural form of the noun or pronoun, and vice versa; and the past tense shall include the present tense where the clear meaning is not distorted.

7.   If you refuse to respond to any Special Interrogatory or subpart thereof, on the ground of privilege, identify:

  a.   the nature of the privilege;

  b.   the author and recipient of the responsive material;

  c.   the date of the responsive material; and

  d.   a description of the subject matter of the contents of the responsive material.

8.   In replying to any special interrogatory do not merely refer to the attached records unless you have no independent recollection of the matters referred to in the interrogatory.  If you have any independent recollection of the relevant events, describe it in detail.

9.   For each special interrogatory, separately identify:

a.   All sources of information and all documents and communications maintained by you; or by any other person, upon which you relied in making such response or of which you are aware refers or relates to any matter referenced in such response; and

b.   The person or persons most familiar with the facts requested as well as those with whom you consulted in preparing your response to such interrogatory.

For each interrogatory, separately identify:

c.   all sources of information and all documents and communications maintained by you; or by any other person, upon which you relied in making such response or of which you are aware refers or relates to any matter referenced in such response;  and

d.   the person or persons most familiar with the facts requested as well as those with whom you consulted in preparing your response to such interrogatory.

## **PREAMBLE**

This preamble is incorporated by reference into each and every special interrogatory hereinafter set forth, without the necessity of further reference.  As used herein, the following terms shall encompass both the singular and plural and all gender thereof, and shall have the following meanings:

1.   The term "Person" means, and includes, all natural persons, corporations, partnerships, associations, governmental departments

1    and agencies and any other form or entity or whatsoever in nature.

2        2.   The term "Document" as used herein, is to be liberally

3    construed to include all originals, copies, and duplicates of any

4    writings, recordings (graphic, photographic, or phonic), letters,

5    words, numbers or their respective equivalents set down either by

6    handwriting, typewriting, printing, photostating, photographing,

7    magnetic impulse, mechanical or electronic recording or other form of

8    data compilation, as well as all photographs, X-ray films, video

9    tapes, audio tapes and motion pictures, including but not limited to,

10   correspondence, letters, telegrams, mailgrams, records, reports,

11   including medical reports, memoranda, invoices, contracts,

12   statements, writings, canceled checks, microfilms, discs, and all

13   other kinds of written or documentary personal property.

14       3.   The term "Plaintiff" means the United States of America and

15   any of its constituent agencies.

16       4.   The terms "Claimant," "Petitioner," "you," and "your" refer

17   to MEDALIST HOLDINGS, LLC..

18       5.   The term "Defendant Assets" means any and all of the assets

19   at issue in this consolidated action.

20       6.   A request for the "identity" of or that you "identify" a

21   person, constitutes a request to state:

22           a.   The present name and date of birth of such person, if

23   known, or if not known, as complete a description of such person as

24   is possible.

25           b.   The present address and telephone number, residential

26   and business, of such person, if known, or if not known, the last

27   known address and telephone number of such person and all available

28   information as to his or her whereabouts.

c.   The capacity of such person, whether individual, partnership, corporation, agency or otherwise, and to the extent that such information is known to you or within your possession or control, when the information provided refers to an organized entity, the place and date of the formation and identity of the responsible agency and officer.

d.   The relationship, if any, to the party to whom the special interrogatories are directed, e.g. employee, stockholder, director, husband, child, etc.

e.   Whether said party is under your control for purpose of you being able to produce them for a deposition without the issuance of a subpoena.

7.   A request for the "description of," or the "identification of," what you describe as a document, constitutes a request for the following:

a.   Its nature (e.g., contract, letter, tape recording, ledger, sheet, memoranda, voucher, etc.

b.   Its title, if any.

c.   A brief summary of its contents.

d.   The date and place of its preparation.

e.   If in the nature of a communication:

i.   The date and place it was sent;

ii.   The date and place it was received;

iii.   The identity of the sender; and

iv.   The identity of any person for whom the sender or receiver acted or purported to act.

v.   The identity of all persons signing, preparing, or making it, or participating in or present at its preparation, making or signing.

vi.   The identity of the person who has possession of the item, document, or photograph together with that person's name, address, telephone number and whether that person is subject to your control for purposes of a deposition subpoena.

8.   If you object to, or otherwise decline to answer any portion of any interrogatory, please provide all information required by the portion of the special interrogatory to which you do not object, or to which you do not decline to answer.  If you do not answer a special interrogatory or any portion thereof, please indicate each person or organization whom you believe has information regarding the subject of such special interrogatory.  If you object to any special interrogatory on the ground that it is too broad (i.e., that it calls for both information which is and is not relevant), please provide such information that is relevant.  If you object to a special interrogatory on the ground that providing an answer would constitute an undue burden, please provide the requested information you believe can be supplied without undertaking an undue burden.

9.   For those portions of any special interrogatory to which you object or otherwise decline to answer, state the reason for such objection or declination and identify any person having knowledge of the factual basis, if any, on which the privilege or other ground for objection is asserted.  Additionally, please identify those responses supplied from information and belief rather than from actual knowledge and specifically describe or identify the sources of such information and belief.

**INTERROGATORIES**

**INTERROGATORY NO. 1**:

State your full name, date of birth, social security number, and

driver's license number, including the state of issuance.  If you
have ever been known by any other name, state all such names and the
periods of time during which they were used.

**INTERROGATORY NO. 2**:

State your present residence address and telephone number,
together with all residence addresses and telephone numbers you have
had during the time period between January 1, 2016, and April 27,
2018.

**INTERROGATORY NO. 3**:

Identify any and all present or former spouses or domestic
partners and any and all dependents, during the time period between
January 1, 2016, and April 27, 2018, providing their names, dates of
birth, residence addresses and telephone numbers.

**INTERROGATORY NO. 4**:

Identify any and all individuals who have resided with you
during the time period between January 1, 2016, and April 27, 2018,
include their names, relationships, current addresses and telephone
numbers.

**INTERROGATORY NO. 5**:

Identify any person or entity (according to the instructions)
from whom you received any income, whether earned or unearned, during
the time period between January 1, 2016, and April 27, 2018,
including any employment earnings, gifts, bequests, gambling
winnings, judgments, settlements, monies held in trust, interest
income, proceeds from sales, loans, lines of credit, or rents,
specifying for each such source, the name and address of the person
or entity from which the income was received, the date(s) and
amount(s) received, and the reason for its payment.

**INTERROGATORY NO. 5.1**:

Identify with particularity each Defendant Asset in which you claim an interest.

**INTERROGATORY NO. 6**:

For each Defendant Asset identified in your response to Interrogatory No. 5.1, identify and describe with particularity the source of each such Defendant Asset.  Specifically, explain the source(s) or origin(s) of each such Defendant Asset and identify (according to the instructions) all documents that relate to how you acquired such Defendant Asset.

**INTERROGATORY NO. 7**:

For each Defendant Asset identified in your response to Interrogatory No. 5.1, identify and describe with particularity the intended use(s) of each Defendant Asset and identify (according to the instructions) all documents that relate to the intended use(s) of each Defendant Asset.

**INTERROGATORY NO. 8**:

For each Defendant Asset identified in your response to Interrogatory No. 5.1, state and describe with particularity the facts upon which you base your claim to each Defendant Asset and your denials of the allegations set forth in the Consolidated Complaint.
///

**INTERROGATORY NO. 9**:

For each Defendant Asset identified in your response to Interrogatory No. 5.1, identify and describe with particularity (according to the instructions) all documents that support, refute, or relate to your claim to each Defendant Asset and your denials of the allegations set forth in the Consolidated Complaint.

**INTERROGATORY NO. 10**:

State the names, current residential addresses and telephone

numbers of all persons known or believed by you to have knowledge of or information pertaining to any ownership interest that you claim in each Defendant Asset identified in your response to Interrogatory No. 5.1, and summarize what information you believe they have pertaining to any ownership interest you claim in such Defendant Asset.

**INTERROGATORY NO. 11**:

If you have ever been arrested or convicted of any crime in any country, for each arrest or conviction, please state the city, state, and country where you were arrested or convicted, the date of the arrest or conviction, the offense, the court and case number, the sentence received, and the sentence served, and identify all documents which relate to such arrest or conviction.

**INTERROGATORY NO. 12**:

If you have ever been a party in any civil, administrative or criminal proceeding, lawsuit and/or action (collectively referred to as "action"), for each action, please state the city, state, and country where the action was filed, the date of the initial filing of the action, the nature of the action, the court and case number, whether you were a plaintiff or defendant, and the outcome of the action, and identify all documents which relate to each such action(s).

**INTERROGATORY NO. 13:**

For each Defendant Asset identified in your response to Interrogatory No. 5.1, identify and describe with particularity the manner in which you acquired any asserted "interest" in each such Defendant Asset, including but not limited to the date(s) on which you acquired an "interest," the person(s) involved in conveying that "interest" or settling that "interest" in your favor, and the source(s) or origin(s) of the funds used to acquire your purported

"interest."

**INTERROGATORY NO. 14:**

For each Defendant Asset identified in your response to Interrogatory No. 5.1, identify and describe with particularity (according to the instructions) all documents which support, refute, or relate to your contention that you have an "interest" in such Defendant Asset.

**INTERROGATORY NO. 15:**

For each Defendant Asset identified in your response to Interrogatory No. 5.1, identify and describe with particularity any and all interests, legal or equitable, that persons or entities other than you hold in such Defendant Asset.

**INTERROGATORY NO.16:**

For each Defendant Asset identified in your response to Interrogatory No. 5.1, identify and describe with particularity the intended use(s) of such Defendant Asset at the time you acquired an "interest" in it, including whether and how you intended to use the Defendant Asset, and explain any uses you actually made of each such Defendant Asset since allegedly acquiring that "interest."

**INTERROGATORY NO. 17:**

For the period between January 1, 2016, and April 27, 2018, describe with particularity your relationship with each and every entity and person listed below (excluding you):

1.    Anderson, Jill

2.    Becker, John

3.    Brunst Family Trust

4.    Brunst, John

5.    Brunst, Mary Ann

6.    Casa Bahia for San Francisco, LLC.

1       7.   Hawkins, Anne

2       8.   Lacey, Michael

3       9.   Larkin, James

4      10.   Larkin, John

5      11.   Larkin, Kathleen

6      12.   Larkin, Margaret

7      13.   Larkin, Quinn

8      14.   Larkin, Rose

9      15.   Larkin, Ramon

10     16.   Larkin, Troy

11     17.   Spear, Ellon

12     18.   Spear, Natasha

13     19.   Spear, Scott

14     20.   Talley, Alyson

15     21.   Medalist Holdings, LLC.

16     22.   Leeward Holdings, LLC.

17     23.   Camarillo Holdings, LLC.

18     24.   Vermillion Holdings, LLC.

19     25.   Cereus Properties, LLC.

20     26.   Shearwater Investments, LLC.

21     27.   Broadway Capital, LLC.

22

23   **INTERROGATORY NO. 18**:

24       For the period between January 1, 2016, and April 27, 2018, and

25   for each Defendant Asset identified in your response to Interrogatory

26   No. 5.1, identify and describe with particularity what interest each

27   and every entity and person listed in your response to Interrogatory

28   No. 17 has or had in each Defendant Asset which you claim an

     interest.

**INTERROGATORY NO. 19:**

For the period between January 1, 2016, and April 27, 2018, identify and describe with particularity all facts related to your dominion and/or control over each Defendant Asset identified in your response to Interrogatory No. 5.1 and describe any and all instances in which you exercised any such control.

**INTERROGATORY NO. 20:**

For each Defendant Asset identified in your response to Interrogatory No. 5.1, state and describe with particularity any and all facts and legal bases supporting your contention that you have "standing to contest" the forfeiture of such Defendant Asset.

///

///

**INTERROGATORY NO. 21**:

Identify all documents utilized and relied upon to respond to Special Interrogatories 1 through 20.  For each such document, identify the person with custody of those documents, including their name, address and telephone number.

DATED:  February 12, 2020        Respectfully submitted,

                                 NICOLA T. HANNA
                                 United States Attorney
                                 BRANDON D. FOX
                                 Assistant United States Attorney
                                 Chief, Criminal Division
                                 STEVEN R. WELK
                                 Assistant United States Attorney
                                 Chief, Asset Forfeiture Section

                                      */s/ John J. Kucera*
                                 JOHN J. KUCERA
                                 DAN G. BOYLE
                                 Assistant United States Attorney
                                 Asset Forfeiture Section

                                 Attorneys for Plaintiff
                                 UNITED STATES OF AMERICA

**<u>VERIFICATION</u>**

I, _____, certify and declare that I am the claimant in this action, that I have read the foregoing CLAIMANT MEDALIST HOLDINGS, LLC.'S RESPONSES TO PLAINTIFF'S FIRST SET OF SPECIAL INTERROGATORIES and know the contents thereof, and the responses are true and correct to my knowledge, information and belief.

I declare under penalty of perjury under the laws of the State of _____ that the foregoing is true and correct.

Executed on _____, 2020 in _____, _____.

_____
(printed name)

**PROOF OF SERVICE**

I am over the age of 18 and not a party to the within action.  I am employed by the Office of the United States Attorney, Central District of California.  My business address is 312 North Spring Street, 14th Floor, Los Angeles, CA 90012.

On **February 12, 2020**, I served a copy of: **CLAIMANT MEDALIST HOLDINGS, LLC.'S RESPONSES TO PLAINTIFF'S FIRST SET OF SPECIAL INTERROGATORIES** upon each person or entity named below by enclosing a copy in an envelope addressed as shown below and placing the envelope for collection and mailing on the date and at the place shown below following our ordinary office practices, or by e-mail.

TO: Medalist Holdings, LLC.
     c/o David Wiechert
     Wiechert, Munk, and Goldstein, PC
     27136 Paseo Espada, Suite B1123
     San Juan Capistrano, CA 92675
     dwiechert@aol.com

Daniel Quigley
5425 E. Broadway Blvd, Ste 352
Tucson, AZ 85718
quigley@djqplc.com

 **X**   I am readily familiar with the practice of this office for collection and processing correspondence for mailing.  On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service in a sealed envelope with postage fully prepaid.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on: **February 12, 2020** at Los Angeles, California.

_____/s/ *k. sor*_____
KRYSTIE SOR

# EXHIBIT B

**Whitney Bernstein**

| | |
|---|---|
| **From:** | Whitney Bernstein |
| **Sent:** | Tuesday, August 18, 2020 4:12 PM |
| **To:** | Boyle, Daniel (USACAC) |
| **Cc:** | Rapp, Kevin (USAAZ) |
| **Subject:** | RE: 18-cv-8420 - Consolidated Briefing Schedule |
| **Attachments:** | 8420 - [118] Stip and Request for Order re MTD Briefing and Hearing Schedule.PDF |

Hi Dan,

Thank you for your note.  We appreciate that the huge number of assets the government has alleged for forfeiture (and the numerous claimants for given assets) adds complication in this matter.  But that is the government's doing, caused by its theory that all assets and funds of the claimants, derived from any source at any time, are subject to forfeiture.

In any event, each of the forfeiture cases the government has instituted are separate, and the pending motion to dismiss applies separately to each.  The government, of course, cannot move to strike under Rule G(8)(c)(i) the claims of claimants it admits have standing.  Thus, if the government intends to move the Court to defer consideration of the outstanding motions to dismiss, we ask that you separately identify to the Court the defendant assets, underlying case numbers, and respective claimants as to which you do and do not challenge standing.

As to other claimants that you should consult, I'd think that you should be in touch with everyone who is a party to the attached stipulation and promise regarding the motion to dismiss briefing.  My correspondence is only on behalf of Claimants James Larkin, Michael Lacey, Scott Spear, John Brunst, and their entities after having conferred with their respective counsel.

Thanks,

Whitney

**Whitney Z. Bernstein**
**Attorney** | Orange County
Bienert | Katzman PC
Website | vCard | Profile

**From:** Boyle, Daniel (USACAC) <Daniel.Boyle2@usdoj.gov>
**Sent:** Tuesday, August 18, 2020 11:07 AM
**To:** Whitney Bernstein <wbernstein@bienertkatzman.com>
**Cc:** Rapp, Kevin (USAAZ) <Kevin.Rapp@usdoj.gov>
**Subject:** RE: 18-cv-8420 - Consolidated Briefing Schedule

Whitney-

Thanks for your response. As I mentioned, we're doing our best to assemble an appendix of all of the claims we intend to move to strike, but considering the length of the rog responses, the sheer number of claims, and the current briefing deadlines, we've attempted to give you as clear an indication as possible of the scope of our contemplated motion, so that we can bring a timely application to the court. As I stated in my last email, we intend to move to strike the claimants' "liened asset" claims as stated in their rog responses, not the "owned asset" claims, and we're approaching

1

"other assets" on a case-by-case basis.  These are the claimants' own categories, so I expect all claimants should all be well aware of which of their claims fall into which of their own categories.

While I appreciate your offer to confer about whether the parties can eliminate issues and avoid or reduce motions practice, the claimants have asserted the same formulation to literally hundreds, if not thousands of "liened asset" claims, so trying to proceed claim-by-claim seems simply unworkable, and I assume that's why the claimants created the "liened asset"/"owned asset" categories the government intends to adopt for this purpose. To be clear, at this time we are not planning to make a discovery motion to compel further responses on the Rule G interrogatories; we are moving to strike for lack of standing in the form of a motion for partial summary judgment.

We're always available to meet and confer, or I can get on a call anytime. In light of the current briefing schedule deadlines, however, I will need to file an application to suspend the MTD briefing by later today to give you time to respond and the Court time to consider the application.  From your email it appears that we disagree on whether suspension is appropriate, so I will note the claimants' opposition in our application.

Please let me know if there's anything else you'd like me to represent to the court, or if there are any claimants who need to be consulted further.

As a final note, with the case transfer and John's departure, I'm still trying to determine if we have actually received all of the responses to our interrogatories. I'm confirming now, but I'll follow if there's any issues.

-Dan Boyle
213-894-2426

---

**From:** Whitney Bernstein <wbernstein@bienertkatzman.com>
**Sent:** Monday, August 17, 2020 6:12 PM
**To:** Boyle, Daniel (USACAC) <DBoyle@usa.doj.gov>
**Cc:** Rapp, Kevin (USAAZ) <KRapp@usa.doj.gov>
**Subject:** RE: 18-cv-8420 - Consolidated Briefing Schedule

Hi Dan,

We appreciate your response re the government's general thinking about a possible Rule G(8)(c)(i) standing motion.  You indicate that you're still working on determining "exactly which claims to which assets [the government will] move to strike."  Claimants need this information to assess and be able to respond to the government's positions.  If there are opportunities to clarify or simplify claims as to particular defendant assets, we'd be interested in working toward doing that.  Thus, please identify:

1. **Each defendant asset** as to which the government seeks to assert a Rule G(8)(c)(1) motion, and
2. **Each claimant** as to which the government plans to challenge standing regarding each defendant asset (and, it would also be helpful to know, conversely, all claimants whose interests in each defendant asset the government does not challenge), and
3. **The basis for each challenge**, including specifically whether the government is challenging statutory standing or Article III standing (i.e., whether you are proposing a motion under Rule G(8)(c)(i)(A) or (B) – or both – for each asset and each respective claimant).  In particular, if you are proposing a motion based on the adequacy of given claimant's discovery responses, we should identify such issues to address them separately.

If you'll give us the needed specifics so we can understand the government's positions with respect to the claims it intends to challenge, we can confer about whether the parties can eliminate issues and avoid or reduce motions practice, and then we can discuss scheduling with respect to those assets.  We're also happy to get on a call this week as soon as possible to discuss this and the information that claimants need.

Further, we disagree with your characterization of the requirements of Rule G(8)(c)(ii)(a).  The rule does not permit the government to avoid responding to any motion to dismiss just because it is contesting some claimant's standing as to some defendant asset.  You have said that the government does not intend to challenge the standing of many claimants as to many of the defendant assets.  For those claimants and those assets where standing is not in dispute, any motion to strike will have no potential to moot the motion to dismiss as to those claimants and those assets where standing is not in dispute and the government will be obliged to respond to the motion to dismiss as to those claimants and assets.

Finally, thank you for passing along John's kind words, and please let him know that I wish him all the best in private practice.

Thanks,

Whitney


**Whitney Z. Bernstein**

**Attorney** | Orange County

Bienert | Katzman PC
Website | vCard | Profile

**From:** Boyle, Daniel (USACAC) <Daniel.Boyle2@usdoj.gov>
**Sent:** Saturday, August 15, 2020 2:10 PM
**To:** Whitney Bernstein <wbernstein@bienertkatzman.com>
**Cc:** Rapp, Kevin (USAAZ) <Kevin.Rapp@usdoj.gov>
**Subject:** RE: 18-cv-8420 - Consolidated Briefing Schedule

Whitney-

Thanks for getting back to us on this.

We're still assembling a full appendix of exactly which claims to which assets we expect to move to strike, but in summary, we presently intend to move to strike those claims generally described in claimants' interrogatory responses to "liened assets" or in certain cases, "other assets." Put another way, we intend to move to strike those claims advanced by the claimants premised on the "lien" theory offered in the claimants' interrogatory responses. See, e.g., J. Larkin Rule G Interrogatory Responses, at 29. Without prejudice to any future motions, we do not presently intend to move to strike any allegedly "owned" asset claims in this motion. See, e.g., J. Larkin Rule G Interrogatory Responses, at 13. Please note this motion would include "lien"-theory claims filed after the rog responses were served. See ECF Nos. 126-131.  As such, I expect this motion to strike would at least implicate claims advanced by Claimants J. Larkin, T. Larkin, R. Larkin, Brunst,  Spear, Camarillo Holdings, LLC, Cereus Properties, LLC, Leeward Holdings, LLC, Medalist Holdings, Inc., Shearwater Investments, LLC, and Vermillion Holdings, LLC.

While I'm not sure if a meet-and-confer is required for a motion to strike under these particular circumstances, I'm happy to meet-and-confer telephonically at a time convenient for you.

Finally an FYI- as of yesterday John has officially made the move over to the dark side (i.e. private practice), so I've dropped him off this e-mail. While I'm sure he has or will mention it, he wanted me to pass along that he very much appreciated your professionalism and enjoyed working across from you on these matters.

Regards,
-AUSA Dan Boyle
213-894-2426

**From:** Whitney Bernstein <wbernstein@bienertkatzman.com>
**Sent:** Friday, August 14, 2020 5:02 PM
**To:** Boyle, Daniel (USACAC) <DBoyle@usa.doj.gov>
**Cc:** Kucera, John (USACAC) <jkucera@usa.doj.gov>
**Subject:** RE: 18-cv-8420 - Consolidated Briefing Schedule

Hi Dan,

We need to know which claimants, which claims, and as to which assets you contend we don't have standing before we are able to give a position as to further briefing, schedules, extensions, etc.  Can you please let us know this ASAP and by Monday so we can confer and get back to you?

Thank you,

Whitney


**Whitney Z. Bernstein**
**Attorney** | Orange County

Bienert | Katzman PC
Website | vCard | Profile

**From:** Boyle, Daniel (USACAC) <Daniel.Boyle2@usdoj.gov>
**Sent:** Friday, August 14, 2020 1:25 PM
**To:** Whitney Bernstein <wbernstein@bienertkatzman.com>
**Cc:** Kucera, John (USACAC) <John.Kucera@usdoj.gov>
**Subject:** RE: 18-cv-8420 - Consolidated Briefing Schedule

Whitney-

We're still sorting through the responses, but I believe we will only be seeking to strike some of the claims, not all claims by all claimants.

-Dan

**From:** Whitney Bernstein <wbernstein@bienertkatzman.com>
**Sent:** Friday, August 14, 2020 12:55 PM
**To:** Boyle, Daniel (USACAC) <DBoyle@usa.doj.gov>
**Cc:** Kucera, John (USACAC) <jkucera@usa.doj.gov>
**Subject:** RE: 18-cv-8420 - Consolidated Briefing Schedule

Hi Dan,

Are you moving to strike as to all claims or only as to some?

Thank you,

Whitney

**Whitney Z. Bernstein**

**Attorney** | Orange County

Bienert | Katzman PC

Website | vCard | Profile

---

**From:** Boyle, Daniel (USACAC) <Daniel.Boyle2@usdoj.gov>
**Sent:** Friday, August 14, 2020 11:43 AM
**To:** Whitney Bernstein <wbernstein@bienertkatzman.com>
**Cc:** Kucera, John (USACAC) <John.Kucera@usdoj.gov>
**Subject:** 18-cv-8420 - Consolidated Briefing Schedule

Whitney-

We've now had time to review the claimants' Rule G special interrogatory responses. Based on these responses and the claims filed, the government presently intends to move to strike under Rule G(8)(c)(i)(B). Because we intend to rely on the claimants' rog responses, I think this will be presented as a motion for partial summary judgment, rather than moving to strike on the pleadings alone, see Rule G(8)(c)(ii)(B), so I'd like to set a briefing schedule, building in some time for a meet-and-confer and agreement on any statement of undisputed facts.

My proposal:

- Motion to Strike to be filed no later than September 28, 2020
- Opposition(s) due no later than October 26, 2020
- Reply due November 9, 2020.

I'll leave up to claimants whether they choose to file individual oppositions, or do a combined filing. I don't believe a substantial L.R. 56-1 statement of facts will be needed here, but I'll aim to get you our proposed uncontroverted facts no later than September 21, 2020. I recognize that this briefing will be substantial due to the large number of claims at issue here, so I'm open to discussing more time if claimants need it.

Finally, under Rule G(8)(c)(ii)(a), any motion to strike must be resolved prior to any other dispositive motions, so I intend to ask the court that all dismissal briefing be stayed until the motion to strike is decided. Please let me know if your clients agree.

I'm happy to speak by phone today or next week. If we can't come to an agreement on a briefing schedule, I would like to file an application for the above schedule mid-week.

Regards,

**Dan G. Boyle** | **Assistant United States Attorney**
United States Attorney's Office | Central District of California
1400 United States Courthouse | 312 North Spring Street | Los Angeles, California 90012
T: 213.894.2426| F: 213.894.0141 | **daniel.boyle2@usdoj.gov**

# EXHIBIT C



# CLAIM FORM

**YOU MUST COMPLETE <u>ALL</u> PARTS OF THIS FORM FOR THE ASSETS YOU ARE CLAIMING.**

**Note**: There is no legal form or format required for filing a claim; this document is provided for your convenience. Please visit https://www.forfeiture.gov/FilingClaim.htm for more specific guidance on filing your claim with the appropriate seizing agency.

**Frivolous Claim Statement:** If a court finds that a claimant's assertion of an interest in property was frivolous, the court may impose a civil fine. Title 18 United States Code, Subsection 983(h). A false statement or claim may subject a person to criminal prosecution under Title 18 United States Code, Sections 1001 and 1621.

**Privacy Act Notice:** The Department of Justice is collecting this information for the purpose of processing your claim. Providing this information is voluntary; however, the information is necessary to process your application. Information collected is covered by Privacy Act System of Records Notice Department of Justice (DOJ), DOJ-002-DOJ Computer Systems Activity & Access Records, Federal Register (71 FR 29170). This information may be disclosed to contractors when necessary to accomplish an agency function, to law enforcement when there is a violation or potential violation of law, or in accordance with other published routine uses. For a complete list of routine uses, see the system of records notice listed above.

# SECTION I - CONTACT INFORMATION

| CLAIMANT INFORMATION | |
|---|---|
| **Claimant/Contact Name:** (Last, First)<br>Larkin, James | |
| **Business/Institution Name:** (if applicable) | **Prisoner ID:** (if applicable) |
| **Address:** (Include Street, City, State, and Zip Code)<br>███████████<br>█████████████ | |
| **Social Security Number/Tax Identification Number:** (Enter N/A if you do not have one)<br>████████ | |
| **Phone:** (optional) | **Email:** (optional) |

| ATTORNEY INFORMATION (if applicable) | |
|---|---|
| **Attorney Name:** (Last, First)<br>Bisconti, Anthony | |
| **Attorney Title:** | |
| **Firm Name:** (if applicable)<br>Bienert, Miller & Katzman, PLC | |
| **Attorney Address:** (Include Street, City, State, and Zip Code)<br>903 Calle Amanecer<br>Ste 350<br>San Clemente, CA 92673 | |
| **Are you an attorney filing this claim on behalf of your client?** | [X] Yes   [ ] No |
| **Attorney Phone:** (optional)<br>9493693700 | **Attorney Email:** (optional)<br>tbisconti@bmkattorneys.com |

*If any of this information changes, you are responsible for notifying the agency of the new information.*

# SECTION II - ASSET LIST

*List each asset ID and asset description that you are claiming.*

| # | Asset ID | Asset Description |
|---|---|---|
| 1 | 18-USP-001895 | Financial Instrument - Wire Transfer -  Value = $65,000.00, SN: ****4455 seized by the USPIS on July 18, 2018 in Dallas, TX. Items described as: Financial Instrument - Wire Transfer; Financial Instrument - Wire Transfer. |
| 2 | 18-USP-001980 | Financial Instrument - Wire Transfer -  Value = $5,534.54, SN: ****7177 seized by the USPIS on August 9, 2018 in Dallas, TX. Items described as: Financial Instrument - Wire Transfer; Financial Instrument - Wire Transfer; Financial Instrument - Wire Transfer. |
| 3 | 18-USP-002085 | Financial Instrument - Checking and Savings Accounts -  Value = $407,686.14, SN: Unknown seized by the USPIS on July 19, 2018 in Birmingham, AL. |

## SECTION III - INTEREST IN PROPERTY

*Identify your interest in each of the assets you are claiming. If you are filing for multiple assets and the responses are not the same for each asset, please print out multiple copies of this page to submit with the claim. If you have documentation that supports your interest in the claimed assets (e.g., bill of sale, retail installment agreements, contracts, titles or mortgages), please include copies of the documents with the submission of the claim.*

| INTEREST IN PROPERTY INFORMATION | |
|---|---|
| **Asset ID** | **Asset Description** |
| 18-USP-001895 | Financial Instrument - Wire Transfer -  Value = $65,000.00, SN: ****4455 seized by the USPIS on July 18, 2018 in Dallas, TX. Items described as: Financial Instrument - Wire Transfer; Financial Instrument - Wire Transfer. |
| 18-USP-001980 | Financial Instrument - Wire Transfer -  Value = $5,534.54, SN: ****7177 seized by the USPIS on August 9, 2018 in Dallas, TX. Items described as: Financial Instrument - Wire Transfer; Financial Instrument - Wire Transfer; Financial Instrument - Wire Transfer. |
| 18-USP-002085 | Financial Instrument - Checking and Savings Accounts -  Value = $407,686.14, SN: Unknown seized by the USPIS on July 19, 2018 in Birmingham, AL. |

**In the space below, please explain why you have a valid, good faith, and legally recognizable interest in this asset:**

James Larkin has a valid, good faith, and legally cognizable interest in the assets assigned Asset ID Numbers 18-USP-001895 and 18-USP-001980, to the extent those assets were owned in whole or in part by Carl Ferrer and/or Backpage.com, LLC, or any entities related to Backpage.com, LLC (the "Ferrer/BP Assets"), including but not limited to Atlantische Bedrigven C.V. and/or UGC Tech Group C.V.  James Larkin holds an ownership interest in an entity that, directly or indirectly, has held enforceable first-priority security intersts in the Ferrer/BP Assets since approximately April 22, 2015.  The entity acquired the security interests in exchange for a loan extended by that entity to Atlantische Bedrigven C.V. and UGC Tech Group C.V. in or about April 2015.  Mr. Larkin also has the right to advancement and indemnification from Atlantische Bedrigven C.V. and UGC Tech Group C.V. pursuant to the loan agreements and related purchase agreements, which advancement and indemnification obligations are also secured by the first priority security interests in the above-listed assets.  These assets do not contain or constitute criminal proceeds.  James Larkin has a valid, good faith, and legally cognizable interest in the asset assigned Asset ID Number 18-USP-002085 because the asset is held in the name of a company in which Mr. Larkin holds a direct or indirect ownership interest. This asset does not contain or constitute criminal proceeds.

**In the space below, please list any documents you are including in support of your interest in the asset(s). If none are included, please explain why.**

* We intend to challenge this forfeiture through the judicial process and will submit relevant documentation at the appropriate time. - Claim Form Response No 2.pdf

## SECTION IV - RECOVERY OF LOSS

No Recovery of Loss exists.

## SECTION V - DECLARATION AND REPRESENTATION

*The following declaration must be completed by the claimant.*

I attest and declare under penalty of perjury that my claim is not frivolous and the information provided in support of my claim is true and correct to the best of my knowledge and belief.

_____
**Signature**

Larkin, James
**Printed Name**

10-2-2018
_____
**Date**

### Sworn Notice of Representation

*This section must be completed only by claimants who are represented by an attorney.*

I have retained the above-named attorney to represent me in this matter. I have reviewed the foregoing claim and found that its contents are accurate to the best of my information and belief. I declare under penalty of perjury that the foregoing information is true and correct.

_____
**Signature**

Larkin, James
**Printed Name**

10-2-2018
_____
**Date**

If a court finds that a claimant's assertion of an interest in property was frivolous, the court may impose a civil fine. Title 18 United States Code, Subsection 983(h). A false statement or claim may subject a person to criminal prosecution under Title 18 United States Code, Sections 1001 and 1621.

**Attached Document List:**

1  Thomas H. Bienert, Jr. (CA State Bar No. 135311)
2  Whitney Z. Bernstein (CA State Bar No. 304917)
   **BIENERT | KATZMAN PC**
3  903 Calle Amanecer, Suite 350
   San Clemente, California 92673
4  Telephone: (949) 369-3700
5  Facsimile:  (949) 369-3701
   Email: tbienert@bienertkatzman.com
6         wbernstein@bienertkatzman.com
7  *Counsel for James Larkin*

8              UNITED STATES DISTRICT COURT

9       CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

10

11 United States of America,                Case No. 2:18-cv-08749-RGK (PJW)

12                  Plaintiff,
           v.                               **JAMES LARKIN, TROY**
13                                          **LARKIN, AND RAMON**
                                            **LARKIN'S VERIFIED CLAIM**
14 Any And All Funds Seized From Rabo       **AND STATEMENT OF**
   Bank Account '2452,                      **INTEREST IN CERTAIN**
15                                          **DEFENDANT PROPERTY**
16                  Defendant.

17

18 <u>**JAMES LARKIN, TROY LARKIN, AND RAMON LARKIN'S VERIFIED**</u>
19      <u>**CLAIMS AND STATEMENTS OF INTEREST IN CERTAIN**</u>
                  <u>**DEFENDANT PROPERTY**</u>
20

21         These Verified Claims are being filed at this time in accordance with this Court's

22 May 10, 2019 order (Dkt. 32).  This case is stayed pursuant to this Court's October 23,

23 2018 order (Dkt. 10) and April 30, 2019 order (Dkt. 23).  The Court's issuance of the

24 same stay order in C.D. Cal. case no. 18-CV-6742-RGK is the subject of an ongoing

25 Ninth Circuit appeal (No. 18-56455).  Given the pending appeal of the stay order in

26 that case and the active stay of this case, Claimants respectfully request that these

27 Verified Claims be held in abeyance until such time as the stay is lifted.

28         Pursuant to 18 U.S.C. § 983(a)(4)(A) and Supplemental Rule G(5)(a) of the

1   Federal Rules of Civil Procedure, and this Court's May 10, 2019 order (Dkt. 32),

2   Claimants James Larkin ("Larkin"), Troy Larkin ("T. Larkin"), and Ramon Larkin ("R.

3   Larkin") (collectively, the "Claimants") hereby submit these Verified Claims asserting

4   ownership interests in seized funds.

5       On October 5, 2018, a Verified Complaint for Forfeiture (the "Complaint") was

6   filed in the United States District Court for the Central District of California, Western

7   Division, by the United States of America seeking the forfeiture of the following

8   (collectively referred to as the "Subject Funds"):

9       • Any And All Funds Seized From Rabo Bank Account '2452.

10  Dkt. 1.

11      Claimants hereby assert their ownership interests in the entirety of the Subject

12  Funds.  Claimants are stockholders in Medalist Holdings, Inc., a Delaware corporation

13  ("Medalist"), whose wholly-owned subsidiaries include Leeward Holdings, LLC,

14  Camarillo Holdings, LLC, Vermillion Holdings, LLC, Cereus Properties, LLC, and

15  Shearwater Investments, LLC.

16      Claimants are third-party beneficiaries of a series of contracts entered into in

17  April 2015 among the Medalist subsidiaries and:  Atlantische Bedrijven C.V. ("ABC")

18  and UGC Tech Group C.V. ("UGC") (collectively, "Borrowers"); numerous affiliates

19  of Borrowers, including Backpage.com, LLC (collectively, "Pledgors"); and Carl A.

20  Ferrer and other other affiliates of Borrowers (collectively, "Guarantors").  Claimants

21  have the right to advancement and indemnification from ABC and UGC under those

22  agreements, which advancement and indemnification obligations are guaranteed by

23  Pledgors and Guarantors.  Those obligations are secured by security interests in the

24  assets of Pledgors (the "Collateral").  On information and belief, the Subject Funds are

25  a part of the Collateral.  On information and belief, the sums owed for advancement

26  and indemnification exceed the value of the Collateral.

27      The security interests in the Collateral securing the obligations to Claimants are

28

2

legally recognizable interests in the Subject Funds, giving Claimants a superior right, title, and interest in the Subject Funds over any and all interests asserted by the government in the Subject Funds. Under any applicable community property principles, Claimant James Larkin's legal spouse, Margaret Larkin, also assert a superior right, title, and interest in the Subject Funds superior to the government's interest. Accordingly, Claimants, and Margaret Larkin where applicable, have a superior right, title, and interest in the Subject Funds over any and all interest asserted by the government in such funds.

Pursuant to Supplemental Rule E(8) of the Federal Rules of Civil Procedure, Claimants expressly limit their appearance to asserting and defending their claims. Claimants reserve all rights to challenge the *in rem* jurisdiction of this Court and the propriety of venue of this action.

Dated: May 23, 2019

Respectfully submitted,

*s/Whitney Z. Bernstein*
Whitney Z. Bernstein
Thomas H. Bienert, Jr.
BIENERT | KATZMAN PC
Attorneys for James Larkin

3

## **VERIFICATION OF CLAIM**

I, James Larkin, pursuant to 18 U.S.C. § 1746, declare under penalty of perjury that the foregoing is true and correct.

Executed on

James Larkin

**VERIFICATION OF CLAIM**

I, Troy Larkin, pursuant to 18 U.S.C. § 1746 and the laws of the United States of America, declare under penalty of perjury that the foregoing is true and correct.

Executed on ___5-23-19___          _____
                                   Troy Larkin

JAMES LARKIN, TROY LARKIN, AND RAMON LARKIN'S VERIFIED CLAIMS AND
STATEMENTS OF INTEREST IN CERTAIN DEFENDANT PROPERTY

## **VERIFICATION OF CLAIM**

I, Ramon Larkin, pursuant to 18 U.S.C. § 1746 and the laws of the United States of America, declare under penalty of perjury that the foregoing is true and correct.

Executed on ___05/23/2019___                    _____

                                                                Ramon Larkin

JAMES LARKIN, TROY LARKIN, AND RAMON LARKIN'S VERIFIED CLAIMS AND
STATEMENTS OF INTEREST IN CERTAIN DEFENDANT PROPERTY

## CERTIFICATE OF SERVICE

I declare that I am a citizen of the United States and I am a resident and employed in San Clemente, California; that my business address is 903 Calle Amanecer, Suite 350, San Clemente, California 92673; that I am over the age of 18 and not a party to the above-entitled action.

I am employed by a member of the United States District Court for the Central District of California, and at whose direction I caused service of the foregoing document entitled **JAMES LARKIN, TROY LARKIN, AND RAMON LARKIN'S VERIFIED CLAIMS AND STATEMENTS OF INTEREST IN CERTAIN DEFENDANT PROPERTY** on all interested parties as follows:

**[X]   BY ELECTRONIC TRANSMISSION:** by electronically filing the foregoing with the Clerk of the District Court using its CM/ECF System pursuant to the Electronic Case Filing provision of the United States District Court General Order and the E-Government Act of 2002, which electronically notifies all parties in this case.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on May 23, 2019 at San Clemente, California.

*/s/ Garrison Giali*
Garrison Giali

JAMES LARKIN, TROY LARKIN, AND RAMON LARKIN'S VERIFIED CLAIMS AND STATEMENTS OF INTEREST IN CERTAIN DEFENDANT PROPERTY

# EXHIBIT D

# UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

## EXHIBIT LIST   ---   CRIMINAL

☐ Motion to Suppress          ☐ Non-Jury Trial          ☒ Jury Trial

USA vs. Michael Lacey, et al.                    CR-18-422-PHX-(BSB)
Last, First, Middle Initial                      Year-Case No-Deft No-Judge

☒ GOVERNMENT                    ☐ DEFENDANT

| Exhibit No. | Date | | Description |
| | Marked For Evidence | Admitted In Evidence | |
| --- | --- | --- | --- |
| 1. | | | Backpage 2015 Sales Agreements - Sales Vermillion Holdings, LLC and Shearwater Investments, LLC |
| 2. | | | Backpage 2015 Sales Agreements – Promissory Note (UGC Foreign Operations) Vermillion Holdings, LLC and Shearwater Investments, LLC $525,700,000.00 DOJ-BP-0004727855-72 |
| 3. | | | Backpage 2015 Sales Agreements – Promissory Note (UGC Foreign Operations) Vermillion Holdings, LLC and Shearwater Investments, LLC $77,005,592.50 |
| 4. | | | Backpage 2015 Sales Agreements – Promissory Note Shearwater Investments, LLC and Atlantische dated June 1, 2015 $530,236,194.00 Bates DOJ-BP-0002086731 |
| 5. | | | Backpage 2015 Sales Agreements – Dartmoor Holdings, LLC |
| 6. | | | Backpage 2015 Sales Agreements – Assignment of License Agreement between Vermillion, LLC and UGC Tech Group C.V. |
| 6.. | | | Backpage 2015 Sales Agreements – Collateral Assignment of Membership Interests with Vermillion Holdings and Shearwater Investments |
| 7. | | | Backpage 2015 Sales Agreements – Collateral Assignment of Membership Interests with Vermillion Holdings and Shearwater Investments; Ferrer |
| 8. | | | Backpage 2015 Sales Agreements – Contribution and Exchange Agreement; CF and Amstel |
| 9. | | | Backpage 2015 Sales Agreements – Contribution Agreement between CF and Amstel |
| 10. | | | Backpage 2015 Sales Agreements – Contribution Agreement between Lupine Holdings, LLC and Amstel River Holdings, LLC |

| Exhibit No. | Date | | Description |
|---|---|---|---|
| | Marked For Evidence | Admitted In Evidence | |
| 11. | | | Backpage 2015 Sales Agreements – Contribution Agreement between Lupine Holdings, LLC and Kickapoo River Investments, LLC and Atlantische Bedrijven C.V. |
| 12. | | | Backpage 2015 Sales Agreements – Distribution Agreement Dartmoor and Vermillion |
| 13. | | | Backpage 2015 Sales Agreements – Contribution Agreement between Camarillo and Vermillion DOJ-BP-0004792387-89 |
| 14. | | | Backpage 2015 Sales Agreements – Distribution Agreement (membership interest in Remnant Corp. LLC) |
| 15. | | | Backpage 2015 Sales Agreements – Distribution Agreement (membership interest in Broadway Capital Corp. LLC) |
| 16. | | | Backpage 2015 Sales Agreements – Distribution Agreement (shares in Backpage Enterprises Inc. – Step 1) |
| 17. | | | Backpage 2015 Sales Agreements – Earn-out Agreement between Vermillion and Atlantische DOJ-BP-0004734177-208 DOJ-BP-0004728071-102 |
| 18. | | | Backpage 2015 Sales Agreements – Employment Agreement between Website Technologies, LLC and CF DOJ-BP-0002086947-8 |
| 19. | | | Backpage 2015 Sales Agreements – Guaranty (Ferrer Parties Guaranty –BP US Operations) between Vermillion and Shearwater |
| 20. | | | Backpage 2015 Sales Agreements – Guaranty (Subsidiary Guaranty – Backpage US Operations) between Vermillion and Shearwater |
| 21. | | | Backpage 2015 Sales Agreements – Intellectual Property License Backpage.com LLC and Vermillion |
| 22. | | | Backpage 2015 Sales Agreements – Intellectual Property Security Agreement |
| 23. | | | Backpage 2015 Sales Agreements – Loan Agreement (UGC Foreign Operations) between UGC Tech Group and Vermillion DOJ-BP-0004734687-751 DOJ-BP-0002086840-6905 |
| 24. | | | Backpage 2015 Sales Agreements – Loan Agreement (Backpage US Operations) between Atlantische and Vermillion DOJ-BP-0004734075-4140 DOJ-BP-0004727964-8029 |
| 25. | | | Backpage 2015 Sales Agreements - Membership Interest Assignment Agreement between Vermillion and Atlantische DOJ-BP-0004728032-65 |
| 26. | | | Backpage 2015 Sales Agreements – Membership Interest Purchase Agreement with Vermillion, Dartmoor, ad Atlantische |

| Exhibit No. | Date | | Description |
|---|---|---|---|
| | Marked For Evidence | Admitted In Evidence | |
| | | | DOJ-BP-0004734880-5011 |
| 27. | | | Backpage 2015 Sales Agreements – Post-Closing Agreement (BP US Operatons) between Atlantische and Shearwater |
| 28. | | | Backpage 2015 Sales Agreements – Post-Closing Agreement (UGC Foreign Operatons) between UGC and Shearwater |
| 29. | | | Backpage 2015 Sales Agreements – Purchase and Sale Agreement between Vermillion and UGC DOJ-BP-0004734752-879 |
| 30. | | | Backpage 2015 Sales Agreements – Resignation between Vermillion, Dartmoor, and Atlantische |
| 31. | | | Backpage 2015 Sales Agreements – Security Agreement (BP US Operations- Subsidiary Guarantors) between Vermillion and Atlantische |
| 32. | | | Backpage 2015 Sales Agreements – Security Agreement (BP US Operations- Borrower) Atlantische |
| 33. | | | Backpage 2015 Sales Agreements – Security Agreement (UGC Foreign Operations- Subsidiary Guarantors) between Vermillion and UGC DOJ-BP-0002711393-411 |
| 34. | | | Backpage 2015 Sales Agreements – Security Agreement (UGC Foreign Operations- Subsidiary Guarantors) dated April 22, 2015 between Vermillion and UGC Bates DOJ-BP-0002711393-411 |
| 35. | | | Backpage 2015 Sales Agreements -  Vermillion Holdings, LLC Sole Member and Manager Certificate (UGC) |
| 36. | | | Backpage 2015 Sales Agreements -  Vermillion Holdings, LLC Sole Member and Manager Certificate (US) |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

# EXHIBIT E

Daniel J. Quigley (*pro hac vice*)
DANIEL J. QUIGLEY, PLC
5425 E. Broadway Blvd., Suite 352
Tucson, Arizona 85711
Tel: (520) 867-4450
Email: quigley@djqplc.com

Attorneys for Attorneys for Claimants
Medalist Holdings, Inc., Leeward Holdings,
LLC, Camarillo Holdings, LLC,
Vermillion Holdings, LLC, Cereus
Properties, LLC, Shearwater Investments,
LLC, and Broadway Capital Corp., LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 2:18-cv-8420-RGK-PJWx |
| Plaintiff, | **OBJECTIONS AND RESPONSES TO PLAINTIFF'S FIRST SET OF RULE G SPECIAL INTERROGATORIES BY CLAIMANTS MEDALIST HOLDINGS, INC., LEEWARD HOLDINGS, LLC, CAMARILLO HOLDINGS, LLC, VERMILLION HOLDINGS, LLC, CEREUS PROPERTIES, LLC, SHEARWATER INVESTMENTS, LLC, AND BROADWAY CAPITAL CORP., LLC** |
| vs. | |
| $1,546,076.35 IN BANK FUNDS SEIZED FROM REPUBLIC BANK OF ARIZONA ACCOUNT '1889, et al., | |
| Defendants. | |
| | Assigned to Hon. R. Gary Klausner |

1    Pursuant to Rule G of the Supplemental Rules for Admiralty or Maritime Claims

2  and Asset Forfeiture Actions (the "Supplemental Rules"), and Federal Rules of Civil

3  Procedure 26 and 33, Claimants Medalist Holdings, Inc., Leeward Holdings, LLC,

4  Camarillo Holdings, LLC, Vermillion Holdings, LLC, Cereus Properties, LLC,

5  Shearwater Investments, LLC, and Broadway Capital Corp., LLC ("Claimants") hereby

6  respond to the Plaintiff United States of America's special interrogatories.

7                **PRELIMINARY STATEMENT**

8    The government is entitled to serve special interrogatories under Supplemental

9  Rule G(6)(a), but its special interrogatories must be "limited to the claimant's identity

10  and relationship to the defendant property." Supp. R. G(6)(a). The purpose of special

11  interrogatories is narrow: to allow the government to investigate a claimant's standing

12  to pursue his or her claim(s) and to weed out fraudulent claims from persons who have

13  no colorable interest in the defendant assets. *See United States v. Funds in the Amount of*

14  *$574,840*, 719 F.3d 648, 650 (7th Cir. 2013) ("Rule G(6)(a) authorizes the government

15  to issue 'special interrogatories limited to the claimant's identity and relationship to the

16  defendant property.' The purpose of such interrogatories is to smoke out fraudulent

17  claims—claims by persons who have no colorable claims.") If a claimant's standing is

18  not reasonably in dispute, the use of special interrogatories is inappropriate, as they are

19  not needed to determine standing. *Cf. United States v. Real Property Located at 17 Coon*

20  *Creek Road*, 787 F.3d 968, 977 (9th 2015) (claimant's failure to respond to the

21  government's special interrogatories did not warrant striking claim since his standing

22  was not reasonably in dispute because, *inter alia*, the government's complaint alleged the

23  property at issue was titled in his name and he resided on it); *United States v. $154,853.00*

24  *in U.S. Currency*, 744 F.3d 559, 564 (8th Cir. 2014) (similar). Likewise, special

25  interrogatories that ask a claimant, for example, to provide information about defenses

26  to the government's claims, to conduct a tracing analysis, or to identify all criminal or

27  civil litigation to which he or she has been a party plainly are outside the scope of the

28  Supplemental Rule.

1        Here, Claimants' standing is not reasonably in dispute.  This is not a case in

2 which the government lacks information about Claimants or their interests in the

3 Defendant Assets to which they have asserted claims.  In connection with a related

4 criminal case, *United States v. Lacey, et al.*, Case No. 2:18-cr-00422-SMB (D. Ariz.), the

5 government seized millions of pages of records.  Those records include extensive

6 information both about the Defendant Assets owned by Claimants as to which they

7 have asserted claims (the "Owned Assets")[1] (including bank statements, cancelled

8 checks, account records such as signature cards, federal income tax returns, etc.), about

9 the Defendant Assets as to which Claimants have asserted an interest secured by a

10 perfected security interest in Defendant Assets owned by third parties (the "Liened

11 Assets")[2] (including the contracts pertaining to the sales and loan transactions creating

12 the liens on those Defendant Assets securing indemnity and other obligations to

13 Claimants), and about the retainer (as defined below).  Indeed, the government's sworn

14 allegations in its First Amended Consolidated Master Verified Complaint

15 ("Complaint"), by themselves, establish Claimants' standing to pursue their claims to

16 the Owned Assets.  Dkt. 108.  For example, the government admits in the Complaint

17 that "Account 2 (Compass '3873 Funds) . . . was held in the name of Cereus Properties

18 LLC., and Spear was the sole signatory" [Complaint, ¶ 152] and that "Account 3

19 (Compass '4862 Funds) . . .  was held in the name of Cereus Properties" [*Id.*, ¶ 154].

20 The government's boilerplate special interrogatories are, therefore, entirely

21 inappropriate here.

22 . . .

23 . . .

24

---

25 [1]  The Defendant Assets identified as the "Owned Assets" are itemized in Claimants'

26 response to special interrogatory 5.1.

27 [2]  The Defendant Assets identified as the "Liened Assets" also are itemized in

28 Claimants' response to special interrogatory 5.1.

## **GENERAL AND CONTINUING OBJECTIONS**

Claimants generally object to the Rule G special interrogatories, along with the definitions and instructions (the "Interrogatories"), as follows:

1.    Claimants object to the "Instructions" and "Preamble" to the extent they purport to impose obligations beyond those required by the Federal Rules of Civil Procedure, including the Supplemental Rules, or the Local Rules of the United States District Court for the Central District of California.

2.    Claimants object to the Interrogatories because the number of interrogatories, including all discrete subparts, vastly exceed the number permitted under Federal Rule of Civil Procedure 33(a)(1), particularly given the "Instructions" and "Preamble."

3.     Claimants object to the "Instructions" and "Preamble" to the extent they cause the Interrogatories to serve as requests for the production of documents, as requests for the production of documents are outside the scope of Rule G(6)(a).

Claimants' objections and responses are based upon information presently known and available to them and their counsel.  Claimants have not completed their investigation of the facts, their discovery, or their preparation for trial.  Claimants therefore reserve the right to assert additional objections or serve supplemental responses should they determine additional grounds for objection or discover additional pertinent information.

## **RESPONSES TO RULE G INTERROGATORIES**

**INTERROGATORY NO. 1:**

State your full name, date of birth, social security number, and driver's license number, including the state of issuance.  If you have ever been known by any other name, state all such names and the periods of time during which they were used.

**RESPONSE TO INTERROGATORY NO. 1:**

Claimants' full names are:

Medalist Holdings, Inc.

1    Leeward Holdings, LLC

2    Camarillo Holdings, LLC

3    Vermillion Holdings, LLC

4    Cereus Properties, LLC

5    Shearwater Investments, LLC

6    Broadway Capital Corp., LLC

7  Claimants do not have dates of birth, social security numbers, or driver's license

8  numbers.  Medalist Holdings, Inc. is a Delaware corporation that was known as New

9  Times, Inc. until in or about early 2013.  Leeward Holdings, LLC is a Delaware limited

10 liability company that was known as New Times Holdings, LLC until in or about early

11 2013.  Camarillo Holdings, LLC is a Delaware limited liability company that was known

12 as Village Voice Media Holdings, LLC until in or about early 2013.  The other

13 Claimants are Delaware limited liability companies.

14 **INTERROGATORY NO. 2:**

15      State your present residence address and telephone number, together with all

16 residence addresses and telephone numbers you have had during the time period

17 between January 1, 2016, and April 27, 2018.

18 **RESPONSE TO INTERROGATORY NO. 2:**

19      Claimants object to the special interrogatory because the phrase "residence

20 address and telephone number," as it is used in the special interrogatory, is ambiguous.

21      Subject to their objections, Claimants respond as follows:

22      Claimants do not have residence addresses and did not have residence addresses

23 during the time period between January 1, 2016, and April 27, 2018.  Claimants do not

24 and did not have residence telephone numbers during the time period between January

25 1, 2016, and April 27, 2018.

26 **INTERROGATORY NO. 3:**

27      Identify any and all present or former spouses or domestic partners and any and

28 all dependents, during the time period between January 1, 2016, and April 27, 2018,

providing their names, dates of birth, residence addresses and telephone numbers.

**RESPONSE TO INTERROGATORY NO. 3:**

Claimants had no spouses or domestic partners nor any dependents during the time period between January 1, 2016, and April 27, 2018.

**INTERROGATORY NO. 4:**

Identify any and all individuals who have resided with you during the time period between January 1, 2016, and April 27, 2018, include their names, relationships, current addresses and telephone numbers.

**RESPONSE TO INTERROGATORY NO. 4:**

No individuals resided with Claimants during the time period between January 1, 2016, and April 27, 2018.

**INTERROGATORY NO. 5:**

Identify any person or entity (according to the instructions) from whom you received any income, whether earned or unearned, during the time period between January 1, 2016, and April 27, 2018, including any employment earnings, gifts, bequests, gambling winnings, judgments, settlements, monies held in trust, interest income, proceeds from sales, loans, lines of credit, or rents, specifying for each such source, the name and address of the person or entity from which the income was received, the date(s) and amount(s) received, and the reason for its payment.

**RESPONSE TO INTERROGATORY NO. 5:**

Claimants object to this special interrogatory because their standing is not reasonably in dispute. The government has obtained extensive discovery in related criminal proceedings (many millions of pages of documents), including, on information and belief, Claimants' federal income tax returns and also massive quantities of banking, business, real estate, and other records that evidence both (a) the source of the Defendant Assets as to which Claimants have asserted claims and (b) Claimants' interests in those assets. Further, the allegations in the government's sworn Complaint about the Owned Assets also are sufficient by themselves to establish Claimants'

1  standing as to those assets. Claimants' Verified Claims and Statements of Interest filed

2  in this action (or in an action consolidated with it) also are sufficient to establish

3  Claimants' standing.

4  Supplemental Rule G(6)(a) allows the government to conduct narrow discovery

5  aimed at weeding out fraudulent claims from persons who have no colorable interest in

6  the defendant assets. *United States v. Funds in the Amount of $574,840*, 719 F.3d 648, 650

7  (7th Cir. 2013) ("Rule G(6)(a) authorizes the government to issue 'special

8  interrogatories limited to the claimant's identity and relationship to the defendant

9  property.' The purpose of such interrogatories is to smoke out fraudulent claims—

10 claims by persons who have no colorable claims."). The government already possesses

11 sufficient information to know that Claimants have standing to pursue their claims, so

12 this special interrogatory is not necessary for the government to assess Claimants'

13 standing and, therefore, is improper. *Cf. United States v. Real Property Located at 17 Coon

14 Creek Road*, 787 F.3d 968, 977 (9th 2015) (claimant's failure to respond to the

15 government's special interrogatories did not warrant striking claim since his standing

16 was not reasonably in dispute because, *inter alia*, the government's complaint alleged the

17 property at issue was titled in his name and he resided on it); *United States v. $154,853.00

18 in U.S. Currency*, 744 F.3d 559, 564 (8th Cir. 2014) (holding the same).

19 Given the sworn allegations in the government's Complaint and the information

20 in the government's possession from its extensive discovery in related criminal

21 proceedings, the government cannot fairly contend it needs the information sought in

22 this special interrogatory to assess Claimants' standing to pursue their claims.

23 Claimants also object to this special interrogatory on the grounds that it seeks

24 information that is not relevant to whether Claimants have standing to pursue their

25 claims and is outside of the scope of Supplemental Rule G(6)(a), which only authorizes

26 "special interrogatories limited to the claimant's identity and relationship to the

27 defendant property." *See United States v. $133,420.00 in U.S. Currency*, 672 F.3d 629, 643

28 n.5 (9th Cir. 2012) (finding the government's Rule G(6)(a) special interrogatory to "list

1   the sources of all other income that [he] received, whether earned or unearned, from

2   any source(s) for the last five years" exceeded the permissible scope of Supp. R.

3   G(6)(a), which only allows information as to a claimant's "identity and relationship to

4   the defendant property").  This is not a case where there is some question about

5   whether Claimants had sufficient income to acquire the Defendants Assets as to which

6   they have asserted claims.  As such, the sources of Claimant's income have no bearing

7   on their standing with respect to the Defendant Assets as to which they have asserted

8   claims.  Moreover, to the extent that Claimants' income has any relevance, Claimants

9   are informed and believes that the government already has obtained copies of their tax

10  returns in connection with its criminal case.

11          Claimants further object to this interrogatory because the burden it would

12  impose on Claimants is not proportionate to the needs of the case at this stage (*i.e.* to

13  enable the government to assess Claimants' standing before being required to respond

14  to the pending motions to dismiss) or to any benefit the government may receive from

15  the discovery, given that (a) Claimants' standing is not reasonably in dispute and (b) the

16  special interrogatory seeks information that is unreasonably cumulative and duplicative

17  of the extensive discovery the government already obtained in related criminal

18  proceedings, including Claimants' federal income tax returns and massive quantities of

19  banking, business, real estate, and other records that evidence both the source of the

20  Defendant Assets as to which Claimants have asserted claims and Claimants' interests

21  in those assets.  The government can obtain any information it needs from that

22  discovery, without imposing significant expenses and burdens on Claimants, and, to the

23  extent the government has not already reviewed that discovery and obtained the

24  information sought in this special interrogatory, the burden and cost of extracting the

25  information from the existing discovery would be substantially the same for the

26  government or Claimants.  Moreover, this special interrogatory, which seeks the date

27  and amount of *all* of Claimants' income over a two-year time period, improperly seeks

28  to shift the burden of conducting a tracing analysis to Claimants.

1    Additionally, although this "boilerplate" special interrogatory (or portions of it)

2   might be appropriate in a case involving ambiguous claims to a large amount of

3   unexplained currency, it is not appropriate here, given the allegations in the

4   government's Complaint and given the nature of the Defendant Assets as to which

5   Claimants have asserted claims (bank accounts held in the name of one of Claimants,

6   assets owned by third parties that are collateral for contractual obligations owed to

7   Claimants, with the liens securing those obligations perfected by financing statements

8   of record in the offices of the Delaware Secretary of State, the Texas Secretary of State,

9   and the D.C. Recorder of Deeds, and a retainer held by their counsel).

10    Subject to their objections, Claimants responds as follows:

11    During the specified period, Claimants' income came principally from the

12   following:  (1) Cereus Properties, LLC received payments, made by or on behalf of

13   Voice Media Group, Inc., on a promissory note payable to Broadway Capital Corp.,

14   LLC in connection with the sale of a publishing business by Camarillo Holdings, LLC

15   to Voice Media Group, Inc.; (2) Cereus Properties, LLC received payments, made by or

16   on behalf of Atlantische Bedrijven C.V. ("ABC") on a promissory note originally

17   payable to Vermillion Holdings, LLC, and later assigned to Shearwater Investments,

18   LLC, in connection with the sale of the Backpage.com website business by Vermillion

19   Holdings, LLC to ABC; (3) Cereus Properties, LLC received payments, made by or on

20   behalf of UGC Tech Group C.V. ("UGC") on a promissory note originally payable to

21   Vermillion Holdings, LLC, and later assigned to Shearwater Investments, LLC, in

22   connection with the sale of the Backpage.com website business by Vermillion

23   Holdings, LLC to UGC; (4) Cereus Properties, LLC received other payments, made by

24   or on behalf of ABC and UGC, under the terms of the sales, loan, or related

25   agreements for the sales described above; (5) Cereus Properties, LLC received

26   payments from subtenants of the property located at 1201 E. Jefferson, Phoenix, AZ

27   85034, related to their subtenancies; and (6) intercompany transfers among Claimants.

28   . . .

held in the name of Cardquiry, Inc.

- $182,182.50 in bank funds seized from Amro Bank N.V. (Netherlands) Account No. '6352 held in the name of Ad Tech BV with Stichting Zencotrust

- $23,175.00 in bank funds seized from Plains Capital Bank Account No. '3939 held in the name of Scheef & Stone, LLP

- $11,802.76 in bank funds seized from Citibank Account No. '6973 held in the name of Schiff Hardin LLP

- $3,374,918.61 in bank funds seized from Prosperity Bank Account No. '7188 held in the name of Posting Solutions, LLC

Claimants also incorporate by reference the Verified Claims and Statements of Interest they filed in this action (or in an action consolidated with it) (*see* Dkt. 116).

**INTERROGATORY NO. 6:**

For each Defendant Asset identified in your response to Interrogatory No. 5.1, identify and describe with particularity the source of each such Defendant Asset. Specifically, explain the source(s) or origin(s) of each such Defendant Asset and identify (according to the instructions) all documents that relate to how you acquired such Defendant Asset.

**RESPONSE TO INTERROGATORY NO. 6:**

Claimants object to this special interrogatory because their standing is not reasonably in dispute. The government has obtained extensive discovery in related criminal proceedings (many millions of pages of documents), including, on information and belief, Claimants' federal income tax returns and also massive quantities of banking, business, real estate, and other records that evidence both (a) the source of the Defendant Assets as to which Claimants have asserted claims and (b) Claimants' interests in those assets. Further, the allegations in the government's sworn Complaint about the Owned Assets also are sufficient by themselves to establish Claimants' standing as to those assets. Claimants' Verified Claims and Statements of Interest filed in this action (or in an action consolidated with it) also are sufficient to establish Claimants' standing.

Supplemental Rule G(6)(a) allows the government to conduct narrow discovery aimed at weeding out fraudulent claims from persons who have no colorable interest in the defendant assets. *United States v. Funds in the Amount of $574,840*, 719 F.3d 648, 650 (7th Cir. 2013) ("Rule G(6)(a) authorizes the government to issue 'special interrogatories limited to the claimant's identity and relationship to the defendant property.' The purpose of such interrogatories is to smoke out fraudulent claims— claims by persons who have no colorable claims."). The government already possesses sufficient information to know that Claimants have standing to pursue their claims, so this special interrogatory is not necessary for the government to assess Claimants' standing and, therefore, is improper. *Cf. United States v. Real Property Located at 17 Coon Creek Road*, 787 F.3d 968, 977 (9th 2015) (claimant's failure to respond to the government's special interrogatories did not warrant striking claim since his standing was not reasonably in dispute because, *inter alia*, the government's complaint alleged the property at issue was titled in his name and he resided on it); *United States v. $154,853.00 in U.S. Currency*, 744 F.3d 559, 564 (8th Cir. 2014) (holding the same).

Given the sworn allegations in the government's Complaint and the information in the government's possession from its extensive discovery in related criminal proceedings, the government cannot fairly contend it needs the information sought in this special interrogatory to assess Claimants' standing to pursue their claims.

Claimants further object to this interrogatory because the burden it would impose on Claimants is not proportionate to the needs of the case at this stage (*i.e.* to enable the government to assess Claimants' standing before being required to respond to the pending motions to dismiss) or to any benefit the government may receive from the discovery, given that (a) Claimants' standing is not reasonably in dispute and (b) the special interrogatory seeks information that is unreasonably cumulative and duplicative of the extensive discovery the government already obtained in related criminal proceedings, including Claimants' federal income tax returns and massive quantities of banking, business, real estate, and other records that evidence both the source of the

1  Defendant Assets as to which Claimants have asserted claims and Claimants' interests

2  in those assets.  The government can obtain any information it needs from that

3  discovery, without imposing significant expenses and burdens on Claimants, and, to the

4  extent the government has not already reviewed that discovery and obtained the

5  information sought in this special interrogatory, the burden and cost of extracting the

6  information from the existing discovery would be substantially the same for the

7  government or Claimants.

8        Additionally, although this "boilerplate" special interrogatory (or portions of it)

9  might be appropriate in a case involving ambiguous claims to a large amount of

10 unexplained currency, it is not appropriate here, given the allegations in the

11 government's Complaint and given the nature of the Defendant Assets as to which

12 Claimants have asserted claims (bank accounts held in the name of one of Claimants,

13 assets owned by third parties that are collateral for contractual obligations owed to

14 Claimants, with the liens securing those obligations perfected by financing statements

15 of record in the offices of the Delaware Secretary of State, the Texas Secretary of State,

16 and the D.C. Recorder of Deeds, and the Retainer held by their counsel).

17       Subject to their objections, Claimants respond as follows:

18       With respect to the $407,686.14 in bank funds seized from BBVA Compass

19 Bank Account No. '4862 held in the name of Cereus Properties, LLC, the funds

20 contained in that account were accumulated by Cereus Properties, LLC primarily in the

21 following ways:  (1) Cereus Properties, LLC received payments, made by or on behalf

22 of Voice Media Group, Inc., on a promissory note payable to Broadway Capital Corp.,

23 LLC in connection with the sale of a publishing business by Camarillo Holdings, LLC

24 to Voice Media Group, Inc. and (2) Cereus Properties, LLC received payments from

25 subtenants of the property located at 1201 E. Jefferson, Phoenix, AZ 85034, related to

26 their subtenancies.  The documents related to the acquisition of these accounts include

27 (1) account statements, account documents, signature cards, and other account-related

28 documents, (2) corporate formation documents for Medalist Holdings, Inc. and its

1  subsidiaries, (3) the sales and loan documents and promissory notes related to the sale

2  of the publishing business to Voice Media Group, Inc., subsequent modifications to

3  those agreements, and the financing statements perfecting the liens arising under those

4  documents, and (4) documents, including sublease agreements, related to the rental of

5  property located at 1201 E. Jefferson, Phoenix, AZ 85034.

6         With respect to the $5,462,027.17 in bank funds seized from BBVA Compass

7  Bank Account No. '3873, held in the name of Cereus Properties, LLC, certain

8  Claimants sold the Backpage.com business to ABC and UGC in April 2015. In

9  connection with the sale of the Backpage.com business, ABC and UGC (collectively,

10  "Borrowers"), numerous affiliates of Borrowers, including Backpage.com, LLC

11  (collectively, "Pledgors"), and Carl A. Ferrer and other affiliates of Borrowers

12  (collectively, "Guarantors") executed numerous agreements, including sales

13  agreements, loan agreements, promissory notes, security agreements, and guaranties

14  dated on or about April 22, 2015. The obligations of Borrowers, Pledgors, and

15  Guarantors under those documents are secured by perfected security interests in

16  essentially all the assets of Borrowers and Pledgors (the "Collateral"). The security

17  interests in the Collateral were perfected with financing statements filed in April 2015

18  with the Delaware Secretary of State, the Recorder of Deeds in the District of

19  Columbia, and the Texas Secretary of State and those financing statements were

20  continued in April 2020. Claimants' security interests encumbered essentially all assets

21  of Borrowers and Pledgors, including general intangibles. The funds contained in

22  BBVA Compass Bank Account No. '3873 were accumulated by Cereus Properties,

23  LLC primarily in the following ways: (1) Cereus Properties, LLC received payments,

24  made by or on behalf of ABC, on a promissory note originally payable to Vermillion

25  Holdings, LLC, and later assigned to Shearwater Investments, LLC, in connection with

26  the sale of the Backpage.com website business by Vermillion Holdings, LLC to ABC;

27  (2) Cereus Properties, LLC received payments, made by or on behalf of UGC, on a

28  promissory note originally payable to Vermillion Holdings, LLC, and later assigned to

Shearwater Investments, LLC, in connection with the sale of the Backpage.com website business by Vermillion Holdings, LLC to UGC; and (3) Cereus Properties, LLC received other payments, made by or on behalf of ABC and UGC, under the terms of the sales or loan agreements related to the sales described above.  The documents related to the acquisition of these accounts include:  (1) account statements, title documents, signature cards, and other account-related documents, (2) corporate formation documents for Medalist Holdings, Inc. and its subsidiaries, and (3) the sales and loan documents and promissory notes referenced above and the financing statements perfecting the liens arising under those documents.

With respect to the $3,713,121.03 Retainer seized from a client trust account of Davis Wright Tremaine, LLP, Bank of America Account No. '3414, those funds were deposited for the benefit of Claimants to pay their legal fees and costs (and for the benefit of, and to pay the legal fees and costs of, others who were jointly represented by Davis Wright Tremaine, LLP).  The funds were deposited by or on behalf of ABC and UGC, under the terms of the sales or loan agreements related to the sale of Backpage.com, which obligated Borrowers, Pledgors, and Guarantors to provide advancement to Claimants, their officers and directors, and others.  The obligations of Borrowers, Pledgors, and Guarantors (other than Ferrer) to provide advancement (under the sales and loan agreements, their LLC agreements, or both) has been adjudicated to a judgment in the Delaware Court of Chancery.  Claimants' interest in those funds is premised, in part, on the possession of those funds by their counsel. Those funds also are part of the Collateral.

With respect to the Liened Assets, Claimants are either parties to, or third-party beneficiaries of, a series of contracts entered into on or about April 22, 2015, among subsidiaries of Medalist Holdings, Inc. and: Borrowers, Pledgors, and Guarantors. Borrower, Pledgors, and Guarantors are substantially indebted to Claimants under the terms of the promissory notes, sales agreements, loan agreements, security agreements, guarantees, and related documents.  The obligations of Borrower, Pledgors, and

Guarantors include, among other things, the sizeable balance of Borrowers' promissory notes and other contractual obligations under the agreements, including the obligation for advancement and indemnification.  On information and belief, the Liened Assets all are part of the Collateral.  On information and belief, the obligations owed by Borrowers, Pledgors, and Guarantors that are secured by the Collateral greatly exceed the value of the Collateral (including the Liened Assets).  To Claimants' knowledge, the Collateral securing the obligations of ABC, UGC, and their affiliates (including the Liened Assets) either is revenue related to the operation of Backpage.com and related websites or was derived from such revenues.  The documents related to Claimants' interest in the Liened Assets include the April 22, 2015, agreements referenced above, subsequent modifications to those agreements, the financing statements perfecting the liens arising under those documents, and the judgment in the Delaware Court of Chancery.  Claimant's perfected security interests in the Collateral securing the obligations to Claimants are legally recognizable interests in the Liened Assets.

**INTERROGATORY NO. 7:**

For each Defendant Asset identified in your response to Interrogatory No. 5.1, identify and describe with particularity the intended use(s) of each Defendant Asset and identify (according to the instructions) all documents that relate to the intended use(s) of each Defendant Asset.

**RESPONSE TO INTERROGATORY NO. 7:**

Claimants object to this special interrogatory because their standing is not reasonably in dispute.  The government has obtained extensive discovery in related criminal proceedings (many millions of pages of documents), including, on information and belief, Claimants' federal income tax returns and also massive quantities of banking, business, real estate, and other records that evidence both (a) the source of the Defendant Assets as to which Claimants have asserted claims and (b) Claimants' interests in those assets.  Further, the allegations in the government's sworn Complaint about the Owned Assets also are sufficient by themselves to establish Claimants'

1    Given the sworn allegations in the government's Complaint and the information

2    in the government's possession from its extensive discovery in related criminal

3    proceedings, the government cannot fairly contend it needs the information sought in

4    this special interrogatory to assess Claimants' standing to pursue their claims.

5        Subject to their objections, Claimants respond as follows:

6        Claimants did not utilize or rely upon any documents to respond to these special

7    interrogatories.

8

9

DATED:  July 31, 2020          Daniel J. Quigley (*pro hac vice*)
10                                 DANIEL J. QUIGLEY, PLC
                                   5425 E. Broadway Blvd., Suite 352
11                                 Tucson, Arizona 85711
                                   Tel: (520) 867-4450
12                                 Email: quigley@djqplc.com

13
                                   Attorneys for Attorneys for Claimants Medalist
14                                 Holdings, Inc., Leeward Holdings, LLC, Camarillo
                                   Holdings, LLC, Vermillion Holdings, LLC, Cereus
15                                 Properties, LLC, Shearwater Investments, LLC,
                                   and Broadway Capital Corp., LLC
16

17

18

19

20

21

22

23

24

25

26

27

28

## **VERIFICATION**

Daniel J. Quigley declares under penalty of perjury under the laws of the United States of America:

I, Daniel J. Quigley, am an authorized agent of Claimants Medalist Holdings, Inc., Leeward Holdings, LLC, Camarillo Holdings, LLC, Vermillion Holdings, LLC, Cereus Properties, LLC, Shearwater Investments, LLC, and Broadway Capital Corp., LLC and am authorized to make this Verification. I have read the foregoing Objections and Responses to Plaintiff's First Set of Rule G Special Interrogatories by Claimants Medalist Holdings, Inc., Leeward Holdings, LLC, Camarillo Holdings, LLC, Vermillion Holdings, LLC, Cereus Properties, LLC, Shearwater Investments, LLC, and Broadway Capital Corp., LLC and its contents are true and correct to the best of my own knowledge, except for matters stated on information and belief, which I believe to be true

Executed on July 31, 2020.

_____
Daniel J. Quigley
Authorized agent for Claimants Medalist
Holdings, Inc., Leeward Holdings, LLC,
Camarillo Holdings, LLC, Vermillion Holdings,
LLC, Cereus Properties, LLC, Shearwater
Investments, LLC, and Broadway Capital
Corp., LLC

RESPONSES TO PLAINTIFF'S FIRST SET OF RULE G SPECIAL INTERROGATORIES

# EXHIBIT F

**EFiled:  Jan 02 2019 03:00PM EST**
**Transaction ID 62812480**
**Case No. 2018-0606-SG**

## IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

CAMARILLO HOLDINGS, LLC,　　　　　)
LEEWARD HOLDINGS, LLC,　　　　　　)
MEDALIST HOLDINGS, INC.,　　　　　　)
CEREUS PROPERTIES, LLC,　　　　　　)
MICHAEL LACEY, JAMES　　　　　　　)
LARKIN, SCOTT SPEAR,　　　　　　　)
JOHN BRUNST, VERMILLION　　　　　)
HOLDINGS, LLC, and　　　　　　　　)
SHEARWATER INVESTMENTS,　　　　　)
LLC,　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　)
　　　　　　　　　　Plaintiffs,　　　)　　C.A. No. 2018-0606-SG
　　　　　　　　　　　　　　　　　)
　　　　　　v.　　　　　　　　　　)　　**PUBLIC VERSION**
　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　)　　January 2, 2019
AMSTEL RIVER HOLDINGS,　　　　　　)
LLC, KICKAPOO RIVER　　　　　　　)
INVESTMENTS LLC,　　　　　　　　　)
LUPINE HOLDINGS LLC,　　　　　　　)
ATLANTISCHE BEDRIJVEN,　　　　　　)
C.V., CF HOLDINGS GP LLC,　　　　　)
CF ACQUISITIONS LLC, UGC　　　　　)
TECH GROUP, C.V., AD TECH　　　　　)
HOLDINGS GP BV, AD TECH　　　　　)
COOPERATIEF U.A., AD TECH　　　　　)
BV, CARL FERRER, DARTMOOR　　　　)
HOLDINGS, LLC, IC HOLDINGS,　　　　)
LLC, BACKPAGE.COM, LLC,　　　　　　)
WEBSITE TECHNOLOGIES, LLC,　　　　)
POSTING SOLUTIONS, LLC,　　　　　　)
POSTFASTER, LLC, CLASSIFIED　　　　)
STRATEGIES COOPERATIEF　　　　　　)
U.A., PAYMENT SOLUTIONS,　　　　　)
B.V., CLASSIFIED SOLUTIONS　　　　　)
LTD., and LES BACKPAGE　　　　　　)
ENTERPRISES INC.,　　　　　　　　　)
　　　　　　　　　　　　　　　　　)
　　　　　　　　　　Defendants.　　)

## VERIFIED AMENDED COMPLAINT

Plaintiffs Camarillo Holdings, LLC, Leeward Holdings, LLC, Medalist

Holdings, Inc., Cereus Properties, LLC, Michael Lacey, James Larkin, Scott Spear,

and John Brunst (collectively, the "Medalist Parties") and Vermillion Holdings,

LLC and Shearwater Investments, LLC bring this summary proceeding pursuant to

6 *Del. C.* § 18-108 and 8 *Del. C.* § 145(k) against defendants Amstel River

Holdings, LLC, Kickapoo River Investments LLC, Lupine Holdings LLC,

Atlantische Bedrijven, C.V., CF Holdings GP LLC, CF Acquisitions LLC, UGC

Tech Group, C.V., Ad Tech Holdings GP BV, Ad Tech Cooperatief U.A., Ad Tech

BV, and Carl Ferrer (collectively, the "Ferrer Parties"); Dartmoor Holdings, LLC,

IC Holdings, LLC, Backpage.com, LLC, Website Technologies, LLC, Posting

Solutions, LLC, Postfaster, LLC (collectively, the "Domestic Backpage Entities");

and Classified Strategies Cooperatief U.A., Payment Solutions, B.V., Classified

Solutions Ltd., and Les Backpage Enterprises Inc. (collectively, the "Foreign

Backpage Entities") to compel the advancement and reimbursement of defense

costs and expenses that have been and will be incurred by Plaintiffs with respect to

claims that have been asserted against them in numerous civil, criminal,

administrative, and investigative matters identified below.  Plaintiffs also seek a

declaration that certain funds held by their counsel were loan payments made by

defendants, in which defendants have no interest, and not a retainer as defendants have asserted.  In support of their claims, Plaintiffs allege:

## I.     Background and Summary of Claims

1.      In 1970, Michael Lacey, with students from Arizona State University, started a weekly newspaper that became known as the *Phoenix New Times*.  James Larkin joined the publication shortly thereafter.

2.      The *Phoenix New Times* was (and is) a free weekly newspaper addressing local and national issues, as an alternative to the coverage offered by the mainstream media.

3.      The *Phoenix New Times* formerly was owned by New Times, Inc., a Delaware corporation now known as Medalist Holdings, Inc. ("Medalist").

4.      By 2005, Medalist owned the largest chain of alt-weekly newspapers in the country, with 17 newspapers, including the iconic *Village Voice*, and 1.8 million readers.

5.      Commencing in 2004, Backpage.com, LLC, a Delaware limited liability company ("Backpage"), which then was a subsidiary of Medalist, operated a free classified advertising website called Backpage.com ("Backpage.com").  The website grew into the second largest online classified advertising web site in the U.S.

3

6.     Backpage.com hosted millions of ads monthly—all posted by users—in categories including real estate, jobs, buy/sell/trade, automotive, and adult.

7.     Medalist sold Backpage.com on April 22, 2015, in a management-led leveraged buy-out.  Backpage.com's long-time chief executive officer, Carl Ferrer, was the principal of Atlantische Bedrijven, C.V., a Dutch limited partnership a/k/a Atlantic Holdings C.V. ("Atlantic"), which purchased Backpage.com's domestic operations and assets, including the Domestic Backpage Entities.  Mr. Ferrer also was the principal of an affiliated entity, UGC Tech Group, C.V., a Dutch limited partnership ("UGC"), which purchased Backpage.com's foreign operations and assets, including the Foreign Backpage Entities.

8.     From and after April 22, 2015, the Medalist Parties have been threatened with, and made parties to, numerous suits or proceedings, including civil, criminal, administrative, and investigative matters, related to the operation of Backpage.com (the "Pending Actions," as defined below in Paragraph 161 with more specificity).

9.     The limited liability company agreements for the Domestic Backpage Entities (the "Domestic Backpage Entities' LLC Agreements") contain provisions that, under Delaware law, require the Domestic Backpage Entities to advance defense costs and expenses for Plaintiffs for the Pending Actions, and to indemnify and hold harmless Plaintiffs from the Pending Actions.

4

10.     The purchase and loan documents for Mr. Ferrer's acquisition of Backpage.com (collectively, the "Purchase and Loan Documents," as defined below in Paragraph 227 with more specificity) contain provisions that, under Delaware law, require the Domestic Backpage Entities and the Foreign Backpage Entities (collectively, the "Backpage Entities," as defined below in Paragraph 70 with more specificity) and the Ferrer Parties to advance defense costs and expenses for Plaintiffs for any claims related to the operation of Backpage.com, whether those claims arose before or after the sale, as well as to indemnify and hold harmless Plaintiffs.

11.     The Ferrer Parties or the Backpage Entities advanced all defense costs and expenses for the Medalist Parties for the Pending Actions from April 2015 until in or about March 2018, in accordance with the advancement requirements of the Domestic Backpage Entities' LLC Agreements and pursuant to the provisions of the Purchase and Loan Documents.  From April 2015 until in or about March 2018, the Ferrer Parties or the Backpage Entities advanced more than ▮▮▮▮▮ for the defense for the Pending Actions.

12.     In 2017 and early 2018, one or more of the Ferrer Parties and the Backpage Entities also made sizeable advanced fee deposits with a number of law firms (the "Retainers," as defined below in Paragraph 203 with more specificity) to

assure that the payment of defense costs and expenses for the Pending Actions would not be interrupted.

13.     In April 2018, the Ferrer Parties and the Backpage Entities ceased making loan payments under the Purchase and Loan Documents.

14.     The failure of the Ferrer Parties and the Backpage Entities to make loan payments materially breached their obligations under the Purchase and Loan Documents.

15.     In April 2018, Mr. Ferrer plead guilty in federal court in Arizona to violating 18 United States Code § 371 (conspiracy).  In his plea agreement, Mr. Ferrer admitted to "knowingly" violating the law.

16.     In April 2018, three other Ferrer Parties (Amstel, Ad Tech, and UGC, as defined above and below in Paragraphs 47, 55, and 7) and three of the Backpage Entities (Backpage, Website Tech, and Posting Solutions, as defined above and below in Paragraphs 5, 60, and 61) plead guilty in federal court in Arizona to violating 18 United States Code § 1956(h) (money laundering conspiracy).  In their plea agreements, the six entities admitted to "knowingly" violating the law.

17.     In connection with the federal pleas, the United States seized Backpage.com and many of the assets and bank accounts of the Ferrer Parties and the Backpage Entities.

6

18.     In April 2018, Mr. Ferrer plead guilty to criminal offenses in the state court in California.

19.      In April 2018, Mr. Ferrer and the six entities identified in Paragraph 16 also plead guilty to criminal offenses in the state court in Texas.

20.     In connection with their criminal pleas, the Ferrer Parties and the Backpage Entities forfeited (or agreed to forfeit) all their assets to the government, excepting only a residence in Texas owned by Mr. Ferrer, Mr. Ferrer's pre-2004 funds in a retirement account, and the funds held by counsel for the Ferrer Parties or the Backpage Entities in four specified trust accounts (with any balance remaining in those trust accounts being forfeited to the government at the "conclusion of litigation").  On information and belief, the four specified trust accounts do not hold funds advanced by the Ferrer Parties or the Backpage Entities to pay the defense costs and expenses of the Medalist Parties for the Pending Actions.

21.     Following their guilty pleas, the Ferrer Parties and the Backpage Entities ceased advancing defense costs and expenses for the Medalist Parties for the Pending Actions.

22.     The failure of the Ferrer Parties and the Backpage Entities to advance defense costs and expenses for the Medalist Parties materially breached their

7

obligations under the Domestic Backpage Entities' LLC Agreements and under the Purchase and Loan Documents.

23.     After the Ferrer Parties and the Backpage Entities ceased advancing defense costs and expenses for the Medalist Parties for the Pending Actions, one or more of the Ferrer Parties and the Backpage Entities demanded the return of many of the Retainers, resulting in the Medalist Parties and their counsel being unable to access the Retainers to pay the ongoing defense costs and expenses for the Pending Actions.

24.     The Ferrer Parties and the Backpage Entities have no interest in the Retainers, as they forfeited any interest they may have had in the Retainers to the government, which extinguished any interest they had in the Retainers.

25.     To the extent the Ferrer Parties or the Backpage Entities then had any interest in the Retainers, those interests were extinguished upon the entry of an order amending the preliminary order of forfeiture in *United States v. Backpage.com, LLC, et al.*, Case No. 2:18-cr-00465-SPL, U.S.D.C. D. Ariz., Dkt. 44, Oct. 18, 2018 (which amended Dkt. 22, May 16, 2018).

26.     The Notice of Removal certain defendants filed in the United States District Court, when removing this action to federal court, stated: "The legal retainers that Plaintiffs put at issue in the State Court Action already have vested in the United States." *Camarillo Holdings, LLC, et al. v. Amstel River Holdings,*

8

*LLC, et al.*, Case No. 1:18-cv-01456-UNA, U.S.D.C. D. Del., Dkt. 1, p. 5, Sept 19, 2018.

27.     On information and belief, if counsel holding the Retainers returned them to the Ferrer Parties and the Backpage Entities, the Ferrer Parties and the Backpage Entities would be obligated to remit the Retainers to the government.

28.     On information and belief, because the Ferrer Parties and the Backpage Entities have forfeited (or have agreed to forfeit) essentially all their assets to the government, the Ferrer Parties and the Backpage Entities have no assets from which to advance defense costs and expenses for the Medalist Parties.

29.     The Ferrer Parties and the Backpage Entities have breached their obligations to advance defense costs and expenses for the Medalist Parties for the Pending Actions under the advancement provisions of the Domestic Backpage Entities' LLC Agreements, under the Purchase and Loan Documents, and otherwise by:

        a.     Failing to advance defense costs and expenses for the Medalist Parties after in or about March 2018;

        b.     Demanding refunds of the Retainers:

              i.  thus blocking the advancement of defense costs and expenses from the Retainers for the Medalist Parties for the Pending Actions; and

9

ii. with, on information and belief, the aim of forfeiting the Retainers to the government, so the Retainers will not be available to advance defense costs and expenses for the Medalist Parties for the Pending Actions; and

c.     Failing to pay attorneys' fees and costs incurred by the Ferrer Parties and the Backpage Entities with counsel jointly representing the Medalist Parties.

30.     The Ferrer Parties and the Backpage Entities also have repeatedly sought to disqualify the Medalist Parties' counsel, despite contractual obligations of the Ferrer Parties and the Backpage Entities to the contrary.  Depriving the Medalist Parties of their longtime counsel would seriously impair their ability to defend the Pending Actions.

31.     With a well-funded defense, and their well-qualified defense counsel, the Medalist Parties have had considerable success defending claims of the sort asserted in the Pending Actions.

32.     The efforts of the Ferrer Parties and the Backpage Entities to block the Medalist Parties and their counsel from accessing the Retainers, to deprive the Medalist Parties of the funds they need to defend the Pending Actions, and to disqualify the Medalist Parties' counsel are contrary to Delaware law and public policy.

## II.   Parties

### A.   *Plaintiffs*

33.   Medalist is a Delaware corporation formerly known as New Times, Inc.

34.   Leeward Holdings, LLC is a Delaware LLC ("Leeward") and a wholly-owned subsidiary of Medalist.

35.   Camarillo Holdings, LLC is a Delaware LLC ("Camarillo") and a wholly-owned subsidiary of Leeward.  Camarillo formerly was known as Village Voice Media Holdings, LLC.

36.   Harbor Property Holdings, LLC is a Delaware LLC ("Harbor") and a wholly-owned subsidiary of Camarillo.

37.   Cereus Properties, LLC is a Delaware LLC ("Cereus") and a wholly-owned subsidiary of Harbor.

38.   Vermillion Holdings, LLC is a Delaware LLC ("Vermillion") and a wholly-owned subsidiary of Camarillo.

39.   Shearwater Investments, LLC ("Shearwater") is a Delaware LLC ("Shearwater") and a wholly-owned subsidiary of Vermillion.

40.   Medalist, Leeward, Harbor, and Cereus are affiliates of Camarillo and Vermillion.

11

41.     At relevant times, Mr. Larkin was an officer and agent of Medalist, Leeward, Camarillo, and Cereus.

42.     At relevant times, Mr. Lacey was an officer and agent of Medalist, Leeward, and Camarillo.

43.     At relevant times, Scott Spear was an officer and agent of Medalist, Leeward, Camarillo, Cereus, Vermillion, and Shearwater.

44.     At relevant times, John Brunst was an officer and agent of Medalist, Leeward, Camarillo, Cereus, Vermillion, and Shearwater.

45.     This Complaint refers to Medalist, Leeward, Camarillo, and Cereus, collectively, as the "Medalist Entities."  This Complaint refers to Messrs. Larkin, Lacey, Spear, and Brunst, collectively, as the "Medalist Officers."  This Complaint refers to the Medalist Entities and the Medalist Officers, collectively, as the "Medalist Parties."

### B.     *The Ferrer Parties*

46.     On information and belief, Carl Ferrer is the Trustee of the Vicky Ferrer Family Trust, a Texas irrevocable trust.

47.     On information and belief, Amstel River Holdings, LLC is a Delaware LLC ("Amstel"), wholly-owned by the Vicky Ferrer Family Trust.

12

48.     On information and belief, Kickapoo River Investments LLC ("Kickapoo") and Lupine Holdings LLC ("Lupine") are Delaware LLCs, each wholly-owned by Amstel.

49.     On information and belief, Kickapoo and Lupine, respectively, are the sole general partner and the sole limited partner of Atlantic.

50.     On information and belief, CF Holdings GP LLC ("CFH") is a Delaware limited liability company, wholly-owned by Atlantic.

51.      On information and belief, CF Acquisitions LLC ("CFA") is a revoked Delaware limited liability company, wholly-owned by Atlantic.

52.     On information and belief, UGC is wholly-owned by CFH (UGC's sole general partner) and CFA (UGC's sole limited partner).

53.     On information and belief, Ad Tech Holdings GP BV is a Dutch private LLC ("Ad Tech-H"), wholly-owned by UGC.

54.     On information and belief, Ad Tech Cooperatief U.A. is a Dutch cooperative association ("Ad Tech-C"), wholly-owned by Ad Tech-H and UGC.

55.     On information and belief, Ad Tech BV is a Dutch private LLC ("Ad Tech"), wholly-owned by Ad Tech-C.

56.     This Complaint refers to Mr. Ferrer, Amstel, Kickapoo, Lupine, Atlantic, CFH, CFA, UGC, Ad Tech-H, Ad Tech-C, and Ad Tech as the "Ferrer Parties."

### C.    The Backpage Entities

### (Entities Formerly Owned by a Subsidiary of Medalist and Purchased by the Ferrer Parties)

57.    Dartmoor Holdings, LLC is a Delaware LLC ("Dartmoor").  From its formation until April 22, 2015, Dartmoor was a wholly-owned subsidiary of Camarillo, which was its manager and its member.  On April 22, 2015, Dartmoor became a wholly-owned subsidiary of Vermillion, which became its manager and its member.

58.    IC Holdings, LLC is a Delaware LLC ("IC") and, on information and belief, a wholly-owned subsidiary of Dartmoor.  From its formation until at least April 22, 2015, Dartmoor was IC's manager and its member.

59.    On information and belief, Backpage is a wholly-owned subsidiary of IC.  From its formation until at least April 22, 2015, IC was Backpage's member. From January 17, 2013, until at least April 22, 2015, Mr. Ferrer was Backpage's manager.

60.    Website Technologies, LLC is a Delaware LLC ("Website Tech") and, on information and belief, a wholly-owned subsidiary of Dartmoor.  From its formation until at least April 22, 2015, Dartmoor was Website Tech's manager and its member.

61.    Posting Solutions, LLC is a Delaware LLC ("Posting Solutions") and, on information and belief, a wholly-owned subsidiary of Dartmoor.  From its

formation until at least April 22, 2015, Dartmoor was Posting Solutions' manager and its member.

62.    Postfaster, LLC is a Delaware LLC ("Postfaster") and, on information and belief, a subsidiary of Posting Solutions.  From its formation until at least April 22, 2015, Posting Solutions was Postfaster's manager and its member.

63.    This Complaint refers to Dartmoor, IC, Backpage, Website Tech, Posting Solutions, and Postfaster as the "Domestic Backpage Entities."

64.    This Complaint refers to the limited liability company agreements of Dartmoor, IC, Backpage, Website Tech, Posting Solutions, and Postfaster, collectively, as the "Domestic Backpage Entities' LLC Agreements."

65.    Classified Strategies Cooperatief U.A. is a Dutch cooperative association with exclusion of liability ("CSC").  From its formation until on or about April 22, 2015, IC owned 99% of CSC and Website Tech owned 1% of CSC.  On or about April 22, 2015, IC's interests in CSC were transferred to Vermillion.  On April 22, 2015, Website Tech sold its 1% interest in CSC to Ad Tech-H.

66.    Payment Solutions, B.V. is a Dutch private LLC ("PS").  From its formation until at least April 22, 2015, PS was wholly-owned by CSC.

67.    Classified Solutions Ltd. is a United Kingdom private limited company ("CSL").  From its formation until April 22, 2015, CSL was wholly-

owned by Website Tech.  On or about April 22, 2015, Website Tech's interests in
CSL were transferred to Vermillion.

68.     Les Backpage Enterprises Inc. is a Quebec corporation a/k/a
Backpage Enterprises Inc. ("BEI").  From its formation until April 22, 2015, BEI
was wholly-owned by IC.  On or about April 22, 2015, IC's interests in BEI were
transferred to Vermillion.

69.     This Complaint refers to CSC, PS, CSL, and BEI as the "Foreign
Backpage Entities."

70.     This Complaint refers to the Domestic Backpage Entities and the
Foreign Backpage Entities, collectively, as the "Backpage Entities."

## III.    Jurisdiction

71.     The Court has personal jurisdiction over Amstel, Lupine, Kickapoo,
CFH, CFA, Dartmoor, IC, Backpage, Website Tech, Posting Solutions, and
Postfaster because each is a Delaware LLC.

72.     Paragraph 8.9(b) of the Domestic Purchase Agreement, as defined
below in Paragraph 113, executed by Atlantic, and Paragraph 13.4 of the Domestic
Loan Agreement, as defined below in Paragraph 126, executed by Atlantic, each
state:  "Each of the parties hereto irrevocably and unconditionally submits, for
itself and its property, to the nonexclusive jurisdiction of the state and federal
courts of the State of Delaware sitting in New Castle County . . ."

16

73.     As Atlantic consented to jurisdiction in this Court, the Court has personal jurisdiction over Atlantic.

74.     Paragraph 7.9(b) of the Foreign Purchase Agreement, as defined below in Paragraph 136, executed by UGC, and Paragraph 13.4 of the Foreign Loan Agreement, as defined below in Paragraph 139, executed by UGC, each state: "Each of the parties hereto irrevocably and unconditionally submits, for itself and its property, to the nonexclusive jurisdiction of the state and federal courts of the State of Delaware sitting in New Castle County . . ."

75.     As UGC consented to jurisdiction in this Court, the Court has personal jurisdiction over UGC.

76.     Ad Tech-H, Ad Tech-C, Ad Tech, CSC, PS, CSL, and BEI executed the Foreign Guarantees, as defined below in Paragraph 144.  Each of the Foreign Guarantees states, in Paragraph 14:  "If Lender commences such an action in a state or federal court located in the County of New Castle, State of Delaware, Guarantor hereby agrees that it will submit and does hereby irrevocably submit to the personal jurisdiction of such courts . . ."

77.     As Ad Tech-H, Ad Tech-C, Ad Tech, CSC, PS, CSL, and BEI each consented to jurisdiction in this Court, the Court has personal jurisdiction over Ad Tech-H, Ad Tech-C, Ad Tech, CSC, PS, CSL, and BEI.

17

78.     Subject matter jurisdiction in the Court of Chancery is proper pursuant to 10 *Del. C.* §341 and 6 *Del. C.* §18-111.  The Court of Chancery holds exclusive jurisdiction over advancement and indemnification actions involving Delaware business entities.

## IV.     The Domestic Backpage Entities Are Obligated by their LLC Agreements to Advance Defense Costs and Expenses for Plaintiffs

### A.     *Dartmoor*

79.     Paragraph 8.2 of Dartmoor's Amended and Restated LLC Agreement, dated April 22, 2015, states:

> "8.2 Indemnities. The ***Company shall*** indemnify, ***defend*** and hold harmless each ***Member, the Manager, the affiliates of each Member and the Manager, and their respective managers, members, directors, officers, employees***, or agents (severally, the "Indemnified Person," and collectively, the "Indemnified Persons"), from and against any loss, damage, liability, cost or expense (***including fees and expenses of counsel selected by the Indemnified Person***) to which the Indemnified Person may become subject ***arising out of or in connection with the Company and its activities to the fullest extent permitted by law*** if such Indemnified Person acted in good faith and in a manner which he believed to be in or not opposed to the best interests of the Company. ***Such fees and expenses of counsel shall be paid by the Company as they are incurred*** . . ."

(emphasis supplied).

80.     Until April 22, 2015, the Medalist Officers were officers of Camarillo, which then was Dartmoor's manager and member.

81.     Until April 22, 2015, the Medalist Officers were directors, officers, or employees of one or more of Medalist, Leeward, Camarillo, Cereus, Vermillion,

Shearwater, and the Backpage Entities, each of which was an affiliate of Dartmoor's managers and members (Camarillo or Vermillion).

82.     Until April 22, 2015, Messrs. Larkin, Spear, and Brunst were officers of Dartmoor, which then was an affiliate of Dartmoor's managers and members (Camarillo or Vermillion).

83.     For these and other reasons, the Medalist Officers were and are "Indemnified Persons" entitled to the advancement of defense costs and expenses under the Dartmoor LLC Agreement.

84.     Until April 22, 2015, Camarillo or Vermillion was the member and manager of Dartmoor, and the other Medalist Entities, Vermillion, and Shearwater were affiliates of Camarillo and/or Vermillion.

85.     For these and other reasons, the Medalist Entities, Vermillion, and Shearwater were and are "Indemnified Persons" entitled to the advancement of defense costs and expenses under the Dartmoor LLC Agreement.

**B.     IC**

86.     Paragraph 8.2 of IC's LLC Agreement, dated January 3, 2013, states:

"8.2 Indemnities. ***The Company shall*** indemnify, ***defend*** and hold harmless each ***Member, the Manager, the affiliates of each Member and the Manager, and their respective directors, officers, employees***, or agents (severally, the "Indemnified Person," and collectively, the "Indemnified Persons"), from and against any loss, damage, liability, cost or expense (***including fees and expenses of counsel selected by the Indemnified Person***) to which the Indemnified Person may become subject ***arising out of or in connection with the business and operation of the Company to the***

19

> ***fullest extent permitted by law*** if such Indemnified Person acted in good faith and in a manner which he believed to be in or not opposed to the best interests of the Company, and with respect to any criminal action or proceeding had no reasonable cause to believe his conduct was unlawful. ***Such fees and expenses of counsel shall be paid by the Company as they are incurred*** . . ."

(emphasis supplied).

87.     Until April 22, 2015, Messrs. Larkin, Spear, and Brunst were officers of Dartmoor, which then was IC's manager and member.

88.     Until April 22, 2015, the Medalist Officers were directors, officers, or employees of one or more of Medalist, Leeward, Camarillo, Cereus, Vermillion, Shearwater, and the Backpage Entities, each of which was an affiliate of IC's manager and member (Dartmoor).

89.     Until April 22, 2015, Messrs. Larkin, Spear, and Brunst were officers of IC, which then was an affiliate of IC's manager and member (Dartmoor).

90.     For these and other reasons, the Medalist Officers were and are "Indemnified Persons" entitled to the advancement of defense costs and expenses under the IC LLC Agreement.

91.     Until April 22, 2015, Dartmoor was the member and manager of IC, and the Medalist Entities, Vermillion, and Shearwater were affiliates of Dartmoor.

92.     For these and other reasons, the Medalist Entities, Vermillion, and Shearwater were and are "Indemnified Persons" entitled to the advancement of defense costs and expenses under the IC LLC Agreement.

### C.      *Website Tech*

93.      Paragraph 8.2 of the Website Tech LLC Agreement, dated January 3, 2013, has advancement and indemnity provisions identical to those in Paragraph 8.2 of the IC LLC Agreement.

94.      Until April 22, 2015, Messrs. Larkin, Spear, and Brunst were officers of Dartmoor, which then was Website Tech's manager and member.

95.      Until April 22, 2015, the Medalist Officers were directors, officers, or employees of one or more of Medalist, Leeward, Camarillo, Cereus, Vermillion, Shearwater, and the Backpage Entities, each of which was an affiliate of Website Tech's manager and member (Dartmoor).

96.      Until April 22, 2015, Messrs. Larkin, Spear, and Brunst were officers of Website Tech, which then was an affiliate of Website Tech's manager and member (Dartmoor).

97.      For these and other reasons, the Medalist Officers were and are "Indemnified Persons" entitled to the advancement of defense costs and expenses under the Website Tech LLC Agreement.

98.      Until April 22, 2015, Dartmoor was the member and manager of IC, and the Medalist Entities, Vermillion, and Shearwater were affiliates of Dartmoor.

99.     For these and other reasons, the Medalist Entities, Vermillion, and Shearwater were and are "Indemnified Persons" entitled to the advancement of defense costs and expenses under the Website Tech LLC Agreement.

### D.     Posting Solutions

100.    Paragraph 8.2 of the Posting Solutions LLC Agreement, dated July 11, 2014, has advancement and indemnity provisions identical to those in Paragraph 8.2 of the IC LLC Agreement.

101.    Until April 22, 2015, Messrs. Larkin, Spear, and Brunst were officers of Dartmoor, which then was Posting Solutions' manager and member.

102.    Until April 22, 2015, the Medalist Officers were directors, officers, or employees of one or more of Medalist, Leeward, Camarillo, Cereus, Vermillion, Shearwater, and the Backpage Entities, each of which was an affiliate of Posting Solutions' manager and member (Dartmoor).

103.    For these and other reasons, the Medalist Officers were and are "Indemnified Persons" entitled to the advancement of defense costs and expenses under the Posting Solutions LLC Agreement.

104.    Until April 22, 2015, Dartmoor was the member and manager of Posting Solutions, and the Medalist Entities, Vermillion, and Shearwater were affiliates of Dartmoor.

105.   For these and other reasons, the Medalist Entities, Vermillion, and Shearwater were and are "Indemnified Persons" entitled to the advancement of defense costs and expenses under the Posting Solutions LLC Agreement.

### E.   *Postfaster*

106.   Paragraph 8.2 of the Postfaster LLC Agreement, dated July 11, 2014, has advancement and indemnity provisions identical to those in Paragraph 8.2 of the IC LLC Agreement.

107.   Until April 22, 2015, the Medalist Officers were directors, officers, or employees of one or more of Medalist, Leeward, Camarillo, Cereus, Vermillion, Shearwater, and the Backpage Entities, each of which was an affiliate of Postfaster's manager and member (Posting Solutions).

108.   For these and other reasons, the Medalist Officers were and are "Indemnified Persons" entitled to the advancement of defense costs and expenses under the Postfaster LLC Agreement.

109.   Until April 22, 2015, Posting Solutions was the member and manager of Postfaster, and the Medalist Entities, Vermillion, and Shearwater were affiliates of Posting Solutions.

110.   For these and other reasons, the Medalist Entities, Vermillion, and Shearwater were and are "Indemnified Persons" entitled to the advancement of defense costs and expenses under the Postfaster LLC Agreement.

### F.   Backpage

111.   Backpage's Amended and Restated LLC Agreement dated January

17, 2013, states, in pertinent part:

> "1.1 Definitions
> * * *
> **"Covered Person" means** any of the following Persons: (i) any
> **former**, current or future **Member**, (ii) the **Manager**, or (iii) any **former,
> current or future officer**.
> * * *
> **"Related Party" means**, with respect to a Covered Person, **any
> shareholder, officer, director, employee, member, manager** or partner **of a
> Covered Person** or any Person for which the Covered Person serves in any
> of such capacities, as the case may be.
> * * *
> "9.1 Indemnification of Agents . . . **the Company shall defend and
> indemnify any Covered Person or Related Party** from and against any and
> all Losses . . . as a result of such Covered Person's capacity or former
> capacity as a member, director or officer . . . **to the fullest extent permitted
> by applicable law** in effect on the date hereof and to such greater extent as
> applicable law may hereafter from time to time permit . . . **Losses incurred
> by an agent in defending any action, suit or proceeding, including a
> proceeding by or in the right of the Company, shall be paid by the
> Company to such agent in advance of final disposition of the proceeding**
> . . ."

(emphasis supplied).

112.   Until April 22, 2015, Messrs. Lacey, Spear, and Brunst were officers

of Backpage.

113.   Until April 22, 2015, Messrs. Larkin, Spear, and Brunst were officers

of Backpage's Member (IC).

24

114.   For these reasons and others, the Medalist Officers were and are "Covered Persons" and/or "Related Parties" under the Backpage LLC Agreement."

### G.   As to All the Backpage Domestic Entities

115.   The Membership Interest Purchase Agreement executed by Atlantic and Dartmoor, dated as of April 22, 2015 (the "Domestic Purchase Agreement"), states in Paragraph 5.5(a):

> "Purchaser agrees that ***all rights to*** indemnification, ***advancement of expenses*** and exculpation by the Company or the Company Subsidiaries now existing in favor of each Person who is now, or has been at any time prior to the Closing Date, an officer, director or manager of the Company, as provided in the Constitutional Documents of the Company or any Company Subsidiary, in each case as in effect on the Closing Date, or pursuant to any other agreements in effect on the Closing Date, ***shall survive the Closing Date and shall continue in full force and effect*** in accordance with their respective terms."

(emphasis supplied).

116.   The Domestic Purchase Agreement also states in Paragraph 5.5(c):

> "***The obligations of Purchaser and the Company under this Section 5.5 shall not be terminated or modified*** in such a manner as to adversely affect any director, officer or manager to whom this Section 5.5 applies ***without the consent of such affected director, officer or manager*** (it being expressly agreed that the directors, officers and managers to whom this Section 5.5 applies shall be third-party beneficiaries of this Section 5.5, each of whom may enforce the provisions of this Section 5.5)."

(emphasis supplied).

117.   Plaintiffs have not consented to any termination or modification of any such rights.

25

118. Because the Domestic Backpage Entities' LLC Agreements all require advancement and indemnification "to the fullest extent permitted by law" (or "to the fullest extent permitted by applicable law"), the Domestic Backpage Entities must, at a minimum, advance all defense costs and expenses incurred by the Medalist Parties in the Pending Actions and in defending any other actions arising out of their prior status or service as members, managers, affiliates, officers, directors, employees, or agents of the Domestic Backpage Entities or their affiliates.

119. The Medalist Parties' ability to defend themselves in the Pending Actions will be seriously impaired if the Domestic Backpage Entities continue to breach their obligations to advance defense costs and expenses for the Medalist Parties.

120. The Medalist Parties' ability to defend themselves in the Pending Actions will be seriously impaired if the Ferrer Parties, the Backpage Entities, and their counsel continue to interfere with the ability of Plaintiffs and their counsel to access the funds already advanced for the defense of the Medalist Parties.

## V.   The Ferrer Parties and the Backpage Entities Are Obligated Under Agreements Related to the Purchase of Backpage.com to Advance Defense Costs and Expenses to Plaintiffs

121.   On or about April 22, 2015, the Ferrer Parties purchased the domestic and foreign operations of Backpage.com, in two related transactions (one for the domestic operations and assets and one for the foreign operations and assets).

### A.   The Domestic Purchase and Loan Documents

122.   In connection with the Ferrer Parties' purchase of the domestic operations and assets of Backpage.com, Camarillo transferred 100% of the membership interests in Dartmoor to Camarillo's subsidiary Vermillion, immediately prior to the closing.

123.   Vermillion, Atlantic, and Dartmoor entered into the Domestic Purchase Agreement dated April 22, 2015, under which Atlantic purchased 100% of the membership interests in Dartmoor.

124.   The Domestic Purchase Agreement states:

> "6.2(b) . . . after the Closing **Purchaser [Atlantic] and the Company [Dartmoor] shall indemnify, defend and hold harmless Seller [Vermillion] and its Affiliates and their respective Representatives** (collectively, the "Seller Indemnitees") **against any and all Losses** incurred or suffered by a Seller Indemnitee as a result of, with respect to, or **in connection with**:
> \* \* \*

27

(iii) . . . **the** conduct, ownership, use, condition, possession or ***operation of the Business***,[1] the Company and the Company Subsidiaries[2] ***on, prior to, or after the Closing Date***;

(iv) ***any Legal Action that*** (a) the Company or any Company Subsidiary is subject to as of the Closing Date, and/or (b) ***the Seller, any Seller Affiliate, any Seller Representative, or any Seller Affiliate Representative is a party to relating to the Business on or after the Closing Date*** . . .

\* \* \*

7.1.

***"Losses" means*** . . . losses, liabilities, damages, penalties, ***costs and expenses, including reasonable attorneys' fees and expenses, expenses of investigation and defense, and the cost of enforcing any right to indemnification under this Agreement***.

\*\*\*

***"Representative" means***, with respect to any Person, any and all ***directors***, managing members, managers, ***officers, employees***, consultants, financial advisors, counsel, accountants ***and other agents*** of such Person.

(emphasis supplied).

125.   Plaintiffs are Seller Indemnitees under the Domestic Purchase Agreement because they are either the Seller, its Affiliates, or their Representatives, as those terms are defined in Domestic Purchase Agreement.

---

[1] The "Business" was defined in the recitals of the Domestic Purchase Agreement as "the business of owning, operating, hosting and providing administrative support services to an online general classified website and other speech generated by third parties in the United States"—in other words, Backpage.com.

[2] The term "Company Subsidiaries" was defined in Paragraph 1.4 of the Domestic Purchase Agreement as IC, Backpage, Website Tech, Posting Solutions, and Postfaster.

126.    In connection with the Domestic Purchase Agreement, Atlantic entered into a Loan Agreement with Vermillion dated April 22, 2015 (the "Domestic Loan Agreement)."

127.    The Domestic Loan Agreement states:

> 1.1.    **"Indemnified Party(ies)" shall mean**, severally and collectively, as the context requires, each of **Lender and any parent corporation, Affiliate** or Subsidiary **of Lender, and** each of **their respective officers, directors, employees**, attorneys **and agents**, and all of such parties and entities.
>
>     \* \* \*
>
> 13.17 Indemnification. **Borrower agrees to defend (with counsel satisfactory to Lender)**, protect, **indemnify**, exonerate and hold harmless **each Indemnified Party from and against any and all** liabilities, obligations, losses, damages, penalties, actions, judgments, suits, claims, costs, **expenses** and distributions of any kind or nature (**including the disbursements and the reasonable fees of counsel for each Indemnified Party** . . .), **which may be** imposed on, **incurred by**, or asserted against, **any Indemnified Party** . . . **in any manner relating to or arising out of this Agreement** . . . **or under any other agreement between Borrower and Lender** . . . **to the maximum extent permitted by applicable law** . . . **Any** liability, obligation, loss, damage, penalty, cost or **expense covered by this indemnity shall be paid to each Indemnified Party on demand, and** . . . **be secured by the Collateral** . . .**"**

(emphasis supplied).

128.    Plaintiffs are Indemnified Parties under the Domestic Loan Agreement because they are either the Lender, a parent, Affiliates, or their respective officers, directors, employees, attorneys, and agents, as those terms are defined in Domestic Loan Agreement.

29

129.   Immediately following the closing of the transactions under the Domestic Purchase Agreement and the Domestic Loan Agreement, Vermillion assigned its rights under the Domestic Purchase Agreement, the Domestic Loan Agreement, and related documents to Shearwater.  Shearwater thereafter filed financing statements with the Delaware Secretary of State and the Recorder of Deeds in the District of Columbia.

130.   Shearwater's filing of its financing statements perfected its first-priority security interest in the Collateral (as defined in the Domestic Loan Agreement and related documents), including in the Retainers.

131.   In connection with the Domestic Purchase Agreement and the Domestic Loan Agreement, Mr. Ferrer, Amstel, Kickapoo, Lupine, Dartmoor, Website, IC, Backpage, Posting Solutions, and Postfaster executed Guarantees dated April 22, 2015 (the "Domestic Guarantees").

132.   The Domestic Guarantees state:

"1.  . . . *each of the undersigned guarantors* (severally and collectively, "Guarantor") hereby absolutely, *unconditionally*, and irrevocably *guarantees*, jointly and severally, *prompt payment when due*, and at all times thereafter, *of* any and *all* debts, liabilities, *obligations*, covenants and agreements *under* or in connection with or evidenced by: . . . (b) that certain *Loan Agreement* of on or about even date herewith . . .; (c) that certain *Membership Interest Purchase Agreement* of on or about even date herewith . . ."

(emphasis supplied).

30

133.    The provisions of the Domestic Purchase Agreement require Atlantic and Dartmoor to defend Plaintiffs against any legal actions related to Backpage.com, including paying all defense costs and expenses for, and to indemnify, Plaintiffs.

134.    The provisions of the Domestic Loan Agreement require Atlantic to advance defense costs and expenses to Plaintiffs and to indemnify Plaintiffs for claims arising under the Domestic Loan Agreement, as well as under any other agreements among the parties, including the Domestic Purchase Agreement and the Litigation Management Agreement (as defined below).

135.    The provisions of the Domestic Guarantees require Mr. Ferrer, Amstel, Kickapoo, Lupine, Dartmoor, Website, IC, Backpage, Posting Solutions, and Postfaster to advance defense costs and expenses to the Medalist Parties in accordance with the terms of the Domestic Purchase Agreement and the Domestic Loan Agreement.

### B.    *The Foreign Purchase and Loan Documents*

136.    In connection with the purchase of the foreign operations and assets of Backpage.com, Vermillion and UGC entered into a Purchase and Sale Agreement dated April 22, 2015 (the "Foreign Purchase Agreement"), under which UGC, among other things, purchased Vermillion's interests in CSC, PS, CSL, and BEI.

137.    The Foreign Purchase Agreement states:

31

5.2(b):  "… after the Closing *Purchaser* and the Company *shall indemnify, defend and hold harmless Seller and its Affiliates and their respective Representatives* (collectively, the "*Seller Indemnitees*") *against any and all Losses* incurred or suffered by a Seller Indemnitee as a result of, with respect to, or *in connection with*:

*** 

(iii) . . . *the* conduct, ownership, use, condition, possession or *operation of the Business*[3] or the Subsidiaries[4] *on, prior to, or after the Closing Date*;

(iv) *any Legal Action that* (a) any Subsidiary is subject to as of the Closing Date, and/or (b) *the Seller, any Seller Affiliate, any Seller Representative, or any Seller Affiliate Representative is a party to relating to the Business on or after the Closing Date* . . .

*** 

6.1

"*Losses*" *means*, without duplication for purposes of recovery, losses, liabilities, damages, penalties, *costs and expenses, including reasonable attorneys' fees and expenses, expenses of investigation and defense, and the cost of enforcing any right to indemnification under this Agreement.*

"*Representative*" *means*, with respect to any Person, any and all *directors*, managing members, managers, *officers, employees*, consultants, financial advisors, counsel, accountants *and other agents* of such Person."

(emphasis supplied).

138.   Plaintiffs are Seller Indemnitees under the Foreign Purchase

Agreement because they are either the Seller, its Affiliates, or their

Representatives, as those terms are defined in Foreign Purchase Agreement.

---

[3] The "Business" was defined in the recitals of the Foreign Purchase Agreement as "the business of owning, operating, hosting and providing administrative support services to an online general classified website and other speech generated by third parties outside the United States of America"—in other words, Backpage.com.

[4] The term "Subsidiaries" was defined in Paragraph 6.1 of the Foreign Purchase Agreement as "collectively CSC, CSL, BEI and PS."

139.   In connection with the Foreign Purchase Agreement, UGC entered into a Loan Agreement with Vermillion dated April 22, 2015 (the "Foreign Loan Agreement)."

140.   The Foreign Loan Agreement states:

1.1.   *"Indemnified Party(ies)" shall mean*, severally and collectively, as the context requires, each of *Lender and any parent corporation, Affiliate* or Subsidiary *of Lender, and* each of *their respective officers, directors, employees*, attorneys *and agents*, and all of such parties and entities.
* * *

13.17 Indemnification. *Borrower agrees to defend (with counsel satisfactory to Lender)*, protect, *indemnify*, exonerate and hold harmless *each Indemnified Party from and against any and all* liabilities, obligations, losses, damages, penalties, actions, judgments, suits, claims, costs, *expenses* and distributions of any kind or nature (*including the disbursements and the reasonable fees of counsel for each Indemnified Party* . . .), *which may be* imposed on, *incurred by*, or asserted against, *any Indemnified Party* . . . *in any manner relating to or arising out of this Agreement* . . . *or under any other agreement between Borrower and Lender* . . . *to the maximum extent permitted by applicable law* . . . *Any* liability, obligation, loss, damage, penalty, cost or *expense covered by this indemnity shall be paid to each Indemnified Party on demand, and* . . . *be secured by the Collateral*."

(emphasis supplied).

141.   Plaintiffs are Indemnified Parties under the Foreign Loan Agreement because they are either the Lender, a parent, Affiliates, or their respective officers, directors, employees, attorneys, and agents, as those terms are defined in Foreign Loan Agreement.

33

142.   Immediately following the closing of the transactions under the

Foreign Purchase Agreement and the Foreign Loan Agreement, Vermillion

assigned its rights under the Foreign Purchase Agreement, the Foreign Loan

Agreement, and related documents to Shearwater.  Shearwater thereafter filed

financing statements with the Delaware Secretary of State and the Recorder of

Deeds in the District of Columbia.

143.   Shearwater's filing of its financing statements perfected its first-

priority security interest in the Collateral (as defined in the Foreign Loan

Agreement and related documents), including in the Retainers.

144.   In connection with the Foreign Purchase Agreement and the Foreign

Loan Agreement, Mr. Ferrer, Amstel, Kickapoo, Lupine, CFH, CFA, Atlantic, Ad

Tech-H, Ad Tech-C, Ad Tech, CSL, CSC, PS, and BEI executed Guarantees dated

April 22, 2015 (the "Foreign Guarantees").

145.   The Foreign Guarantees state:

"1.  . . . ***each of the undersigned guarantors*** (severally and collectively,
"Guarantor") hereby absolutely, ***unconditionally***, and irrevocably
***guarantees***, jointly and severally, ***prompt payment when due***, and at all
times thereafter, ***of*** any and ***all*** debts, liabilities, ***obligations***, covenants and
agreements ***under*** or in connection with or evidenced by: . . . (b) that certain
***Loan Agreement*** of on or about even date herewith . . .; (c) that certain
***Purchase and Sale Agreement*** of on or about even date herewith . . ."

(emphasis supplied).

146.    The provisions of the Foreign Purchase Agreement require UGC to defend Plaintiffs against any legal actions related to Backpage.com, including paying all defense costs and expenses for, and to indemnify, Plaintiffs.

147.    The provisions of the Foreign Loan Agreement require UGC to advance defense costs and expenses to Plaintiffs and to indemnify Plaintiffs for claims arising under the Foreign Loan Agreement, as well as under any other agreements among the parties, including the Foreign Purchase Agreement and the Litigation Management Agreement (as defined below).

148.    The provisions of the Foreign Guarantees require Mr. Ferrer, Amstel, Kickapoo, Lupine, CFH, CFA, Atlantic, Ad Tech-H, Ad Tech-C, Ad Tech, CSL, CSC, PS, and BEI to advance defense costs and expenses to Plaintiffs in accordance with the terms of the Foreign Purchase Agreement and the Foreign Loan Agreement.

## VI.    The Ferrer Parties and the Backpage Entities Are Obligated Under a Common Interest and Litigation Management Agreement to Advance Defense Costs and Expenses for Plaintiffs

149.    The Ferrer Parties, the Backpage Entities, and most Plaintiffs executed a Common Interest and Litigation Management Agreement dated December 30, 2016 (the "Litigation Management Agreement").

150.    Paragraph 1 of the Litigation Management Agreement states:

"During its term, this Agreement will apply to any civil, administrative, or criminal actions threatened or pending, now or in the future, against any of

the Parties, if the action is premised (or reasonably believed to be premised), whether directly or indirectly, on the content posted to Backpage.com by its users, including, but not limited to:

    a) claims premised on how content posted to Backpage.com by its users was or was not moderated;

    b) claims premised on Backpage.com's moderation guidelines or policies;

    c) claims premised on Backpage.com misusing intellectual property rights of users or violating users' rights of privacy;

    d) claims premised on Backpage.com providing accounts to users or failing to revoke accounts of Backpage.com users;

    e) claims premised on Backpage.com being the creator of content on its website or on affiliated websites;

    f) claims premised on Backpage.com's receipt of payments from classified ads alleged to relate to illegal activities;

    g) claims premised on Backpage.com's receipt of payments for classified ads through affiliates;

    h) claims premised on any of the Parties, or any of their officers, directors, employees, or agents, knowing or being chargeable with knowledge that Backpage.com users posted classified ads related to illegal activities; and

    i) claims for which the First Amendment to the United States Constitution or Section 230 of the Communications Decency Act of 1996 arguably would provide a defense.

This Agreement also applies to litigation relating to the subpoena issued by the PSI and any future litigation related to that or any other PSI subpoena. This Agreement also applies to the litigation against the Sheriff of Cook County. This Agreement also applies to any action filed by one or more of the Parties to address proactively or to remedy threatened or pending claims as described above."

151.    Paragraph 2(a) of the Litigation Management Agreement states:

"To the extent permitted by the applicable ethical rules, the Parties agree that, ***in all threatened or pending civil litigation*** subject to this Agreement, one or more of ***the Medalist Parties and*** one or more of ***the Ferrer Parties will jointly engage counsel to represent the collective interests of the Medalist Parties and the Ferrer Parties*** in the litigation, ***regardless of which of the Parties might be named*** as a party in the action."

36

(emphasis supplied).

152.   Paragraph 2(a) of the Litigation Management Agreement states:

"To the extent permitted by the applicable ethical rules, the Parties
agree that, *in all threatened or pending criminal litigation* subject to
this Agreement, one or more of *the Medalist Parties and* one or more
of *the Ferrer Parties will jointly engage counsel to assert defenses in
the litigation based on the First Amendment to the United States
Constitution, Section 230 of the Communications Decency Act of
1996, and other similar defenses common to all potential parties*,
regardless of which of the Parties might be the targets of the action, to
protect the collective interests of the Medalist Parties and the Ferrer
Parties."

(emphasis supplied).

153.   Paragraph 2(d) of the Litigation Management Agreement states:

"*Atlantic and UGC will pay all fees and costs incurred for the
counsel jointly representing the collective interests of the Parties* in
all threatened, pending, or future litigation subject to this Agreement."

(emphasis supplied).

## VII.   The Pending Actions and History of Advancement by the Ferrer Parties and the Backpage Entities

### A.   *The Pending Civil Actions*

154.   The Medalist Parties currently are, or have recently been, defendants

or the subjects of investigations in the matters identified below:

a.   Alabama:  In the Circuit Court of Houston County, No. 38-CV-

2017-900041, *K.R. v. Backpage.com, LLC; Camarillo Holdings, LLC; Medalist

Holdings, Inc.; Leeward Holdings, LLC; Dartmoor Holdings, LLC; IC Holdings,*

37

*LLC; Atlantische Bedrijven C.V.; Carl Ferrer; James Larkin; Michael Lacey; Choice Hotels International, Inc.; Veda LLC; Nirav Joshi; Santiago Alonso; Fictitious Defendants A, B, and C.* An accurate copy of the second amended complaint in this action (excluding exhibits) is attached (Exhibit 1).

b.     Alabama: In the Circuit Court of Jefferson County, Case No. 01-CV-2018-901853, *T.T. v. Jupiter Enterprises, LLC; Sunrise Hospitality, LLC; Backpage.com, LLC; Camarillo Holdings, LLC; Medalist Holdings, Inc.; Leeward Holdings, LLC; Dartmoor Holdings, LLC; IC Holdings, LLC; Atlantische Bedrijven C.V.; Website Technologies, LLC; Posting Solutions, LLC; Amstel River Holdings, LLC; Ad Tech B.V.; UGC Tech Group C.V.; Carl Ferrer; James Larkin; Michael Lacey; Fictitious Defendants A, B, and C, whether singular or plural, that person, firm, or corporation who or which owned, operated, managed, or staffed the motel called the Birmingham Garden Inn & Suites on Crestwood Boulevard in Birmingham, Jefferson County, Alabama, in May 2016; FICTITIOUS DEFENDANTS D, E, and F, whether singular or plural, that person, firm, or corporation who or which were responsible for the safety and well-being of the guests at the Birmingham Garden Inn & Suites on Crestwood Boulevard in Birmingham, Jefferson County, Alabama, in May 2016; FICTITIOUS DEFENDANTS G, H, and I, whether singular or plural, that person, firm, or corporation who or which hired or trained the staff working in May 2016 at the*

*Birmingham Garden Inn & Suites on Crestwood Boulevard in Birmingham,
Jefferson County, Alabama; FICTITIOUS DEFENDANTS J, K, and L, whether
singular or plural, that person, firm, or corporation who or which destroyed,
discarded, concealed, fabricated, altered, or otherwise spoliated evidence relevant
to the negligence and wantonness made the basis of this suit; FICTITIOUS
DEFENDANTS M, N, and O, whether singular or plural, that person, firm, or
corporation which or whose negligence, wantonness, willfulness, or other
wrongful conduct caused the wrongful acts and damages made the basis of this
suit; FICTITIOUS DEFENDANTS P, Q, and R, whether singular or plural, that
person, firm, or corporation who or which owned, operated, and controlled
www.backpage.com, including its content, during and after the time that the
"adult" advertisements involving the Plaintiff were published on
www.backpage.com; FICTITIOUS DEFENDANTS S, T, and U, whether singular
or plural, that person, firm, or corporation who or which on the occasion made the
basis of this suit, were the principals of any of the named or above-described
fictitious party defendants; FICTITIOUS DEFENDANTS V, W, and X, whether
singular or plural, that person, firm, or corporation who or which are successors-
in-interest of the named or above-described Fictitious Party Defendants;
FICTITIOUS DEFENDANTS Y, Z, and AA, whether singular or plural, that
person, firm, or corporation who or which are predecessors-in-interest of the*

39

*named or above-described Fictitious Party Defendants; FICTITIOUS*

*DEFENDANTS BB, CC, and DD, whether singular or plural, that person, firm, or*

*corporation who or which were acting as an agent, employee, servant, or*

*contractor of the named or above-described Fictitious Party Defendants.*  An

accurate copy of the complaint in this action is attached (Exhibit 2).

      c.    California:  Superior Court for the County of Riverside, No.

MCC1700068, *Jane Doe, individually, by and through her Guardian Ad Litem,*

*S.B. v. Medalist Holdings, Inc.; Leeward Holdings, L.L.C.; Camarillo Holdings,*

*L.L.C.; Dartmoor Holdings, L.L.C.; IC Holdings, L.L.C.; Backpage.com, L.L.C.,*

*UGC Tech Group C.V.; Carl Ferrer; James Larkin; Michael Lacey; and John Doe*

*1-5.*  An accurate copy of the first amended complaint in this action (excluding

exhibits) is attached (Exhibit 3).

      d.    Florida:  U.S.D.C., M.D. Fla., Case No. 6:17-cv-218-JA-TBS,

*Florida Abolitionist, Inc.; Jane Doe #1; Jane Doe #2; and Susan Roe v.*

*Backpage.com LLC; Carl Ferrer; Michael Lacey; James Larkin; Website*

*Technologies, LLC; IC Holdings LLC; Dartmoor Holdings LLC; Camarillo*

*Holdings LLC; Atlantische Bedrijven CV; Kickapoo River Investments, LLC;*

*Amstel River Holdings LLC; Postfaster LLC; Classified Solutions Ltd; Medalist*

*Holdings, Inc; Ad Tech BV; UGC Tech Group CV; Posting Solutions LLC; and*

*Cereus Properties LLC.*  An accurate copy of the first amended complaint in this

action (excluding exhibits) is attached (Exhibit 4).

e.      Illinois:  Circuit Court of Cook County, No. 2017L004979,

*Yvonne Ambrose, individually and as Administrator for the Estate of Desiree*

*Robinson, Deceased v. Backpage.com, L.L.C.; Back Page, L.L.C.; Medalist*

*Holdings, L.L.C.; Leeward Holdings, L.L.C.; Camarillo Holdings, L.L.C.;*

*Dartmoor Holdings, L.L.C.; IC Holdings, L.L.C.; UGC Tech Group C.V.; Website*

*Technologies, L.L.C.; Posting Solutions L.L.C.; Amstel River Holdings, L.L.C.; Ad*

*Tech BV; Cereus Properties LLC; Atlantische Bedrijven C.V.; Joseph Hazley,*

*Charles Mcfee, Michael Lacey, James Larkin, Scott Spear, Dan Hyer, Andrew*

*Padilla, Joye Vaught and Antonio Rosales*.  An accurate copy of the fifth amended

complaint in this action (excluding exhibits) is attached (Exhibit 5).

f.      Massachusetts:  U.S.D.C., D. Mass., Case No. 1:17-cv-11069-

LTS, *Jane Doe No. 1, Jane Doe No. 2, and Jane Doe No. 3 v. Backpage.com, LLC,*

*Carl Ferrer, Michael Lacey, and James Larkin*.  An accurate copy of the first

amended complaint in this action (excluding exhibits) is attached (Exhibit 6).

g.      Missouri:  *In the Matter of Backpage.com*, Civil Investigative

Demand No. SL-01-17; *In the Matter of Backpage.com*, Civil Investigative

Demand No. SL-04-17; *State of Missouri v. Backpage.com, LLC*, In the Eleventh

Judicial Circuit, Circuit Judge Division, Case No. 1711-CC00589; Backpage.com,

LLC v. Hawley, U.S.D.C., E.D. Mo., No. 4:17-cv-01951-PLC.  Accurate copies of

the Investigative Demands, the Petition to Enforce Civil Investigative Demand,

and the Complaint for Injunctive and Declaratory Relief in these actions (excluding

exhibits) are attached (Exhibits 7, 8, 9, and 10).

      h.     Oregon:  U.S.D.C., D. Ore., Case No. 3:18-cv-00449-SB, *Scott*

*Kocher, in his capacity as Personal Representative of the Estate of Ashley Benson*

*v. Hilton Worldwide Holdings, Inc.; Hilton Domestic Operating Company, Inc.;*

*Hilton Franchise Holding, LLC; WMK Portland, LLC; Grace Lial; Medalist*

*Holdings, LLC; Leeward Holdings, LLC; Camarillo Holdings, LLC; Dartmoor*

*Holdings, LLC; IC Holdings, LLC; Backpage.com, LLC; UGC Tech Group C.V.;*

*Website Technologies, LLC; Atlantische Bedrijven C.V.; Amstel River Holdings,*

*LLC; Lupine Holdings, LLC; Kickapoo River Investments, LLC; CF Holdings GP,*

*LLC; CF Acquisitions, LLC; Carl Ferrer; Michael Lacey; James Larkin; and John*

*Does 1-5*.  An accurate copy of the first amended complaint in this action

(excluding exhibits), which has been removed to federal court, is attached (Exhibit

11).

      i.     Texas:  In the District Court of Dallas County, No. DC-17-

00951, *Plaintiff XXXXXXXX v. Medalist Holdings, LLC; Leeward Holdings, LLC;*

*Camarillo Holdings, LLC; Dartmoor Holdings, LLC; IC Holdings, LLC;*

*Backpage.com, LLC; UGC Tech Group CV; Website Technologies, LLC;*

*Atlantische Bedrijven C.V.; Amstel River Holdings, LLC; Lupine Holdings LLC; Kickapoo River Investments, LLC; CF Holdings GP, LLC; CF Acquisitions, LLC; Carl Ferrer; James Larkin; Michael Lacey; Michael Phillip Patrakis; and John Doe 1-5.*  An accurate copy of the first supplemental petition in this action (excluding exhibits) is attached (Exhibit 12).

          j.      Texas:  In the District Court of Harris County, No. 2018-04501, *Jane Doe #1 v. Backpage.com, LLC d/b/a Backpage, Carl Ferrer, Michael Lacey, James Larkin, John Brunst, Scott Spear, Medalist Holdings, LLC, Leeward Holdings, LLC, Camarillo Holdings, LLC, Dartmoor Holdings LLC, IC Holdings, LLC, Atlantische Bedrijven C.V., UGC Tech Group C.V., Amstel River Holdings, LLC, Lupine Holdings, LLC, Kickapoo River Investments, LLC, CF Holdings GP, LLC, CF Acquisitions LLC, Rutik, LLC d/b/a Palace Inn, Balaji Hotels, Inc. d/b/a Symphony Inn, Kiwi Hospitality - Houston, LLC d/b/a Quality Inn, Pilot Travel Centers, LLC d/b/a Flying J, Finefair, Inc. d/b/a Port Auto Truck Stop, Loves Travel Stops & Country Stores, Inc. d/b/a Love's Truck Stop #401, Loves Travel Stop 3940 N McCarty, TA Operating LLC, Palace Inn Franchising, LLC d/b/a Palace Inn Group, York Lodging Group, Corp. d/b/a Palace Inn, Villager's Lodging Group, L.L.C., Raytek Ventures, LLC, Marriott International, Inc. d/b/a The Westin Galleria Houston, Valplace Baytown Texas LP, Bica Hotels LLC, Ganga Krupa LLC, and HG Galleria I, II, III GP, L.P.*  An accurate copy of the

43

second amended petition in this action (excluding exhibits) is attached (Exhibit

13).

k.      Texas:  In the District Court of Harris County, No. 2018-09781,

*Jane Doe #2 v. Backpage.com, LLC d/b/a Backpage, Carl Ferrer, Michael Lacey,*

*James Larkin, John Brunst, Scott Spear, Medalist Holdings, LLC, Leeward*

*Holdings, LLC, Camarillo Holdings, LLC, Dartmoor Holdings LLC, IC Holdings,*

*LLC, Atlantische Bedrijven C.V., UGC Tech Group C.V., Amstel River Holdings,*

*LLC, Lupine Holdings, LLC, Kickapoo River Investments, LLC, CF Holdings GP,*

*LLC, CF Acquisitions LLC, Red Lion Hotels Corporation, Golden Spring*

*Enterprise, LLC d/b/a Americas Best Value Inn & Suites, Woodland Joint Venture,*

*LLC, Wyndham Hotel Management, Inc. and Wyndham Worldwide Corporation.*

An accurate copy of the petition in this action (excluding exhibits) is attached

(Exhibit 14).

l.      Texas:  In the District Court of Harris County, No. 2018-12781,

*Jane Doe #3 v. Backpage.com, LLC d/b/a Backpage, Carl Ferrer, Michael Lacy,*

*James Larkin, John Brunst, Medalist Holdings, LLC, Leeward Holdings, LLC,*

*Camarillo Holdings, LLC, Dartmoor Holdings, LLC, IC Holdings, LLC,*

*Atlantische Bedrijven C.V., UGC Tech Group C.V., Amstel River Holdings, LLC,*

*Lupine Holdings, LLC, Kickapoo River Investments, LLC, CF Holdings GP, LLC,*

*CF Acquisitions LLC, New Times Media, LLC, and Craigslist, Inc.*  An accurate

44

copy of the amended petition in this action (excluding exhibits) is attached (Exhibit 15).

m.      Texas:  In the District Court of Harris County, No. 2018-12747, *Jane Doe #4 v. Backpage.com, LLC d/b/a Backpage, Carl Ferrer, Michael Lacey, James Larkin, John Brunst, Scott Spear, Medalist Holdings, LLC, Leeward Holdings, LLC, Camarillo Holdings, LLC, Dartmoor Holdings LLC, IC Holdings, LLC, Atlantische Bedrijven C.V., UGC Tech Group C.V., Amstel River Holdings, LLC, Lupine Holdings, LLC, Kickapoo River Investments, LLC, CF Holdings GP, LLC, CF Acquisitions LLC, G6 Hospitality, LLC d/b/a Motel 6, and Nnjp LLC d/b/a Motel 6*.  An accurate copy of the petition in this action (excluding exhibits) is attached (Exhibit 16).

n.      Texas:  In the District Court of Harris County, No. 2018-27018, *Jane Doe #5 v. Backpage.com, LLC d/b/a Backpage, Carl Ferrer, Michael Lacey, James Larkin, John Brunst, Medalist Holdings, LLC, Leeward Holdings, LLC, Camarillo Holdings, LLC, Dartmoor Holdings LLC, IC Holdings, LLC, Atlantische Bedrijven C.V., UGC Tech Group C.V., Amstel River Holdings, LLC, Lupine Holdings, LLC, Kickapoo River Investments, LLC, CF Holdings GP, LLC, CF Acquisitions LLC, New Times Media, LLC, and Red Lion Hotels Corporation d/b/a Americas Best Inn 8201 Southwest Fwy, Houston, Tx 77074*. An accurate

copy of the amended petition in this action (excluding exhibits) is attached (Exhibit

17).

o.      Texas:  In the District Court of Harris County, No. 2018-30176,

*Jane Doe #6 v. Backpage.com, LLC d/b/a Backpage, Carl Ferrer, Michael Lacey,*

*James Larkin, John Brunst, Medalist Holdings, LLC, Leeward Holdings, LLC,*

*Camarillo Holdings, LLC, Dartmoor Holdings LLC, IC Holdings, LLC,*

*Atlantische Bedrijven C.V., UGC Tech Group C.V., Amstel River Holdings, LLC,*

*Lupine Holdings, LLC, Kickapoo River Investments, LLC, CF Holdings GP, LLC,*

*CF Acquisitions LLC, New Times Media, LLC, and Choice Hotels International,*

*Inc d/b/a Comfort Inn*. An accurate copy of the petition in this action (excluding

exhibits) is attached (Exhibit 18).

p.      Texas:  In the District Court of Harris County, No. 2018-32490,

*Jane Doe #7 v. Backpage.com, LLC d/b/a Backpage, Carl Ferrer, Michael Lacey,*

*James Larkin, John Brunst, Scott Spear, Medalist Holdings, LLC, Leeward*

*Holdings, LLC, Camarillo Holdings, LLC, Dartmoor Holdings LLC, IC Holdings,*

*LLC, Atlantische Bedrijven C.V., UGC Tech Group C.V., Amstel River Holdings,*

*LLC, Lupine Holdings, LLC, Kickapoo River Investments, LLC, CF Holdings GP,*

*LLC, CF Acquisitions LLC, New Times Media, LLC, Choice Hotels International,*

*Inc d/b/a Comfort Inn and Rodeway Inn, Wyndham Worldwide Corporation d/b/a*

*Days Inn, Super 8 Wichita Falls and Super 8 College Station, Intercontinental*

*Hotels Group PLC d/b/a Holiday Inn Dallas Market Center, Holiday Inn Hotel & Suites College Station-Aggieland and Holiday Inn Houston SW-Sugar Land, Best Western International, Inc. d/b/a Best Western Bowie Inn & Suites, Hyatt Hotels Corporation d/b/a Hyatt Regency Houston, Marriott International, Inc. d/b/a Courtyard By Marriott Houston Sugar Land and Courtyard By Marriott Bryan College Station, Red Lion Hotels Corporation d/b/a Americas Best Value Inn, G6 Hospitality, LLC d/b/a Motel 6, Balaji Hotels, Inc. d/b/a Symphony Inn & Suites, La Quinta Holdings Inc. d/b/a La Quinta Inn & Suites, Red Roof Inns, Inc. d/b/a Red Roof Inn, Red Roof Franchising, LLC d/b/a Red Roof Inn, and Radisson Business Group, Inc. d/b/a Country Inn & Suites By Radisson*. An accurate copy of the petition in this action (excluding exhibits) is attached (Exhibit 19).

        q.    Texas:  In the District Court of Nueces County, No. 2018CCV-61041-3, *Jane Doe #8 v. Backpage.com, LLC d/b/a Backpage, Carl Ferrer, Michael Lacey, James Larkin, John Brunst, Medalist Holdings, LLC, Leeward Holdings, LLC, Camarillo Holdings, LLC, Dartmoor Holdings LLC, IC Holdings, LLC , Atlantische Bedrijven C.V., UGC Tech Group C.V., Amstel River Holdings, LLC, Lupine Holdings, LLC, Kickapoo River Investments, LLC, CF Holdings GP, LLC , CF Acquisitions LLC, New Times Media, LLC, Catalina Hospitality, LLC, Choice Hotels International, Inc. d/b/a Rodeway Inn, Econo Lodge & Suites, Quality Inn & Suites, and Woodspring Suites, C.C. Host L.L.P, Red Lion Hotels*

*Corporation d/b/a Americas Best Value Inn, DHM Hospitality, LLC, Red Roof Inns, Inc. d/b/a Red Roof Inn, Ganesa L.L.C.,  La Quinta Holdings Inc. d/b/a La Quinta Inns & Suites and La Quinta Inn, CPLG Tx Properties L.L.C., Ashok N. Bhakta, Sangita A. Bhakta, Knights Franchise Systems, Inc. d/b/a Knights Inn, Ranjit and Gita L.L.C., Kosmada, LLC, Shi Sha, Inc., South Texas Hospitality, Ltd, Hospitality International, Inc. d/b/a Passport Inn, Prakash B. Patel, Days Inn Worldwide, Inc. d/b/a Days Inn, Siddhi Vinayak, L.P., Super 8 Worldwide, Inc. d/b/a Super 8, KNS Hospitality, Inc., Best Western International, Inc. d/b/a Best Western Paradise Inn, Kanti Bhakta, Inc., G6 Hospitality Property LLC d/b/a Studio 6 and Motel 6, Couture Hotel Corporation, Superior Hospitality, Inc., Satyanam Hospitality LLC, DHAA, LLC, Bhakta Minakshi Kiritkumar, Shiv Shankar Corporation, Bhartendu Patel, Shaila B. Patel, Umesh Bhakta, Jaishri Bhakta, RJK Hotel, LLC, Intown Suites Management, Inc. d/b/a Intown Suites and Sun Suites, SCH LH Corpus Christi, L.P., Jagu Govind, LLC, C. Christi Plaza Hospitality, Ltd., Hawthorne Suites Franchising, Inc. d/b/a Hawthorne Suites, Islander Investment, Inc., Five VP Texas, L.P., Intercontinental Hotels Group PLC d/b/a Holiday Inn, Corwell Hotel, LP, Radisson Hotels Management Corporation d/b/a Country Inn & Suites, Heritage Inn Number V Limited Partnership, Days Inn Worldwide, Inc. d/b/a Inns & Suites, and Bhakta Baldev*.  An accurate copy of the petition in this action is attached (Exhibit 20).

r.      Texas:  In the District Court of Harris County, No. 2018-69816,

*Jane Doe v. Facebook, Inc.; Backpage.com, LLC d/b/a Backpage; Carl Ferrer;*

*Michael Lacey; James Larkin; John Brunst; America's Inns, Inc. d/b/a America's*

*Inn 8201 Southwest Fwy, Houston, Tx 77074; and Texas Pearl, Inc*.  An accurate

copy of the first amended petition in this action is attached (Exhibit 25).

s.      Texas:  In the District Court of Harris County, No. 2018-82214,

*Jane Doe v. Facebook, Inc. d/b/a Instagram, Inc.; Backpage.com, LLC d/b/a*

*Backpage; Carl Ferrer; Michael Lacey; James Larkin; John Brunst; and Babasai*

*Inc., d/b/a Siesta Inn*.  An accurate copy of the petition in this action is attached

(Exhibit 26).

t.      Washington:  Superior Court of Pierce County, No. 13-2-

13382-8, *O.L. v. Backpage.com, L.L.C.; Village Voice Media, Inc.; Village Voice*

*Media Holdings, L.L.C., d/b/a Backpage.com; Medalist Holdings, Inc.; Leeward*

*Holdings, L.L.C.; Camarillo Holdings, L.L.C.; Dartmoor Holdings, L.L.C.; IC*

*Holdings, L.L.C.; UGC Tech Group C.V.; Website Technologies, LLC; Atlantische*

*Bedrijven C.V.; Amstel River Holdings, LLC; Lupine Holdings LLC; Kickapoo*

*River Investments LLC; CF Holdings GP, LLC; CF Acquisitions, LLC; Carl*

*Ferrer; James Larkin; Michael Lacey; Joshua Jones; Samuel Louis Miles-*

*Johnson; and John Doe 1-5*.  An accurate copy of the second amended complaint

in this action (excluding exhibits) is attached (Exhibit 21).

49

u.      Washington:  Superior Court of Pierce County, No. 17-2-04897-1, *R.O., by and through her mother S.H., and K.M., by and through her mother L.M. v. Medalist Holdings, Inc.; Leeward Holdings, L.L.C.; Camarillo Holdings, L.L.C.; Dartmoor Holdings, L.L.C.; IC Holdings, L.L.C.; Backpage.com, L.L.C.; UGC Tech Group C.V.; Website Technologies, LLC; Atlantische Bedrijven C.V.; Amstel River Holdings, LLC; Lupine Holdings LLC; Kickapoo River Investments LLC; CF Holdings GP, LLC; CF Acquisitions, LLC; Carl Ferrer; James Larkin; Michael Lacey; Curtis Escalante; Mikel Zachary Williams; Michael Williams; Keyon Simmons; and John Doe 1-5*. An accurate copy of the first amended complaint in this action (excluding exhibits) is attached (Exhibit 22).

155.   This complaint refers to the actions described in Paragraph 154, collectively, as the "Pending Civil Actions."

156.   The claims against the Medalist Parties in the Pending Civil Actions all arise out of and are related to the operation of Backpage.com by the Backpage Entities.

157.   To the extent the complaints in the Pending Civil Actions make any specific allegations against the Medalist Parties, they allege the Medalist Parties are responsible for harms arising from the operation of Backpage.com because the Medalist Parties owned, operated, or controlled the operation of Backpage.com,

engaged in misconduct related to the operation of Backpage.com, are alter egos of one or more of the Backpage Entities, or are responsible for the actions of Backpage.com despite their sale of Backpage.com and the Backpage Entities to the Ferrer Parties or based on their status as lenders to the Ferrer Parties and the Backpage Entities.

158.   The liability the plaintiffs in the Pending Civil Actions seek to impose on the Medalist Officers arise out of actions taken (or not taken) while the Medalist Officers served as directors, officers, employees, or agents of the Backpage Entities or affiliates.  The theories of liability asserted against the Medalist Officers are closely connected to actions allegedly taken (or not taken) by the Medalist Officers in their capacity as directors, officers, employees, or agents of the Backpage Entities or affiliates.

159.   From on or about the commencement of each of the Pending Civil Actions, until in or about March 2018, one or more of the Ferrer Parties or the Backpage Entities advanced all the defense costs and expenses for the Medalist Parties for each of the Pending Civil Actions.  One or more of the Ferrer Parties or the Backpage Entities also advanced all the defense costs and expenses for a civil action dismissed in 2015 (the dismissal of which was affirmed on appeal in 2016) and for a civil action that was dismissed in 2017, each of which named one or more of the Medalist Parties.

### B.      The Pending Criminal Actions

160.   The Medalist Officers currently are defendants in the following criminal actions pending in the courts identified below:

a.      California:  Superior Court of Sacramento County, Case No. 16FE024013, *People v. Carl Ferrer, Michael Lacey, and James Larkin*.  An accurate copy of the First Amended Criminal Complaint in this action is attached (Exhibit 23).

b.      Arizona:  U.S.D.C., D. Ariz., Case No. CR-18004222-PHX-SPL (BSB), *USA v. Michael Lacey, James Larkin, Scott Spear, John "Jed" Brunst, Dan Hyer, Andrew Padilla, and Joye Vaught*.  An accurate copy of the Superseding Indictment in this action is attached (Exhibit 24).

161.   This complaint refers to the actions described in Paragraph 160, collectively, as the "Pending Criminal Actions."  This Complaint refers to the Pending Civil Actions and the Pending Criminal Actions, collectively, as the "Pending Actions."

162.   The claims against the Medalist Parties in the Pending Criminal Actions all arise out of and are related to the operation of Backpage.com by the Backpage Entities.

163.   To the extent the complaints in the Pending Criminal Actions make any specific allegations against the Medalist Officers, they assert that the Medalist

52

Officers owned, operated, or controlled the operation of Backpage.com, that

certain aspects of the operation of Backpage.com were unlawful, that the Medalist

Officers engaged in misconduct related to the operation of Backpage.com, or that

the Medalist Officers are responsible for the actions of Backpage.com despite their

sale of Backpage.com to the Ferrer Parties.

164.   The criminal liability the plaintiffs in the Pending Criminal Actions

seek to impose on the Medalist Officers arise out of actions taken (or not taken)

while the Medalist Officers served as directors, officers, employees, or agents of

the Backpage Entities or affiliates.   The theories of liability asserted against the

Medalist Officers are closely connected to actions allegedly taken (or not taken) by

the Medalist Officers in their capacity as directors, officers, employees, or agents

of the Backpage entities or affiliates.

165.   From on or about the commencement of the criminal action pending

in California until in or about March 2018, one or more of the Ferrer Parties or the

Backpage Entities advanced all the defense costs and expenses for the two

Medalist Officers who are defendants in that action.

166.   Commencing in or after October 2016 until in or about March 2018,

one or more of the Ferrer Parties or the Backpage Entities advanced all the defense

costs and expenses for the Medalist Parties preceding the commencement of the

criminal action pending in Arizona, including defenses costs and expenses related to the grand jury proceedings preceding the indictment.

### C.   *As to All the Pending Actions*

167.   Section 145 of the Delaware General Corporation Law ("DGCL") has been interpreted broadly to include "all actions brought against an officer or director 'for wrongdoing that he committed in his official capacity,' and for all misconduct that allegedly occurred 'in the course of performing his day-to-day managerial duties.'"

168.   The claims against the Medalist Officers in the Pending Actions have a clear nexus to, and are intertwined with, their status as former directors, officers, employees, or agents of the Backpage Entities and affiliates.  The claims asserted against the Medalist Officers could not be asserted but for their previous roles with Backpage.com, the Backpage Entities, and affiliates and the conduct in which they allegedly engaged (or failed to engage) in those capacities.

169.   The claims against the Medalist Officers are not related solely to actions taken outside of their capacity as directors, officers, employees, or agents of the Backpage Entities.  To the contrary, the claims relate solely to actions taken in those capacities and/or to allegedly unlawful conduct related to the operation of Backpage.com.

54

## VIII.   The Advanced Fee Deposits

### A.   *Davis Wright Tremaine, LLP*

170.   From in or about 2012, Davis Wright Tremaine represented some of the Ferrer Parties, the Backpage Entities, and the Medalist Parties in litigation relating to Backpage.com.

171.   In 2017 and early 2018, one or more of the Ferrer Parties or the Backpage Entities, through a series of wire transfers, made advanced fee deposits totaling approximately ▆▆▆▆▆▆ with Davis Wright Tremaine, LLP (the "DWT Retainer"), to provide a source of funds to assure that the payment of the defense costs and expenses for the Pending Actions would not be interrupted.

172.   Following the criminal pleas of the Ferrer Parties and the Backpage Entities, Davis Wright Tremaine discontinued its representation of the Ferrer Parties and the Backpage Entities.

173.   On or about April 24, 2018, Mr. Ferrer wrote to Davis Wright Tremaine asserting that "the ▆▆▆▆▆▆ trust payment . . . was made by Backpage.com LLC," that the ▆▆▆▆▆▆ trust payment "remain[s] the property of Backpage," and demanding that Davis Wright Tremaine return the DWT Retainer to Backpage.

174.   The Medalist Parties objected to Mr. Ferrer's demand.

175.   Because of Mr. Ferrer's demand, the Medalist Parties were blocked from accessing the DWT Retainer to pay defense costs and expenses for the defense of the Medalist Parties in the Pending Actions.

176.   In a court filing in one of the Pending Civil Actions, the Ferrer Parties and the Backpage Entities admitted that their demand for the return of the DWT Retainer was made "[a]s part of their agreement to cooperate in the federal and state criminal cases." *R.O. v. Medalist Holdings, Inc., et al.*, Superior Court of Pierce County, Washington, No. 17-2-04897-1, Limited Objection to Plaintiffs' Proposed Form of Sanctions Order, June 26, 2018, p. 2.  In other words, the Ferrer Parties and the Backpage Entities demanded the return of the DWT Retainer at the behest of the opponents of the Medalist Parties in the Pending Criminal Actions.

## B.   *Perkins Coie LLP*

177.   Since 2015, Perkins Coie represented some of the Medalist Parties and some of the Backpage Entities in certain litigation and insurance matters related to Backpage.com.

178.   In 2017 and early 2018, one or more of the Ferrer Parties or the Backpage Entities, through a series of wire transfers, made advanced fee deposits with Perkins Coie LLP, and one of the Backpage Entities caused a reimbursement from an insurance carrier to be deposited with Perkins Coie LLP, to provide a source of funds to assure that the payment of the defense costs and expenses for the

56

Pending Actions would not be interrupted. After the payment of various expenses, Perkins Coie LLP now holds an advanced fee deposit of approximately ████████ (the "PC Retainer").

179. Following the criminal pleas of the Ferrer Parties and the Backpage Entities, Perkins Coie terminated its representation of the Ferrer Parties, the Backpage Entities, and the Medalist Parties.

180. On or about May 1, 2018, Mr. Ferrer wrote to Perkins Coie asserting that Perkins Coie held the PC Retainer in trust for Backpage and its affiliates, including Posting Solutions, Ad Tech, UGC, Website Tech, Atlantic, Amstel, Lupine, and Kickapoo. Mr. Ferrer demanded that Perkins Coie "immediately return all unused trust funds."

181. The Medalist Parties objected to Mr. Ferrer's demand.

182. Because of Mr. Ferrer's demand, the Medalist Parties were blocked from accessing the PC Retainer to pay defense costs and expenses for the defense of the Medalist Parties in the Pending Actions.

## C. *Prince Lobel Tye LLP*

183. From in or about 2014, Prince Lobel Tye LLP in Boston, Massachusetts, represented one or more of the Backpage Entities and one or more of the Medalist Parties in various actions in Massachusetts related to Backpage.com.

184.   In 2017, one or more of the Ferrer Parties or the Backpage Entities, through a series of wire transfers, made advanced fee deposits totaling ████ with Prince Lobel Tye LLP (the "Prince Lobel Retainer"), to provide a source of funds to assure that the payment of the defense costs and expenses for the Pending Actions in Massachusetts would not be interrupted.

185.   Following the criminal pleas of the Ferrer Parties and the Backpage Entities, Prince Lobel Tye terminated its representation of the Ferrer Parties, the Backpage Entities, and the Medalist Parties.

186.   Because of the disputes among the Medalist Parties, the Ferrer Parties, and the Backpage Entities over the Retainers, the Medalist Parties were blocked from accessing the Prince Lobel Retainer to pay defense costs and expenses for the defense of the Medalist Parties in the Pending Actions.

### D.   *Copeland, Franco, Screws & Gill, P.A.*

187.   From in or about March 2017, Copeland, Franco, Screws & Gill, P.A. in Montgomery, Alabama, represented some of the Ferrer Parties, the Backpage Entities, and the Medalist Parties in litigation in Alabama relating to Backpage.com.

188.   In 2017, one or more of the Ferrer Parties or the Backpage Entities, through a series of wire transfers, made advanced fee deposits totaling ████ with Copeland, Franco, Screws & Gill, P.A. (the "Copeland Franco Retainer"), to

provide a source of funds to assure that the payment of the defense costs and expenses for the Pending Actions in Alabama would not be interrupted.

189.    Following the criminal pleas of the Ferrer Parties and the Backpage Entities, Copeland, Franco, Screws & Gill, P.A. discontinued its representation of the Ferrer Parties and the Backpage Entities.

190.    Because of the disputes among the Medalist Parties, the Ferrer Parties, and the Backpage Entities over the Retainers, the Medalist Parties were blocked from accessing the Copeland Franco Retainer to pay defense costs and expenses for the defense of the Medalist Parties in the Pending Actions.

### E.    *Wayne B. Giampietro LLC*

191.    From in or about July 2017, Wayne B. Giampietro LLC in Chicago, Illinois, represented some of the Ferrer Parties, the Backpage Entities, and the Medalist Parties in litigation in Illinois relating to Backpage.com.

192.    In 2017, one or more of the Ferrer Parties or the Backpage Entities, through a wire transfer, made an advanced fee deposit totaling ████ with Wayne B. Giampietro LLC (the "Giampietro Retainer"), to provide a source of funds to assure that the payment of the defense costs and expenses for the Pending Action in Illinois would not be interrupted.

193.   Following the criminal pleas of the Ferrer Parties and the Backpage Entities, Wayne B. Giampietro LLC discontinued its representation of the Ferrer Parties and the Backpage Entities.

194.   Because of the disputes among the Medalist Parties, the Ferrer Parties, and the Backpage Entities over the Retainers, the Medalist Parties were blocked from accessing the Giampietro Retainer to pay defense costs and expenses for the defense of the Medalist Parties in the Pending Actions.

### F.   Walters Law Group

195.   From in or about March 2017, Walters Law Group, a professional association, in Longwood, Florida, represented some of the Ferrer Parties, the Backpage Entities, and the Medalist Parties in litigation in Florida relating to Backpage.com.

196.   In 2017, one or more of the Ferrer Parties or the Backpage Entities, through a series of wire transfers, made an advanced fee deposit totaling ███████ with the Walters Law Group (the "Walters Retainer"), to assure that the payment of the defense costs and expenses for the Pending Action in Florida would not be interrupted.

197.   Following the criminal pleas of the Ferrer Parties and the Backpage Entities, Walters Law Group discontinued its representation of the Ferrer Parties and the Backpage Entities.

60

198.   Because of the disputes among the Medalist Parties, the Ferrer Parties, and the Backpage Entities over the Retainers, the Medalist Parties were blocked from accessing the Walters Retainer to pay defense costs and expenses for the defense of the Medalist Parties in the Pending Actions.

### G.   Thompson Coburn LLP

199.   From in or about July 2017, Thompson Coburn LLP in St. Louis, Missouri, represented some of the Ferrer Parties, the Backpage Entities, and the Medalist Parties in investigations and litigation in Missouri relating to Backpage.com.

200.   In early 2018, one or more of the Ferrer Parties or the Backpage Entities, through a wire transfer, made an advanced fee deposit totaling ███████ with Thompson Coburn LLP (the "Thompson Coburn Retainer"), to assure that the payment of the defense costs and expenses for the Pending Actions in Missouri would not be interrupted.

201.   Following the criminal pleas of the Ferrer Parties and the Backpage Entities, Thompson Coburn LLP discontinued its representation of the Ferrer Parties and the Backpage Entities.

202.   Because of the disputes among the Medalist Parties, the Ferrer Parties, and the Backpage Entities over the Retainers, the Medalist Parties were blocked

from accessing the Thompson Coburn Retainer to pay defense costs and expenses for the defense of the Medalist Parties in the Pending Actions.

203.   This complaint refers to the DWT Retainer, the PC Retainer, the Prince Lobel Retainer, the Copeland Franco Retainer, the Giampietro Retainer, the Walters Retainer, and the Thompson Coburn Retainer, collectively, as the "Retainers."

## IX.   The Rusing Lopez & Lizardi, PLLC Trust Funds

204.   In 2017 and early 2018, one or more of the Ferrer Parties or the Backpage Entities, through a series of wire transfers, transferred approximately ▮▮▮▮▮▮ to Rusing Lopez & Lizardi, PLLC (the "RLL Trust Funds").

205.   In accordance with the terms of the promissory notes Mr. Ferrer executed pursuant to the Domestic Loan Agreement and the Foreign Loan Agreement in connection with the acquisition of Backpage.com (the "Promissory Notes"), one of the Medalist Officers directed that certain sums payable under the Promissory Notes be paid to Rusing Lopez & Lizardi PLLC, rather than being paid directly to one of the Medalist Entities.

206.   On March 8, 2018, John Brunst, the C.F.O. for Medalist and its affiliates, emailed Michael Gage, the C.F.O. of Backpage and its affiliates, saying Brunst was reconciling the balances of the Promissory Notes and would account for the approximately ▮▮▮▮▮▮ in wire transfers to Rusing Lopez & Lizardi,

PLLC as principal payments on the Promissory Notes.  Brunst asked Gage to identify whether each payment should be applied to reduce the balance of the Promissory Note associated with the Domestic Loan Agreement or the balance of the Promissory Note associated with the Foreign Loan Agreement.

207.   On March 9, 2018, Gage responded to Brunst, identifying four transfers to RLL that should be applied to reduce the balance of the Promissory Note associated with the Domestic Loan Agreement and three transfers to Rusing Lopez & Lizardi, PLLC that should be applied to reduce the balance of the Promissory Note associated with the Domestic Loan Agreement.  Exhibit 27 is a true and correct copy of Brunst's email to Gage.  Exhibit 28 is a true and correct copy of Gage's email responding to Brunst.

208.   The Medalist Entities accounted for all the payments to Rusing Lopez & Lizardi, PLLC as reductions in the balances due on the Promissory Notes and applied the payments to the Promissory Notes as directed by Mr. Gage.

209.   Because all the funds the Ferrer Parties or the Backpage Entities transmitted to Rusing Lopez & Lizardi PLLC were loan payments under the Domestic Loan Agreement and the Foreign Loan Agreement, the Ferrer Parties and the Backpage Entities had and have no further interest in the funds transmitted to Rusing Lopez & Lizardi PLLC.

210.   Mr. Ferrer, the other Ferrer Parties, and the Backpage Entities knew the Medalist Officer was directing that certain sums payable under the Promissory Notes be paid to Rusing Lopez & Lizardi PLLC to provide a supplemental source of funding for defense costs and expenses for the Pending Actions.

211.   On May 1, 2018, Mr. Ferrer wrote to Rusing Lopez & Lizardi PLLC stating that he understood that the "firm does not represent me individually or any of the entities I own" and asked the firm to clarify if that was incorrect.  Mr. Ferrer also said his "belief" was that Rusing Lopez & Lizardi PLLC had "approximately █████████ held in trust for his entities" as advanced fee deposits and requested the return of those funds.

212.   Because of Mr. Ferrer's demand, the Medalist Parties were blocked from accessing the RLL Trust Funds to pay defense costs and expenses for the defense of the Medalist Parties in the Pending Actions.

213.   Rusing Lopez & Lizardi, PLLC never sent an invoice to the Ferrer Parties or the Backpage Entities, whether for a retainer or for services rendered. Rusing Lopez & Lizardi, PLLC's invoices all were addressed and sent to one of the Medalist Entities.

214.   The Ferrer Parties and the Backpage Entities never paid Rusing Lopez & Lizardi, PLLC for an invoice it issued.

64

215.   The dispute over whether the transfers by the Ferrer Parties or the Backpage Entities to Rusing Lopez & Lizardi PLLC were payments under the Foreign Loan Agreement and the Domestic Loan Agreement (and, therefore, now belong solely to one of the Medalist Entities) or were advanced fee deposits is a dispute arising "out of or related to" the Foreign Loan Agreement and the Domestic Loan Agreement.

216.   On information and belief, the claims of the Ferrer Parties and the Backpage Entities to the RLL Trust Funds are directly related to their demands for the Retainers and are part of a coordinated effort to deprive the Medalist Parties of the ability to pay defense costs and expenses for the Pending Actions.

217.   On information and belief, the Ferrer Parties and the Backpage Entities have made their demands relating to both the RLL Trust Funds and the Retainers at the behest of one or more of the Medalist Parties' adversaries in the Pending Actions, who seek to deprive the Medalist Parties of the ability to mount a defense to the charges in the Pending Actions.

218.   If the Ferrer Parties and the Backpage Entities ever had an interest in the RLL Trust Funds, they forfeited any interest they may have had in the RLL Trust Funds to the government, which extinguished any interest they had in the RLL Trust Funds.

65

219.   To the extent the Ferrer Parties or the Backpage Entities then had any interest in the RLL Trust Funds, those interests were extinguished upon the entry of an order amending the preliminary order of forfeiture in *United States v. Backpage.com, LLC, et al.*, Case No. 2:18-cr-00465-SPL, U.S.D.C. D. Ariz., Dkt. 44, Oct. 18, 2018 (which amended Dkt. 22, May 16, 2018).

## X.   Seizures by the United States.

220.   On information and belief, the United States has seized some of the Retainers in their entirety, some of the Retainers in part, and some of the RLL Trust Funds and has attempted to seize another Retainer.

221.   The Medalist Officers and others have pending challenges to the seizures in the United States District Court in the Central District of California and are seeking the return of the seized funds.

## COUNT I

## Advancement Under the Domestic Backpage Entities' LLC Agreements

222.   Plaintiffs incorporate by reference the allegations in the preceding paragraphs, as if set forth in full.

223.   Pursuant to the provisions of the Domestic Backpage Entities' LLC Agreements and Delaware law, Dartmoor, IC, Website Tech, Backpage, Posting Solutions, and Postfaster are obligated to advance all defense costs and expenses, including attorneys' fees and costs, the Medalist Parties have incurred to date in

connection with the Pending Actions (that the Ferrer Parties or the Backpage Entities have not already advanced or that were not already paid from the Retainers).

224.   Pursuant to Delaware law, the Medalist Parties are entitled to payment of interest on those amounts.

225.   Pursuant to the provisions of the Domestic Backpage Entities' LLC Agreements and Delaware law, Dartmoor, IC, Website Tech, Backpage, Posting Solutions, and Postfaster also are obligated to advance all defense costs and expenses, including attorneys' fees and costs, Plaintiffs hereafter incur in connection with the Pending Actions and any future actions asserting similar claims.

## COUNT II

**Advancement Pursuant to the Purchase and Loan Documents
and the Litigation Management Agreement**

226.   Plaintiffs incorporate by reference the allegations in the preceding paragraphs, as if set forth in full.

227.   Pursuant to the provisions of the Domestic Purchase Agreement, the Domestic Loan Agreement, the Domestic Guarantees, the Foreign Purchase Agreement, the Foreign Loan Agreement, the Foreign Guarantees, and related documents (collectively, the "Purchase and Loan Documents"), the Litigation Management Agreement, and Delaware law, the Ferrer Parties and the Backpage

67

Entities are obligated to advance all defense costs and expenses, including attorneys' fees and costs, the Medalist Parties have incurred to date in connection with the Pending Actions (that the Ferrer Parties or the Backpage Entities have not already advanced or that were not already paid from the Retainers).

228.   Pursuant to Delaware law and the terms of the Purchase and Loan Documents, the Medalist Parties are entitled to payment of interest on those amounts.

229.   Pursuant to the Purchase and Loan Documents, the Litigation Management Agreement, and Delaware law, the Ferrer Parties and the Backpage Entities also are obligated to advance all defense costs and expenses, including attorneys' fees and costs, Plaintiffs hereafter incur in connection with the Pending Actions and any future actions asserting similar claims.

## COUNT III

### Fees on Fees

230.   Plaintiffs incorporate by reference the allegations in the preceding paragraphs, as if set forth in full.

231.   The Domestic Backpage Entities' LLC Agreements provide for advancement and indemnification to the fullest extent permitted by Delaware law and do not preclude an award of fees on fees.

232.   The Purchase and Loan Documents provide for advancement and indemnification to the fullest extent permitted by Delaware law and do not preclude an award of fees on fees.

233.   Plaintiffs are entitled to an award of reasonable fees on fees for successfully bringing and litigating this action to secure their right to advancement.

### Count IV

### Declaratory Relief or, Alternatively, Advancement Pursuant to the LLC Agreements and the Purchase and Loan Documents

234.   Plaintiffs incorporate by reference the allegations in the preceding paragraphs, as if set forth in full.

235.   Pursuant to the agreement by a Medalist Officer and Mr. Gage that the payments by the Ferrer Parties or the Backpage Entities to Rusing Lopez & Lizardi PLLC were payments on the Promissory Notes and, given the Medalist Parties' application of those payments to reduce the balance of the Promissory Notes, the Ferrer Parties and the Backpage Entities had and have no interest in the RLL Trust Funds.

236.   Alternatively, if the funds transmitted to Rusing Lopez & Lizardi PLLC by the Ferrer Parties or the Backpage Entities were not payments on the Promissory Notes, any sums the Ferrer Parties or the Backpage Entities deposited with Rusing Lopez & Lizardi PLLC were advanced fee deposits to provide a

source for the advancement of defense costs and expenses, including attorneys' fees and costs, for the Medalist Parties for the Pending Actions.

237.   Whether the RLL Trust Funds belong to one of the Medalist Entities as payments on the Promissory Notes, or whether they are an advanced fee deposit, the Ferrer Parties and the Backpage Entities have no right to interfere with Plaintiffs' use of the RLL Trust Funds to pay their defense costs and expenses, including attorneys' fees and costs, for the Pending Actions and any future actions asserting similar claims, or to interfere with counsel drawing on the RLL Trust Funds to pay Plaintiffs' defense costs and expenses.

238.   An actual controversy exists, which is ripe for adjudication.

239.   Pursuant to 10 *Del. C.* § 6501, this Court may: (i) determine whether the Ferrer Parties and the Backpage Entities had or have any interest in the RLL Trust Funds, and (ii) settle any disputes over whether the Ferrer Parties or the Backpage Entities may interfere with Plaintiffs' ability to use the RLL Trust Funds to pay their defense costs and expenses, including attorneys' fees and costs, for the Pending Actions and any future actions asserting similar claims, or interfere with counsel drawing on the RLL Trust Funds to pay Plaintiffs' defense costs and expenses.

240.   Pursuant to *10 Del. C.* § 6510, this Court may make an award of costs as may seem equitable and just.

70

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment in their favor and

I.   against Dartmoor, IC, Website Tech, Backpage, Posting Solutions, and Postfaster:

     a.  enforcing Plaintiffs' advancement rights under the Domestic Backpage Entities' LLC Agreements and Delaware law;

     b.  awarding the Medalist Parties advancement of all defense costs and expenses, including attorneys' fees and costs, incurred to date in the Pending Actions (that the Ferrer Parties or the Backpage Entities have not already advanced or that were not already paid from the Retainers);

     c.  awarding the Medalist Parties interest on those amounts;

     d.  declaring that Plaintiffs are entitled to advancement of all defense costs and expenses, including attorneys' fees and costs, they hereafter incur in the Pending Actions and any future actions asserting similar claims;

     e.  declaring that the Retainers were funded to provide for the advancement of Plaintiffs' defense costs and expenses, including attorneys' fees and costs, for the Pending Actions and any future actions asserting similar claims;

71

f.  declaring that, as between the Medalist Parties, on the one hand, and Amstel River Holdings, LLC, Kickapoo River Investments LLC, Lupine Holdings LLC, Atlantische Bedrijven, C.V., CF Holdings GP LLC, CF Acquisitions LLC, UGC Tech Group, C.V., Ad Tech Holdings GP BV, Ad Tech Cooperatief U.A., Ad Tech BV, Carl Ferrer, Dartmoor Holdings, LLC, IC Holdings, LLC, Backpage.com, LLC, Website Technologies, LLC, Posting Solutions, LLC, Postfaster, LLC, Classified Strategies Cooperatief U.A., Payment Solutions, B.V., Classified Solutions Ltd., and Les Backpage Enterprises Inc. (and their officers, agents, servants, employees, and attorneys; any other persons or entities under their control; and any other persons or entities who are in active concert or participation with them (other than the United States and its employees and agents)), on the other hand, the Medalist Parties shall have the right to provide instructions to Davis Wright Tremaine, LLP, Perkins Coie LLP, Prince Lobel Tye LLP, Copeland, Franco, Screws & Gill, P.A., Wayne B. Giampietro LLC, Walters Law Group, and Thompson Coburn LLP (and any replacement counsel) regarding the use of the Retainers, including instructing counsel to transfer some or all of a Retainer to any

72

replacement or substitute counsel for Plaintiffs, so that Plaintiffs

may pay their defense costs and expenses, including attorneys' fees

and costs, for the Pending Actions and for any future actions

asserting similar claims;

g. declaring that Amstel River Holdings, LLC, Kickapoo River

Investments LLC, Lupine Holdings LLC, Atlantische Bedrijven,

C.V., CF Holdings GP LLC, CF Acquisitions LLC, UGC Tech

Group, C.V., Ad Tech Holdings GP BV, Ad Tech Cooperatief

U.A., Ad Tech BV, Carl Ferrer, Dartmoor Holdings, LLC, IC

Holdings, LLC, Backpage.com, LLC, Website Technologies, LLC,

Posting Solutions, LLC, Postfaster, LLC, Classified Strategies

Cooperatief U.A., Payment Solutions, B.V., Classified Solutions

Ltd., and Les Backpage Enterprises Inc. (and their officers, agents,

servants, employees, and attorneys; any other persons or entities

under their control; and any other persons or entities who are in

active concert or participation with them (other than the United

States and its employees and agents)), have no right to interfere

with Plaintiffs' use of the Retainers to pay their defense costs and

expenses, including attorneys' fees and costs, for the Pending

Actions and any future actions asserting similar claims, or to

73

interfere with counsel drawing on the Retainers to pay Plaintiffs' defense costs and expenses;

h.  awarding the fees, costs, and expenses Plaintiffs incurred bringing this action; and

i.  granting such other and further relief as is justified by the circumstances.

II.  against Amstel River Holdings, LLC, Kickapoo River Investments LLC, Lupine Holdings LLC, Atlantische Bedrijven, C.V., CF Holdings GP LLC, CF Acquisitions LLC, UGC Tech Group, C.V., Ad Tech Holdings GP BV, Ad Tech Cooperatief U.A., Ad Tech BV, Carl Ferrer, Dartmoor Holdings, LLC, IC Holdings, LLC, Backpage.com, LLC, Website Technologies, LLC, Posting Solutions, LLC, Postfaster, LLC, Classified Strategies Cooperatief U.A., Payment Solutions, B.V., Classified Solutions Ltd., and Les Backpage Enterprises Inc.:

a.  enforcing Plaintiffs' advancement rights under the Purchase and Loan Documents, the Litigation Management Agreement, and Delaware law;

b.  awarding the Medalist Parties advancement of all defense costs and expenses, including attorneys' fees and costs, incurred to date in the Pending Actions (that the Ferrer Parties or the

Backpage Entities have not already advanced or that were not already paid from the Retainers);

c.  awarding the Medalist Parties interest on those amounts;

d.  declaring that Plaintiffs are entitled to advancement of all defense costs and expenses, including attorneys' fees and costs, they hereafter incur in the Pending Actions and any future actions asserting similar claims;

e.  declaring that the Retainers were funded to provide for the advancement of Plaintiffs' defense costs and expenses, including attorneys' fees and costs, for the Pending Actions and any future actions asserting similar claims;

f.  declaring that, as between the Medalist Parties, on the one hand, and Amstel River Holdings, LLC, Kickapoo River Investments LLC, Lupine Holdings LLC, Atlantische Bedrijven, C.V., CF Holdings GP LLC, CF Acquisitions LLC, UGC Tech Group, C.V., Ad Tech Holdings GP BV, Ad Tech Cooperatief U.A., Ad Tech BV, Carl Ferrer, Dartmoor Holdings, LLC, IC Holdings, LLC, Backpage.com, LLC, Website Technologies, LLC, Posting Solutions, LLC, Postfaster, LLC, Classified Strategies Cooperatief U.A., Payment Solutions, B.V.,

75

Classified Solutions Ltd., and Les Backpage Enterprises Inc. (and their officers, agents, servants, employees, and attorneys; any other persons or entities under their control; and any other persons or entities who are in active concert or participation with them (other than the United States and its employees and agents)), on the other hand, the Medalist Parties shall have the right to provide instructions to Davis Wright Tremaine, LLP, Perkins Coie LLP, Prince Lobel Tye LLP, Copeland, Franco, Screws & Gill, P.A., Wayne B. Giampietro LLC, Walters Law Group, and Thompson Coburn LLP (and any replacement counsel) regarding the use of the Retainers, including instructing counsel to transfer some or all of a Retainer to any replacement or substitute counsel for Plaintiffs, so that Plaintiffs may pay their defense costs and expenses, including attorneys' fees and costs, for the Pending Actions and for any future actions asserting similar claims;

g.  declaring that Amstel River Holdings, LLC, Kickapoo River Investments LLC, Lupine Holdings LLC, Atlantische Bedrijven, C.V., CF Holdings GP LLC, CF Acquisitions LLC, UGC Tech Group, C.V., Ad Tech Holdings GP BV, Ad Tech

Cooperatief U.A., Ad Tech BV, Carl Ferrer, Dartmoor Holdings, LLC, IC Holdings, LLC, Backpage.com, LLC, Website Technologies, LLC, Posting Solutions, LLC, Postfaster, LLC, Classified Strategies Cooperatief U.A., Payment Solutions, B.V., Classified Solutions Ltd., and Les Backpage Enterprises Inc. (and their officers, agents, servants, employees, and attorneys; any other persons or entities under their control; and any other persons or entities who are in active concert or participation with them (other than the United States and its employees and agents)), have no right to interfere with Plaintiffs' use of the Retainers to pay their defense costs and expenses for the Pending Actions, including attorneys' fees and costs, and any future actions asserting similar claims, or to interfere with counsel drawing on the Retainers to pay Plaintiffs' defense costs and expenses;

h.  awarding the fees, costs, and expenses Plaintiffs incurred bringing this action; and

i.  granting such other and further relief as is justified by the circumstances.

III.   Against Amstel River Holdings, LLC, Kickapoo River Investments LLC, Lupine Holdings LLC, Atlantische Bedrijven, C.V., CF Holdings GP LLC, CF Acquisitions LLC, UGC Tech Group, C.V., Ad Tech Holdings GP BV, Ad Tech Cooperatief U.A., Ad Tech BV, Carl Ferrer, Dartmoor Holdings, LLC, IC Holdings, LLC, Backpage.com, LLC, Website Technologies, LLC, Posting Solutions, LLC, Postfaster, LLC, Classified Strategies Cooperatief U.A., Payment Solutions, B.V., Classified Solutions Ltd., and Les Backpage Enterprises Inc. as follows:

   a.   declaring that the funds comprising the RLL Trust Funds were payments on the Promissory Notes by Amstel River Holdings, LLC, Kickapoo River Investments LLC, Lupine Holdings LLC, Atlantische Bedrijven, C.V., CF Holdings GP LLC, CF Acquisitions LLC, UGC Tech Group, C.V., Ad Tech Holdings GP BV, Ad Tech Cooperatief U.A., Ad Tech BV, Carl Ferrer, Dartmoor Holdings, LLC, IC Holdings, LLC, Backpage.com, LLC, Website Technologies, LLC, Posting Solutions, LLC, Postfaster, LLC, Classified Strategies Cooperatief U.A., Payment Solutions, B.V., Classified Solutions Ltd., or Les Backpage Enterprises Inc., not advanced fee deposits made by them;

78

b. declaring that Amstel River Holdings, LLC, Kickapoo River Investments LLC, Lupine Holdings LLC, Atlantische Bedrijven, C.V., CF Holdings GP LLC, CF Acquisitions LLC, UGC Tech Group, C.V., Ad Tech Holdings GP BV, Ad Tech Cooperatief U.A., Ad Tech BV, Carl Ferrer, Dartmoor Holdings, LLC, IC Holdings, LLC, Backpage.com, LLC, Website Technologies, LLC, Posting Solutions, LLC, Postfaster, LLC, Classified Strategies Cooperatief U.A., Payment Solutions, B.V., Classified Solutions Ltd., and Les Backpage Enterprises Inc. had and have no interest in the RLL Trust Funds;

c. declaring that Amstel River Holdings, LLC, Kickapoo River Investments LLC, Lupine Holdings LLC, Atlantische Bedrijven, C.V., CF Holdings GP LLC, CF Acquisitions LLC, UGC Tech Group, C.V., Ad Tech Holdings GP BV, Ad Tech Cooperatief U.A., Ad Tech BV, Carl Ferrer, Dartmoor Holdings, LLC, IC Holdings, LLC, Backpage.com, LLC, Website Technologies, LLC, Posting Solutions, LLC, Postfaster, LLC, Classified Strategies Cooperatief U.A., Payment Solutions, B.V., Classified Solutions Ltd., and Les

79

Backpage Enterprises Inc. (and their officers, agents, servants, employees, and attorneys; any other persons or entities under their control; and any other persons or entities who are in active concert or participation with them (other than the United States and its employees and agents)) have no right to interfere with Plaintiffs' use of the RLL Trust Funds;

d. awarding the fees, costs, and expenses Plaintiffs incurred bringing this action; and

e. granting such other and further relief as is justified by the circumstances; or

f. alternatively,

1. declaring that the RLL Trust Funds were intended to provide for the advancement of Plaintiffs' defense costs and expenses, including attorneys' fees and costs, for the Pending Actions and any future actions asserting similar claims;

2. declaring that, as between the Medalist Parties, on the one hand, and Amstel River Holdings, LLC, Kickapoo River Investments LLC, Lupine Holdings LLC, Atlantische Bedrijven, C.V., CF Holdings GP LLC, CF Acquisitions

LLC, UGC Tech Group, C.V., Ad Tech Holdings GP BV, Ad Tech Cooperatief U.A., Ad Tech BV, Carl Ferrer, Dartmoor Holdings, LLC, IC Holdings, LLC, Backpage.com, LLC, Website Technologies, LLC, Posting Solutions, LLC, Postfaster, LLC, Classified Strategies Cooperatief U.A., Payment Solutions, B.V., Classified Solutions Ltd., and Les Backpage Enterprises Inc. (and their officers, agents, servants, employees, and attorneys; any other persons or entities under their control; and any other persons or entities who are in active concert or participation with them (other than the United States and its employees and agents)), on the other hand, the Medalist Parties shall have the right to provide instructions to Rusing, Lopez & Lizardi, PLLC (and any replacement counsel) regarding the use of the RLL Trust Funds, including instructing Rusing, Lopez & Lizardi, PLLC to transfer some or all of the RLL Trust Funds to any replacement or substitute counsel for Plaintiffs, so that Plaintiffs may pay their defense costs and expenses, including attorneys' fees and costs, for the

Pending Actions and for any future actions asserting similar claims;

3.   declaring that Amstel River Holdings, LLC, Kickapoo River Investments LLC, Lupine Holdings LLC, Atlantische Bedrijven, C.V., CF Holdings GP LLC, CF Acquisitions LLC, UGC Tech Group, C.V., Ad Tech Holdings GP BV, Ad Tech Cooperatief U.A., Ad Tech BV, Carl Ferrer, Dartmoor Holdings, LLC, IC Holdings, LLC, Backpage.com, LLC, Website Technologies, LLC, Posting Solutions, LLC, Postfaster, LLC, Classified Strategies Cooperatief U.A., Payment Solutions, B.V., Classified Solutions Ltd., and Les Backpage Enterprises Inc. (and their officers, agents, servants, employees, and attorneys; any other persons or entities under their control; and any other persons or entities who are in active concert or participation with them (other than the United States and its employees and agents)), have no right to interfere with Plaintiffs' use of the RLL Trust Funds to pay their defense costs and expenses for the Pending Actions, including attorneys' fees and costs, and any future actions asserting similar claims, or to

82

interfere with Rusing, Lopez & Lizardi, PLLC transferring the RLL Trust Funds to any replacement or substitute counsel for Plaintiffs;

4. awarding the fees, costs, and expenses Plaintiffs incurred bringing this action; and

5. granting such other and further relief as is justified by the circumstances.


December 21, 2018                    SMITH, KATZENSTEIN & JENKINS LLP

                                    */s/ Kathleen M. Miller*
                                    Kathleen M. Miller (No. 2898)
                                    Robert K. Beste (No. 3931)
                                    1000 West Street, Suite 1501
                                    Wilmington, DE 19801
                                    (302) 652-8400
                                    kmiller@skjlaw.com
                                    rkb@skjlaw.com

                                    *Attorneys for Plaintiffs*

# EXHIBIT G

# GRANTED

## IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| CAMARILLO HOLDINGS, LLC, *et al*., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. 2018-0606-SG |
| AMSTEL RIVER HOLDINGS, LLC, *et al*., | ) ) ) | |
| Defendants. | ) | |

**STIPULATION AND [PROPOSED] ORDER OF PARTIAL AND FINAL JUDGMENT PURSUANT TO COURT OF CHANCERY RULE 54(b)**

WHEREAS, Plaintiffs Camarillo Holdings, LLC, Leeward Holdings, LLC, Medalist Holdings, Inc., Cereus Properties, LLC, Michael Lacey, James Larkin, Scott Spear, John Brunst, Vermillion Holdings, LLC, and Shearwater Investments, LLC filed an Amended Verified Complaint (the "**Complaint**") on December 21, 2018, seeking, among other things, pursuant to 6 *Del. C.* § 18-108 and 8 *Del. C.* § 145(k), a declaration of their right to advancement of attorneys' fees and costs incurred in connection with certain actions, proceedings, and investigations identified in the Complaint (the "**Actions**");

1

WHEREAS, in April and May 2018, one or more of the Defendants[1] made demands for the return of certain advanced fee/expenses deposits, defined in paragraphs 203 and 204 of the Complaint as the "Retainers" and the "RLL Trust Funds" (collectively, the "**Deposited Funds**"), to the attorneys or firms holding those funds (the "**Return Demands**"), and Plaintiffs also sought in the Complaint certain declarations relating to the Deposited Funds and the Return Demands;

WHEREAS, the Court entered an Order on February 18, 2019, permitting the United States to intervene, pursuant to Court of Chancery Rule 24(b)(2); and

WHEREAS, Defendants and the United States dispute the validity and enforcement of all documents and agreements under which Plaintiffs seek advancement, but wish to resolve Plaintiffs' claims for advancement without the need for further litigation.

Pursuant to the stipulation of Plaintiffs, Defendants, and the United States as intervenor, IT IS HEREBY ORDERED AND DECLARED that:

---

[1] "Defendants" are Amstel River Holdings, LLC, Kickapoo River Investments LLC, Lupine Holdings LLC, Atlantische Bedrijven, C.V., CF Holdings GP LLC, CF Acquisitions LLC, UGC Tech Group, C.V., Ad Tech Holdings GP BV, Ad Tech Cooperatief U.A., Ad Tech BV, Carl Ferrer, Dartmoor Holdings, LLC, IC Holdings, LLC, Backpage.com, LLC, Website Technologies, LLC, Posting Solutions, LLC, Postfaster, LLC, Classified Strategies Cooperatief U.A., Payment Solutions, B.V., Classified Solutions Ltd., and Les Backpage Enterprises Inc.

1.      Plaintiffs are entitled to advancement of their past and future defense costs and expenses, including attorneys' fees and costs, with respect to each of the Actions and any future actions asserting similar claims, as follows:

a.      From the following entities under the specified provisions of their LLC agreements (collectively, the "**LLC Agreements**"):

1)  Dartmoor Holdings, LLC pursuant to Paragraph 8.2 of its LLC agreement;

2)  IC Holdings, LLC pursuant to Paragraph 8.2 of its LLC agreement;

3)  Website Technologies, LLC pursuant to Paragraph 8.2 of its LLC agreement;

4)  Posting Solutions, LLC pursuant to Paragraph 8.2 of its LLC agreement;

5)  Postfaster, LLC pursuant to Paragraph 8.2 of its LLC agreement; and

6)  Backpage.com, LLC pursuant to Paragraph 9.1 of its LLC agreement;

b.      From Atlantische Bedrijven, C.V. and Dartmoor Holdings, LLC under Paragraph 6.2(b) of the Domestic Purchase Agreement (as defined in Paragraph 115 of the Complaint);

    c.      From Atlantische Bedrijven, C.V. under Paragraph 13.17 of the Domestic Loan Agreement (as defined in Paragraph 126 of the Complaint);

    d.      From Amstel River Holdings, LLC, Kickapoo River Investments LLC, Lupine Holdings LLC, Dartmoor Holdings, LLC, Website Technologies, LLC, IC Holdings, LLC, Backpage.com, LLC, Posting Solutions, LLC, Postfaster, LLC, Atlantische Bedrijven, C.V, CF Holdings GP LLC, and CF Acquisitions LLC under Paragraph 1 of the Domestic Guarantees (as defined in Paragraph 131 of the Complaint);

    e.      From UGC Tech Group, C.V. under Paragraph 5.2(b) of the Foreign Purchase Agreement (as defined in Paragraph 136 of the Complaint) and Paragraph 13.17 of the Foreign Loan Agreement (as defined in Paragraph 139 of the Complaint);

    f.      From Amstel River Holdings, LLC, Kickapoo River Investments LLC, Lupine Holdings LLC, CF Holdings GP LLC, CF Acquisitions LLC, Atlantische Bedrijven, C.V., Ad Tech Holdings GP BV, Ad Tech Cooperatief U.A., Ad Tech BV, Classified Solutions Ltd., Classified Strategies Cooperatief U.A., Payment Solutions, B.V., and Les Backpage Enterprises Inc. under Paragraph 1 of the Foreign Guarantees (as defined in Paragraph 144 of the Complaint).

2.     Plaintiffs and Defendants shall confer and submit a proposed procedure for submission of invoices for which advancement is sought.  If the parties are unable to agree on a procedure, each side shall submit their proposed procedure to the Court within 30 days of entry of this Order (unless extended by mutual agreement of the parties), in which case the Court will determine the procedure.

3.     Whatever interests Defendants had in the Deposited Funds were terminated on October 18, 2018, by the Order (Dkt. 44) entered by the United States District Court for the District of Arizona in *United States v. Backpage.com LLC*, Case No. 18-cr-00465-SPL (the "**Backpage Criminal Case**"), amending the Preliminary Order of Forfeiture (Dkt. 22) to include the Deposited Funds (as amended, the "**Backpage Amended Forfeiture Order**").  Under the Backpage Amended Forfeiture Order, any right, title, or interest Defendants had in the Deposited Funds were forfeited to the United States on October 18, 2018.

4.     Defendants (and their officers, agents, servants, employees, and attorneys; any other persons or entities under their control; and any other persons or entities who are in active concert or participation with them—excluding the United States) are enjoined:

a.     from asserting any claims to or interests in the Deposited Funds; and

b.     from making any future demands relating to the Deposited Funds on any person who or entity that may hereafter hold some or all of the Deposited Funds, without further order from this Court permitting such a demand.

5.     Any person who or entity that currently holds, or in the future may hold, some or all of the Deposited Funds may disregard any claims to the Deposited Funds that previously were, or may hereafter be, asserted by any Defendant.

6.     To assure that any person who or entity that currently holds any of the Deposited Funds are aware of the pending federal litigation over the Deposited Funds, Plaintiffs and the United States shall jointly notify such persons or entities of the pendency of that federal litigation and the nature of the claims/defenses asserted in the litigation.

7.     This Order determines that Plaintiffs are entitled to advancement, but this Order does not:  (a) otherwise determine the validity or enforceability of the LLC Agreements, the Domestic Purchase Agreement, the Domestic Loan Agreement, the Domestic Guarantees, the Foreign Purchase Agreement, the Foreign Loan Agreement, or the Foreign Guarantees (collectively, the "**Agreements**"); (b) determine whether Defendants have any legal or equitable defenses under, or waive any defenses to, those Agreements as to any claims (including claims for

indemnification) other than advancement as expressly stated herein; or (c) determine whether Plaintiffs are entitled to indemnification.

8.      Plaintiffs and the United States are litigating their respective rights to the Deposited Funds and other assets identified in the Backpage Amended Forfeiture Order in an ancillary proceeding in the Backpage Criminal Case (the "**Backpage Ancillary Proceeding**").  Plaintiffs and the United States also are litigating the propriety of the United States' efforts to seize the Deposited Funds in the United States District Court for the Central District of California in Cases MJ 18-2872, MJ 18-2873, MJ 18-2874, MJ 18-2875, MJ 18-2876, and MJ 18-2878 (the "**Plaintiffs' Deposited Funds Challenges**").

9.      In addition to the foregoing litigation related to the Deposited Funds, Plaintiffs and the United States (among others) are litigating:

a.      their respective rights to the assets identified in the Preliminary Order of Forfeiture (the "**Ferrer Forfeiture Order**") in Case No. 2:18-cr-464-SMB in the United States District Court for the District of Arizona (the "**Ferrer Criminal Case**") in an ancillary proceeding (the "**Ferrer Ancillary Proceeding**");

b.      the propriety of the United States' seizures of Plaintiffs' assets in the United States District Court for the Central District of California in Cases 2:18-cv-06742-RGK-PJW, which currently is on appeal to the United States

7

Court of Appeals for the Ninth Circuit, Case No. 18-56455 ("**Plaintiffs'**

**Seizure Challenge**"); and

        c.     the United States' civil forfeiture complaints in the United States

District Court for the Central District of California in Cases 2:18-cv-08420-

RGK-PJW, 2:18-cv-08423-RGK-PJW, 2:18-cv-08551-RGK-PJW, 2:18-cv-

08555-RGK-PJW, 2:18-cv-08556-RGK-PJW, 2:18-cv-08565-RGK-PJW,

2:18-cv-08566-RGK-PJW, 2:18-cv-08568-RGK-PJW, 2:18-cv-08569-RGK-

PJW, 2:18-cv-08570-RGK-PJW, 2:18-cv-08577-RGK-PJW, 2:18-cv-08578-

RGK-PJW, 2:18-cv-08579-RGK-PJW, 2:18-cv-08588-RGK-PJW, 2:18-cv-

08592-RGK-PJW, 2:18-cv-08723-RGK-PJW, 2:18-cv-08730-RGK-PJW,

2:18-cv-08747-RGK-PJW, 2:18-cv-08748-RGK-PJW, 2:18-cv-08749-RGK-

PJW, 2:18-cv-08750-RGK-PJW, 2:18-cv-08753-RGK-PJW, 2:18-cv-08754-

RGK-PJW, 2:18-cv-08759-RGK-PJW, 2:18-cv-08760-RGK-PJW, 2:18-cv-

08763-RGK-PJW, 2:18-cv-08764-RGK-PJW (the "**Civil Forfeiture**

**Proceedings**").

The Backpage Ancillary Proceeding, Plaintiffs' Deposited Funds Challenges, the

Ferrer Ancillary Proceeding, Plaintiffs' Seizure Challenge, and the Civil Forfeiture

Proceedings are referred to, collectively, as the "**Collateral Proceedings**."

10.     This Order does not:

        a.      determine whether any party had or has a legal right, title, or interest in the Deposited Funds or in any other assets at issue in the Collateral Proceedings or determine any issue of state law that relates to any such determination (except to the limited extent set forth in Paragraph 3 of this Order);

        b.      address or determine any issue set forth in 21 U.S.C. § 853(n)(6); or

        c.      create or determine any legal interests in the Deposited Funds or other assets at issue in the Collateral Proceedings.

11.     This Order does not address whether Plaintiffs may seek discovery from Carl Ferrer (whether individually or in a representative capacity) in an effort to enforce their advancement rights.  By stipulating to the entry of this Order, Mr. Ferrer does not waive (and expressly preserves) his right to object on any ground to any discovery that may be sought from him.

12.     Before Plaintiffs commence any new action, in any forum, against any asset belonging to any Defendant or against any of the Deposited Funds, Plaintiffs shall notify the United States, at least fourteen (14) days in advance, of their intent to file the action, the basis of the claim(s), and the asset(s) that will be at issue in the action.

9

13.     Except with respect to the relief granted in Paragraphs 1, 3, 4, and 5 of this Order (and only to the extent of that relief), the agreement of Plaintiffs, Defendants, and the United States to the entry of this Order does not constitute a waiver of any legal or equitable claim or defense, or of any procedural objection, that Plaintiffs, Defendants, or the United States would be entitled to raise in connection with a claim against any Defendant or any assets of any Defendant in this or any other forum (including, but not limited to, in connection with the civil and criminal litigation pending in the Collateral Proceedings).

14.     There is no just reason for delaying entry of final judgment as to the issues set forth above and final judgment is entered pursuant to Rule 54(b) accordingly.

15.     The Court retains jurisdiction over all other advancement-related issues remaining in the case.

16.     This Order does not determine and is without prejudice to (i) any party's right to seek an award of attorneys' fees in this action and (ii) the claims asserted in Count IV of the Complaint.

17.     Subject to the relief provided herein, all claims (Counts I through IV) against Carl Ferrer are dismissed without prejudice.  With respect to Count IV, Mr. Ferrer agrees he has no personal interest in the deposited funds at issue and accordingly he is not a necessary party to the resolution of those issues.  Mr. Ferrer

has agreed not to assert laches or any other defense based on the lapse of time

between the dismissal of this action and the filing of a new action (if one is filed)

and therefore, waives any such defenses as to Counts I through IV. Mr. Ferrer also

agrees that the statute of limitations applicable to Counts I through IV has been tolled

during the pendency of this action and any such applicable statute of limitations will

not begin to run until this Order becomes non-appealable.

August 5, 2019

SMITH, KATZENSTEIN & JENKINS LLP          CHIPMAN BROWN CICERO & COLE, LLP

 */s/Kathleen M. Miller*                            */s/Paul D. Brown*
Kathleen M. Miller (No. 2898)                Paul D. Brown (No. 3903)
Robert K. Beste (No. 3931)                   Hercules Plaza
1000 West Street, Suite 1501                 1313 North Market Street, Suite 5400
Wilmington, DE 19801                         Wilmington, DE 19801
(302) 652-8400                               (302) 295-0194
kmiller@skjlaw.com                           brown@chipmanbrown.com

Daniel J. Quigley                            Mark A. Castillo
Daniel J. Quigley, PLC                       Curtis | Castillo PC
5425 E. Broadway, Suite 352                  901 Main St., Ste. 6515
Tucson, Arizona 85711                        Dallas, TX 75202
quigley@djqplc.com                           mcastillo@curtislaw.net

                                             Stefan D. Cassella
*Attorneys for plaintiffs*                   Asset Forfeiture Law, LLC

                                             *Attorneys for defendants*

11

DAVID C. WEISS
United States Attorney

*/s/Laura D. Hatcher*
LAURA D. HATCHER (No. 5098)
Assistant United States Attorney
1313 N. Market Street
P.O. Box 2046
Wilmington, DE 19801
(302) 573-6205

MICHAEL BAILEY
United States Attorney
District of Arizona
KEVIN M. RAPP
MARGARET PERLMETER
PETER S. KOZINETS
ANDREW C. STONE
Assistant U.S. Attorneys
40 N. Central Avenue, Suite 1800
Phoenix, Arizona 85004-4408

NICOLA T. HANNA
United States Attorney
Central District of California
STEVEN R. WELK
Assistant United States Attorney
Chief, Asset Forfeiture Section
JOHN J. KUCERA
Assistant United States Attorney
1400 United States Courthouse
312 North Spring Street
Los Angeles, California 90012
*Attorneys for Intervenor*
*UNITED STATES OF AMERICA*

Date: _____, 2019                     _____
                                              Vice Chancellor Sam Glasscock, III

This document constitutes a ruling of the court and should be treated as such.

**Court:** DE Court of Chancery Civil Action

**Judge:** Sam Glasscock

**File & Serve Transaction ID:** 64058346

**Current Date:** Aug 07, 2019

**Case Number:** 2018-0606-SG

**/s/ Judge Glasscock, Sam**