NICOLA T. HANNA
United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division
STEVEN R. WELK
Assistant United States Attorney
Chief, Asset Forfeiture Section
DAN G. BOYLE (California Bar No. Pending)
Assistant United States Attorney
Asset Forfeiture Section
    Federal Courthouse, 14th Floor
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-2426
    Facsimile: (213) 894-0142
    E-mail: Daniel.Boyle2@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>              Plaintiff,<br><br>                 v.<br><br>$1,546,076.35 IN BANK FUNDS SEIZED FROM REPUBLIC BANK OF ARIZONA ACCOUNT '1889, ET AL.,<br><br>              Defendants.<br>_____<br><br>Michael Lacey, et al,<br><br>              Claimants. | Case No. CV 18-08420-RGK (PJWx)<br><br>PLAINTIFF'S OPPOSITION TO CLAIMANTS' MOTIONS TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6) [ECF Nos. 82, 11]<br><br>Hearing Date: September 21, 2020<br><br>Time: 9:00 a.m.<br><br>Place: Courtroom 850 255 E. Temple Street, 7th Fl. Los Angeles, CA 90012 |

    Plaintiff United States of America, by and through its

counsel of record, the United States Attorney for the Central

District of California and Assistant United States Attorney Dan

G. Boyle, hereby files its Opposition to Claimants' February 5,

2020 and July 1, 2020 Motions to Dismiss the First Amended

Consolidated Master Verified Complaint for Forfeiture in this

Action. [ECF Nos. 82, 111.]

This Opposition is based upon the attached Memorandum of

Points and Authorities, the files and records in this case, and

such further evidence and argument as the Court may permit.


Dated: August 21, 2021        Respectfully submitted,

                              NICOLA T. HANNA
                              United States Attorney

                              BRANDON D. FOX
                              Assistant United States Attorney
                              Chief, Criminal Division
                              STEVEN R. WELK
                              Assistant United States Attorney
                              Chief, Asset Forfeiture Section

                              _____/s/_____
                              DAN G. BOYLE
                              Assistant United States Attorney

                              Attorneys for Plaintiff
                              UNITED STATES OF AMERICA

1
2
## TABLE OF CONTENTS
3
I. INTRODUCTION ................................................ 1
4
II.BACKGROUND ................................................. 2
5
6 III. ARGUMENT .................................................. 6
7  A. Legal Standard ........................................... 6
8  B. The Motions Must Be Denied Because Court Has Already Held
9  That Section 230 Immunity is Not Applicable Here ............. 6
10
11  C. The CDA Does Not Apply Because this is an Action Enforcing a
   Federal Criminal Statute .................................. 12
12
13 IV. CONCLUSION ............................................... 20
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TABLE OF AUTHORITIES**

<u>FEDERAL CASES</u>                                                    <u>PAGE(S)</u>

<u>Ashcroft v. Iqbal</u>,
       556 U.S. 662 (2009) ....................................... 6

<u>Austin v. United States</u>,
       509 U.S. 602 (1993) .................................. 15, 16

<u>Bell Atlantic Corp v. Twombly</u>,
       550 U.S. 544 (2007) ....................................... 6

<u>Blumenthal v. Drudge</u>,
       992 F. Supp. 44 (D.D.C. 1998) ........................... 16

<u>Calero-Toledo v. Pearson Yacht Leasing Co.</u>,
       416 U.S. 663 (1974) ...................................... 15

<u>Doe v. Backpage.com, LLC</u>,
       2016 WL 7047745 (U.S.) ................................... 18

<u>Doe v. Bates</u>,
       2006 WL 3813758 (E.D. Tex. Dec. 27, 2006) .......... 17, 19

<u>E. Bay Sanctuary Covenant v. Trump</u>,
       950 F.3d 1242 (9th Cir. 2020) ........................... 10

<u>Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC</u>,
       521 F.3d 1157 (9th Cir. 2008) ......................... 8, 9

<u>Franks v. Delaware</u>,
       438 U.S. 154 (1978) ....................................... 7

<u>Hardt v. Reliance Stand. Life Ins. Co.</u>,
       560 U.S. 242 (2010) ...................................... 14

<u>Jane Doe No. 1 v. Backpage.com, LLC</u>,
       817 F.3d 12 (1st Cir. 2016) ......................... 16, 18

<u>Obado v. Magedson</u>,
       2014 WL 3778261 (D.N.J. July 31, 2014) .................. 16

<u>Odom v. Microsoft Corp.</u>,
       486 F.3d 541 (9th Cir. 2007) ............................. 6

<u>One 1958 Plymouth Sedan v. Pennsylvania</u>,
       380 U.S. 693 (1965) .................................. 14, 15

1

**TABLE OF AUTHORITIES (Cont'd)**

2

**FEDERAL CASES**                                                   **PAGE(S)**

3

4
Reyn's Pasta Bella, LLC v. Visa USA, Inc.,

5
        442 F.3d 741 (9th Cir. 2006) ............................ 2

6
Thomas v. Bible,

        983 F.2d 152 (9th Cir. 1993) ........................... 10

7
Ticketmaster L.L.C. v. Prestige Entm't W., Inc.,

8
        315 F. Supp. 3d 1147 (C.D. Cal. 2018) .................. 10

9
United States v. Alexander,

        106 F.3d 874 (9th Cir.1997) ........................... 11
10
United States v. Brig Malek Adhel,
11
        2 How. 210 (1844) ................................. 15, 18
12
United States v. Lacey, et al.,

13
        2019 WL 5448351 (D. Ariz. Oct. 24, 2019) ............... 5

14
United States v. One 1985 Mercedes,

        917 F.2d 415 (9th Cir. 1990) .......................... 15
15
United States v. Ulbricht,
16
        31 F. Supp. 3d 540 (S.D.N.Y. 2014) ...................... 8
17
United States v. Ursery,

18
        518 U.S. 267 (1996) ................................... 14

19

**FEDERAL STATUTES AND RULES**                                     **PAGE(S)**

20

21
18 U.S.C. § 981 ............................................. 13

22
18 U.S.C. § 1591 ............................................ 12

23
18 U.S.C. § 1956 ............................................ 12

18 U.S.C. § 1957 ............................................ 12
24
47 U.S.C. § 230 ......................................... passim
25
47 U.S.C. § 230(c) .......................................... 13
26
47 U.S.C. § 230(e)(1) ....................................... 13
27
47 U.S.C. § 230(e)(3) ....................................... 13

FED. R. CIV. P. 12(b)(6) ..................................... 6

28

iii

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiff United States of America (the "United States" or "the government") respectfully submits this opposition to the motions (the "Motions")[1] filed by claimants Michael Lacey, James Larkin, John Brunst, Scott Spear, Mary Ann Brunst, Medalist Holdings, Inc., Leeward Holdings, LLC, Camarillo Holdings, LLC, Vermillion Holdings, LLC, Cereus Properties, LLC, Shearwater Investments, LLC, and The Brunst Family Trust (collectively, "claimants")[2] and seeking to dismiss the government's First Amended Consolidated Master Complaint for forfeiture (the "FACMC") pursuant to Fed.R.Civ.P 12(b)(6). [ECF Nos. 82, 111.]

The claimants' Motions are the latest in a long series of attempts to evade civil and criminal liability for their operation of the website Backpage.com, and to relitigate issues already ruled upon by this Court and Judge Susan Brnovich, currently overseeing certain claimants' criminal prosecution in the District of Arizona. A familiar pattern has emerged by which claimants raise an issue in this case or in the criminal prosecution in Arizona, and when the Court rejects their

---

[1] For reasons of judicial efficiency, the government has attempted to streamline its oppositions to the multiple motions brought by claimants by stating a combined background section, which is identical in both this opposition, and that filed in response to claimants' second motion to dismiss. [ECF No. 112].

[2] The Motions were joined by claimants Kathleen Larkin, John Larkin, Quinn Larkin, Rose Larkin, Anne Hawkins, Natasha Spear, Ellon Spear, Margaret Larkin, John Becker, Troy Larkin, Ramon Larkin, and Alyson Talley.

1

arguments, they seek to re-litigate the same issue in the other court, presumably hoping to generate fodder for yet-another appeal by creating some sliver of daylight between the holdings of this Court and those of Judge Brnovich.

The Court should deny the Motions for two independent reasons: first, both this Court and Judge Brnovich have already found that claimants are not entitled to immunity under 47 U.S.C. § 230; and second, even were that not the case, § 230 includes an explicit carve-out for enforcement of federal criminal statutes, and civil forfeiture has long been held a critical mechanism for enforcement of those very same laws.

## II.   BACKGROUND

### A.   Overview of Backpage

This consolidated forfeiture action arises from certain of the claimants' ownership and/or operation of the website Backpage.com. By now the Court is now well-versed in the factual history at issue, and the government refers to and incorporates by reference its prior filings setting forth in detail the history of Backpage. These prior filings include, and the government incorporates by reference, the indictment of certain of claimants in the District of Arizona, and the United States Senate's Permanent Subcommittee on Investigations January 2017 report on Backpage's activities, both of which are part of the record in this case. See FACMC ¶ 126(c); see also Case No. 18-CV-06742-RGK, ECF Nos. 114, 114-1, at 111.[3]

---

[3] In light of the Court's familiarity with the facts of this action, and mindful of the Court's set page limits (see Standing Order at ¶6), the government has incorporated by reference

In brief, the government has alleged that the vast majority of Backpage's "adult" ads consisted of offers to sell adults or children for sex. FACMC ¶¶ 123,126; Ind.¶¶ 48,51,56,74,76,100-114; Senate Report, at 2,6. For most of its existence, Backpage charged for posting "adult" ads — and generated more than 90% of its revenue, or approximately a half-billion dollars - from those ads. FACMC ¶¶ 107,123; Ind.¶ 139; SR 44.

Backpage's executives knew and repeatedly acknowledged in internal company documents and private meetings that the overwhelming majority of the website's "adult" ads involved prostitution. FACMC ¶¶ 123,126,129-130; Ind.¶¶ 10,31,34,48,50, 56,58,61,67,70-71,76,81-82,100,110-11. At the same time, Backpage faced withering outside criticism: Law enforcement officers across the country presented Backpage with evidence that the overwhelming portion of its "adult" ads were for prostitution. FACMC ¶¶ 126,129-130; Ind.¶¶36,39,41,58,68, 72,74,98,103,105-06. The National Center for Missing and Exploited Children, news organizations and others repeatedly notified Backpage of the prevalence of prostitution and sex trafficking ads on its website. Ind.¶¶ 51,54,63,90,93,102,108; United States v. Lacey, et al., CR-18-422-PHX-SMB, ECF Nos. 446 and 446-1 Ex. E. In April 2015, the U.S. Senate Permanent

---

certain factual background material, rather than recount this material at length here. While the Court need not rely on this material to deny the instant motion, the Court is entitled to consider material incorporated by reference into the FACMC such as the Senate Report, see FACMC, ¶ 126(c), or to take judicial notice of court filings in the Arizona criminal action, such as the Indictment and Superseding Indictment. Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 746 n.6 (9th Cir. 2006).

Subcommittee on Investigations commenced an investigation into
internet sex trafficking and issued a subpoena to Backpage, and
in January 2017 the Subcommittee issued the 50-page Senate
Report revealing that nearly all of Backpage's "adult" ads were
solicitations for illegal prostitution, that Backpage was fully
aware of the true nature of these ads, and that Backpage had
taken an array of affirmative steps to help pimps and
traffickers "sanitize" these ads and conceal their illegality —
"even as Backpage represented to the public and the courts that
it merely hosted content others had created." FACMC, ¶¶ 124,126-
128; Ind.¶ 113; SR1-3.

   **B.   Arizona Grand Jury Proceedings and the Indictment**

   On March 28, 2018, an Arizona federal grand jury returned
an indictment charging certain of claimants and others with
knowingly facilitating prostitution and engaging in money
laundering designed to conceal misconduct and evade law
enforcement. See Ind. On April 5, 2018, Backpage pleaded guilty
to an information charging one count of money laundering,
admitting that it "derived the great majority of its revenue
from fees charged in return for publishing advertisements for
'adult' and 'escort' services," and "[t]he great majority of
these advertisements are, in fact, advertisements for
prostitution services." [CR-18-465-PHX-SMB, ECF No. 8-2 at 11].
It agreed to forfeit assets it owned or controlled traceable to
or involved in its crime, including shutting down the
Backpage.com website. Id. at 6-8. Backpage CEO Carl Ferrer also
pleaded guilty to conspiracy and agreed to the same forfeitures.
[CR-18-464-PHX-SMB, ECF No. 7-2]. On April 6, 2018, the

4

government seized the Backpage website pursuant to Backpage's guilty plea and plea agreement.

In July of 2018, the grand jury issued a Superseding Indictment (the "SI"). [United States v. Lacey, et al., CR-18-422-PHX-SMB, ECF No. 230]. On October 24, 2019, Judge Brnovich denied certain of claimants' motion to dismiss the federal criminal charges in the SI. United States v. Lacey, et al., 2019 WL 5448351 (D. Ariz. Oct. 24, 2019).

**C.    The Civil Seizure Warrants and Forfeiture Actions**

Between March 28 and June 4, 2018, magistrate judges in this District found probable cause to issue warrants to seize a range of assets covered by the forfeiture allegations in the various Arizona criminal cases, and the execution of these warrants resulted in the seizure of the funds at issue. [Case No. 18-CV-06742-RGK, ECF No. 53]. The probable cause determinations were based on the Affidavit of U.S. Postal Inspector Lyndon Versoza, which attached and incorporated the Senate Report, law enforcement reports, Backpage documents, and the Indictment. Id.

On September 28, 2018, the government filed a verified complaint for forfeiture in this action, ECF No. 1, which was consolidated with related forfeiture actions on January 14, 2020. [ECF No. 66]. On February 3, 2020, claimants filed a motion to dismiss this consolidated action (ECF No. 76), which was subsequently stricken (ECF No. 81), and Claimants filed a corrected motion to dismiss on February 5, 2020. [ECF. No. 82].

On June 1, 2020, the Government filed a First Amended Consolidated Master Complaint for Forfeiture (the FACMC). [ECF

No. 108]. On July 1, 2020, claimants renewed their corrected motion to dismiss the FACMC (ECF No. 111), and filed an additional motion to dismiss on new grounds. [ECF No. 112].

## III.  ARGUMENT

### A.   Legal Standard

A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of the claims stated in the complaint. See Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "Allegations in the complaint, together with reasonable inferences therefrom, are assumed to be true for purposes of the motion." Odom v. Microsoft Corp., 486 F.3d 541, 545 (9th Cir. 2007).

### B.   The Motions Must Be Denied Because This Court Has Already Held That Section 230 Immunity is Not Applicable Here

The primary thrust of Claimants' Motions (ECF Nos. 82, 111) is that that are immune to liability pursuant to section 230 of the Communications Decency Act (the "CDA"), codified at 47 U.S.C. § 230. This argument is not only erroneous, but it has already been flatly rejected by this Court in this case – a holding that claimants simply ignore.

6

1    On August 1, 2018, claimant J. Larkin filed a motion for

2   return of property (Case No. 18-CV-06742-RGK, ECF No. 6),[4] and on

3   October 11, 2019, claimants filed a statement of legal authority

4   in further support of that motion. [See Case No. 18-CV-06742-

5   RGK, ECF No. 106]. Among other arguments, claimants asserted

6   that under Franks v. Delaware, 438 U.S. 154 (1978), the seizure

7   warrants should be vacated as they allegedly failed to cite

8   previous judicial decisions where Backpage and/or its officers

9   had been found immune from civil and state criminal charges

10  under § 230 arising from their operation of Backpage.com. [See

11  e.g., Case No. 18-CV-06742-RGK, ECF No. 6, at 22 & n.30]; [see

12  also Case No. 18-CV-06742-RGK, ECF No. 106, at 8 (describing

13  "the [Versoza] affidavits' numerous misstatements of fact and

14  omissions, including the failure to mention relevant judicial

15  decisions involving Backpage.com")].

16    In opposing the motion, the government argued that Section

17  230 plainly did not apply here, noting that since the cases

18  claimants relied upon were decided, there had been a sea-change

19  in the availability of evidence concerning Backpage's

20  involvement in the criminal activity occurring on the platform.

21  For example, the cases relied upon by claimants were decided

22  before the Senate issued its Report in 2017 detailing Backpage's

23  knowing facilitation of prostitution, which was incorporated

24  into the Versoza affidavits. [See Case No. 18-CV-06742-RGK, ECF

25  No. 114, at 10].

26

27
_____

28    [4] Claimant Larkin's motion was subsequently joined by
claimants M. Lacey, J. Brunst, and S. Spear.

1    This Court denied claimants' motion on December 20, 2019.

2    [See Case No. 18-CV-06742-RGK, ECF No. 130 (hereinafter the

3    "12/20/19 Order")]. In that Order, the Court carefully

4    considered the Versoza affidavits, holding that

5        the conduct Versoza describes in the affidavits would

6        fall outside the scope of the CDA's immunity even if

7        such immunity applied, and Claimant's cited cases are

8        therefore distinguishable.

9    The CDA does not provide immunity for participation in

10       illegal activity. *Fair Hous. Council of San Fernando*

11       *Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1169 (9th

12       Cir. 2008); *see also United States v. Ulbricht*, 31 F.

13       Supp. 3d 540, 568 (S.D.N.Y. 2014). In *Roommates.com*, the

14       Ninth Circuit articulated a threshold for when the

15       operator of an interactive computer service performing

16       editorial functions, such as Backpage, crosses the line

17       into performing the dual role of a non-immune

18       "information content provider:"

19   A website operator who edits user-created content- such

20       as by correcting spelling, removing obscenity or

21       trimming for length-retains his immunity for any

22       illegality in the user-created content, provided that

23       the edits are unrelated to the illegality. However, a

24       website operator who edits in a manner that contributes

25       to the alleged illegality...is directly involved in the

26       alleged illegality and thus not immune.

27   *Roommates*, 521 F.3d at 1169 (emphasis added). This is

28       what the affidavits claim took place.

8

. . .

The affidavit asserts, rather, that Backpage employees, with Claimants' knowledge and as a matter of policy, actively worked to facilitate prostitution by concealing it from law enforcement through Backpage's "moderation" policy. . . . What it is accused of doing . . . is editing the ads with the purpose of concealing the illegal activity. This activity is illegal in itself, and therefore it is outside the CDA's grant of immunity. Claimants, through their control of Backpage, are accused of being "directly involved in the alleged illegality, and thus is not immune." *Roommates*, 521 F.3d at 1169.

12/20/19 Order, at 7-8.

The FACMC includes nearly-identical allegations as those in the Versoza Affidavits considered in the 12/20/19 Order. Compare Versoza Aff., ¶ 30-31 [Case No. 18-CV-06742-RGK, ECF No. 6, at 86-91], with FACMC ¶ 126-128 (detailing Backpage "moderation" policies). In short, this Court has already held that, under the law of this circuit (see Roommates, 521 F.3d at 1169), allegations nearly-identical to those at issue in the 12/20/19 Order – which must be taken as true at this stage – establish that § 230 immunity is simply not applicable here.[5] **Claimants simply ignore this holding.**

---

[5] Nor was this Court alone in reaching this holding. In the parallel criminal case, Judge Brnovich held in an Order dated October 24, 2019, that the SI

alleges Defendants participated in moderation not merely to edit, but to "conceal the true nature of the

9

1   In the Motions, Claimants actually acknowledge the Court's
2   12/20/19 Order at one point on a separate issue,[6] but neither
3   mention nor acknowledge this Court's explicit holding that
4   Section 230 does not apply based on the allegations in this
5   case.

6   Under the law of the case doctrine, "a court is generally
7   precluded from reconsidering an issue that has already been
8   decided by the same court or a higher court in the identical
9   case, absent a material change in circumstances." Ticketmaster
10  L.L.C. v. Prestige Entm't W., Inc., 315 F. Supp. 3d 1147, 1166
11  (C.D. Cal. 2018) (citing Thomas v. Bible, 983 F.2d 152, 154-155
12  (9th Cir. 1993)). This doctrine "encourages the conservation of
13  limited judicial resources and promotes consistency by allowing
14  court decisions to govern the same issues in subsequent stages
15  of the same case." E. Bay Sanctuary Covenant v. Trump, 950 F.3d
16  1242, 1261 (9th Cir. 2020). Courts may exercise discretion to
17  depart from the law of the case where: "1) the first decision
18  was clearly erroneous; 2) an intervening change in the law has
19  occurred; 3) the evidence on remand is substantially different;

20

21          ads being posted on its website." When a post
22          advertised child prostitution, their "official policy"
            was to delete particular words in the ad that
23          indicated the child's age and publish the revised
            version. This "only created a veneer of deniability
24          and helped Backpage's customers (i.e., pimps
            trafficking children) evade detection."
25  [D. Az., Case No. CR-18-422-PHX-SMB, ECF No. 793, at 12-13
26  (internal citations omitted)].

27          [6] Claimants cite this Court's 12/20/19 Order solely to argue
    that the related forfeiture actions "represent 'a separate civil
28  proceeding' from any prosecution in which individual Claimants
    are named." See ECF No. 111, at 2, n.2.

1   4) other changed circumstances exist; or 5) a manifest injustice

2   would otherwise result." <u>United States v. Alexander</u>, 106 F.3d

3   874, 876 (9th Cir.1997). Not only do Claimants not meet a single

4   <u>Alexander</u> factor, they simply ignore the question entirely.

5        None of the <u>Alexander</u> factors can plausibly be said to

6   support claimants' Motions: <u>First</u>, claimants have not suggested

7   that the 12/20/19 Order was clearly erroneous, and while

8   claimants attempted to appeal the 12/20/19 Order, the Court's

9   holding regarding Section 230 was not an issue raised on appeal.

10  [<u>See</u> Case No. 18-CV-06742-RGK, ECF No. 139, at 1, n.1]. <u>Second</u>

11  <u>and third</u>, claimants have identified no change in law or change

12  in evidence since their appeal was dismissed, and certainly none

13  in their favor. <u>Fourth</u>, no circumstances have changed other than

14  the filing of the FACMC, which includes allegations virtually

15  identical to the Versoza Affidavits upon which the Court relied

16  in the 12/20/19 Order. <u>Fifth</u>, claimants have identified no

17  manifest injustice here; while claimants have certainly bemoaned

18  these proceedings as unjust at every opportunity, they have been

19  notably silent regarding the Court's § 230 holding in the

20  12/20/19 Order.

21       In sum, this Court has already held that § 230 immunity is

22  not applicable here, based on allegations nearly identical to

23  those in the FACMC. Claimants have chosen to ignore that

24  holding, opting instead to attempt to relitigate the issue while

25  ignoring the law of the case. Having given the Court no reason

26  to deviate from its prior holding, the Court should stand by its

27  prior decision and deny the Motions.

28

### C.   The CDA Does Not Apply Because this is an Action Enforcing a Federal Criminal Statute

Even if this Court's 12/20/19 order were not controlling here, Section 230 would still provide no immunity for claimants, as this is an action brought by the United States to enforce federal criminal statutes,[7] and thus under § 230(e)(1), is specifically carved out of Section 230 immunity. This Court previously declined to reach the issue of whether § 230 applies to civil forfeiture actions (see 12/20/19 Order, at 7), and for the reasons stated above, the Court need not reach this issue now. But should the Court decide to address this issue, it should find that the exception in subsection (e)(1) applies to civil forfeiture proceeding *in rem* brought under 18 U.S.C. § 981, such as those at issue here. To find otherwise would hamstring the government's ability to enforce the very same criminal statutes the drafters of § 230 sought to protect.

Section 230 of the CDA provides:

(1) Treatment of publisher or speaker

No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider.

(2) Civil liability

No provider or user of an interactive computer service shall be held liable on account of--

---

[7] Specifically, the FACMC alleges violations of 18 U.S.C. §§ 1591 (Sex Trafficking of Children), 1952 (Interstate and Foreign Travel in Aid of Racketeering Enterprise), and 1956 & 1957 (Money Laundering). FACMC ¶ 101-102,145-147.

> (A) any action voluntarily taken in good faith to
> restrict access to or availability of material that
> the provider or user considers to be obscene, lewd,
> lascivious, filthy, excessively violent, harassing, or
> otherwise objectionable . . . .

47 U.S.C. § 230(c).[8] However, in 47 U.S.C. § 230(e)(1), Congress stated that nothing in any of these subsections should be construed to impair the enforcement of any federal criminal statute:

> (e) Effect on other laws
>
> (1) No effect on criminal law: Nothing in this section
> shall be construed to impair the enforcement of . . .
> any . . . Federal criminal statute

47 U.S.C. § 230(e)(1).

Congress could not have been clearer in expressing its intent that nothing in § 230 "shall be construed to impair the enforcement" of federal criminal law. While Congress certainly intended to limit the ability of private litigants to hold websites like Backpage to account, it carefully sought to protect the prerogative of the federal sovereign to police illegal conduct on the internet. In doing so, Congress explicitly preserved the ability of federal authorities to enforce federal criminal statutes, regardless of anything else in the CDA.

---

[8] A different subsection states "[n]o cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section." 47 U.S.C. § 230(e)(3).

While the application of § 230(e)(1) to a forfeiture action *in rem* under 18 U.S.C. § 981 appears to be a question of first impression in this circuit, the cardinal rule of statutory construction is that courts "begin by analyzing the statutory language, assuming that the ordinary meaning of that language accurately expresses the legislative purpose." Hardt v. Reliance Stand. Life Ins. Co., 560 U.S. 242, 251 (2010) (quotations and citation omitted; alteration omitted). Accordingly, in interpreting § 230(e)(1), the operative question is not whether civil forfeiture proceedings brought by the government are identical to criminal proceedings,[9] but rather, whether imposition of Section 230 immunity would "impair the enforcement of" any federal criminal statute. This circuit's precedent, as well practical considerations, show that the answer must be yes, and that granting Section 230 immunity in federal civil forfeiture proceedings brought to enforce violations of Title 18 would undeniably limit the government' ability to enforce such laws.

The Supreme Court has long recognized that civil forfeiture proceedings *in rem* are "quasi-criminal" statutes aimed at enhancing the government's punishment of violations of criminal

---

[9] The Court noted this distinction in the 12/20/19 Order, stating that "courts have consistently held in other contexts that civil forfeiture actions are not criminal in nature" citing to United States v. Ursery, 518 U.S. 267, 292 (1996). On this point, the Court's holding in the 12/20/19 order is inarguably correct – civil forfeiture proceeding are certainly not the same as criminal proceedings. As described herein, however, the proper inquiry under § 230(e)(1) is not into the nature of such proceedings, but rather, whether they "impair the enforcement" of federal criminal statute. § 230(e)(1).

law. See One 1958 Plymouth Sedan v. Pennsylvania, 380 U.S. 693, 700 (1965) ("[A] forfeiture proceeding is quasi-criminal in character. Its object, like a criminal proceeding, is to penalize for the commission of an offense against the law."); see also United States v. One 1985 Mercedes, 917 F.2d 415, 419 (9th Cir. 1990) ("Civil forfeiture actions constitute a hybrid procedure of mixed civil and criminal law elements...[s]ometimes referred to as 'quasi-criminal' actions").

The role of civil forfeiture in enforcing federal criminal law is not reasonably in dispute: the Ninth Circuit has unambiguously held that quasi-criminal statutes such as the civil forfeiture proceedings here exist "to aid in the enforcement of criminal laws." One 1985 Mercedes, 917 F.2d at 420; see also Calero-Toledo v. Pearson Yacht Leasing Co., 416 U.S. 663, 679 (1974) (forfeiture proceedings "foster[] the public interest in preventing continued illicit use of the property **and in enforcing criminal sanctions**" (emphasis added)). Similarly, the preeminent treatise on asset forfeiture states in its very first sentence that "[a]sset forfeiture is an integral part of federal criminal law enforcement in the United States." Cassella, Stefan D., Asset Forfeiture Law in the United States, (2d ed. 2013) § 1-1. Even at the nation's founding, civil forfeiture was recognized as a necessary means of enforcing the criminal law's ends. See Calero-Toledo., 416 U.S. at 684 (*in rem* forfeiture of seized pirate ship "'treated [the vessel] as the offender,' without regard to the owner's conduct, 'as the only adequate means of suppressing the offence or wrong'" (quoting United States v. Brig Malek Adhel, 43 U.S. 210, 233-34,

15

(1844))); <u>Austin v. United States</u>, 509 U.S. 602, 613 (1993)
("The First Congress passed laws subjecting ships and cargos
involved in customs offenses to forfeiture.").

While not addressing federal civil forfeiture specifically,
numerous courts have found that § 230 was intended to bar suits
by private civil litigants, not to limit the federal
government's criminal enforcement tools. For example, in
claimant's primary cited authority, <u>Jane Doe No. 1 v.
Backpage.com, LLC</u>, 817 F.3d 12, 23 (1st Cir. 2016), <u>see</u> ECF No.
111, at 17-18, the Court found that "Congress made pellucid that
it sought to ensure vigorous enforcement of Federal criminal
laws to deter and punish illicit activities online" and
accordingly, that § 230 "reflect[ed] a legislative judgment that
it is best to avoid the potential chilling effects that **private
civil actions** might have on internet free speech." <u>Id.</u> at 23
(emphasis added);[10] <u>see also</u> <u>Obado v. Magedson</u>, 2014 WL 3778261,
at *8 (D.N.J. July 31, 2014) ("the CDA exception for federal
criminal statutes applies to government prosecutions, **not to
civil private rights of action** under [statutes] with criminal
aspects" (emphasis added)); <u>Blumenthal v. Drudge</u>, 992 F. Supp.
44, 49 (D.D.C. 1998) (emphasis added) (Congress "made the
legislative judgment to effectively immunize providers of
computer services from **civil liability in tort** with respect to
materials disseminated by them but created by others." (emphasis

---

[10] While the <u>Jane Doe</u> Court ultimately found that § 230
immunity did apply on the facts there, that was not a civil
forfeiture action brought by the federal government, but rather,
a civil action brought by private litigants claiming a civil
remedy. <u>Id.</u>, at 23.

added)). As another federal court has explained at length, § 230 immunity was expressly aimed at deterring potential private litigants:

> [Congress] preserved the ability of law enforcement officials to enforce the federal criminal laws to their fullest extent while at the same time eliminating the ability of **private plaintiffs** to pursue service-provider defendants. Given the complexity of Title 18 and the availability of civil remedies in statutes throughout the criminal code, Congress achieved its intended result using simple language making it clear that Section 230's limits on civil liability would not affect governmental enforcement of federal criminal laws.
>
> . . .
>
> Congress decided not to allow **private litigants** to bring civil claims based on their own beliefs that a service provider's actions violated the criminal laws . . . . [T]he reason is evident. If civil liability were possible, the incentive to bring a civil claim for the settlement value could be immense, even if a plaintiff's claim was without merit.

Doe v. Bates, 05 Civ. 91, 2006 WL 3813758, at *21-22 (E.D. Tex. Dec. 27, 2006) (emphasis added).[11]

---

[11] In fact, Backpage's prior counsel (who now represent certain claimants here) acknowledged as much: in a Supreme Court filing in *Jane Doe No. 1*, Backpage wrote: "The First Circuit correctly held that the exception in Section 230(e)(1) for criminal enforcement applies only to federal criminal prosecutions; **it does not permit private plaintiffs' civil actions** based on alleged violations of criminal statutes. . . .

1    Indeed, any other interpretation would invite obvious

2 mischief and run counter to Congress' intent to "ensure vigorous

3 enforcement of Federal criminal laws to deter and punish illicit

4 activities online." Jane Doe No. 1, 817 F.3d at 23. Claimants'

5 interpretation of § 230(e)(1) would render broad swathes of

6 criminal activity free of consequence any time the government

7 could not criminally prosecute a wrongdoer, leaving the

8 government with no plausible enforcement mechanism. Such

9 scenarios are exactly why forfeiture *in rem* of property has

10 survived across the centuries. In cases where the government may

11 not or cannot bring criminal proceedings against a lawbreaker,

12 civil forfeiture may still allow the government to vindicate the

13 criminal law. As the Supreme Court stated in Brig Malek Adhel,

14         this is done from the necessity of the case, as the

15         only adequate means of suppressing the offence or

16         wrong, or insuring an indemnity to the injured party.

17         The doctrine also is familiarly applied to cases of

18         smuggling and other misconduct under our revenue laws;

19         and has been applied to other kindred cases, such as

20         cases arising on embargo and non-intercourse acts.

21 43 U.S. 210, 233-34. That reasoning applies with even greater

22 force today. For example, a criminal operating a website

23 advertising the sale of narcotics or other contraband shipped to

24 or within the United States would be able to operate with

25 impunity so long as he or she carefully avoided touching U.S.

26 _____

27 In this regard, too, the First Circuit's decision is consistent
with every other federal court that has considered the issue."

28 Doe v. Backpage.com, LLC, 2016 WL 7047745 (U.S.), at 18 & n.11
(Br. in Opp. to Pet. for Writ of Cert.).

soil or a friendly-extradition country. In fact, the same criminal could use the proceeds of such criminal activity to bank and keep funds in the U.S., buy and sell property domestically, or even locate and operate the business itself in the country. So long as he or she avoided *in personam* jurisdiction, Section 230 would render the federal government powerless to deter such a criminal enterprise, even where instrumentalities of the crime were within the jurisdiction of the United States.

As the court recognized in <u>Bates</u>, Congress certainly intended to provide protection to operators of online marketplaces when enacting § 230, but such protection was not a license to break federal law and operate with impunity. Should the Court reach the issue, the Court should find that § 230(e)(1) applies to a civil forfeiture proceedings under 18 U.S.C. §981, such as here

//

//

//

**IV.   CONCLUSION**

    For the reasons set forth above, the government respectfully requests that claimants' motions to dismiss be denied.

                                    Respectfully submitted,

DATED: August 21, 2020          NICOLA T. HANNA
                                 United States Attorney
                                 BRANDON D. FOX
                                 Assistant United States Attorney
                                 Chief, Criminal Division
                                 STEVEN R. WELK
                                 Assistant United States Attorney
                                 Chief, Asset Forfeiture Section

                                      /s/
                                 DAN G. BOYLE
                                 Assistant United States Attorney

                                 Attorneys for Plaintiff
                                 UNITED STATES OF AMERICA