NICOLA T. HANNA
United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division
STEVEN R. WELK
Assistant United States Attorney
Chief, Asset Forfeiture Section
DAN G. BOYLE (California Bar No. Pending)
Assistant United States Attorney
Asset Forfeiture Section
    Federal Courthouse, 14th Floor
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-2426
    Facsimile: (213) 894-0142
    E-mail: Daniel.Boyle2@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. CV 18-08420-RGK (PJWx) |
| Plaintiff, | PLAINTIFF'S OPPOSITION TO CLAIMANTS' MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6) [ECF No. 112] |
| v. | |
| $1,546,076.35 IN BANK FUNDS SEIZED FROM REPUBLIC BANK OF ARIZONA ACCOUNT '1889, ET AL., | Hearing Date: September 21, 2020 |
| Defendants. | Time: 9:00 a.m. |
| _____ | Place: Courtroom 850 255 E. Temple Street, 7th Fl. Los Angeles, CA 90012 |
| Michael Lacey, et al, | |
| Claimants. | |

     Plaintiff United States of America, by and through its

counsel of record, the United States Attorney for the Central

District of California and Assistant United States Attorney Dan

G. Boyle, hereby files its Opposition to Claimants' July 1, 2020 Motion to Dismiss the First Amended Consolidated Master Verified Complaint for Forfeiture in this Action. [ECF Nos. 112.]

      This Opposition is based upon the attached Memorandum of Points and Authorities, the files and records in this case, and such further evidence and argument as the Court may permit.


 Dated: August 21, 2020          Respectfully submitted,

                                 NICOLA T. HANNA
                                 United States Attorney

                                 BRANDON D. FOX
                                 Assistant United States Attorney
                                 Chief, Criminal Division
                                 STEVEN R. WELK
                                 Assistant United States Attorney
                                 Chief, Asset Forfeiture Section

                                 _____/s/_____
                                 DAN G. BOYLE
                                 Assistant United States Attorney

                                 Attorneys for Plaintiff
                                 UNITED STATES OF AMERICA

1

## TABLE OF CONTENTS

I. INTRODUCTION ................................................. 1

II. BACKGROUND ................................................. 3

III. ARGUMENT ................................................. 6

  A. Pleading Standards Applicable to Civil Forfeiture Actions . 6

  B. Dismissals Under Rule 12(b)(6) Are Disfavored ............. 9

  C. Where Allegations are Insufficient, Leave to Amend Should be
  Liberally Granted ......................................... 10

  D. Claimants Misunderstand the Nature of, and Misapply the
  Pleading Standard for, *in rem* Civil Forfeiture Proceedings .. 10

  E. The FACMC Sufficiently Alleges Sex Trafficking and Travel
  Act Violations. ........................................... 16

  F. The FACMC Sufficiently Alleges Money laundering .......... 19

  G. The FACMC Sufficiently Alleges a Substantial Connection
  Between Defendant Assets and the Subject Offenses ........... 20

IV. CONCLUSION ................................................ 21

2

## <u>TABLE OF AUTHORITIES</u>

**Cases**

<u>Conley v. Gibson</u>,

   355 U.S. 41 (1957) ........................................ 13

<u>Gilligan v. Jamco Develop. Corp.</u>,

   108 F.3d 246 (9th Cir. 1997) ............................. 12

<u>Gompper v. VISX, Inc.</u>,

   298 F.3d 893 (9th Cir. 2002) ............................. 11

<u>Hishon v. King & Spaulding</u>,

   467 U.S. 69 (1984) ....................................... 12

<u>In re Daou Systems, Inc.</u>,

   411 F.3d 1006 (9th Cir. 2005 ............................. 11

<u>Pinkerton v. United States</u>,

   328 U.S. 640 (1946) ...................................... 17

<u>United States v. $5,000 in U.S. Currency</u>,

   2010 WL 1667292 (S.D. Miss. Apr. 23, 2010) ............... 11

<u>United States v. Aguilar</u>,

   782 F.3d 1101 (9th Cir. 2015) ......................... 12, 15

<u>United States v. Fonseca-Caro</u>,

   114 F.3d 906 (9th Cir. 1997) ............................. 17

<u>United States v. Mondragon</u>,

   313 F.3d 862 (4th Cir.2002) .............................. 12

<u>United States v. One White Crystal Covered Bad Tour Glove</u>,

   2012 WL 8467453 (C.D. Cal. Sept. 6, 2012) ............ 14, 16

<u>United States v. Real Property Located at 5208 Los Franciscos</u>

   <u>Way</u>,

   385 F.3d 1187 (9th Cir. 2004) ............................ 10

3

United States v. Redwood City,
  640 F.2d 963 (9ᵗʰ Cir. 1981) ............................... 12
United States v. Ulbricht,
  31 F. Supp. 3d 540 (S.D.N.Y. 2014) ........................ 19
United States v. One Gulfstream G-V Jet Aircraft,
  941 F. Supp. 2d (D.D.C. 2013) ..................... 12, 14, 16

**Statutes**

18 U.S.C. § 983........................................ 5, 10, 13

**Rules**

Fed.R.Civ.P. 9............................................. 11
Fed.R.Civ.P 8............................................. 12
Fed.R.Civ.P. 12(b)(6)..................................... 10
Supp. Rule E.............................................. 11
Supp. Rule G.......................................... passim

4

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

Separate from their Motions relying on 47 U.S.C. § 230 [ECF Nos. 82, 111], to which the government is filing a concurrent opposition, Claimants filed a second motion to dismiss the First Amended Consolidated Master Verified Complaint for Forfeiture (the "FACMC") on July 1, 2020, ECF No. 112 (the "Motion"), arguing that the 88-page FACMC should be dismissed as lacking sufficient factual allegations. The Motion should be denied.

Claimants' motion depends upon a fundamental misunderstanding or misapplication of the nature of civil forfeiture pleadings: specifically, claimants argue that a forfeiture complaint must include detailed allegations as to the guilt or innocence of each potential claimant. While this argument is arguably proper in a motion to dismiss an indictment – and certain claimants here raised near-identical arguments in their unsuccessful efforts to dismiss the related indictment against them in the District of Arizona – such arguments have no application in an *in rem* forfeiture proceeding.

Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions (the "Supplemental Rules"), which governs this action, provides that a forfeiture complaint must plead facts regarding the forfeitability of the defendant *res*, and specifically, "sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial." Supp. Rule G (2)(f). The government's burden of proof at trial is to establish by a preponderance of

1

1  the evidence that the *res* is subject to forfeiture. See 18
2  U.S.C. § 983(c)(1).

3         Put another way, the government is not required to allege
4  *who* committed the specific criminal acts rendering the defendant
5  property subject to forfeiture, so long as the allegations of
6  the complaint establish a nexus between the *res* and one or more
7  criminal acts for which forfeiture is authorized. To hold
8  otherwise would lead to profoundly absurd results: at the time
9  the government files a complaint for forfeiture, the government
10 often does not know with any level of certainty who committed
11 the acts justifying the forfeiture, much less of the identity of
12 the claimants who may come forward to contest the forfeiture.
13 Requiring the government to plead specific facts that would
14 render every potential claimant culpable for the underlying
15 crime(s) would effectively require the government to be
16 clairvoyant. The forfeiture laws are not so absurd. The
17 government's burden is to plead the forfeitability of the
18 defendant *res*, and while this often includes allegations
19 relating to persons or entities who eventually appear in the
20 case as claimants – which the government has certainly done here
21 – the government need not identify the violator who committed
22 each alleged offense.

23        Claimant's remaining arguments are mostly a rehash of
24 issues already raised and rejected in the related criminal case,
25 seeking to impose unjustified pleading standards that have no
26 basis in law. These arguments have largely been rejected by
27 Judge Brnovich in overseeing certain of the claimants' parallel
28 criminal trial, and should be rejected here as well.

2

**II.      BACKGROUND**

    **A.   Overview of Backpage**

This consolidated forfeiture action arises from certain of the claimants' ownership and/or operation of the website Backpage.com. By now the Court is now well-versed in the factual history at issue, and the government refers to and incorporates by reference its prior filings setting forth in detail the history of Backpage. These prior filings include, and the government incorporates by reference, the indictment of certain of claimants in the District of Arizona, and the United States Senate's Permanent Subcommittee on Investigations January 2017 report on Backpage's activities, both of which are part of the record in this case. See FACMC ¶ 126(c); see also Case No. 18-CV-06742-RGK, ECF Nos. 114, 114-1, at 111.[1]

In brief, the government has alleged that the vast majority of Backpage's "adult" ads consisted of offers to sell adults or children for sex. FACMC ¶¶ 123,126; Ind.¶¶ 48,51,56,74,76,100-114; Senate Report, at 2,6. For most of its existence, Backpage charged for posting "adult" ads — and generated more than 90% of

---

[1] In light of the Court's familiarity with the facts of this action, and mindful of the Court's set page limits (see Standing Order at ¶6), the government has incorporated by reference certain factual background material, rather than recount this material at length here. While the Court need not rely on this material to deny the instant motion, the Court is entitled to consider material incorporated by reference into the FACMC such as the Senate Report, see FACMC, ¶ 126(c), or to take judicial notice of court filings in the Arizona criminal action, such as the Indictment and Superseding Indictment. Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 746 n.6 (9th Cir. 2006).

1   its revenue, or approximately a half-billion dollars — from
2   those ads. FACMC ¶¶ 107,123; Ind.¶ 139; SR 44.

3          Backpage's executives knew and repeatedly acknowledged in
4   internal company documents and private meetings that the
5   overwhelming majority of the website's "adult" ads involved
6   prostitution. FACMC ¶¶ 123,126,129-130; Ind.¶¶ 10,31,34,48,50,
7   56,58,61,67,70-71,76,81-82,100,110-11. At the same time,
8   Backpage faced withering outside criticism: Law enforcement
9   officers across the country presented Backpage with evidence
10  that the overwhelming portion of its "adult" ads were for
11  prostitution. FACMC ¶¶ 126,129-130; Ind.¶¶36,39,41,58,68,
12  72,74,98,103,105-06. The National Center for Missing and
13  Exploited Children, news organizations and others repeatedly
14  notified Backpage of the prevalence of prostitution and sex
15  trafficking ads on its website. Ind.¶¶ 51,54,63,90,93,102,108;
16  United States v. Lacey, et al., CR-18-422-PHX-SMB, ECF Nos. 446
17  and 446-1 Ex. E. In April 2015, the U.S. Senate Permanent
18  Subcommittee on Investigations commenced an investigation into
19  internet sex trafficking and issued a subpoena to Backpage, and
20  in January 2017 the Subcommittee issued the 50-page Senate
21  Report revealing that nearly all of Backpage's "adult" ads were
22  solicitations for illegal prostitution, that Backpage was fully
23  aware of the true nature of these ads, and that Backpage had
24  taken an array of affirmative steps to help pimps and
25  traffickers "sanitize" these ads and conceal their illegality—
26  "even as Backpage represented to the public and the courts that
27  it merely hosted content others had created." FACMC, ¶¶ 124,126-
28  128; Ind.¶ 113; SR1-3.

4

**B.    The Arizona Grand Jury Proceedings and the Indictment**

On March 28, 2018, an Arizona federal grand jury returned an indictment charging certain of claimants and others with knowingly facilitating prostitution and engaging in money laundering designed to conceal misconduct and evade law enforcement. See Ind. On April 5, 2018, Backpage pleaded guilty to an information charging one count of money laundering, admitting that it "derived the great majority of its revenue from fees charged in return for publishing advertisements for 'adult' and 'escort' services," and "[t]he great majority of these advertisements are, in fact, advertisements for prostitution services." [CR-18-465-PHX-SMB, ECF No. 8-2 at 11]. It agreed to forfeit assets it owned or controlled traceable to or involved in its crime, including shutting down the Backpage.com website. Id. at 6-8. Backpage CEO Carl Ferrer also pleaded guilty to conspiracy and agreed to the same forfeitures. [CR-18-464-PHX-SMB, ECF No. 7-2]. On April 6, 2018, the government seized the Backpage website pursuant to Backpage's guilty plea and plea agreement.

In July of 2018, the grand jury issued a Superseding Indictment (the "SI"). [United States v. Lacey, et al., CR-18-422-PHX-SMB, ECF No. 230]. On October 24, 2019, Judge Brnovich denied certain of claimants' motion to dismiss the federal criminal charges in the SI. United States v. Lacey, et al., 2019 WL 5448351 (D. Ariz. Oct. 24, 2019).

**C.    The Civil Seizure Warrants and Forfeiture Actions**

Between March 28 and June 4, 2018, magistrate judges in this District found probable cause to issue warrants to seize a

5

range of assets covered by the forfeiture allegations in the various Arizona criminal cases, and the execution of these warrants resulted in the seizure of the funds at issue. [Case No. 18-CV-06742-RGK, ECF No. 53]. The probable cause determinations were based on the Affidavit of U.S. Postal Inspector Lyndon Versoza, which attached and incorporated the Senate Report, law enforcement reports, Backpage documents, and the Indictment. Id.

On September 28, 2018, the government filed a verified complaint for forfeiture in this action (ECF No. 1), which was consolidated with related forfeiture actions on January 14, 2020. [ECF No. 66]. On February 3, 2020, claimants filed a motion to dismiss this consolidated action (ECF No. 76), which was subsequently stricken (ECF No. 81), and Claimants filed a corrected motion to dismiss on February 5, 2020. [ECF. No. 82].

On June 1, 2020, the Government filed a First Amended Consolidated Master Complaint for Forfeiture (the FACMC). [ECF No. 108]. On July 1, 2020, claimants renewed their corrected motion to dismiss the FACMC (ECF No. 111), and filed an additional motion to dismiss on new grounds. [ECF No. 112].

**III. ARGUMENT**

    **A.   Pleading Standards Applicable to Civil Forfeiture Actions**

The standards applicable to a Rule 12(b)(6) motion to dismiss a complaint in a civil forfeiture action are drawn from the general rules governing the determination of such motions under the Federal Rules of Civil Procedure, and the specific rules applicable to forfeiture actions found in the Supplemental

Rules, particularly Supplemental Rule G(2), which establishes the pleading standard for civil *in rem* forfeiture actions.[2]

Supplemental Rule G(2) requires that a judicial forfeiture complaint:

(a) be verified;

(b) state the grounds for subject-matter jurisdiction, *in rem* jurisdiction over the defendant property, and venue;

(c) describe the property with reasonable particularity;

(d) if the property is tangible, state its location when any seizure occurred and – if different – its location when the action is filed;

(e) identify the statute under which the forfeiture action is brought;  and

(f) state sufficiently detailed facts to support a **reasonable belief** that the government will be able to meet its burden of proof at trial.

Supp. Rule G(2) (emphasis added). The government is not required to allege sufficient facts to necessarily prevail at trial (although it has done so here). <u>United States v. Real Property Located at 5208 Los Franciscos Way</u>, 385 F.3d 1187, 1193 (9th Cir. 2004). Similarly, 18 U.S.C. § 983 (general rules for civil forfeiture proceedings) provides, at subsection (a)(3)(D), that

---

[2] The Supplemental Rules apply to forfeiture actions *in rem* arising from a federal statute (Supplemental Rule A(1)(B)), which includes civil judicial forfeiture actions.  The Federal Rules of Civil Procedure also apply to actions governed by the Supplemental Rules, except to the extent that they are inconsistent, in which case the Supplemental Rules control. Supplemental Rule A(2).

"no complaint may be dismissed on the ground that the Government
did not have adequate evidence at the time the complaint was
filed to establish the forfeitability of the property."[3]

It is likewise well-settled that in determining whether to
grant a Rule 12(b)(6) motion to dismiss, a district court must
"accept the plaintiff's allegations as true and construe them in
the light most favorable to plaintiff." In re Daou Systems,
Inc., 411 F.3d 1006, 1013 (9th Cir. 2005); Gompper v. VISX, Inc.,
298 F.3d 893, 895 (9th Cir. 2002). The same standard applies
under Supplemental Rule G. United States v. $5,000 in U.S.
Currency, 2010 WL 1667292, *2 (S.D. Miss. Apr. 23, 2010) (in
determining a motion to dismiss a civil forfeiture complaint,
the facts set forth in the complaint are assumed to be true). In
applying this standard, "all reasonable inferences" that can be
drawn from the complaint are also taken to be true. Pareto v.
FDIC, 139 F.3d 696, 699 (9th Cir. 1998); see also Gompper, 298
F.3d at 896 (reviewing the "totality of facts and inferences"
from the complaint).

The court should not credit claimants' attempts to turn the
pleading standard in Supp. Rule G(2) into a pleading standard
akin to that of Fed. R. Civ. P. 9(b). See ECF No. 112, at 3-4.
Addressing Rule G's predecessor, the Ninth Circuit has held that

Supplemental Rule E(2)(a) does not articulate an
onerous standard. Looking to the text of the rule, it

---

[3] See also United States v. $22,173.00 in U.S. Currency,
2010 WL 1328953, *3-4 (S.D.N.Y. Apr. 5, 2010) (applying the
"reasonable belief" standard and holding that the government is
not required to establish forfeitability at the pleading stage
because it is entitled to rely upon evidence gathered after the
filing of the complaint to prove its case).

8

held that a complaint must state the circumstances
giving rise to the forfeiture claim with sufficient
particularity that the claimant can commence a
meaningful investigation of the facts and draft a
responsive pleading and permit a reasonable belief for
pleading purposes that the property in question is
subject to forfeiture.

United States v. Aguilar, 782 F.3d 1101, 1108-09 (9th Cir. 2015)
(citing United States v. Mondragon, 313 F.3d 862 (4th Cir.2002)
internal quotation marks and alterations omitted). Claimants'
own cited authority confirms that, while the standard under
Supp. Rule G is higher than the "liberal notice pleading
standard" under Fed.R.Civ.P 8(a)(2), under Rule G, "at the
pleadings stage, it suffices for the government to simply allege
enough facts so that the claimant may understand the theory of
forfeiture, file a responsive pleading, and undertake an
adequate investigation." United States v. One Gulfstream G-V Jet
Aircraft, 941 F. Supp. 2d 1, 14 (D.D.C. 2013) (citing $22,173.00
in U.S. Currency, 2010 WL 1328953, at *2).

### B.  Dismissals Under Rule 12(b)(6) Are Disfavored

Rule 12(b)(6) motions are "viewed with disfavor and [are]
rarely granted." Gilligan v. Jamco Develop. Corp., 108 F.3d 246,
249 (9th Cir. 1997). A dismissal is appropriate only in
extraordinary circumstances (United States v. Redwood City, 640
F.2d 963, 966 (9th Cir. 1981)) and only if, under any set of
facts that the plaintiff can prove consistent with its
allegations, it is clear that no relief can be granted. Hishon
v. King & Spaulding, 467 U.S. 69, 73, (1984). And, consistent

9

with the standards applicable under Supp. Rule G, "the issue is not whether a plaintiff will ultimately prevail but whether [it] is entitled to offer evidence to support the claims." Id. (relying upon Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

**C.  Where Allegations are Insufficient, Leave to Amend Should be Liberally Granted**

Should a court determine that the allegations of a complaint are insufficient, leave to amend should be liberally granted. See Conley v. Gibson, 355 U.S. 41, 45-46 (1957) ("a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief"); One Gulfstream, 941 F. Supp. 2d at 16 (granting motion to dismiss forfeiture complaint, but granting leave to amend, where "[t]he court has little doubt that the government could cure these deficiencies by filing an amended complaint that alleges additional facts.").

**D.  Claimants Misunderstand the Nature of, and thus Misapply the Pleading Standard for, *in rem* Civil Forfeiture Proceedings**

Claimants devote a substantial portion of their briefing to arguing that the government has failed to allege sufficient guilty knowledge as to each of the individual claimants, citing what they characterize as limited allegations about each of the moving-claimants, and going so far as to argue that the FACMC must be dismissed because "[t]he Complaint contains no non-conclusory allegations specific to [claimants] Margaret Larkin, Troy Larkin, Ramon Larkin, or Anne Hawkins." See ECF No. 112, at

3-8, n.7. Accordingly claimants demand dismissal of the FACMC on these grounds.

This argument fails to recognize the very nature of an *in rem* forfeiture action. In such an action, the government files a complaint against a *res*, the defendant property, which is arrested through a warrant *in rem*, after which notice is provided to potential claimants, who are permitted to intervene to assert claims. But the claimants are not charged with any offense, and no damages are sought from them as in a typical civil action. See generally, 18 U.S.C. § 983(a); Supp. Rule G(2),(4). Unlike an *in personam* criminal prosecution, the government need not identify the violators. Nor can the government predict who the claimants might be. Yet that is exactly what claimants argue the government must do. See ECF No. 112 at 2, 4 (seeking dismissal "due to the near complete lack of any allegations about Claimants and Claimants' Assets").

If dismissal were required any time a forfeiture complaint failed to include illegal conduct **by a specific claimant**, the entire civil forfeiture statutory scheme would collapse, as anyone not mentioned in the complaint could simply file a claim and immediately move for dismissal on that basis. This result would be directly at odds with § 983(d)(1), which makes it an affirmative defense where a claimant purports to be an innocent owner of forfeitable property. In short, it is not the government's burden to allege that any particular claimant committed any particular illegal act to survive a motion to dismiss. Rather, the government must allege, and ultimately prove at trial, that a violation of law occurred that involved

the defendant *res* in a manner that renders it subject to forfeiture – regardless of whomever committed such and offense. 18 U.S.C. 983(c)(1); One Gulfstream, 941 F. Supp. 2d at 13–14.

In support of their arguments, claimants mostly on two cases: One Gulfstream and United States v. One White Crystal Covered Bad Tour Glove, 2012 WL 8467453, at *1 (C.D. Cal. Sept. 6, 2012). One Gulfstream is interesting and instructive – although not controlling here. Notably, the One Gulfstream Court articulated a pleading standard that largely matches that articulated by the Ninth Circuit in Aguilar: the government must allege "enough facts so that the claimant may understand the theory of forfeiture, file a responsive pleading, and undertake an adequate investigation." 941 F. Supp. at 14. The holding in One Gulfstream, however, does not support claimant's motion.

In that case, the court dismissed the government's forfeiture complaint against a private jet with leave to amend, finding that the government had failed to allege facts establishing a sufficient nexus to any illegal activity, thus leaving claimants unable to conduct any meaningful investigation:

> Absent other details, the court cannot infer how [claimant] Nguema's wealth may have been derived, nor from what sources, nor the legality of those sources. Although the government alleges that Nguema lives far beyond his means, the court cannot leap to the conclusion that his largesse is evidence of criminal activity.

12

1
2
3
4

> Faced with this complaint, the claimants would find it
> difficult to know where to begin their investigation,
> what individuals to interview, or what documents to
> review . . .

5   941 F. Supp. 2d at 16. The same cannot plausibly be said about

6   the allegations of the FACMC. Claimants acknowledge that the

7   FACMC contains extensive tracing allegations, including

8   extensive descriptions of transfers into the subject accounts.

9   See ECF No. 112, at 4-6; FACMC ¶¶ 155-176,177-192,169-199,193-

10  195. Similarly, the FACMC identifies entities involved,

11  including Backpage itself, with specificity, and provides

12  detailed tracing of funds to and from those entities. FACMC

13  ¶ 106-107,137,140,152-154,165,181(a),186,234. The FACMC

14  similarly provides detailed allegations of specific instances of

15  illegal activity (FACMC ¶ 125,132,138-141), describes the

16  Backpage Operators' promotion of that activity (FACMC ¶ 126-

17  127), and provides extensive tracing of funds from such

18  activity. FACMC ¶ 138-144,158-238.

19      In short, the FACMC is bears no similarities to the

20  nebulous allegations of unexplained wealth considered by the One

21  Gulfstream Court, and claimants cannot credibly assert here that

22  they are unable to "understand the theory of forfeiture, file a

23  responsive pleading, [or] undertake an adequate investigation" –

24  indeed, claimants have litigated this action and the parallel

25  criminal proceeding for more than two years, all the while

26  demonstrating complete familiarity with the government's

27  allegations and theories in both matters.

28

13

Claimants' reliance on <u>One White Crystal Glove</u> is similarly misplaced. Their selective use of one sentence in that opinion to suggest that the case stands for the proposition that a forfeiture complaint must "allege specific details of particular instances of crimes being committed by [claimant]" ECF No. 111, at 4 (alterations in original), is too clever by half. <u>One White Crystal Glove</u> did not address allegations of acts by coconspirators. In contrast, the FACMC identifies by name certain of the claimants, along with others who have since pled guilty, referred to in the FACMC as the "Backpage Operators" (FACMC ¶ 117), and alleges that the Backpage Operators conspired in the operation of Backpage for criminal purposes. FACMC ¶¶ 145-147,239-241. The FACMC similarly pleads sufficient facts to support a reasonable belief that the government will be able to prove such a conspiracy at trial. <u>See</u> FACMC ¶¶ 108-109,121-122,124,126-127,132-133.

Claimants attempt to sidestep this question by accusing the government of "shotgun pleading" (ECF No. 111, at 8-9, 14-15), but that assertion ignores the complex nature of the case presented here, and neither of the cases relied upon by claimants in support of their argument involved an alleged conspiracy. It is entirely proper for the government to plead the acts of coconspirators as a group, as coconspirators are accountable for each other's foreseeable acts under <u>Pinkerton v. United States</u>, 328 U.S. 640 (1946). <u>See also</u> <u>United States v. Fonseca-Caro</u>, 114 F.3d 906, (9th Cir. 1997) ("[A] co-conspirator is vicariously liable for reasonably foreseeable substantive crimes committed by a co-conspirator in furtherance of the

conspiracy."). Again, as the focus of this *in rem* case is the guilt of the *res,* the government may rely upon allegations of the acts of the members of a conspiracy, regardless of their individual identities.

For example, in <u>Return of Seized Prop. v. United States,</u> claimants sought dismissal under Rule 12(b)(6). 625 F. Supp. 2d 949, 953 (C.D. Cal. 2009). The court denied the motion, holding that the forfeiture complaint and documents incorporated in it had alleged that certain of the claimants "were members or associates of the organization known as the 'Mongols,'" and that the complaint then "detail[ed] the numerous acts of violence, narcotics-trafficking, money laundering, and related activities allegedly committed by the Mongols." <u>Id</u>. By reading these allegations in conjunction, the complaint stated sufficient facts to support a reasonable belief that the Government would be able to meet its burden of proof at trial. <u>Id</u>.

To the extent that claimants seek more information as to exactly which conspirators undertook which acts, then that is a matter for discovery, not a failure of pleading. The FACMC provides the governments' theory of forfeiture – including conspiracy[4] – and by identifying the conspirators, provides more

---

[4] Seeking to evade this issue, claimants argue that the government's conspiracy allegations are "legal conclusions cast as factual allegations or conclusory allegations" (ECF No. 112, at 16), but claimants offer no citation or support for this assertion. As described above, when read in conjunction with the whole FACMC, and with the materials incorporated by reference the FACMC properly alleges a conspiracy. <u>See</u> <u>Gompper</u>, 298 F.3d at 896 (reviewing the "totality of facts and inferences" from the complaint).

than enough information for claimants to conduct an investigation. As noted above, under both <u>Aguilar</u> and <u>One Gulfstream</u>, at this stage, this is sufficient.

### E.   The FACMC Sufficiently Alleges Sex Trafficking and Travel Act Violations.

Claimants next argue that the allegations in the FACMC regarding 18 U.S.C. § 1591 (Sex Trafficking) and 18 U.S.C. § 1592 (the Travel Act) are deficient.

The FACMC includes numerous allegations regarding acts of sex trafficking on Backpage.com. FACMC ¶ 125,127,135. Claimants acknowledge as much, acknowledging that the FACMC "alleges that persons who posted advertisements on Backpage engaged in sex trafficking and that Backpage's moderation practices assisted them." ECF No. 112, at 9.[5]

Again, claimants revert to the flawed argument that the "[c]omplaint has no factual allegations suggesting that Claimants had any such knowledge." ECF No. 112, at 11. But it is not the government's burden to allege the knowledge of each and every potential claimant. <u>Aguilar</u>, 782 F.3d at 1108. The government has alleged widespread sex trafficking on Backpage.com (FACMC ¶¶ 126-127,135), that the Backpage Operators knew of, intended to and did promote the same, and the resulting theory of forfeiture. FACMC ¶ 145. It is of no moment at the pleading stage whether the relevant knowledge belonged to one of the claimants, or to one of their coconspirator Backpage

---

[5] Claimants also argue that the government will be unable to establish the appropriate *mens rea* at trial, citing to a Department of Justice brief from 2016 – well before the full scope of Backpage's guilty knowledge had come to light following the Senate Report. FACMC ¶ 126-128.

Operators who has already pled guilty. FACMC ¶ 117. To the extent that some claimants intend to assert a lack of guilty knowledge as purportedly innocent owners, that is an affirmative defense on which the claimants bear the burden of proof. <u>See</u> 18 U.S.C. § 983(d).

With respect to the Travel Act, Claimants grudgingly admit that the FACMC includes numerous allegations regarding the Travel Act, but claim that these are "inactionable legal conclusions." <u>See</u> ECF 111, at 12. Yet even a cursory reading of those allegations in the context of the FACMC in its entirety, dispels claimants' arguments. For example, the FACMC alleges numerous instances of prostitution and sex trafficking on Backpage (FACMC ¶¶ 125,127,135), that "all levels of Backpage management, including the Backpage Operators, were aware of Backpage's role in promoting criminal activity," and provides numerous examples. FACMC ¶ 126-128.

Claimants' argument is, in substance, that the FACMC must be dismissed because the government has not alleged that specific claimants personally knew about these identified acts of prostitution and trafficking. As with much of their Motion, this argument is not new, has not been successful, and is unsupported by any authority. Courts have repeatedly upheld prosecutions of website operators alleged to have knowingly operated criminal marketplaces, regardless of their knowledge as to individual transactions. For example, Ross Ulbricht, the founder of the "Silk Road" website, was prosecuted for creating an online advertising marketplace for illegal narcotics and malicious software. Rejecting a motion to dismiss, the court

found Ulbricht was "alleged to have knowingly and intentionally constructed and operated an expansive black market for selling and purchasing narcotics and malicious software," separating his alleged conduct "from the mass of others whose websites may— without their planning or expectation—be used for unlawful purposes." United States v. Ulbricht, 31 F. Supp. 3d 540, 556 (S.D.N.Y. 2014). As in Ulbricht, the FACMC here alleges that the Backpage Operators knowingly and intentionally created and operated (and aggressively expanded) a massive online marketplace where willing buyers could easily buy and sell adults and children for sex. FACMC ¶ 106-109,121m126-130,135.

In addition, courts have recognized that prostitution website operators may be prosecuted under the Travel Act. In United States v. Omuro, the court accepted the guilty plea and convicted the founder of www.myRedBook.com, Eric Omuro, under the Travel Act, 18 U.S.C. § 1952(a)(3)(A). [See N.D. Cal. No. 14-CR-336, ECF No. 70 at 1-2]. Omuro's website hosted thousands of ads posted by prostitutes in the western United States and Canada, and Omuro generated some $5 million in profits from fees paid by "escorts" to post their ads more prominently and "membership" fees. [N.D. Cal. ECF No. 14-CR-336, ECF No. 70 at 2-3]. And in United States v. Hurant, the court accepted the guilty plea and convicted the founder of www.Rentboy.com, Jeffrey Hurant, for violating the Travel Act. [E.D.N.Y No. 16-CR-45, ECF No. 117 at 1, 13-14]. Similar to Backpage, Hurant's employees often rejected ads with explicit offers of sex for money "but allow[ed] the ad to be resubmitted with different language. In many cases, Rentboy.com employees would just edit

18

the advertisement's language and approve it." [E.D.N.Y No. 16-CR-45, Doc. 125 at 2]; see also FACMC ¶ 126-128.

**F.   The FACMC Sufficiently Alleges Money laundering**

Claimants' attacks on the 18 U.S.C. 1956 & 1957 allegations in the FACMC rely on the same misapplied pleading standards identified above. When viewed through the proper pleading standard, the allegations in the FACMC are more than sufficient to satisfy Aguilar and One Gulfstream. The FACMC alleges that certain of claimants created Backpage for the purpose of competing with Craigslist for prostitution ads (FACMC ¶ 120-121), that substantially all of Backpage's tens of millions of dollars in annual revenue was from illegal activity (FACMC ¶ 107,123), that the Backpage Operators knew of and promoted this illegal activity (FACMC ¶ 126-129), that payment processors became reluctant to deal with Backpage (FACMC ¶¶ 123-124,132), that the Backpage Operators executed strategies to continue to promote illegal activity on Backpage.com by concealing the source and location of Backpage's revenue (FACMC ¶ 124), detailing some of those schemes (FACMC ¶ 133-137), and the transfer of the proceeds of the same. FACMC ¶ 138-144.

Claimants' attempts to argue otherwise return to the same misunderstanding of civil forfeiture pleading standards running throughout their motion. For example, claimants alternately assert that the FACMC "makes no allegations about concealment directed at the Claimant Entities or Lacey," and acknowledge that the FACMC makes such allegation against other of the Backpage Operators, but characterize those allegations as conclusory. See ECF No. 112, at 14. As stated above, however,

1  the FACMC properly states a conspiracy among the Backpage

2  Operators, which includes certain of the claimants and parties

3  who have pled guilty, and alleges concealment and promotional

4  money laundering as to those conspirators. FACMC ¶¶ 100, 102,

5  124, 132-135, 146-147. That the FACMC references the

6  conspirators generally, rather than by name, does not make the

7  FACMC deficient. Return of Seized Prop., 625 F. Supp. 2d at 953.

8       The claimant's arguments regarding the money laundering

9  allegations under § 1957 are similarly meritless. While

10  claimants argue that the complaint "does not allege that

11  Claimants (or Backpage) knowingly engaged in any transactions

12  they knew to involve criminal property" (ECF No. 112, at 13),

13  this is plainly incorrect. When read in conjunction with the

14  allegations about the Backpage Operators' knowledge and

15  promotion across the entirety of the Backpage platform, the

16  money laundering allegations are sufficiently stated. See FACMC

17  ¶¶ 126,138-140.

18       **G.    The FACMC Sufficiently Alleges a Substantial**

19       **Connection Between Defendant Assets and the Subject Offenses**

20       In two sentences of argument at the close of their brief,

21  claimants argue that the government has failed to allege

22  specific facts to suggest that it can show a substantial

23  connection between the defendant assets and the purported

24  offenses. See ECF No. 112, at 16. This terse argument is belied

25  by the extensive allegations discussed above.

26

27

28

20

## IV.   CONCLUSION

For the reasons set forth above, the government respectfully requests that claimants' motion to dismiss be denied.

Respectfully submitted,

DATED: August 21, 2020      NICOLA T. HANNA
                            United States Attorney
                            BRANDON D. FOX
                            Assistant United States Attorney
                            Chief, Criminal Division
                            STEVEN R. WELK
                            Assistant United States Attorney
                            Chief, Asset Forfeiture Section


                            /s/
                            _____
                            DAN G. BOYLE
                            Assistant United States Attorney

                            Attorneys for Plaintiff
                            UNITED STATES OF AMERICA

21