Thomas H. Bienert, Jr. (CA Bar No.135311)
Whitney Z. Bernstein (CA Bar No. 304917)
BIENERT | KATZMAN PC
903 Calle Amanecer, Suite 350
San Clemente, California 92673
Telephone: (949) 369-3700
Facsimile: (949) 369-3701
tbienert@bienertkatzman.com
wbernstein@bienartkatzman.com
*Attorneys for James Larkin*

[Additional counsel listed on next page]

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>  vs.<br><br>$1,546,076.35 IN BANK FUNDS SEIZED FROM REPUBLIC BANK OF ARIZONA ACCOUNT '1889, et al.,<br><br>        Defendants. | Case No. 2:18-cv-8420-RGK-PJWx<br><br>**CLAIMANTS' REPLY IN SUPPORT OF MOTION TO DISMISS (DKT. 112)**<br><br>**Hearing Date:** September 21, 2020<br>**Time:** 9:00 a.m.<br>**Place:** Courtroom 850<br>255 E. Temple Street 7th Floor<br>Los Angeles, CA 90012 |

Paul J. Cambria, Jr. (CA Bar No. 177957)
LIPSITZ GREEN SCIME CAMBRIA LLP
42 Delaware Avenue, Suite 120
Buffalo, New York 14202
Telephone: (716) 849-1333
Facsimile: (716) 855-1580
pcambria@lglaw.com
*Attorneys for Michael Lacey*

Gary S. Lincenberg (CA Bar No. 123058)
Ariel A. Neuman (CA Bar No. 241594)
Gopi K. Panchapakesan (CA Bar No. 279856)
BIRD, MARELLA, BOXER, WOLPERT, NESSIM,
DROOKS, LINCENBERG & RHOW PC
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile: (310) 201-2110
glincenberg@birdmarella.com
aneuman@birdmarella.com
gpanchapakesan@birdmarella.com
*Attorneys for John Brunst, Mary Ann Brunst,
and the Brunst Family Trust*

John K. Rubiner – State Bar No. 155208
jrubiner@fmglaw.com
FREEMAN, MATHIS & GARY LLP
550 S. Hope Street, Suite 2200
Los Angeles, CA 90071
Telephone: (213) 615-7000

Bruce Feder (AZ Bar No. 004832)
FEDER LAW OFFICE PA
2930 E. Camelback Road, Suite 160
Phoenix, Arizona 85016
Telephone: (602) 257-0135
bf@federlawpa.com

*Attorneys for Scott Spear*

[Additional counsel listed on next page]

David W. Wiechert (CA Bar No. 94607)
dwiechert@aol.com
WIECHERT, MUNK & GOLDSTEIN, PC
27136 Paseo Espada, Suite B1123
San Juan Capistrano, CA 92675
Telephone: (949) 361-2822

Daniel J. Quigley *(admitted pro hac vice)*
quigley@djqplc.com
DANIEL J. QUIGLEY, PLC
5425 E. Broadway Blvd., Suite 352
Tucson, Arizona 85711
Telephone: (520) 867-4450

*Attorneys for Medalist Holdings, Inc.,*
*Leeward Holdings, LLC, Camarillo*
*Holdings, LLC, Vermillion Holdings,*
*LLC, Cereus Properties, LLC,*
*Shearwater Investments, LLC, and*
*Broadway Capital Corp., LLC*

In its response to Claimants' motion to dismiss (Dkt. 112), the government misguidedly seeks to justify its deficient pleading by claiming the *in rem* nature of civil forfeiture proceedings only requires allegations against the defendant property and "the focus of this *in rem* case is the guilt of the *res*." Dkt. 141 (Opp.) at 10-11 and 15:1-4. The dated legal fiction to which the government refers, however, cannot not excuse its deficient Complaint, as the leading scholar on forfeiture has noted:

> At one time it was said that civil forfeiture was based on the legal fiction that the property itself was guilty of the offense. That is no longer so. It is true that the property is named as the defendant in the civil forfeiture case, but not because the property did anything wrong. Things do not commit crimes; people commit crimes using or obtaining things that consequently become forfeitable to the State.

Stefan Casella, *Asset Forfeiture Law in the United States*, 2d. Ed. 2013, § 1-4, p. 15.

While the government's Complaint need not plead that *every* person or entity submitting a claim committed a crime, in order to meet its pleading burden, the Complaint must include factual allegations sufficient to allege that *some people* or *entities* committed crimes purportedly justifying forfeiture. Here, the government has seized tens of millions of dollars of assets from many individuals and entities, yet its Complaint is a house of cards that is built on a foundation of purported crimes (sex trafficking and the Travel Act) for which the government has not even alleged the elements in a *conclusory* manner, much less alleged facts meeting the heightened pleading standard of Supplemental Rule G(2)(f). On that flimsy foundation, the government has piled layer after layer of money laundering charges, which are similarly lacking. The government claims it does not need to make allegations specific to the Claimants, but, for most of the money laundering allegations, Claimants appear to be the purported money launderers. Therefore, if *Claimants* did not have the requisite knowledge and intent, there would be no money laundering crimes on which to predicate a forfeiture.

Moreover, the shotgun nature of the government's pleading in the Complaint gives the Court no basis from which it can assess whether the few facts that are plead are

sufficient to support a belief that the government can meet its burden of proof at trial.  The Complaint fails to identify whose criminal conduct purportedly justifies the forfeiture of each asset, what that criminal conduct was for each asset, or which legal theory of forfeiture the government seeks to apply to each asset.  *See United States v. $4,480,466.16 in Funds*, Case No. 3:17-CV-2989-D, 2018 WL 4096340 (N.D. Tex. Aug. 28, 2018) (dismissing civil forfeiture complaint whose lack of clarity made it "difficult to assess whether the government has pleaded sufficiently detailed facts to support a reasonable belief that the property is subject to forfeiture").[1]

The government's hand-waving in its Response should not deflect the Court's attention from the facts that the Response fails to engage with the specific deficiencies Claimants raised in their Motion or that the Response is replete with improper references to material *outside* the Complaint that the Court should not consider when judging the sufficiency of the Complaint.

## I.     The Court Should Disregard the Government's Pre-*Twombly* Cases.

In its discussion of "pleading standards" and while arguing that dismissals are "disfavored," virtually every case the government cites pre-dates the Supreme Court's

---

[1] The government justifies its shotgun pleading on the grounds that it alleged a conspiracy, but that is no justification at all.  First, the government never alleges facts to establish the basic elements of a conspiracy.  The government likewise did not allege the facts need to establish a basis for *Pinkerton* liability.  Second, the government's claim that shotgun pleading is permitted if a conspiracy is alleged is unsupported and also wrong.  *See, e.g.*, *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1294 (11th Cir. 2018) (affirming dismissal of civil conspiracy claims with prejudice because plaintiff's "shotgun pleading" made it "it impossible to understand who did what" and "fail[ed] to provide even minimal notice to the individual Defendants as to what conduct they are alleged to have participated in"); *Harrell v. Hornbrook Cmty. Servs. Dist.*, No. 2:14-CV-01595-KJM, 2015 WL 5329779, at *13 (E.D. Cal. Sept. 10, 2015) (recommending dismissal of state law civil conspiracy claims that "refer[red] to defendants collectively and incorporate[d] previously alleged facts by reference wholesale regardless of their relevance" because that "type of shotgun pleading makes it difficult if not impossible to discern whether plaintiff alleged any facts relevant" to his claims), *report and recommendation adopted as modified*, 2016 WL 1117752 (E.D. Cal. Mar. 22, 2016).

landmark decisions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 5445 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  Indeed, the *only* pertinent point in the decision the government recently submitted as a "material development" was its discussion of *Iqbal*.  *United States v. Obaid*, 2020 WL 4931503, at *7 , ___ F.3d ___ (9th Cir. 2020) ("Generally, when the Supreme Court makes a sweeping change in a fundamental legal theory, there is a tsunami of reversals in the lower courts applying the new precedent. . . . *Iqbal* redefined the pleading standards under Rule 8 . . . and prompted a barrage of dismissals.").[2]  In light of the sweeping changes in the law ushered in by *Twombly* and *Iqbal*, the government's cases pre-dating those decisions should be disregarded.

## II.    The Court Should Disregard Any Material Outside of the Complaint.

Apparently recognizing the glaring deficiencies in its Complaint, the government seeks to fill the void by asking this Court to take judicial notice of numerous documents that were not part of the Complaint, including:  dozens of underlying seizure warrants, the affidavits of a postal inspector submitted in support of those warrants, court filings from three different criminal cases in Arizona, and a report issued by the staff of a subcommittee of the United States Senate.  The Court should reject the government's invitation to hunt down and troll through thousands of pages of extrinsic documents, when the only issue before the Court is the sufficiency of the pleading found within the four corners of the Complaint.  *Outdoor Media Grp., Inc. v. City of Beaumont*, 506 F.3d 895, 899 (9th Cir. 2007) ("When ruling on a motion to dismiss, we may 'generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice.'"); *Gumataotao v. Dir. of Dep't of Revenue & Taxation*, 236 F.3d 1077, 1083

[2]  Other than its characterization of *Iqbal*, the *Obaid* decision addresses whether a court can adjudicate an *in rem* forfeiture proceeding where it has jurisdiction over the *res* but no personal jurisdiction over the owner of the *res*.  *Id.*  This proceeding is, of course, an *in rem* proceeding, but the pending motions to dismiss raise no issues of personal jurisdiction.  The Ninth Circuit's decision that a court does not need personal jurisdiction over the owner of the *res* to adjudicate a forfeiture action has absolutely no bearing on whether the government has alleged sufficient facts to proceed with its case or whether 47 U.S.C. § 230 bars the government's claims.

(9th Cir. 2001) ("In ruling on a motion to dismiss, a district court generally 'may not consider any material beyond the pleadings.'").  The government's reliance on *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741 (2006), is unfounded, as the issue there was "issue preclusion" and the court took "judicial notice of Plaintiffs' briefs in those courts and the transcript of the *Wal–Mart* fairness hearing" only to "determine what issues were actually litigated." *Id.*

While a court may take "judicial notice of 'matters of public record[,]' . . . a court may not take judicial notice of a fact that is 'subject to reasonable dispute.'") *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (district court erred in taking judicial notice, *inter alia*, of a Waiver of Extradition form and the transcript of an extradition hearing).  As such, the Court can take judicial notice that there were seizures, that there are pending criminal matters, that the staff of a Senate subcommittee issued a report, etc., but the Court cannot rely on the substance of those documents in assessing the sufficiency of the government's Complaint.  *See id.*

## III. The Government's Allegations of Sex Trafficking Are Deficient.

The government's allegations relating to sex trafficking – that traffickers posted ads on Backpage and that Backpage knew for various reasons that some ads on Backpage related to unlawful activity – utterly fail to meet the legal standard under 18 U.S.C. § 1591. *See* Mot. at 10.  The government does not dispute that Backpage and Claimants "could not be liable for sex trafficking *absent specific knowledge of and participation in a particular incident of sex trafficking.*" *Id.* (emphasis in original); *see Backpage.com, LLC v. Lynch*, 216 F. Supp. 3d 96, 108-09 (D.D.C. 2016).  Absent allegations that Backpage or Claimants had specific knowledge of, and participated in, particular instances of sex trafficking, the Complaint cannot support a belief that the government can meet its burden of proof at trial.  The issue is not, as the government suggests, that it has failed to make sufficient allegations as to *all* persons and entities who have submitted claims; the issue is that the government has not made such allegations about Backpage, anyone associated with it, or Claimants.

"[S]ection 1591 requires knowledge and active participation in sex trafficking by the

defendants." *Doe v. Kik Interactive, Inc.*, No. 20-60702-CIV, 2020 WL 5156641, at *7, ___ F. Supp. 3d. ___ (S.D. Fla. Aug. 31, 2020).  Like here, in *Doe*, the plaintiff alleged that the defendant interactive computer service violated 18 U.S.C. § 1591 by failing to enact policies that would have prevented her from being trafficked by others who used its service.  *Id.* at *5.  Defendants moved to dismiss on two grounds; first, that they were immune from the civil suit pursuant to 47 U.S.C. § 230 ("CDA"), and second, for failure to state a claim under 18 U.S.C. § 1595(a).  *Id.* at *2.  The court dismissed the complaint with prejudice, further noting that plaintiff's allegations that defendants knew of its users practice of using the service to furnish harmful, sexually explicit photographs were merely "conclusory and lack factual support."  *Id.* at *6 n. 5 (citing *Jackson v. BellSouth Telecommunications*, 372 F.3d 1250, 1262 (11th Cir. 2004) (conclusions and unwarranted deductions of fact will not prevent dismissal)).

Further, in connection with recent legislation relating to sex trafficking, Congress itself acknowledged that the "participation in a venture" element in 18 U.S.C. § 1591 cannot be satisfied by general knowledge of sex trafficking connected to a website:

Though under 18 U.S.C. § 1591, a website may be held criminally liable for knowingly advertising sex trafficking, this knowledge standard is difficult to prove beyond a reasonable doubt. This is so because online advertisements rarely, if ever, indicate that sex trafficking is involved. The advertisements neither directly nor implicitly state that force, fraud, or coercion was used against the victim, nor do they say that the person depicted being prostituted is actually under the age of 18. … *Further, general knowledge that sex trafficking occurs on a website will not suffice as the knowledge element must be proven as to a specific victim.*

Report on H.R. 1865, No. 115-572 at 5 (emphasis added).[3]  Writing to the House about that legislation, the Department of Justice also acknowledged the high burden of proof for advertising, given First Amendment implications:

Section 1591 already sets an appropriately high burden of proof, particularly in cases

---

[3]  *Available at* https://www.congress.gov/115/crpt/hrpt572/CRPT-115hrpt572-pt1.pdf.

involving advertising. Under current law, prosecutors must prove that the defendant knowingly benefitted from participation in a sex trafficking venture, knew that the advertisement related to commercial sex, and knew that the advertisement involved a minor or the use of force, fraud, or coercion.

Exhibit A, Letter from DOJ Assistant Attorney General Stephen E. Boyd to Congressman Robert W. Goodlatte (Feb. 27, 2018)), at p. 2.

The government's allegations in the Complaint not only fail to meet the bar set by 18 U.S.C. § 1591, they also fail to pass muster under the much more relaxed "constructive knowledge" standard that has been held to apply to its companion civil statute 18 U.S.C. § 1595.  *J.B. v. G6 Hospitality, LLC*, Case No. 19-cv-07848, 2020 WL 4901196 (N.D. Cal. Aug. 20, 2020).  In *J.B.*, under the relaxed standard, the court dismissed plaintiff's claims because Craigslist could not be deemed to have participated in all ventures arising out of posts on its site and because the plaintiff failed to allege "facts supporting the inference that Craigslist made a tacit agreement with the sex traffickers who victimized" her.  *Id.* at *9.

The government's allegations here are nearly identical to the ones that court in *J.B.* rejected.  There, the plaintiff alleged, among other things, that:  Craigslist knew its "erotic services section was well known to commercial sex customers . . as a place to easily locate" child sex trafficking victims; "Craigslist was on notice of the human sex trafficking" conducted through its site because of "lawsuits, government action, public outcry, news media, victims, activity and employee observation;" and Craigslist knew its website "facilitated" communications between "commercial sex buyers" and "sellers of commercial sex[,] including traffickers."  *Id.* at *8.  The plaintiff also alleged that Craigslist "developed [] content requirements," so it could continue to "benefit from their participation in illicit commercial sex," with those content requirements serving as "instructions to sex traffickers on evading law enforcement."  *Id.*

The *J.B.* court held that the plaintiff had failed to show that Craigslist had "direct association" with the plaintiff's trafficker or allegations showing "a continuous business

relationship between the trafficker and [Craigslist] such that it would appear that the trafficker and [Craigslist] have established a pattern of conduct or could be said to have a tacit agreement." *Id.* at *9. Indeed, to hold otherwise would "mean that 'all web[-]based communications platforms have a legal duty to inspect every single user-generated message before it is communicated to a single person or displayed to the public,' lest such platforms be deemed to have participated in the venture." *Id.* (noting that "there is no indication that Congress intended to create such a duty, or that it would be reasonable in light of the volume of posts generated by third parties daily"). *Id.*

As the government's allegations in the Complaint here mirror those that the court in *J.B.* held did not even meet the relaxed "should have known" standard the court determined applied under 18 US.C. § 1595, the government's allegations in the Complaint plainly cannot meet the higher "knowingly" standard imposed under 18 U.S.C. § 1591. As the government's Complaint does not allege that Backpage, anyone associated with it, or any of Claimants *knowingly* assisted, supported, or facilitated particular trafficking ventures—much less facts supporting such a claim—the government provides the Court no reason to conclude that the government can meet its burden of proof at trial.

## IV. The Government's Allegations Relating to the Travel Act Are Deficient.

The government ignores the Ninth Circuit authority that the Travel Act requires knowledge of and the intent to facilitate a specific unlawful business enterprise: "[T]he prosecutor must show that the [defendant] in some significant manner associated himself with the purchaser's criminal venture for the purpose of its advancement." *United States v. Gibson Specialty Co.*, 507 F.2d 446, 449 (9th Cir. 1974). *Gibson*, which involved the sale of gambling paraphernalia in interstate commerce in violation of Montana law, stands for the basic proposition that "[t]he presumption that one intends the natural and probable consequences of his actions" is not sufficient to "establish intent to facilitate criminal

activity" under the Travel Act. *Id.* at 450, n. 8.[4]  Indeed, the Court noted that its "research has revealed no cases where a remote seller, uninvolved in an actual gambling operation, has been successfully tried and convicted under the [T]ravel [A]ct." *Id.* at 451, n. 9.  The Court, therefore, held that "*as a matter of law*, 'facilitation' within the meaning of the [T]ravel [A]ct has not occurred in the instant case." *Id.* at 451 (emphasis supplied).  Under *Gibson*, the government's allegations that Backpage was merely aware that ads on its site had related to prostitution and trafficking and knew the site "promoted" criminal activity are plainly insufficient to establish the requisite intent to facilitate.  As such, the pleadings are insufficient on allegations of the requisite elements of a Travel Act violation.

United States v. Ulbricht, 31 F. Supp. 3d 540 (S.D.N.Y. 2014), is readily distinguishable. That case involved prosecution of the creator of the Silk Road website, which: openly invited ads for patently unlawful activities (with categories such as "Cannabis," "Opioids," and "Ecstasy"); openly advertised the purchase and sale of thousands of kilograms of heroin and cocaine, and *participated in each sale* by escrowing payments pending completion of transactions and collecting a commission of 8% to 15% from each sale. *Id.* at 549-50; *United States v. Ulbricht*, No. 13-mj-02328 (E.D.N.Y.), Sealed Complaint, Dkt. 1, ¶¶ 8(a), 19(b)-(c), 21(d)-(h) (attached as Exhibit B).  In short, *Ulbricht*, unlike the Complaint here, involved the type of knowledge and active participation in the criminal activity required under both 18 U.S.C. § 1591 and the Travel Act.  Moreover, contrary to the impression the government leaves in its Response, Ulbricht was *not* charged under the Travel Act, but instead was charged with a narcotics trafficking conspiracy, a computer hacking conspiracy, and money laundering.  Ex. A.  In short, the only thing the *Ulbricht* case has in common with this case is that both involved a website.[5]

---

[4] *Gibson* is notable because, for purposes of the motion to dismiss, the court assumed both that Montana law made it unlawful under any circumstances for the buyers of the paraphernalia to possess the items and that the defendant sellers knew that was the case. *Id.* at 450 and n. 7.

[5]  The government cites two other cases, claiming that "courts have recognized that prostitution website operators may be prosecuted under the Travel Act," Opp. at 18, but those cases involved plea agreements where no party contested whether the facts plead to

**V.     The Government's Money Laundering Allegations Are Deficient.**

As the Complaint's money laundering allegations all are derivative of its sex trafficking and Travel Act allegations, they, too, are deficient for the reasons discussed above. The handful of allegations that do not involve shotgun pleading are conclusory, *e.g.*, "Account 22 . . . was used in . . . an attempt to further conceal or disguise the nature, location, source, ownership or control of the criminal proceeds." Complaint, Dkt. 108, ¶ 182. The allegations do not establish, for each defendant asset, who committed the purported offenses or an allegation that even some of the Claimants had the requisite knowledge or intent required under the pertinent statutes. Further, the Complaint does not establish which transactions the government contends are forfeitable under which legal theory, but rather implausibly alleges that every transaction involved proceeds of sex trafficking or violations of the Travel Act, involved transactions in property derived from specified unlawful activity, involved concealment money laundering, and involved international money laundering. Nor does the government make any effort to tie any transactions to any theory or to the purportedly criminal conduct of any particular person.

**VI.    Conclusion.**

For the reasons above, the Court should dismiss the deficient Complaint. Alternatively, the Court should dismiss the Complaint as to Claimants' Assets.

---

actually constituted a crime. *United States v. Omuro*, No. 14-cr-00336-WHO (N.D. Cal.); *United States v. Hurant*, No. CR 16-cr-00045-MKB (E.D.N.Y.). Moreover, the websites in those cases were readily distinguishable from Backpage, as a substantial portion of the ads on each site proposed facially unlawful transactions—which never was the case with Backpage. In *Omuro*, the "website hosted advertisements posted by prostitutes containing explicit photos, graphic descriptions of sexual services offered, and rates for the sexual services." https://www.justice.gov/opa/pr/california-operator-myredbookcom-website-pleads-guilty-facilitating-prostitution. Likewise, in *Hurant*, the website's "escort profile pages generally detail[ed] the sexual acts each escort [wa]s willing to perform and the price." *Hurant*, Case No. 1:16-cr-00045-MKB (E.D.N.Y.), Complaint and Affidavit in Support of Arrest Warrants, Dkt. 1, ¶ 11 (attached as Exhibit C).

RESPECTFULLY SUBMITTED this 4th day of September 2020,

BIENERT | KATZMAN PC

By*:    / s/ Whitney Z. Bernstein*
       Thomas H. Bienert, Jr.
       Whitney Z. Bernstein
       Attorneys for James Larkin

*Local Rule 5-4.3.4(a)(2)(i) Compliance: Filer attests that all other signatories listed concur in the filing's content and have authorized this filing.*

Dated: September 4, 2020        LIPSITZ GREEN SCIME CAMBRIA LLP

By:  */ s/ Paul J. Cambria, Jr.*
       Paul J. Cambria, Jr.
       Attorneys for Michael Lacey

Dated: September 4, 2020        BIRD MARELLA BOXER WOLPERT
NESSIM DROOKS LINCENBERG AND
RHOW PC

*By:  / s/ Gary S. Lincenberg*
       Gary S. Lincenberg
       Ariel A. Neuman
       Gopi K. Panchapakesan
       Attorneys for John Brunst, Mary Ann
       Brunst, and the Brunst Family Trust

Dated: September 4, 2020        FREEMAN, MATHIS & GARY LLP

By*:   / s/ John K. Rubiner*
       John K. Rubiner

Dated: September 4, 2020        FEDER LAW OFFICE,  PA

By:   */ s/ Bruce Feder*
       Bruce Feder
       Attorneys for Scott Spear

1    Dated: September 4, 2020                        WIECHERT, MUNK & GOLDSTEIN, PC

2                                                    By: /s/ David W. Wiechert
3                                                         David W. Wiechert

4    Dated: September 4, 2020                        DANIEL J. QUIGLEY, PLC

5
                                                     By: /s/ Daniel J. Quigley
6                                                         Daniel J. Quigley
7                                                        Attorneys for Medalist Holdings, Inc.,
                                                        Leeward Holdings, LLC, Camarillo
8                                                       Holdings, LLC, Vermillion Holdings,
                                                        LLC, Cereus Properties, LLC,
9                                                       Shearwater Investments, LLC, and
10                                                      Broadway Capital Corp., LLC

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLAIMANTS' REPLY IN SUPPORT OF MOTION TO DISMISS (DKT. 112)

# CERTIFICATE OF SERVICE

I declare that I am a citizen of the United States and I am a resident and employed in Los Angeles, California; that my business address is 903 Calle Amanacer, Suite 350 San Clemente, CA 92673; that I am over the age of 18 and not a party to the above-entitled action.

I am employed by a member of the United States District Court for the Central District of California, and at whose direction I caused service of the foregoing document entitled **CLAIMANTS' REPLY IN SUPPORT OF MOTION TO DISMISS (DKT. 112)** on all interested parties as follows:

**[X] BY ELECTRONIC TRANSMISSION:** by electronically filing the foregoing with the Clerk of the District Court using its CM/ECF System pursuant to the Electronic Case Filing provision of the United States District Court General Order and the E-Government Act of 2002, which electronically notifies all parties in this case.

**[X] BY ELECTRONIC TRANSMISSION:** by sending a copy of the filed documents in PDF format to pro se parties who have agreed to electronic service

| | |
|---|---|
| **Troy Larkin** | **Ramon Larkin** |
| troy.larkin@gmail.com | ramonlarkin@gmail.com |

**[X] BY FIRST CLASS MAIL:** by placing a copy of the filed documents in a sealed envelope with postage fully paid and addressing the envelope to the following pro se parties:

**Jill Anderson**
2201 North Central Ave. No. 6A
Phoenix, AZ 85004

**John R. Becker**
7025 East Greenway Pkwy, Suite 800
Scottsdale, AZ 85254

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on September 4, 2020 at San Clemente, California.

*/s/ Toni Thomas*
Toni Thomas