1  Thomas H. Bienert, Jr., – State Bar No. 135311
      tbienert@bienertkatzman.com
2  Whitney Z. Bernstein, – State Bar No. 304917
      wbernstein@bienertkatzman.com
3  BIENERT KATZMAN PC
   903 Calle Amanacer, Suite 350
4  San Clemente, CA  92673
   Telephone: (949) 369-3700
5  Facsimile: (949) 369-3701

6  Attorneys for James Larkin

7  Gary S. Lincenberg – State Bar No. 123058
      glincenberg@birdmarella.com
8  Ariel A. Neuman – State Bar No. 241594
      aneuman@birdmarella.com
9  Gopi K. Panchapakesan – State Bar No. 279586
      gpanchapakesan@birdmarella.com
10 BIRD, MARELLA, BOXER, WOLPERT,
   NESSIM, DROOKS, LINCENBERG &
11 RHOW, P.C.
   1875 Century Park East, 23rd Floor
12 Los Angeles, California 90067-2561
   Telephone: (310) 201-2100
13 Facsimile: (310) 201-2110

14 Attorneys for John Brunst, Mary Ann
   Brunst, and The Brunst Family Trust
15
   *[Additional counsel listed on next page]*
16

17              **UNITED STATES DISTRICT COURT**

18         **CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

19

| | |
|---|---|
| 20  UNITED STATES OF AMERICA, | CASE NO. 2:18-cv-8420-RGK-PJWx |
| 21         Plaintiff, | **CLAIMANTS' REPLY IN SUPPORT OF MOTION TO DISMISS CONSOLIDATED MASTER VERIFIED FIRST AMENDED COMPLAINT FOR FORFEITURE [DKT. 111]** |
| 22         vs. | |
| 23  $1,546,076.35 IN BANK FUNDS SEIZED FROM REPUBLIC BANK OF ARIZONA ACCOUNT '1889, et al., | |
| 24 | |
| 25         Defendants. | Date:  September 21, 2020<br>Time:  9:00 A.M.<br>Crtrm.: 850 |
| 26 | |
| 27 | Assigned to Hon. R. Gary Klausner |
| 28 | |

3669182.2

REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT FOR FORFEITURE

1  Robert Corn-Revere *(admitted pro hac vice)*
       bobcornrevere@dwt.com
2  DAVIS WRIGHT TREMAINE LLP
   1919 Pennsylvania Ave., NW, Suite 800
3  Washington, D.C.  20006
   Telephone: (202) 973-4200
4  Facsimile: (202) 973-4499

5  James C. Grant *(admitted pro hac vice)*
       jamesgrant@dwt.com
6  DAVIS WRIGHT TREMAINE LLP
   950 Fifth Avenue, Suite 3300
7  Seattle, WA  98104
   Telephone: (206) 622-3150
8  Facsimile: (206) 757-7700

9  Attorneys for James Larkin and Michael
   Lacey
10

11 Paul J. Cambria, Jr. – State Bar No. 177957
       pcambria@lglaw.com
12 LIPSITZ GREEN SCIME CAMBRIA LLP
   42 Delaware Avenue, Suite #120
13 Buffalo, NY 14202
   Telephone: (716) 849-1333
14 Facsimile: (716) 855-1580

15 Attorneys for Michael Lacey

16
   John K. Rubiner – State Bar No. 155208
17     jrubiner@fmglaw.com
   FREEMAN, MATHIS & GARY LLP
18 550 S. Hope Street, Suite 2200
   Los Angeles, CA 90071
19 Telephone: (213) 615-7000

20 Bruce Feder *(admitted pro hac vice)*
       bf@federlawpa.com
21 FEDER LAW OFFICE, P.A.
   2930 E. Camelback Road, Suite 160
22 Phoenix, AZ 85016
   Telephone: (602) 257-0135
23 Facsimile: (602) 954-8737

24 Attorneys for Scott Spear

25
   David W. Wiechert – State Bar No. 94607
26     dwiechert@aol.com
   WIECHERT, MUNK & GOLDSTEIN, PC
27 27136 Paseo Espada, Suite B1123
   San Juan Capistrano, CA 92675
28 Telephone: (949) 361-2822

Daniel J. Quigley *(admitted pro hac vice)*
    quigley@djqplc.com
DANIEL J. QUIGLEY, PLC
5425 E. Broadway Blvd., Suite 352
Tucson, Arizona 85711
Telephone: (520) 867-4450

Attorneys for Medalist
Holdings, Inc., Leeward Holdings, LLC,
Camarillo Holdings, LLC, Vermillion
Holdings, LLC, Cereus Properties, LLC,
Shearwater Investments, LLC, and
Broadway Capital Corp., LLC

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION .................................................................................................1

II.   ARGUMENT........................................................................................................1

     A.    This Civil Forfeiture Action Is Not Subject to § 230(e)(1)............................1

     B.    The Government's Claims Fall Within the Scope of Section 230.................4

III.  CONCLUSION ................................................................................................. 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*924 Bel Air Rd., LLC v. Zillow Grp., Inc.*
    No. 219-CV-01368-ODW, 2020 WL 774354 (C.D. Cal. Feb. 18, 2020) ................... 6

*Askins v. U.S. Dep't. of Homeland Sec.*
    899 F.3d 1035 (9th Cir. 2018) ................................................................................. 9

*Barnes v. Yahoo!, Inc.*
    570 F.3d 1096 (9th Cir. 2009), *as amended* (Sept. 28, 2009) ......................................... 6

*Doe v. Bates*
    05 Civ. 91, 2006 WL 3813758 (E.D. Tex. Dec. 27, 2006) .......................................2, 3

*East Bay Sanctuary Covenant v. Trump*
    950 F.3d 1242 (9th Cir. 2020) ................................................................................. 8

*East Coast Test Prep LLC v. Allnurses.com, Inc.*
    No. 18-3197, 2020 WL 480991, ___ F.3d ____ (8th Cir. Aug. 19, 2020) .................................................................................................................... 5

*Jane Doe No. 1 v. Backpage.com, LLC*
    817 F.3d 12 (1st Cir. 2016) ..............................................................................1, 4, 7

*Jones v. Dirty World Entm't Recordings LLC*
    755 F.3d 398 (6th Cir. 2014) .................................................................................. 5

*Lemmon v. Snap, Inc.*
    440 F. Supp. 3d 1103 (C.D. Cal. 2020) ................................................................6, 7

*Obado v. Magedson*
    2014 WL 3778261 (D.N.J. July 31, 2014) .............................................................. 2

*U.S. v. Alexander*
    106 F.3d 874 (9th Cir. 1997) .................................................................................. 9

*United States v. Certain Funds Located at Hong Kong & Shanghai Banking Corp.*
    96 F.3d 20 (2d Cir. 1996) ....................................................................................... 3

*United States v. Cueto*
    964 F. Supp. 1395 (C.D. Cal. 1996) ....................................................................... 4

*United States v. Ursery*
    518 U.S. 267 (1996) .................................................................................................. 3

**Statutes**

47 U.S.C. § 230 ............................................................................................................. *passim*

3669182.2

iii

REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT FOR FORFEITURE

## I. INTRODUCTION

The Court should dismiss the government's First Amended Consolidated Master Verified Complaint for Forfeiture ("FAC") because it is barred by 47 U.S.C. § 230. The government raises just two issues in its opposition, that the FAC is not subject to Section 230 because of the exception in § 230(e)(1) and that the Motion is barred by the "law of the case." Neither contention has merit.

## II. ARGUMENT

### A. This Civil Forfeiture Action Is Not Subject to § 230(e)(1).

The government wrongly claims Section 230 does not apply to this civil forfeiture action because of Section 230's exception for actions to enforce federal criminal statutes, 47 U.S.C. § 230(e)(1). The government's reading of the statute contradicts the statute's plain language, as well as the rulings of *every* court to decide the scope of the exemption. Section 230(e)(1) provides only that it should not be construed to "impair the *enforcement* of any Federal criminal statute" (emphasis added). Federal criminal statutes are enforced through *criminal prosecutions*. Put simply, the Court's dismissal of this action under Section 230 would do nothing to impair the government's ability to prosecute criminal cases or to pursue criminal asset forfeitures. This civil forfeiture action may be remedial in nature, but that does *not* make it an action to enforce a criminal statute.

The government also erroneously claims that "numerous courts have found that § 230 was intended to bar suits by private litigants, not to limit the federal government's criminal enforcement tools." Opp. at 16. The cases the government cites, however, make clear that § 230(e)(1) applies *only* to criminal prosecutions. The government's reliance on *Jane Doe No. 1 v. Backpage.com, LLC*, 817 F.3d 12, 23 (1st Cir. 2016), which it claims stands for the proposition that § 230(e)(1) applies only to "private civil actions," is unfounded. Opp. at 16. The government cherry-picks two phrases from that court's opinion, while failing to disclose that the court rejected the very reasoning the government seeks to advance here. The court there held that the

"creative" argument that the TVPRA's civil remedy provision was "part of the 'enforcement' of a federal criminal statute . . . does not withstand scrutiny." *Id.* at 23 ("The plain language reading of section 230(e)(1)'s reference to 'the enforcement of . . . any . . . Federal criminal statute' . . . *excludes civil suits* . . . . [Section 230(e)(1)] *quite clearly . . . is limited to criminal prosecutions*.") (emphasis added).[1]

The other cases the government cites do not support its misguided position either. In *Obado*, the Court held that "the CDA exception for federal criminal statutes applies to government *prosecutions*, not to civil private rights of action under stat[ut]es with criminal aspects." *Obado v. Magedson*, 2014 WL 3778261 at *8 (D.N.J. July 31, 2014) (emphasis added). When citing *Bates*, the government again self-servingly quotes certain language out of context, while ignoring the court's contrary holding. *Doe v. Bates*, 05 Civ. 91, 2006 WL 3813758, at *21-22 (E.D. Tex. Dec. 27, 2006). The government's Response tries to make much of that court's use of the phrases "private

---

[1] The Second Circuit subsequently interpreted Section 230 in exactly the same manner. *Force v. Facebook, Inc.*, 934 F.3d 53, 71-72 (2d Cir. 2019) ("Facebook argues that Section 230(e)(1) pertains only to criminal enforcement actions brought by a prosecutor, not civil actions such as this. We agree . . . We therefore join the First Circuit in concluding that Section 230(e)(1) is '*quite clearly . . . limited to criminal prosecutions*.'") (emphasis added). *Accord Mosha v. Yandex Inc.*, No. 18 CIV. 5444, 2019 WL 5595037, at *8 (S.D.N.Y. Oct. 30, 2019) ("[T]he § 230(e)(1) exception does not apply in civil actions, even assuming *arguendo* that civil litigants could 'enforce' criminal statutes through a separate civil remedies provision."); *Force v. Facebook, Inc.*, 304 F. Supp. 3d 315, 326–27 (E.D.N.Y. 2018), *aff'd in part, dismissed in part*, 934 F.3d 53 (2d Cir. 2019) ("[T]the court finds particularly convincing the First Circuit's conclusion that Section 230(e)(1)'s specific reference to 'criminal statutes,' viewed alongside other exceptions within Section 230 that apply equally to civil and criminal remedies, indicates that Congress only intended to exclude *criminal prosecutions* through that exception . . . . [T]he First Circuit reasoned in *Jane Doe* from the language of the statute itself that Section 230(e)(1) excepts only *criminal actions to enforce criminal statutes*, which means that the purposes of a particular civil action are irrelevant.") (emphasis added; internal citation omitted); *Cohen v. Facebook, Inc.*, 252 F. Supp. 3d 140, 157 n.11 (2017) ("The court concludes that [§ 230(e)(1)] does not limit Section 230(c)(1) immunity in civil actions based on criminal statutes but rather extends *only to criminal prosecutions*.") (emphasis added). *See also* Mot. at 17-18 and n.39.

plaintiffs" and "private litigants" (phrases that merely described the plaintiffs in that case), but does not disclose that the court in *Bates* held that § 230(e)(1) applied only to federal *criminal prosecutions*:

> Congress determined that it wanted to eliminate the resulting disincentives to the development of vibrant and diverse services involving third-party communication, while maintaining the ability of *criminal prosecutions by the government* for violations of federal criminal law. In sum, Congress *did* intend to treat civil and criminal claims differently and carefully crafted Section 230(e)(1) to achieve exactly that result.

*Id.* at 22 (emphasis added).

The government also argues, more generally, that civil forfeiture actions are "quasi-criminal" and that the "role of civil forfeiture in enforcing federal criminal law is not reasonably in dispute," Opp. at 15, but the government supports those misleading claims by citing a string of dated cases whose characterization of civil forfeiture **later was rejected** by the Supreme Court, in its landmark decision in *United States v. Ursery*, 518 U.S. 267 (1996). In *Ursery*, the Supreme Court held that "*in rem* civil forfeitures are neither 'punishment' nor criminal for purposes of the Double Jeopardy Clause." *Id.* at 292. Rather, the Supreme Court held that, "[b]y creating such distinctly civil procedures for forfeitures under [§§ 881 and 981], Congress has 'indicate[d] clearly that it intended a civil, not a criminal sanction.'" *Id.* at 289. The Supreme Court commented in *Ursery* on the "sharp distinction between *in rem* civil *forfeitures* and *in personam* civil *penalties* such as fines: Though the latter could, in some circumstances, be punitive, the former could not." *Id.* at 275 (emphasis in original).[2]

---

[2] *Accord United States v. Certain Funds Located at Hong Kong & Shanghai Banking Corp.*, 96 F.3d 20, 26 (2d Cir. 1996) ("*Ursery* has effectively repudiated the district court's

In short, civil forfeiture is not criminal in nature and, as courts have universally held, the exception in § 230(e)(1) plainly applies only to criminal prosecutions and not to *any* civil actions. As such, § 230(e)(1) does not exempt this civil forfeiture action from Section 230.

### B. The Government's Claims Fall Within the Scope of Section 230.

Importantly, the government does not contest that Backpage and Claimants were providers of an interactive computer service or that the government's claims treat Backpage and Claimants as the publishers or speakers of injurious information. Instead, the government contends only that Backpage was an "information content provider" and, therefore, is not entitled to immunity under Section 230. The government is wrong for several reasons.

First, Claimants set out at length in the Motion the law governing Section 230, including the law governing whether Backpage could be an "information content provider" with respect to the ads posted to the Backpage site. Mot. at 6-15 and n.14-17, 20, 21, 23-26, 28, 30-32. The government has not disputed (nor could it dispute) Claimants' discussion of the applicable law, which shows that Section 230 provides immunity to Backpage and Claimants because the published information originated with a third party. *See, e.g.*, *Jane Doe No. 1 v. Backpage.com, LLC*, 817 F.3d 12, 16, 20 (1st Cir. 2016) ("[A]ppellants allege that Backpage's rules and processes governing the content of advertisements are designed to encourage sex trafficking" and "contend that this course of conduct amounts to participation in sex trafficking," but "some of the challenged practices—most obviously, **the choice of what words or phrases can be displayed on the site—are traditional publisher functions under any coherent definition of the term**. And after careful consideration, we are convinced that the 'publisher or speaker' language of **section 230(c)(1) extends to the formulation of**

---

impression that *Austin* 'found civil forfeiture actions punitive in nature . . . .'"); *United States v. Cueto*, 964 F. Supp. 1395, 1399 (C.D. Cal. 1996) ("[A] civil forfeiture proceeding is not 'punishment . . . .'").

***precisely the sort of website policies and practices that the appellants assail***.") (internal citation omitted) (emphasis added); *Jones v. Dirty World Entm't Recordings LLC*, 755 F.3d 398, 410 (6th Cir. 2014) ("A material contribution to the alleged illegality of the content ***does not mean merely taking action that is necessary to the display of allegedly illegal content***. Rather, ***it means being responsible for what makes the displayed content allegedly unlawful***.") (emphasis added).

Second, as discussed in the Motion (at 4-5, 8, 11-15 and n.19, 27, 29), the FAC does not allege Backpage or Claimants directly created content on the website, added anything to the content others posted, imported content from other websites, or enlisted third parties to do so. The FAC's only allegations of Backpage's involvement with any ads—beyond hosting what third-party users posted—were that Backpage exercised its right as a publisher to delete certain content posted by users of the site, which the FAC alleges, in conclusory fashion, "sanitized" those ads. *Id.* But the FAC does not allege a *single* instance where that actually occurred. Indeed, the FAC does not even allege a single instance where Backpage modified *any* ad in *any* manner. Courts routinely dismiss complaints with such deficiencies, even under the general civil pleading standards. Mot. at 11-15 and n. 25, 26, 28. 30, 31.[3]

Third, even if the FAC had plausibly alleged facts showing that Backpage edited ads in a manner that "sanitized" them, deleting content posted by third parties does not render a website an information content provider with respect to the content it did not remove. Mot. at 13-15 and n.28, 30, 32. The government focuses on the content Backpage purportedly deleted from ads, but the government's claims ultimately depend

---

[3] *Accord East Coast Test Prep LLC v. Allnurses.com, Inc.*, No. 18-3197, 2020 WL 4809911, ___ F.3d ____ (8th Cir. Aug. 19, 2020) (despite allegations of content creation, court granted motion for judgment on the pleadings under Section 230 because "the sum total of the complaint's factual allegations pleaded no more than a 'sheer possibility'" that the defendant "was wholly or partly responsible for creating or developing" the offending posts and, therefore, the plaintiff failed to plausibly allege that the defendant "was the 'information content provider' *with respect to those posts*") (emphasis added).

on the content Backpage allegedly did *not* remove from the site (purported prostitution ads), which is an end-run around Section 230 and another misguided attempt to try to treat Backpage as the publisher of the content provided by third parties. *924 Bel Air Rd., LLC v. Zillow Grp., Inc.*, No. 219-CV-01368-ODW, 2020 WL 774354, at *1 (C.D. Cal. Feb. 18, 2020). A spate of recent cases out of this District have rejected the very position the government takes here. In *924 Bel Air*, Judge Wright noted that:

> Bel Air's allegations boil down to a charge that Zillow must prevent users from falsely claiming a Residence Page or posting false content. Yet, reviewing each user's activity and postings to ensure their accuracy is precisely the kind of activity for which Congress intended section 230 to provide immunity. Further, '**removing content is something publishers do**, **and to impose liability on the basis of such conduct necessarily involves treating the liable party as a publisher of the content it failed to remove**.'"

*Id.* at *4 (quoting *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1103 (9th Cir. 2009), *as amended* (Sept. 28, 2009)) (emphasis added). As the Ninth Circuit held, "any activity that can be boiled down to deciding whether to exclude material that third parties seek to post online is **perforce immune** under section 230." *Fair Hous. Council of San Fernando Valley v. Roommates.com LLC*, 521 F.3d 1157, 1170-71 (9th Cir. 2008) (emphasis added).

    Fourth, the FAC contains a conclusory allegation that virtually all adult ads were actually solicitations for illegal prostitution (FAC, ¶ 126(c)), but the FAC **pleads no facts** to support that conclusory allegation. In any event, a website's knowledge that its users are engaging in unlawful conduct through the website does not make the website liable for the users' unlawful conduct. Mot. at 15-17 and n. 34-37; *Lemmon v. Snap, Inc.*, 440 F. Supp. 3d 1103 (C.D. Cal. 2020) (dismissing complaint as barred by Section 230, without leave to amend, despite allegations that website was an information content provider because its smartphone app encouraged unlawful conduct and the website

knew it). In *Lemmon*, Judge Fitzgerald said he could not ignore that "Plaintiffs [were] seeking to hold Defendant responsible for failing to regulate what the users post" and further said:

> [T]he Court cannot meaningfully distinguish the situation here from other cases, which have similarly rejected the plaintiff's efforts to plead around the CDA requirement by **alleging that the website's features promoted the users to engage in illegal conduct**. *See, e.g., Jane Doe No. 1 v. Backpage.com, LLC*, 817 F.3d 12, 22 (1st Cir. 2016) ("We hold that claims that a website facilitates illegal conduct through its posting rules necessarily treat the website as a publisher or speaker of content provided by third parties and, thus, are precluded by section 230(c)(1).").

*Id.* at 1112 (emphasis added). The government's claims here plainly seek to hold Backpage and Claimants liable for failing to regulate what the website's users posted—and that necessarily seeks to treat Backpage as the publisher or speaker of content provided by third parties, which Section 230 prohibits. *Id.*

The government's allegations that Backpage's editorial decisions were motivated by an intent to facilitate criminal conduct does *not* eliminate Section 230 immunity. *Bates*, 2006 WL 3813758, at *4. In *Bates*, the plaintiffs argued that Yahoo! was not immune under Section 230 because it "knowingly hosted illegal child pornography on the 'Candyman' e-group" and "knowingly profited from the trafficking of illegal child pornography." *Id.* at *1, 3. The court nonetheless dismissed the plaintiffs' claims, holding:

> Section 230 does not . . . provide that an intentional violation of criminal law should be an exception to the immunity from civil liability given to internet service providers. Such a finding would effectively abrogate the

         immunity where a plaintiff simply alleged intentional conduct.  Instead, 'lawsuits seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions-such as deciding whether to publish, withdraw, postpone or alter content-are barred.'"

*Id.* (quoting *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997)).

        The court further noted that, "[i]f internet service providers such as Yahoo! could be liable for reviewing materials but ultimately deciding to allow them, they would likely cho[o]se not to regulate at all."  *Id.* at *4.  The same would be true, of course, if, as the government contends, an internet provider could be liable for deleting content, but would have no liability if it simply chose to allow that content.

        Fifth, neither this Court's ruling on a different motion in another case in this district (Case No. 18-cv-6742-RGK-PSJ, Doc. 130 (the "Seizure Case")), nor Judge Brnovich's ruling on a different motion in another case in a different district (Case No. 18-cr-00422-SMB, Doc. 793 (the "Criminal Case")), are the "law of the case" or otherwise preclude the relief Claimants' seek in their motion.  "Under the law-of-the-case doctrine, [] courts—at their own discretion—'will generally refuse to reconsider an issue that has already been decided *by the same court* or a higher court *in the same case*.'"  *East Bay Sanctuary Covenant v. Trump*, 950 F.3d 1242, 1261 (9th Cir. 2020) (emphasis added).  Contrary to the government's contention, this civil forfeiture action is *not* the same case as the Criminal Case or the Seizure Case and, therefore, the law of the case doctrine does not apply.  The court in Arizona also is not the same court and many Claimants are not party to that case.  Moreover, the issue of whether Backpage was an "information content provider" based on the alleged deletion of content from ads posted by third parties to Backpage was not raised by any of the parties in either the Criminal Case or the Seizure Action.

        The government claims that "Judge Brnovich [has] already found that claimants are not entitled to immunity under 47 U.S.C. § 230," but that simply is untrue.  The

purported "holding" of Judge Brnovich to which the government points (Opp. at 9, n.5) is not a holding at all; rather it is just a summary of certain allegations in the government's superseding indictment in the Criminal Case. Judge Brnovich's ruling *in that separate criminal case* does not even *address* whether Backpage or the Claimants who are parties to that case were "information content providers," much less *hold* that they are not entitled to Section 230 immunity, as the government brazenly and incorrectly misrepresented to this Court.

Similarly, in the Seizure Case, none of the parties' moving papers addressed whether Backpage or the Claimants who were party to that case were "information content providers." (The government says it argued that "Section 230 plainly did not apply here," Opp. at 7, but its argument was premised on § 230(e)(1), not on content creation.) Rather, the Court raised the content creation issue *sua sponte*, without briefing from the parties. The government argues Claimants are "attempt[ing] to relitigate the issue while ignoring the law of the case," Opp. at 11, but the content creation issue was never "litigated" in the Seizure Case and there also are parties to this case who were not parties to the Seizure Case.[4]

Finally, as discussed in Claimants' reply in support of their motion to dismiss based on the government's failure to plead sufficiently detailed facts (Dkt. 145), the government cannot defend the sufficiency of the FAC by referring to extrinsic documents like documents filed in the Arizona criminal cases, Inspector Versoza's affidavits, or a congressional report. Moreover, the government's references to those voluminous supporting documents without citing to the pertinent pages in the

---

[4] Even if this was the same case with the same parties, however, the "law of the case doctrine does not [] bar a court from reconsidering its own orders before judgment is entered." *Askins v. U.S. Dep't. of Homeland Sec.*, 899 F.3d 1035, 1042 (9th Cir. 2018). Even if the Court was constrained by the conditions set forth in *Alexander*, at least three would justify not applying the law of the case doctrine here: changed circumstances, manifest injustice, and clearly erroneous decision. *U.S. v. Alexander*, 106 F.3d 874, 876 (9th Cir. 1997).

documents runs afoul of the Court's Standing Order.

## III. CONCLUSION

For the foregoing reasons, Claimants respectfully request that the First Amended Complaint be dismissed.

*Local Rule 5-4.3.4(a)(2)(i) Compliance:  Filer attests that all other signatories listed concur in the filing's content and have authorized this filing.*

DATED:  September 4, 2020         Respectfully submitted,

Gary S. Lincenberg
Ariel A. Neuman
Gopi K. Panchapakesan
BIRD, MARELLA, BOXER, WOLPERT, NESSIM, DROOKS, LINCENBERG & RHOW, P.C.

By:     */s/ Gary S. Lincenberg*
            Gary S. Lincenberg
Attorneys for John Brunst, Mary Ann Brunst, and The Brunst Family Trust

DATED:  September 4, 2020         Thomas H. Bienert, Jr.
Whitney Z. Bernstein
BIENERT KATZMAN PC

By:     */s/ Thomas H. Bienert, Jr.*
            Thomas H. Bienert, Jr.
Attorneys for James Larkin

3669182.2

10

REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT FOR FORFEITURE

DATED:  September 4, 2020

Robert Corn-Revere
James C. Grant
DAVIS WRIGHT TREMAINE LLP

By: */s/ Robert Corn-Revere*
 Robert Corn-Revere
Attorneys for James Larkin and Michael Lacey

DATED:  September 4, 2020

LIPSITZ GREEN SCIME CAMBRIA LLP

By: */s/ Paul J. Cambria, Jr.*
 Paul J. Cambria, Jr.
Attorneys for Michael Lacey

DATED:  September 4, 2020

FREEMAN, MATHIS & GARY LLP

By: */s/ John K. Rubiner*
 John K. Rubiner

FEDER LAW OFFICE, P.A.

By: */s/ Bruce Feder*
 Bruce Feder

Attorneys for Scott Spear

| | | |
|---|---|---|
| DATED: September 4, 2020 | | WIECHERT, MUNK & GOLDSTEIN, PC |
| | By: | _/s/ David W. Wiechert_ |
| | | David W. Weichert |
| | | DANIEL J. QUIGLEY, PLC |
| | By: | _/s/ Daniel J. Quigley_ |
| | | Daniel J. Quigley |

Attorneys for Medalist Holdings, Inc., Leeward Holdings, LLC, Camarillo Holdings, LLC, Vermillion Holdings, LLC, Cereus Properties, LLC, Shearwater Investments, LLC, and Broadway Capital Corp., LLC