NICOLA T. HANNA
United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division
STEVEN R. WELK
Assistant United States Attorney
Chief, Asset Forfeiture Section
DAN G. BOYLE (Cal. Bar No. Pending)
Assistant United States Attorney
Asset Forfeiture Section
        1400 United States Courthouse
        312 North Spring Street
        Los Angeles, California 90012
        Telephone:  (213) 894-2426
        Facsimile:  (213) 894-0142
        E-mail:   Daniel.Boyle2@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>          v.<br><br>$1,546,076.35 IN BANK FUNDS SEIZED FROM REPUBLIC BANK OF ARIZONA ACCOUNT '1889, ET AL.,<br><br>          Defendants.<br>_____<br><br>Michael Lacey, et al.,<br><br>          Claimants. | Case No. CV 18-08420-RGK (PJWx)<br><br>NOTICE OF MOTION AND MOTION TO STRIKE CLAIMS PURSUANT TO RULE G(8)(c) OF THE SUPPLEMENTAL RULES FOR ADMIRALTY OR MARITIME CLAIMS AND ASSET FORFEITURE ACTIONS; MEMORANDUM OF POINTS OF AUTHORITIES; AND DECLARATION OF AUSA DAN BOYLE<br><br>DATE: November 9, 2020<br>TIME: 9:00 A.M.<br>LOCATION: Courtroom of the Honorable R. Gary Klausner |

        PLEASE TAKE NOTICE that on November 9, 2020 at 9:00 a.m.,

or as soon thereafter as the matter may be heard, in the

courtroom of the Honorable R. Gary Klausner, United States

District Court, Courtroom 850 255 E. Temple Street, 7th Fl. Los

1

Angeles, CA 90012, plaintiff United States of America will and hereby does move for an order, pursuant to Supplemental Rule G(8)(c) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, striking the claims in this consolidated action identified in Appendix A to this motion, including subparts A-1, A-2, A-3, A-4, and A-5.

This motion is made following the telephonic conference of counsel pursuant to Local Rule 7-3, which took place on September 15, 2020.

This motion is based upon this Notice of Motion and Motion; the attached Memorandum of Points and Authorities; the attached Declaration of AUSA Dan G. Boyle and exhibits and appendices; and all pleadings and papers on file in this action.

Dated: September 22, 2020       Respectfully submitted,

                                NICOLA T. HANNA
                                United States Attorney
                                BRANDON D. FOX
                                Assistant United States Attorney
                                Chief, Criminal Division
                                STEVEN R. WELK
                                Assistant United States Attorney
                                Chief, Asset Forfeiture Section

                                        /s/
                                _____
                                DAN G. BOYLE
                                Assistant United States Attorney

                                Attorneys for Plaintiff
                                UNITED STATES OF AMERICA

2

**TABLE OF CONTENTS**

**PAGE**

I. INTRODUCTION ............................................... 1

II.  BACKGROUND ................................................ 1

III. ARGUMENT .................................................. 5

  A.   Relevant Civil Forfeiture Law and Legal Background ...... 5

  B.   Claimants Lack Article III Standing to Contest Forfeiture of the Binghamton Assets ..................................... 8

  C.   Shareholders Do Not Have Article III Standing to Contest Forfeiture of Corporate Assets ............................. 11

  D.   Claimants Lack Standing to Contest Forfeiture of the MoneyGram Assets ......................................... 13

  E.   Claimants Lack Standing to Contest Forfeiture of Non-Party Assets Through Information-and-Belief Claims ................ 16

  F. The Purportedly *Pro Se* Claims Should Not be Afforded Lenient Construction ............................................. 18

  G.   Claimant Natasha Spear's Claims Should be Stricken for Failing to Respond to the Government's Interrogatories ...... 19

  H.   This Motion Must be Decided Before any Dispositive Motions Filed by Claimants ........................................ 20

IV.  CONCLUSION ............................................... 21

i

1

2                              **TABLE OF AUTHORITIES**

3                                                                          **PAGE**

4   **Cases**

Ayvazian v. Moore Law Grp.,
5       2012 WL 2411181 (C.D. Cal. June 26, 2012) ................... 19

6   Gutierrez v. City of Carson,
        2012 WL 13005846 (C.D. Cal. Sept. 14, 2012) ............... 19
7
    In re Markus,
8       610 B.R. 64 (Bankr. S.D.N.Y. 2019) ......................... 10

9   Mercado v. U.S. Customs Service,
        873 F.2d 641(2d Cir. 1989)............................. 6, 16
10
    United States v. Obaid,
11      Case No. 18-56657 (9th Cir., Aug. 24, 2020)................. 5

12  United States v. Aguilar,
        782 F.3d 1101 (9th Cir. 2015) ............................. 12
13
    United States v. $1,181,895.00 in U.S. Currency,
14      2015 WL 631394 (C.D. Cal. Feb. 12, 2015).................... 7

15  United States v. $100,348 in U.S. Currency,
        354 F.3d 1110 (9th Cir. 2004).............................. 6
16
    United States v. $133,420.00 in U.S. Currency,
17      672 F.3d 629(9th Cir. 2012) .................... 7, 8, 16, 17

18  United States v. $20,193.39 U.S. Currency,
        16 F.3d 344 (9th Cir.1994) ................................ 8
19
    United States v. $295,726.42 in Account Funds Seized,
20      279 F. Supp. 3d 1050 (C.D. Cal. 2018) ..................... 20

21  United States v. $349,370.39 in U.S. Currency,
        22 F. App'x 731 (9th Cir. 2001) .......................... 11
22
    United States v. $41,475.00 in U.S. Currency,
23      2016 WL 337380 (C.D. Cal. Jan. 6, 2016).................... 6

24  United States v. All Assets Held at Bank Julius,
        2020 WL 1615870 (D.D.C. Apr. 2, 2020) ..................... 9
25
    United States v. All Assets Held in Account No. XXXXXXXX in name
26      of Doraville Properties Corp.,
        299 F. Supp. 3d 121(D.D.C. 2018)........................... 6
27

28

                                      ii

United States v. All Funds on Deposit at Citigroup Smith Barney
    Account No. 600-00338,
    617 F. Supp. 2d 103 (E.D.N.Y. 2007) ........................ 20

United States v. All Funds on Deposit on or Before Nov. 8, 1994
    in Citibank Account No. 42773634 in the Name Imtiaz Ahmed Kahn,
    955 F. Supp. 23 (E.D.N.Y. 1997 ............................ 14

United States v. All Right, Title & Interest in Prop.,
    Appurtenances, & Improvements Known as 479 Tamarind Drive,
    Hallendale, Fla.,
    2011 WL 1045095 (S.D.N.Y. Mar. 11, 2011) ................. 12

United States v. BCCI Holdings (Luxembourg), S.A.,
    977 F. Supp. 20 (D.D.C. 1997) ............................. 14

United States v. JP Morgan Chase Bank Account No. Ending 8215 in
    Name of Ladislao V. Samaniego, VL: $446,377.36,
    835 F.3d 1159 (9th Cir. 2016)........................... 7, 16

United States v. One Lincoln Navigator,
    328 F.3d 1011 (8th Cir. 2003).............................. 6

United States v. One-Sixth Share,
    326 F.3d 36 (1st Cir. 2003)................................ 5

United States v. Real Prop. Located at 5208 Los Franciscos Way,
    Los Angeles, Cal.,
    385 F.3d 1187 (9th Cir. 2004)........................... 5, 7

United States v. Real Prop., Situated at 6050 Duncan Drive, Las
    Vegas, Clark Cty., Nev.,
    73 F.3d 371 (9th Cir. 1995) .............................. 19

United States v. Ribadeneira,
    105 F.3d 833 (2d Cir. 1997) .............................. 14

United States v. Two Million Seven Hundred Sixty-Seven Thousand
    Two Hundred & Two Dollars & Twenty-Seven Cents ($2,767,202.27)
    in U.S. Currency,
    2006 WL 1989860 (C.D. Ill. July 13, 2006) ................. 9

Villagordoa Bernal v. Rodriguez,
    2016 WL 3360951 (C.D. Cal. June 10, 2016) ................ 19

XL Specialty Ins. Co. v. Perry,
    2012 WL 6800780 (C.D. Cal. Jan. 26, 2012) ................. 8

**Rules**

Supplemental Rule G(8)................................... passim

**Treatises**

iii

Cassella, Stefan D., Asset Forfeiture Law in the United States,
   (2d ed. 2013), §10-5 .................................... 9, 14

Cassella, Stefan D., Asset Forfeiture Law in the United States,
   (2d ed. 2013) § 9-3(a) ................................. 6, 8

Restatement (Third) of Trusts,
   § 42 (2003) ............................................ 9

The Law of Trusts and Trustees,
   § 42 (3d ed.2007) ...................................... 9

iv

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

In this *in rem* civil forfeiture action, each claimant is required to establish his or her standing to contest forfeiture of each defendant asset to which he or she makes a claim. Standing is a threshold issue, and the government may challenge a claimant's standing any time prior to trial. Here, claimants have filed claims to nearly every asset traceable to their now-defunct criminal enterprise, Backpage.com, regardless of whether claimants actually have any real, cognizable interest in such assets. They have filed a variety of claims which attempt to manufacture standing either by ignoring settled law or vaguely asserting unrealized and inchoate alleged future interests. The Court should strike these claims. In addition, the Court should strike the claims of claimant Natasha Spear, who has failed to respond to the government's special interrogatories without providing any explanation or date of intended compliance.

**II.   BACKGROUND**

**Overview of Backpage**

By now the Court is now well-versed in the factual history of this consolidated action. In brief, the government has alleged that certain of claimants owned and/or operated the Backpage.com website, and that the vast majority of Backpage's "adult" ads consisted of offers to sell adults or children for sex. See ECF No. 108, First Amended Consolidated Master Verified Complaint for Forfeiture ("FACMC") ¶¶ 106-112, 121, 123, 126. For most of its existence, Backpage charged for posting "adult" ads, and generated approximately a half-billion dollars from

1

those ads. FACMC ¶¶ 107, 123. Backpage's executives knew and repeatedly acknowledged in internal company documents and private meetings that the overwhelming majority of the website's "adult" ads involved prostitution. FACMC ¶¶ 123, 126, 129-130. In April 2015, the U.S. Senate Permanent Subcommittee on Investigations commenced an investigation into internet sex trafficking, and in January 2017, issued a report revealing that nearly all of Backpage's "adult" ads were solicitations for illegal prostitution, that Backpage was fully aware of the true nature of these ads, and that Backpage had taken an array of affirmative steps to help pimps and traffickers sanitize these ads and conceal their illegality — even as Backpage represented to the public and the courts that it merely hosted content others had created. FACMC, ¶¶ 124, 126-128.

**The Civil Seizure Warrants and Forfeiture Actions**

Beginning on March 28, 2018, magistrate judges in this District found probable cause to issue warrants to seize a range of assets covered by the forfeiture allegations in various criminal cases in the District of Arizona, and execution of these warrants resulted in the seizure of the funds at issue. The government then filed a series of verified complaints, which were consolidated before this Court on December 18, 2019 (ECF No. 50), and on June 1, 2020, the Government filed the FACMC. ECF No. 108. This motion concerns four distinct groups of claims applicable in this consolidated action:

*The Binghamton Assets and Binghamton Claims*

As described in the FACMC, the government seeks to forfeit $16,500,000 in an account at K&H Bank in Hungary, held in the

2

name of Primus Trust Company ("Primus"), which was wired into
that account on or about January 3, 2017. See FACMC ¶¶ 43, 200-
201 (hereinafter, the "Binghamton Assets"). Claimants Michael
Lacey ("Lacey") and Jill Anderson ("Anderson") filed claims to
the Binghamton Assets on May 24, 2019 (the "Binghamton Claims").
The Binghamton Claims are collected and attached in Appendix A-
1. As stated in the Binghamton Claims, Primus holds these assets
as trustee of the Binghamton Trust, which is an irrevocable
trust created for the benefit of Lacey's two children. See id.

### The Compass Bank Assets & Shareholder Claims

As described in the FACMC, the government seeks to forfeit
$5,462,027.17 and $407,686.14 in bank funds seized from two BBVA
Compass Bank Accounts held in the name of claimant Cereus
Properties, LLC ("Cereus"). See FACMC ¶¶ 98-99,152-154 (the
"Compass Bank Assets"). On or about May 23, 2020 and May 24,
2020, Claimants Lacey, James Larkin ("J. Larkin"), Troy Larkin
("T. Larkin"), Ramon Larkin ("R. Larkin"), Scott Spear
("Spear"), and Jed Brunst ("Brunst") each filed a claim to the
Compass Bank Assets. Each asserted an ownership interest in the
Compass Bank Assets as "a shareholder of Medalist Holdings,
Inc.," the purported parent company of Cereus (the "Shareholder
Claims"). The Shareholder Claims are collected in Appendix A-2.

### The MoneyGram Assets and MoneyGram Claims

As described in the FACMC, the government seeks to forfeit
$2,412,785.47 in funds seized from accounts of MoneyGram
International, which originated from a Midfirst Bank Account
held in the name of attorney, "J.B." for the benefit of Lacey.
On or about May 23, 2019 and May 24, 2019, claimants Lacey,

Anderson, and John Becker, acting as trustee of the MGL Two Year Retained Annuity Trust Dated 21 November 2014 ("Becker"), filed claims to the MoneyGram Assets (the "MoneyGram Claims"). The MoneyGram Claims are collected in Appendix A-3.

*The Non-Party Assets and Information-and-Belief Claims*

Separate from assets held in the name of the Claimants, the government also seeks forfeit a range of assets held in the names of entities and individuals who are not claimants here, some of whom have already pleaded guilty in proceedings in the District of Arizona. (the "Non-Party Assets"). Claimants Lacey, J. Larkin, R. Larkin, T. Larkin, Spear, Brunst (collectively the "Individual Claimants") as well as claimants Cereus, Medalist Holdings, Leeward Holdings, Camarillo Holdings, Vermillion Holdings, Shearwater Investments, and Broadway Capital (collectively the "Entity Claimants") have filed claims to the Non-Party Assets, alleging on information-and-belief that each Non-Party Asset is security for indemnification obligations under a series of purchase and sale agreements (the "Information-and-Belief Claims"). Due to the volume of the Information-and-Belief claims, citations to each of these claims as filed are reflected in Appendix A-4, and two recent examples of such claims are included in Appendix A-4.

**The Special Interrogatories and Spear Non-Responses**

On February 12, 2012, the government served special interrogatories on all claimants in this consolidated action. The majority of the claimants properly served responses to these interrogatories, while others requested additional time to respond (which the government granted). Two claimants, however,

4

1   Natasha Spear and Ellona Spear, failed to serve responses to
2   these Interrogatories or request additional time to respond.[1] The
3   government has requested their Interrogatory responses four
4   separate times now, but as of the date of this filing, has not
5   received any substantive response.

6   **III. ARGUMENT**

7       **A.    Relevant Civil Forfeiture Law and Legal Background**

8       In civil *in rem* forfeiture cases, the Government is the
9   plaintiff, the property is the defendant, and the claimant is an
10  intervenor seeking to challenge the forfeiture. See United
11  States v. Obaid, Case No. 18-56657 (9th Cir., Aug. 24, 2020),
12  Slip Op. at 9; United States v. One-Sixth Share, 326 F.3d 36, 40
13  (1st Cir. 2003) ("Because civil forfeiture is an in rem
14  proceeding, the property subject to forfeiture is the defendant.
15  Thus, defenses against the forfeiture can be brought only by
16  third parties, who must intervene."). As an intervenor, a
17  claimant must establish an interest in the property sufficient
18  to invoke the court's jurisdiction. See United States v. Real
19  Prop. Located at 5208 Los Franciscos Way, Los Angeles, Cal., 385
20  F.3d 1187, 1193 (9th Cir. 2004) ("The substantive merits of the
21  government's forfeiture action—whatever they may be—cannot be
22  challenged by a claimant lacking a sufficient interest in the
23  defendant property to confer Article III standing"). "A claimant
24  bears the burden of establishing Article III standin...." United

25  ─────────────────

26      [1] While Ellona Spear has appeared through counsel as a
    "claimant," Ellona Spear does not appear to have actually filed
27  claims to any assets. It is unclear what Ms. Spear's purported
    status as a claimant is based on, and she has not responded to
28  the government's inquiries through counsel. See Boyle Decl. ¶ 8.

States v. $41,475.00 in U.S. Currency, No. CV 15-00696-R, 2016

WL 337380, at *1 (C.D. Cal. Jan. 6, 2016). For that reason, a

claimant's standing is a threshold issue in every civil

forfeiture case. See United States v. One Lincoln Navigator, 328

F.3d 1011, 1013 (8th Cir. 2003). In addition, each claimant must

establish standing as to each asset for which that claimant

contests forfeiture. See United States v. All Assets Held in

Account No. XXXXXXXX in name of Doraville Properties Corp., 299

F. Supp. 3d 121, 131 (D.D.C. 2018) ("[C]ourts have widely

recognized that '[e]ach claimant in a civil forfeiture action

must have ... Article III standing with respect to each asset in

which he or she asserts an interest'" (quoting United States v.

Sum of $70,990,605, 234 F.Supp.3d 212, 229 (D.D.C. 2017))).

As courts have recognized, the *in rem* nature of civil

forfeiture actions creates a substantial danger that claims will

be filed by persons with no real interest in the property. See

United States v. $100,348, 354 F.3d 1110, 1118-19 (9th Cir.

2004) ("[T]he danger of false claims in [civil forfeiture]

proceedings is substantial"); Mercado v. U.S. Customs Service,

873 F.2d 641, 645 (2d Cir. 1989) (there is a "substantial danger

of false claims in forfeiture proceedings"). Fictitious claims

may be filed by strawmen, nominees, or jilted former business

partners, and claims are regularly filed in forfeiture cases by

persons who have a dispute with the property owner but no

interest in any of his specific property. See Cassella, Stefan

D., Asset Forfeiture Law in the United States (2d ed. 2013),

§ 9-3(a) (hereinafter, "Cassella"). Accordingly, challenges to a

claimant's standing in forfeiture actions present the only

opportunity for the court to weed out claims filed by improper claimants before engaging in discovery. Id.

Standing in a civil forfeiture action has two elements: statutory standing and Article III standing. See United States v. $1,181,895.00 in U.S. Currency, No. CV 14-03973-CBM, 2015 WL 631394, at *2 (C.D. Cal. Feb. 12, 2015). Statutory standing concerns a claimant's adherence to the requirements of Rule G(5) of the Supplemental Rules for Admiralty and Maritime Claims and Asset Forfeiture Actions ("the Supplemental Rules"). See generally, Cassella, § 9-3(b).[2] Article III standing in a forfeiture proceeding "turns upon whether the claimant has a sufficient interest in the property to create a case or controversy." 5208 Los Franciscos Way, 385 F.3d at 1191. While this burden is not a heavy one at the pleading stage, the showing needs to constitute "a colorable interest" in the seized property, "generally through the demonstration of an ownership or possessory interest in the property." United States v. JP Morgan Chase Bank Account No. Ending 8215 in Name of Ladislao V. Samaniego, VL: $446,377.36, 835 F.3d 1159, 1164 (9th Cir. 2016). At the pleading stage, a claimant can assert an "unequivocal assertion of an ownership interest in the property" to establish standing. United States v. $133,420.00 in U.S. Currency, 672 F.3d 629, 638 (9th Cir. 2012). Any ownership interest is determined under state law where the interest arose. 5208 Los Franciscos Way, 385 F.3d at 1191. Creditors who lack a secured

_____

[2] Rule G also empowers the government to move to strike a claim where a claimant fails to respond to special interrogatories propounded to test a claimant's standing. See Rule G(8)(c)(1)(a).

7

interest in the specific property subject to forfeiture, however, do not have sufficient ownership interest to contest forfeiture. See United States v. $20,193.39 U.S. Currency, 16 F.3d 344, 346-47 (9th Cir.1994).

Under the Supplemental Rules, at any time before trial, the government may move to strike a claim on the grounds that that the claimant lacks standing. See $133,420.00 in U.S. Currency, 672 F.3d at 635 (9th Cir. 2012) (citing Supp. R. G(8)(c)). Under Rule G(8), a motion to strike may be treated as a motion for judgment on pleadings and resolved on the face of the claims, or the Court may hold an evidentiary hearing on any discrete issues of fact. See Rule G(8)(c)(ii)(B) (motion "may be presented as a motion for judgment on the pleadings or as a motion to determine after a hearing."). If presented as a motion for judgment on the pleadings, a motion to strike will be granted where "even if all of the allegations in the claim are assumed to be true, the claimant lacks a sufficient interest in the property to establish Article III standing." Cassella, §9-3(b); see also XL Specialty Ins. Co. v. Perry, No. CV 11-02078-RGK JCGX, 2012 WL 6800780, at *3 (C.D. Cal. Jan. 26, 2012) (judgement on the pleadings is appropriate where a pleading "lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." (citing Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008))).

**B.  Claimants Lack Article III Standing to Contest Forfeiture of the Binghamton Assets**

It is black letter law that the settlor of an irrevocable trust relinquishes ownership of assets placed in such a trust.

8

See The Law of Trusts and Trustees, § 42, at 445 (3d ed.2007)
(in establishing an irrevocable trust "the settlor must
permanently give up control of the gift property"). For this
reason, as a matter of law, a settlor cannot establish an
ownership or possessory interest in such a trust; while the
trustee and beneficiaries of a trust are ordinarily considered
to be the owners of trust assets (and may sometimes have
standing to contest forfeiture), a settlor "who has transferred
his property to an irrevocable trust lacks standing to contest
the forfeiture of the property." Cassella, §10-5(l). As another
court held in functionally identical circumstance:

> Once the irrevocable Trust was created, [claimant]
> Wasserwald no longer had any rights, title, or interest
> in, or power, privilege, or incident of ownership in
> regard to any of the property in this Trust. Accordingly,
> as the investment, which is the subject of this claim
> was made by the Trust, Wasserwald no longer has any right
> to file a claim for the return of any money. Accordingly,
> Wasserwald lacks standing to bring this claim.

United States v. Two Million Seven Hundred Sixty-Seven Thousand
Two Hundred & Two Dollars & Twenty-Seven Cents ($2,767,202.27)
in U.S. Currency, No. 03-1289, 2006 WL 1989860, at *1 (C.D. Ill.
July 13, 2006); see also United States v. All Assets Held at
Bank Julius, No. CV 04-0798-PLF, 2020 WL 1615870, at *4, 10-11
(D.D.C. Apr. 2, 2020) (striking claims brought by settlor of
irrevocable trust formed under Guernsey law); see generally
Restatement (Third) of Trusts, § 42 (2003) ("When a settlor
transfers property to another as trustee or declares a trust of

that property, unless the transferor manifests a different intention, the trustee takes the settlor's full title or interest in that property.").

The fact that a trustee may choose not to contest forfeiture of trust assets — for whatever reason — does not confer standing on a settlor to step into the trustee's shoes. A settlor seeking the benefits of the trust structure accepts the risks that such a transfer of ownership may bring. As the court held in $2,767,200.27, "[t]he creation of a Trust provides a Trustor with certain legal and tax consequences; however, in return, the Trustor gives up certain rights," including "the right to bring a claim on behalf of the Trust." 2006 WL 1989860, at *1-2; cf. Restatement (Third) of Trusts, § 94 (2012) ("Neither the settlor of a private trust nor the personal representative or successors in interest of the settlor can, as such, maintain a suit against the trustee to enjoin or redress a breach of trust or otherwise to enforce the trust, absent contrary legislation.").[3]

Despite this well-settled law, the Binghamton Claims are explicitly based on Lacey's purported standing as settlor:

> Claimant is the Settlor (Creator) of an irrevocable trust ("Binghamton Trust") for the benefit of his two children. The Trustee of Binghamton Trust is Primus Trust Corporation in Hungary. The Defendant Asset is

---

[3] In contrast, the settlor of a *revocable* trust may have standing, as the settlor typically retains the power to extinguish the trust until such time as it becomes irrevocable. See In re Markus, 610 B.R. 64, 79-80 (Bankr. S.D.N.Y. 2019).

10

owned by the Binghamton Trust for the benefit of the Claimant's children.

Appendix A-1 (Lacey Claim) at 003.[4] Taking Lacey's claim as true on its face, Lacey is neither a trustee nor a beneficiary of the Binghamton Trust, the trust is "irrevocable," and the Binghamton assets are "owned" by the trust for Lacey's children. Accordingly, Lacey neither possesses nor owns the Binghamton Assets, and thus as a matter of law, lacks standing to oppose forfeiture of the same.

Similarly, as Lacey's claim is deficient as a matter of law, so too must claimant Andersen's claim also be stricken. Anderson's only claim to the Binghamton Assets is as "the spouse of Michael Lacey, who is the Settlor (Creator) of an irrevocable trust ('Binghamton Trust') for the benefit of his two children." Appendix A-1 (Anderson Claim) at 008. Accordingly, on the face of her claim, Anderson's standing rises and falls with that of Lacey. Cf. United States v. $349,370.39 in U.S. Currency, 22 F. App'x 731, 733 (9th Cir. 2001) (unpublished) (marital community retains an ownership interest in defendant asset only so long as assets not placed in trust). Because the Binghamton Claims are deficient as a matter of law, these claims should be stricken.

## C.  Shareholders Do Not Have Article III Standing to Contest Forfeiture of Corporate Assets

Consistent with basic tenets of American corporate law, the Ninth Circuit and other courts have unambiguously held that a

---

[4] Because Appendix A compiles documents from multiple cases which were filed pre-consolidation, all subparts of Appendix A have been sequentially numbered for ease of reference.

11

shareholder lacks standing to contest the forfeiture of
corporate assets. As such, the Shareholder Claims must be
struck, as even taking all allegations in each of the
Shareholder Claims at true, claimants cannot establish standing.

    Considering the standing of claimants in a forfeiture
proceeding, in U.S. v. Aguilar the Ninth Circuit held that

> the problem for [claimants] is that they lack an
> ownership interest in the specific property sought to be
> forfeited, 18 U.S.C. § 983(d)(6)(A). As the district
> court recognized, there is no allegation that
> [claimants] personally owned any of the funds in the
> Grupo Account because—as a shareholder—neither hold[s]
> legal title to any of [corporation's] assets. See also
> Dole Food Co. v. Patrickson, 538 U.S. 468, 474-75, 123
> S.Ct. 1655, 155 L.Ed.2d 643 (2003) ("A basic tenet of
> American corporate law is that the corporation and its
> shareholders are distinct entities. An individual
> shareholder, by virtue of his ownership of shares, does
> not own the corporation's assets...)."

782 F.3d 1101, 1108 (9th Cir. 2015)(internal quotation marks
omitted); see also United States v. All Right, Title & Interest
in Prop., Appurtenances, & Improvements Known as 479 Tamarind
Drive, Hallendale, Fla., No. 98-CIV-2279-DLC, 2011 WL 1045095,
at *2 (S.D.N.Y. Mar. 11, 2011) ("[A] shareholder has no standing
to contest the forfeiture of an asset of a corporation because

1  shareholders do not have an ownership interest in any specific
2  property owned by that corporation").[5]

3      Here, claimants have explicitly asserted claims based
4  solely on their purported status as shareholders of corporate
5  property. See, e.g. Appendix A-2 (Spear Claim), at 030 ("The
6  seized accounts are held by Cereus Properties, LLC, which is
7  ultimately owned by Medalist Holdings, Inc. Claimant is a
8  shareholder of Medalist Holdings, Inc. and therefore has a
9  legally recognizable interest in the Subject Funds..."). None of
10 the Shareholder Claims identifies any other legitimate ownership
11 interest, and certainly no possessory interest. Even taking
12 these claims as true for the purposes of this motion, the
13 Shareholder Claims nonetheless fail to establish standing under
14 the law of this circuit. Because these claims are deficient as a
15 matter of law, the Shareholder Claims should be stricken.

16     **D.    Claimants Lack Standing to Contest Forfeiture of the**
17           **MoneyGram Assets**

18     The MoneyGram Claims similarly must be stricken. Courts
19 have long recognized that when funds are transferred to a money-
20 transmitter account, the former owner becomes an unsecured
21 creditor of the transmitter. As such, if the government seizes
22 funds from that transmittal account, it is the money transmitter
23 that has standing, as the transferring party is merely an

24

25

26     [5] Neither can claimants sidestep this deficiency by pointing
   to the laws of other jurisdictions. As the court recognized in
27 Aguilar, it is a claimant's burden to establish standing,
   including how foreign law diverges from controlling law in this
28 jurisdiction. See Aguilar, 782 F.3d at 1108.

13

unsecured creditor. As explained in <u>United States v. BCCI</u>
<u>Holdings (Luxembourg), S.A.</u>,

> Once the funds were credited to BCCI's account, it
> accepted the payment order and title passed to BCCI.
> When BCCI failed to perform by paying the intended
> beneficiary, [claimant] was left with a cause of
> action against BCCI. Such an unsecured claim simply
> leaves him, at most, in the position of a general
> creditor of BCCI...

977 F. Supp. 20, 25 (D.D.C. 1997); <u>see also</u> <u>United States v. All</u>
<u>Funds on Deposit on or Before Nov. 8, 1994 in Citibank Account</u>
<u>No. 42773634 in the Name Imtiaz Ahmed Kahn</u>, 955 F. Supp. 23, 26
(E.D.N.Y. 1997) (customers who gave money transmitter funds to
transfer to relatives in Pakistan lacked standing to contest
forfeiture of transmitter's bank accounts); <u>United States v.</u>
<u>Ribadeneira</u>, 105 F.3d 833, 834 (2d Cir. 1997) (finding that
holders of checks drawn on currency exchanger's seized accounts
were "general creditors without an identifiable legal interest
in the particular assets subject to forfeiture" and thus lacked
standing); <u>see also</u> Cassella, §10-5(f) ("[A] person who hands
his money over to a money remitter with instructions to transfer
the money to a relative overseas has no standing to contest the
forfeiture of the money remitter's bank account").

As described above and in the MoneyGram Claims, the
MoneyGram Assets funds were transferred to MoneyGram from
Midfirst Bank, and only then seized by the government from
accounts held by MoneyGram. <u>See</u> Appendix A-3 (Becker Claim) at
047 (describing "$2,412,785.47 seized from Money Gram, having

originated at MidFirst Bank Account '4139"); see also Appendix A-3 (Lacey Claim) at 036 (describing asset as "seized from Money Gram Funds").[6] While claimants might have had standing to contest a hypothetical seizure from the Midfirst account (allegedly in Lacey's name), the MoneyGram Assets were not seized from Midfirst. They were seized in transit, rendering claimants unsecured creditors of MoneyGram – and without standing here.

In the MoneyGram Claims, claimants assert that they nonetheless retain an interest in a "cashier's check in the amount of $2,412,785.47 made payable from the MidFirst Account `4139 to John R. Becker...whether the cashier's check was ever delivered or tendered." Appendix A-3 (Becker Claim), at 047. But again, the government neither seized nor sought to forfeit a cashier's check; rather, and as claimants admit, the MoneyGram Assets were seized from MoneyGram's accounts. Id.[7]

Claimants have neither an ownership nor possessory interest in the MoneyGram Assets sufficient to contest forfeiture.

---

[6] While claimants Lacey and Anderson broadly assert that Lacey "is the owner of the accounts holding the seized Defendant Assets" – including the MoneyGram Assets – this general assertion is plainly contradicted by their simultaneous admission that the MoneyGram Assets were "seized from Money Gram Funds." Appendix A-3 (Lacey claim), at 037; (Anderson claim), at 040. The Court need not accept legal conclusions as true at this stage, including Lacey's assertions of ownership over an account he simultaneously admits is not his. See Norwood v. Ocwen Loan Servicing, LLC, No. 11-CV-9160-DSF, 2012 WL 13012639, at *1 (C.D. Cal. May 1, 2012). Taking as true claimants' assertions that funds were "seized from Money Gram Funds," the Court may find that they lack standing, for the reasons detailed above.

[7] Even holding a check does not convey standing to contest seizure of funds from the account that check may be drawn on. See Cassella, §10-5(f).

15

Claimants certainly did not possess the MoneyGram Assets when they were seized from MoneyGram, and as explained above, neither can claimants assert a colorable ownership interest in this asset. Accordingly, the MoneyGram Claims are deficient as a matter of law, and thus must be stricken.

### E. Claimants Lack Standing to Contest Forfeiture of Non-Party Assets Through Information-and-Belief Claims

In forfeiture proceedings, the Ninth Circuit has held that the risk of false claims "requires courts to demand more than conclusory or hearsay allegations of some 'interest' in the forfeited property." Ladislao V. Samaniego, VL: $446,377.36, 835 F.3d at 1166 (citing $100,348.00 in U.S. Currency, 354 F.3d at 1118-19). As such, a claimant's assertion of ownership must be "unequivocal." $133,420.00 in U.S. Currency, 672 F.3d at 638. Similarly, because of the substantial danger of false claims in forfeiture proceedings, hearsay and information-and-belief claims are hallmarks of a false claim. See Mercado, 873 F.2d at 645 ("[M]ore was required than the conclusory, hearsay, on-information-and-belief statement of Mercado's lawyer" (citing United States v. United States Currency in the Amount of $2,857.00, 754 F.2d 208, 213 (7th Cir.1985)).

The Information-and-Belief Claims fail to meet even this modest standard. Much like the claims rejected in Mercado, the Information-and-Belief Claims here are predicated on what amounts to half-verification. Claimants simultaneously claim to be secured creditors, yet claim not to know whether the Non-Party Assets are, in fact, secured assets. See, e.g., Appendix A-4 (Medalist claim) at 069-070 ("On information and belief,

16

financing statements were filed in April 2015 with the Delaware
Secretary of State, the Recorder of Deeds in the District of
Columbia, and the Texas Secretary of State to perfect security
interests in the Collateral."). It defies logic that a secured
creditor would need to plead its own perfected security interest
on information and belief. And much like in Mercado, the
verification for the Entity Claimants (such that it is) in made
on information-and-belief by counsel. See Id., at 072.[8]

The Information-and-Belief Claims further fail to state
standing because these claims are facially not "unequivocal."
$133,420.00 in U.S. Currency, 672 F.3d at 638. By their own
terms, the Information-and-Belief Claims do not state whether
Non-Party Assets are in fact, secured assets, or whether these
assets are needed to fulfill any purported obligation. At most,
the Information-and-Belief Claims allege that the Non-Party
Assets might be needed in the future to satisfy a nebulous
third-party indemnification obligation that may come due.
Removing the information-and-belief allegations, it becomes
obvious that any nexus between the alleged security agreements
and the defendant assets is entirely speculative. See, e.g.,
Appendix A-4 (Lacey Claim) at 063 ("On information and belief,
the Subject Funds are a part of the Collateral. On information
and belief, the sums owed for advancement and indemnification

---

[8] While Mr. Quigley is identified in the Information-and-
Belief Claims as an "authorized agent" for the Entity Claimants,
Appendix A-4 (Medalist claim) at 072, the Court may take notice
that Mr. Quigley has entered an appearance in this action as
counsel for the Entity Claimants. See, e.g., Case No. 2:18-cv-
08566-RGK, ECF No. 46 (granting pro hac vice application for
Daniel Quigley to appear on behalf of Entity Claimants).

exceed the value of the Collateral."). Notably, claimants do not state the basis for their information-and-belief pleading, nor have they explained why they have pleaded claims on information-and-belief when such information would appear to be within their grasp. See Soo Park v. Thompson, 851 F.3d 910, 928 (9th Cir. 2017) ("[Twombly] does not prevent a plaintiff from pleading facts alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant or where the belief is based on factual information that makes the inference of culpability plausible.").[9]

For these reasons, the Information-and-Belief Claims should be stricken, or alternately, claimants should be ordered to re-file their claims identifying the basis for their information-and-belief allegations, and truthfully pleading such information that is within their current knowledge.

## F.   The Purportedly *Pro Se* Claims Should Not be Afforded Lenient Construction

While courts often afford lenient construction to filings by *pro se* claimants in forfeiture proceedings, such liberal treatment is not appropriate here. See United States v. Real Prop., Situated at 6050 Duncan Drive, Las Vegas, Clark Cty., Nev., 73 F.3d 371 (9th Cir. 1995). Even a cursory review of the

---

[9] Certain of the information-and-belief allegations are simply baffling, as the facts alleged would certainly be within claimants' knowledge. See, e.g., Appendix A-4 (Entity claim) at 068 ("On information and belief, claimant Shearwater holds promissory notes initially made on or about April 22, 2015, by Atlantische Bedrijven C.V. and UGC Tech Group C.V."). It is difficult to understand how Shearwater, a claimant, would not be able to verify whether or not it holds such promissory notes.

claims filed by *pro se* claimants Anderson, R. Larkin, and T. Larkin shows them to have been drafted by professional counsel, matching in style and substance those filed by counsel in this action,[10] and the remaining *pro se* claimant, Becker, is an accomplished partner in an Phoenix, Arizona law firm. <u>See</u> Boyle Decl. ¶ 14. Lenity is plainly not appropriate here.

> **G.    Claimant Natasha Spear's Claims Should be Stricken for Failing to Respond to the Government's Interrogatories**

On February 12, 2020, the government served special interrogatories on claimants Natasha and Ellona Spear. <u>See</u> Boyle Decl. ¶ 9. To date, the government has received no response to these interrogatories, despite four separate requests. <u>Id.</u>, ¶ 10-13. Pursuant to Rule G(8)(c)(1)(A), the government may move to strike a claim where a claimant fails to respond to Rule G special interrogatories. <u>See</u> <u>United States v. $295,726.42 in Account Funds Seized</u>, 279 F. Supp. 3d 1050, 1053 (C.D. Cal. 2018). While courts will often afford a claimant an additional opportunity to respond to special interrogatories where

---

[10] Courts in this district have traditionally taken a negative view of lawyers ghostwriting pleadings for purportedly *pro se* parties. <u>See</u> <u>Villagordoa Bernal v. Rodriguez</u>, No. ED16-CV-00152-CAS, 2016 WL 3360951, at *6 (C.D. Cal. June 10, 2016) ("As plaintiff rightly contends, ghostwriting pleadings for *pro se* litigants is wholly inappropriate and potentially sanctionable conduct"); <u>Ayvazian v. Moore Law Grp.</u>, No. 2:12-CV-01506-ODW, 2012 WL 2411181, at *4 (C.D. Cal. June 26, 2012) ("The Court reminds the Plaintiff that the practice of 'ghostwriting' violates the rules of professional conduct, and undermines the litigant's status as *pro se*"); <u>see also</u> <u>Gutierrez v. City of Carson</u>, No. 10-CV-7627-JAK, 2012 WL 13005846, at *4 (C.D. Cal. Sept. 14, 2012). Nonetheless, the Court need not reach this fact-laden issue at this time, so long as claimants are not afforded any liberal construction of their pleadings.

justified, claimant Spear has given no reason for her failure to respond, nor provided any timeline for doing so. While the government recognizes that this is a harsh sanction, Ms. Spear's failure either to respond or provide an explanation makes it appropriate here. Alternatively, the Court can condition any order striking Ms. Spear's claims to take effect only if no responses are served within 30 days. See id., at 1056.

**H.   This Motion Must be Decided Before any Dispositive Motions Filed by Claimants**

Pursuant to Rule G(8)(c)(ii)(A), this motion "must be decided before any motion by the claimant to dismiss the action." Claimants have filed two motions to dismiss which remain pending. ECF Nos. 111, 112. In an August 20, 2020 Order, the Court stated that any motion to strike may be decided simultaneously with a decision on the pending motions to dismiss. ECF No. 139. While the government does not necessarily object to the instant motion and the motions to dismiss being ruled upon in a single decision, it respectfully submits that, pursuant to Rule G, the Court is required to address the standing issues before addressing the issues raised by claimants in their motions to dismiss. See, e.g., United States v. All Funds on Deposit at Citigroup Smith Barney Account No. 600-00338, 617 F. Supp. 2d 103, 111–12 (E.D.N.Y. 2007) (addressing motions to strike and dismiss in a single decision, but noting that court must "consider the motion to strike for lack of standing first.").

20

**IV.   CONCLUSION**

Based on the foregoing arguments and authorities, plaintiff respectfully requests the Court enter an order striking the claims identified in Appendix A (including subparts A-1, A-2, A-3, A-4 and A-5), and such further or additional relief to which it deems the plaintiff is entitled.


DATED: September 22, 2020          NICOLA T. HANNA
                                   United States Attorney
                                   BRANDON D. FOX
                                   Assistant United States Attorney
                                   Chief, Criminal Division
                                   STEVEN R. WELK
                                   Assistant United States Attorney
                                   Chief, Asset Forfeiture Section


                                   _____/s_____
                                   DAN G. BOYLE
                                   Assistant United States Attorney
                                   Asset Forfeiture Section

                                   Attorneys for Plaintiff
                                   UNITED STATES OF AMERICA

21

## DECLARATION OF DAN G. BOYLE

I, Dan G. Boyle, hereby declare and state as follows:

I have personal knowledge of the following facts and, if called as a witness, would testify thereto under oath.

1.    I am an Assistant United States Attorney in the Central District of California. In my capacity as an Assistant United States Attorney, I am counsel for the government in this consolidated action, entitled U.S. vs. $1,546,076.35 In Bank Funds Seized from Republic Bank of Arizona Account 1889 et al; No. CV 18-8420-RGK.

2.    On September 3, 2020, I notified counsel for all claimants, as well as *pro se* claimants, of the government's intent to move to strike certain claims in this consolidated action, and attached a spreadsheet identifying all claims the government intended to move to strike.

3.    On September 15, 2020, I met and conferred telephonically with counsel for claimants Larkin, Lacey, Brunst, Medalist Holdings, Leeward Holdings, Camarillo Holdings, Vermillion Holdings, Cereus Properties, Shearwater Investments, and Broadway Capital regarding the motion to strike. During that call, I identified the basis for the government's intended motion to strike, including by providing citations to a leading asset forfeiture treatise.

4.    Attached as Appendix A-1 is a true a correct copy of claims filed by claimants Michael Lacey and Jill Anderson in Case No. 2:18-cv-08565-RGK, subsequently consolidated into this action.

5.    Attached as Appendix A-2 is a true a correct copy of claims filed by claimants Michael Lacey, James Larkin, Ramon Larkin, Troy Larkin, Scott Spear, and Jed Brunst in Case No. 2:18-cv-08566-RGK, subsequently consolidated into this action.

6.    Attached as Appendix A-3 is a true a correct copy of claims filed by Michael Lacey, Jill Anderson, and John Becker, acting as trustee of the MGL Two Year Retained Annuity Trust Dated 21 November 2014, in Case No. 2:18-cv-08579-RGK, subsequently consolidated into this action.

7.    Attached as Appendix A-4 is a true a correct list of claims filed by claimants Michael Lacey, James Larkin, Ramon Larkin, Troy Larkin, Scott Spear, Jed Brunst, Medalist Holdings, Leeward Holdings, Camarillo Holdings, Vermillion Holdings, Cereus Properties, Shearwater Investments, and Broadway Capital in the following cases:

a) Case No. 18-cv-8420-RGK

b) Case No. 18-cv-8569-RGK

c) Case No. 18-cv-8570-RGK

d) Case No. 18-cv-8577-RGK

e) Case No. 18-cv-8578-RGK

f) Case No. 18-cv-8588-RGK

g) Case No. 18-cv-8592-RGK

h) Case No. 18-cv-8747-RGK

i) Case No. 18-cv-8748-RGK

j) Case No. 18-cv-8749-RGK

k) Case No. 18-cv-8750-RGK

l) Case No. 18-cv-8753-RGK

m) Case No. 18-cv-8754-RGK

23

n) Case No. 19-cv-7039-RGK

o) Case No. 19-cv-7044-RGK

p) Case No. 19-cv-7048-RGK

8.    Claimant Natasha Spear filed claims in Case No. 2:18-cv-08423-RGK, subsequently consolidated into this action. A true and correct copy of claims filed by Natasha Spear are attached as Appendix A-5. While Ellona Spear appeared in that action through counsel, identified as a "claimant," Ellona Spear does not appear to have filed any claims to any specific assets, although she is identified as an owner/possessor of certain assets in claims filed by Scott Spear and Natasha Spear. See Appendix A-5, at 2.

9.    On or about February 12, 2020, the government served special interrogatories on Natasha Spear and Ellona Spear. A true and correct copy of the special interrogatories served on Natasha Spear are attached as Exhibit 1. To date, the government has received no response to these interrogatories.

10.   On August 18, 2020, I contacted counsel for Natasha Spear and Ellona Spear by email, copying Bruce Feder, counsel for claimant Scott Spear, requesting the status of their interrogatory responses, but received no response.

11.   On August 24, 2020, I contacted counsel for Natasha Spear and Ellona Spear by email a second time, again copying Mr. Feder, again requesting the status on their interrogatory responses. On that same day, I received a response from John Rubiner, counsel for Natasha Spear and Ellona Spear, stating that he would look into the matter. I received no further updates.

12.    On September 4, 2020, I contacted counsel for Natasha Spear and Ellona Spear by email a third time, again copying Mr. Feder, again requesting the status on their interrogatory responses and notifying counsel that the government would move to strike absent a response, but received no response.

13.    On September 16, 2020, I contacted counsel for Natasha Spear and Ellona Spear by email a fourth time, again copying Mr. Feder, again requesting the status on their interrogatory responses and notifying counsel that the government would move to strike absent a response, but as of the date of this filing, have received no response.

14.    On September 18, 2020 I viewed the webpage for the law firm of Becker & House, PLLC, which included a biographical page for partner John R. Becker, Esq., which is available at https://www.beckerandhouse.com/team/john-r-becker-esq/. I have corresponded with other lawyers at Becker & House, including Amanda Barney, Esq., and Andrea Burnett O'Neill, Esq., on behalf of Mr. Becker in this action, including in e-mail communications on August 18, 2020 and August 19, 2020.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on September 21, 2020 in Los Angeles, California.

_____/s/_____
DAN G. BOYLE

25