Paul J. Cambria, Jr. (CA 177957)
pcambria@lglaw.com
LIPSITZ GREEN SCIME CAMBRIA LLP
42 Delaware Avenue, Suite 120
Buffalo, New York 14202
Telephone: (716) 849-1333
Facsimile:  (716) 855-1580

*Attorneys for Claimant*

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA-WESTERN DIVISION

| | |
|---|---|
| United States of America,<br><br>                              Plaintiff,<br><br>vs.<br><br>$1,546,076.35 In Bank Funds Seized<br>From Republic Bank of Arizona Account<br>'1889, *et al.*,<br>                              Defendants. | Case No. 2:18-cv-08420-RGK (PJW)<br><br>**MICHAEL LACEY'S OPPOSITION TO THE GOVERNMENT'S MOTION TO STRIKE (Doc. 148)** |

Claimant Michael Lacey submits the instant opposition to the government's Motion to Strike ("Motion"). (*See* Doc. 148.)  The Motion seeks an order striking claims to two assets personal to Mr. Lacey (the so-called Binghamton Assets and Money Gram Assets)[1] as well as assets to which multiple claimants have filed claims on the basis that the claimants lack standing to assert claims to the seized assets at issue.  This opposition addresses the Motion as it concerns the two assets personal to Mr. Lacey.  Mr. Lacey's opposition to the Motion concerning the other assets will be addressed in a separate opposition filed jointly by all claimants with interests in those assets.

---

[1]      For ease of reference, this memorandum adopts the designations for these assets as set forth in the Motion.

**ARGUMENT**

**I.   Mr. Lacey need only assert a colorable claim to an asset to demonstrate his standing at the outset of this forfeiture action.**

"To satisfy constitutional standing requirements[2] under Article III, a claimant contesting the government's civil forfeiture action must show sufficient interest in the property to create a case or controversy." *United States v. JP Morgan Chase Bank Account No. Ending 8215 in Name of Ladislao v. Samaniego, VL: $446,377.36*, 835 F.3d 1159, 1164 (9th Cir. 2016) (citations and quotations omitted). "This burden is not a heavy one, at least at the initial stages of a forfeiture suit." *United States v. Real Property Located at 475 Martin Lane*, 545 F.3d 1134, 1140 (9th Cir. 2008); *accord United States v. One-Sixth Share of James J. Bulger In All Present And Future Proceeds Of Mass Millions Lottery Ticket No. M246233*, 326 F.3d 36, 41 (1st Cir. 2003) ("At the initial stage of intervention, the requirements for a claimant to demonstrate constitutional standing are very forgiving. In general, any colorable claim on the defendant property suffices."); *United States v. Premises Known as 7725 Unity Ave. N.*, 294 F.3d 954, 957 (8th Cir. 2002) ("To have standing, a claimant need not prove the underlying merits of the claim. The claimant need only show a colorable interest in the property, redressable, at least in part, by a return of the property."). Indeed, at this stage, "[a] claimant need demonstrate only a colorable interest in the property, for example, by showing actual possession, control, title, or financial stake." *475 Martin Lane*, 545 F.3d at 1140.

**II.   Mr. Lacey has standing to assert a claim to the Binghamton Assets.**

Mr. Lacey has standing to assert a claim to the Binghamton Assets. The government contends that Mr. Lacey's claim to the Binghamton Assets should be struck because, as settlor of the irrevocable trust that created and funded the Binghamton

---

[2]      As the government notes in its Motion, statutory standing turns on adherence to the requirements of Supplemental Rule G(5). (Mot. at 7.) The government does not contend that Mr. Lacey failed to comply with Supplemental Rule G(5) with respect to the claims identified in the Appendix to its Motion, so only Constitutional standing is at issue.

MICHAEL LACEY'S OPPOSITION TO
THE GOVERNMENT'S MOTION TO STRIKE

Assets, he has no interest in the Binghamton Assets. (*See* Mot. at 8-11.) To the extent that this Court embraces the government's claim, this Court should nonetheless grant leave to amend because Mr. Lacey's proposed amended claim states a legal interest in the Binghamton Assets. (*See* Proposed Amended Claim, Ex. A at 2.)

Under Rule 15(a), courts "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2); *Bowles v. Reade*, 198 F.3d 752, 757 (9th Cir. 1999) (recognizing that Rule 15(a) embodies a "strong policy permitting amendment"). "This policy is to be applied with extreme liberality." *Eminence Capital LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (quotations omitted). "Liberality in granting a plaintiff leave to amend is subject to the qualification that the amendment not cause undue prejudice to the defendant, is not sought in bad faith, and is not futile." *Bowles*, 198 F.3d at 757. Additionally, courts may consider undue delay, but that factor "by itself . . . is insufficient to justify denying a motion to amend." *Id.* at 758. Courts should apply the policy of "extreme liberality" upon consideration of requests for leave to amend claims in forfeiture actions. *See United States v. $11,500 in U.S. Currency*, 710 F.3d 1006, 1012-13 (9th Cir. 2013) (explaining that the "extreme liberality" in granting leave under Rule 15(a) "should apply" to claims in forfeiture actions).

This Court should grant Mr. Lacey leave to amend his claim to the Binghamton Assets. Notwithstanding the time that has lapsed since this action was commenced, this case is in its preliminary stages with two motions to dismiss pending. (*See* Docs. 111, 112.) There has been no discovery (other than the government's service of Rule G Special Interrogatories on standing and the claimants' responses). Because no discovery has occurred and the initial scheduling conference has not occurred, the filing of an amended claim will not prejudice the government or alter the schedule in this case. This factor, alone, justifies granting leave to amend. *See Eminence Capital*, 316 F.3d at 1052 ("Absent prejudice . . . there exists a *presumption* under Rule 15(a) in favor of granting leave to amend.").

MICHAEL LACEY'S OPPOSITION TO
THE GOVERNMENT'S MOTION TO STRIKE

Moreover, Mr. Lacey should be granted leave as a matter of fairness.  This Court granted the government's prior motion to amend (*see* Doc. 106), which enabled the government to file an amended consolidated complaint on June 1, 2020 (*see* Doc. 108), nearly two years after this action was commenced (*see* Doc. 1 (Compl.), filed Sept. 28, 2018)), and nearly six months after the consolidated complaint was filed (*see* Doc. 66).

Further, there is no bad faith or undue delay by Mr. Lacey.  In its Motion to Strike, the government identified – for the first time – what it believed to be problems with claims as to certain assets, notwithstanding the fact that these claims were filed as early as May 2019.  (*See, e.g.,* Doc. 31.)  Mr. Lacey requests leave to amend at this time as he only recently learned about the basis of the government's Motion to Strike.

Finally, amendment would not be futile as the proposed amended claim demonstrates that Mr. Lacey has a legal interest in the Binghamton Assets.  In the proposed amended claim, Mr. Lacey elaborated upon his interest in the Binghamton Assets, stating that:

> Claimant is the United States owner of the Binghamton Trust pursuant to the United States Internal Revenue Service. The Defendant Asset is taxed to Claimant as the settlor of a foreign trust pursuant to Section 679 of the Internal Revenue Code because (1) there is a direct transfer to the trust; (2) the transferor is a U.S. person; (3) the trust is a foreign trust, and (4) the foreign trust has one or more U.S. beneficiaries.  Official documents and records confirming this legal interest, including tax returns and the trust documents, were produced to the government as part of Claimant's Rule 16 Reciprocal Disclosures in the underlying criminal case pending in the District of Arizona (*United States v. Lacey*, 18-CR-422-PHX-DLR) on or about March 4, 2019.

(Proposed Amended Claim, Ex. A at 2.)  Indeed, the government, as recipient of his annual tax filings pertaining to the Binghamton Assets, has been on notice of this theory

of standing at least since his first tax filing and certainly since March 4, 2019 when Mr. Lacey disclosed the filings to the government attorneys involved with litigating this case and the underlying criminal case pending in the District of Arizona.

Under these circumstances, Mr. Lacey has demonstrated a legal interest in the Binghamton Assets – recognized by the government itself under federal law – and this Court should grant leave to amend. *See $11,500 in U.S. Currency*, 710 F.3d at 1012-13 (concluding that the denial of leave to amend claim was an abuse of discretion because the claimant did not learn about the purported insufficiency of his claim until the government moved to strike, at which point, leave to amend should have been freely given); *see also Bowles*, 198 F.3d at 759 ("Because the amendment would not have been futile, and the district court made no findings of prejudice or bad faith, we hold that the district court abused its discretion in denying the motion for leave to amend.").

## II.    Mr. Lacey has standing to assert a claim to the Money Gram Assets.

Mr. Lacey has standing to assert a claim to the Money Gram Assets. The government contends that he lacks standing because he is nothing more than an unsecured creditor to the funds, which were seized from Money Gram in transit, and that unsecured creditors have no standing. This contention lacks merit.

Mr. Lacey is, and at all relevant times, has remained, the owner of the Money Gram Assets. An ownership interest is more than sufficient to establish standing sufficient to mandate the denial of a motion to dismiss for lack of standing. In this case, as the government notes, Mr. Lacey's funds were held in an attorney escrow account at MidFirst Bank in the name of J.B. (attorney John Becker) for the benefit of Mr. Lacey. (Mot. at 3.) At Mr. Lacey's request, the funds were to be transferred to another of Mr. Lacey's accounts, through Money Gram. (Mot. at 15.) Thus, accounts held in Mr. Lacey's name and for his benefit were both the originator and the designated recipient of the funds at issue. His ownership of the funds never ceased.

The government's cases, which purportedly stand for the blanket proposition that unsecured creditors lack standing to assert claims to funds seized in transit, are readily distinguishable.  First, in each of those cases, there was an attempt by a party to transfer funds internationally to a third party through a transmitter service.  The courts ruled that, while in transit, the funds do not yet belong to the third party, which means that the third-party was a general creditor for the amount of funds the sender attempted to send, and as such, lacked standing.  The sender, who had ceded control of the funds by entrusting the funds to the transmitter to transfer to the third party, had no standing.  *See United States v. BCCI Holdings (Luxumbourg) S.A.*, 977 F. Supp. 20, 24-25 (D.D.C. 1997) (indicating that the originator intended to transfer funds through the transmitter to a third party); *United States v. All Funds on Deposit on or Before Nov. 8, 1994 in Citibank Account No. 42773634 in the Name Imtiaz Ahmed Kahn*, 955 F. Supp. 23, ___ (E.D.N.Y. 1997) ("Claimants all allege or seek to allege that portions of the funds in the seized accounts are funds they deposited with Mr. Kahn for the legitimate purpose of sending money to relatives and other individuals in Pakistan."); *United States v. Ribadeneira*, 105 F.3d 833, 834 (2d Cir. 1997) (describing claimants as businesses based in Quito, Ecuador, which occasionally converted Ecuadorian sucres into U.S. dollars by purchasing checks drawn on [the transmitter's] accounts in the United States").

In stark contrast, here, there are no third parties involved.  Mr. Lacey cannot be a general creditor of himself.  Mr. Lacey's ownership of the funds never ceased, which establishes his interest for purposes of standing.  Indeed, "a simple claim of *ownership* will be sufficient to create standing to challenge a forfeiture."  *United States v. $191,910.00 in U.S. Currency*, 16 F.3d 1051, 1058 (9th Cir. 1994) (concluding that the claimant established standing on the basis of an ownership interest in seized funds when the claimant alleged "that some of the money belonged to him and that the rest belonged to a client in San Diego") (emphasis in original); superseded by statute on other grounds as stated in *United States v. $80,180.00 in U.S. Currency*, 303 F.3d 1182,

MICHAEL LACEY'S OPPOSITION TO
THE GOVERNMENT'S MOTION TO STRIKE

1184 (9th Cir. 2002); *see also United States v. Cambio Exacto*, 166 F.3d 522, 526 (2d Cir. 1999) (recognizing that "an owner of property seized in a forfeiture action will normally have standing to challenge the forfeiture"). Further, because the economic harm that he suffered from the government's seizure of the funds would be redressed "by a successful challenge to the forfeiture[,] . . . Article III does not require more." *Cambio Exacto*, 166 F.3d at 528.

The differences between the government's cases and this case do not end here. The government's cases involved criminal forfeiture, whereas this is a civil case. More importantly, the government's cases involved the forfeiture of all of the assets of a transmitter on the basis that the transmitter (or the owners of the transmitter) operated an unlawful criminal enterprise. *See BCCI*, 977 F. Supp. at 21-22 (noting that BCCI was charged with conspiracy, wire fraud, and racketeering, that BCCI pleaded guilty, and as part of its plea, agreed to forfeit all assets); *All Funds*, 955 F. Supp. at 25 (indicating that owner of transmitter was indicted for using his unlicensed money transmitter service to launder the proceeds of international heroin sales, pleaded guilty, and agreed to forfeit all of the transmitter's assets); *Ribadeneira*, 105 F.3d at 834 (explaining that transmitter was owned by two individuals who used it to launder $30 million for which they pleaded guilty and agreed to forfeit the transmitter's assets). The Ninth Circuit has explained that the blanket rule advocated by the government that general creditors lack standing should be restricted to claims where all of the assets of the transmitter as a failed institution have been seized rather than specific claims to specific funds. *See United States v. $4,224.958.57*, 392 F.3d 1002, 1005 (9th Cir. 2004) (distinguishing between the standing needed to assert claims to the assets of a failed bank versus the standing needed to assert a claim to specific funds of a bank). Here, the transmitter – Money Gram – is not accused of any wrong doing and the only reason the funds at issue were seized from Money Gram is because Mr. Lacey had an ownership interest in them and was in the process of transferring them from himself to himself.

MICHAEL LACEY'S OPPOSITION TO
THE GOVERNMENT'S MOTION TO STRIKE

In sum, the government's argument that the legal, title owner of property lacks standing to assert a claim to that property is contrary to the law and the undisputed facts.  Accordingly, there is no basis to strike Mr. Lacey's claim to the Money Gram Assets.  The government's motion to strike on this ground must be denied as well.

## CONCLUSION

For all these reasons, this Court should deny the Motion.  However, to the extent that this Court grants the Motion as it concerns the Binghamton and Money Gram Assets, Mr. Lacey respectfully requests leave to amend.


Dated: October 9, 2020                    Respectfully submitted,


                                          _s/ Paul J. Cambria, Jr._
                                          Paul J. Cambria, Jr.
                                          Lipsitz, Green, Scime, Cambria, LLP
                                          Attorneys for Michael Lacey

## CERTIFICATE OF SERVICE

I hereby certify that on October 9, 2020, I filed the foregoing with the United States District Court for the Central District of California using the CM/ECF system.

I hereby certify that on October 9, 2020, a copy of the foregoing was also delivered to the following via CM/ECF:


DANIEL BOYLE
U.S. Attorney's Office
Asset Forfeiture Section
312 North Spring Street
Lost Angeles, California 90012




_s/ Kristina Drewery_
Kristina Drewery