1  Thomas H. Bienert, Jr. – State Bar No. 135311
2      tbienert@bienertkatzman.com
   Whitney Z. Bernstein – State Bar No. 304917
3      wbernstein@bienertkatzman.com
   BIENERT | KATZMAN PC
4  903 Calle Amanacer, Suite 350
5  San Clemente, CA  92673
   Telephone: (949) 369-3700
6  Facsimile: (949) 369-3701
7  *Attorneys for James Larkin*

8  *[Additional counsel listed on next two pages]*

9

10

11              **UNITED STATES DISTRICT COURT**

12      **CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

13

| | |
|---|---|
| 14  UNITED STATES OF AMERICA, | CASE NO. 2:18-cv-8420-RGK-PJWx |
| 15              Plaintiff, | **CLAIMANTS' OPPOSITION TO** |
| 16       vs. | **MOTION TO STRIKE CLAIMS** **[DKT. 148]** |
| 17 | |
| 18  $1,546,076.35 IN BANK FUNDS | Date:    November 2, 2020 |
| 19  SEIZED FROM REPUBLIC BANK OF ARIZONA ACCOUNT '1889, et al., | Time:    9:00 A.M. Crtrm.:  850 |
| 20 | |
| 21              Defendants. | Assigned to Hon. R. Gary Klausner |

22

23

24

25

26

27

28

Gary S. Lincenberg – State Bar No. 123058
  glincenberg@birdmarella.com
Ariel A. Neuman – State Bar No. 241594
  aneuman@birdmarella.com
Gopi K. Panchapakesan – State Bar No. 279586
  gpanchapakesan@birdmarella.com
BIRD, MARELLA, BOXER, WOLPERT,
NESSIM, DROOKS, LINCENBERG &
RHOW, P.C.
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile: (310) 201-2110
*Attorneys for John Brunst*


Paul J. Cambria, Jr. – State Bar No. 177957
  pcambria@lglaw.com
LIPSITZ GREEN SCIME CAMBRIA LLP
42 Delaware Avenue, Suite #120
Buffalo, NY 14202
Telephone: (716) 849-1333
Facsimile: (716) 855-1580
*Attorneys for Michael Lacey*


John K. Rubiner – State Bar No. 155208
  jrubiner@fmglaw.com
FREEMAN, MATHIS & GARY LLP
550 S. Hope Street, Suite 2200
Los Angeles, CA 90071
Telephone: (213) 615-7000


Bruce Feder *(admitted pro hac vice)*
  bf@federlawpa.com
FEDER LAW OFFICE, P.A.
2930 E. Camelback Road, Suite 160
Phoenix, AZ 85016
Telephone: (602) 257-0135
Facsimile: (602) 954-8737


*Attorneys for Scott Spear*

David W. Wiechert – State Bar No. 94607
    dwiechert@aol.com
WIECHERT, MUNK & GOLDSTEIN, PC
27136 Paseo Espada, Suite B1123
San Juan Capistrano, CA 92675
Telephone: (949) 361-2822

Daniel J. Quigley *(admitted pro hac vice)*
    quigley@djqplc.com
DANIEL J. QUIGLEY, PLC
5425 E. Broadway Blvd., Suite 352
Tucson, Arizona 85711
Telephone: (520) 867-4450

*Attorneys for Attorneys for Medalist*
*Holdings, Inc., Leeward Holdings, LLC,*
*Camarillo Holdings, LLC, Vermillion*
*Holdings, LLC, Cereus Properties, LLC,*
*Shearwater Investments, LLC, and*
*Broadway Capital Corp., LLC*

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.    INTRODUCTION ................................................................................................ 1

II.    ARGUMENT ...................................................................................................... 2

      A.    Claimants Needs Only Make Colorable Lien Claims to Demonstrate Their Standing at the Outset of This Forfeiture Proceeding ................................................................................................ 2

      B.    Claimants' Claims Need Not be "Unequivocal" ................................ 3

      C.    Factual Assertions Made "on Information and Belief" Do Not Render Claimants' laims to the Liended Assets Deficient ................ 4

      D.    Claimants' Claims Are Not Conclusory and Are More Than Colorable. ............................................................................................ 6

            1. The Claims Don Not Stand Alone, But Must Be Read In the Context of the Government's Allegations in Its Complaint ......................... 6

            2. Key Statements in the Claims are Unqualified and Beyond Conclusory ……...……………………………………………………8

            3. Claimants' Advancement and Indemnification Claims are Clear ……..10

      E.    If Claimants' Claims are Deficient in any Regard, the Court Should Grant Leave to Amend .................................................................. 11

      F.    The Court Need Not Delay Ruling on the Motions to Dismiss the Government's Complaint With Respect to the Assets That Are Not the Subject of the Motion to Strike ................................................ 12

III.    CONCLUSION ................................................................................................ 13

**Table of Authorities**

Page(s)

<u>Cases</u>

*Bowles v. Reade*,
   198 F.3d 752 (9th Cir. 1999) ..................................................................11

*Eminence Capital LLC v. Aspeon, Inc.*,
   316 F.3d 1048 (9th Cir. 2003) ...............................................................12

*Enterprise Bank v. Saettelle*,
   21 F.3d 233 (9th Cir. 1994) ...................................................................13

*Johnson v. Manhattan Ry.*,
   289 U.S. 479 (1933)................................................................................13

*Mercado v. U.S. Customs Serv.*,
   No. 85 CV 3758, 1988 WL 28094 (E.D.N.Y. Mar. 22, 1988)..................5

*Mercado v. U.S. Customs Service*,
   873 F.2d 641(2d Cir. 1989) .....................................................................4

*Toyo Tire & Rubber Co., Ltd v. Wheel Grp. Holdings, LLC*,
   2016 WL 11525318 (C.D. Cal. Oct. 26, 2016) .....................................13

*U.S. v. Real Property Located at 17 Coon Creek Road*,
   787 F.3d 968 (9th Cir. 2015) ...................................................................7

*United States v. $11,500 in U.S. Currency*,
   710 F.3d 1006 (9th Cir. 2013) ...............................................................12

*United States v. $133,420.00 in U.S. Currency*,
   672 F.3d 629 (9th Cir. 2012) ..............................................................3, 4

*United States v. Daugerdas*,
   No. 09-CR-581, 2020 WL 364601 (S.D.N.Y Jan. 22, 2020).....5, 6, 10, 11

*United States v. JP Morgan Chase Bank Account No. Ending 8215 in Name of*
   *Ladislao V. Samaniego, VL: $446,377.36,*
   835 F.3d 1159 (9th Cir. 2016) ................................................................3

ii

*United States v. One-Sixth Share Of James J. Bulger In All Present And Future*

  *Proceeds Of Mass Millions Lottery Ticket No. M246233,*

326 F.3d 36 (1st Cir. 2003)...............................................................................3

*United States v. Premises Known as 7725 Unity Ave. N.,*

294 F.3d 954 (8th Cir. 2002) ..........................................................................3

Rules

Fed. R. Civ. P. 15(a)(2).................................................................................11

Rule 15(a) ..............................................................................................11, 12

## I.   INTRODUCTION

Claimants Michael Lacey, James Larkin, Scott Spear, Jed Brunst, Medalist Holdings, Inc., Leeward Holdings, LLC, Camarillo Holdings, LLC, Vermillion Holdings, LLC, Cereus Properties, LLC, Shearwater Investments, LLC, and Broadway Capital Corp., LLC (collectively, "Claimants") hereby jointly respond to the government's Motion to Strike Claims Pursuant to Rule G(8)(c) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions (Dkt. 148) (the "Motion") with respect to the purported grounds for striking their claims asserted in Section III(E) of the Motion.  Claimant Lacey has separately responded to the Motion (Dkt. 152) with respect respond to the grounds asserted for striking his claims in Sections III(B) and III(D) of the Motion.  Sections III(F) and III(G) of the Motion do not apply to Claimants.[1]

In Section III(E) of the Motion, the government seeks to strike numerous claims filed by Claimants asserting lien rights in assets seized from Backpage.com, LLC and its affiliates.  Claimants filed their claims to these defendant assets commencing in May 2019 and, for more than a year thereafter, the government *said nothing* suggesting those claims were insufficient or that the government needed more information to determine whether Claimants had standing to assert their claims.  Only after Claimants moved to dismiss the government's consolidated complaint, when questioning standing would create delay, did the government first suggest a purported issue with standing.

Moreover, the government served interrogatories, purportedly aimed at investigating Claimants' standing, and Claimants fully responded to that written discovery.  Indeed, the govenrment has raised no issues regarding the sufficiency of thos responses.  Yet, the government's Motion ignores Claimants' sworn discovery responses, and the verified facts set out in those responses, facts that would establish standing even

---

[1]  The shareholder Claimants have elected not to contest the government's motion to strike their individual claims to the corporate bank accounts in Case 18-cv-08566-RGK. Those claims were addressed by the government in Section III(C) of the Motion.

1  in connection with a motion for summary judgment.  That the government has chosen
2  to ignore those responses demonstrates that its motion is just an exercise in
3  gamesmanship, and another attempt at furthe delaying these proceedings.

4  The claims addressed in Section III(E) of the Motion, and identified in in
5  Appendix A-4 to the Motion, are claims premised on liens on the assets of
6  Backpage.com, LLC and its affiliates (the "Liened Assets") that secure the balance of the
7  purchase price for the sale of the website by certain of the Claimants and also secure
8  related contractual obligations, including obligations for advancement and indemnity for
9  legal expenses owed to Claimants.  Claimants plainly have established standing to assert
10 claims as to those assets.

11 The government contends it cannot assess whether Claimants' claims are baseless
12 or fraudulent because some of the factual assertions in those claims were made "on
13 information and belief," which it argues renders the claims deficient.  The government
14 is flat-wrong, as the claims provide ample detail as to the bases for Claimants' allegations.
15 The claims readily clear the low bar required to establish constitutional standing and the
16 allegations in the claims that are qualified by "information and belief" do not impair the
17 validity of the claims or Claimants' constitutional standing.

18 **II.   ARGUMENT**

19 **A.   Claimants Need Only Make Colorable Lien Claims to Demonstrate**
20 **Their Standing at the Outset of This Forfeiture Proceeding.**

21 "To satisfy constitutional standing requirements under Article III,[2] a claimant
22 contesting the government's civil forfeiture action must show 'sufficient interest in the
23 property to create a case or controversy.'  This showing need only constitute 'a colorable
24 interest' in the seized funds, generally through the demonstration of an ownership or

25 _____

26 [2]  As the government notes in its Motion (at 7), statutory standing turns on adherence to
   the requirements of Supplemental Rule G(5).  The government does not contend that
27 Claimants failed to comply with Supplemental Rule G(5) with respect to the claims
   identified in Appendix A-4 to its Motion, so only constitutional standing is at issue for
28 those claims.

possessory interest in the property." *United States v. JP Morgan Chase Bank Account No. Ending 8215 in Name of Ladislao V. Samaniego, VL: $446,377.36*, 835 F.3d 1159, 1164 (9th Cir. 2016) (internal citations omitted). "At the initial stage of intervention, the requirements for a claimant to demonstrate constitutional standing are very forgiving. In general, any colorable claim on the defendant property suffices." *United States v. One-Sixth Share Of James J. Bulger In All Present And Future Proceeds Of Mass Millions Lottery Ticket No. M246233*, 326 F.3d 36, 41 (1st Cir. 2003); *accord United States v. Premises Known as 7725 Unity Ave. N.*, 294 F.3d 954, 957 (8th Cir. 2002) ("To have standing, a claimant need not prove the underlying merits of the claim. The claimant need only show a colorable interest in the property, redressable, at least in part, by a return of the property."). A colorable lien claim is an interest in property giving Claimants standing to contest these forfeitures. *One-Sixth Share Of James J. Bulger*, 326 F.3d at 41 ("Normally, a lien against the defendant property would establish standing."); *see also 7725 Unity Ave. N.*, 294 F.3d at 957 (rejecting the government's claim that a lienholder lacked standing).

## B.     Claimants' Claims Need Not be "Unequivocal."

The government argues Claimants' claims are deficient because "a claimant's assertion of ownership must be 'unequivocal'" (Motion at 16), but the Ninth Circuit decision to which the government cites held no such thing. *United States v. $133,420.00 in U.S. Currency*, 672 F.3d 629, 638 (9th Cir. 2012). In *$133,420.00 in U.S. Currency*, the Ninth Circuit held that: "[a]t the motion to dismiss stage, a claimant's unequivocal assertion of an ownership interest in the property is sufficient *by itself* to establish standing." *Id.* (emphasis added). In contrast, the Ninth Circuit further held that, at the summary judgment stage (not the posture of this case), "a claimant's *bare assertion* of an ownership or possessory interest, in the absence of some other evidence, is not enough to survive a motion for summary judgment," as "a conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact." *Id.* In other words, at the motion to dismiss stage, a conclusory, but unequivocal, assertion of ownership or another interest in property suffices to establish

standing, but the same unequivocal, conclusory statement is insufficient on summary judgment, because "a claimant must also present 'some evidence of ownership' beyond the mere assertion in order to survive a motion for summary judgment." *Id.* at 639.  As such, contrary to the government's position, the Ninth Circuit held only that a *conclusory*, but "unequivocal," claim is *sufficient* at the motion to dismiss stage (which is the current stage of this litigation); it did not hold that an unequivocal claim was *necessary*, particularly where, as here, the claims are not conclusory.  In any event, Claimants' claims to the Liened Assets do just what the Ninth Circuit has said is required and more, as they set forth "factual allegations regarding how the claimant came to possess the property, the nature of the claimant's relationship to the property, and/or the story behind the claimant's control of the property." *Id.* at 638.

### C.   Factual Assertions Made "on Information and Belief" Do Not Render Claimants' Claims to the Liened Assets Deficient.

The government cites ***no authority*** holding that an "information and belief" qualifier in a claim, by itself, renders the claim deficient—and Claimants are aware of no cases so holding.  The government cites the Second Circuit's decision in *Mercado* to support its argument, but the claim at issue in *Mercado* was based solely on the claimant's mere *unexplained possession* of a pile of currency *and* the claim was a hearsay claim made by the claimant's lawyer (not by someone with personal knowledge).  *Mercado v. U.S. Customs Service*, 873 F.2d 641 (2d Cir. 1989).[3]  The Second Circuit mentioned the "information and belief" language as an adjunct to its characterization of the claim as hearsay, but the district court's decision could not be more clear that the claim failed because of hearsay and other deficiencies, not because of an "information and belief" qualifier:

An affidavit of counsel that does not state that the attorney is duly

---

[3]  *See $133,420.00 in U.S. Currency*, 672 F.3d at 638 ("If the claimant [] asserts a possessory interest at the motion to dismiss stage, the claimant must offer some 'factual allegations regarding how the claimant came to possess the property, the nature of the claimant's relationship to the property, and/or the story behind the claimant's control of the property.  Mere *unexplained possession* will not be sufficient.'") (emphasis in original).

authorized and that merely states that the 'claimant' is the owner or possessor of the currency does not fulfill the requirements of the rule. Such an affidavit is mere hearsay. Mercado fails to satisfy the requirements necessary to become a claimant. He did not personally verify the claim. Instead, he relied on a claim verified by counsel that does not adequately state the basis of Mercado's interest.

*Mercado v. U.S. Customs Serv.*, No. 85 CV 3758, 1988 WL 28094, at *3 (E.D.N.Y. Mar. 22, 1988).[4]

Moreover, the Southern District of New York recently rejected the exact argument the government makes here, albeit in a slightly different procedural context. *United States v. Daugerdas*, No. 09-CR-581, 2020 WL 364601 (S.D.N.Y Jan. 22, 2020). In *Daugerdas*, the government moved to dismiss a petition to amend a preliminary order of forfeiture to assert a commingling claim, arguing that the petition was deficient because its "allegations [were] pled almost entirely on 'information and belief.'" *Id.* at *3. The district court denied the government's motion, despite agreeing that all the key allegations were premised on "information and belief," coupled with a handful of legal conclusions, saying:

When a plaintiff sets out allegations on information and belief, he is representing that he has a good-faith reason for believing what he is saying, but acknowledging that his allegations are based on secondhand information that [he] believes to be true. Prefacing allegations with this

---

[4] Unlike the claim in *Mercado*, the claims filed by the entities expressly state that Mr. Quigley was an agent for the entities "authorized to sign these Verified Claims and Statements of Interest for Claimants." *See*, *e.g.*, Motion at 17, n. 8; Dkt. 148-2 at "APPENDIX_A_072." Moreover, those claims are not hearsay, as Mr. Quigley's verification makes clear: "I have read the foregoing Verified Claims and Statements of Interest and its contents are true and correct *to the best of my own knowledge*, except for matters stated on information and belief, which I believe to be true." *Id.* The government cites no authority to suggest that an attorney who is authorized to submit claims and who has personal knowledge relating to the claims cannot verify claims.

1    standard pleading qualification does not eviscerate the sufficiency of a

2    complaint, and this Court is aware of no such case where a complaint [was

3    dismissed] for overuse of qualifiers[.]   The *Twombly* plausibility standard,

4    which applies to all civil actions, does not prevent a plaintiff from pleading

5    facts alleged upon information and belief in certain circumstances, including

6    where: (1) the facts are peculiarly within the possession and control of the

7    [opposing party] or (2) the belief is based on factual information that makes

8    the inference of culpability plausible.

9    *Id.* (internal citations and quotation marks omitted; alterations in original).   As discussed

10   further below, 1) key portions of the claims are not asserted on information and belief,

11   2) the claims are supported by facts that make Claimants' claims colorable, and 3) some

12   of the "information and belief" qualifiers were prompted by facts known to the

13   government or others, but not to Claimants.

14   **D.   Claimants' Claims Are Not Conclusory and Are More Than**

15   **Colorable.**

16   **1.   The Claims Do Not Stand Alone, But Must Be Read In the**

17   **Context of the Government's Allegations in Its Complaint.**

18   The government's verified complaint seeks to forfeit scores of assets because they

19   purportedly derived from the operation of Backpage.com, LLC, which the government

20   characterized as having promoted criminal activity.   The government suggests that

21   Claimants' claims must be scrutinized, as Claimants might be strangers to Backpage.com,

22   LLC, seeking to advance fraudulent claims—but that claim is belied by even a cursory

23   examination of the government's complaint, which is premised on Claimants *not* being

24   strangers to Backpage.com, LLC.   Moreover, the complaint alleges that Claimants owned

25   the website, sold the website in 2015, and received millions of dollars of payments from

26   "Backpage revenue" after the sale:

27   "Backpage.com, LLC . . . was an internet-based company that allowed

28   customers to post on-line classified advertisements."   (Dkt. 108, ¶ 106.)

6

> "Lacey was a co-creator of Backpage.com.  Lacey . . . maintained significant control over the website during the relevant period described in this complaint.  Even after purportedly selling his interest in Backpage in 2015, Lacey continued to receive tens of millions of dollars in Backpage-related distributions." (*Id.*, ¶108.)  "Larkin was a co-creator of Backpage.com.  Larkin . . . maintained significant control over the website during the relevant period described in this complaint.  Even after purportedly selling his interest in Backpage in 2015, Lacey continued to receive tens of millions of dollars in Backpage-related distributions." (*Id.*, ¶108.). "Brunst was a minority owner of Backpage . . ." (*Id.*, ¶ 111.)  "Spear was a minority owner of Backpage . . ." (*Id.*, ¶ 112.)  "In fact, Lacey and Larkin retained significant control over Backpage, and both continued to receive millions of dollars of annual distributions of Backpage revenue after the purported sale."  (*Id.*, ¶ 122.)

The Court should not assess Claimants' claims to the Liened Assets in a vacuum, but in the context of the allegations in the government's *verified* complaint.  *C.f. U.S. v. Real Property Located at 17 Coon Creek Road*, 787 F.3d 968, 977-78 (9th Cir. 2015) (the dissent "overlooks that Pickle's unequivocal assertion of ownership in his verified claim echoes the government's own verified allegations, which likewise assert Pickle's ownership of the defendant property and additionally assert that Pickle resides on the property").  If the Court does not dismiss the complaint, Claimants ultimately will prove that the post-sale "distributions" alleged in the complaint were in fact payments on the secured loan arising from Claimants' 2015 sale of Backpage.com or payments constituting advancement or indemnification.  For now, however, it suffices to note that the allegations in Claimants' claims to the Liened Assets "echo" "the government's own verified allegations" in its complaint  and Claimants plainly are not the fraudulent interlopers the government suggests.

### 2.    Key Statements in the Claims are Unqualified and Beyond Conclusory.

The government wrongly asserts that Claimants' claims to the Liened Assets are bereft of substance when allegations qualified by "information and belief" are omitted, but a brief review of the two claims presented as exemplars (Dkt. 148, App. A-4) demonstrates just how wrong that assertion is.  For example, Mr. Lacey's claim says:[5]

> Claimant is a third-party beneficiary of a series of contracts entered into in April 2015 among the Medalist subsidiaries and: Atlantische Bedrijven C.V. ("ABC") and UGC Tech Group C.V. ("UGC") (collectively, "Borrowers"); numerous affiliates of Borrowers, including Backpage.com, LLC (collectively, "Pledgors"); and Carl A. Ferrer and other affiliates of Borrowers (collectively, "Guarantors"), as set forth in greater detail in the claim filed by Medalist and its subsidiaries.  Claimant has the right to advancement and indemnification from ABC and UGC under those agreements, which advancement and indemnification obligations are guaranteed by Pledgors and Guarantors.  Those obligations are secured by security interests in the assets of Pledgors (the "Collateral").  . . .  The security interests in the Collateral securing the obligations to Claimant is [sic] a legally recognizable interest in the Subject Funds, giving Claimant a superior  right, title, and interest in the Subject Funds over any and all interests asserted by the government in the Subject Funds.  Accordingly, Claimant has a superior right, title, and interest in the Subject Funds over any and all interest asserted by the government in such funds."

Those allegations were not conclusory,  nor were they made on information and belief.

Similarly, in the exemplar claim of the entity Claimants asserting their rights to payment under promissory notes and their right to advancement and indemnification,

---

[5]  Mr. Lacey's exemplar claim originally was filed in this case at Dkt. 57, relating to the defendant assets in Consolidated Case No. CV 19-9949.

secured by liens on the Liened Assets, the entity Claimants said:[6]

> The security agreements encumbering the Collateral also secure the obligations of ABC and UGC under purchase agreements and loan agreements executed on or about April 22, 2015, and the obligations of Pledgors, Carl A. Ferrer, Amstel River Holdings, LLC, Kickapoo River Investments LLC, Lupine Holdings LLC, CF Holdings GP LLC, and CF Acquisitions LLC under guarantees executed on or about April 22, 2015. Claimants have the right to advancement and indemnification from ABC and UGC under the purchase agreements and loan agreements, which advancement and indemnification obligations are guaranteed by Pledgors, Carl A. Ferrer, Amstel River Holdings, LLC, Kickapoo River Investments LLC, Lupine Holdings LLC, CF Holdings GP LLC, CF Acquisitions LLC and also secured by the security interests in the Collateral. . . . The security interests in the Collateral securing the obligations to Claimants are legally recognizable interests in the Defendant Assets, giving Claimants a superior right, title, and interest in the Defendant Assets over any and all interests asserted by the government in the Defendant Assets. The unpaid balance of the notes, and the sums owed for advancement and indemnification, secured by the security agreements greatly exceed the value of the Defendant Assets.

Those allegations also were not conclusory, nor were they made on information and belief.

Mr. Lacey and the entity Claimants did allege, on information and belief, that the particular defendant assets ("2.70447488 Bitcoin and Approximately 3.54986077 Bitcoin Cash Previously Held In Bitstamp Account Number 559092120831") were part of the collateral subject to the liens. But it hardly "defies logic" for Claimants to know they are

---

[6] The entity Claimants' exemplar claim originally was filed in this case at Dkt. 62, relating to the defendant assets in Consolidated Case No. CV 19-9949.

beneficiaries of a blanket lien securing obligations under the Backpage.com sale documents, while believing (without knowing for certain) that specific, individual assets seized by the government are encumbered by the liens—particularly where Claimants know nothing about many of these specific assets other than what the government has chosen to disclose in its complaint. *See Daugerdas*, 2020 WL 364601, at *4 (discussing the challenges for claimants asserting claims where the factual details are peculiarly within the possession and control of others, including the government).

The Court should not disregard allegations in the claims made on information and belief, but, even if it does so, the allegations in Claimants' claims to the Liened Assets that are not made on information and belief clear the low bar required to establish constitutional standing at this stage of the proceedings.

### 3.    Claimants' Advancement and Indemnification Claims are Clear.

The government suggests that Claimants' secured claims for advancement and indemnification are not sufficiently concrete, but are "nebulous" and do not provide a sufficient basis for standing. Motion at 17. That suggestion is wrong. Claimants don't have to prove the merits of their claims at this stage, simply that they have standing. The claims suffice for that purpose.

Moreover, the government's feigned ignorance of whether these claims provide standing stands in stark contrast to the government *stipulating* that Claimants were entitled to *substantive relief* on the same contractual basis in the Delaware Court of Chancery. The individuals' claims as to the Liened Assets and a portion of the entities' claims as to the Liened Assets claims are premised, in part, on their contractual right to the advancement of, and indemnification for, their massive legal defense costs. In 2018, Claimants commenced an action in the Delaware Court of Chancery seeking to enforce their rights to advancement against Backpage.com, LLC and its affiliates. Claimants' 83-page amended complaint in that Court set out in great detail the bases for their right to advancement and indemnification, identifying the specific contracts and the specific

contractual provisions entitling them to advancement and indemnification, quoting the pertinent language.[7]  (Dkt. 137, Bernstein Decl., Exh. F.).  The government moved to intervene in that litigation and the Chancery Court permitted the government to intervene as a defendant.  (Dkt. 137, Bernstein Decl., Exh. G.).  The government ultimately stipulated that Claimants were entitled to judgment in their favor establishing their right to advancement on numerous grounds, including under the exact same contracts at issue here.  *Id.*  The Chancery Court entered judgment in favor of Claimants, and against the United States, more than one year ago.  *Id.*  The government's stipulation to a final judgment establishing Claimants' rights to advancement belies its contention here that Claimants' claims, premised in part on those same advancement rights, might be fairly questioned, much less be "false" or "fictitious," and also belies its suggestion that Claimants don't have standing.  (Motion at 6.)

Moreover, it is not as though the government does not already possess the underlying loan documents demonstrating that Claimants have liens on the assets of Backpage.com, LLC and its affiliates securing the balance of the purchase price for Backage.com and their advancement and indemnification rights, as the government seized those documents in the course of its criminal investigation and has produced them in the course of criminal disclosure.  *See, e.g.*, Exh. A (Security Agreement, Backpage US Operations, Subsidiary Guarantors).

### E.   If Claimants' Claims are Deficient in any Regard, the Court Should Grant Leave to Amend.

Under Rule 15(a), courts "should freely give leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a)(2); *Bowles v. Reade*, 198 F.3d 752, 757 (9th Cir. 1999) (recognizing that Rule 15(a) embodies a "strong policy permitting amendment").  "This

---

[7]  Even though the entity Claimants' lien claims for the balance of the purchase price owed under promissory notes related to the sale of Backpage.com were not at issue in the Delaware Court of Chancery, those lien claims flow from the same purchase and sale documents at issue in the litigation in the Court of Chancery.

CLAIMANTS' OPPOSITION TO MOTION TO STRIKE CLAIMS

policy is to be applied with extreme liberality." *Eminence Capital LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (quotations omitted). Courts should apply the policy of "extreme liberality" upon consideration of requests for leave to amend claims in forfeiture actions. *See United States v. $11,500 in U.S. Currency*, 710 F.3d 1006, 1012-13 (9th Cir. 2013) (explaining that the "extreme liberality" in granting leave under Rule 15(a) "should apply" to claims in forfeiture actions and concluding that the denial of leave to amend claim was an abuse of discretion because the claimant did not learn about the purported insufficiency of his claim until the government moved to strike, at which point, leave to amend should have been freely given).

### F.   The Court Need Not Delay Ruling on the Motions to Dismiss the Government's Complaint With Respect to the Assets That Are Not the Subject of the Motion to Strike.

The government claims the Court cannot decide *any* dispositive motions until it rules on its motion to strike certain claims as to certain assets. That is incorrect. The government filed numerous forfeiture proceedings against the personal assets of the individual Claimants, *i.e.*, bank and brokerage accounts and real property owned by them personally or by their trusts, and the corporate assets of the entity Claimants, *i.e.* corporate bank accounts. The government has *not* filed motions to strike any of those claims. By the government's own allegations, the value of just those bank and brokerage accounts exceeds $90 million. *See* First Amended Consolidated Master Verified Complaint for Forfeiture, Dkt. 108; Motion to Dismiss First Amended Consolidated Master Verified Complaint for Forfeiture for Failing to State Sufficiently Detailed Facts, Dkt. 112, fn. 3. Nothing impedes the Court's ability to decide Claimants' pending motions to dismiss the complaint *as to those assets*.

Each Claimant has rights to seek dismissal of the government's respective cases as to given assets. The Court has consolidated the cases for pretrial purposes under Rule 42(a), but that is a "matter of convenience and economy in administration, [and] does not merge the suits into a single cause, or change the rights of the parties, or make those

who are parties in one suit parties in another." *Enterprise Bank v. Saettelle*, 21 F.3d 233, 235 (9th Cir. 1994) (*quoting Johnson v. Manhattan Ry.*, 289 U.S. 479, 496-97 (1933)); *accord Toyo Tire & Rubber Co., Ltd v. Wheel Grp. Holdings, LLC*, 2016 WL 11525318, at *1 (C.D. Cal. Oct. 26, 2016). The government's tactic here is to seek to deny Claimants, who admittedly have standing to contest the government's claims as to numerous assets, their day in court, based on the government's challenge to the standing of certain claimants relating to other assets. The government cannot use the complexity it has created by its blanket "all assets" forfeiture proceedings to deny individual Claimant's rights to obtain Rule 12(b)(6) dismissal of improper claims.

## III. CONCLUSION

The Court should deny the government's motion to strike Claimants' claims to the Liened Assets. Alternatively, if the Courts finds those claims deficient in any respect, the Court should grant Claimants leave to amend those claims.

*Local Rule 5-4.3.4(a)(2)(i) Compliance: Filer attests that all other signatories listed concur in the filing's content and have authorized this filing.*

DATED:  October 9, 2020

Thomas H. Bienert, Jr.
Whitney Z. Bernstein
BIENERT KATZMAN PC

By:  ___/s/ Whitney Z. Bernstein___
Whitney Z. Bernstein
Attorneys for James Larkin

1   DATED:  October 9, 2020              Respectfully submitted,

2                                        Gary S. Lincenberg

3                                        Ariel A. Neuman
                                         Gopi K. Panchapakesan
4                                        BIRD, MARELLA, BOXER, WOLPERT,

5                                        NESSIM, DROOKS, LINCENBERG &
                                         RHOW, P.C.
6

7                                        By:        /s/ Gary S. Lincenberg
                                                _____
8                                                   Gary S. Lincenberg
                                                    Attorneys for John Brunst
9

10  DATED:  October 9, 2020              LIPSITZ GREEN SCIME CAMBRIA LLP

11                                       By:        /s/ Paul J. Cambria, Jr.
                                                _____
12                                                  Paul J. Cambria, Jr.
                                                    Attorneys for Michael Lacey
13

14  DATED:  October 9, 2020              FREEMAN, MATHIS & GARY LLP
15

16                                       By:        /s/ John K. Rubiner
                                                _____
17                                                  John K. Rubiner

18                                       FEDER LAW OFFICE, P.A.

19                                       By:        /s/ Bruce Feder
                                                _____
20                                                  Bruce Feder

21                                       Attorneys for Scott Spear

22

23

24

25

26

27

28

1   DATED:  October 9, 2020          WIECHERT, MUNK & GOLDSTEIN, PC

2
                                    By:      /s/ David W. Wiechert
3                                        David W. Weichert

4                                   DANIEL J. QUIGLEY, PLC

5
                                    By:      /s/ Daniel J. Quigley
6                                        Daniel J. Quigley

7                                   Attorneys for Medalist Holdings, Inc., Leeward
8                                   Holdings, LLC, Camarillo Holdings, LLC,
                                    Vermillion Holdings, LLC, Cereus Properties,
9                                   LLC, Shearwater Investments, LLC, and
                                    Broadway Capital Corp., LLC
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLAIMANTS' OPPOSITION TO MOTION TO STRIKE CLAIMS