NICOLA T HANNA
United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division
STEVEN R. WELK
Assistant United States Attorney
Chief, Asset Forfeiture Section
DAN G. BOYLE (Cal. Bar No. Pending)
Assistant United States Attorney
Asset Forfeiture Section
    Federal Courthouse, 14th Floor
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-2426
    Facsimile: (213) 894-0141
    E-mail: Daniel.Boyle2@usdoj.gov


Attorneys for Plaintiff
UNITED STATES OF AMERICA

                    UNITED STATES DISTRICT COURT

                FOR THE CENTRAL DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,              CV No. 18-08420-RGK(PJWx)

            PLAINTIFF,                 REPLY IN FURTHER SUPPORT OF MOTION
                                       TO STRIKE CLAIMS PURSUANT TO RULE
            V.                         G(8)(c) OF THE SUPPLEMENTAL RULES
                                       FOR ADMIRALTY OR MARITIME CLAIMS
$1,546,076.35 IN BANK FUNDS            AND ASSET FORFEITURE ACTIONS;
SEIZED FROM REPUBLIC BANK OF           REPLY MEMORANDUM OF POINTS AND
ARIZONA ACCOUNT '1889, ET AL.,         AUTHORITIES

            DEFENDANTS.


     Plaintiff United States of America, by and through its counsel
of record, the United States Attorney for the Central District of
California and Assistant United States Attorney Dan G. Boyle, hereby
files this Reply in further support of its Motion pursuant to Rule
G(8)(c) of the Supplemental Rules for Admiralty or Maritime Claims
and Asset Forfeiture Actions to strike certain claims in this
consolidated action. [ECF No. 148].

1     This Reply is based upon the attached Reply Memorandum of Points

2 and Authorities.

3  Dated: October 16, 2020          Respectfully submitted,

4                           NICOLA T. HANNA
                          United States Attorney

5                           BRANDON D. FOX
                          Assistant United States Attorney

6                           Chief, Criminal Division
                          STEVEN R. WELK

7                           Assistant United States Attorney
                          Chief, Asset Forfeiture Section

8

9                                 /s/
                        _____
                          DAN G. BOYLE

10                           Assistant United States Attorney

11                           Attorneys for Plaintiff
                          UNITED STATES OF AMERICA

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES**

**PRELIMINARY STATEMENT**

On September 22, 2020, the government moved this Court for an order pursuant to Rule G(8)(c) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions (the "Supplemental Rules") striking certain claims in this consolidated action (the "Motion"). In the Motion, the government sought an order striking five subsets of claims, identified in Appendix A to the Motion, and referred to in the Motion as (1) the Binghamton Claims, (2) the Shareholder Claims, (3) the MoneyGram Claims, (4) the Information-and-Belief Claims, and (5) claims filed by claimant Natasha Spear. See Mot. at 2-4; ECF No. 148-2 (Appendix A).

Claimant Michael Lacey filed an Opposition to the Motion specific to the Binghamton Claims and the MoneyGram Claims, including seeking leave to amend his claim to the Binghamton Assets, on October 9, 2020. [ECF No. 152]. The same day, claimants Lacey, James Larkin, Scott Spear, Jed Brunst, Medalist Holdings, Inc., Leeward Holdings, LLC, Camarillo Holdings, LLC, Vermillion Holdings, LLC, Cereus Properties, LLC, Shearwater Investments, LLC, and Broadway Capital Corp., LLC (the "Opposing-Claimants") filed an Opposition specific to the Information-and-Belief Claims (the "O-C Opp"). [ECF No. 153].

Claimants Jill Anderson, John R. Becker, and Natasha Spear have not filed any response to the Motion, although served either electronically through counsel or by mail. [ECF Nos. 148, 150].

**ARGUMENT**

**I. The Motion to Strike the Shareholder Claims is Unopposed**

No party has opposed the Motion with respect to Shareholder claims. See O-C Opp. at 1, n.1. The Motion should thus be granted,

1   striking the claims identified in Appendix A-2.

2   **II.   The Motion to Strike the Claims of Natasha Spear is Unopposed**

3       Claimant Natasha Spear has not responded to the Motion, much as

4   she failed to respond to the government's Special Interrogatories,

5   which triggered the motion to strike her claims. The Motion should

6   thus be granted striking her claims as identified in Appendix A-5.

7   **III.   The Court Should Deny as Futile Lacey's Motion to Amend, and**
    **Strike the Binghamton Claims**

8       Claimants Lacey and Jill Anderson have filed claims to the

9   Binghamton Assets, but only Lacey has opposed the Motion. Lacey does

10  not actually contest the government's legal arguments for striking

11  his claims to the Binghamton Assets, but rather, attempts to sidestep

12  the issue through a facially-meritless request to amend. The Court

13  should deny leave to amend, and strike the Binghamton Claims.

14      As an initial matter, the government does not concede that

15  Lacey's proposed amendment is timely, and Lacey concedes that the

16  time to file claims has since passed. Nonetheless, the Court need not

17  reach this issue, because Lacey's proposed amendment would be futile.

18  Lacey is still attempting to assert standing as the settlor of a

19  trust, but has not cited a single case in support of that position,

20  or attempted to address the wealth of authority to the contrary. See

21  Mot. at 8-11; The Law of Trusts and Trustees, § 42, at 445 (3d

22  ed.2007) (in establishing an irrevocable trust "the settlor must

23  permanently give up control of the gift property"); United States v.

24  All Assets Held at Bank Julius, No. CV 04-0798-PLF, 2020 WL 1615870,

25  at *4, 10-11 (D.D.C. Apr. 2, 2020) (striking claims brought by

26  settlor of irrevocable trust formed under Guernsey law).

27      Instead of addressing this authority, Lacey seeks to amend his

28

2

claim to the Binghamton Assets, but does so by doubling down on the same flawed argument: that as the settlor of a trust he has standing to contest forfeiture of trust assets. The only new information in Lacey's proposed amended claim is an assertion that Lacey previously paid tax on the Binghamton Assets as the trust's settlor. See Lacey Opp. at 4 ("The Defendant Asset is taxed to Claimant as the settlor of a foreign trust pursuant to Section 679 of the Internal Revenue Code"). But this new information simply provides factual support for a point that is not contested; namely, that Lacey is the settlor of the Binghamton Trust. The government has already taken as true (for this Motion), Lacey's assertion that he is the settlor of the Binghamton Trust, so his amended claim changes nothing.[1]

The dispositive issue is one Lacey simply does not address: namely, the settlor of an irrevocable trust has no standing to contest forfeiture of trust assets, because a settlor gives up title to and control of those same assets when placing them in trust. See Mot. at 8-9. *This is the entire point of a trust structure*. But Lacey simply says nothing on this point. He does not cite a single case to the contrary, and the government is aware of no such authority.

Had Lacey attempted to address the case law cited in the government's Motion, he would certainly be aware that arguments

---

[1] Lacey appears to be arguing (without citation to authority) that he is an owner of an asset simply by virtue of paying tax on the same——a position that has no support in law. For example, under 26 U.S.C. §2501(a)(1), a gift-giver is generally responsible for paying tax on a gift. However, it is well-settled that a gift-giver does not have standing to contest forfeiture of gifted property once transferred. See Cassella, Stefan D., Asset Forfeiture Law in the United States (2d ed. 2013) ("Cassella") §10-5(n) ("While the *owner* of the defendant property has standing to contest its forfeiture, the *former owner* of the property does not. It makes no difference that the former owner can trace his interest to the property, or that he has not been compensated for the transfer.").

1    similar to his were offered, and soundly rejected, in the

2    government's cited authority, All Assets Held at Bank Julius, 2020 WL

3    1615870, at *18-19. In that case, the claimant argued that while he

4    was the settlor of a foreign trust (established under Guernsey law),

5    because U.S. law would tax him on the assets of that foreign trust

6    nonetheless, he thus had standing to contest forfeiture of trust

7    assets. Id. The Court rejected these arguments and granted the

8    government's motion to strike, holding that "U.S. tax implications

9    have no bearing on what interest [claimant] has in the Balford Trust

10   under Guernsey law, which is what he must show by a preponderance of

11   the evidence." Id., at *19. The reasoning of the Bank Julius court is

12   equally applicable here: the dispositive question is not whether

13   Lacey paid taxes after setting the trust, because the government

14   takes that as true. Rather, the question is whether the claimant has

15   an ownership interest in the trust property sufficient to contest

16   forfeiture, and all cited authority states that he does not.

17        But even if the Court were to accept that the payment of taxes

18   under 26 U.S.C. § 679 means that Lacey should be treated as an owner

19   (although only for tax purposes), the Binghamton Claims should still

20   be struck, because this sort of fictitious ownership interest is

21   irrelevant where a claimant lacks actual dominion and control over an

22   asset. As the Ninth Circuit held in United States v. One Parcel of

23   Land, Known as Lot 111-B, Tax Map Key 4-4-03-71(4), Waipouli, Kapaa,

24   Island & Cty. of Kauai, State of Hawaii, "a mere nominal owner" who

25   "does not exercise dominion and control over the property is

26   insufficient even to establish standing to challenge a forfeiture."

27   902 F.2d 1443, 1444 (9th Cir. 1990); see also United States v.

28   Approximately $417,148.06 in U.S. Currency Seized From Bank of Am.

Account No. 08067-05302, 72 F. App'x 624, 625 (9th Cir. 2003)
("[B]are legal title without dominion or control of the property is
not enough"). Lacey has not suggested that he exercises any dominion
and control over the Binghamton Assets. Under basic trust law, he
could never make such a showing, because purpose of a trust structure
is to ensure that a settlor does not have control over trust assets,
by placing them in the control of a trustee. A legal fiction of
ownership for tax purposes does not change this reality. Taking all
of Lacey's new allegations as true, Lacey would at most be a nominal
owner of the Binghamton Assets, solely for tax purposes, with neither
dominion nor control over the same. Thus, he would still lack
standing to contest forfeiture, and amendment would be futile.

**IV.   Claimants Anderson and Becker Have Not Opposed the Motion to
Strike the MoneyGram Claims, and Lacey's Opposition is Erroneous**

While claimants Anderson and Becker have not responded to the
Motion, claimant Lacey has opposed the Motion with respect to the
MoneyGram Assets. His arguments, however, are contradicted by the
plain language of his own claim, which is taken as true for the
purposes of the Motion, and he simply misunderstand both forfeiture
law and the mechanics of the money-transmittal business.

Lacey concedes in his Opposition that he directed the MoneyGram
Assets to be transferred from an account in his attorney's name to
MoneyGram, with instructions that MoneyGram then transfer funds to
another account Lacey controlled. See Lacey Opp, at 6 ("At Mr.
Lacey's request, the funds were to be transferred to another of Mr.
Lacey's accounts, through Money Gram."). Where Lacey errs, however,
is his assertion that, during this attempted transfer, "[h]is
ownership of the funds never ceased." Id. Lacey is wrong.

1    Lacey ceased being an "owner" of the MoneyGram Assets as soon as
2    he transferred these funds into MoneyGram's bank accounts, and in
3    return, received a credit from MoneyGram to obtain payment of a
4    corresponding amount. See Cassela, §10-5(f) ("Persons who can trace
5    their money into the bank account of a third person, but who have no
6    right to withdraw that money, do not have standing to contest the
7    forfeiture.").[2] Lacey certainly had no control over the accounts from
8    which the MoneyGram Assets were seized, and Lacey does not (and
9    cannot) deny that the MoneyGram Assets were seized from MoneyGram's
10   accounts (rather than accounts in Lacey's name). Indeed, that fact is
11   drawn straight from his own claim and taken as true here. See Mot.,
12   Appendix A-3, at -036 (Lacey claim) (describing MoneyGram Assets as
13   "seized from Money Gram Funds."). While Lacey argues that he "cannot
14   be a general creditor of himself," Lacey Opp. at 6, this is a straw
15   man; Lacey is a general creditor of MoneyGram, of not himself.[3] When
16   Lacey handed his funds over to MoneyGram, in exchange for a promise
17   from MoneyGram to pay another of Lacey's accounts, he became a
18   creditor *of MoneyGram*.

19   Lacey's cited authority, United States v. $4,224,958.57, is
20   inapposite, as that case concerned the imposition of a constructive

---

22   [2] As explained in the government's cited authority, see
23   Cassella, § 10-5(f), a money-transmitter does not actually transfer a
     client's specific funds from one account to another. Rather, the
24   transmitter accepts money from the client in exchange for a credit
     which the client can use to direct payment anywhere in the world the
25   transmitter has a payment agent. See id., ("The funds in that case
     are the remitter's funds... the forfeiture of those funds does
     nothing to extinguish the debt the remitter owes to the customer").

26   [3] The flaws in Lacey's position are obvious when considering the
27   converse: if MoneyGram had lost or failed to pay Lacey the credited
     funds, Lacey would certainly demand that MoneyGram make him whole,
28   and MoneyGram would not credibly be able to claim that Lacey should
     bear the loss as the "owner" of the missing funds.

6

1  trust giving standing to purported victims of fraud, but there are no

2  allegations here of a constructive trust. 392 F.3d 1002, 1005 (9th

3  Cir. 2004) ("If the Appellants can prove their claims to have been

4  defrauded by Sexton, they are the beneficiaries of the constructive

5  trust and have, therefore, equitable interests in it.").[4] Lacey also

6  argues that the government's authority is inapposite because it

7  addresses third-party international wire transfers (Lacey Opp. at 6),

8  but as described above, it is immaterial who the money transmitter is

9  to pay; what matters is who controlled the accounts from which the

10 funds were seized, and here that was MoneyGram.

11     Lacey is certainly correct that an unequivocal claim of

12 ownership is sufficient at the pleadings stage, but taking Lacey's

13 own factual assertions as true, he ceased being an owner of the

14 MoneyGram Assets as soon as he transferred these funds to MoneyGram.

15 The Court need not credit Lacey's erroneous legal conclusions as to

16 his purported ownership when contradicted by his own factual

17 allegations. See Harris v. Cty. of Orange, 682 F.3d 1126, 1131 (9th

18 Cir. 2012)("[T]he Court is not required 'to accept as true a legal

19 conclusion couched as a factual allegation.'" (quoting Ashcroft v.

20 Iqbal, 556 U.S. 662, 678 (2009))).

21 **V.   The Court Should Strike the Information-and-Belief Claims, or**
22 **Order Claimants to Amend their Claims so as to State the Basis**
   **for their Information and Belief Allegations**

23     The Opposing-Claimants have contested the Motion to strike the

24

25 _____

26     [4] Lacey's citation to United States v. Cambio Exacto, 166 F.3d
   522 (2d Cir. 1999) actually proves the opposite of Lacey's argument;
27 in that case, the Second Circuit held that it was the money
   transmitter itself had standing to contest forfeiture, not the
   clients who had paid the transmitter. Id., at 528 ("If the money
28 transmitter is without standing, the government would not be
   accountable to anyone under the circumstances.").

7

1   Information-and-Belief Claims. The Opposing-Claimants misstate
2   controlling law in this Circuit, however, and while their Opposition
3   explains some of their nebulous pleading, it fails to meet the
4   standards required in this Circuit.

5       At the outset, the Court should reject the Opposing-Claimants'
6   misinterpretation of United States v. $133,420.00 in U.S. Currency,
7   and instead, find that the Circuit meant exactly what it said in
8   stating that claims must be "unequivocal." 672 F.3d 629, 638 (9th
9   Cir. 2012). Opposing-Claimants confusingly argue that in $133,420.00,
10  the Circuit did not mean that claims of ownership must be
11  "unequivocal" (despite using that exact word), but rather, the
12  Circuit meant that conclusory claims could be sufficient if
13  unequivocal, but non-conclusory claims could somehow be equivocal but
14  still sufficient. See Opp. at 3-4. The court should disregard this
15  tortured reading. The far more logical (and coherent) reading of
16  $133,420.00 is that the Ninth Circuit simply meant what it said: at
17  the pleadings stage, a claim of ownership must be "unequivocal," and
18  at the summary judgment stage, a claimant "must also present some
19  evidence of ownership beyond the mere assertion" of ownership. Id.,
20  at 638-639. A claimant can always provide more, but this bare minimum
21  is required to survive a motion to strike.

22      This common-sense reading accords with the general case law
23  holding that standing must be established "with the manner and degree
24  of evidence required at the successive stages of the litigation,"
25  id., at 638 (citing Lujan v. Defenders of Wildlife, 504 U.S. 555,
26  561, 351 (1992)). This interpretation also accords with the
27  Supplemental Rules, which require that a claimant identify themselves
28  and the interest they are asserted, under penalty of perjury. See

Supplemental Rule G(5)(a)(i). Of course, this requirement would hardly be a credible deterrent to false claims if a claimant could simply file a claim based on information and belief and hearsay. And as the Second Circuit recognized in Mercado v. U.S. Customs Service, 873 F.2d 641, 645 (2d Cir. 1989), this problem is magnified further still where the affiant is a lawyer, who is all but certain to cloak the basis for her information-and-belief pleading in the attorney client privilege. Instead, the Opposing-Claimants simply ignore the obvious problems inherent in asserting their Information-and-Belief Claims through counsel.[5] But the purpose of verification is so that a claimant may be examined on the truth of his or her claims, see Cassella, § 7-13(c), and nowhere do the Opposing-Claimants concede that their counsel/affiant will be waiving any applicable privilege. It is not difficult to see how this will play out: once discovery commences, the counsel/affiant will be examined and assert that the basis for his information-and-belief includes privileged client communications, and further motion practice will be required.

Opposing-Claimants strategically provide some additional explanation for their information-and-belief pleading and attempt to downplay the seriousness of this issue, but they sidestep critical pleading omissions. For example, as the government identified in its opening brief, certain claimants asserted *on information and belief* that their purported security interests in Backpage's assets had been perfected, thus entitling them to standing. See Mot. at 16-17.

---

[5] While Mr. Quigley was indeed identified as an "authorized agent" in the Information-and-Belief Claims (as the government acknowledged in its Motion), Opposing-Claimants do not dispute that Mr. Quigley has also entered an appearance in these actions pre-consolidation.

9

Opposing-Claimants attached that security agreement, but evade the actual issue raised —— were these secured interests perfected, and if so, why would claimants possibly need to plead such an obvious and knowable fact on information and belief? This is a key, and potentially dispositive question, as an unperfected security interest leaves a claimant in the same position as an unsecured creditor, and thus without standing. See United States v. One Hundred Thirty-Three (133) U.S. Postal Serv. Money Orders Totaling $127,479.24 In U.S. Currency, 496 F. App'x 723, 724 (9th Cir. 2012) (affirming order striking claims where claimant held promissory notes including liens on defendant assets, but the "record [did] not contain evidence that [claimant] perfected his secured interest"); United States v. Sum of Three Hundred Nine Million Five Hundred Thousand Dollars, 85 F. Supp. 3d 111, 116 (D.D.C. 2015) (perfection of security interest a question of state law, and failure to perfect in accordance with state law rendered claimants unsecured creditors lacking standing).[6]

If the Court does not strike the Information-and-Belief Claims for being facially equivocal, it should at a minimum require claimants to amend these claims to identify the sources of this information and belief pleading so that they may be examined on these sworn statements when discovery commences.

---

[6] If the claimants remain equivocal on whether this security interest was actually perfected, the Court can hold a hearing on this discrete and dispositive issue. Pursuant to Rule G(8)(c)(ii)(B), the Motion may treated as one "to determine after a hearing." See Mot. at 8; United States v. One Lincoln Navigator 1998, 328 F.3d 1011, 1014 (8th Cir. 2003) ("If a threshold issue of Article III standing raises material fact disputes, including credibility issues, the district court may conduct an evidentiary hearing and resolve them.")

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### CONCLUSION

For the above reasons and those stated in the Motion to Strike, the government respectfully requests that the Motion to Strike be granted, and the court enter the Proposed Order accompanying the Motion.

Dated: October 16, 2020          Respectfully submitted,

NICOLA T. HANNA
United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division
STEVEN R. WELK
Assistant United States Attorney
Chief, Asset Forfeiture Section

_____/s/_____
DAN G. BOYLE
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA