NICOLA T. HANNA
United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division
STEVEN R. WELK
Assistant United States Attorney
Chief, Asset Forfeiture Section
DAN G. BOYLE (California Bar No. Pending)
Assistant United States Attorney
Asset Forfeiture Section
        Federal Courthouse, 14th Floor
        312 North Spring Street
        Los Angeles, California 90012
        Telephone:  (213) 894-2426
        Facsimile:  (213) 894-0142
        E-mail: Daniel.Boyle2@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>              Plaintiff,<br><br>              v.<br><br>$1,546,076.35 IN BANK FUNDS SEIZED FROM REPUBLIC BANK OF ARIZONA ACCOUNT '1889, ET AL.,<br><br>              Defendants.<br>_____<br><br>Michael Lacey, et al.,<br><br>              Claimants. | Case No. CV 18-08420-RGK (PJWx)<br><br>JOINT RULE 26(f) REPORT<br><br>SCHEDULING CONFERENCE:<br><br>DATE: Nov. 2, 2020<br>TIME: 9:00 A.M.<br>LOCATION: Courtroom of the Honorable R. Gary Klausner |

        Pursuant to Rule 26(f) of the Federal Rules of Civil

Procedure, Local Rule 26-1, and this Court's Standing Orders,

counsel for plaintiff United States of America submits this Joint

Rule 26(f) Report. In accordance with this Court's Order dated

July 2, 2020, (ECF No. 113), Government counsel conferred

1

telephonically with counsel for Claimants Medalist Holdings, Inc., Leeward Holdings, LLC, Camarillo Holdings, LLC, Vermillion Holdings, LLC, Cereus Properties, LLC, Shearwater Investments, LLC, and Broadway Capital Corp., LLC (collectively, the "Entity Claimants"), and counsel for James Larkin, Michael Lacey, Scott Spear, John Brunst, Mary Ann Brunst, and the Brunst Family Trust (collectively, with the Entity Claimants, "Claimants") on October 9, 2020, seeking Claimants' positions on this report, which are incorporated herein.

## A.   STATEMENT OF THE CASE

### 1.   *Government's Contentions*

This civil forfeiture action was commenced on September 28, 2018, and along with related cases, was consolidated before this Court on December 18, 2019. (ECF No. 50). On June 1, 2020, the Government filed a First Amended Consolidated Master Verified Complaint for Forfeiture ("FACMC") (ECF No. 108). The government generally alleges that certain of claimants owned and/or operated the Backpage.com website, and that the vast majority of Backpage's "adult" ads consisted of offers to sell adults or children for sex. See FACMC ¶¶ 106-112, 121, 123, 126. Accordingly the government has alleged that the defendant assets are subject to forfeiture pursuant to 18 U.S.C. §§ 981(a)(1)(C) as property derived from or traceable to proceeds of violations of federal laws constituting specified unlawful activity, as defined in 18 U.S.C. § 1956(c)(7)(A)), including 18 U.S.C. §§ 1591 (Sex Trafficking of Children) and 1952 (Interstate and Foreign Travel in Aid of Racketeering Enterprise). Furthermore, the government has alleged that the defendant assets are subject to forfeiture pursuant to 18 U.S.C. §§ 981(a)(1)(A) as proceeds of or traceable to violations of 18 U.S.C. § 1956

2

1   (a)(1)(B)(i), (a)(2), and 1957 (relating to money laundering).

2          2.   *Claimant's Contentions*

3          Backpage.com was an online classified advertising service

4   through which users could post classified ads in a wide variety of

5   categories, including local places, buy/sell/trade, automotive,

6   rentals, real estate, jobs, dating, and services. *See Backpage.com,*

7   *LLC v. Cooper*, 939 F. Supp. 2d 805, 813 (M.D. Tenn. 2013).

8   Backpage.com also included a category for "adult" services (such as

9   strippers and escort services), but that category was shuttered in

10  January 2017 following years of pressure from government actors,

11  including a campaign the Seventh Circuit described as an

12  unconstitutional effort to "crush Backpage." *Backpage.com, LLC v.*

13  *Dart*, 807 F.3d 229, 230 (7th Cir. 2015). Third-party users of the

14  website posted millions of ads to the site every month, making

15  Backpage.com the second-largest online classified ad service in the

16  country after Craigslist. *See Backpage.com, LLC v. McKenna*, 881 F.

17  Supp. 2d 1262, 1266 (W.D. Wash. 2012). Users provided all content for

18  ads they posted on the website, using an automated interface;

19  Backpage.com did not dictate or require any content. *Cooper*, 939 F.

20  Supp. 2d at 813.

21         Claimants formerly owned, were associated or affiliated with, or

22  received funds that originated from the Backpage.com classified

23  advertising website.  The government's complaint is premised on the

24  mistaken notion that Backpage.com's publication of ads posted to the

25  website by its users makes Backpage.com criminally responsible for

26  those ads, if it turns out that any of those ads actually related to

27

28

unlawful activity.[1]  The government doubles down on that error, by seeking to forfeit here numerous assets not from Backpage.com, but from others, including others multiple steps removed from Backpage.com.

Moreover, as set forth in Claimants' pending Motion to Dismiss First Amended Consolidated Master Verified Complaint for Forfeiture for Failing to State Sufficiently Detailed Facts (ECF No. 112), the government's complaint fails to state facts sufficient to state a claim, much less allege sufficiently detailed facts to support a reasonable belief the government can meet its burden of proof at trial.  And, as set forth in Claimants' Motion to Dismiss Consolidated Master Verified First Amended Complaint for Forfeiture (ECF No. 111), the government's complaint is barred by Section 230 of the Communications Decency Act, 47 U.S.C. § 230, which bars virtually all civil claims against online publishers based on third-party content, including the government's civil forfeiture claims.  At bottom, the government's position that Backpage.com was required to suppress lawful third-party speech (such as dating ads) to preclude users from possibly posting facially lawful ads that actually related to unlawful activity (*e.g.*, a dating ad where the poster actually intended to solicit those responding for prostitution) runs squarely into the First Amendment, which does not permit the government to presume that protected speech is unprotected "merely because it

---

[1]  Over the years, Backpage.com ran millions of adult-oriented classified ads. From those millions of ads, the government located and charged just *one* that purportedly expressly proposed a sex for money transaction. Backpage.com prohibited ads that were "offers to sell adults or children for sex." The ads about which the government complains were ads for dating ads, ads for strippers, ads for massage services, ads for escort services, etc.—not "offers to sell adults or children for sex."

resembles the latter. The Constitution requires the reverse."
*Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 255 (2002).

### B.   COMPLEX CASE

The government and Claimants believe this case is sufficiently complex so that some of the procedures in the Manual for Complex Litigation should be used, where it would aid the parties and the Court. The government and Claimants are continuing to consider and discuss how best to apply complex case procedures to this action.

### C.   PROCEEDING BEFORE A MAGISTRATE JUDGE

The government and Claimants preliminarily consent to have a magistrate judge preside over this action for all purposes and, pursuant to General Order 18-11, will negotiate in good faith regarding the Voluntary Consent List.

### D.   ADDITIONAL PARTIES

The government does not believe any additional parties are likely to join this action, and contends that the time for any parties to join this action has run.

Certain Claimants believe other parties are likely to seek to join this action.  In particular, Claimant Lacey anticipates that the beneficiaries to the Binghamton trust intend to file claims in this matter but they have not yet been served with any documents in this matter or in any related or underlying proceeding, or any documents relating to the seizure of the assets.

### E.   RELATED CRIMINAL CASE

Certain Claimants are defendants in pending criminal matters, including a case before the Hon. Susan M. Brnovich in the District of Arizona currently set for trial on April 12, 2021. Pre-COVID, the criminal trial was forecast to last at least twelve weeks and, with

COVID-related accommodations, the trial may be substantially longer.

During the Rule 26(f) conference, the government and Claimants agreed that this case cannot be substantively litigated (including discovery beyond the government's previous special interrogatories under Supplemental Rule G(6)(a)) before the D. Ariz. criminal trial concludes. Claimants contend that this case is not yet progressed to a point where 18 U.S.C. § 981(g) requires the Court to stay these proceedings, and the government and Claimants agree Section 981(g) will require a stay, whether sought by motion or stipulation, before the commencement of discovery.

Nonetheless, the government and Claimants agree the Court can and should proceed to resolve the pending motions to dismiss and motion to strike, as resolution of those motions will advance this case without implicating the pending criminal proceedings. Moreover, the government and Claimants believe the Court's resolution of the pending motions to dismiss and motion to strike have the potential to significantly alter the subjects on which discovery may be needed, the scope of needed discovery, and the timing for discovery.

### F.   DISCOVERY TIMING AND DISCOVERY PLAN

1. Initial Disclosures: This forfeiture matter is exempt from the initial disclosure requirements under Fed. R. Civ. P. 26(a)(1)(B)(ii).

2. Discovery Plan and Timing for Discovery: Because the Court's resolution of the pending motions to dismiss and motion to strike have the potential to significantly alter the subjects on which discovery may be needed, the scope of needed discovery, and the timing for discovery, the government and Claimants agree the preparation of a discovery plan and the commencement of

discovery should be delayed until no *earlier* than the resolution of the pending motions. Accordingly, the government and Claimants propose to postpone preparing a discovery plan and commencing discovery.  Because of the pending criminal case scheduled for trial in April 2021, the government and Claimants request that the Court set a discovery conference on or about July 1, 2021, (assuming the case has not already been stayed) to assess whether the criminal proceedings have reached a stage at which it would be fruitful to prepare a discovery plan.

## G.   MOTIONS

The government does not presently anticipate filing motions seeking to add other parties, file any further amended pleadings, or transfer venue. The government has filed a motion to strike certain claims pursuant to Supplemental Rule G [ECF No. 148].

Claimants have filed (or joined) a Motion to Dismiss First Amended Consolidated Master Verified Complaint for Forfeiture for Failing to State Sufficiently Detailed Facts (ECF No. 112). Claimants also have filed (or joined) a Motion to Dismiss Consolidated Master Verified First Amended Complaint for Forfeiture (ECF No. 111), which argues the government's complaint is barred by Section 230.

Upon the conclusion of discovery, the government, Claimants, or both may move for summary judgment or partial summary judgment.

Because 18 U.S.C. § 981(g) will require the Court to stay this case before discovery commences, pending the conclusion of the criminal proceedings, however, the government and Claimants agree it would not be fruitful to set deadlines for dispositive or partially dispositive motions.

### H.   TIMING OF EXPERT DISCLOSURES

For the reasons discussed above, the parties believe it is premature to discuss the timing of expert disclosures.

### I.   ESTIMATED TRIAL LENGTH

The government estimates the trial of this matter will take 10-14 court days, but its estimate may be contingent on the resolution of the criminal trial of certain claimants presently set for April 12, 2021.

Claimants intend to request a jury trial.  Claimants are unable to provide a preliminary estimate of the time required for trial, as that will depend substantially on whether some or all of these cases, which have been consolidated only for pre-trial purposes, are substantively consolidated for trial.  Moreover, as the government notes, the outcome of the pending criminal case will significantly influence the time required to try these cases.  Nonetheless, Claimants believe the government greatly underestimates the time to try these cases, if they were to be consolidated for trial.

### J.   SCHEDULE OF PRETRIAL DATES

Because this case will need to be stayed before discovery commences, pending the conclusion of the criminal proceedings, the government and Claimants agree it would not be fruitful to set deadlines for dispositive or partially dispositive motions or other pretrial deadlines.

### K.   SETTLEMENT PROSPECTS/ADR

The government and Claimants have discussed settlement and will continue to do so. The government and certain Claimants have previously resolved two assets in this consolidated action by consent judgment, and the government and Claimants currently are discussing

the possible resolution of additional assets by consent judgment. If ADR will be required, Claimants prefer ADR Procedure No. 2.


 Dated: October 23, 2020                 Respectfully submitted,

                                         NICOLA T. HANNA
                                         United States Attorney
                                         BRANDON D. FOX
                                         Assistant United States Attorney
                                         Chief, Criminal Division
                                         STEVEN R. WELK
                                         Assistant United States Attorney
                                         Chief, Asset Forfeiture Section


                                         _____/s/_____
                                         DAN G. BOYLE
                                         Assistant United States Attorney

                                         Attorneys for Plaintiff
                                         UNITED STATES OF AMERICA