1  NICOLA T. HANNA
   United States Attorney
2  BRANDON D. FOX
   Assistant United States Attorney
3  Chief, Criminal Division
   STEVEN R. WELK
4  Assistant United States Attorney
   Chief, Asset Forfeiture Section
5  DAN G. BOYLE (California Bar No. Pending)
   Assistant United States Attorney
6  Asset Forfeiture Section
        Federal Courthouse, 14th Floor
7       312 North Spring Street
        Los Angeles, California 90012
8       Telephone: (213) 894-2426
        Facsimile: (213) 894-0142
9       E-mail: Daniel.Boyle2@usdoj.gov
10
   Attorneys for Plaintiff
11 UNITED STATES OF AMERICA

12                  UNITED STATES DISTRICT COURT

13            FOR THE CENTRAL DISTRICT OF CALIFORNIA

14

15 UNITED STATES OF AMERICA,          Case No. CV 18-08420-RGK
                                      (PJWx)
16             Plaintiff,
                                      PLAINTIFF'S OPPOSITION TO
17        v.                          MOVANTS' MOTION FOR LEAVE TO
                                      FILE LATE CLAIMS [ECF No.
18 $1,546,076.35 IN BANK FUNDS        165]
   SEIZED FROM REPUBLIC BANK OF
19 ARIZONA ACCOUNT '1889, ET AL.,     Hearing Date: December 21,
                                      2020
20             Defendants.
                                      Time: 9:00 a.m.
21 _____
                                      Place: Courtroom 850 255 E.
22 ROARKE LACEY,                      Temple Street, 7th Fl. Los
   COLIN LACEY,                       Angeles, CA 90012
23
24             Movants.
25
26

27       Plaintiff United States of America, by and through its

28 counsel of record, the United States Attorney for the Central

District of California and Assistant United States Attorney Dan G. Boyle, hereby files its Opposition to Movants Colin Lacey and Roarke Lacey's November 17, 2020 Motion for leave to file late claims. [ECF No. 165.]

This Opposition is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: December 1, 2020        Respectfully submitted,

                               NICOLA T. HANNA
                               United States Attorney

                               BRANDON D. FOX
                               Assistant United States Attorney
                               Chief, Criminal Division
                               STEVEN R. WELK
                               Assistant United States Attorney
                               Chief, Asset Forfeiture Section

                               _____/s/_____
                               DAN G. BOYLE
                               Assistant United States Attorney

                               Attorneys for Plaintiff
                               UNITED STATES OF AMERICA

# **TABLE OF CONTENTS**

I.   INTRODUCTION .............................................. 1

II.  BACKGROUND ................................................ 1

III. ARGUMENT .................................................. 5

A. Relevant Law on Deadlines in Civil Forfeiture Actions ..... 5

B. Movants Have Not Established Good Cause ................... 7

  1. Movants Have No Justification for their Delay ........... 7

  2. Movants Never Disclosed Their Interest in the Defendant
  Asset ...................................................... 14

  3. Permitting Movants' Claims Would Prejudice the Government
  and the Present Claimants ................................. 14

  4. The Sufficiency of Movants' Claims Cannot Accurately Be
  Evaluated Without Discovery ............................... 16

  5. Movants Never Sought Any Extension of Time ............. 18

C. The Court Should Not Reward Gamesmanship ................. 18

IV.  CONCLUSION ............................................... 20

1

2 <u>**TABLE OF AUTHORITIES**</u>

3 **Cases**

4 United States v. $100,348.00 in United States Currency,

5    354 F.3d 1110 (9th Cir. 2004) ........................... 7, 18

6 United States v. 1982 Yukon Delta Houseboat,

7    774 F.2d 1432 (9th Cir. 1985) ........................... 6, 13

8 United States v. 5 S 351 Tuthill Rd., Naperville, Ill.,

9    233 F.3d 1017 (7th Cir. 2000) ............................... 11

10 United States v. All Assets Held in Account No. XXXXXXXX in name

11   of Doraville Properties Corp.,

12    299 F. Supp. 3d 121 (D.D.C. 2018) ..................... 17, 18

13 United States v. Approximately $147,900.00 in U.S. Currency,

14   2017 WL 2379946 (E.D. Cal. June 1, 2017) ................... 12

15 United States v. Approximately $417,148.06 in U.S. Currency

16   Seized From Bank of Am. Account No. 08067-05302,

17    72 F. App'x 624 (9th Cir. 2003) ........................... 15

18 United States v. One Parcel of Land, Known as Lot 111-B, Tax Map

19   Key 4-4-03-71(4), Waipouli, Kapaa, Island & Cty. of Kauai,

20   State of Hawaii,

21    902 F.2d 1443 (9th Cir. 1990) ........................ 10, 16

22 United States v. One Piece of Real Prop. Located at 15010 S.W.

23   168th St.,

24   2008 WL 659472 (S.D.Fla. Mar. 6, 2008) ..................... 13

25 United States v. One-Sixth Share,

26    326 F.3d 36 (1st Cir. 2003) ................................. 5

27

28

United States v. Real Prop. Located at 5208 Los Franciscos Way,

 Los Angeles, Cal.,

  385 F.3d 1187 (9th Cir. 2004) .............................. 15

United States v. Real Properties located at 7215 Longboat Drive

 (Lot 24),

  750 F.3d 968 (8th Cir. 2014) .............................. 11

United States v. Vacant Land,

  15 F.3d 128 (9th Cir. 1993) ............................... 10

**Other Authorities**

Cassella, Stefan D., Asset Forfeiture Law in the United States

 (2d ed. 2013) ............................................. 10

**Rules**

Supplemental Rule G(4)................................... 5, 9, 12

Supplemental Rule G(5).................................... 5, 8

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

Twenty-six months after the Verified Complaint was filed in this action, seventeen months after claims were due (following two extensions of time to file claims), after two appeals to the Ninth Circuit, consolidation of this case with a dozen related actions, and with three dispositive motions fully-briefed and pending (two motions to dismiss and one motion to strike), Movants Roarke and Colin Lacey ("Movants") now seek leave to intervene in this action and file claims to $16,500,000 seized from K&H Bank account held in the name of Primus Trust Company ("Primus") for the benefit of the Binghamton Trust (the "Trust"). Movants offer no explanation for why they waited more than two years to file their claims, and instead, accuse the government failing to provide them proper notice. To Call this Motion naked procedural gamesmanship would be an understatement. Movants misstate the history of this case, ignore circuit precedent, and studiously avoid revealing when they actually learned this case was pending. The Court should deny the Motion.

## II.   BACKGROUND

The Court is well-versed in the factual allegations and procedural history of this consolidated action by this point, so the government recounts this background only in relevant part.

On October 5, 2018, the government filed a Verified Complaint for Forfeiture against $16,500,000 in funds seized from K&H Bank account ending '1210 (the "Defendant Asset"), alleged to be traceable to criminal conduct by Backpage.com and

its executives. <u>See</u> <u>United States of America v. $16,500,000.00</u>
<u>in Bank Funds Seized from K and H Account '1210</u>, Case No. 2:18-
cv-08565-RGK-PJW (hereinafter "the '1210 Action"), ECF No. 1. In
that complaint the government alleged the following:

> The Defendant Asset is held in the name of Primus Trust.
> The persons and entities whose interests may be affected
> by this action are Primus Trust, Michael Lacey, James
> Larkin, Scott Spear, John "Jed" Brunst, Dan Hyer, Andrew
> Padilla and Joye Vaught;

Complaint, ¶ 3;

> [The Defendant Asset is] held in the name of Primus
> Trust, with Lacey being at least one of the beneficiaries
> of the Trust;

Complaint, ¶ 4(tt);

> [The Defendant Asset] is located in Hungary, and held in
> the name of Primus Trust Company ("Binghamton Trust")
> for the benefit of Lacey.

Complaint, ¶ 98.

On November 21, 2018, the government certified that notice
of the '1210 Action had been published on an official government
forfeiture website in accordance with Supplemental Rule G of the
Supplemental Rules for Admiralty and Maritime Claims and Asset
Forfeiture Actions ("the Supplemental Rules"). <u>See</u> '1210 Action,
ECF No. 20. Pursuant to the Supplemental Rules, any potential
claimants to the Defendant Asset were thus required to file
claims on or before December 28, 2018.

On December 27, 2018, the government applied *ex parte* for
an order extending the time for any potential claimants to file

claims until April 30, 2019, which the Court granted the next day. See '1210 Action, ECF Nos. 21, 22. As noted in that application, the government had contacted counsel for all known potential claimants and obtained their consent to the application, and identified the known potential claimants to the Defendant Asset at that time. See '1210 Action, ECF No. 21-1. Movants were not identified as known potential claimants.

On or about April 19, 2020, as part of a disclosure of documents in a pending criminal action in the District of Arizona, Lacey disclosed a copy of a purported trust agreement for the Trust. This document identifies Lacey as the settlor of the Trust, and Movants as the beneficiaries of the Trust. See Mot., Exhibit C, at 29 (ECF NO. 165-3).

On April 29, 2020, the government again applied *ex parte* for another extension of time for any potential claimants to file claims to the Defendant Asset. See '1210 Action, ECF No. 24. On May 2, 2019, however, this Court denied the government's application to extend the claims period. See '1210 Action, ECF No. 26. Accordingly, the claims period closed on April 30, 2020.

Following the Court's denial of the application to extend the time to file claims, on May 5, 2019, Claimant Lacey moved this Court to reopen the claims period. See '1210 Action, ECF No. 29. In his motion, Lacey represented that "[c]ounsel for all known potential claimants similarly join in this request. (A complete list of opposing counsel and contact information for all known potential claimants is attached hereto as Exhibit A)." Id., at 2. Lacey's Exhibit A did not identify either of Movants as potential claimants. See '1210 Action, ECF No. 29-1. This

Court granted Lacey's motion in part, requiring all claims to the Defendant Asset to be filed on or before May 24, 2019. <u>See</u> '1210 Action, ECF No. 32.

Lacey filed claims to the Defendant Asset on May 24, 2019. '1210 Action, ECF No. 34. In his claim, Lacey stated as follows:

> Claimant hereby submits this Verified Claim asserting an ownership interest in the entirety of the seized Defendant Asset. Claimant is the Settlor (Creator) of an irrevocable trust ("Binghamton Trust") for the benefit of his two children. The Trustee of Binghamton Trust is Primus Trust Corporation in Hungary. The Defendant Asset is owned by the Binghamton Trust for the benefit of the Claimant's children.

<u>Id</u>. at 2.

On January 14, 2020, the '1210 Action was consolidated with a number of related forfeiture actions. ECF No. 66. On February 3, 2020, claimants filed a motion to dismiss this consolidated action (ECF No. 76), which claimants corrected on February 5, 2020. ECF. No. 82. On June 1, 2020, the Government filed a First Amended Consolidated Master Complaint for Forfeiture. ECF No. 108 (the "FACMC"). On July 1, 2020, claimants renewed their motion to dismiss the FACMC (ECF No. 111), and filed an additional motion to dismiss on new grounds. ECF No. 112.

On September 22, 2020, the government filed a motion to strike certain claims in this consolidated action, including all claims to the Defendant Asset which had previously been filed in the '1210 Action. ECF No. 148. Claimant Lacey opposed the Motion

4

to Strike on October 9, 2020, while also seeking to amend his claim to the Defendant Asset. ECF No. 153.

The Motions to Dismiss and the Motion to Strike are fully-briefed, and remain pending.

**III. ARGUMENT**

    **A.**    **Relevant Law on Deadlines in Civil Forfeiture Actions**

In a civil forfeiture case, the Government is the plaintiff and initiates the action by the filing of a verified complaint; the property is the defendant; and the claimant is an intervenor seeking to challenge the forfeiture. See United States v. One-Sixth Share, 326 F.3d 36, 40 (1st Cir. 2003). Once a complaint for forfeiture is filed, the government must provide notice to potential claimants by publication and, in some cases, by direct notice. First, the government must publish notice, which is typically done by posting notice on an official government forfeiture website for at least 30 consecutive days. See Supp. Rule G(4)(a)(iv)(C). Second, the government "must send notice of the action and a copy of the complaint to any person who reasonably appears to be a potential claimant on the facts known to the government before the end of the time for filing a claim under Rule G(5)(a)(ii)(B)". Supp. Rule G(4)(b)(i). The rule also states that "[a] potential claimant who had actual notice of a forfeiture action may not oppose or seek relief from forfeiture because of the government's failure to send the required notice." Supp. Rule G(4)(b)(v).

Supplemental Rule G(5)(a)(ii) sets the time within which any potential claimants must file claims to the defendant property identified in the complaint, stating in relevant part:

Unless the court for good cause sets a different time, the claim must be filed:

(A) by the time stated in a direct notice sent under Rule G(4)(b); [or]

(B) if notice was published but direct notice was not sent to the claimant or the claimant's attorney, no later than 30 days after final publication of newspaper notice or legal notice under Rule G(4)(a) or no later than 60 days after the first day of publication on an official internet government forfeiture site.

Supp. Rule G(5)(a)(ii).

The purpose of these strict time limitations "is to force claimants to come forward as soon as possible after forfeiture proceedings have been initiated so that all interested parties can be heard and the dispute resolved without delay." United States v. 1982 Yukon Delta Houseboat, 774 F.2d 1432, 1436 (9th Cir. 1985). Supplemental Rule G(5) does grant district courts discretion to extend these claim deadlines for good cause, but that discretion "is not unbounded," and should only be exercised where "the goals underlying the time restriction and the verification requirement are not thwarted." 1982 Yukon Delta Houseboat, 774 F.2d at 1435-36. The factors a court is to consider when determining whether a party seeking leave to file a late claim has demonstrated good cause include:

(1) the reason(s) proffered for the delay;

(2) whether the government encouraged the delay;

1     (3) whether the party seeking relief advised the court

2     and the government of its interest in the defendant

3     property before the claim deadline;

4     (4) the extent to which the government would be

5     prejudiced by allowing the late filing;

6     (5) the sufficiency of the movant's filings in meeting

7     the basic requirements of the verified claim; and

8     (6) whether the movant was timely in its request for

9     an enlargement of time.

10  United States v. $100,348.00 in United States Currency, 354 F.3d

11  1110, 1118 (9th Cir. 2004).

12     **B.**  **Movants Have Not Established Good Cause**

13     Movants cannot seriously dispute that they failed to file

14  timely claims. As described above, the time to file claims to

15  the Defendant Asset has expired twice: first on April 30, 2019,

16  and again after the Court reopened the claims period until May

17  24, 2019. Accordingly, this Court must find good cause in order

18  to excuse Movants' failure to file timely claims. Here, the

19  factors identified by the Ninth Circuit in $100,348.00 weigh in

20  favor of denying the Motion.

21     1.  Movants Have No Justification for their Delay

22     The first and second $100,348.00 factors blend together

23  here, as the Movants' sole justification for seeking to file

24  claims roughly 18 months after the deadline (which was itself

25  extended twice) is an accusation that the government failed to

26  provide them with direct notice. Notably, Movants say nothing

27  about when they actually became aware of this action, taking the

28  position that actual notice is irrelevant because the lack of

direct notice effectively tolls their time to file a claim indefinitely. See Mot. at 8-9. Movants' position is incorrect and unsupported by law, but more importantly, Movants never really explain why they failed to file timely claims. To be sure, Movants argue that they didn't receive direct notice, but never explain how they were prejudiced by this purported defect, or even assert that this lack of direct notice was the actual cause of their delay.

As described above, under Supplemental Rule G(4)(b)(i), the government is required to provide direct notice to "any person who reasonably appears to be a potential claimant on the facts known to the government before the end of the time for filing a claim under Rule G(5)(a)(ii)(B)[1]." Here, the government did exactly that. In the complaint, the government identified the known potential claimants to the Defendant Asset as Primus Trust, as the holder of the bank account the Defendant Asset was seized from, and Lacey, who the government understood at that time to be the beneficiary of the Trust. See '1210 Action, ECF No. 1 (Verified Complaint), ¶ 98 (describing Defendant Asset as "held in the name of Primus Trust Company ('Binghamton Trust') for the benefit of Lacey.")[2] The government provided notice as

---

[1]   In this a case, the relevant time period was "no later than 60 days after the first day of publication on an official internet government forfeiture site," which expired on December 21, 2018. See '1210 Action, ECF No. 20 (declaration of publication stating that publication began on October 22, 2018).

[2]   The government also identified Lacey's co-defendants in the criminal action as potential claimants.

required under Supp. Rule G, including by publication and through Lacey's counsel. <u>See</u> '1210 Action, ECF Nos. 20, 27.

Roughly six months after the filing of the complaint, in disclosures in the District of Arizona criminal case, Lacey disclosed documents purporting to show the beneficiaries of the Trust to be Movants. Assuming *arguendo* that Lacey's disclosures are accurate,[3] it appears that the government's understanding of the ownership of the Defendant Asset was simply mistaken; Lacey was the settlor, rather than a beneficiary of the Trust. But Supplemental Rule G requires only reasonable efforts,[4] and the government's honest mistake about the details of an opaque foreign trust structure does not provide good cause for Movants to strategically sit on any potential claims.

Movants argue that Lacey's March 2019 disclosure of the Trust's beneficiaries should have put the government on notice that they were potential claimants, but they can hardly critique the government for missing this connection ***when Lacey himself failed to identify Movants at potential claimants after disclosing them as Trust beneficiaries***. <u>See</u> '1210 Action, ECF No. 29, 29-1 (Lacey's motion to reopen claims period and

---

[3]    As detailed below, the failure of Primus, as trustee, to file claims to Trust assets raises concerns that the Trust is simply a sham, and accordingly, whether Movants are actually beneficiaries. <u>See</u> <u>United States v. Approximately $417,148.06 in</u> <u>U.S. Currency Seized From Bank of Am. Account No. 08067-05302,</u> 72 F. App'x 624, 625 (9th Cir. 2003).

[4]    For example, Supplemental Rule G(4) does not require actual service of direct notice, but only "means reasonably calculated to reach the potential claimant" (Supp. Rule G(4)(b)(iii)(A)), and only to "any person who reasonably appears to be a potential claimant." Supp. Rule G(4)(b)(i).

attaching list of potential claimants, but excluding movants). It was not until the very last day of the claims period when Lacey finally identified Movants as potential claimants while filing his own claims. In short, the government made reasonable efforts based on the information it had during the statutorily-defined period, and cannot be expected to have better knowledge about potential claimants than Lacey, the settlor of the Trust.

In fact, the government here arguably went above and beyond its obligations under Supplemental Rule G. The government "is not required to send notice to persons who lack standing to file a claim." See Cassella, Stefan D., Asset Forfeiture Law in the United States (2d ed. 2013), § 7-9(e). While a trustee almost always has standing to oppose forfeiture as the legal owner of trust assets (subject to certain exceptions such as sham trusts), whether a beneficiary has standing is a fact-intensive inquiry. The Ninth Circuit held in United States v. One Parcel of Land, Known as Lot 111-B, Tax Map Key 4-4-03-71(4), Waipouli, Kapaa, Island & Cty. of Kauai, State of Hawaii that a nominal owner who "does not exercise dominion and control over the property is insufficient even to establish standing to challenge a forfeiture." 902 F.2d 1443, 1444 (9th Cir. 1990); see also United States v. Vacant Land, 15 F.3d 128, 130 (9th Cir. 1993) (claimant who paid no consideration for the property and offered no evidence that he made any payments or had the ability to enter the property or otherwise exercise authority, lacked standing). The government recognizes that some courts have disagreed with One Parcel of Land in holding that trust beneficiaries with no dominion or control over trust assets may

1   still have standing (see, e.g., United States v. 5 S 351 Tuthill
2   Rd., Naperville, Ill., 233 F.3d 1017, 1022 (7th Cir. 2000)), but
3   even these non-binding cases are fact-dependent and generally
4   premised on facts such as fixed entitlements to distributions.
5   In sum, the government provided all the notice that was required
6   under the law of this Circuit, and Movants were entitled to
7   nothing more than this Circuit's case law requires.

8         Yet even if the Movants should have received direct notice
9   in March of 2019, failure to receive direct notice is not a
10  license for strategic delay. While Movants broadly assert that
11  "the government cannot forfeit the property interest of a person
12  who was entitled to direct notice pursuant to Rule G unless such
13  notice has been provided and the person thereafter failed to
14  file a claim" (Mot. at 8), Movants do not cite any binding
15  authority for this broad proposition. Instead, Movants cite only
16  one out of circuit holding which is inapplicable on its facts[5],
17  and smattering of authority for the unremarkable proposition
18  that parties with known cognizable property interests should

19  _____

20        [5]   Movants' primary cited authority, United States v.
21  Real Properties located at 7215 Longboat Drive (Lot 24), is not
    binding on this Court, yet even if it were, it would not support
22  Movants. In that case, the Eighth Circuit found that the
    government learned of potential claimants during the statutory
23  claims period. 750 F.3d 968, 974 (8th Cir. 2014) ("[W]e conclude
    that the Estate 'reasonably appear[ed] to be a potential
24  claimant' to the government 'before the end of the time for
    filing a claim.'"). Furthermore, 7215 Longboat Drive directly
25  contradicts Movants' assertion that "actual notice of the civil
26  forfeiture action is not a substitute for direct notice." Mot.
    at 8. The Court there held that actual notice would be a
27  substitute for direct notice if a claimant was on notice of the
    information required for direct notice. See id., 750 F.3d at
28  975.

                                11

receive notice. <u>See</u> Mot. at 7-8. But none of this authority suggests that a party with a nebulous or inchoate interest may sit on potential claims indefinitely simply because the government did not learn of this possible interest fast enough – and certainly not if that party has actual knowledge of the pending forfeiture action.

While Movants' acknowledge the language of Supplemental Rule G(4)(b)(v) ("A potential claimant who had actual notice of a forfeiture action may not oppose or seek relief from forfeiture because of the government's failure to send the required notice"), they offer a tortured construction of this text suggesting that it should only bar due process challenges, not forfeiture of property itself. The court should ignore this strained reading, and find that the Rule means exactly what it says: a party with actual knowledge cannot "oppose or seek relief from forfeiture" based on a lack of direct notice – which is exactly what Movants are seeking to do. Having failed to file claims within the required period, and refusing to admit when they actually learned of this action, they now seek to file claims opposing forfeiture which would be time-barred, but for the lack of direct notice. The standard here remains good cause, and a claimant who sits on his claims despite having actual knowledge of an action cannot show such good cause. <u>See</u> <u>United</u> <u>States v. Approximately $147,900.00 in U.S. Currency</u>, No. 1:16-CV-00805-SKO, 2017 WL 2379946, at *8 (E.D. Cal. June 1, 2017)("The Court therefore deems any failure by the Government to directly notify [claimant] immaterial because [claimant] nonetheless acquired actual notice of the forfeiture."); <u>United</u>

12

States v. One Piece of Real Prop. Located at 15010 S.W. 168th St., No. 07-20613-CIV, 2008 WL 659472, at *3 (S.D.Fla. Mar. 6, 2008) (claimant's "actual knowledge of the case prevents a finding that there was good cause for his failure to submit a claim").[6]

Movants have at most alleged that at some point after the close of the statutory claims period the government learned that Movants were beneficiaries of the Trust, and thus should have sent them direct notice. Movants never assert that they were prejudiced by this lack of direct notice, never assert that they were denied any particular information, and never even suggest that they would have filed claims sooner had they received notice. In sum, Movants' position is that, regardless of what they knew and when, absent direct notice they are entitled to sit on their rights and file claims whenever they choose. Such a result would be directly contrary to the Ninth Circuit's holding in 1982 Yukon Delta Houseboat, that good cause should be found only where it serves the goals underlying the statutory time restrictions. 774 F.2d at 1435-1436. Indefinite tolling from a simple mistake would encourage potential claimants to sit on their claims and see how a forfeiture case played out, rather than to assert any claims promptly.

---

[6]   Movants' citation to United States v. All Assets Held at Bank Julius, Baer & Co., Ltd., is unpersuasive, as in that case the court merely permitted late filing of an answer to an amended complaint where the claimants had already filed an answer to the original complaint. 228 F. Supp. 3d 118, 126 (D.D.C. 2017). Unlike Movants here, the beneficiaries there did not sit on their rights until after the settlor was facing a motion to strike, and then seek to file claims.

2.   <u>Movants Never Disclosed Their Interest in the
Defendant Asset</u>

The third factor, "whether the party seeking relief advised
the court and the government of its interest in the defendant
property before the claim deadline" weighs against Movants, as
the burden is on the Movants, but they have strategically
avoided providing information needed to assess this factor.
Movants say nothing about when they became aware of this action,
instead accusing the government of failing to provide notice.
Movants do not point to any action they themselves took to
advise the Court or the government of their purported interests,
and the government is not presently aware of any.[7]

3.   <u>Permitting Movants' Claims Would Prejudice the
Government and the Present Claimants</u>

The fourth factor, prejudice to the government, similarly
weighs against finding good cause here.

This case has been pending for more than two years and
multiple dispositive motions are pending. Permitting Movants to
file claims at this point would inject multiple factual issues
into this litigation which would likely delay resolution of the
pending motions and reward blatant gamesmanship. While the Court
is obligated to take factual allegations as true at this stage,
the Court can certainly take notice of the highly concerning
fact that Primus – the trustee responsible for exercising
control over and defending the Trust's assets – has neither

_____

[7]   While Movants may point to Lacey's March 2019
disclosures to argue that their purported interests were known
to the government, this factor looks as what steps were taken by
"the party seeking relief" – which is Movants, not Lacey.

14

appeared in this action nor filed claims. First, Lacey filed claims as the Trust's settlor, and once he was facing a motion to strike, the Trust's purported beneficiaties now seek to file claims. Yet the trustee remains conspicuously absent.

While there are certainly legitimate reasons that a foreign trustee might decide not to defend trust assets from potential forfeiture, this fact pattern raises questions about the potential legitimacy of the Trust. See <u>United States v. Approximately $417,148.06 in U.S. Currency Seized From Bank of Am. Account No. 08067-05302</u>, 72 F. App'x 624, 625 (9th Cir. 2003) ("Because the Trusts were shams, they had no legally protectable interest in the funds at issue; bare legal title without dominion or control of the property is not enough."). Permitting late claims by Movants would force the issues of Movants' actual knowledge and the legitimacy of the Trust into this action. Because these threshold issues would impact standing, they would need to be resolved before any dispositive motions as to the Defendant Asset can be ruled upon.[8] This sort of threshold discovery is likely to be time-consuming and logistically complicated, as evidence regarding the Trust's legitimacy will likely require discovery from the absent trustee, a foreign corporation located in Hungary. As such, granting Movants leave to file claims would not only add complex

---

[8]    "The substantive merits of the government's forfeiture action—whatever they may be—cannot be challenged by a claimant lacking a sufficient interest in the defendant property to confer Article III standing." <u>United States v. Real Prop. Located at 5208 Los Franciscos Way, Los Angeles, Cal</u>., 385 F.3d 1187, 1193 (9th Cir. 2004).

discovery, it would add discovery that must precede rulings on dispositive motions as to the Defendant Asset.

    4. The Sufficiency of Movants' Claims Cannot Accurately Be Evaluated Without Discovery

  The fifth factor, the sufficiency of Movants' proposed claims, is neutral or favors the government. As noted above, the standing of a trust beneficiary is a complex issue, and long standing Ninth Circuit precedent rejects finding standing for nominal owners without dominion or control over a defendant *res*.[9] See One Parcel of Land, 902 F.2d 1443, 1444.

  While the government will likely need discovery from Movants on this threshold issue, including responses to Supplemental Rule G Special Interrogatories, documents appended by Movants to their motion already raise questions about their purported standing. Where a putative claimant asserts an interest as a foreign trust beneficiary, a Court will look to the substance of the trust agreement and relevant foreign law to determine what (if any) rights or entitlements the beneficiary

_____

  [9] Movants' citation to United States v. Djeredjian, 532 F. App'x 734, 735 (9th Cir. 2013) appears to be in error. While Movants cite Djeredjian for the proposition that a trust beneficiary has forfeiture standing, the language Movants quote is simply not found in that opinion. In any event, as explained in the opinion below in that case, Djeredjian concerned an oral trust wherein the purported beneficiary possessed and resided in the trust property, which would appear to be well within the "dominion and control" standard set in One Parcel of Land.

  Based on the quoted language, Movants appear to have been attempting to cite to United States v. Preston, 123 F. Supp. 3d 24, 29 (D.D.C. 2015), a district court case which is certainly not binding on this Court.

has that might provide standing.[10] A good example of the fact-intensive nature of this inquiry is <u>United States v. All Assets Held in Account No. XXXXXXXX in name of Doraville Properties Corp</u>., 299 F. Supp. 3d 121 (D.D.C. 2018). While that decision is highly detailed, in brief summary, the Court found that out of eight foreign trust beneficiaries asserting claims, only one beneficiary had standing, based on his entitlement to fixed annuity payments, while the remaining beneficiaries lacked standing. <u>Id</u>., at 129-130. The court carefully examined the beneficiaries' purported rights under the trust agreement, finding that the beneficiaries "do not own, have any beneficial or proprietary interest in, or exercise dominion and control over the specific assets of the trusts" and had only a "future, contingent interest in the trust assets, but they lack[ed] present rights to any specific trust property." <u>Id</u>. at 135-137.

Without prejudice to a future motion to strike (should the Movants be granted leave to file claims), the trust agreement appended to the Motion (the "Agreement") shows some similarity to that examined and found wanting in <u>Doraville Properties</u>, and casts doubt on the Movants' purported standing. For example, the Agreement states that the trustee "shall manage the Trust assets, which ownership and possession has been transferred to the Trustee" (ECF 165-3, at 17) and that "[t]he trustee shall exercise the ownership of the Trust assets within the framework of this agreement." <u>Id</u>., at 18. Movants assert that they have rights under the Agreement "such as the right to regular updates

---

[10]    Unsurprisingly, such issues typically require significant expert discovery as to relevant foreign law.

regarding the status of trust property and the right to petition
the court for equitable relief in the event of a wrongful
transfer of trust property" (Mot. at 11), but similar rights
were found wanting by the court in <u>Doraville Properties</u>. 299 F.
Supp. 3d 121, 134 ("[C]laimants' ability to demand information
and an accounting from the trustee says nothing about whether
claimants have any colorable interest in specific assets of the
trust. After all, shareholders have the right to demand
information about the corporations in which they invest, yet it
is widely accepted, in Singapore and the United States, that
they lack any interest in specific corporate property."). 
Movants appended the Agreement to their Motion, and while
further discovery would certainly be needed as to their
purported standing, to the extent the Agreement raises questions
about the sufficiency of Movants' asserted interest, this factor
weighs against a finding of good cause here.

### 5.   Movants Never Sought Any Extension of Time

The sixth and final factor also runs against Movants, as
Movants made no request to extend their time to file a claim,
and as explained above, have strategically avoided disclosing
when they became aware of this action. Because the burden is on
Movants, their failure to provide any information on when they
learned of this action makes it impossible to weigh any reasons
Movants failed to request any extension of time.

### C.   The Court Should Not Reward Gamesmanship

While the $100,348.00 factors collectively weigh against
granting leave to file late claims here, in the event the Court

finds that this is a close question, the Court is entitled to –

and should – consider the obvious gamesmanship at play here.[11]

Movants have carefully avoided revealing when they became

aware of this pending action, but the timing of their appearance

cannot be ignored. Three months ago, the government moved to

strike all claims to the Defendant Asset on standing grounds.

Only Claimant Lacey opposed that motion, and in response, Lacey

offered virtually no authority supporting his purported claim,

attempting instead to amend his claim. See ECF No. 156, at 2-4

(Reply in Support of Motion to Strike). Pursuant to Supplemental

Rule G(8)(c)(ii)(A), the motion to strike must be addressed

before Claimants' pending motion to dismiss, and should the

motion to strike be granted, no party would have standing to

contest forfeiture of the Defendant Asset. Thus, with respect to

the Defendant Asset, Claimants' motions to dismiss would become

irrelevant. Facing this situation, Movants' sudden appearance,

more than 18 months after the claims deadline and while the

motion to strike remains pending, cannot be seen as anything

besides strategic. These circumstances raise serious questions

about Movants' coordination with the current claimants, and

accordingly, Movants' actual knowledge of this proceeding and

the reasons for their delay in seeking to file claims.

---

[11] The Court may consider whether a claim was filed in good
faith. See $100,348.00 (citing with approval United States v.
U.S. Currency, in the Amount of $103,387.27, 863 F.2d 555, 563
(7th Cir. 1988), which considered putative claimant's good faith
or lack thereof).

1

2  **IV.   CONCLUSION**

3      For the above reasons, the government respectfully requests

4  that Movants' motion to file late claims be denied.

5

6                                    Respectfully submitted,

7  DATED: December 1, 2020           NICOLA T. HANNA
                                     United States Attorney
8                                    BRANDON D. FOX
                                     Assistant United States Attorney
9                                    Chief, Criminal Division
                                     STEVEN R. WELK
10                                   Assistant United States Attorney
                                     Chief, Asset Forfeiture Section
11

12

13                                      /s/
                                     DAN G. BOYLE
14                                   Assistant United States Attorney

15                                   Attorneys for Plaintiff
                                     UNITED STATES OF AMERICA
16

17

18

19

20

21

22

23

24

25

26

27

28

20