Benjamin P. Lechman (CA-185729)
benlechman@hotmail.com
964 Fifth Avenue, #964
San Diego, CA 92101
Telephone: (619) 733-9789
Facsimile:  (888) 525-5789

Steven L. Kessler, *pro hac vice*
kesslerlawnyc@gmail.com
LAW OFFICES OF STEVEN L. KESSLER
747 Third Avenue, 20th Floor
New York, N.Y. 10017
Telephone: (212) 661-1500
Facsimile:  (914) 740-3365

*Attorneys for Proposed Claimants*
*Roarke Lacey and Colin Lacey*
*As Beneficiaries of the Binghamton Trust*

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA-WESTERN DIVISION

| | |
|---|---|
| United States of America, | Case No. 2:18-cv-08420-RGK (PJW) |
| Plaintiff, | MOVANTS' REPLY IN FURTHER SUPPORT OF MOTION FOR LEAVE TO FILE CLAIMS |
| vs. | |
| $1,546,076.35 In Bank Funds Seized From Republic Bank of Arizona Account '1889, *et al.*, | DATE:  December 21, 2020 |
| | TIME:   9:00 A.M. |
| Defendants. | LOCATION: Courtroom of the Honorable R. Gary Klausner |
| Roarke Lacy and Colin Lacey, | |
| Proposed Claimants. | |

1

2

3

4

 Movants and Proposed Claimants Roarke Lacey and Colin Lacey, by their counsel of record, Benjamin P. Lechman and Steven L. Kessler, *pro hac vice*, hereby file their Reply in further support of their Motion for Leave to File Claims to Certain Trust Property (ECF No. 165).

5

6

7

8

 This Reply is based upon the attached Reply Memorandum of Points and Authorities, Movants' previously filed Notice of Motion and Memorandum of Points and Authorities, Declaration of Benjamin P. Lechman and exhibits, including the proposed Verified Claims; and all pleadings and papers on file in this action.

9 Dated:    December 14, 2020

10

11

12

13

 Respectfully submitted,

 BENJAMIN P. LECHMAN

 */s/ Benjamin P. Lechman*
 STEVEN L. KESSLER, *pro hac vice*

14

15

 *Attorneys for Proposed Claimants*
 *Roarke Lacey and Colin Lacey*

16

17

18

19

20

21

22

23

24

25

26

27

28

REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION FOR LEAVE TO
FILE CLAIMS TO CERTAIN TRUST PROPERTY

# **TABLE OF CONTENTS**

I.      The Motion's Key Points are Uncontested ....................................................... 1

II.     The Government's Primary Legal Argument Is Based on
        Obsolete Law............................................................................................... 2

III.    The Motion Should Be Granted Under This Court's Local
        Admiralty Rules .......................................................................................... 5

IV.     The Government's Arguments Contravene CAFRA ....................................... 6

V.      The Government's Standing Arguments Are Without Merit........................... 7

VI.     There is No Gamesmanship .......................................................................... 8

CONCLUSION ................................................................................................................ 9

# TABLE OF AUTHORITIES

## *CASES*

*Diversified Funding Grp., LLC v. Hendon*, 2017 WL 3014492 (C.D. Cal. June 12, 2017) (report and recommendation), *adopted*, 2017 WL 3014494 (C.D. Cal. July 12, 2017), *aff'd*, 765 F. App'x 295 (9th Cir. 2019). .................................................. 7

*In re Segovia*, 404 B.R. 896 (N.D. Cal. 2009) ........................................................... 7

*United States v. $100,348.00 in U.S. Currency*, 354 F.3d 1110 (9th Cir. 2004) ............... 3-4

*United States v. $133,420.00 in U.S. Currency*, 672 F.3d 629 (9th Cir. 2012)) .................. 7

*United States v. Approximately $147,900.00 in U.S. Currency*, 2017 WL 2379946 (E.D. Cal. June 1, 2017) ........................................................................ 4

*United States v. $149,345 United States Currency*, 747 F.2d 1278 (9th Cir. 1984) ............... 3

*United States v. $229,850.00 in U.S. Currency*, 50 F. Supp. 3d 1171 (D. Ariz. 2014) ........ 3

*United States v. $1,546,076.35 In Bank Funds Seized from Republic Bank of Arizona Account 1889*, Order (C.D. Cal. Dec. 1, 2020) (Klausner, J.) ............................................ 7

*United States v. All Assets Held in Account No. XXXXXX in name of Doraville Properties Corp.*, 299 F. Supp. 3d 121 (D.D.C. 2018) ........................................................ 7-8

*United States v. Djeredjian*, 532 F. App'x 734 (9th Cir. 2013) ................................. 8

*United States v. Ferro*, 681 F.3d 1105, 1112 (9th Cir. 2012) ..................................... 2

*United States v. One Piece of Real Prop. Located at 15010 S.W. 168th St.*, 2008 WL 659472 (S.D. Fla. Mar. 6, 2008) ...................................................................... 4

*United States v. Preston*, 123 F. Supp. 3d 24 (D.D.C. 2015) ..................................... 8

*United States v. Real Prop. Located in Venice CA*, 2013 WL 5421683 (C.D. Cal. Sept. 23, 2013) ................................................................... 4

*United States v. Real Properties Located at 7215 Longboat Drive (lot 24)*, 750 F.3d 968 (8th Cir. 2014)................................................................................................. 5

**_FEDERAL CONSTITUTION, STATUTES and RULES_**

U.S. Const. Art. III .................................................................................... 7-8

Civil Asset Forfeiture Reform Act of 2000 (CAFRA) ................................. 2, 6

Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, Rule G ....................................................................................... 1, 5

Local Rules for Admiralty and Maritime Claims and Asset Forfeiture Actions, Rule C.4 ...................................................................................................... 5

Local Rules for Admiralty and Maritime Claims and Asset Forfeiture Actions, Rule C.5 .................................................................................................. 5-6

**_OTHER AUTHORITIES_**

Casella, Stefan D., *The Civil Asset Forfeiture Reform Act of 2000: Expanded Government Forfeiture Authority and Strict Deadlines Imposed on All Parties*, 27 J. Legis. 97, 122-25 (2001) ............................................................................................... 3

Supplemental Rules for Certain Admiralty and Maritime Claims, Rule C (pre-2000 version)................................................................................................ 3

## REPLY MEMORANDUM OF POINTS AND AUTHORITIES

The government's opposition concedes all of the key legal and factual contentions necessary to grant the motion of Proposed Claimants Roarke Lacey and Colin Lacey ("the Motion"), as beneficiaries of the Binghamton Trust ("the Trust"), for leave to file Claims to an account held by the Trust ("the Trust Property"). The arguments it does make, which are insufficient to counter its dispositive concessions, confirm that the Motion should be granted.

## I.    The Motion's Key Points Are Uncontested.

The Motion demonstrated, and the government does not dispute, that the government has had information regarding the Proposed Claimants' interest in the Trust Property for at least 20 months, when documentation, including the Trust documents, was produced to the government as part of Michael Lacey's Rule 16 Reciprocal Disclosures in the Arizona criminal proceeding on or about March 4, 2019, demonstrating that Proposed Claimants are beneficiaries of the Trust.

The Motion demonstrated, and the government does not dispute, that on May 24, 2019, in his Certificate and Notice of Interested Parties, filed in connection with his Claim to the Trust Property, Michael Lacey identified the Proposed Claimants as "Potential Claimants."

The Motion demonstrated, and the government does not dispute, that Proposed Claimants are "person[s] who reasonably appear[ed] to be . . . potential claimant[s] on the facts known to the government before the end of the time for filing a claim under Rule G(5)(a)(ii)(B)."

The Motion demonstrated, and the government does not dispute, that the government was required by Rule G of the Supplemental Rules for Admiralty and Maritime Claims and Asset Forfeiture Actions ("Rule G") to "send notice of the action

and a copy of the complaint to" the Proposed Claimants to trigger their deadline to file claims.

The Motion demonstrated, and the government does not dispute, that appellate case law confirms that where a potential claimant is entitled to direct notice under by Rule G, his time to file a claim to property in a civil forfeiture action does not begin to run until such notice is served.

The Motion demonstrated, and the government does not dispute, that where a potential claimant is entitled to direct notice, publication notice will not suffice to trigger the claimant's time to file a claim, and

The Motion demonstrated, and the government does not dispute, that the government failed – at any time – to provide the Proposed Claimants (or the Trust itself) – with direct notice of the forfeiture action against the Trust Property.

Accordingly, the government's opposition fails to dispute the Motion's central contention that the Proposed Claimants' Claims are timely.

## II.   The Government's Primary Legal Argument Is Based on Obsolete Law.

Rather than dispute the central contention of the Motion, the government's opposition argues that the "relevant law" on this Motion requires the Proposed Claimants to demonstrate "good cause" for seeking leave to file claims at this stage in the litigation.  (Opp'n at 5.)  This legal argument consumes nearly the government's entire submission.  (*Id.* 5-18.)

The Civil Asset Forfeiture Reform Act of 2000 (CAFRA) is controlling in this proceeding.  CAFRA sought to remedy what Congress deemed "abuses" of civil forfeiture.  *United States v. Ferro*, 681 F.3d 1105, 1112 (9th Cir. 2012) (citations omitted). Civil forfeitures were never preferred by Congress or the courts because of the potential for abuse.  Indeed, the bill which eventually led to CAFRA was passed 375-48, and unanimously in the Senate.  As explained by a former Deputy Chief of the Justice

Department's Asset Forfeiture and Money Laundering Section, one of CAFRA's major reforms was the imposition of strict notice requirements on the government to level the playing field and limit default forfeitures:

> The enactment of CAFRA was, in part, a reaction to the perception that there was some inequity in imposing strict deadlines and sanctions on property owners contesting civil forfeiture actions, while not imposing similar deadlines and sanctions on the government. The logic was that if property owners were required to file claims within a fixed period of time, and were made to suffer consequences for failing to do so, the government should face deadlines and suffer consequences as well.

Casella, Stefan D., *The Civil Asset Forfeiture Reform Act of 2000: Expanded Government Forfeiture Authority and Strict Deadlines Imposed on All Parties*, 27 J. Legis. 97, 122-25 (2001), *quoted in*, *inter alia*, *United States v. $229,850.00 in U.S. Currency*, 50 F. Supp. 3d 1171, 1176 (D. Ariz. 2014).

Yet, the government fails to mention that its central argument is founded on a decision that applied *pre-CAFRA law*. As the Ninth Circuit held in *United States v. $100,348.00 in U.S. Currency*, 354 F.3d 1110, 1116 (9th Cir. 2004), "[b]ecause this case was commenced within this 120-day period [after the enactment of CAFRA], CAFRA does not apply."

The Court in *$100,348.00* did not even apply Rule G, which was substantially rewritten as part of CAFRA. Instead, it applied its predecessor, Rule C(6). 354 F.3d at 1116-17. Indeed, the Court's "good cause" standard was derived from a 1984 decision applying Rule C(6). *Id.* at 1117 ("In *United States v. $149,345 United States Currency*, 747 F.2d 1278 (9th Cir. 1984), we identified certain factors that the district court should consider in ruling on an untimely Rule C(6) claim").

The government fails to explain why or how these pre-CAFRA decisions have any relevance to this Motion.

1  Further, the government omits the fact that, in *$100,348.00*, the government

2  *provided direct written notice* of the forfeiture action to the claimant.  *See $100,348.00*, 354

3  F.3d at 1114 ("[T]he United States Attorney's Office . . . gave notice of the action by

4  sending certified letters to all parties known to have an interest in the defendant

5  currency," including the claimant).

6  Thus, *$100,348.00* is both legally and factually irrelevant to this Motion.  Yet, the

7  government not only fails to acknowledge that the decision is founded on obsolete law,

8  but creates the impression that it remains controlling here by asserting that: "The

9  standard here remains good cause" (Opp'n at 12.)

10  Notably, the only reported post-CAFRA decision where *$100,348.00* was cited

11  on the issue of claim timeliness is *United States v. Real Prop. Located in Venice CA*, 2013

12  WL 5943222 (C.D. Cal. Oct. 30, 2013), a decision discussed in the Motion but avoided

13  in the government's opposition.  There, this Court cited *$100,348.00* for the proposition

14  that "district courts have discretion to accept late claims under the Supplemental Rules

15  in *in rem* forfeiture cases."  *Id.* at *2.

16  The two post-CAFRA "good cause" cases cited by the government (Opp'n at

17  12-13) are clearly distinguishable.  In *United States v. Approximately $147,900.00 in U.S.*

18  *Currency*, 2017 WL 2379946 (E.D. Cal. June 1, 2017), the court struck claims as a

19  sanction for claimant's repeated failure to comply with court-ordered discovery and

20  applied the sanctions standard as the primary basis for its decision.  The court added

21  briefly that the claims had also been filed late and referenced the good cause standard

22  to excuse the absence of direct notice.

23  *United States v. One Piece of Real Prop. Located at 15010 S.W. 168th St.*, 2008 WL

24  659472 (S.D. Fla. Mar. 6, 2008) did not involve a motion to file a late claim, but a

25  motion to vacate a default judgment, which requires a showing under Fed. R. Civ. P.

26

27

28

60(b).  Further, among a mountain of bad facts, the claimant there had in fact been served with direct notice.

While, as the government contends, *United States v. Real Properties Located at 7215 Longboat Drive (lot 24)*, 750 F.3d 968 (8th Cir. 2014) may not be "binding on this Court" (Opp'n at 11), it is a Circuit Court decision that is nevertheless persuasive appellate precedent and, unlike the cases relied upon by the government, actually construes and applies the law that governs this Motion.  Pursuant to that law, the Proposed Claimants' time to file their Claims has not yet begun to run.  Accordingly, on this ground alone, this Motion should be granted.

## III.   The Motion Should Be Granted Under This Court's Local Admiralty Rules.

While downplaying appellate precedent as non-binding, the government fails to address authority that *is* binding: this Court's Local Admiralty Rules.  As the Motion demonstrates, these rules confirm and enforce the plain language of Rule G and its correct application in *7215 Longboat Drive*.  The Local Admiralty Rules confirm that direct mailed notice to persons with an interest in the property is required in all civil forfeiture proceedings and that such direct notice is required to obtain a default judgment forfeiting the property.  *See* Local Admiralty Rules C.4(a); C.5.  Together with Rule G and the Court's Scheduling Order, these provisions constitute the primary stated bases for the Motion.  Yet, the Local Admiralty Rules are not even mentioned in the government's opposition.

The government's opposition seeks to clear a path for a motion to forfeit the Trust Property on default.  But the Local Admiralty Rules make clear that the government cannot succeed on such a motion on this record, as the government admittedly failed to provide direct notice to all parties with a potential interest in the

Trust Property and will be unable to show that "no one has appeared to claim the property," as required by Local Admiralty Rule C.5.

Thus, barring the Proposed Claimants from asserting their interest in the Trust Property, as the government seeks to do by opposing this Motion, will *not* enable the government to obtain a default judgment against the property.  The government's opposition is therefore an exercise in futility.

## IV.   The Government's Arguments Contravene CAFRA.

The government not only contravenes CAFRA by claiming that there should be no consequences for violating the statute's direct notice requirements, but goes even further here and turns CAFRA on its head, arguing that it is the *claimants*' duty not only to notify the government of their interest in property that the government seeks to forfeit, but to also explain why they were entitled to direct notice.  (Opp'n at 13.)   The government's only support for its position is its opinion that the procedures mandated by CAFRA permit a party to "sit on potential claims indefinitely" and wait and "see how a forfeiture case plays out." (Opp'n at 12-13.)

This 'slippery slope' argument has no relevance here.   Unaddressed and unrefuted in the government's opposition is the fact that this case is still in the pleading stage, has been stayed almost since its inception and, if the government's own request is granted, is likely to be stayed again, still at the pleading stage.  Further, the government ignores the provision of this Court's Scheduling Order permitting motions for new claims to be filed within 15 days of the Order.

CAFRA and the Local Admiralty Rules are clear.  The government cannot forfeit property from someone who, like the Proposed Claimants, is entitled to, but was not provided with, direct notice of the forfeiture.

**V.      The Government's Standing Arguments Are Without Merit.**

The Proposed Claimants have already acknowledged that on a motion for leave to file a claim, the movant should demonstrate Article III standing.  The Motion has made that showing.  As this Court has recently observed, Article III standing is satisfied by demonstrating a "colorable interest in the property."  *United States v. $1,546,076.35 In Bank Funds Seized from Republic Bank of Arizona Account 1889*, Order at 4 (C.D. Cal. Dec. 1, 2020) (Klausner, J.) (quoting *United States v. $133,420.00 in U.S. Currency*, 672 F.3d 629, 637 (9th Cir. 2012)) (internal quotations omitted).

The government's opposition fails to raise a legitimate question about the Proposed Claimants' interest in the Trust Property as beneficiaries of the Trust.  The government focuses on "dominion and control." (Opp'n at 10, 15-17.)  But it is not necessary for the beneficiary of a trust to have dominion and control over trust property.  Indeed, for a spendthrift trust, it is critical that the beneficiary does *not* have dominion and control over the trust property. Otherwise, the trust assets can be invaded by the beneficiaries' creditors.  *See, e.g., Diversified Funding Grp., LLC v. Hendon*, 2017 WL 3014492, at *7 (C.D. Cal. June 12, 2017) (report and recommendation) (concluding that "'dominion and control' by beneficiary over trust assets 'was sufficient to destroy its spendthrift nature'" (quoting *In re Segovia*, 404 B.R. 896, 928 (N.D. Cal. 2009))), *report and recommendation adopted*, 2017 WL 3014494 (C.D. Cal. July 12, 2017), *aff'd*, 765 F. App'x 295 (9th Cir. 2019).

The government's assertion that *United States v. All Assets Held in Account No. XXXXXX in name of Doraville Properties Corp.*, 299 F. Supp. 3d 121 (D.D.C. 2018), "shows some similarity" to the facts of this case is equally unavailing.  (Opp'n at 18.) In fact, that decision *supports* the Proposed Claimants' standing.  In *Doraville*, the

beneficiaries whose claims were dismissed failed because their interest in the trust could be revoked by the trustee at any time.  *See Doraville*, 299 F. Supp. 3d at 133.[1]

Here, however, the Trustee has no power to revoke the Proposed Claimants' interest as beneficiaries of the Trust, nor does the government claim otherwise. Notably, the Proposed Claimants' interest in the Trust Property is clear from the Trust documents.  Yet, the government contends that a "fact-intensive" inquiry is necessary to verify what Proposed Claimants have already shown.  (Opp'n at 17.)  The Trust language quoted by the government confirms that the Trust's structure is closely analogous to that of irrevocable trusts recognized as valid in the United States.  And the government disregards the secondary authority in the Motion demonstrating that Hungarian irrevocable trusts confer interests on the beneficiaries in specific trust property, which is all that is necessary to confer Article III standing.   Notably, the government was content to rely on the Trust documents and analogies to United States trust law in arguing that Michael Lacey, as the Settlor, did *not* have a colorable interest in the Trust Property.

In sum, the Proposed Claimants have sufficiently demonstrated a legitimate interest in the Trust Property to establish standing for purposes of this Motion.

## VI.    There Is No Gamesmanship.

Finally, the government contends that the timing of the Motion suggests some kind of "gamesmanship" by the Proposed Claimants.  (Opp'n at 18-19.)  It is easy to

---

[1] The government includes 11 footnotes in a 20-page document, and we decline to address them in the interests of brevity and the page limitations of this Court, except to note that our Memorandum of Points and Authorities did inadvertently omit the citation for the quote that follows the citation of *United States v. Djeredjian.* 532 F. App'x 734 (9th Cir. 2013) on page 9 of the Motion.  The government is correct (Opp'n at 16, fn. 9) that the quote is from *United States v. Preston*, 123 F. Supp. 3d 24, 29 (D.D.C. 2015).  In any event, both *Djeredjian* and *Preston* upheld the standing of a beneficiary asserting an interest in trust property.

make *allegations* of bad intent.  Indeed, Proposed Claimants could argue that the government deliberately decided not to provide direct notice to the Trustee and Beneficiaries of the Trust because it was hoping the oversight would go unnoticed among the hundreds of claims and properties and that it could secure a default judgment in a case it could not win on the merits if contested.

The government takes the untenable position that its mistake in failing to serve anyone affiliated with the Trust with direct notice should not only be excused, but should be rewarded with the forfeiture of the Trust Property on default, while the Proposed Claimants' oversight should be punished with the permanent loss of their property without an opportunity to challenge the forfeiture on the merits.  If the government's argument is accepted, the Court should declare that there are offsetting penalties and reset the game clock to permit the Proposed Claimants to file their claims. At this stage, granting this motion will have no effect on this litigation proceeding in a just and efficient manner.

**CONCLUSION**

For the reasons set forth above and in their previous submissions on this Motion, the Proposed Claimants' motion for leave to file Verified Claims to the Trust Property should be granted.

Dated: December 14, 2020                Respectfully submitted,


                                        */s/ Benjamin P. Lechman*
                                        Benjamin P. Lechman
                                        Steven L. Kessler, *pro hac vice*
                                        *Attorneys for Movants*
                                        *Roarke Lacey and Colin Lacey*

**CERTIFICATE OF SERVICE**

I hereby certify that on December 14th, 2020, I filed the foregoing with the United States District Court for the Central District of California using the CM/ECF system.

I hereby certify that on December 14th, 2020, a copy of the foregoing was also delivered to the following via CM/ECF:

DANIEL BOYLE
U.S. Attorney's Office
Asset Forfeiture Section
312 North Spring Street
Los Angeles, California 90012


/s/ Benjamin P. Lechman
Benjamin P. Lechman

REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION FOR LEAVE TO
FILE CLAIMS TO CERTAIN TRUST PROPERTY
10