Steven L. Kessler, admitted *pro hac vice*
kesslerlawnyc@gmail.com
LAW OFFICES OF STEVEN L. KESSLER
P.O. Box 100, Wykagyl Station
New Rochelle, N.Y. 10804
Telephone: (212) 661-1500
Facsimile: (914) 740-3365

Paul J. Cambria, Jr. (CA 177957)
pcambria@1glaw.com
LIPSITZ GREEN SCIME CAMBRIA LLP
42 Delaware Avenue, Suite 120
Buffalo, New York 14202
Telephone: (716) 849-1333
Facsimile:  (716) 855-1580

*Attorneys for Claimant Michael Lacey*

## UNITED STATES DISTRICT COURT
### FOR THE CENTRAL DISTRICT OF CALIFORNIA-WESTERN DIVISION

| | |
|---|---|
| United States of America, | Case No. 2:18-cv-08420-RGK (PJW) |
| Plaintiff, | NOTICE OF MOTION AND MOTION TO RELEASE CERTAIN RESTRAINED ASSETS ON THE GROUND THAT THEY HAVE NOT BEEN SHOWN TO BE SUBJECT TO FORFEITURE; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION WITH EXHIBITS AND PROPOSED ORDER |
| vs. | |
| $1,546,076.35 In Bank Funds Seized From Republic Bank of Arizona Account '1889, *et al.*, | |
| Defendants. | |
| Michael Lacey, | DATE:  January 10, 2022 |
| Claimant. | TIME:   9:00 A.M. LOCATION: Courtroom of the Honorable R. Gary Klausner |

PLEASE TAKE NOTICE that on January 10th, 2022 at 9:00 a.m., or as soon thereafter as the matter may be heard, in the courtroom of the Honorable R. Gary Klausner, United States District Court, Courtroom 850, 255 Temple Street, 7th Floor, Los Angeles, CA 90012, Claimant Michael Lacey, owner of certain property named as *in rem* defendants in this civil forfeiture action, will move for an Order, pursuant to Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions and 18 U.S.C. § 983.

This motion is made following a telephone call between counsel on November 11, 2021 and a subsequent email exchange between counsel on November 16, 2021, pursuant to Local Rule 7-3.

This motion is based upon this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, and all pleadings and papers on file in this action.

Dated:        December 10, 2021

Respectfully submitted,

PAUL J. CAMBRIA, Jr.

 */s/ Paul J. Cambria, Jr.*

STEVEN L. KESSLER,
Admitted *pro hac vice*
*Attorneys for Claimant*
*Michael Lacey*

---

NOTICE OF MOTION AND MOTION TO LIFT RESTRAINTS

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................... ii

SUMMARY OF RELIEF SOUGHT .....................................................................1

THE FORFEITURE CLAIMS ..............................................................................2

ASSETS TO BE RELEASED .............................................................................4

    The Co-op ..................................................................................................4

    The Segregated Village Voice Accounts.................................................5

ARGUMENT ........................................................................................................8

1.    Relevant Civil Forfeiture Law and Legal Background ..................................8

    *Ex Parte* Seizures.................................................................................8

    The Government's Heightened Burden of Proof Affects All Stages of the
Proceedings .................................................................................................11

        Release of Property After Filing of Civil Forfeiture Complaint ..............13

2.    The Assets in Issue Must Be Released .........................................................15

        The Co-op .................................................................................................16

        The Segregated Accounts .......................................................................18

CONCLUSION ......................................................................................................20

---

NOTICE OF MOTION AND MOTION TO LIFT RESTRAINTS

i

# **TABLE OF AUTHORITIES**

## ***CASES***

*Matter of Seizure of: Any & all funds held in Republic Bank of Arizona Accts.*, 2019 WL 8892585 (C.D. Cal. Dec. 20, 2019) (Klausner, J.), *appeal dismissed sub nom. In re Any & All Funds Held in Republic Bank of Arizona Accts. XXXX1889, XXXX2592, XXXX1938, XXXX2912, & XXXX25002*, 817 F. App'x 483 (9th Cir. 2020)........................................................................ 2, 14-15

*Camacho v. United States*, 2013 WL 1207522 (S.D. Cal. 2013) ............................15

*Honeycutt v. United States*, 581 U.S. ___, 137 S. Ct. 1626 (2017)..................10, 13

*Joint Anti-Fascist Refugee Comm. v. McGrath*, 341 U.S. 123 (1951) (Frankfurter, J., concurring) ............................................................................................9

*Kaley v. United States*, 571 U.S. 320 (2014) ........................................................10

*Krimstock v. Kelly*, 306 F.3d 40 (2d Cir. 2002), *cert denied*, 539 U.S. 969 (2003) ..............................................................................................................9, 14

*Luis v. United States*, 578 U.S. ___, 136 S. Ct. 1083 (2016) ...........................10, 13

*Republic Nat'l Bank v. Miami*, 506 U.S. 80 (1992)..................................................8

*Sandoval v. Cty. of Sonoma*, 912 F.3d 509 (9th Cir. 2018) ......................................9

*Smith v. County of Los Angeles*, 2015 WL 12731913 (C.D. Cal. Jan. 16, 2015)......9

*Timbs v. Indiana*, 586 U.S.___, 139 S. Ct. 682 (2019) ...........................................18

*United States v. $40,200.00 in U.S. Currency*, 2015 WL 12914363 (C.D. Cal. Aug. 24, 2015) ..............................................................................................18

*United States v. $80,180.00 in U.S. Currency*, 303 F.3d 1182 (9th Cir. 2002)........12

*United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504 (5th Cir. 2008)..........13

*United States v. $739,047.03 in U.S. Currency*, 103 F. App'x 245 (9th Cir. 2004).14

*United States v. Bajakajian*, 524 U.S. 321 (1998)................................................8, 18

*United States v. Cosme*, 796 F.3d 226 (2d Cir. 2015) ................................................3

*United States v. E-Gold, Ltd.*, 521 F.3d 411 (D.C. Cir. 2008) ................................11

*United States v. French*, 748 F.3d 922 (9th Cir. 2014)............................................17

*United States v. Gurolla*, 333 F.3d 944 (9th Cir. 2008) ..........................................19

*United States v. James Daniel Good Real Prop.*, 510 U.S. 43 (1993) ......... 9-11, 13

*United States v. Johnson*, 683 F. App'x 241 (4th Cir. Apr. 3, 2017) ......................16

*United States v. Kirschenbaum*, 156 F.3d 784 (7th Cir. 1998)................................11

*United States v. Lacey*, 18-CR-422-PHX-DLR (D. Ariz.) ........................................2

*United States v. Lindell*, 2016 WL 4707976 (D. Haw. Sept. 8, 2016), *aff'd*, 766 F.
     App'x 525 (9th Cir. 2019)..............................................................................15

*United States v. Melrose East Subdivision*, 357 F.3d 493 (5th Cir. 2004) ..............11

*United States v. Real Property Located at 1407 N. Collins St.*, 901 F.3d 268 (5th
     Cir. 2018) .......................................................................................................11

*United States v. Sum of $185,336.07 U.S. Currency Seized from Citizen's Bank
     Acct. L7N01967*, 731 F.3d 189 (2d Cir. 2013) ................................................12

*Various Items of Personal Property v. United States*, 282 U.S. 577 (1931) ............8

*von Hofe v. United States*, 492 F.3d 175 (2d Cir. 2007)..........................................18

NOTICE OF MOTION AND MOTION TO LIFT RESTRAINTS

iii

***FEDERAL STATUTES and RULES***

18 U.S.C. § 981(a) ................................................................... 16-17

18 U.S.C. § 983(a) ..................................................................... 16

18 U.S.C. § 983(c) ...........................................................12, 16, 18

18 U.S.C. § 983(d) ....................................................................13

28 U.S.C. § 1956.................................................................16, 19

28 U.S.C. § 1957.................................................................. 16-18

Civil Asset Forfeiture Reform Act of 2000 (CAFRA) ......................... 12-13, 15, 17

Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture
     Actions, Rule G ................................................................8, 13, 15

## MEMORANDUM OF POINTS AND AUTHORITIES

## SUMMARY OF RELIEF SOUGHT

Untainted property may not be restrained before trial.  This fundamental principle is central to both civil and criminal federal forfeiture law.  It is a principle that has been confirmed and strengthened by a series of United States Supreme Court opinions issued since 2014.

The assets that are the subject of this motion may not be restrained before trial because they have not been shown to be the proceeds of, or involved in, the alleged criminal activity.  One property was purchased by claimant Michael Lacey before the earliest date that the criminal activity was first alleged to have generated illegal proceeds and funds in two segregated accounts came from sources unrelated to the alleged criminal activity.

With respect to these assets, the government has failed to demonstrate a reasonable belief that it will be able to meet its burden of proof at trial to demonstrate that the properties are subject to forfeiture.  Although such a failure of proof would warrant the dismissal of the claims against these properties, Mr. Lacey seeks only to lift the restraints on them pending the trial of the civil proceeding.

The government is still free to pursue its forfeiture claims against these assets, both in the criminal case and in this proceeding.  However, unless and until the government demonstrates that these assets are subject to forfeiture, they may not be restrained.  Accordingly, this motion to release the restraints on these properties should be granted.

NOTICE OF MOTION AND MOTION TO LIFT RESTRAINTS

1

### THE FORFEITURE CLAIMS

In this civil forfeiture action and in a related criminal case pending in the District of Arizona, the government seeks to forfeit and has seized or restrained tens of millions of dollars in hundreds of accounts and dozens of properties to satisfy a potentially limitless sum. *See, e.g.*, *United States v. Lacey*, 18-CR-422-PHX-DLR (D. Ariz.), Superseding Indictment, Forfeiture Allegation One, ¶ 2(a); Forfeiture Allegation Two, ¶ 2(a) (seeking to forfeit "any and all property, real or personal, constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of" dozens of counts set forth in the indictment, totaling an unspecified amount, as well as all property that allegedly facilitated the laundering of such property as well as untainted property to the extent that such property is unavailable) ("the indictment").   The 90-page "First Amended Verified Complaint" (Doc. 108) ("complaint"), is similarly broad, seeking forfeiture of more than 96 assets on the same grounds alleged in the indictment.  See Compl. ¶¶ 3-99 (listing property sought to be forfeited); *id*. at ¶¶ 100-101, 239-241 (legal claims).

As this Court previously observed, the criminal forfeiture allegations in the indictment "largely mirror the civil forfeiture actions in this case . . .." *Matter of Seizure of: Any & all funds held in Republic Bank of Arizona Accts.*, 2019 WL 8892585, at *9 (C.D. Cal. Dec. 20, 2019) (Klausner, J.) (Doc. 130), *appeal dismissed sub nom. In re Any & All Funds Held in Republic Bank of Arizona Accts. XXXX1889, XXXX2592, XXXX1938, XXXX2912, & XXXX25002*, 817 F. App'x 483 (9th Cir. 2020) (hereinafter cited as "Doc. 130").

While the property in the civil and criminal cases is virtually the same and is sought to be forfeited on the same grounds, the property that is the subject of this

---

NOTICE OF MOTION AND MOTION TO LIFT RESTRAINTS

2

motion has been seized and/or restrained in the civil case.  The indictment only 'notices' the government's intent to seek forfeiture in the criminal case if the matter proceeds to sentencing.  There has been no finding of probable cause in the criminal case that any property is subject to forfeiture.  *See*, *e.g.*, *United States v. Cosme*, 796 F.3d 226, 234-35 (2d Cir. 2015) ("the district court relied on a mistaken understanding of what the grand jury voted on in the indictment. . .. [T]he grand jury did not vote on the forfeiture allegations, which were simply notice provisions not subject to a grand jury vote").

The only showing by the government that any of the seized or restrained property is subject to forfeiture was made *ex parte*, in support of the government's motions for seizure orders.  This motion is limited to assets that, as a matter of law, have not and, based on the allegations asserted to date in either the civil or criminal proceeding, cannot be subject to forfeiture.

Notably, on September 14, 2021, the Arizona District Court in the related criminal proceeding granted the defendants' motion for a mistrial after the government solicited and introduced prejudicial evidence unrelated to any charges, despite repeated warnings by the court.  The government's actions at the criminal trial demonstrate its inability to prove its case – not only in the criminal case, but also as to the identical theories on which this civil forfeiture proceeding is based.

NOTICE OF MOTION AND MOTION TO LIFT RESTRAINTS

3

### Assets To Be Released[1]

The assets that are the subject of this motion fall into two categories: (1) real property purchased prior to the earliest specific allegations of the claimants earning proceeds from unlawful activities, and (2) funds in accounts that were formed specifically to receive money from business activities that are conceded to be untainted.

The Co-op: To justify the limitless seizures of the claimants' property, the complaint broadly alleges that, "from its inception" in 2004, "most of Backpage's earnings represented the proceeds of illegal activity . . .." Doc. 108, ¶¶ 122-123.

The indictment, however, is considerably more nuanced than the complaint. There, the government concedes that Backpage did not generate quantifiable profits until 2008:

> During its first few years of operation, Backpage accounted for only a fraction of VVMH's overall revenue. In January 2006, for example, VVMH estimated that Backpage supplied only 1% of its overall advertising revenue . . .. By 2008, Backpage was generating over $5 million in annual profit. This annual profit figure increased to over $10 million in 2009. (Indictment, ¶¶ 22-23).

There is no allegation regarding Backpage profits in 2007, nor any attempt to allege whether any of the owners received any such profits, or how much. The

---

[1] In *United States v. Lacey*, 18-CR-422-PHX-DLR (D. Ariz.), Michael Lacey is party to a joint motion seeking the release of funds which are not the subject of or at issue on this motion. The assets at issue in that motion include funds, including some seized from attorney escrow accounts, to pay for the defense of all defendants and maintain continuity of counsel in connection with the retrial of that case. The assets at issue on the motion before this Court belong solely to Mr. Lacey and have already been the subject of prior orders and proceedings in this Court. See Docs. 22, 72, 99 & 131.

NOTICE OF MOTION AND MOTION TO LIFT RESTRAINTS

4

focus of the government's case, and the purported basis for the huge forfeiture amounts sought, stems almost exclusively from profits generated beginning in 2010, when Craigslist shut down a competitive service, and 2015, when Backpage was sold to Carl Ferrer.  See, e.g., Indictment ¶¶ 24-29.  Similarly, virtually all of the government's forfeiture allegations in the civil case are from this 2010-2015 period or later.  See, e.g., Compl., ¶¶ 125-154.

On January 26, 2007, Mr. Lacey purchased a cooperative apartment at 1100 Union Street, #700, in San Francisco, California ("the Co-op").  The purchase price was $2,700,000.   No mortgage was taken on the property.  Thus, the entire purchase price came from funds Mr. Lacey earned prior to 2007.   This property is currently valued at approximately $5.5 million.

The indictment alleges that the Co-op is subject to forfeiture, but fails to set forth any factual basis for this allegation.  The complaint concedes that the funds used to purchase this property were untainted, but alleges that "[i]n May 2015, over $10,000 of funds [from Backpage were] used to *purchase or maintain*" the 110 Union co-op.  Compl. ¶ 172 (emphasis added).

This allegation is insufficient to support pretrial restraint or forfeiture.  The complaint avoids acknowledging the 2005 purchase date of the Co-op.  Thus, the allegation that the property was purchased with illegal funds is conclusively false.  Further, there is no explanation of how even tainted maintenance expenses can render a property purchased with 100% untainted funds subject to forfeiture.

The Segregated Village Voice Accounts:  The government's submissions concede that funds received by Mr. Lacey and other claimants from the operation and 2013 sale of Village Voice Media Holdings ("Village Voice") are legitimate and untainted and thus not subject to forfeiture as the

---

NOTICE OF MOTION AND MOTION TO LIFT RESTRAINTS

proceeds of unlawful activity.  The government appears to allege that these funds were used to launder allegedly tainted funds generated by Backpage. The government therefore necessarily concedes that if Village Voice funds were kept segregated from Backpage funds, there would be no arguable basis for the forfeiture of Village Voice funds.

That is precisely what Mr. Lacey demonstrated, to the government's satisfaction, with respect to funds in certain accounts maintained at Republic Bank of Arizona.  See Dkts. 22-24 (motion to release restrained funds filed 8/10/18). As that motion demonstrated, these accounts were seized despite the fact that the Village Voice funds in those accounts – as well as untainted rent from the Phoenix New Times newspaper building – had been "diligently segregated" from income from Backpage.  Doc. 24, ¶ 25; Doc. 23 at 5.

Mr. Lacey's motion demonstrated that the government's sole purported basis for seizing these segregated Village Voice accounts was the accidental commingling of Village Voice funds and Backpage funds resulting from a clerical error, a fact confirmed in a supporting Declaration by the employee who committed the error.  See Doc. 24, Ex. E., ¶¶ 3-4.  The error was rectified shortly thereafter.  *Id.*  However, in the government's initial view, that clerical error permanently tainted all of the funds in those segregated accounts and any accounts they touched.

This Court directed the government to show cause why the clerical error funds should not be released and ordered the government "to conduct only the limited discovery necessary to determine the specifics issue of whether the three accounts in question contain any tainted funds."  See Doc. 131 (12/20/2019).  After the government served discovery and Mr. Lacey responded, the government

NOTICE OF MOTION AND MOTION TO LIFT RESTRAINTS

entered into a Consent Judgment with Mr. Lacey.  In exchange for Mr. Lacey withdrawing the motion, the government agreed to release $375,188.24 from one Republic Bank account (#2485) and $75,835.31 from another (#1897).  Doc. 99 (3/20/2020).

By this motion Mr. Lacey seeks the return of an additional $640,711.61 of untainted funds remaining in segregated accounts at Republic Bank of Arizona that were not released pursuant to the Consent Judgment.[2]  The government has never disputed Mr. Lacey's showing that the funds in the segregated Village Voice accounts at Republic Bank of Arizona are untainted and that the clerical error did not change that fact.

Therefore, the $640,711.61 in untainted funds remaining in these segregated accounts must be released, as there is no evidence that they are subject to forfeiture.

---

[2] The Consent Judgment preserved Mr. Lacey's right to seek the release of remaining segregated untainted funds in Republic Bank:

> This consent judgment does not operate as a release of claims, actions or rights with respect to the seizure or retention of any funds or assets other than the Returned Funds, nor should this consent judgment be admitted in any criminal proceeding against Claimants to prove any of the facts relied upon to establish reasonable cause for the seizure of either the Defendant Funds or the Returned Funds (Doc. 99 at 2, ¶ 1).

NOTICE OF MOTION AND MOTION TO LIFT RESTRAINTS

## ARGUMENT

### 1.    Relevant Civil Forfeiture Law and Legal Background

Federal civil forfeiture law is founded on the legal fiction that the property itself is guilty.  It is an *in rem* proceeding brought directly against the property, which is named as a defendant.  "The theory behind such forfeitures was the fiction that the action was directed against 'guilty property,' rather than against the offender himself." *United States v. Bajakajian*, 524 U.S. 321, 330 (1998).  "[I]t is the property which is proceeded against, and, by resort to a legal fiction, held guilty and condemned as though it were conscious instead of inanimate and insentient."  *Various Items of Personal Property v. United States*, 282 U.S. 577, 581 (1931).  *In rem* jurisdiction is obtained by actual or constructive seizure of the property sought to be forfeited.

*Ex Parte* Seizures

The *in rem* jurisdictional foundation of civil forfeiture requires that the property be brought within the court's custody and control through seizure or restraint to permit commencement of the civil forfeiture proceeding.  *Republic Nat'l Bank v. Miami*, 506 U.S. 80, 87 (1992) ("the court must have actual or constructive control of the *res* when an *in rem* forfeiture is initiated").

Warrants for the "arrest" or seizure of property may be issued *ex parte* upon a one-sided showing of probable cause that the property may be subject to forfeiture.  Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, Rule G(3) ("Rule G").  Thus, for example, the property at issue here was seized pursuant to issuance of a series of warrants issued *ex parte* by Magistrate Judges of this Court.

---

NOTICE OF MOTION AND MOTION TO LIFT RESTRAINTS

While property may be initially seized *ex parte*, the government may not continue to retain the property without a hearing at which the owner of the property may contest its continued retention.  As the Supreme Court has noted, "fairness can rarely be obtained by secret, one-sided determination of facts decisive of rights. . .."  *Joint Anti-Fascist Refugee Comm. v. McGrath*, 341 U.S. 123, 170-172 (1951) (Frankfurter, J., concurring).

Thus, the Supreme Court has held that prompt judicial review of property seizures is constitutionally required:

> The practice of *ex parte* seizure . . . creates an unacceptable risk of error. . .. In issuing a warrant of seizure, the magistrate judge need determine only that there is probable cause to believe that the real property was 'used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of,' a felony . . ..
>
> The purpose of an adversary hearing is to ensure the requisite neutrality that must inform all governmental decisionmaking. That protection is of particular importance here, where the Government has a direct pecuniary interest in the outcome of the proceeding.

*United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 55-56 (1993) (citations omitted); *Smith v. County of Los Angeles*, 2015 WL 12731913, at *5, n.5 (C.D. Cal. Jan. 16, 2015) ("Procedural due process is fundamentally about reducing the risk of error") (citing, *inter alia*, *James Daniel Good*).

As the Ninth Circuit has repeatedly affirmed, "Fourth Amendment concerns could arise if an owner were not afforded a prompt hearing at which to contest the validity of the temporary forfeiture . . .."  *Sandoval v. Cty. of Sonoma*, 912 F.3d 509, 522 (9th Cir. 2018) (citing *Krimstock v. Kelly*, 306 F.3d 40, 54 (2d Cir. 2002), *cert denied*, 539 U.S. 969 (2003)).

---

NOTICE OF MOTION AND MOTION TO LIFT RESTRAINTS

9

However, as *James Daniel Good* also made clear, and as this Court concluded, there is no question that such review is legally required and that property that is not shown to be subject to forfeiture must be released.  The Supreme Court has strongly affirmed that these fundamental principles extend to *all* restrained property, whether held for potential civil or criminal forfeiture and whether restrained pursuant to seizure orders, restraining orders or any other legal mechanism:

> Pretrial restraints on forfeitable property are permitted only when the Government proves, at a hearing, that (1) the defendant has committed an offense triggering forfeiture, and (2) 'the property at issue has the requisite connection to that crime.'

*Honeycutt v. United States*, 581 U.S. ___, 137 S. Ct. 1626, 1633 (2017) (quoting *Kaley v. United States*, 571 U.S. 320, 324 (2014)).

As the Supreme Court has explained, "whether property is 'forfeitable' or subject to pretrial restraint under Congress' scheme . . . depends on who has the superior interest in the property at issue. . ..  The distinction [between tainted and untainted property] is the difference between what is yours and what is mine. . ..  If this were a bankruptcy case, the government would be at most an unsecured creditor" of untainted property.  *Luis v. United States*, 578 U.S. ___, 136 S. Ct. 1083, 1091-92 (2016).

In addition, the Supreme Court in *Luis* rejected the contention that "property – whether tainted or untainted – is subject to pretrial restraint, so long as the property might someday be subject to forfeiture." *Luis*, 136 S. Ct. at 1091-92.  The Court concluded that where the government cannot show it has probable cause to believe the property is the proceeds of, or traceable to, a crime, the government may not impose any restrictions upon it pretrial. *Id.*

---

NOTICE OF MOTION AND MOTION TO LIFT RESTRAINTS

10

The Fifth Circuit has expressly held that there is no functional difference between the methods of pretrial restraint and that all are equally reviewable, both in the District Courts and on appeal.  *See United States v. Real Property Located at 1407 N. Collins St.*, 901 F.3d 268, 271-72 (5th Cir. 2018).

While the government often argues, as it did in prior submissions here, that a seizure warrant is less restrictive than a TRO and thus somehow 'less reviewable', it ignores the fact that the weight of authority supports the contrary conclusion. Seizures effect a greater interference with property rights than restraining orders, and thus should be subject to *stricter* review:

> Both Congress and the Constitution see pretrial restraining orders as preferable, somewhat less restrictive alternatives to outright seizure. It would frustrate that preference were the government able to seize property more easily than it could restrain it.

*United States v. Melrose East Subdivision*, 357 F.3d 493, 504 (5th Cir. 2004) (citing, *inter alia*, *James Daniel Good*, *supra*); *see also United States v. E-Gold, Ltd.*, 521 F.3d 411 (D.C. Cir. 2008) ("That which we call an injunction by any other name is reviewable on interlocutory appeal.  We therefore join our fellow circuits and hold that the seizure warrant and restraining order are properly within our jurisdiction") (citing, *inter alia*, *United States v. Kirschenbaum*, 156 F.3d 784, 788 (7th Cir. 1998) (citing cases)).

Accordingly, pretrial restraints of property are subject to plenary review and, if the property is found to be untainted, it must be released.

<u>The Government's Heightened Burden of Proof Affects All Stages of the Proceedings</u>

The government's burden to retain property seized for civil forfeiture increases substantially once the *in rem* civil complaint is filed.

---

NOTICE OF MOTION AND MOTION TO LIFT RESTRAINTS

11

Before the enactment of the Civil Asset Forfeiture Reform Act of 2000 (CAFRA), the government's showing on an *ex parte* seizure warrant application was sufficient in most cases to retain the property until trial.  Now, the government's burden to forfeit property goes up *after* seizure.  Once proceedings are commenced, "the burden of proof is on the Government to establish, by a preponderance of the evidence, that the property is subject to forfeiture."  18 U.S.C. § 983(c).

As the Ninth Circuit explained:

> Prior to the enactment of CAFRA, the allocation of the burden of proof in civil judicial forfeiture proceedings tilted heavily in the government's favor. The government bore the minimal burden of demonstrating probable cause for instituting the forfeiture proceeding. Once probable cause was established, the burden of proof shifted to the property owner (the claimant), who could avoid forfeiture only by establishing by a preponderance of the evidence that the property was not subject to forfeiture.
> In response to widespread criticism of this regime, Congress enacted CAFRA.
>  CAFRA transferred the burden of proof from the claimant to the government and required the government to establish forfeiture by a preponderance of the evidence rather than by the lower probable cause standard . . ..

*United States v. $80,180.00 in U.S. Currency*, 303 F.3d 1182, 1184 (9th Cir. 2002) (citing, *inter alia*, 18 U.S.C. § 983(c)).

Thus, under CAFRA, "which dramatically overhauled" civil forfeiture, "the burden of proof now rests solely with the government to show by a preponderance of the evidence – rather than mere probable cause – that the property is subject to forfeiture."  *United States v. Sum of $185,336.07 U.S. Currency Seized from Citizen's Bank Acct. L7N01967*, 731 F.3d 189, 196 (2d Cir. 2013).  Further, "by

enacting CAFRA, Congress intended to end the practice of reliance on hearsay in civil forfeiture decisions."  *Id.* at 198 n.8 (quoting *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 510 (5th Cir. 2008)).  Accordingly, unless and until the government proves, with admissible evidence, that the property is forfeitable, the burden never shifts to the claimant to establish the affirmative defense of innocent ownership.  *See* 18 U.S.C. § 983(d).

These heightened burdens affect all stages of the civil forfeiture proceeding, not only the proof at trial.  Notably, CAFRA requires that a forfeiture complaint be verified, set forth with particularity the grounds for forfeiture of each property, describe and specify the location of each property, identify the statutes under which forfeiture of each property is sought and "state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial" with respect to each property sought to be forfeited.  Rule G(2)(a)-(f).

If the complaint fails to satisfy this standard, it may be dismissed.  *See, e.g.*, *United States v. $97,667.00 in U.S. Currency*, 538 F. Supp. 2d 1246, 1253 (C.D. Cal. 2007) ("Plaintiff's Complaint must state sufficiently detailed facts to support a reasonable belief that the government will be able to show that the Currency was connected to illegal . . . activity").

<u>Release of Property After Filing of Civil Forfeiture Complaint</u>

Mr. Lacey does not now seek to dismiss the government's claims against the assets that are the subject of this motion.  He seeks only to have the assets released.

In pre-CAFRA decisions like *James Daniel Good* and in recent decisions like *Luis* and *Honeycutt*, the Supreme Court has made it clear that untainted

property may not be restrained before trial and that property owners are entitled to a hearing to challenge such restraint on the ground that the property is not tainted.

This Court has recognized these fundamental principles in a prior ruling in this proceeding.  Although the claimants' initial motion to vacate or modify the seizure warrants was based primarily on the First Amendment, the motion also raised the issue of whether "the seizures are over-inclusive because the Government failed to trace seized assets to specific instances of alleged criminal activity."

On this issue, this Court ruled:

> The Court agrees that further proceedings are necessary, but they are available through continuation of this case. In this action, Claimants will have the opportunity to present evidence, identify with specificity the funds which they assert are improperly seized, and make a full argument for their return. The Court will not at this point, however, simply "vacate" the seizure warrants to the extent that Claimants argue they are unjustified.

Doc. 130, 2019 WL 8892585, at *9.

This motion complies with this Court's requirements.  It seeks relief that is "available through continuation of this case," by challenging the sufficiency of the allegations of the complaint to support forfeiture rather than the initial seizure.  As this Court's ruling recognized, the government's right to continued retention of restrained property is a separate issue from the lawfulness of the initial seizure or restraint.  *See*, *e.g.*, *United States v. $739,047.03 in U.S. Currency*, 103 F. App'x 245, 248 (9th Cir. 2004) ("If Medina is able to show that the government does not *currently* have probable cause to retain his money, he may be entitled to release of the seized funds pending trial") (emphasis added) (citing *Krimstock v. Kelly*, 306 F.3d at 50 (government must separately demonstrate lawfulness of both initial

---

NOTICE OF MOTION AND MOTION TO LIFT RESTRAINTS

14

warrantless seizure of vehicle and continued retention); *United States v. Lindell*, 2016 WL 4707976, at *7 (D. Haw. Sept. 8, 2016), *aff'd*, 766 F. App'x 525 (9ᵗʰ Cir. 2019); *Camacho v. United States*, 2013 WL 1207522, at *9, n.16 (S.D. Cal. 2013).

Further, this motion "identif[ies] with specificity" the assets to be released. Unlike in the claimants' initial application, this motion is limited only to some of the assets for which the complaint has failed to set forth a sufficient factual basis for forfeiture.

This motion applies CAFRA's standard for determining the sufficiency of a forfeiture complaint, discussed above.[3]  It demonstrates that the government has failed to "state sufficiently detailed facts to support a reasonable belief that [it] will be able to meet its burden of proof at trial" with respect to each property.  Rule G(2)(a)-(f).  As this showing would be sufficient to warrant *dismissal* of the government's claims against the assets that are the subject of this motion, it is beyond dispute that the same showing is more than sufficient to support the *release* of such property pending trial.[4]

---

[3] The application of the CAFRA standard for dismissal of a civil forfeiture complaint addresses concerns raised by this Court regarding the appropriate standard for release of seized property in a civil forfeiture proceeding. *See* Doc. 130, 2019 WL 8892585, at *9 ("Despite the opportunity for additional briefing, Claimants have not identified what the legal mechanism for this requested relief [to vacate or modify seizure warrants] is, nor have they suggested what legal standard the Court should apply").

[4] Further, because this motion does not seek dismissal of the claims against these assets, the caveat that "no complaint may be dismissed on the ground that the Government did not have adequate evidence at the time the complaint was filed to establish the forfeitability of the property" does not apply.  18 U.S.C. § 983(a)(3)(D).  The government may potentially still forfeit these assets.  Further, this motion does not challenge the sufficiency of the government's evidence.  It

**2.**     **The Assets in Issue Must Be Released**

The complaint fails to "state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial" with respect to the assets sought to be released on this motion.

The complaint seeks forfeiture on three theories.  The first claim for relief, brought pursuant to 18 U.S.C. § 981(a)(1)(C), alleges that the defendant assets are subject to forfeiture because they "constitute, and are derived from, proceeds" of alleged criminal activity.  To succeed on this claim, the government must demonstrate, by a preponderance of the admissible evidence, that the property is directly traceable to the criminal activity.  18 U.S.C. § 983(c); *United States v. Johnson*, 683 F. App'x 241 (4th Cir. Apr. 3, 2017).

The second and third claims for relief, brought pursuant to 18 U.S.C. § 981(a)(1)(A), seek forfeiture of property alleged to have been "involved in" two kinds of money laundering.  The second claim for relief alleges violation of 18 U.S.C. § 1957, which subjects to forfeiture property involved "in a monetary transaction in criminally derived property of a value greater than $10,000."  The third claim for relief alleges 'concealment money laundering' in violation of 18 U.S.C. § 1956(a)(1)(B)(i).

None of the assets on this motion are shown to be subject to forfeiture on any of these three theories.

———————————————

accepts the government's allegations with respect to the challenged assets as true. This motion demonstrates that the government has failed to assert a viable theory of forfeiture in light of the facts the *government* has alleged in the civil complaint and the criminal indictment.

NOTICE OF MOTION AND MOTION TO LIFT RESTRAINTS

16

The Co-op: The complaint concedes that the Co-op was purchased in January 2007 with 100% untainted funds.  The government's forfeiture claim is based solely on a subsequent transaction or transactions that it alleges retroactively tainted some or all of the property.

The government alleges that, eight years after its purchase, "[i]n May 2015, over $10,000 of funds [from Backpage were] used to purchase or maintain" the Co-op.  This allegation appears to reference 18 U.S.C. § 1957.  Thus, the government's theory appears to be that the Co-op – a property with a market value of about $5.5 million – is subject to forfeiture solely because it was "involved in a monetary transaction in criminally derived property of a value greater than $10,000 . . .." *See* 18 U.S.C. § 981(a)(1)(A).

The statute requires that the single transaction involve property exceeding $10,000 in value.  *See, e.g.*, *United States v. French*, 748 F.3d 922, 936 (9th Cir. 2014) ("Criminal liability attaches under § 1957 where a defendant (1) knowingly engages in a monetary transaction, (2) knowing that the transaction involved criminal property, (3) the property's value exceeds $10,000, and (4) the property derives from a specified unlawful activity").

The "purchase or maintain" boilerplate allegation used throughout the complaint is overbroad.  The purchase of the Co-op predated the alleged tainted transaction by eight years.  Thus, the government's claim, at best, is that tainted funds were used to "maintain" the property.

When the government seeks to forfeit property on the ground that it was allegedly "involved in" criminal activity, "CAFRA now requires, as part of the government's case-in-chief, that it prove to the jury 'that there was a substantial

connection between the property and the offense.'" *von Hofe v. United States*, 492 F.3d 175, 186 (2d Cir. 2007) (quoting 18 U.S.C. § 983(c)(3)).

Setting aside the fact that the government cannot satisfy the knowledge requirements to prove criminal liability under section 1957, a single $10,000 transaction of allegedly tainted funds used to maintain a $5.5 million property, as a matter of law, cannot be deemed to provide a substantial connection between the property and the offense.  *See*, *e.g.*, *United States v. $40,200.00 in U.S. Currency*, 2015 WL 12914363, at *10 (C.D. Cal. Aug. 24, 2015) ("the Court concludes that the government has failed to show, by a preponderance of the evidence, a 'substantial connection' between the currency at issue and the alleged illegal drug activity"). 18 U.S.C. § 983(c)(1).

Further, by not seeking to forfeit the Co-op on a traceable proceeds theory, the government already concedes that there is no basis for forfeiture of the Co-op on a 'tainted equity' theory.

In addition, because civil forfeiture has been deemed to be punishment and is therefore subject to Eighth Amendment analysis, forfeiture of the Co-op under these facts is unconstitutional and would not be permissible in any event.  *See*, *e.g.*, *Timbs v. Indiana*, 586 U.S.___, 139 S. Ct. 682 (2019); *United States v. Bajakajian*, *supra*.

Accordingly, the government has failed to "state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of

NOTICE OF MOTION AND MOTION TO LIFT RESTRAINTS

proof at trial" with respect to the Co-op.  The restraints on this property must therefore be lifted and the property released.[5]

The Segregated Accounts: The government's sole basis for seeking the forfeiture of the untainted funds in segregated Village Voice accounts was that the untainted funds in those accounts were commingled with funds from Backpage in other accounts as a result of a clerical error.  The claims against these funds appear to be based solely on a 'concealment money laundering' theory as the allegations against them do not allege the elements of the other claims asserted in the complaint.  See Compl. ¶¶ 156[a]-[g].

Concealment money laundering is a specific intent crime.  The tainted funds must have been commingled with the untainted funds with the intent "to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity . . .."  18 U.S.C. § 1956(a)(2)(B)(i); *United States v. Gurolla*, 333 F.3d 944, 957 (9th Cir. 2008) ("Money laundering is a specific intent crime, and it requires knowledge on the part of the defendant").

The government has already returned a portion of the segregated untainted funds at Republic Bank of Arizona.  Rather than respond to the claimant's previously filed motion (filed in related case docket number 18-cv-06742 at Dkt. 22), as ordered by the Court on December 20, 2019 (filed in related case docket number 18-cv-06742 at Dkt. 131), the government returned a portion of the funds by way of stipulation.  At that time, the government had not yet filed its First Amended Complaint, and did not want to discuss or return all of the funds until

---

[5] Mr. Lacey has consented to the interlocutory sale of the Co-op. See Doc. 72.  If this property is sold before trial, the proceeds of the sale must be released to Mr. Lacey.

such was filed.  The First Amended Complaint contains now new allegations in regards to these funds.  As the transfers of the untainted funds that resulted in the commingling of those funds with allegedly tainted funds have already been conclusively demonstrated to constitute a clerical error, the intent necessary to establish concealment money laundering is absent as a matter of law.  See Doc. 23 (Memorandum of Law in support of clerical error motion).

Accordingly, the complaint fails to "state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial" with respect to the segregated accounts.  The restraints on these assets must therefore be lifted and the property released.

## CONCLUSION

For these reasons, Claimant Michael Lacey's motion to lift restraints on assets not subject to forfeiture should be granted and those properties released.

Dated:  December 10, 2021                    Respectfully submitted,

_/s/ Paul J. Cambria, Jr._
Paul J. Cambria, Jr.

Steven L. Kessler, *pro hac vice*

*Attorneys for Claimant Michael Lacey*

---

NOTICE OF MOTION AND MOTION TO LIFT RESTRAINTS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 10, 2021, I filed the foregoing with the United States District Court for the Central District of California using the CM/ECF system.

I hereby certify that on December 10, 2021, a copy of the foregoing was also delivered to the following via CM/ECF:

DANIEL BOYLE
U.S. Attorney's Office
Asset Forfeiture Section
312 North Spring Street
Los Angeles, California 90012

*/s/ Kristina Drewery*
Kristina Drewery

---

NOTICE OF MOTION AND MOTION TO LIFT RESTRAINTS

21