

THIS CONSTITUTES NOTICE OF ENTRY
AS REQUIRED BY FRCP, RULE 77(d).

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff, vs. $739,047.73 IN U.S. CURRENCY, Defendants. ANTONIO MEDINA, et al., Claimants. | CV 01 - 01881 FMC (RZx) ORDER DENYING CLAIMANT'S MOTION FOR SUMMARY JUDGMENT |



This matter is before the Court on the Renewed Motion for Summary Judgment of Claimant Antonio Medina. The Court has considered the moving, opposition and reply documents submitted in connection with this motion. For the reasons set forth below, the Court hereby **DENIES** the Motion.

## I. Factual and Procedural Background

This case arises from Plaintiff United States' allegations that Claimant Antonio Medina ("Claimant" or "Medina") participated in a scheme to defraud Bank of America. On August 30, 2002, the Court granted summary judgment in favor of Claimant, concluding that Plaintiff had failed to produce evidence showing that Medina had made any material misrepresentations of fact to Bank of America. (Order Granting Summary

Judgment, "Order," at 27). Plaintiff appealed, and the Ninth Circuit remanded in light of *United States v. Woods*, 335 F.3d 993, 998 (9th Cir. 2003), which was decided after this Court granted summary judgment.

In its previous Order, the Court made factual findings, not all of which are relevant here.[1] The relevant facts, previously considered and explained by the Court, are as follows. On June 16, 2000, Medina and his sister Angeles Medina opened a bank account in Angeles' name with Bank of America in Costa Mesa, California. The account was opened with the understanding that the bank would wire $739,047.03, currency with which the Medinas were opening the account, to Spain. Medina was given power of attorney, authorizing him to negotiate, transact, and otherwise conduct business, transfers, etc. on behalf of Angeles. Medina then instructed Bank of America to wire the funds in the account to a "Tony Anderson" in Madrid, Spain, when the checks with which they were opening the account cleared. The account bearing the name "Tony Anderson" actually belonged to Medina, although he "does not recall the specifics" of why the account was under the "Anderson" name. In fact, Tony Anderson is one of Claimant's many aliases, and he may have even legally changed his name to Tony Anderson in

---

[1] In its previous Order, the Court concluded that allegedly material misrepresentations that Antonio Medina made to banks prior to his dealings with Bank of America were not relevant to the question of whether Medina engaged in a scheme to defraud Bank of America. The Court also concluded that Plaintiff's First Amended Complaint and its arguments in its briefs pointed only to Medina's scheme to defraud Bank of America by "doubling his money" through sending the currency in two different directions simultaneously. Therefore, the Court only considered material misrepresentations and concealments of fact made with respect to the alleged attempt to defraud Bank of America. Here, likewise, the Court will only consider whether there was a scheme reasonably calculated to deceive Bank of America.

In its opposition, Plaintiff argues that evidence of Medina's prior dealings with other banks should be admissible to show materiality and Medina's intent to defraud. The Court did not rule evidence of Medina's prior dealings with other banks was inadmissible in its previous order, and it does not do so now. The Court has only concluded that Medina's dealings with other banks do not amount to a scheme to defraud Bank of America.

2

the United States shortly after having been convicted of bank fraud in the early 1990s.

Claimant asserts that he sought to wire the money to "Tony Anderson" rather than to an account bearing Angeles' name because both he and his sister wanted him (Medina) to have the money.[2] Despite the fact that the checks and cleared and Medina had reiterated his wire transfer instructions, Bank of America did not transfer the account funds to Spain. Unbeknownst to the Medinas, Bank of America had sent a letter to Angeles Medina in Spain asking her for "written confirmation" of her current address in Spain and of the wire instructions.

On June 30, 2000, Medina presented a check for $739,642.29 payable to himself or "to cash" to a Bank of America branch (Huntington Beach) different from the branch where the Medinas had opened the Bank of America account on June 16, 2000 (Costa Mesa).

On July 1, 2000, Medina attempted to open a bank account at a Fountain Valley branch of Downey Savings with a $739,047.00 check drawn from Angleles Medina's Bank of America account. Claimant contends that the check was pre-signed by Angeles Medina and given to him prior to her return to Spain some time in June. While Medina was at the Downey Savings branch, the bank conducted a background check through the "Chexsystem" and discovered that over the previous thirty days, someone had attempted to open eleven new bank accounts at several different banks using four different names and the same social security number provided to

---

[2] However, when Elizabeth Bass, a Bank of America employee, telephoned Angeles Medina in Madrid, Spain on July 26, 2000, to inquire about the bank account, Ms. Medina told Bass that (1) either the money belonged to her brother or she (Angeles) wasn't sure to whom it belonged, (2) the money did not belong to her (Angeles), and (3) she was not aware that her brother Antonio Medina Puerta used the alias "Tony Anderson."

Downey Savings by Medina.[3] Downey Savings also telephoned Bank of America to determine whether there were sufficient funds to cover the check. The Downey Savings employee was informed that there were insufficient funds and that the account was being investigated by bank security. The Downey Savings employee then called the police, resulting in Medina's arrest on suspicion of possible forgery. He was subsequently released without any charges filed against him.

The Medinas continued to implore Bank of America to transfer the funds to Spain, but to no avail. Bank of America had sent a letter, dated July 3, 2000, by courier to the Madrid address on Angeles Medina's passport, seeking confirmation of the wire instructions provided by Medina, but that letter was returned because the courier could not find Angeles Medina at that address. It appears that a mistake was made, however, and that Bank of America had erroneously addressed the letter to "Maria Angeles" rather than "Angeles Medina," which explains why the courier had been unable to deliver the letter. Based on the courier's inability to deliver the letter, the bank refused to transfer the funds to "Tony Anderson" in Madrid.

Meanwhile, the Customs Secret Service was investigating Medina. In his Application and Affidavit for a Seizure Warrant, U.S. Customs Service Special Agent Rafi Sulahian represented to Magistrate Judge George Swartz that a police detective who had been investigating Medina had informed Sulahian that the social security number Medina had used to open the account at Downey Savings actually belonged to someone else who resided in Maine. Sulahian stated that he had no reason to doubt the truthfulness or accuracy of the information he received from the police detective and that he

---

[3] The four names were "Antonio Puerto Medina," "Antonio Medina," "A. Medina" and "Angeles Medina."

4

made the assertions in the Affidavit for a Seizure Warrant in good faith. However, Claimant contends that the only effort made by law enforcement to ascertain the ownership of the social security card in question was an internet search on a website called "Faces of the Nation," and that, in reality, the social security number (#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) belongs to Medina.

Claimant has again moved for summary judgment, arguing that Plaintiff has not met its burden in showing (1) the existence of a scheme to defraud; or (2) a material falsehood. Claimant also argues, based on the Ninth Circuit's opinion and citation to *Good* and *Krimstock*, that he should receive interest on the Defendant currency from the time of seizure.

## II. Legal Standard

Summary judgment is proper only where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. Rule Civ. Pro. 56(c); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Whether a fact is material is determined by looking to the governing substantive law; if the fact may affect the outcome, it is material. *Id.* at 248, 106 S.Ct. 2505.

If the moving party meets its initial burden, the "adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). Mere disagreement or the bald assertion that a genuine issue of material fact exists does not preclude the use of summary

1 judgment. *Harper v. Wallingford*, 877 F.2d 728 (9th Cir. 1989).

2 The Court construes all evidence and reasonable inferences drawn
3 therefrom in favor of the non-moving party. *Anderson*, 477 U.S. at 255;
4 *Brookside Assocs. v. Rifkin*, 49 F.3d 490, 492-93 (9th Cir. 1995).

### III. Discussion

*A. Medina is not entitled to summary judgment because there is a genuine issue of material fact as to whether he engaged in a scheme reasonably calculated to deceive that included material falsehoods.*

The Ninth Circuit opinion remanding Plaintiff's case to this Court provides the law of the case for this motion. The law of the case doctrine states that "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800 (1988). In its opinion, the Ninth Circuit concluded that *Woods* held that a material misrepresentation of fact was not needed to prove bank fraud. *United States v. $739,047.03 in U.S. Currency*, 103 Fed. Appx. 245, 247 (9th Cir. 2004). Rather, the Plaintiff only needed to show "a scheme reasonably calculated to deceive." *Id.* The court concluded, "[A]lthough Medina may not have made any individually false statements to the banks, if those statements, taken as a whole, were 'fraudulently misleading and deceptive,' then Medina may have committed actual fraud." *Id.*

Regardless of the form of the falsehood, whether a statement, half-truth, omission, or conduct, it must be material. *See United States v. Woods*, 335 F.3d 993 (9th Cir. 2003); *Neder v. United States*, 527 U.S. 1 (1999) (holding that materiality is an element of mail and wire fraud). A matter is material if

(a) a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in

question;

(b) the maker of the representation knows or has reason to know that its recipient regards or is likely to regard the matter as important in determining his choice of action, although a reasonable man would not so regard it.

*Neder*, 527 U.S. at 22 n.5 (quoting Restatement (Second) of Torts § 538 (1976)). In order to show that a misrepresentation or concealment of fact was "material," the financial institution (e.g. Bank of America) need not have actually relied on the misrepresentation or concealment. *See id.* at 24-25. Rather, materiality merely requires that the misrepresentation or concealed fact would have been "capable of influencing the decision of the decisionmaking body to which it was addressed" or from which it was concealed. *U.S. v. Wells*, 519 U.S. 482, 489, 117 S.Ct. 921, 926 (1997). Finally, the materiality of a false statement, wrongful concealment, or conduct is a matter of fact for the jury. *See id.* at 25; *U.S. v. Mora*,15 Fed.Appx. 98, 103, 2001 WL 856095 at *4 (4th Cir. 2001) ("Although this circuit long held that materiality in the wire fraud statute was a matter of law for the court, the Supreme Court recently held that materiality of a false statement was a matter of fact for the jury."). Accordingly, Claimant must show that no reasonable jury would conclude that he could have materially deceived a financial institution that he intended to defraud.

Plaintiff argues that several of Claimant's deceptive activities were capable of influencing the actions of a reasonable bank. First, Plaintiff argues that when Claimant arranged with Bank of America to transfer the money to Spain to Tony Anderson, he did not inform Bank of America that he and "Tony Anderson" were the same person. Plaintiff argues that had he informed the bank that he was in fact Tony Anderson, it may have influenced the bank's action because the bank may have inquired why "they

7

did not simply have Angeles cash the checks and personally hand the money to Medina." The Court has already rejected this argument. In its previous Order, the Court reasoned:

> The government has failed to explain why Bank of America would have attached any importance to the fact that Tony Anderson and Antonio Medina were the same person. There is no indication that the Bank of America ever inquired into the identity of Tony Anderson, and there is no evidence that Bank of America ever questioned Medina about his relationship with Tony Anderson. Angeles Medina, the account holder, had specifically instructed Bank of America in writing to wire the money to Tony Anderson in Spain, and Bank of America was prepared to do so, but delayed after sending an incorrectly addressed courier letter to Angeles Medina in Spain seeking confirmation of her wire instructions. Because Bank of America mistakenly addressed that letter to "Maria Angeles" rather than "Angeles Medina," the courier reported back to Bank of America that nobody under the "Maria Angeles" name could be found at the given address, and as a result the money was not wired to Tony Anderson in Spain. Moreover, upon opening the Bank of America account, Antonio and Angeles Medina executed a Bank of America power of attorney agreement which gave Antonio the right to conduct business on her account. The government has failed to explain why the Bank would care to whom the money was being transferred. Notably, the government has also failed to provide a declaration from any Bank of America decisionmaker stating that Claimant made any attempt to hide the true identity of Tony Anderson, and more importantly, that Claimant's failure to notify the Bank of America of Anderson's true identity could have influenced the Bank's decision to wire the money per account holder Angeles Medina's instructions.

Plaintiff's argument that the bank may have inquired further had they known Tony Anderson was the Claimant is too speculative and is not supported by evidence. Accordingly, it does not appear to the Court that Claimant's failure to inform the bank that he was Tony Anderson was not material.

Next, Plaintiff argues that Claimant's June 30 and July 1 activities were material and constituted a scheme reasonably calculated to deceive. On those dates, Medina presented checks to a Huntington Beach branch of Bank of America and to Downey Savings for the same funds subject to the wire instructions he provided to the Costa Mesa Bank of America, without first cancelling the instructions or disclosing to Costa Mesa Bank of America that he was attempting to withdraw the funds that were subject to his wire

8

request. According to Plaintiff's theory, he did not inform the other banks of the wire instructions because he hoped to "double his money"–that is, he hoped that either bank would cash or deposit his check even though the money was already being wired.

Medina claims that the wire instructions were no longer in effect because Bank of America had refused to make the wire transfer at the time he presented the check to Downey Savings. If that were true, his failure to disclose the wire transfer instructions would not be material. Plaintiff has presented no evidence that a bank would be influenced in a decision to cash or deposit a check by the knowledge that there had been an attempted, but unsuccessful, transfer of the check funds. However, Plaintiff has produced evidence to raise a triable issue of fact as to whether the instructions were in effect on June 30 or July 1. The letter Bank of America sent to Angeles, seeking to confirm the instructions, was dated July 3 and evidences an intent by Bank of America to complete a transfer. Additionally, even after July 1, the Medinas continued to implore Bank of America to complete the transfer. The evidence cited by Claimant does not remove any factual dispute. Vice President Patty Ramirez stated only that the bank did not transfer the money on June 27, not that the bank had decided never to transfer the money. The fact that the account was closed as of July 3 does not necessarily mean that it was closed on June 30 or July 1.

If the jury believed Plaintiffs' version of events, the jury could conclude that Claimant's failure to notify the Huntington Beach branch or Downey Savings of the transfer instructions was "capable of influencing the decision of" the bank to deposit or cash Claimant's check. A jury could conclude that either institution would be less likely to deposit or cash a check if it knew the same funds were going to be transferred to Spain. Therefore, Plaintiff has raised an issue of material fact as to the significance

9

of Claimant's actions on June 30 and July 1. A jury could conclude that these actions were a material part of a scheme reasonably calculated to deceive.

B. *Antonio Medina is not entitled to interest.*

The Ninth Circuit also noted, based on Claimant's allegation that the original seizure of his money was based on false information, that "[i]f Medina is able to show that the government does not currently have probable cause to retain his money, he may be entitled to release of the seized funds pending trial." The court cited *United States v. James Daniel Good Property*, 971 F.2d 1376 (9th Cir. 1992) and *Krimstock v. Kelly*, 306 F.3d 40 (2d Cir. 2002).

Claimant does not argue that Plaintiff currently lacks probable cause to retain his money; nor does he request release of the seized funds. Rather, he argues that he should receive interest on the funds from the date of seizure because he was denied due process with regard to the initial seizure. Claimant argues he was entitled to a pre- or post-deprivation hearing on probable cause.

Neither the Ninth Circuit opinion nor the authority it cites supports Claimant's position. The Ninth Circuit opinion states only that, if Claimant is able to show that Plaintiff currently lacks probable cause, he may be entitled to the return of his funds pending trial. It does not address whether Claimant was initially entitled to a hearing, whether pre- or post-deprivation. *Good* concerns real property and confines its holding to real property. The court reasoned that real property, unlike personal property, is not mobile. *Good*, 971 F.2d at 1382-83. It also concluded that "[p]eople have a particularly strong interest in their homes, and the government has a less significant interest in seeking forfeiture prior to giving notice." *Id.* at 1382. Likewise, in *Krimstock*, the court found that a post-deprivation hearing was necessary for seized vehicles, reasoning, "A car or truck is often central to a

10

person's livelihood or daily activities. An individual must be permitted to challenge the City's continued possession of his or her vehicle during the pendency of legal proceedings where such possession may ultimately prove improper and where less drastic measures than deprivation *pendente lite* are available and appropriate" *Krimstock*, 306 F.3d at 44.

Here, there is nothing especially significant about Claimant's interest in his funds. There is no evidence the money is necessary for Claimant's survival. Additionally, the currency is highly "mobile." Currency can be easily spent, and therefore lost. A pre- or post-deprivation hearing was not necessary.

## IV. Conclusion

The Court hereby **DENIES** Claimant's Motion for summary judgment.

November 29, 2004.

FLORENCE-MARIE COOPER, JUDGE
UNITED STATES DISTRICT COURT

11