Gary S. Lincenberg – State Bar No. 123058
 glincenberg@birdmarella.com
Ariel A. Neuman – State Bar No. 241594
 aneuman@birdmarella.com
Gopi K. Panchapakesan – State Bar No. 279586
 gpanchapakesan@birdmarella.com
BIRD, MARELLA, BOXER, WOLPERT, NESSIM,
DROOKS, LINCENBERG & RHOW, P.C.
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile: (310) 201-2110

Attorneys for Claimants John Brunst and
The Brunst Family Trust

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>$1,546,076.35 IN BANK FUNDS SEIZED FROM REPUBLIC BANK OF ARIZONA ACCOUNT '1889, et al.,<br><br>Defendants. | CASE NO. 2:18-cv-8420-RGK-PJWx<br><br>**CLAIMANTS JOHN BRUNST AND THE BRUNST FAMILY TRUST'S NOTICE OF MOTION AND MOTION FOR RELEASE OF FUNDS**<br><br>**[EVIDENTIARY HEARING REQUESTED]**<br><br>*[Filed concurrently with Declarations of Gary S. Lincenberg and John Brunst; and [Proposed] Order]*<br><br>Date: November 13, 2023<br>Time: 9:00 A.M.<br>Crtrm.: 850<br><br>Assigned to Hon. R. Gary Klausner, Courtroom 850 |

3894646.2

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on November 13, 2023, at 9:00 A.M., before the Honorable R. Gary Klausner in Courtroom 850, Claimants John Brunst and The Brunst Family Trust (collectively, "Brunst") will and hereby do move the Court for a *Monsanto* hearing and an order releasing $1.5 million in seized funds to cover Brunst's unpaid attorney's fees and attorney's fees he will continue to incur in connection with the trial of the related criminal action, pending in the U.S. District Court for the District of Arizona. This motion is made pursuant to *United States v. Monsanto*, 491 U.S. 600 (1989), and its progeny.

This motion is based on this Notice, the attached Memorandum of Points and Authorities, the supporting Declarations and the exhibits thereto, the papers and pleadings on file, and on such further evidence and argument as the Court may receive.

DATED:  October 14, 2023

Gary S. Lincenberg
Ariel A. Neuman
Gopi K. Panchapakesan
Bird, Marella, Boxer, Wolpert, Nessim,
Drooks, Lincenberg & Rhow, P.C.


By:  */s/ Gary S. Lincenberg*
         Gary S. Lincenberg
    Attorneys for Claimant John Brunst and
    The Brunst Family Trust

# TABLE OF CONTENTS

Page

I. INTRODUCTION .................................................................................................. 6

II. FACTUAL BACKGROUND ................................................................................ 6

    A. The Government Has Seized Over $9 Million of Brunst's Otherwise Liquid Funds, Along with Real Property. ............................. 6

    B. Only a Fraction of the Funds Seized by the Government Are Traceable to Allegations in the Indictment. ............................................. 7

    C. Mr. Brunst Has a Dire Need for Funds to Pay for Counsel. .................... 9

        1. Mr. Brunst's Counsel Has No Further Retainer Monies to Cover the Trial of the Case and Is Operating in the Red. ............ 9

        2. Mr. Brunst Only Has Enough Money to Cover His Family's Living Expenses for Another Three Years................... 10

    D. The Government Has Allowed Carl Ferrer—the Former CEO of Backpage and Its Main Cooperating Witness—to Use Backpage Funds to Cover His Attorney's Fees. .................................................... 11

III. ARGUMENT ....................................................................................................... 12

    A. Legal Standard ...................................................................................... 12

    B. Mr. Brunst Has Established a Specific Need for Funds. ...................... 13

    C. The Government Cannot Meet Its Burden of Tracing All of the Funds in the Brunst Seized Accounts to the Crimes Charged in the Indictment. ...................................................................................... 14

        1. The Government Cannot Establish That the Brunst Seized Accounts and Liened Real Estate Were "Involved" in Money Laundering ................................................................... 15

        2. The Government Cannot Establish That the Brunst Seized Accounts and Liened Real Estate "Facilitated" Money Laundering ........................................................................ 16

IV. CONCLUSION ................................................................................................... 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Kaley v. United States*
    571 U.S. 320 (2014) ............................................................................... 12, 14

*Luis v. United States*,
    578 U.S. 5, 136 S. Ct. 1083, 194 L. Ed. 2d 256 (2016) ............................. 12, 13

*Luis v. United States*,
    578 U.S. 5 (2016) ............................................................................. 12, 13, 14

*United States v. $3,148,884.40 U.S. Currency
    (Seized from Accts. of Bital)*
    76 F. Supp. 2d 1063 (C.D. Cal. 1999) ................................................................ 18

*United States v. $448,342.85*
    969 F.2d 474 (7th Cir. 1992) ............................................................................ 15

*United States v. Approximately Six Hundred & Twenty Thousand Three
    Hundred & Forty-Nine Dollars & Eighty-Five Cents*
    No. 13 CV 3966 RJD SMG, 2015 WL 3604044
    (E.D.N.Y. June 5, 2015) ................................................................................... 16

*United States v. Bonventre*
    720 F.3d 126 (2d Cir. 2013) ............................................................................. 13

*United States v. Bornfield*
    145 F.3d 1123 (10th Cir. 1998) ........................................................................ 16

*United States v. Contents in Acct. No. 059-644190-69*
    253 F. Supp. 2d 789 (D. Vt. 2003) .............................................................. 16, 17

*United States v. Eng.*
    92 F.3d 909 (9th Cir. 1996) .............................................................................. 16

*United States v. Garcia*
    37 F.3d 1359 (9th Cir. 1994) ............................................................................ 16

*United States v. Jackson*
    167 F.3d 1280 (9th Cir. 1999) .......................................................................... 16

*United States v. Lacey, et al.*,
    Case No. 2:18-cr-00422-PHX-DJH (D. Ariz.) ...................................................... 6

*United States v. Lazarenko*
    564 F.3d 1026 (9th Cir. 2009) ............................................................... 15, 16

*United States v. Monsanto*,
    491 U.S. 600 (1989) ............................................................................*passim*

*United States v. Tencer*
    107 F.3d 1120 (5th Cir. 1997) ......................................................................... 17

*United States v. Unimex, Inc.*
    991 F.2d 546 (9th Cir. 1993) .......................................................................... 13

**Statutes**

47 U.S.C.A. § 230 ................................................................................................. 9

18 U.S.C.
    § 981(a)(1)(C) ............................................................................................ 14
    § 982 ................................................................................................... 14, 15
    § 984 ......................................................................................................... 18
    § 1956 ....................................................................................................... 15

**Other Authorities**

U.S. Const. amend I ............................................................................................ 9

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

Claimants John Brunst and The Brunst Family Trust (collectively, "Brunst") seek a *Monsanto* hearing and Court order regarding the release of $1.5 million in seized funds (out of over $9 million total in seized funds) to cover unpaid attorney's fees and costs he has incurred, and will continue to incur, in connection with the related and ongoing trial in *United States v. Lacey, et al.*, Case No. 2:18-cr-00422-PHX-DJH (D. Ariz.) ("Criminal Case"). The trial of the related Criminal Case commenced on August 29, 2023, and is anticipated to conclude on November 9, 2023. As set forth below and in the accompanying affidavit, Mr. Brunst has established a specific need for the release of funds. Further, the Government's allegations establish probable cause for the traceability of, at most, only a fraction of the funds seized from Mr. Brunst's personal accounts (held by his family trust) to any charged crimes.[1]

## II. FACTUAL BACKGROUND

### A. The Government Has Seized Over $9 Million of Brunst's Otherwise Liquid Funds, Along with Real Property.

In April 2018, the Government seized all of the funds contained in seven of Mr. Brunst's personal accounts (held by his family trust), valued at approximately $9 million as of September 30, 2023. The table on the following page sets forth the accounts seized and the current amounts held in those accounts ("Brunst Seized Accounts"). *See* Declaration of John Brunst ("Brunst Decl."), ¶ 6.

---

[1] Pursuant to Dkt. 269, this Motion and the accompanying Declarations have been filed in unredacted form.

| Seized Account | Value of Account as of 09/30/2023 |
|---|---|
| Alliance Bernstein (ending in x6878) | $6,665,000.00[2] |
| Alliance Bernstein (ending in x4954) | $362,844.00 |
| Alliance Bernstein (ending in x7892) | $311,487.00 |
| Alliance Bernstein (ending in x7889) | $420,388.00 |
| Alliance Bernstein (ending in x7888) | $312,523.00 |
| Alliance Bernstein (ending in x6485) | $622,470.00 |
| BBVA Compass (ending in x3825) | $359,527.06 |
| **Total:** | **$9,054,239.06** |

Further, the Government has also placed liens on Mr. Brunst's two homes: his current residence in Phoenix and a cabin in Pinetop, Arizona ("Brunst Liened Real Estate").[3] *Id.*, ¶ 3.

### B. Only a Fraction of the Funds Seized by the Government Are Traceable to Allegations in the Indictment.

In the Consolidated Civil Forfeiture Complaint ("Consolidated Complaint"), the Government alleges, among other things, the following:

- On February 2, 2018, a BBVA Compass ("Compass") account ending in '3873 held by Cereus Properties transferred $135,956.59 to Mr. Brunst's BBVA Compass Account ending in '3825. As to the Cereus Properties

---

[2] Pursuant to a March 2023 Stipulation to Consent Judgment entered by this Court, the Government agreed to release $500,000 of the funds contained in this account. This partially addressed outstanding amounts owed to counsel for pre-trial work. Dkt. 251. The amount noted in the above table reflects this disbursement.

[3] As to the Phoenix home where Mr. Brunst resides, undersigned counsel's firm holds a lien. However, the Government claims a competing security interest in the property.

account, the Government alleges that it was "funded *in part* with . . . funds alleged to have been traceable to SUA." Dkt. 108 (First Amended Consolidated Master Verified Complaint) at ¶ 152 (emphasis added).

- On December 31, 2015, a Website Technologies account ending in '2008 transferred $811,424 to a Cereus Properties account ending in '6211.
- In December 2016 and January 2017, Cereus Properties account '6211 transferred $161,459 and $298,841 to a Wells Fargo ("WF") account ending in '4891 owned by Mr. Brunst (this account is not at issue in this case or the Criminal Case).
- On January 5, 2017, the WF '4891 account transferred $300,000 to another WF account (ending in '7474) owned by Mr. Brunst (this account also is not at issue in this case or the Criminal Case).
- On May 19, 2017, the WF '7474 account transferred $1,500,000 to the Alliance Bernstein ("AB") account ending in '6878.
- On May 23, 2017, the AB '6878 account transferred $350,000 to the AB '4954 account.
- On June 7, 2017, the AB '6878 account transferred $1,340,000 to the AB '0582 account.
- On September 13, 2017, the AB '0582 account transferred $581,000 to the AB '7982 account.
- On September 13, 2017, the AB '0582 account transferred $250,000 to the AB '7889 account.
- On September 13, 2017, the AB '0582 account transferred $250,000 to the AB '7888 account.
- On September 15, 2017, the AB '0582 account transferred $500,000 to the AB '6485 account.

*Id.* at ¶¶ 193-195.

In summary, as to the seized Compass '3825 account, the Government alleges

$135,956.59 in fund transfers that are traceable only "in part" to specified unlawful activity. *Id.* at ¶ 152. As to the seized Alliance Bernstein accounts, while the Government alleges numerous transfers, all but one are inter-account transfers between accounts held by Mr. Brunst at Alliance Bernstein. Ultimately, as to the Alliance Bernstein accounts, the Government alleges only $300,000 in fund transfers that arguably are traceable to Website Technologies, an entity the Government alleges in the Criminal Case was used to process Backpage-related funds. Therefore, at best, the Consolidated Complaint alleges that $435,956.59 of the Brunst Seized Accounts are traceable to the alleged "specified unlawful activity."

Further, as to the Superseding Indictment in the Criminal Case, ***none*** of the Brunst Seized Accounts or Liened Real Estate are implicated in any of the Government's 48 money laundering counts. Criminal Case, Dkt. 230.

### C. Mr. Brunst Has a Dire Need for Funds to Pay for Counsel.

#### 1. Mr. Brunst's Counsel Has No Further Retainer Monies to Cover the Trial of the Case and Is Operating in the Red.

As of the date of the filing of this Motion, undersigned counsel's firm is owed over $700,000 in attorney's fees and costs, with a zero balance remaining in the retainer. Declaration of Gary S. Lincenberg ("Lincenberg Decl."), ¶ 2. The Criminal Case has been extremely time-consuming and costly due a number of reasons, including for example: the complexity of the case (involving over 1,800 docket entries and novel issues concerning the First Amendment / Communications Decency Act, corporate and joint-defense privileges, and other hotly-contested evidentiary issues); millions of pages in discovery and thousands of trial exhibits; continuances in the Criminal Case (there have been at least eight continuances, due to a variety of factors including the COVID-19 pandemic, a September 2021 mistrial, Defendant James Larkin replacing his counsel, and Mr. Larkin's passing away six days before a scheduled trial date); and as of the filing of this brief, the

Government just finished the thirteenth day of testimony of its first witness, with what appears to be dozens more to come. *See* Criminal Case Dkts. 664, 893, 1031, 1068, 1122, 1211, 1546, 1673.

In his discussions with the Government in late 2022 and early this year, Mr. Brunst sought the release of $2 million in funds to cover anticipated attorneys' fees in connection with the re-trial of the Criminal Case. Those discussions led to the Government agreeing to release $500,000 from one of Mr. Brunst's Alliance Bernstein accounts in exchange for not filing a motion for release of funds until after trial began. Dkt. 253 (March 13, 2023 Partial Consent Judgment). As noted, trial began six weeks ago.

Mr. Brunst now seeks the release of $1.5 million in seized funds to pay for legal expenses, about half of which has already been incurred. This amount is based on a trial of the Criminal Case that started on August 29, 2023 and is anticipated to last through November 9, 2023.[4] Counsel expects to incur $800,000 in fees and costs for the remaining five weeks of trial. Lincenberg Decl., ¶ 3. This does not include extensive post-trial work, if that becomes necessary.

### 2. Mr. Brunst Only Has Enough Money to Cover His Family's Living Expenses for Another Three Years.

As set forth in detail in Mr. Brunst's under seal declaration, he currently has enough cash on hand to cover his family's living expenses for another three years. Brunst Decl., ¶ 2. To the extent he were to liquidate all of his investment holdings in his unseized brokerage and retirement accounts, after the payment of taxes and the satisfaction of a margin loan owed to Alliance Bernstein, his cash on hand would actually be *reduced* in half. *Id.* Mr. Brunst's annual expenses are largely comprised of living expenses including, among other things, property taxes, health insurance,

---

[4] This estimate does not include any legal fees and costs that may be incurred in the instant civil forfeiture case.

home and auto insurance, food and clothing, and college allowance for his daughter. *Id.* A large amount of this includes expenditures maintaining the Liened Property. *Id.* Even if Mr. Brunst were to liquidate all of his brokerage and retirement accounts, he would only have enough money to cover his and his family's living expenses for about a year and a half. *Id.* Though involved in an extremely lengthy five-defendant case in which his liberty and savings are at stake, Mr. Brunst no longer has money to pay for counsel to defend him.

### D. The Government Has Allowed Carl Ferrer—the Former CEO of Backpage and Its Main Cooperating Witness—to Use Backpage Funds to Cover His Attorney's Fees.

Carl Ferrer purchased Backpage in April 2015, served as its CEO, and later pled guilty (and pled the company guilty). Ferrer testified during trial that the Government has allowed him to use Backpage funds to pay for his counsel. Lincenberg Decl., Exh. A (09/26/23 AM Trial Tr. at 22:1-6; 09/28/23 PM Trial Tr. at 17:25-18:13). While Ferrer claimed he did not know precisely how much his counsel (a team of lawyers from Steptoe & Johnson) has been paid over the past five-and-a-half years, these fees are likely in the millions.

First, Ferrer and his counsel prepared for and attended over a dozen interviews with the government from April 2018 to April 2020, documented in lengthy memoranda of interview. Second, these initial interviews were followed by—what Ferrer described—as around 30 further meetings with the prosecutors in anticipation of his trial testimony (with presumably many additional meetings and conferences with his counsel). Third, Ferrer took the stand for thirteen days, with at least one of his attorneys present in the courtroom every day and including during opening statements. *Id.* (09/26/23 AM Trial Tr. At 13:3-19). Fourth, Ferrer's attorneys have filed (and reviewed filings of) numerous pleadings.[5]

---

[5] For example, last week, Ferrer's counsel filed briefing relating to the attorney-

Ferrer also testified that the Government has allowed him to keep millions of dollars worth of assets purchased with Backpage proceeds, including a multi-million dollar house, a Mercedes Benz, and so forth. *Id*. (09/26/23 AM Trial Tr. At 77:24-78:22).

## III. ARGUMENT

### A. Legal Standard

In *United States v. Monsanto*, the Supreme Court held that "a defendant's assets may be frozen before conviction based on a finding of probable cause to believe the assets are forfeitable." 491 U.S. 600, 601 (1989). Since *Monsanto*, "the lower courts have generally provided a hearing to any indicted defendant seeking to lift an asset restraint to pay for a lawyer." *Kaley v. United States*, 571 U.S. 320, 324 (2014). The probable cause determination requires: "(1) that the defendant has committed an offense permitting forfeiture, and (2) that the property at issue has the requisite connection to that crime." *Id*. at 323-24. The *Kaley* Court held that a defendant could challenge only the second prong of that determination. *Id*. at 324, 333 (noting that in a *Monsanto* hearing, "lower courts have uniformly allowed the defendant to litigate the second issue stated above: whether probable cause exists to believe that the assets in dispute are traceable or otherwise sufficiently related to the crime charged in the indictment.").

In *Luis v. United States*, the Government sought the pre-trial restraint of untainted funds that the defendant sought to use to pay for counsel of choice. The Supreme Court held that "insofar as innocent (*i.e.*, untainted) funds are needed to obtain counsel of choice, we believe that the Sixth Amendment prohibits the court order that the Government seeks." 578 U.S. 5, 18, 136 S. Ct. 1083, 1093, 194 L. Ed. 2d 256 (2016). And while the parties in *Luis* agreed that the order sought by the Government "will prevent Luis from using her own untainted funds," the precise

---

client privilege.

stipulation was that "an *unquantified amount of revenue* not connected to the indictment [had] *flowed into some of the accounts*" subject to the restraining order and that Luis "used 'revenue not connected to the indictment' to pay for real property that she possessed." *Id*. at 9.

As the Court in *Luis* clarified, its decision extended not only to wholly untainted accounts, but also accounts that contained both untainted and allegedly tainted funds, like those at issue in Mr. Brunst's accounts. In addressing Justice Kennedy's concerns in his dissent, the plurality acknowledged that "money is fungible" and "sometimes it will be difficult to say whether a particular bank account contains tainted or untainted funds," resolving these concerns by pointing out that "*the law has tracing rules* that help courts implement the kind of distinction we require in this case." *Id*. at 22 (emphasis added).

As set forth below, (1) Brunst has established a specific need for funds, which requires the Court to hold a *Monsanto* hearing, and (2) the Government cannot meet its burden of establishing that the Brunst Seized Accounts and Liened Real Estate are entirely traceable to alleged specified unlawful activity.

### B. Mr. Brunst Has Established a Specific Need for Funds.

"To determine whether a [*Monsanto*] hearing is required, the court must decide whether the moving papers filed, including affidavits, are sufficiently definite, specific, detailed, and nonconjectural, to enable the court to conclude that a substantial claim is presented. If the allegations are sufficient, and factual issues are raised, a hearing is required." *United States v. Unimex, Inc.*, 991 F.2d 546, 551 (9th Cir. 1993) (citations and quotation marks omitted). Further, "[t]he importance of the right at issue—to fund one's criminal defense with counsel of choice—counsels in favor of a minimal barrier to contest the restraint of needed monies . . . . All a defendant need do to trigger a *Monsanto* or *Monsanto*-like hearing is to demonstrate that he or she does not have sufficient alternative assets to fund counsel of choice." *United States v. Bonventre*, 720 F.3d 126, 131 (2d Cir. 2013).

Here, Mr. Brunst has submitted a detailed affidavit regarding his unseized assets and anticipated living expenses, which clearly establishes that he "does not have sufficient alternative assets to fund counsel of choice." *Id*. He has therefore, met the threshold showing that necessitates a *Monsanto* hearing.

### C. The Government Cannot Meet Its Burden of Tracing All of the Funds in the Brunst Seized Accounts to the Crimes Charged in the Indictment.

The Government cannot dispute that, of the over $9 million in Brunst Seized Accounts (as well as the Liened Real Estate) it has restrained, a portion of those seizures are unconnected to any crime charged against Brunst. As set forth above, the Consolidated Complaint addresses only a fraction of these funds, and the Indictment's money laundering allegations implicate none of these funds. Therefore, the Government cannot meet its burden of establishing probable cause regarding the traceability requirement set forth in both *Kaley* and *Luis*. *See* 18 U.S.C. § 981(a)(1)(C) (permitting civil forfeiture where property "constitutes or is derived from proceeds *traceable*" to specified unlawful activity) (cited in Forfeiture Allegation One of the Indictment in the Criminal Case at Dkt. 230; emphasis added).

The Government is therefore likely to argue that the Brunst Seized Accounts and Liened Real Estate were "involved" in the alleged money laundering, thereby permitting forfeiture of the entirety of these assets. *See* 18 U.S.C. § 982 (cited in Forfeiture Allegation Two of the Indictment). The government is also likely to advance a related, but distinct theory, that these assets "facilitated" the alleged money laundering offenses. For the reasons set forth below, these theories are unavailing here.

### 1. The Government Cannot Establish That the Brunst Seized Accounts and Liened Real Estate Were "Involved" in Money Laundering.

Under the Indictment's second forfeiture allegation (Criminal Case, Dkt. 230), the government asserts that the Brunst Seized Accounts and Liened Real Estate are subject to forfeiture under 18 U.S.C. § 982, which provides that "[t]he court, in imposing sentence on a person convicted of an offense in violation of section 1956, 1957, or 1960 of this title, shall order that the person forfeit to the United States any property, real or personal, involved in such offense, or any property traceable to such property." Under this theory, however, "[i]t makes no sense to confiscate whatever balance happens to be in an account bearing a particular number, just because proceeds of crime once passed through that account . . . an 'account' is a name, a routing device like the address of a building; the money is the 'property' . . . . [T]he presence of one illegal dollar in an account does not taint the rest—as if the dollar obtained from fraud were like a drop of ink falling into a glass of water." *United States v. $448,342.85*, 969 F.2d 474, 476–77 (7th Cir. 1992). But, as described above, that is all that the Government alleges here—that alleged tainted proceeds from Backpage.com merely "passed through" various accounts owned by Brunst. *Id.* Nowhere does the Government contend that Brunst's accounts—or any untainted funds in those accounts—were themselves used to further a money laundering offense.

In prior briefing, the Government has cited cases like *United States v. Lazarenko*, 564 F.3d 1026, 1035 (9th Cir. 2009) for the proposition that the commingling of tainted and untainted funds in a given account renders the entire account forfeitable. But that plainly is not what *Lazarenko* and related cases say. Those cases merely stand for the proposition that because money is fungible, under 18 U.S.C. § 1956 (money laundering), the "proceeds" requirement of that statute is met if the Government proves "that the funds in question came from an account in

which tainted proceeds were commingled with other funds." *United States v. Garcia*, 37 F.3d 1359, 1365 (9th Cir. 1994), *criticized on other grounds in United States v. Jackson*, 167 F.3d 1280, 1284 (9th Cir. 1999); *see also United States v. Eng.*, 92 F.3d 909, 916 (9th Cir. 1996) (holding the same and cited by *Lazarenko*). These cases **do not** address the separate and distinct question of whether an **entire account** was "involved in" an alleged money laundering offense **for the purposes of forfeiture**.

### 2. The Government Cannot Establish That the Brunst Seized Accounts and Liened Real Estate "Facilitated" Money Laundering.

The so-called "facilitation" theory of forfeiture requires the Government to show that the property at issue "makes the prohibited conduct less difficult or more or less free from obstruction or hindrance." *United States v. Approximately Six Hundred & Twenty Thousand Three Hundred & Forty-Nine Dollars & Eighty-Five Cents*, No. 13 CV 3966 RJD SMG, 2015 WL 3604044, at *3 (E.D.N.Y. June 5, 2015). But under this theory, "the mere pooling or commingling of tainted and untainted funds in an account does not, without more, render the entire contents of the account subject to forfeiture." *United States v. Bornfield*, 145 F.3d 1123, 1135 (10th Cir. 1998). Instead, the Government must show that "the defendant pooled the funds to facilitate, *i.e.*, disguise the nature and source of, his scheme." *Id.*

That is not a showing the Government can make here as to the Brunst Seized Accounts and Liened Real Estate. Specifically, there are no allegations—either in this case or the Criminal Case—indicating that the Brunst Seized Accounts were anything other than a passive receptacle for shareholder distributions that Brunst received from Cereus Properties. *See United States v. Contents in Acct. No. 059-644190-69*, 253 F. Supp. 2d 789, 800 (D. Vt. 2003) (rejecting application of the facilitation theory, finding that the Government lacked probable cause to seize the entirety of the subject accounts, above and beyond the amounts traceable to

specified unlawful activity).

The Government cannot dispute that the transactions identified in the Consolidated Complaint as to the Brunst Seized Accounts concern loan payments made by Carl Ferrer to the former owners of Backpage in connection with an April 2015 seller-financed sale (which included two loans, one for the sale of Backpage's U.S. operations and the other for the sale Backpage's foreign operations). Ferrer confirmed all of this at trial, testifying that "payments would be made to Cereus Properties . . . . We would make a payment on the interest or the principal of the loan that was for Europe and then interest payments for the loan in the U.S." Lincenberg Decl., Exh. A (09/21/23 PM Tr. at 91:4-13); *see also id*. at 92:24-93:8 ("Q. And then would Backpage money flow from Website Technologies to Cereus Properties? . . . . A. If we had funds deposited into any bank account at Website Technologies, we would then make payments to the sellers from there."); *id*. at 93:20-23 ("Q. And what was the purpose to go from AD Tech B.V. to Cereus Properties? A. It was to make interest and principal payments on the smaller note [tied to the sale of Backpage's foreign operations].").

The Superseding Indictment acknowledges the sale, but claims that because the sale was seller-financed, certain of the Defendants "retained a significant financial interest in Backpage." Criminal Case, Dkt. 230 at ¶ 30. Even accepting this allegation as true, ***there is no allegation*** that the ***sale itself*** was conducted to facilitate a money laundering scheme. In other words, the alleged "money laundering would have been equally as effective if it had not involved any untainted funds but merely the transfer of [Backpage sale loan payments] to accounts in [Brunst's] personal control." *Contents in Acct. No. 059-644190-69*, 253 F. Supp. 2d at 800. Therefore, the alleged commingling of tainted and untainted funds in the Brunst Seized Accounts represents the "'mere[] pooling'" of tainted and untainted funds that "'does not . . . render [the] account[s] subject to forfeiture.'" *Id*. (quoting *United States v. Tencer*, 107 F.3d 1120, 1134 (5th Cir. 1997)); *see also id.* ("If

'facilitation' ***means nothing more than the commingling of funds in a complicated series of transactions, the tracing requirement would be a dead letter***.") (emphasis added).[6]

Finally, the Government takes inconsistent positions to suit itself. When it comes to a co-defendant (Ferrer) who entered into a cooperation agreement with the Government, it agreed to release funds admits to be tainted to use to pay for his counsel. It would be fundamentally unfair to allow one defendant (Ferrer) to use admitted Backpage proceeds to pay for his legal counsel while not permitting such alleged proceeds to be used by another defendant (Brunst) simply because he denies the charges and is seeking to defend himself.

## IV.   CONCLUSION

For the foregoing reasons, the Court should hold a *Monsanto* hearing and grant Mr. Brunst's request for the release of $1.5 million in seized funds to pay for counsel.

DATED:  October 14, 2023      Respectfully submitted,

   Gary S. Lincenberg
   Ariel A. Neuman
   Gopi K. Panchapakesan
   Bird, Marella, Boxer, Wolpert, Nessim,
   Drooks, Lincenberg & Rhow, P.C.


   By: ___*/s/ Gary S. Lincenberg*___
       Gary S. Lincenberg
       Attorneys for Claimant John Brunst

---

[6] Further, it is not clear to what extent the "facilitation" theory is even good law in the Ninth Circuit. *See United States v. $3,148,884.40 U.S. Currency (Seized from Accts. of Bital)*, 76 F. Supp. 2d 1063, 1067 (C.D. Cal. 1999) (agreeing with an E.D.N.Y. opinion that the facilitation theory is "incompatible" with 18 U.S.C. § 984).

# **CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Claimant John Brunst and The Brunst Family Trust, certifies that this brief contains 3,875 words, which:

☒ complies with the word limit of L.R. 11-6.1.

☐ complies with the word limit set by court order dated _____.

DATED: October 14, 2023

By:    */s/ Gary S. Lincenberg*
            Gary S. Lincenberg