# EXHIBIT 2

FILED ___ LODGED
___ RECEIVED X COPY

APR 0 5 2018

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY SMW DEPUTY

ELIZABETH A. STRANGE
First Assistant United States Attorney
District of Arizona

KEVIN M. RAPP (Ariz. Bar No. 14249, kevin.rapp@usdoj.gov)
DOMINIC LANZA (Cal. Bar No. 225989, dominic.lanza@usdoj.gov)
MARGARET PERLMETER (Ariz. Bar No. 024805, margaret.perlmeter@usdoj.gov)
JOHN J. KUCERA (Cal. Bar No. 274184, john.kucera@usdoj.gov)
Assistant U.S. Attorneys
40 N. Central Avenue, Suite 1800
Phoenix, Arizona 85004-4408
Telephone (602) 514-7500

JOHN P. CRONAN
Acting Assistant Attorney General
Criminal Division, U.S. Department of Justice

REGINALD E. JONES (Miss. Bar No. 102806, reginald.jones4@usdoj.gov)
Senior Trial Attorney, U.S. Department of Justice
Child Exploitation and Obscenity Section
950 Pennsylvania Ave N.W., Room 2116
Washington, D.C. 20530
Telephone (202) 616-2807
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

**SEALED**

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>vs.<br><br>Website Technologies, LLC,<br><br>Defendant. | CR-18-465-PHX-DJH<br><br>**PLEA AGREEMENT** |

Plaintiff, United States of America, and the defendant, Website Technologies, LLC, hereby agree to dispose of this matter on the following terms and conditions:

1. **PLEA**

The defendant will plead guilty to an Information charging the defendant with a violation of 18 United States Code (U.S.C.) § 1956(h), Money Laundering Conspiracy, a Class C felony offense.

cc: AUSA, Defense Counsel, USPO

2. **MAXIMUM PENALTIES**

    a.    A violation of 18 U.S.C. § 1956(h) is punishable by a maximum fine of $500,000 (or, if any person derived pecuniary gain from the offense, or if the offense resulted in pecuniary loss to a person other than the defendant, not more than the greater of twice the gross gain or twice the gross loss), a maximum term of imprisonment of 20 years, or both, and a term of supervised release of 3 years. A maximum term of probation is five years.

    b.    According to the Sentencing Guidelines issued pursuant to the Sentencing Reform Act of 1984, the Court shall order the defendant to:

        (1)    make restitution to any victim of the offense pursuant to 18 U.S.C. § 3663 and/or 3663A, unless the Court determines that restitution would not be appropriate;

        (2)    pay a fine pursuant to 18 U.S.C. § 3572, unless the Court finds that a fine is not appropriate;

        (3)    serve a term of supervised release when required by statute or when a sentence of imprisonment of more than one year is imposed (with the understanding that the Court may impose a term of supervised release in all other cases); and

        (4)    pay upon conviction a $400 special assessment for each count to which the defendant pleads guilty pursuant to 18 U.S.C. § 3013.

    c.    The Court is required to consider the Sentencing Guidelines in determining the defendant's sentence. However, the Sentencing Guidelines are advisory, and the Court is free to exercise its discretion to impose any reasonable sentence up to the maximum set by statute for the crime(s) of conviction, unless there are stipulations to the contrary that the Court accepts.

3. **AGREEMENTS REGARDING SENTENCING**

    a.    <u>California And Texas Proceedings</u>: It is the parties' expectation that, around the time the defendant enters a guilty plea in this case, co-defendant Carl Ferrer will enter guilty pleas to Backpage-related charges in California and Texas state court.

1  Pursuant to Fed. R. Crim. P. 11(c)(1)(C), the United States and the defendant stipulate
2  that the defendant's guilty plea in this case is contingent upon the acceptance of Ferrer's
3  plea agreements in the California and Texas matters. If either of those plea agreements is
4  rejected, the defendant will be afforded an opportunity to withdraw the guilty plea in this
5  case.

6        b.    <u>Timing Of Sentencing</u>: The defendant agrees that sentencing in this case
7  may be delayed until the federal sentencing of co-defendant Carl Ferrer.

8        c.    <u>Offset for Fine Payments By Organizational Co-Defendants</u>. The parties
9  stipulate and agree that, to the extent the Court imposes a criminal fine against any of the
10 other organizational co-defendants in this matter, the defendant will receive credit toward
11 its criminal fine obligation (under 18 U.S.C. § 3612(i)) for any fine-related payments
12 made by such organizational co-defendants.

13       d.    <u>Length Of Probationary Term</u>: It is the parties' intention that the defendant
14 will cease to exist or operate following its entry of a guilty plea in this matter.
15 Nevertheless, pursuant to Fed. R. Crim. P. 11(c)(1)(B), the United States will recommend
16 that, if it appears the defendant will remain in existence and operation following
17 sentencing in this case, the defendant be sentenced to a 60-month term of probation.

18       e.    <u>Restitution</u>. Pursuant to 18 U.S.C. § 3663 and/or 3663A, the defendant
19 specifically agrees to pay full restitution, regardless of the resulting loss amount but in no
20 event more than $500 million, to all victims directly or proximately harmed by the
21 defendant's "relevant conduct," including conduct pertaining to any dismissed counts or
22 uncharged conduct, as defined by U.S.S.G. § 1B1.3, regardless of whether such conduct
23 constitutes an "offense" under 18 U.S.C. §§ 2259, 3663 or 3663A. The defendant
24 understands that such restitution will be included in the Court's Order of Judgment and
25 that an unanticipated restitution amount will not serve as grounds to withdraw the
26 defendant's guilty plea or to withdraw from this plea agreement.

27       f.    <u>Assets and Financial Responsibility</u>. The defendant shall make a full
28 accounting of all assets in which the defendant has any legal or equitable interest. The

defendant shall not (and shall not aid or abet any other party to) sell, hide, waste, spend, or transfer any such assets or property before sentencing, without the prior approval of the United States (provided, however, that no prior approval will be required for routine, day-to-day expenditures). The defendant also expressly authorizes the United States Attorney's Office to immediately obtain a credit report as to the defendant in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court. The defendant also shall make full disclosure of all current and projected assets to the U.S. Probation Office immediately and prior to the termination of the defendant's supervised release or probation, such disclosures to be shared with the U.S. Attorney's Office, including the Financial Litigation Unit, for any purpose. Finally, the defendant shall participate in the Inmate Financial Responsibility Program to fulfill all financial obligations due and owing under this agreement and the law.

       g.    <u>Acceptance of Responsibility</u>. If the defendant makes full and complete disclosure to the U.S. Probation Office of the circumstances surrounding the defendant's commission of the offense, and if the defendant demonstrates an acceptance of responsibility for this offense up to and including the time of sentencing, the United States will recommend a two-level reduction in the applicable Sentencing Guidelines offense level pursuant to U.S.S.G. § 3E1.1(a). If the defendant has an offense level of 16 or more, the United States will move the Court for an additional one-level reduction in the applicable Sentencing Guidelines offense level pursuant to U.S.S.G. § 3E1.1(b).

**4.**    **AGREEMENT TO DISMISS OR NOT TO PROSECUTE**

       a.    This office shall not prosecute the defendant for any offenses committed by the defendant, and known by the United States, in connection with the subject matter described in the factual basis of this agreement.

       b.    This agreement does not, in any manner, restrict the actions of the United States in any other district or bind any other United States Attorney's Office.

**5.**    **COURT APPROVAL REQUIRED; REINSTITUTION OF PROSECUTION**

  a. If the Court, after reviewing this plea agreement, concludes that any provision contained herein is inappropriate, it may reject the plea agreement and give the defendant the opportunity to withdraw the guilty plea in accordance with Fed. R. Crim. P. 11(c)(5).

  b. If the defendant's guilty plea or plea agreement is rejected, withdrawn, vacated, or reversed at any time, this agreement shall be null and void, the United States shall be free to prosecute the defendant for all crimes of which it then has knowledge and any charges that have been dismissed because of this plea agreement shall automatically be reinstated. In such event, the defendant waives any and all objections, motions, and defenses based upon the Statute of Limitations, the Speedy Trial Act, or constitutional restrictions in bringing later charges or proceedings. The defendant understands that any statements made at the time of the defendant's change of plea or sentencing may be used against the defendant in any subsequent hearing, trial, or proceeding subject to the limitations of Fed. R. Evid. 410.

## 6.  WAIVER OF DEFENSES AND APPEAL RIGHTS

  The defendant waives (1) any and all motions, defenses, probable cause determinations, and objections that the defendant could assert to the indictment or information; and (2) any right to file an appeal, any collateral attack, and any other writ or motion that challenges the conviction, an order of restitution or forfeiture, the entry of judgment against the defendant, or any aspect of the defendant's sentence, including the manner in which the sentence is determined, including but not limited to any appeals under 18 U.S.C. § 3742 (sentencing appeals) and motions under 28 U.S.C. §§ 2241 and 2255 (habeas petitions), and any right to file a motion for modification of sentence, including under 18 U.S.C. § 3582(c). This waiver shall result in the dismissal of any appeal, collateral attack, or other motion the defendant might file challenging the conviction, order of restitution or forfeiture, or sentence in this case. This waiver shall not be construed to bar an otherwise-preserved claim of ineffective assistance of counsel or of "prosecutorial misconduct" (as that term is defined by Section II.B of Ariz. Ethics

Op. 15-01 (2015)).

7. **DISCLOSURE OF INFORMATION**

  a. The United States retains the unrestricted right to provide information and make any and all statements it deems appropriate to the U.S. Probation Office and to the Court in connection with the case.

  b. Any information, statements, documents, and evidence that the defendant provides to the United States pursuant to this agreement may be used against the defendant at any time.

  c. The defendant shall cooperate fully with the U.S. Probation Office. Such cooperation shall include providing complete and truthful responses to questions posed by the U.S. Probation Office including, but not limited to, questions relating to:

    (1) criminal convictions, history of drug abuse, and mental illness; and

    (2) financial information, including present financial assets or liabilities that relate to the ability of the defendant to pay a fine or restitution.

8. **FORFEITURE, CIVIL, AND ADMINISTRATIVE PROCEEDINGS**

  a. Nothing in this agreement shall be construed to protect the defendant from administrative or civil forfeiture proceedings or prohibit the United States from proceeding with and/or initiating an action for civil forfeiture. Pursuant to 18 U.S.C. § 3613, all monetary penalties, including restitution imposed by the Court, shall be due immediately upon judgment, shall be subject to immediate enforcement by the United States, and shall be submitted to the Treasury Offset Program so that any federal payment or transfer of returned property the defendant receives may be offset and applied to federal debts (which offset will not affect the periodic payment schedule). If the Court imposes a schedule of payments, the schedule of payments shall be merely a schedule of minimum payments and shall not be a limitation on the methods available to the United States to enforce the judgment.

  b. The defendant agrees to forfeit, and hereby forfeits, all interest in any asset that the defendant owns or over which the defendant exercises control, directly or

1  indirectly, as well as any property that is traceable to, derived from, fungible with, or a
2  substitute for property that constitutes the proceeds of the offense(s), or which was used
3  to facilitate the commission of the offense(s). Such property includes, but is not limited
4  to, all right, title, and interest in funds held in the following bank accounts:
5     (1)   Prosperity Bank account number x7188
6     (2)   Compass Bank account number x3873
7  Such property further includes, but is not limited to, all right, title, and interest in the
8  following domain names:
9     (1)   atlantabackpage.com
10    (2)   backpage.be
11    (3)   backpage.com
12    (4)   backpage.com.br
13    (5)   backpage.cz
14    (6)   backpage.dk
15    (7)   backpage.ee
16    (8)   backpage.es
17    (9)   backpage.fi
18    (10)  backpage.fr
19    (11)  backpage.gr
20    (12)  backpage.hu
21    (13)  backpage.ie
22    (14)  backpage.it
23    (15)  backpage.lt
24    (16)  backpage.mx
25    (17)  backpage.net
26    (18)  backpage.no
27    (19)  backpage.pl
28    (20)  backpage.pt

|    |      |                        |
|----|------|------------------------|
| 1  | (21) | backpage.ro            |
| 2  | (22) | backpage.si            |
| 3  | (23) | backpage.sk            |
| 4  | (24) | backpage.us            |
| 5  | (25) | backpage-insider.com   |
| 6  | (26) | bestofbackpage.com     |
| 7  | (27) | bestofbigcity.com      |
| 8  | (28) | bigcity.com            |
| 9  | (29) | chicagobackpage.com    |
| 10 | (30) | denverbackpage.com     |
| 11 | (31) | newyorkbackpage.com    |
| 12 | (32) | phoenixbackpage.com    |
| 13 | (33) | sandiegobackpage.com   |
| 14 | (34) | seattlebackpage.com    |
| 15 | (35) | tampabackpage.com      |

Such property further includes, but is not limited to, all right, title, and interest in any funds remaining in the following IOLTA bank accounts at the conclusion of litigation (with the understanding that the funds currently deposited in those IOLTA bank accounts may only be withdrawn by counsel based on the provision of legal services):

(1) First Republic Bank IOLTA Account x6180
(2) First Republic Bank IOLTA Account x6255
(3) First Republic Bank IOLTA Account x5978
(4) All funds previously deposited in Wells Fargo IOLTA account number x7091 to fund the criminal defense of Backpage.com, LLC, Website Technologies, LLC, Posting Solutions LLC, Amstel River Holdings LLC, Ad Tech BV, and/or UGC Tech Group BV

Such property further includes, but is not limited to, all right, title, and interest in any funds previously advanced to a bail bond service (with the understanding that, should co-

defendant Carl Ferrer not be required to post a bond in this matter, the defendant will take immediate steps to recover any funds previously advanced to a bail bond service and surrender those funds to the United States for forfeiture).

  c. The defendant further agrees to waive all interest in any such asset in any administrative or judicial forfeiture proceeding, whether criminal or civil, state or federal. The defendant agrees to consent to the entry of orders of forfeiture for such property and waives the requirements of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment. The defendant further understands and agrees that forfeiture of the assets is appropriate and in accordance with the applicable forfeiture statutes, which may include Title 8 U.S.C. § 1324(b), Title 18 U.S.C. §§ 924(d), 981, 982 and 2253, Title 21 U.S.C. §§ 853 and 881, and Title 28 U.S.C. § 2461(c).

  d. Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty this court may impose upon the defendant in addition to forfeiture. This agreement does not preclude the United States from instituting any civil or administrative forfeiture proceedings as may be appropriate now or in the future.

  e. The defendant agrees to waive all constitutional and statutory challenges in any manner (including direct appeal, habeas corpus, double jeopardy or any other means) to any forfeiture imposed as a result of this guilty plea or any pending or completed administrative or civil forfeiture actions, including that the forfeiture constitutes an excessive fine or punishment. The defendant agrees to take all steps as requested by the United States to pass clear title to forfeitable assets to the United States, and to testify truthfully in any judicial forfeiture proceeding. The defendant acknowledges that all property covered by this agreement is subject to forfeiture as proceeds of illegal conduct, property facilitating illegal conduct, and substitute assets for property otherwise subject to forfeiture, and that no other person or entity has a legitimate claim to these items listed.

f.   The defendant agrees not to file a claim to any of the listed property in any civil proceeding, administrative or judicial, which may be initiated.  The defendant further agrees that he/she will not contest civil, administrative or judicial forfeiture of the listed property.  The defendant agrees to waive his/her right to notice of any forfeiture proceeding involving this property, and agrees not to file a claim or assist others in filing a claim in that forfeiture proceeding.

g.   The government reserves its right to proceed against any remaining assets not identified either in this agreement or in any civil actions which are being resolved along with this plea of guilty, including any property in which the defendant has any interest or control, if said assets, real or personal, tangible or intangible were involved in the offense(s).

h.   The defendant hereby waives, and agrees to hold the government and its agents and employees harmless from any and all claims whatsoever in connection with the seizure, forfeiture, and disposal of the property described above.  Without limitation, the defendant understands and agrees that by virtue of this plea of guilty, the defendant will waive any rights or cause of action that the defendant might otherwise have had to claim that he/she is a "substantially prevailing party" for the purpose of recovery of attorney fees and other litigation costs in any related civil forfeiture proceeding pursuant to 28 U.S.C. § 2465(b)(1).

9.   **ELEMENTS**

**Money Laundering Conspiracy**

Beginning no later than 2004, and continuing through in or around March 2018, in the District of Arizona and elsewhere:

1.   There was an agreement between two or more persons to commit one or more of the crimes of Concealment Money Laundering (18 U.S.C. § 1956(a)(1)(B)(i)), International Promotional Money Laundering (18 U.S.C. § 1956(a)(2)(A)),Transactional Money Laundering (18 U.S.C. § 1957(a)), and/or International Concealment Money Laundering (18 U.S.C. § 1956(a)(2)(B)(i)); and

- 10 -

2. The defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it.

**10. FACTUAL BASIS**

a. The defendant admits that the following facts are true and that if this matter were to proceed to trial the United States could prove the following facts beyond a reasonable doubt:

The website www.Backpage.com ("Backpage") was created in 2004. It eventually became the second-largest classified advertising website in the world and, during its 14 years of existence, has derived the great majority of its revenue from fees charged in return for publishing advertisements for "adult" and "escort" services.

The great majority of these advertisements are, in fact, advertisements for prostitution services (which are not protected by the First Amendment and which are illegal in 49 states and in much of Nevada). Acting with this knowledge, certain employees and representatives of Website Technologies, LLC (who were authorized to bind the company with their actions) conspired to find ways to knowingly facilitate the state-law prostitution crimes being committed by Backpage's customers. For example, the company utilized "moderation" processes through which Backpage would remove terms and pictures that were particularly indicative of prostitution and then publish a revised version of the ad. Such editing did not, of course, change the essential nature of the illegal service being offered in the ad—it was merely intended to create a veneer of deniability for Backpage. These editing practices were only one component of an overall, company-wide culture and policy of concealing and refusing to officially acknowledge the true nature of the services being offered in Backpage's "escort" and "adult" ads.

In addition to conspiring to knowingly facilitate the state-law prostitution offenses being committed by Backpage's customers, certain employees and representatives of Website Technologies, LLC (who were authorized to bind the company with their actions) also conspired to engage in various money laundering offenses. Since 2004, Backpage has earned hundreds of millions of dollars in revenue from publishing "escort" and "adult" ads. Over time, many banks, credit card companies, and other financial institutions refused to do business with Backpage due to the illegal nature of its business. In response, the aforementioned employees and representatives found ways to fool credit card companies into believing that Backpage-associated charges were being incurred on different websites, to route Backpage-related payments and proceeds through bank accounts held in the name of seemingly unconnected entities (including but not limited to Posting Solutions, Website Technologies, and Cereus Properties), and to use cryptocurrency-processing companies (including but not limited to CoinBase, GoCoin, Paxful, Kraken, and Crypto Capital) for similar purposes.

b. The defendant shall swear under oath to the accuracy of this statement and, if the defendant should be called upon to testify about this matter in the future, any intentional material inconsistencies in the defendant's testimony may subject the defendant to additional penalties for perjury or false swearing, which may be enforced by the United States under this agreement.

**APPROVAL AND ACCEPTANCE OF THE DEFENDANT'S AUTHORIZED REPRESENTATIVE**

I am authorized to enter into a written plea bargain agreement and enter a plea of guilty on behalf of the defendant.

I have read the entire plea agreement with the assistance of my attorney. I understand each of its provisions and I voluntarily agree to it on behalf of the defendant.

1    I understand that by entering my plea of guilty, the defendant shall waive its rights
2    to plead not guilty, to trial by jury, to confront, cross-examine, and compel the attendance
3    of witnesses, to present evidence in its defense, to remain silent and refuse to be a witness
4    against itself by asserting its privilege against self-incrimination (if applicable), all with
5    the assistance of counsel, and to be presumed innocent until proven guilty beyond a
6    reasonable doubt.

7    I agree to enter this guilty plea as indicated above on the terms and conditions set
8    forth in this agreement.

9    I understand the nature of the charges to which the defendant is entering its guilty
10   plea. I further understand the nature and range of the possible sentence and that the
11   defendant's ultimate sentence shall be determined by the Court after consideration of the
12   advisory Sentencing Guidelines.

13   The defendant's guilty plea is not the result of force, threats, assurances, or
14   promises, other than the promises contained in this agreement. The defendant voluntarily
15   agrees to the provisions of this agreement and agrees to be bound according to its
16   provisions.

17   I understand that if the defendant is granted probation or placed on supervised
18   release by the Court, the terms and conditions of such probation/supervised release are
19   subject to modification at any time. I further understand that if the defendant violates any
20   of the conditions of its probation/supervised release, its probation/supervised release may
21   be revoked and upon such revocation, notwithstanding any other provision of this
22   agreement, its sentence otherwise may be altered.

23   This written plea agreement, and any written addenda filed as attachments to this
24   plea agreement, contain all the terms and conditions of the plea. Any additional
25   agreements, if any such agreements exist, shall be recorded in a separate document and
26   may be filed with the Court under seal; accordingly, additional agreements, if any, may
27   not be in the public record.
28

- 13 -

I further agree on behalf of the defendant that promises, including any predictions as to the Sentencing Guideline range or to any Sentencing Guideline factors that will apply, made by anyone (including the defendant's attorney) that are not contained within this written plea agreement, are null and void and have no force and effect.

I fully understand the terms and conditions of this plea agreement. I am not now using or under the influence of any drug, medication, liquor, or other intoxicant or depressant that would impair my ability to fully understand the terms and conditions of this plea agreement.

4-5-18
Date

CARL FERRER
Defendant's Authorized Representative

**APPROVAL OF DEFENSE COUNSEL**

I have discussed this case and the plea agreement with my client in detail and have advised the defendant of all matters within the scope of Fed. R. Crim. P. 11, the constitutional and other rights of an accused, the factual basis for and the nature of the offense to which the guilty plea will be entered, possible defenses, and the consequences of the guilty plea including the maximum statutory sentence possible. I have further discussed the concept of the advisory Sentencing Guidelines with the defendant. No assurances, promises, or representations have been given to me or to the defendant by the United States or any of its representatives that are not contained in this written agreement. I concur in the entry of the plea as indicated above and that the terms and conditions set forth in this agreement are in the best interests of my client. I agree to make a bona fide effort to ensure that the guilty plea is entered in accordance with all the requirements of Fed. R. Crim. P. 11.

4/5/2018
Date

David Botsford
Attorney for Defendant

**APPROVAL OF THE UNITED STATES**

I have reviewed this matter and the plea agreement. I agree on behalf of the United States that the terms and conditions set forth herein are appropriate and are in the best interests of justice.

ELIZABETH A. STRANGE
First Assistant United States Attorney
District of Arizona

JOHN P. CRONAN
Acting Assistant Attorney General
Criminal Division, U.S. Department of Justice

9-5-18
Date

KEVIN RAPP
DOMINIC LANZA
MARGARET PERLMETER
JOHN J. KUCERA
Assistant U.S. Attorneys

REGINALD JONES
Senior Trial Attorney

**ACCEPTANCE BY THE COURT**

_____      _____
Date                      United States District Judge

- 15 -