Gary S. Lincenberg – State Bar No. 123058
  glincenberg@birdmarella.com
Ariel A. Neuman – State Bar No. 241594
  aneuman@birdmarella.com
Gopi K. Panchapakesan – State Bar No. 279586
  gpanchapakesan@birdmarella.com
BIRD, MARELLA, BOXER, WOLPERT, NESSIM,
DROOKS, LINCENBERG & RHOW, P.C.
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile: (310) 201-2110

Attorneys for Claimants John Brunst and
The Brunst Family Trust

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>$1,546,076.35 IN BANK FUNDS SEIZED FROM REPUBLIC BANK OF ARIZONA ACCOUNT '1889, et al.,<br><br>Defendants. | CASE NO. 2:18-cv-8420-RGK-PJWx<br><br>**CLAIMANTS JOHN BRUNST AND THE BRUNST FAMILY TRUST'S REPLY IN SUPPORT OF THEIR MOTION FOR RELEASE OF FUNDS**<br><br>**[EVIDENTIARY HEARING REQUESTED]**<br><br>*[Filed concurrently with Declaration of Gopi K. Panchapakesan]*<br><br>Date: November 13, 2023<br>Time: 9:00 A.M.<br>Crtrm.: 850<br><br>Assigned to Hon. R. Gary Klausner, Courtroom 850 |

3898970.1

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

The Government effectively concedes that Brunst has made a sufficient showing regarding his lack of funds to pay for trial counsel in the pending criminal trial in the District of Arizona ("Criminal Case"). Dkt. 273 at 13 ("The government does not dispute that Brunst has made what appears to be a fair disclosure of his current assets"). Because Brunst has made this showing, the Court is required to hold a *Monsanto* hearing regarding whether the Government has established probable cause that the seized assets are traceable to the charges in the indictment.

The Government asserts that Brunst has not suffered a Sixth Amendment injury because his counsel has continued to represent him in the criminal trial. Dkt. 273 at 16-17. But the cases cited by the Government merely stand for the proposition that a defendant does not have a post-conviction claim for ineffective assistance of counsel where counsel continued to represent the defendant through trial despite the lack of funds. Indeed, by the Government's logic, had counsel sought to withdraw from their representation of Brunst prior to trial, Brunst would have a more viable claim under *Monsanto*. *Id*. at 17 ("Brunst could have rejected the Fees Stipulation and brought this Motion before trial, but did not."). That would create a perverse incentive for counsel. And it would run counter to ethical standards that encourage counsel to continue representing a client even where unforeseen circumstances (like trial continuances due to COVID-19, a mistrial, and interlocutory appeals) create large additional legal costs. It is not a basis to reject the motion.

Further, the Government has not come close to establishing probable cause to seize all of Brunst's bank and brokerage accounts. The Government merely asserts that "virtually every dollar in the Seized Accounts is traceable to the operation of Backpage." Dkt. 273 at 19. But that assertion is completely untethered to the indictment's charges, which focus on fifty distinct advertisements posted on

Backpage, as opposed to all monies earned by Backpage over the course of its existence.

Brunst has met the prerequisites for a *Monsanto* evidentiary hearing regarding the release of $1.5 million to pay for his counsel to defend him in the Criminal Case.

## II.  ARGUMENT

### A.  Brunst Has Made A Sufficient Showing to Trigger a *Monsanto* Hearing

The Government concedes that "Brunst has made what appears to be a fair disclosure of his current assets." Dkt. 273 at 13 and n.2 ("Brunst's counsel also provided the government with a detailed breakdown of Brunst's current finances prior to the Fees Stipulation."). The Government cites a number of cases (Dkt. 273 at 16-17) for the proposition that because undersigned counsel has continued to represent Brunst in the trial of the Criminal Case, Brunst is not entitled to the release of funds. But these cases concerned post-conviction appeals regarding claims of ineffective assistance of counsel. *See United States v. Marshall*, 754 F. App'x 157, 160 (4th Cir. 2018) ("We find that Marshall's arguments essentially amount to claims of ineffective assistance of counsel because his attorney failed to raise the claim and/or properly counsel him, or prosecutorial misconduct based upon the Government's intent to prevent him from hiring the attorney of his choice."); *United States v. Gordon*, 657 F. App'x 773, 776 (10th Cir. 2016) ("Gordon's § 2255 motion raises various claims of ineffective assistance of counsel, fraud on the court, and prosecutorial misconduct."). Here, there is no dispute that Brunst lacks "sufficient alternative assets to fund counsel of choice," which is "all a defendant need" show "to trigger a *Monsanto* or *Monsanto*-like hearing." *United States v. Bonventre*, 720 F.3d 126, 131 (2d Cir. 2013).

The Government also relies on *Omidi*, which is readily distinguishable and cuts in favor of a *Monsanto* hearing here. First, in *Omidi*, Judge Gee observed that because (a) the Government agreed to release $10 million in seized assets to fund

defense legal costs and (b) Omidi had about $4.5 million remaining to fund his defense at trial, "[t]his acknowledgment in itself is fatal to his application." Case No. 2:17-cr-00661-DMG, Dkt. 1190 at 3.  Second, Omidi did not "provide[] his own sworn declaration attesting to, and detailing, his lack of funds or access to funds, or any sort of comprehensive list of assets"—detail that the Government admits Brunst has provided here. *Id*.  Third, Omidi also sought the release of funds for a "not yet retained" attorney, a trial graphics and jury consulting firm, and travel and accommodations.  *Id*. at 4 ("Most defendants would 'like' to have additional attorneys, professional trial graphics, and fine accommodations for their lawyers, but these are not constitutionally required.").

By contrast, here, (1) Brunst cannot fund his defense with available assets, and counsel has no monies in retainer; (2) the Government acknowledges that Brunst has provided sufficient detail regarding his assets; and (3) counsel has provided a declaration setting forth the basis for the fees they have incurred, and will continue to incur, during the trial of the Criminal Case.  *See also* Panchapakesan Reply Decl. at ¶ 5 (noting that counsel has now incurred about $1.2 million in fees through 10 weeks of trial).

**B.     The Government Cannot Establish Probable Cause to Forfeit All of the Funds in Brunst's Accounts.**

The Government asserts that Brunst's seized accounts contain the "proceeds of the offenses alleged" in the Criminal Case, namely "Backpage's facilitation of myriad prostitution enterprises." Dkt. 273 at 18.  But this significantly overstates the scope of the indictment in the Criminal Case.  The Government charged fifty Travel Act counts concerning fifty specific advertisements (Counts 2 through 51), and a conspiracy (Count 1), the object of which was to agree to commit those fifty Travel Act offenses.  That is the law of the case.  *See* Case No. 2:18-cr-00422-DJH, Dkt. 946 at 13 ("Defendants' suggestion that the SI improperly indicts a 'boundless conspiracy to facilitate prostitution in general,' however, mischaracterizes the

charges against them. Such a claim is simply untrue. They were not indicted for facilitating the amorphous notion of 'prostitution.' **They were indicted for facilitating (via publishing ads) on fifty distinct occasions** where prostitutes, prostitution-related businesses, or other groups were involved in the business of prostitution.") (emphasis added); Panchapakesan Reply Decl., Exh. A. (Final Jury Instructions) at 24 (Travel Act Conspiracy charge) ("First, beginning in or around 2004, and ending on or about April 2018, there was an agreement between two or more persons to commit at least one Travel Act offense *as charged in Counts 2-51 of the indictment* by promoting, or facilitating the promotion of, a business enterprise or enterprises involving prostitution offenses in violation of the laws of the State in which they were committed, in violation of 18 U.S.C. § 1952(a)(3)(A) and § 1952(b)(i)(1) . . . .) (emphasis added). The testimony at trial was that a given ad might cost $1 to $5 to post. Panchapakesan Reply Decl., Exh. B (09/26/23 PM Trial Tr. at 63:21-64:1). In other words, the fifty charged ads would amount to $50 to $250 in fees (or, at most, slightly more if some were reposted). This is a mere fraction of the seized amounts.

Nor is there any basis for the Government to argue that there is probable cause to forfeit all $9 million in Brunst's accounts because the funds are "traceable to the operation of Backpage." Dkt. 273 at 19. Defendants were charged in the Criminal Case under the Travel Act, which requires that the defendant specifically intended to promote or facilitate the promotion of a "business enterprise" involving "prostitution offenses" in violation of state law. 18 U.S.C. § 1952(a)(3)(b); *United States v. Gibson Specialty Co.*, 507 F.2d 446, 449 (9th Cir. 1974) ("[T]he prosecutor must show that the manufacturer in some significant manner associated himself with the purchaser's criminal venture for the purpose of its advancement. Were we not to define intent in the travel act in this manner, the act would be plagued by the very overexpansiveness which Congress sought to rule out by inclusion of an express *mens rea* requirement."). The Government has acknowledged that the "business

enterprise" *is not* Backpage itself, but the alleged pimps and prostitutes who advertised on Backpage.  Case No. 2:18-cr-00422-DJH at Dkt. 776 (Gov't Opp. to Mtn. to Dismiss) at 2:24-3:6.  Beyond the fifty ads at issue, the Government has not alleged in the indictment (or sought to prove at trial) that Brunst or any of the other Defendants intentionally facilitated every alleged prostitution or pimp "business enterprise" that posted an ad on Backpage.com during its entire existence.[1]

Nor is the fact that Backpage pled guilty in a separate case to a money laundering conspiracy proof that the funds seized from Brunst's accounts are "involved in" that offense or traceable to any property "involved in" such an offense.  18 U.S.C. § 982(a)(1) (cited to in Forfeiture Allegation Two in the indictment [Criminal Case Dkt. 230 at 77]).  The Backpage plea agreement says nothing about (1) the specified unlawful activity (alleged Travel Act violations) underlying any money laundering conspiracy or (2) whether any funds in Brunst's seized accounts are traceable to such specified unlawful activity.  The claim that the "great majority" of escort ads on the site were for "prostitution" (Dkt. 273 at 19) falls well short of establishing probable cause that Travel Act violations were committed as to each of the millions of escort ads posted on the Backpage site over the course of its 14-year existence, and amounts to an attempt by the Government to convert the Travel Act from a specific intent crime into a general intent crime.

Indeed, the Government's own law enforcement witnesses testified at trial that they would not have probable cause to make an arrest based merely on the face of an ad posted on Backpage.  Panchapakesan Reply Decl., Exh. C (10/13/23 AM Trial Tr. at 78:6-13, 93:13-16) (law enforcement officer observing that the ad is merely a "first step" as part of a prostitution investigation and that he would lack

---

[1]  The Government's citations to cases regarding a lack of legitimate income are therefore inapposite.  The Government is bound by the charges it brought in the Criminal Case and the manner in which the District of Arizona has defined the scope of those charges.

"probable cause" to make an arrest based on an ad).  If there is no probable cause to make an arrest based on the face of the ads the Government claims writ large are for prostitution, then there can be no probable cause for the Government to seize Brunst's accounts on the theory that the funds in the accounts are proceeds of a money laundering scheme tied to Travel Act violations.  That is because the Travel Act requires a specific intent to promote a prostitute or pimp engaged in prostitution, as opposed to mere speculation that all of the escort ads on Backpage.com may have at some point led to prostitution, a theory that plainly runs afoul of the First Amendment.  *See Centro de la Comunidad Hispana de Locust Valley v. Town of Oyster Bay*, 868 F.3d 104, 114 (2d Cir. 2017) ("[T]he First Amendment offers no protection to speech that proposes a commercial transaction if consummation of that transaction would *necessarily* constitute an illegal act.  However, if, as here, there are *plausible ways to complete a proposed transaction lawfully*, speech proposing that transaction 'concerns lawful activity' and is therefore *protected commercial speech*.") (emphasis added).

### III.   CONCLUSION

For the foregoing reasons, the Court should hold a *Monsanto* hearing and grant Brunst's request for the release of $1.5 million in seized funds to pay for counsel.

DATED:  November 5, 2023          Respectfully submitted,

Gary S. Lincenberg
Ariel A. Neuman
Gopi K. Panchapakesan
Bird, Marella, Boxer, Wolpert, Nessim,
Drooks, Lincenberg & Rhow, P.C.

By:    */s/ Gary S. Lincenberg*
          Gary S. Lincenberg
       Attorneys for Claimant John Brunst

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Claimant John Brunst and The Brunst Family Trust, certifies that this brief contains 1,919 words, which:

☒ complies with the word limit of L.R. 11-6.1.

☐ complies with the word limit set by court order dated _____.

DATED: November 5, 2023

By: */s/ Gary S. Lincenberg*
 Gary S. Lincenberg