# EXHIBIT A

Gary S. Lincenberg *(admitted pro hac vice)*
  glincenberg@birdmarella.com
Ariel A. Neuman *(admitted pro hac vice)*
  aneuman@birdmarella.com
Gopi K. Panchapakesan *(admitted pro hac vice)*
  gkp@birdmarella.com
BIRD, MARELLA, BOXER, WOLPERT, NESSIM,
DROOKS, LINCENBERG & RHOW, P.C.
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile: (310) 201-2110

Attorneys for Defendant John Brunst

# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>                    Plaintiff,<br><br>         vs.<br><br>Michael Lacey, et al.,<br><br>                    Defendants. | CASE NO. 2:18-cr-00422-004-PHX-DJH<br><br>**DEFENDANT JOHN BRUNST'S SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR ACQUITTAL UNDER FED. R. CRIM. P. 29** |

3902126.2

## **TABLE OF CONTENTS**

Page

I. INTRODUCTION ................................................................................................. 1

II. ARGUMENT ...................................................................................................... 3

    A. Legal Standard ......................................................................................... 3

    B. Brunst Must Be Acquitted on Count 1 (Travel Act Conspiracy). .................. 4

        1. The Government Argued to the Jury That the "Object" of the Conspiracy Was to "Make Money." ..................................................... 4

        2. The Government Presented Insufficient Evidence Regarding an Agreement to Violate the Travel Act. ............................................... 6

    C. Brunst Must Be Acquitted of the Money Laundering Convictions (Counts 52-62, 64-70, 78-84, and 86-93). ..................................................... 8

        1. Concealment Money Laundering (Counts 53-62) ............................... 8

            a. The Government Failed to Prove Specified Unlawful Activity. ............................................................................... 8

            b. There Was No Evidence That the Transactions in Counts 53-62 Were Designed to Conceal. .......................... 10

        2. The Government Failed to Prove Actual "Promotion" as to the International Promotional Money Laundering Counts of Conviction (Counts 64-68). ............................................................. 11

        3. Transactional Money Laundering (Counts 69-70, 78-84, and 86-93). ............................................................................... 13

            a. The Government Failed to Prove Any Specified Unlawful Activity Underlying These Counts. ....................... 13

            b. The Government Failed to Prove Brunst's Involvement as to Counts 69-70 and 83-84 (Lacey Transactions). .............. 14

        4. Brunst Should be Acquitted of Conspiracy to Commit Money Laundering (Count 52). ................................................................. 15

    D. The Court's *Allen* Charge May Have Created Reversible Error. ................. 17

III. CONCLUSION ................................................................................................. 17

1

2 <u>**TABLE OF AUTHORITIES**</u>

3 **Page(s)**

4 **Cases**

5 *Centro de la Comunidad Hispana de Locust Valley v. Town of Oyster Bay*

6     868 F.3d 104 (2d Cir. 2017)................................................................................9

7 *Jiminez v. Myers*

8     40 F.3d 976 (9th Cir. 1993) ........................................................................17

9 *Prigge v. USA*
    No. CR-13-01363-PHX-GMS, 2018 WL 513380

10     (D. Ariz. Jan. 23, 2018)................................................................................11

11 *Regalado Cuellar v. United States*

12     553 U.S. 550, 128 S. Ct. 1994, 170 L. Ed. 2d 942 (2008) .........................10

13 *RJR Nabisco, Inc. v. Eur. Cmty.*
    579 U.S. 325, 136 S. Ct. 2090, 195 L. Ed. 2d 476 (2016) .........................16

14

15 *United States v. Alarcon–Simi*
    300 F.3d 1172 (9th Cir. 2002).......................................................................4

16

17 *United States v. Awan*
    966 F.2d 1415 (11th Cir. 1992)...................................................................16

18 *United States v. Banks*

19     514 F.3d 959 (9th Cir. 2008).......................................................................17

20 *United States v. Bishop*

21     1 F.3d 910 (9th Cir. 1993)............................................................................4

22 *United States v. Brown*
    186 F.3d 661 (5th Circ. 1999)................................................................12, 13

23

24 *United States v. Brown*
    553 F.3d 768 (5th Cir. 2008).......................................................................11

25 *United States v. Caplan*

26     633 F.2d 534 (9th Cir. 1980)......................................................................5, 6

27 *United States v. Chao Fan Xu*
    706 F.3d 965 (9th Cir. 2013),

28     *as amended on denial of reh'g* (Mar. 14, 2013)........................................16

*United States v. Croft*
   124 F.3d 1109 (9th Cir. 1997) .................................................................................... 4

*United States v. Gibson Specialty Co.*
   507 F.2d 446 (9th Cir. 1974) ................................................................................... 10

*United States v. Henry*
   325 F.3d 93 (2d Cir. 2003) ...................................................................................... 16

*United States v. Ionutescu*
   752 F. Supp. 2d 1091 (D. Ariz. 2009) ................................................................. 4, 8

*United States v. Jaimez*
   45 F.4th 1118 (9th Cir. 2022),
   *cert. denied*, 143 S. Ct. 1038, 215 L. Ed. 2d 198 (2023) ................................... 15

*United States v. Johnson*
   44 F. App'x 752 (9th Cir. 2002),
   *opinion amended on reh'g* (Aug. 30, 2002) ........................................................... 4

*United States v. Kaplan*
   836 F.3d 1199 (9th Cir. 2016) .................................................................................. 6

*United States v. Licciardi*
   30 F.3d 1127 (9th Cir. 1994) .................................................................................... 8

*United States v. Manarite*
   44 F.3d 1407 (9th Cir. 1995) .................................................................................... 4

*United States v. Medina*
   485 F.3d 1291 (11th Cir. 2007) .............................................................................. 16

*United States v. Messer*
   197 F.3d 330 (9th Cir. 1999) .................................................................................. 13

*United States v. Nattier*
   127 F.3d 655 (8th Cir. 1997) .................................................................................. 16

*United States v. Polizzi*
   500 F.2d 856 (9th Cir. 1974) .................................................................................... 9

*United States v. Singh*
   No. 2:14-CR-00648-CAS-9, 2020 WL 2768848
   (C.D. Cal. May 27, 2020) ...................................................................................... 10

*United States v. Wilkes*
   662 F.3d 524 (9th Cir. 2011) .................................................................................... 8

*United States v. Williams*
    547 F.3d 1187 (9th Cir. 2008)............................................................................... 17

**Statutes**

18 U.S.C.
    § 371 ....................................................................................................... 2, 4, 6
    § 1952 ........................................................................................................ *passim*
    § 1952(a)(3)(A) ............................................................................................... 6
    § 1952(b)(i)(1) ................................................................................................ 6
    § 1956(a)(1) .................................................................................................... 8
    § 1956(a)(1)(B)(i) ........................................................................................... 8
    § 1956(a)(2)(A) ............................................................................................. 11
    § 1956(c)(7) .................................................................................................... 8
    § 1956(h) ...................................................................................................... 15
    § 1961(1) ........................................................................................................ 9
    §§ 1961, *et seq.* .......................................................................................... 16

**Other Authorities**

Fed. R. Crim. P. 29 ........................................................................................ 3, 5, 6

Local Civil Rule 39.2(b) ..................................................................................... 17

U.S. Const. amend I ............................................................................................. 9

DEFENDANT BRUNST'S SUPPLEMENTAL BRIEF IN SUPPORT OF
MOTION FOR ACQUITTAL UNDER RULE 29

## I.   **INTRODUCTION**

Following the conclusion of the Government's case, Brunst moved for a judgment of acquittal on all counts. The Court took the matter under submission and has not yet ruled. Meanwhile, a jury has acquitted Brunst of all 50 counts of violating the Travel Act, while convicting him of conspiracy to violate the Travel Act and the money laundering counts. The convictions are legally unsupportable and based on insufficient evidence. This brief supplements the arguments previously presented (and currently pending before the Court) in light of the government's closing argument and the verdict.

**Travel Act Conspiracy (Count 1).** The acquittals support two of the bases for dismissing Count One. First, the object of the conspiracy—"to obtain money"—cannot form the basis for a conspiracy conviction. Yet in its closing, the Government told the jury that there are multiple objects of the conspiracy and the object they should convict on is "to make money." The Ninth Circuit requires the object of a conspiracy to be a federal offense, yet Brunst was convicted of a conspiracy that did not meet this black-letter requirement.

Second, this Court has held—and made clear in the jury instructions—that the Travel Act conspiracy is bounded by the 50 advertisements charged in Counts 2 to 51, as to which Brunst was acquitted. The Government failed to present sufficient evidence that Brunst entered into an agreement with anyone to violate the Travel Act in those 50 specific instances. Brunst's acquittal confirms his lack of intent to violate the Travel Act as to the ads which were charged and as to which proof was presented at trial. There also was insufficient evidence at trial that he intended for anyone else to violate the Travel Act through the publication of any of the 50 ads.

**Concealment Money Laundering (Counts 53-62).** First, in light of the acquittals, there was no specified unlawful activity that supported the jury's verdict. The charged wires were sent between May 18, 2016 and August 31, 2016. There were no Travel Act convictions of any defendant *after* the sale of Backpage in April 2015. And there were none whatsoever against Brunst. The only Travel Act-related conviction of Brunst was for

1  a Section 371 conspiracy; Section 371, however, is not a "specified unlawful activity" that

2  can support a money laundering conviction. Nor did the Government attempt to prove any

3  specified Travel Act violation that could form the basis for these counts.

4        Second, concealment money laundering requires that a given transaction be

5  *designed* to conceal. Yet the only testimony on these transactions was Ferrer's testimony

6  that the legitimate purpose of the transactions was to make loan payments to the sellers of

7  Backpage.

8        **International Promotional Money Laundering (Counts 64-68).** Here,

9  promotional money laundering requires an intent to promote a specified Travel Act

10  offense. The only evidence of "promotion"—as argued by the Government during

11  closing—was the threadbare claim that funds that went to Cereus Properties were later

12  used for Backpage's payroll. But the promotional money laundering statute is not a general

13  expenditure statute. Instead, the Government is required to show that Brunst intended to

14  promote Travel Act violations through these wire transfers, which it plainly failed to do.

15        And in any event, the only testimony on the "payroll" issue was from Quoc Thai,

16  who (1) later admitted he did not investigate the purpose of any wire transfer and (2) failed

17  to link any of the transfers in Counts 64-68 to Backpage's payroll. Moreover, Ferrer

18  testified that these wire transfers were merely loan payments tied to the sale of

19  Backpage—no percipient witness said otherwise.

20        **Transactional Money Laundering (Counts 69-70, 78-84, and 86-93).** First, the

21  Government failed to prove the underlying specified unlawful activity as to these counts.

22  Other than Counts 69 and 70, these counts all post-date any counts of conviction as to the

23  Travel Act offenses. As to Counts 69 and 70, no attempt was made by the Government to

24  tie the transfers in these counts to any substantive Travel Act violations (indeed, the

25  transfer in Count 69 predates the earliest Travel Act count of conviction, Count 2).

26        Second, as to Counts 69-70 and 83-84, each of which concerns a personal

27  transaction made by Lacey involving the transfer of money from a personal bank account

28  to a title company, the Government failed to present any evidence regarding Brunst's role

DEFENDANT BRUNST'S SUPPLEMENTAL BRIEF IN SUPPORT OF
MOTION FOR ACQUITTAL UNDER RULE 29

1  in Lacey's personal transactions. That Lacey was not convicted on personal transactions he
2  conducted, yet Brunst was, highlights the irrationality of the verdict on these counts.

3  **Conspiracy to Commit Money Laundering (Count 52).** There was no evidence at
4  trial of an agreement on Brunst's part to commit (or for any alleged co-conspirator to
5  commit) the substantive money laundering counts. The Government's argument that there
6  was an agreement to conceal Backpage from credit card companies and banks missed the
7  mark. The Government never presented evidence that Brunst was part of a criminal
8  agreement to conceal the source of funds as to any transaction from any financial
9  institution referenced in the case. Nor did the Government present evidence that any
10 alleged circumvention of a credit card ban related to a specific transaction alleged in the
11 Indictment. Ultimately, the Government's claim that tainted funds moved through various
12 accounts falls well short of establishing that Brunst was part of a money laundering
13 conspiracy. Indeed, the Government never even attempted to link a particular Travel Act
14 violation to a particular wire transfer, let alone establish Brunst's knowledge of such a
15 violation or his intent to launder funds tied to such a violation.

16 ___*Allen* Charge.___ Lastly, following the Court's *Allen* charge, the jury quickly moved
17 from being deadlocked on 99 counts to reaching verdicts on every count as to every
18 defendant other than Lacey. Defendants had objected at trial that in light of the jurors' note
19 and the length of time the jurors had been away from their lives, the charge would have an
20 unduly coercive effect. In order to test the merits of Defendants' objection, Defendants
21 seek leave from the Court to question jurors.

22 **II.   ARGUMENT**

23     **A.   Legal Standard**

24     Rule 29 provides that "the court on defendant's motion *must enter a judgment* of
25 acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed.
26 R. Crim. P. 29(a) (emphasis added). In ruling on a Rule 29 motion, "'[t]he relevant
27 question is whether, after viewing the evidence in the light most favorable to the
28 prosecution, any rational trier of fact could have found the essential elements of the crime

beyond a reasonable doubt.'" *United States v. Ionutescu*, 752 F. Supp. 2d 1091, 1095 (D. Ariz. 2009) (quoting *United States v. Alarcon–Simi*, 300 F.3d 1172, 1176 (9th Cir. 2002)).

**B.     Brunst Must Be Acquitted on Count 1 (Travel Act Conspiracy).**

**1.     The Government Argued to the Jury That the "Object" of the Conspiracy Was to "Make Money."**

In the Ninth Circuit, "a federal conspiracy *conviction* [cannot] be upheld when non-federal offenses as well as federal offenses were submitted to the jury as objects of the conspiracy, and it [is] impossible to determine on which basis the jury convicted." *United States v. Croft*, 124 F.3d 1109, 1115 (9th Cir. 1997) (emphasis in original); *United States v. Manarite*, 44 F.3d 1407, 1414 (9th Cir. 1995), *as amended on denial of reh'g* (Mar. 15, 1995) ("Under 18 U.S.C. § 371, a single charge of conspiracy can have multiple objects, but each object alleged must constitute a federal offense."); *United States v. Bishop*, 1 F.3d 910, 911 (9th Cir. 1993) ("To prove a conspiracy, the government must prove that defendant entered into an agreement to accomplish an illegal objective.").[1]

For example, in *United States v. Johnson*, 44 F. App'x 752, 754 (9th Cir. 2002), *opinion amended on reh'g* (Aug. 30, 2002), a case involving a conspiracy charge regarding interstate travel for the purpose of prostitution, the Ninth Circuit reversed a conspiracy conviction where there were "multiple objects" and one of the alleged objects was "not a federal offense." *Id.* (noting that "'[t]o obtain the proceeds of prostitution from females the defendants had recruited to work as prostitutes,' is not a federal offense"). The Court held that because the jury returned general verdict forms, "[w]e cannot determine which 'object' of the conspiracy the jury relied on in reaching its verdict. Because the jury could have relied on object number three," which was not a federal offense, "the conspiracy conviction is legally unsupportable." *Id.*

Here, the Indictment alleges that the object of Count 1 was to "obtain money" (Dkt. 230 at ¶ 197)—which plainly is not a federal offense. In asking the jury to convict Brunst, the Government argued during closing that "Defendant[s] became members of the

---

[1]     Unless otherwise noted, internal citations and quotation marks have been omitted.

DEFENDANT BRUNST'S SUPPLEMENTAL BRIEF IN SUPPORT OF
MOTION FOR ACQUITTAL UNDER RULE 29

1   conspiracy knowing of at least one of its objects and intending to help accomplishment—

2   accomplish it. What is the object in this case? Well, one of the object is to make money.

3   And they did." 10/27/23 PM Tr. at 6:19-23. In effect, the Government made two

4   statements to the jury: (1) there are multiple "objects" of the alleged Travel Act conspiracy

5   and (2) the object on which the jury should convict is "to make money."[2] In the Ninth

6   Circuit, the Travel Act conspiracy conviction therefore cannot stand against Brunst

7   because it is impossible to know whether the jury convicted based on the legally

8   insufficient object identified by the Government both in the Indictment and closings.

9        The Government is likely to argue that in connection with the conspiracy jury

10   instruction, this Court held that it was unnecessary to modify the term "object" with

11   "illegal" because "under the *[C]aplan* case, the additional guidance there is that a

12   conspiracy is defined as a combination of two or more persons to accomplish some

13   unlawful purpose or some lawful purpose by unlawful means." 10/26/23 AM Tr. at 18-19

14   (citing *United States v. Caplan*, 633 F.2d 534, 542 (9th Cir. 1980) ("A conspiracy is

15   defined as a combination of two or more persons to accomplish some unlawful purpose, or

16   some lawful purpose by unlawful means.")). This argument is unavailing in connection

17   with Rule 29. First, the Court's ruling was limited to the context of whether the Court

18   should depart from the model Ninth Circuit instruction on conspiracy, which does not use

19   the term "illegal" to modify "object" (presumably because the case law holds that the

20   object must be a federal offense). But that *does not mean* a perfectly legal object is

21   sufficient to sustain a conviction. Second, the Government did not argue in closing that the

22   object of the conspiracy was to make money *through the unlawful means* of committing

23   Travel Act violations. The Government instead sought to convict Brunst of Count 1 based

24

25

26   [2]   *See also* 11/01/23 AM Tr. at 43:20-24 ("They knew the only way to actually prevent the promotion of prostitution enterprises was to do one thing, shut the site down, but they

27   didn't want to do that because of the object of the conspiracy, which was to make money."); *id.* at 57:10-11 ("It would reduce the object of the conspiracy, which was to

28   make money.").

DEFENDANT BRUNST'S SUPPLEMENTAL BRIEF IN SUPPORT OF
MOTION FOR ACQUITTAL UNDER RULE 29

1  solely on the purported object of making money.[3]

2          **2.**      **The Government Presented Insufficient Evidence Regarding an Agreement to Violate the Travel Act.**

3  "To prove a conspiracy under 18 U.S.C. § 371, the government must establish three

4  elements: "(1) an agreement to engage in criminal activity, (2) one or more overt acts taken

5  to implement the agreement, and (3) the requisite intent to commit the substantive crime."

6  *United States v. Kaplan*, 836 F.3d 1199, 1212 (9th Cir. 2016) (citations and quotations

7  omitted).

8       As an initial matter, the law of the case is that Count 1 of the Indictment is limited

9  to a conspiracy concerning the 50 ads charged in Counts 2-51:

10       Defendants' suggestion that the SI improperly indicts a '***boundless***

11  ***conspiracy*** to facilitate prostitution in general' (Reply at 4), however, mischaracterizes the charges against them. Such a claim is simply untrue.

12  ***They were not indicted for facilitating the amorphous notion of 'prostitution.'*** They were indicted for facilitating (via publishing ads) on

13  ***fifty distinct occasions*** where prostitutes, prostitution-related businesses, or other groups were involved in the business of prostitution.

14  Dkt. 946 at 13; *see also* Final Jury Instructions at 24 ("First, beginning in or around 2004,

15  and ending on or about April 2018, there was an agreement between two or more persons

16  to ***commit at least one Travel Act offense as charged in Counts 2-51 of the indictment*** by

17  promoting, or facilitating the promotion of, a business enterprise or enterprises involving

18  prostitution offenses in violation of the laws of the State in which they were committed, in

19  violation of 18 U.S.C. § 1952(a)(3)(A) and § 1952(b)(i)(1)") (emphasis added).[4]

20

21  _____

22  [3]   And even in *Caplan*, the Ninth Circuit observed that the "unlawful purpose" of the conspiracy was "the importation, possession and distribution of marijuana," as opposed to making money or making money by distributing marijuana. *United States v. Caplan*, 633

23  F.2d 534, 543 (9th Cir. 1980).

24  [4]   The Government's theory that the 50 charged ads are merely "examples" is plainly

25  wrong. The Government will presumably continue to point to the rest of pages 13-16 of Dkt. 946 in support of this claim, as they did during oral argument on the Rule 29 motion.

26  But the discussion from the Court in this respect merely indicates that the Indictment's allegations sufficiently support the existence of business enterprises "on fifty distinct

27  occasions," *i.e.*, the fifty charged ads. *Id*. at 14. The Government's strained reading of this

28  language should be rejected. Nor does the relevance of evidence regarding alleged

1    Against this backdrop, the Government failed to establish that Brunst was in

2  a conspiracy with anyone to commit Travel Act violations as to the 50 charged ads. The

3  Government presented no evidence (1) of any agreement as to the 50 charged ads

4  involving Brunst or (2) that Brunst specifically intended to violate (or intended for Ferrer

5  or any other alleged co-conspirator to violate) the Travel Act through these 50 charged ads.

6  Evidence that, for example, Ferrer had an arrangement with The Erotic Review ("TER")

7  and so-called super-posters, or that Backpage's moderation function was designed to

8  facilitate prostitution, is insufficient to establish these elements. That is because there was

9  no evidence that (1) any of the 50 ads was the product of any such purported prostitution

10  marketing strategies or (2) Brunst had an agreement with Ferrer or others to violate the

11  Travel Act as to any business enterprise associated with the 50 ads through these alleged

12  marketing strategies.  Ferrer admitted that Brunst had no direct involvement with regard to:

13 • Dealings with David Elms of TER;
   • Moderation;
14 • Aggregation;
   • Advertisers who posted on the site;
15 • The reviewing of advertisements;
   • Dealings with so-called super-posters;
16 • Dealings with NCMEC;
   • Dealings with Attorneys General;
17 • Dealings with the U.S. Senate;
   • Dealings with law enforcement and responses to subpoenas; and
18 • Dealings with PR firms and the press.

19  09/27/23 AM Trial Tr. at 87:23-93:16.

20    The Government's case in this respect primarily focused on annual Backpage

21  budget meetings at which Brunst was present. But Brunst's mere presence at a budget

22  meeting where a meeting agenda may have referenced TER, or where a budget line item

23  may have concerned marketing, plainly is not enough to establish either an agreement or

24  the requisite intent to violate the Travel Act. Indeed, Ferrer testified that Brunst's role at

25  these meetings was merely to look at expenses and revenue, and that the "main discussion"

26

27  marketing strategies during the 14-year period of the alleged conspiracy broaden the
    Indictment's Travel Act charges to more than the 50 ads. The relevance of evidence and
28  the scope of the Indictment's charges are two distinct issues.

DEFENDANT BRUNST'S SUPPLEMENTAL BRIEF IN SUPPORT OF
MOTION FOR ACQUITTAL UNDER RULE 29

on Brunst's part would concern executive salaries. 09/27/23 PM Tr. at 14:3-25. None of this comes close to establishing Brunst's participation in a criminal conspiracy. *See* Final Jury Instructions at 24 ("It is not enough, however, that they simply met, discussed matters of common interest, acted in similar ways, or perhaps helped one another. You must find that there was a plan to commit at least one of the crimes alleged in the indictment as an object of the conspiracy with all of you agreeing as to the particular crime, *i.e.* the Travel Act violation, which the conspirators agreed to commit."); *see also United States v. Ionutescu*, 752 F. Supp. 2d 1091, 1102 (D. Ariz. 2009) ("That the incidental effects of a defendant's actions further a conspiracy does not confer upon the defendant the *mens rea* of accomplishing the object of the conspiracy.") (citing *United States v. Licciardi*, 30 F.3d 1127, 1132 (9th Cir. 1994)).

### C.   Brunst Must Be Acquitted of the Money Laundering Convictions (Counts 52-62, 64-70, 78-84, and 86-93).

#### 1.   Concealment Money Laundering (Counts 53-62)

##### a.   The Government Failed to Prove Specified Unlawful Activity.

In order "[t]o convict a person for money laundering under 18 U.S.C. § 1956(a)(1)(B)(i), the government must prove that (1) the defendant conducted or attempted to conduct a financial transaction; (2) the transaction involved the proceeds of unlawful activity; (3) the defendant knew that the proceeds were from unlawful activity; and (4) the defendant knew 'that the transaction [was] designed in whole or in part—(i) to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity.'" *United States v. Wilkes*, 662 F.3d 524, 545 (9th Cir. 2011). Critically, the statute requires that the subject financial transaction "in fact involves proceeds of specified unlawful activity." 18 U.S.C. § 1956(a)(1); *see also* Final Jury Instructions at 41 ("the Defendant conducted a financial transaction involving property that represented the proceeds of a violation of the Travel Act.").

The specified unlawful activity underlying a money laundering violation cannot be *conspiracy* to violate the Travel Act. *See* 18 USC § 1956(c)(7) (no reference to conspiracy

or Travel Act); 18 USC 1961(1) (only refers to 18 USC § 1952). In other words, the specified unlawful activity here must be ***substantive violations*** of the Travel Act. But the only counts of conviction as to Travel Act violations are the ones on which Spear was convicted, Counts 2 to 18, each of which ***pre-date*** the sale of Backpage and the transactions identified in Counts 53 to 62 by at least a year (and there was no evidence that any fees from the ads in Counts 2 to 18 were part of the subject transactions).[5] Therefore, there is no specified unlawful activity that the jury could have found that forms the basis for Counts 53 to 62. Indeed, ***there are no substantive Travel Act*** counts in the Indictment that concern ads posted from May 18, 2016, to August 31, 2016, the timeframe of the concealment money laundering counts of conviction.

The Government will likely argue that Ferrer's general testimony that escort ads were all prostitution ads forms the basis for Counts 53 to 62. But that generality is not proof a specified unlawful activity to form the basis for a money laundering count. And that position would be completely at odds with the presumptions required by the First Amendment. *See Centro de la Comunidad Hispana de Locust Valley v. Town of Oyster Bay*, 868 F.3d 104, 114 (2d Cir. 2017) ("[T]he First Amendment offers no protection to speech that proposes a commercial transaction if consummation of that transaction would ***necessarily*** constitute an illegal act. However, if, as here, there are ***plausible ways to complete a proposed transaction lawfully***, speech proposing that transaction 'concerns lawful activity' and is therefore ***protected commercial speech***.") (emphasis added).

Moreover, there is no evidence of any such violations during the timeframe of these 10 counts and no evidence of any budget meetings, TER marketing, or the like during this time period involving Brunst. The Travel Act is a specific intent crime that requires the intent to "facilitate an activity which the accused knew to be unlawful under state law," specifically business enterprises involved in prostitution. Dkt. 946 at 14 (quoting *United*

---

[5]   The ads in Counts 2 to 18 are dated September 10, 2013, to February 26, 2015. The transactions in Counts 53 to 62 are dated May 18, 2016, to August 31, 2016.

*States v. Polizzi*, 500 F.2d 856, 876–77 (9th Cir. 1974)); *see also United States v. Gibson Specialty Co.*, 507 F.2d 446, 449 (9th Cir. 1974) (("[T]he prosecutor must show that the manufacturer in some significant manner associated himself with the purchaser's criminal venture for the purpose of its advancement. Were we not to define intent in the travel act in this manner, the act would be plagued by the very overexpansiveness which Congress sought to rule out by inclusion of an express mens rea requirement."). Further, "one cannot intend to promote/facilitate a business enterprise one does not know exists." Dkt. 946 at 15-16.

But the Government did not prove (or even seek to prove) (1) the existence of other paid ads that allegedly form the basis for Travel Act violations during the time period of the transactions alleged in Counts 53-62, (2) that any such ads in fact establish a Travel Act violation, or (3) that any fees paid for such ads were part of the subject transactions. Indeed, the only analysis Quoc Thai provided in terms of source of revenue pertained to the October 2010 to November 2012 time period. 10/17/23 AM Tr. at 54-55. And in any event, testimony that a majority of Backpage's revenue came from adults ads during any time period clearly falls short of establishing the existence of a Travel Act violation.

### b.   There Was No Evidence That the Transactions in Counts 53-62 Were Designed to Conceal.

Under a concealment money laundering charge, "[t]he statutory text makes clear, however, that a conviction under this provision requires proof that the purpose—not merely effect—of the transportation was to conceal or disguise a listed attribute." *Regalado Cuellar v. United States*, 553 U.S. 550, 567, 128 S. Ct. 1994, 2005, 170 L. Ed. 2d 942 (2008); *see also United States v. Singh*, No. 2:14-CR-00648-CAS-9, 2020 WL 2768848, at *3 (C.D. Cal. May 27, 2020) ("Although Cuellar concerned the money laundering statute's transportation prong, rather than Section 1956(a)(1)(B)(i), the statute's transaction prong, various circuit courts of appeal have nonetheless specifically applied Cuellar in cases involving the money laundering statute's transaction prong.") (collecting cases, including *United States v. Sun*, 673 F. App'x 729, 733 (9th Cir. 2016)).

1    Here, ***the only testimony*** as to the transactions in Counts 52 to 63 came from Ferrer,

2    who said that payments from Website Technologies to Cereus Properties were loan

3    payments in connection with the sale of Backpage. *See* 09/21/23 PM Tr. at 91:1-13

4    ("Cereus Properties collected the interest and debt payments from the $600 million loan").

5    There was no testimony that the sale of Backpage and associated loan was consummated

6    for the *purpose* of concealing from financial institutions the source of the funds.

> **2.     The Government Failed to Prove Actual "Promotion" as to the
> International Promotional Money Laundering Counts of
> Conviction (Counts 64-68).**

9    International promotional money laundering requires that "the defendant

10   transported, transmitted, or transferred money from the United States to another country,

11   'with the intent to promote the carrying on of specified unlawful activity.'" *Prigge v. USA*,

12   No. CR-13-01363-PHX-GMS, 2018 WL 513380, at *7 (D. Ariz. Jan. 23, 2018), *report*

13   *and recommendation adopted sub nom. United States v. Prigge*, No. CR-13-01363-PHX-

14   GMS, 2018 WL 4846544 (D. Ariz. Oct. 5, 2018) (quoting 18 U.S.C. § 1956(a)(2)(A)).

15   Here, the Government's burden at trial was to prove that Brunst "acted with the intent to

16   promote a violation of the Travel Act." Final Jury Instructions at 42. Further, "[t]he crime

17   of money laundering promotion is aimed not at maintaining the legitimate aspects of

18   a business nor at proscribing all expenditures of ill-gotten gains, but only at transactions

19   which funnel ill-gotten gains directly back into the criminal venture." *United States v.*

20   *Brown*, 553 F.3d 768, 786 (5th Cir. 2008).

21   The Government's only potential hook for "promotion"—as articulated by the

22   Government during its closing argument—is Quoc Thai's testimony that "Cereus

23   Properties appears to be an entity used to pay the various payroll expenses." 10/27/23 AM

24   Tr. at 26:5-13. The Government pointed to this testimony in closing and argued that "[t]his

25   is promotional money laundering. Plowing the money back in or the activity related to

26   Backpage.com." *Id*. This theory falls well short of establishing intent to promote a Travel

27   Act violation.

28   Courts have reversed promotional money laundering convictions based on the

DEFENDANT BRUNST'S SUPPLEMENTAL BRIEF IN SUPPORT OF
MOTION FOR ACQUITTAL UNDER RULE 29

generic "expenditure" theory advanced by the Government here:

> The problem with the government's position is that it ignores the *intent* aspect of the promotion element. Section 1956(a)(1)(A)(i) is not satisfied by a showing that a financial transaction involving the proceeds of specified unlawful activity merely promoted the carrying on of unlawful activity. The provision has a specific intent element: The government must show that the "dirty money" transaction was conducted "*with the intent* to promote the carrying on of specified unlawful activity.

*United States v. Brown*, 186 F.3d 661, 669-670 (5th Cir. 1999) (emphasis in original) (alleging that the defendant "used the funds from the fraud at SGC to pay SGC's operating expenses, enabling the dealership to defraud more customers."). But the Government presented no evidence that the five wire transfers at issue (1) involved funds later used for Backpage payroll expenditures, (2) that Brunst made any such expenditures with the subject funds, or (3) that Brunst made such expenditures with the **specific intent** to promote a Travel Act violation, *i.e.*, the intentional promotion of a business enterprise involved in prostitution.

Indeed, the only Travel Act violations that the Government sought to prove during the time period covered by Counts 64 to 68 (August 5, 2016, to November 15, 2016) were Counts 28 to 31 (November 2016), as to which there were no convictions. Nor was there evidence that anyone else (like Ferrer) committed these violations. And as discussed above, conspiracy is not a recognized specified unlawful activity. In sum, there was zero evidence at trial connecting the wire transfers in Counts 64 to 68 to the "promotion" of Travel Act violations tied to ads published on Backpage.

Additionally, the only witness to advance this "payroll" theory was Quoc Thai, who admitted that he never looked at the purpose of a given wire transfer. 10/17/23 AM Trial Tr. at 32 ("Q. Okay. And is it fair to say that as to the other counts reflected in these flowcharts you also did not look at the underlying purpose of those transfers; correct? A. That's correct, yes.").[6] Further, Ferrer—the only percipient witness to testify to these

---

[6]   Indeed, the Backpage Investigation Report that the Government belatedly produced shows that in 2017 (around the time of these promotional money laundering counts), a Prosperity Bank account held by **Posting Solutions** and operated by Michael Gage

12

DEFENDANT BRUNST'S SUPPLEMENTAL BRIEF IN SUPPORT OF
MOTION FOR ACQUITTAL UNDER RULE 29

1  transfers—admitted that the transfers were merely loan payments in connection with the

2  sale of Backpage. 09/21/23 PM Tr. at 93:20-23 (Q. "And what was the ***purpose*** to go from

3  AD Tech BV to Cereus" A. "It was to make interest and principal payments on the smaller

4  note.") (emphasis added).

5       The promotional money laundering statute is not a "money spending statute," yet

6  that is precisely how the Government seeks to apply it here. *Brown*, 186 F.3d at 670

7  ("Strictly adhering to the specific intent requirement of the promotion element of

8  § 1956(a)(1)(A)(i) helps ensure that the money laundering statute will punish conduct that

9  is really distinct from the underlying specified unlawful activity and will not simply

10  provide overzealous prosecutors with a means of imposing additional criminal liability any

11  time a defendant makes benign expenditures with funds derived from unlawful acts."). The

12  lack of a nexus between the transactions in Counts 64 to 68 and the promotion of any

13  Travel Act violations is fatal to these charges.

14         **3.**     **Transactional Money Laundering (Counts 69-70, 78-84,
              and 86-93)**

15
16            **a.**     **The Government Failed to Prove Any Specified Unlawful
                 Activity Underlying These Counts.**

17       Under a charge of transactional money laundering, the Government must prove that

18  the "property, was in fact, derived from violations of the Travel Act." Final Jury

19  Instructions at 44; *United States v. Messer*, 197 F.3d 330, 341 (9th Cir. 1999). Much like

20  the concealment money laundering counts of conviction, the Government has failed to

21  establish specified unlawful activity, *i.e.*, Travel Act violations, as to the transactional

22  money laundering counts of conviction. As to Counts 78-84 (transactions dated January

23  2016 to July 2016) and 86-93 (transactions dated August 2016 to October 2016), each of

24  these Counts post-dates the April 2015 sale of Backpage. As discussed above (*supra* at 8-

25  10), (1) there were no counts of conviction as to the substantive Travel Act offenses

26

27  _____

28  (Backpage's CFO after the sale of Backpage), was used to pay Backpage's payroll.
Dkt. 1967 at 6.

13

(Counts 2-51) after April 2015; (2) conspiracy to violate the Travel Act is not a cognizable specified unlawful activity; and (3) the Government failed to put on sufficient evidence of other Travel Act violations underlying these specific transactional money laundering counts.

As to Counts 69 (transaction dated August 21, 2013) and 70 (transaction dated September 13, 2013), which pre-date the sale of Backpage, the Government failed to link these transactions to any Travel Act violation. The only Travel Act count of conviction around this time period is Count 2 (Spear), which reflects an ad dated September 10, 2013. As an initial matter, there was no evidence that any fee was paid for the ad in Count 2 or that any such fee is reflected in the transactions in Counts 69 or 70. Further, the transaction in Count 69 *pre-dates* the ad in Count 2, meaning there is no possibility that any fee from the ad in Count 2 was included in the transaction in Count 69. And the Government proved no other substantive Travel Act violations that could form the basis for these two counts.

**b.   The Government Failed to Prove Brunst's Involvement as to Counts 69-70 and 83-84 (Lacey Transactions).**

As to Counts 69-70 and 83-84, each of these counts concerns a personal transaction made by Lacey from one of his bank accounts to a title company. Counts 69-70 concern a payment to Stewart Title in connection with a Sedona property, and Counts 83-84 concern a payment to Fidelity Title in connection with a San Francisco property. Dkt. 230 at 59-60. The Government presented no evidence at trial that Brunst had any involvement in these transactions. There was no evidence that Brunst (1) was a signer on any of Lacey's *personal* accounts, (2) effectuated any of these transfers, or (3) even knew about these transactions. That *Lacey himself* was not convicted on any of these counts highlights the absurdity of the verdict here. In other words, no rational juror could find that Lacey lacked knowledge regarding a personal transaction he made to buy real property, while Brunst somehow had such knowledge.

The Government may argue that Brunst was CFO of an entity (Cereus Properties and/or Camarillo Holdings) that initially transferred the funds to Lacey (as shareholder

distributions) *that were then used* in Counts 69-70 and 83-84 for Lacey's personal use. But
the former transfers (from Cereus or Camarillo to Lacey) ***are not*** the transactions at issue.
Rather, the transactions that are the subject of these counts are the personal transactions
Lacey made as alleged in the Indictment (*i.e.*, transactions involving criminally derived
property of $10,000 or more).

### 4.   Brunst Should be Acquitted of Conspiracy to Commit Money Laundering (Count 52).

To convict a defendant of money laundering conspiracy under 18 U.S.C. § 1956(h),
the Government must prove: (1) "There was an agreement to commit money laundering;"
(2) "The defendant knew the objective of the agreement;" and (3) "The defendant joined
the agreement with the intent to further its unlawful purpose." *United States v. Jaimez*, 45
F.4th 1118, 1124 (9th Cir. 2022), *cert. denied*, 143 S. Ct. 1038, 215 L. Ed. 2d 198 (2023).
Here, the object of the alleged conspiracy was to commit the substantive money laundering
offenses alleged in the Indictment. *See* Dkt. 230 at ¶ 203(a)-(e).

As set forth above, Brunst himself did not engage in any money laundering. And
there is insufficient evidence supporting an agreement on his part to commit any of the
substantive money laundering offenses. The Government's evidence in this respect
primarily concerned Backpage's dealings with credit card companies, the formation of
Website Technologies, and the termination of bank accounts. But these arguments—which
were untethered to any specific transaction—are red herrings that divert attention away
from the precise manner in which the law defines money laundering (whether
transactional, promotional, or in the form of concealment), as detailed above. The
Government did not even attempt to prove, for example, that (1) Website Technologies
was set up to deceive a bank that wired or received one of the wires alleged in the
Indictment or that (2) any purported attempt to circumvent an AmEx credit card ban bore
any relation to one of the transactions alleged in the Indictment. In short, there is no
evidence of any agreement on Brunst's part to: (1) *conceal* from a bank or credit card
company the source of proceeds used in any *specific transaction* alleged in the Indictment;

DEFENDANT BRUNST'S SUPPLEMENTAL BRIEF IN SUPPORT OF
MOTION FOR ACQUITTAL UNDER RULE 29

1   (2) *promote* Travel Act violations through a *specific transaction* alleged in the Indictment;

2   or (3) engage in an alleged transaction over $10,000 that was *in fact derived from* a Travel

3   Act violation.

4          Ultimately, the Government's money laundering conspiracy theory boils down to

5   the claim that "dirty money" moved amongst various accounts. But that plainly is not

6   enough to sustain a money laundering conspiracy conviction. A money laundering

7   conspiracy charge requires a showing of (1) specified unlawful activity and

8   (2) a defendant's knowledge that the subject proceeds resulted from the specified unlawful

9   activity. *See United States v. Chao Fan Xu*, 706 F.3d 965, 986 (9th Cir. 2013), *as amended

10  on denial of reh'g* (Mar. 14, 2013), and *abrogated on other grounds by RJR Nabisco, Inc.

11  v. Eur. Cmty.*, 579 U.S. 325, 136 S. Ct. 2090, 195 L. Ed. 2d 476 (2016) ("To support

12  a conviction on the RICO conspiracy charge in count one and the money laundering

13  conspiracy charge in count two, the government was required to prove that the property at

14  issue (the funds from the Bank of China) was derived from a specified unlawful activity.");

15  *United States v. Medina*, 485 F.3d 1291, 1300–01 (11th Cir. 2007) ("For these [money

16  laundering] counts to succeed, the government must prove that the proceeds were derived

17  from a specified unlawful activity, and that the defendant had knowledge that the proceeds

18  resulted from said unlawful activity.") (involving conspiracy to commit money laundering)

19  (citing *United States v. Awan*, 966 F.2d 1415, 1434 (11th Cir. 1992); *United States v.

20  Nattier*, 127 F.3d 655, 658 (8th Cir. 1997); *United States v. Henry*, 325 F.3d 93, 103 (2d

21  Cir. 2003)).

22         But the Government never attempted to link any particular Travel Act violation to

23  a given "money laundering" transaction, let alone establish that Brunst (1) had knowledge

24  that any such funds resulted from a Travel Act violation or (2) intended to launder such

25  funds. Calling Brunst the "bag man" or saying that Brunst "knows where every dime is

26  coming from" are pejorative statements that fall woefully short of establishing his

27  participation in a money laundering conspiracy and only serve to highlight the complete

28  lack of a case against him in this respect. 10/26/23 PM Trial Tr. at 54:12-18.

---

3902126.2

16

DEFENDANT BRUNST'S SUPPLEMENTAL BRIEF IN SUPPORT OF
MOTION FOR ACQUITTAL UNDER RULE 29

**D.      The Court's *Allen* Charge May Have Created Reversible Error.**

The first communication of a possible deadlock occurred on the second day of deliberations. *See* 11/08/23 Tr. at 4:7-10 ("What happens if we are unable to reach an unanimous agreement on a count?"). Then, on November 14th, jurors 13 and 15 confirmed that the jury was deadlocked. 11/14/23 Tr. at 17:5-13 ("It is unfortunate that we have been in deliberations for days now and I feel that people's personal feelings, emotions & what if opinions have brought us to a standstill. There has only been (1) charge that we have finally gotten all members of the jury to agree on. I feel that this has become a hung jury & we were not able to perform our required duties as jurors.").

*Allen* charges are permissible "in all cases except those where it's clear from the record that the charge had an impermissibly coercive effect on the jury." *United States v. Banks*, 514 F.3d 959, 974 (9th Cir. 2008). But where the court inquires into the numerical division of the jury, or even becomes *inadvertently aware* of the division, the charge is "per se coercive and requires reversal." *United States v. Williams*, 547 F.3d 1187, 1205 (9th Cir. 2008). Here, the factual circumstances suggest that—after at least four days of the jury apparently being deadlocked—Jurors 13 and 15 may have been holdouts and the *Allen* charge had the effect of inducing findings of guilt as to Brunst. Indeed, these two jurors suggested that further discussions would likely be fruitless. Under the "totality of the circumstances," the *Allen* charge may have been improper here. *Jiminez v. Myers*, 40 F.3d 976, 980–81 (9th Cir. 1993).

The merit of Brunst's objection here will be either bolstered of undermined if we learn whether these two jurors were in fact holdouts, and whether they felt pressured by the *Allen* instruction. Brunst requests that the Court permit counsel to interview the jurors or serve targeted interrogatories to develop the record regarding the effect of the *Allen* charge. Brunst asks for such permission given Local Civil Rule 39.2(b), which concerns contact with jurors following the conclusion of trial.

**III.   <u>CONCLUSION</u>**

For the foregoing reasons, Brunst respectfully requests that the Court enter

3902126.2

17

a judgment of acquittal as to Counts 1, 52-62, 64-70, 78-84, and 86-93.

DATED:  December 4, 2023                Respectfully submitted,

                                        Gary S. Lincenberg
                                        Ariel A. Neuman
                                        Gopi K. Panchapakesan
                                        Bird, Marella, Boxer, Wolpert, Nessim,
                                        Drooks, Lincenberg & Rhow, P.C.


                                        By:    _/s/ Gary S. Lincenberg_
                                                   Gary S. Lincenberg
                                             Attorneys for Defendant John Brunst